IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 18-cv-00112

AT&T CORP., a New York Corporation,

    Plaintiff

v.

LEVEL 3 COMMUNICATIONS, LLC, a Delaware limited liability company

    Defendant.

---

## COMPLAINT
---

Plaintiff, AT&T Corp. ("AT&T"), by and through the undersigned counsel, for its Complaint against Defendant Level 3 Communications, LLC ("Level 3") hereby avers and alleges:

### NATURE OF THE ACTION

1. In May 2015, during the pendency of an appeal by AT&T to the U.S. Court of Appeals for the District of Columbia Circuit from an order of the Federal Communications Commission ("FCC"), AT&T and Level 3 entered into a Release and Settlement Agreement ("Agreement") that provided for various billings and payments between the parties, depending in part upon the outcome of that appeal. The issue before both the FCC and the Court of Appeals was whether Level 3 and other carriers could charge AT&T the relatively high rates for "local switching" access services (also known as "end office" switching) when routing a certain type of telephone call.

1

2. The calls at issue utilize a type of Voice over Internet Protocol ("VoIP") technology, known as over-the-top VoIP calls. There are two types of VoIP calling: (1) "facilities-based" VoIP, when a provider (like a cable company) owns the physical infrastructure connecting directly to subscribers' homes, thereby completing the "last-mile" of the call; and (2) "over-the-top" VoIP, where the provider does not connect directly to the last-mile facilities, and the callers cannot place or receive VoIP calls unless they separately obtain high-speed internet service. In the latter case, the VoIP calls ride "over-the-top" of those separately-provided internet transmission facilities. The issue in front of the FCC and the Court of Appeals was whether carriers routing over-the-top VoIP traffic may lawfully charge the higher end office switching rates typically associated with the connection to last-mile facilities, such as those provided by facilities-based VoIP carriers that actually operate the infrastructure connection between the internet and the callers.

3. Level 3 had prevailed on this issue at the FCC, and in November 2016, AT&T prevailed on this issue in the D.C. Circuit. Although Level 3 has complied in part with the Agreement, it has breached other provisions of that Agreement. Most notably, once AT&T prevailed on the appeal and the appeal process completed—a condition that was met as of May, 2017—the Agreement required Level 3 to pay AT&T a refund of Level 3's charges on the over-the-top VoIP calls that Level 3 billed during the appeal process. Level 3, however, has not provided the refund, and has breached this part of the Agreement.

4. Pursuant to the Agreement, Level 3 agreed that its over-the-top VoIP calls had "been approximately 65% of overall billing for end office switching." Under the D.C. Circuit decision, there is no longer any authority allowing Level 3 to charge the higher end office switching rates for those over-the-top VoIP calls. Shortly after the D.C. Circuit denied Level 3's

2

petition for rehearing, Level 3 gave AT&T a "heads up" that the percentage of its OTT VoIP calls sent to or from AT&T mysteriously dropped to less than 20 percent. Level 3 has purported to substantiate this drop, but the analyses that it has provided to AT&T are facially defective by, for example, including wireless calls where it is conceded that no local switching access charges are ever due. And Level 3 has refused to provide AT&T with the records that would allow AT&T to determine whether the "historic" rate, as of May 2015, dropped by nearly two-thirds after the decision of the Court of Appeals.

5. The Agreement also requires that, after the D.C. Circuit's decision becomes final, the billing by Level 3 and payment by AT&T on over-the-top VoIP calls will comply with the appellate decision. Level 3 continues to bill AT&T improperly, using higher rates, in breach of the Agreement and in violation of federal law. As set forth herein, AT&T is entitled to damages and declaratory relief.

## PARTIES

6. Plaintiff AT&T Corp. is a corporation organized and existing under the laws of the State of New York. Its principal place of business is located at One AT&T Way, Bedminster, New Jersey 07921.

7. Defendant Level 3 is a Delaware limited liability company, with its principal place of business at 1025 Eldorado Blvd., Broomfield, Colorado, 80021. Upon information and belief, its sole member is Level 3 Financing, Inc., a Delaware corporation whose principal place of business is 1025 Eldorado Blvd., Broomfield, Colorado, 80021. Upon information and belief, Level 3 Financing, Inc. is wholly owned by Level 3 Communications, Inc. As of November 1, 2017, Level 3 Communications, Inc. became an indirect wholly owned subsidiary of CenturyLink, Inc.

8. Level 3 is a provider of regulated telecommunications services known as switched access services. Level 3 provides those services via filed tariffs and negotiated contracts, including a contract with AT&T.

**JURISDICTION AND VENUE**

9. This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 because the matter is between citizens of different states, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10. This Court also has original jurisdiction over this civil action pursuant to 47 U.S.C. § 207, because Defendant Level 3 is a common carrier engaged in the provision of common carrier services, and has violated the Communications Act, as alleged herein.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because defendant Level 3 resides in this district, and a substantial part of the events or omissions giving rise to the claim occurred in this district.

**ALLEGATIONS**

12. **Access Services.** AT&T is, among other things, a provider of long distance telephone services. A long distance carrier traditionally did not operate local facilities, including local switches and "last-mile" transmission facilities, to connect its long distance network directly to callers. In the past, and where long distance carriers lack such local facilities today, they therefore purchase a type of local service—known as "access service"—from local exchange carriers. Local exchange carriers traditionally operate local switches and/or last-mile transmission facilities, and sell access services that can allow long distance carriers both to originate and to complete (also known as "terminate") customer's long distance calls.

13. Local exchange carriers are often divided into two categories: "incumbent" local exchange carriers, which existed for years and at one time had monopolies over local telephone

services (such as CenturyLink), and "competitive" local exchange carriers, which are (relatively) recent entrants to local telephone markets. Level 3 is a competitive local exchange carrier.

14. The rates and terms for access services are regulated by the FCC, and can be set forth in tariffs or can be negotiated in express contracts between local exchange carriers and long distance carriers.

15. The billed rates for access services are often divided into certain "rate elements." These rate elements include switching and transport functions, among others. Local switching, the rate element at issue here, occurs when a local carrier uses complex computer equipment known as a local switch to place and then carry a call over last-mile transmission facilities (known as "loops") to or from the caller. Traditionally, local switching has been the most expensive component of switched access services.

16. Other rate elements for switched access service include "tandem" services, which are intermediate services used to route calls between switches or other telephone facilities. Tandem services are not used to connect directly to calling or called parties, and charges for tandem switching services are traditionally much lower than those for local switching.

17. **VoIP Services.** Increasingly, consumers are placing or receiving telephone calls, including long distance calls, using VoIP technology. Such VoIP calling services are offered using several variations. In "facilities-based" VoIP services, the VoIP service provider or its partner provides the local switch functionality and the local loop, which is the last mile physical transmission path, connecting the customer to the Internet.

18. This case, however, involves a type of VoIP service known as over-the-top VoIP. An over-the-top VoIP provider does not provide physical transmission facilities to callers. To use the VoIP services of an over-the-top VoIP provider (such as Vonage), the customer must

5

separately obtain a high-speed internet connection from a third party, such as its local cable company. Thus, the over-the-top VoIP calls ride "over-the-top" of this separate internet connection.

19. Until recently, VoIP providers were not able directly to obtain traditional, ten-digit telephone numbers that could be used by their customers. VoIP providers also often cannot directly connect to the public switched telephone network ("PSTN"), which is used to complete traditional telephone calls. Consequently, VoIP providers have often partnered with local exchange carriers (such as Level 3), which obtain and provide telephone numbers, and which are connected to the PSTN.

20. Level 3, for example, is a local exchange carrier, and it has been assigned various telephone numbers. The telephone numbers associated with Level 3 (and other providers) are listed in a database known as the Number Portability Administration Center ("NPAC") database.

21. **FCC Rules on VoIP.** In 2011, the FCC issued rules that governed the access services that local exchange carriers may lawfully bill on VoIP traffic when they partner with a VoIP provider. Prior to that time, it had been uncertain whether any charges could be billed when local exchange carriers completed (or originated) VoIP long distance calls.

22. As a general matter, under the FCC's 2011 rules, on VoIP calls, the charges that could be billed are equal to the access charges that are billed on ordinary, non-VoIP calls by incumbent local exchange carriers, so long as the local exchange carrier or its VoIP provider partner were providing the "functional equivalent" of the incumbent's access services. If the local exchange carrier or VoIP partner provides the functional equivalent of end office access services, then the local carrier could bill a rate equal to the end office access services billed on traditional, non-VoIP telephone calls by incumbent carriers. When the local carrier or VoIP

6

partner provided the functional equivalent of tandem switching access services, then the local carrier could bill a rate equal to the tandem switching access services billed on traditional, non-VoIP telephone calls by incumbent carriers.

23. A dispute arose among long distance and local carriers, including AT&T and Level 3, respectively, as to how the FCC rules should be applied to over-the-top VoIP services. AT&T's position is that, on over-the-top VoIP calls, the local carrier's access charges should not include any local switching (or end office) charges—the traditionally higher priced service. Rather, the maximum charge on an over-the-top VoIP call would be equal to a charge for tandem switching. Other carriers, including Level 3, took the position that end office charges (as well as tandem charges) could be properly billed on any VoIP calls, including over-the-top VoIP calls.

24. In 2015, the FCC—by a vote of 3 to 2—issued a Declaratory Ruling that authorized the billing of end office access services on over-the-top VoIP calls. *See* Declaratory Ruling, 30 FCC Rcd. 1587 (2015). AT&T timely filed a petition for review of the Declaratory Ruling in the D.C. Circuit, which, as described below, ultimately was granted.

25. **The AT&T-Level 3 Agreement**. In late May, 2015, after the FCC issued the Declaratory Ruling, but while the AT&T petition for review was pending, AT&T and Level 3 entered into the Agreement, which addressed the parties' dispute for Level 3's charges on over-the-top VoIP calling.

26. Since at least 2011, AT&T had disputed Level 3's access charges on over-the-top VoIP calls, and, pursuant to the terms of Level 3's tariffs, had withheld certain charges billed by Level 3.

27. The Agreement provided for various payments and/or billings for three separate timeframes: (1) the period through March 31, 2015; (2) the months of April and May 2015; and (3) from June 1, 2015 forward.

28. Pursuant to the Agreement, AT&T made a settlement payment of in excess of $15 million to Level 3 for the disputed access charges on over-the-top calling, through March, 2015.

29. A further settlement payment was made by AT&T for charges in April and May of 2015.

30. These settlement payments were based on the parties' agreement that "approximately sixty-five percent 65%" of Level 3's billing for end office access services to AT&T was "historically" provided in connection with over-the-top VoIP calls.

31. The Agreement also addresses, in several respects, the billing and payment of access charges between AT&T and Level 3 beginning on and after June 1, 2015.

32. The Agreement provides that, as to over-the-top VoIP traffic exchanged beginning June 1, 2015, AT&T would pay Level 3 its tariffed rate, which would include the end office access charges, as well as tandem charges when Level 3 provides such tandem service. AT&T was specifically allowed to continue to dispute such payments.

33. The Agreement further provides that, beginning on June 1, 2015, Level 3 should not bill AT&T any end office access charges on domestic over-the-top VoIP traffic that were sent or received from telephone numbers not assigned to Level 3 in the NPAC database.

34. The Agreement also provides that, if the FCC's Declaratory Ruling were overturned, in whole or in part, and the applicable order on appeal were to become final and no longer subject to further appeal or judicial review, Level 3 will refund, within 30 days, fifty

8

percent of the disputed over-the-top VoIP charges, beginning with the June 2015 traffic through the date on which the appellate order becomes final.

35. The Agreement also provides that any billing and payments for over-the-top VoIP traffic exchanged after any final appellate order shall be in compliance with the terms of that order.

36. **The Vacatur of the Declaratory Ruling.** In November, 2016, the D.C. Circuit granted AT&T's petition, and vacated and remanded the Declaratory Ruling. *See AT&T Corp. v. FCC*, 841 F.3d 1047, 1056 (D.C. Cir. 2016) ("*AT&T*"), *vacating Declaratory Ruling*, 30 FCC Rcd. 1587 (2015). The D.C. Circuit held that, in the Declaratory Ruling, the FCC had not properly explained why the local carrier and its VoIP partner were performing the functional equivalent of end office switching on over-the-top VoIP calls. Because over-the-top VoIP providers do not connect directly to the last-mile transmission facility, and can complete calls only if their customers separately obtain high-speed internet facilities from a third party, the FCC had not justified its conclusion that the local carriers or the over-the-top VoIP providers provided the functional equivalent of local switching. The FCC had previously identified local switching as requiring actual or physical interconnection.

37. Level 3, which had intervened in support of the Declaratory Ruling, petitioned for rehearing of the D.C. Circuit's decision, but that petition was denied. *See* Orders (Per Curiam), *AT&T Corp. v. FCC*, No. 15-1059 (D.C. Cir. Feb. 6, 2017) (denying petitions for rehearing and rehearing en banc). The D.C. Circuit issued its mandate to the FCC on February 15, 2017. Neither Level 3, the FCC, nor any other entity sought Supreme Court review of the D.C. Circuit's decision. As such, the D.C. Circuit decision in *AT&T* became final as of May, 2017.

38. Indeed, this Court recently has explained that, in the wake of the court of appeals ruling and the vacatur of the FCC Declaratory Ruling, "there is no longer any authority to suggest that, as a matter of law, the services [that a local exchange carrier] provided constituted the 'functional equivalent' of end-office switching" on over-the-top VoIP calls. *Teliax, Inc. v. AT&T Corp.*, No. 15-cv-1472, 2017 WL 3839459, *2 n.1 (D. Colo. Sept. 1, 2017). The FCC has not yet taken action in response to the remand.

39. **Level 3's Unsupported and Contradictory Assertions Regarding Declines in over-the-top VoIP Traffic**. By email dated March 9, 2017, a month after the D.C. Circuit denied Level 3's petition for rehearing, Level 3 wrote to AT&T to give it a "heads up" that it had been "working on some of the over-the-top data since the 2015 settlement [Agreement]" and that the percentage of over-the-top VoIP traffic purportedly was no longer at the 65% level, but was now less than 20%.

40. Notwithstanding its agreement that approximately 65 percent of its charges to AT&T related to over-the-top VoIP calls and the fact that the parties relied on that figure to establish the settlement payments AT&T made to Level 3, Level 3 now asserts that its percentage of over-the-top VoIP calls is a mere fraction of the historic, pre-Agreement level of approximately 26 percent.

41. AT&T has asked Level 3 for various documentation, including regularly-maintained industry data known as call detail records, in an attempt to verify Level 3's assertions that its percentage of over-the-top VoIP traffic has dropped precipitously. Level 3 has refused to provide all of the necessary information requested by AT&T, and AT&T has no way of independently verifying Level 3's claims.

10

42. Further, the limited data that Level 3 has provided to AT&T has been flawed. For example, earlier this year, Level 3 provided charts that purported to show that only 13 percent of its total billed minutes of end office access services was related to over-the-top VoIP calls. However, AT&T pointed out that Level 3 had improperly included, within its total billed minutes of end office access services, large volumes of calls where Level 3 could not have properly billed any end office access services.

43. Calls that are originated by customers of wireless companies, and then handed off to Level 3, do not result in end office access charges that Level 3 can bill. Yet, in its purported study, a wireless company comprised nearly 60 percent of the total Level 3 originating end office access charges that were included in Level 3's study. Level 3 purported to fix this mistake, and adjusted its claimed over-the-top percentage from 13 percent to 26 percent. However, Level 3 refused to provide its calculations or the data underlying them, citing "proprietary reasons."

44. Notably, even though Level 3 has told AT&T for purposes of this dispute that its percentage of over-the-top VoIP traffic has dropped substantially, Level 3 has represented in FCC proceedings that the total number of subscribers to VoIP calling services has grown significantly.

45. Upon information and belief, the percentage of Level 3's traffic and charges to AT&T that are associated with over-the-top VoIP calls is close to, or possibly exceeds, the historic 65 percent figure used by the parties.

46. Because the percentage of over-the-top VoIP traffic on Level 3 charges to AT&T remains high, the refund that Level 3 owes to AT&T is significant. AT&T estimates that, in the relevant period, it has paid Level 3 several million in access charges.

11

47. **Level 3's Breaches of the Agreement And Improper Billing**. After the execution of the Agreement, AT&T performed its duties under the Agreement. Among other things, AT&T made the settlement payments, and it made monthly payments to Level 3 when billed in accordance with the Agreement.

48. Although Level 3 has abided by certain parts of the Agreement (and made payments to refund some charges that Level 3 improperly billed under the Agreement), it has failed to perform certain of its duties under the Agreement and has breached its obligations under the Agreement.

49. *First*, pursuant to the Agreement, within 30 days of the D.C. Circuit decision in *AT&T* becoming final and no longer subject to appellate review, Level 3 was required to issue AT&T a partial refund of access charges that AT&T had paid Level 3 on over-the-top VoIP traffic.

50. Under the Agreement, Level 3 is required to refund a 50 percent of the disputed charges on over-the-top VoIP calls, beginning with June, 2015 traffic through the date on which the decision in *AT&T* became final as no longer subject to judicial review.

51. In order to determine the amount of the refund, it is necessary to determine the percentage of Level 3's access charges to AT&T that relate to over-the-top VoIP calls. Such information is not publicly available, however; and AT&T cannot determine the appropriate percentage from AT&T's records alone.

52. In violation of the Agreement, Level 3 has not issued AT&T the appropriate refund. Further, Level 3 has improperly and unlawfully denied AT&T information necessary to determine the amount of the refund.

53. ***Second***, pursuant to the Agreement, after the D.C. Circuit decision in *AT&T* became final, Level 3 is required to bill AT&T, on a going forward basis, for access services on over-the-top VoIP calls in compliance with the decision in *AT&T*.

54. In *AT&T*, the D.C. Circuit vacated and remanded the FCC's Declaratory Ruling, which had purported to authorize local exchange carriers to bill end office switching access charges on over-the-top VoIP calls. The D.C. Circuit concluded that the Declaratory Ruling was "wholly arbitrary" in explaining the basis for that conclusion. 841 F.3d at 1053-54.

55. As the D.C. Circuit explained, the FCC put in place rules in 2011 that defined end office access service (as well as tandem-switched transport access service), and that allowed a local exchange carrier to charge long distance carriers when the local carrier or its VoIP provider partner provided the functional equivalent of access services provided by incumbent local exchange carriers. The FCC had previously determined that end office switching involved supplying actual or physical interconnection with a caller. Yet, in the Declaratory Ruling, the FCC failed to account for those precedents, and relied on the fact that, on over-the-top VoIP calls, the local exchange carrier or VoIP provider partner performed various "call control" functions that assisted in determining the route of the call. The D.C. Circuit found that explanation to be arbitrary, because the FCC had previously explained that such call control functions were also performed in connection with other switches, including tandem switches.

56. The D.C. Circuit thus vacated and remanded the Declaratory Ruling. An order that is vacated is void, and has no legal effect. Consequently, as a result of the D.C. Circuit's decision in *AT&T*, Level 3 is prohibited from billing AT&T for end office access services on over-the-top calls VoIP calls unless it were established that Level 3 or its VoIP provider partners perform the functional equivalent of end office services.

57. Because, as this Court has held, there is no longer any legal authority supporting the position that carriers like Level 3 are performing the functional equivalent of end office switching, Level 3's ongoing attempts to charge AT&T with end office access services on over-the-top VoIP calls do not comply with the D.C. Circuit's decision, with federal law, or with the parties' Agreement.

## CAUSES OF ACTION

## COUNT I

## BREACH OF CONTRACT

58. AT&T incorporates paragraphs 1 to 57 of this Complaint as if fully stated herein.

59. AT&T and Level 3 executed an Agreement that provided terms and rates for Level 3's provision of access services to AT&T on over-the-top VoIP calls.

60. The Agreement is valid and binding on Level 3 and AT&T.

61. AT&T performed its obligations under the Agreement.

62. Under the Agreement, in or around June, 2017 (30 days after the D.C. Circuit decision in *AT&T* became final and no longer subject to further review) Level 3 was obligated to pay AT&T a refund of access charges that AT&T had paid for over-the-top VoIP calls.

63. Level 3 has not provided AT&T with the refund required by the Agreement.

64. As a direct and proximate result of Level 3's breach of the Agreement, AT&T has suffered damages and loss, and AT&T is entitled to damages, in an amount to be determined at trial, for the refund required by the Agreement. The amount of the refund exceeds $75,000.

65. Under the Agreement, after the D.C. Circuit decision in *AT&T* became final and no longer subject to further review, Level 3 was obligated to bill AT&T for access services on over-the-top VoIP calls in compliance with the decision in *AT&T*.

66. Under *AT&T,* and under federal law, there is no longer any authority providing that Level 3 (or its VoIP partners) are entitled to bill AT&T for end office access services on over-the-top VoIP calls.

67. On over-the-top VoIP calls, neither Level 3 nor any of its VoIP provider partners provide the functional equivalence of end office switching access service.

68. In breach of the Agreement, Level 3 continues to bill AT&T improperly, by including charges for end office access service on over-the-top VoIP calls.

69. As a direct and proximate result of Level 3's breaches of the Agreement, AT&T has suffered damages and loss, and AT&T is entitled to damages, in an amount to be determined at trial, for end office access charges that it paid Level 3 on over-the-top VoIP calls, since the time that the D.C. Circuit decision in *AT&T* became final and no longer subject to further review.

70. AT&T demands judgment against Level 3 for all amounts due under the Agreement, including interest, in an amount to be determined at trial.

## COUNT II

### VIOLATION OF FCC RULES AND SECTIONS 201(b), 203 AND 251(b)(5) OF THE COMMUNICATIONS ACT

71. AT&T incorporates paragraphs 1 to 70 of this Complaint as if fully stated herein.

72. Under the Agreement, beginning in or around May, 2017, when the D.C. Circuit's decision in *AT&T* became final, Level 3 was obligated to bill AT&T for access services on over-the-top VoIP traffic in compliance with the terms of the D.C. Circuit's decision in *AT&T*.

73. The D.C. Circuit's decision vacated and remanded the Declaratory Ruling, and thus the Declaratory Ruling has been rendered void and has no authority or validity.

74. Consequently, after the D.C. Circuit's decision in *AT&T*, Level 3 was obligated by the Agreement and also by federal law to bill AT&T consistently with the FCC's rules on VoIP calls, as those FCC rules existed absent the Declaratory Ruling.

75. Under the FCC's rules, on VoIP calls, a local exchange carrier can bill charges when the local exchange carrier or a VoIP provider partner provide the functional equivalent of an access service. However, the FCC's rules on VoIP calls do not permit a local exchange carrier to charge for functions not performed by the local exchange carrier itself or a VoIP provider partner. 47 U.S.C. §§ 51.903, 51.913.

76. The FCC's rules on VoIP traffic validly implement Sections 201(b), 203, and 251(b)(5) of the Communications Act, and thus a common carrier that violates the FCC's rules has violated Sections 201(b), 203, and 251(b)(5) of the Communications Act. 47 U.S.C. §§ 201(b), 203, 251(b)(5). Section 201(b) requires a common carrier's charges to be just and reasonable, Section 203 requires a common carrier to bill for tariffed service exactly as provided in the carrier's tariffs, and Section 251(b)(5) place a duty on a local exchange carrier to establish reciprocal compensation arrangements for the transport and termination of telecommunications.

77. As to the access services that it has billed to AT&T, Level 3 is a common carrier, and a local exchange carrier, and it is subject to the FCC's rules on VoIP calls, and to Sections 201(b), 203, and 251(b)(5) of the Communications Act. 47 U.S.C. §§ 201(b), 203, 251(b)(5).

78. The access services that Level 3 provided and billed to AT&T on over-the-top VoIP calls are subject to the FCC's rules, and to Sections 201(b), 203, and 251(b)(5).

79. Level 3 has filed tariffs with the FCC that implement and incorporate, in part, the FCC rules on VoIP calls.

80. On over-the-top VoIP calls that it has exchanged with AT&T, neither Level 3 nor any of its VoIP provider partners provide the functional equivalence of end office switching access service.

81. Even though neither Level 3 nor any of its VoIP provider partners provide the functional equivalence of end office switching access service, Level 3 has billed AT&T end office access services after the D.C. Circuit's decision in *AT&T* became final.

82. Since the D.C. Circuit's decision in *AT&T* became final, Level 3's charges to AT&T for end office access services on over-the-top VoIP calls are also inconsistent with federal law, including the FCC's rules and Sections 201(b), 203, and 251(b)(5).

83. Since the D.C. Circuit's decision in *AT&T* became final, Level 3's charges to AT&T for end office access services on over-the-top VoIP calls are inconsistent with Level 3's tariffs, which incorporate the FCC's rules.

84. As a direct and proximate result of Level 3's violations of the FCC's rules and Sections 201(b), 203, and 251(b)(5) of the Act, 47 U.S.C. §§ 201(b), 203, 251(b)(5), the Agreement, AT&T has suffered damages and loss, and AT&T is entitled to damages, in an amount to be determined at trial, for end office access charges that it paid Level 3 on over-the-top VoIP calls, since the time that the D.C. Circuit decision in *AT&T* became final.

85. AT&T demands judgment against Level 3 for its violations of the FCC's rules and for Sections 201(b), 203, and 251(b)(5), and for damages in an amount to be proven at trial.

## COUNT III

## DECLARATORY JUDGMENT

86. AT&T incorporates paragraphs 1 to 85 of this Complaint as if fully stated herein.

17

87. Under the Agreement and federal law, and, Level 3's bills to AT&T for access services on over-the-top VoIP calls must be in compliance with the D.C. Circuit decision in *AT&T*.

88. Because the D.C. Circuit decision in *AT&T* vacated the Declaratory Ruling, Level 3's bills to AT&T for access services on over-the-top VoIP calls must be in compliance with the FCC's rules as the exist absent the Declaratory Ruling.

89. Since the D.C. Circuit's decision in *AT&T* became final, Level 3's charges for access services to AT&T on over-the-top VoIP calls have not complied with federal law.

90. Since the D.C. Circuit's decision in *AT&T* became final, Level 3 has improperly billed AT&T charges for end office access service, even though neither Level 3 nor any of its VoIP provider partners have provided the functional equivalent of end office access services.

91. AT&T is entitled to judgment under 28 U.S.C. § 2201(a) declaring that, now that the D.C. Circuit's decision in *AT&T* became final, Level 3 is prohibited from billing AT&T charges for end office access services on over-the-top VoIP calls.

## PRAYER FOR RELIEF

92. As relief against Defendant Level 3 for breaches of contract, and for violations of the FCC's rules and Sections 201(b), 203, and 251(b)(5), Plaintiff AT&T respectfully requests the Court to enter judgment in favor of AT&T and against Level 3 as follows:

   a. Ordering Level 3 to pay AT&T damages for Level 3's (i) breaches of the parties' Agreement, and (ii) violations of the FCC's rules and Sections 201(b), 203, and 251(b)(5) of the Communications Act, 47 U.S.C. §§ 201(b), 203, 251(b)(5), in an amount to be determined at trial, plus interest and costs, and, pursuant to 47 U.S.C. § 206, reasonable attorneys' fees;

b. Entering a declaratory judgment that, as of the date that the D.C. Circuit's decision in *AT&T* became final, Level 3 is prohibited from billing AT&T charges for end office access services on over-the-top VoIP calls;

c. Granting AT&T such other and further relief to which it is entitled.

93. WHEREFORE, for the reasons stated above, AT&T respectfully requests that judgment be entered for AT&T on each and all of its claims, together with appropriate damages, declaratory relief, injunctive relief, reasonable costs and fees, including attorneys' fees, expert fees, and interest together with such other and further relief as the Court may deem just and equitable under the circumstances.

Respectfully submitted this 16th day of January, 2018.

**MOYE WHITE LLP**

By: /s/ Rebecca B. DeCook
Rebecca B. DeCook
Andrew T. Flynn
1400 16th Street, 6th Floor
Denver, Colorado 80202-1027
Telephone: (303) 292-2900
Facsimile: (303) 292-4510
Email:  becky.decook@moyewhite.com
Email:  andrew.flynn@moyewhite.com

Attorneys for Plaintiff AT&T Corp.