**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-MEH

AT&T CORPORATION,

    Plaintiff,

v.

LEVEL 3 COMMUNICATIONS, LLC,

    Defendant.

---

**MOTION TO DISMISS [PUBLIC VERSION]**

---

Defendant, Level 3 Communications, LLC ("Level 3" or "Defendant"), respectfully moves this Court for an Order dismissing the Complaint of AT&T Corporation ("AT&T") pursuant to FED. R. CIV. P. 12(b)(1) because the claims in AT&T's lawsuit are not yet ripe for adjudication. In support of its Motion, Level 3 states as follows:

### I. INTRODUCTION

Level 3 and AT&T entered into a contract that obligates AT&T to make payments to Level 3 to originate or terminate telephone calls delivered via "over the top" Voice over Internet Protocol" ("OTT VoIP"). [*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*] Complaint ¶ 34; *see also* Declaration of Douglas N. Marsh in support of Level 3 Communications, LLC's Motion to Dismiss ("Marsh Dec."), Exhibit 1 at 3 (Level 3-AT&T Settlement Agreement), § 1(a)(iv). On appeal from the FCC decision, the D.C. Circuit Court of Appeals remanded the issue back to the FCC for determination. The FCC has yet to decide the

issue on remand; thus, the question about whether OTT VoIP calls are compensable remains undecided. *AT&T Corp. v. Fed. Commc'ns Comm'n,* 841 F.3d 1047, 1050 (D.C. Cir. 2016) ("In the end, we find that the Declaratory Ruling does not disclose the Commission's reasoning with the requisite clarity to enable us to sustain its conclusion. . . . We therefore vacate and remand the order to the Commission for further explanation.").

Despite that, AT&T filed this lawsuit, seeking a declaration that it no longer needs to pay these charges and demanding millions of dollars in refunds from Level 3. Its claims depend entirely on its contention that the D.C. Circuit conclusively decided that such charges are improper. AT&T's position is incorrect, as this Court has already found. *See Teliax, Inc. v. AT&T,* 2017 WL 3839459, *2 (D. Colo. Sept. 1, 2017) ("[T]he issue of whether any services companies like Teliax provide constitute the "functional equivalent" of end-office switching remains an issue the FCC is currently grappling with. Accordingly, … this is an undecided matter that the administrative agency tasked with clarifying this regulatory issue is currently deciding….").

Given that the issue remains pending before the FCC, AT&T's lawsuit is not ripe for adjudication. *See San Juan Citizens All. v. Stiles*, 654 F.3d 1038, 1046 (10th Cir. 2011). This is particularly true because the undecided issue—whether OTT VoIP calls are or are not subject to end office switching access charges—is a complicated matter best suited for resolution by the FCC, the agency specifically charged with regulating this field. Judicial review at this juncture would "inappropriately interfere" with the FCC's proceedings and potentially lead to premature and conflicting determinations. *See Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726 (1998). In fact, the Court cannot fully adjudicate or enforce AT&T's claims absent the required

input from and decision by the FCC because the rights and duties on which AT&T premises its claims depend upon how the FCC resolves the billing question; thus, its claims, including those rising from the Agreement, "rest[ ] upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998).

Level 3 therefore respectfully requests that the Court dismiss AT&T's Complaint under FED. R. CIV. P. 12(b)(1) for lack of ripeness.

## II.   PROCEDURAL AND FACTUAL BACKGROUND[1]

### A.   THE HISTORIC TELECOMMUNICATIONS NETWORK AND HOW VoIP HAS IMPACTED CALL DELIVERY.

The legal uncertainty which the FCC is presently attempting to resolve arises from a transition taking place in the nation's telecommunications network infrastructure. The nation's public switched telephone network ("PSTN") involves a series of connections between telephone service subscribers and two different types of telecommunications providers: local exchange carriers (also known as "LECs"), which operate local telephone networks, and long-distance carriers (also known as interexchange carriers, or "IXCs"), which provide connections between LECs.[2] Historically, when a subscriber originated a telephone call, the call would travel from the subscriber's premises over the subscriber's line to a LEC's "end-office" switch, which would link the call to "trunks" which used time-division multiplexing ("TDM") technology to allow multiple calls to travel over the trunk. Trunks often connect one carrier's switch to another

---

[1] This entire factual background is spelled out in detail in the D.C. Circuit opinion, upon which AT&T relies to state that the issue has been resolved. *See AT&T,* 841 F.3d at 1050 (describing the PSTN network and both types of VoIP service).

[2] LECs may be either "incumbent" ("ILECs") or "competitive" ("CLECs"), though this distinction has no substantive impact in this case. *See* Compl. at ¶¶ 13–14.

3

carrier's switch, passing calls from one trunk to another through "tandem" switches.

The service provided by LECs when they pass a long distance call through a switch is known as "switched access service." LECs may assess "switched access charges" for providing switched access service. The amount LECs may assess for switched access usually depends on whether the call traverses an end-office switch, a tandem switch, or both.

The advent of Voice over Internet Protocol ("VoIP") telephony has added a new wrinkle to this arrangement, as LECs increasingly partner with VoIP providers to carry telephone calls over the internet, thus displacing *part* of the PSTN. Two different types of VoIP service are involved here. "Facilities-based" VoIP service occurs when a VoIP provider (such as a cable company) owns or leases the physical infrastructure connecting directly to a subscriber's home; thus, the VoIP provider completes the "last mile" of the call through its network. By contrast, "over-the-top" VoIP providers do not directly connect to the last mile transmission network; instead, they require the end user to obtain an internet connection from a third-party internet service provider, allowing the VoIP provider to deliver calls through the internet connection. Thus, when an IXC transmits a call destined for a subscriber of an over-the-top VoIP internet connection, the IXC will connect the call from the IXC's network to an intermediate point where the call is converted from TDM to IP format, directed in the form of data packets to the subscriber's internet service provider, and delivered over the internet to the equipment at the subscriber's premises. *See AT&T,* 841 F.3d at 1050 (describing the PSTN network and both types of VoIP service).[3]

---

[3] The exact opposite is true when a call originates in OTT VoIP: the call is delivered over the internet from the equipment at the subscriber's premises to the internet service provider, then

### B. AT&T'S CLAIMS THAT END-OFFICE SWITCHING CHARGES DO <u>NOT</u> APPLY TO OTT VOIP CALLS WAS REJECTED BY THE FCC.

It is largely accepted that LECs may assess the end-office switching element of switched access charges for facilities-based VoIP calls because the LEC maintains control over the "last mile" connecting the party's premises. Whether the LEC may assess end-office switching charges for OTT VoIP calls, by contrast, has been an issue of some contention. AT&T has advocated that IXCs were *not* required to pay access charges at the end-office switching rate for these calls, and in so advocating, asked the FCC to find that these charges were inapplicable to OTT VoIP calls. *See In the Matter of Connect Am. Fund*, 30 FCC Rcd. 1587, ¶¶ 16–18 (2015).

The FCC rejected AT&T's contention by relying on its "VoIP symmetry rule," which instructs that LECs may assess end-office switching charges regardless of whether a LEC delivers such traffic to the called party's premises itself or does so through arrangements with VoIP service providers. *Id.* at ¶ 7. This was true, the FCC further clarified, even for OTT VoIP service, because a LEC "in conjunction with its over-the-top VoIP provider partner provides the functional equivalent of end office switching." *Id.* at ¶ 31. Therefore, the FCC held that LECs were "eligible to assess access charges for this [OTT VoIP] service." *Id.* at ¶ 51.

### C. DURING THE APPEAL OF THE FCC DECISION, AT&T AGREED TO PAY LEVEL 3 END-OFFICE SWITCHING CHARGES ON OTT VOIP CALLS UNTIL THE QUESTION OF WHETHER SUCH ACCESS CHARGES WERE APPROPRIATE WAS FINALLY DECIDED.

AT&T appealed the FCC's determination to the U.S. Court of Appeals for the District of Columbia Circuit. *See* Compl. at ¶ 24. [*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this*

---

transmitted to the intermediate point for conversion from IP to TDM format, and then directed to the called party through the PSTN network.

5

*document.*] Marsh Dec., Exhibit 1; *see also* Compl. at ¶¶ 1, 25. Up to that point, AT&T had withheld payment from Level 3 for terminating OTT VoIP traffic. [*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*] *See* Marsh Dec., Exhibit 1 at 3, § 1(a)(iv). [*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*] *Id*. [*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*] *Id.*

[*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*] *See* Marsh Dec.*,* Exhibit 2 (hereinafter "Term Sheet"); *see also* Marsh Dec., Exhibit 3 (Email from AT&T sending Term Sheet to Level 3) ([*confidential information redacted from publicly filed version of this document*]). [*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*] [*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*]

[*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*]

[*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*]

Marsh Dec., Exhibit 1 at 3, § 1(a)(iv) (emphases added); *see also* Compl. at ¶ 34.

### D. THE COURT OF APPEALS REMANDED WITHOUT ISSUING A "FINAL" ORDER.

In November 2016, the Court of Appeals "vacated and remanded the Declaratory

Ruling." Compl. at ¶ 36; *AT&T Corp. v. FCC*, 841 F.3d 1047 (D.C. Cir. 2016). However, the Court of Appeals did not provide terms for the billing or payment of OTT VoIP traffic. Instead, the court "held that, in the Declaratory Ruling, the FCC had not properly explained why the local carrier and its VoIP partner were performing the functional equivalent of end office switching on over-the-top VoIP calls." Compl. at ¶ 36; *AT&T Corp. v. FCC*, 841 F.3d at 1049 ("In the end, we find that the Declaratory Ruling does not disclose the Commission's reasoning with the requisite clarity to enable us to sustain its conclusion. . . . We therefore vacate and remand the order to the Commission for further explanation."). In remanding the case back to the FCC for further deliberation and explanation, the Court of Appeals made clear that the underlying administrative action was still ongoing and undecided, and even anticipated additional potential litigation following a subsequent FCC order addressing this same administrative action, i.e., "whether the local carrier and its VoIP partner were performing the functional equivalent of end office switching on over-the-top VoIP calls." *AT&T Corp. v. FCC*, 841 F.3d at 1049 ("[J]udicial economy suggests that we address some of AT&T's other arguments to avoid re-litigation of identical issues in a subsequent petition.").

AT&T admits that the Court of Appeals' order simply vacated the original Declaratory Ruling and remanded the case to the FCC to substantiate its position regarding the underlying administrative action addressing VoIP switched access charges. *See* Compl. at ¶¶ 36–37 ("The D.C. Circuit issued its mandate [for further explanation on the same underlying administrative action] to the FCC on February 15, 2017."). In other words, as AT&T acknowledges, the case was remanded to the FCC to issue a final order. AT&T also admits that the administrative action is still pending before the FCC, which has not issued any renewed final order or ruling. *See id.* at

7

¶ 38 ("The FCC has not yet taken action in response to the remand."). [*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*]

### E. AT&T BROUGHT THIS ACTION IN SPITE OF THE FACT THAT THE ISSUE OF HOW TO BILL FOR OTT VOIP CALLS IS STILL PENDING BEFORE THE FCC.

Even though the FCC is still considering the question of how to properly bill for OTT VoIP calls, AT&T brought this action against Level 3 based on the very legal theories the FCC is presently evaluating. Its Complaint raises three claims: for breach of contract, arising from Level 3's alleged failure to refund access charges following the entry of a "final order" resolving the billing question (Compl. at ¶ 62–64);[4] for a violation of the Communications Act, arising from Level 3's alleged failure to bill AT&T "in compliance with the terms of the D.C. Circuit's decision" (*id.* at ¶ 72); and for declaratory judgment, seeking a judicial order that Level 3 may not assess end office switching charges for OTT VoIP calls (*id.* at ¶ 89)—the very question now pending before the FCC. All three claims are expressly predicated on the mistaken notion that a "final order" or "final decision" has been issued that conclusively resolves the question of billing for OTT VoIP calls. *See* Compl. at ¶¶ 34, 62, 65, 69, 72–74, 81–84, 87–90, 92.

### III. ARGUMENT

The issue presented in this motion is whether AT&T's claims are ripe for adjudication. All three claims AT&T raises in its Complaint suffer from the same defect: essential conditions precedent on which they depend have not been satisfied. Specifically:

---

[4] The only party to have breached the Agreement is AT&T. [*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*]. *See* Marsh Dec., Exhibit 1 at 3, § 1(a)(iv). Level 3 anticipates that it will submit a counterclaim demanding payment of the millions of dollars that AT&T is wrongfully withholding.

> ➢ AT&T's latter two claims depend upon the FCC eventually determining that end-office switching charges may not be assessed for OTT VoIP calls.
>
> ➢ *This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*]

None of these events have occurred yet; indeed, they may never occur. As such, AT&T's claims are not yet ripe for adjudication and should be dismissed to allow the FCC to resolve the issue.

### A.   LEGAL STANDARD FOR RIPENESS

The "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *San Juan Citizens All.*, 654 F.3d at 1046 (citing *Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57 n.18 (1993)). Therefore, "a ripeness challenge, like most other challenges to a court's subject matter jurisdiction, is treated as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *Bateman v. City of W. Bountiful*, 89 F.3d 704, 706 (10th Cir. 1996).

In deciding a Rule 12(b)(1) motion, the Court may consider evidence outside the Complaint. *See Maldonado v. Prudential Ins. Co. of Am.*, No. 10-CV-00074-PAB-MEH, 2011 WL 819751, at *1 (D. Colo. Mar. 2, 2011) (stating that a 12(b)(1) movant may "go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests") (citations omitted). Where a defendant "attacks the factual basis for subject matter jurisdiction," the court "may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts." *Id.* (citation omitted).

"To determine whether an issue is ripe for judicial review, [courts] must examine 'both

the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Stiles*, 654 F.3d at 1046 (citing *Ohio Forestry Ass'n,* 523 U.S.at 733). To conduct this examination, courts "must consider: (1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *See Ohio Forestry Ass'n, Inc.*, 523 U.S. at 732–33 (citing *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49 (1967) ("*Abbott Labs*") (abrogated on other grounds)).

Ultimately, "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas,* 523 U.S. at 300 (quoting *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580–81 (1985)). Even where judicial intervention would "probably not inappropriately interfere with further administrative action," courts apply the ripeness doctrine if they "would benefit from further factual development of the issues presented." *Utah v. U.S. Dep't of the Interior*, 210 F.3d 1193, 1197 (10th Cir. 2000).

"The burden is on the plaintiff to provide evidence establishing that the issues are ripe for review." *Park Lake Res. Liab. Co. v. U.S. Dep't of Agr.*, 197 F.3d 448, 450 (10th Cir. 1999) (citation omitted).

**B.  AT&T'S CLAIMS ARE NOT RIPE FOR ADJUDICATION BECAUSE THE UNDERLYING LEGAL ISSUES ARE PENDING BEFORE THE FCC.**

All three of AT&T's claims are premised on the notion that the D.C. Circuit's decision conclusively decided the issue of whether LECs may assess end-office switching charges on OTT VoIP calls. As Level 3 explained above, this notion is wrong. A "final" decision on the

issue has not yet issued. So long as the critical legal issue underlying each of AT&T's claims remains pending for resolution by the FCC, AT&T's claims are not yet ripe for adjudication.

### *1. The Ripeness Doctrine Prevents Courts from Interfering with Pending Administrative Action and Deliberation.*

The ripeness doctrine "serves to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and . . . to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *San Juan Citizens All.*, 654 F.3d at 1046 (citing *Abbott Labs,* 387 U.S. at 148–49); *see also, e.g.*, *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 670 (9th Cir. 2005) ("The *Abbott Labs* . . . standards find their roots in cases involving administrative agencies and recognize that judicial action should be restrained when other political branches have acted or will act.") (citing cases applying *Abbott Labs* standards and Wright & Miller, Federal Practice and Procedure, § 3532.1, for the principle that "[t]he values of avoiding unnecessary constitutional determinations and establishing proper relationships between the judiciary and other branches of the federal government lie at the core of ripeness policies.").

The need for courts to avoid entangling themselves in administrative matters is especially pressing when an agency's action has been challenged in court and the court has remanded back to the agency. In such circumstances, the remanding court has fulfilled its "duty" to "correct the error of law committed by that body"; it is then incumbent upon the court to "afford [the agency] the opportunity of examining the evidence and finding the facts as required by law." *Miami Tribe of Oklahoma v. United States*, 656 F.3d 1129, 1138 (10th Cir. 2011).

Recognizing that "[r]emands to administrative agencies" merely "mark a continuation of

11

the case," courts broadly recognize that remand orders "are not generally considered final decisions for jurisdictional purposes." *Caesar v. West*, 195 F.3d 1373, 1374 (Fed. Cir. 1999) (citing *Cabot Corp. v. United States*, 788 F.2d 1539, 1542 (Fed. Cir. 1986) ("An order remanding a matter to an administrative agency for further findings and proceedings is not final.")); *see also Miami Tribe of Oklahoma*, 656 F.3d at 1139 (10th Cir. 2011) (in a § 1291 context, "remand by a district court to an administrative agency for further proceedings is ordinarily not appealable because it is not a final decision."). "Where a matter is remitted to an administrative agency for further action and the agency has the power and duty to exercise discretion or to make an independent record, its function remains quasi-judicial and the order is not final." *Schreck v. Wyman*, 39 A.D.2d 809, 809 (N.Y. App. Div. 1972); *see also Kvidera v. Bd. of Fire & Police Comm'rs of Vill. of Schiller Park*, 168 Ill. App. 3d 380, 381, 522 N.E.2d 757, 758 (1988) (noting that a remand order to an administrative agency is not final "because it does not terminate the litigation between the parties on the merits"); *N. Am. Holding Corp. v. Murdock*, 6 A.D.2d 596, 599 (N.Y. App. Div. 1958) ("If . . . the agency still has the power and the duty to exercise residual discretion, to take proof, or to make an independent record, its function remains quasi-judicial and the [remand] order is not final.").

### 2. The D.C. Circuit's Remand Order was not a "Final" Decision; Rather, it Instructed the FCC to Continue Deliberations Regarding How to Bill for OTT VoIP Calls.

Here, the D.C. Circuit did not issue a final decision regarding how to bill for OTT VoIP calls. Instead, it remanded to the FCC to decide the question. AT&T itself admits that the issue is still pending before the FCC. *See id.* at ¶ 38 ("The FCC has not yet taken action in response to the remand."). This very District recently found the same. *Teliax,* 2017 WL 3839459 at *2 ("the issue of whether any services . . . constitute the 'functional equivalent' of end-office switching

remains an issue the FCC is currently grappling with. Accordingly . . . this is an undecided matter that the administrative agency tasked with clarifying this regulatory issue is currently deciding.").

Plaintiff's three claims (breach of contract, violation of the Communications Act, and declaratory judgment) are all premised on the unsettled legal question that is currently before the FCC. *See* Compl. at ¶¶ 62, 65, 69, 72–74, 81–84, 87–90, 92. Because the Court of Appeals' remand order specifically directed the FCC to re-explain its rationale with respect to OTT VoIP local switching charges, judicial review at this juncture would "inappropriately interfere" with the FCC proceedings and could lead to premature and conflicting determinations. *See Ohio Forestry Ass'n, Inc.*, 523 U.S. 726 (1998). A dismissal pursuant to Rule 12(b)(1) would properly "protect the [FCC] from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Stiles*, 654 F.3d at 1046 (citing *Abbott Labs*). This would allow the "contingent future event" to occur, thereby providing the finality and clarity necessary for the parties and the Court to resolve AT&T's claims. *See Texas,* 523 U.S. at 300 (1998).

### 3. The Abbott Labs Ripeness Factors Support Dismissal as to All Three Claims.

Each of the factors spelled out in *Abbott Labs*, 387 U.S. at 148–49, weighs in favor of dismissal for lack of ripeness. First, delayed review will not cause hardship to Plaintiff, a large telecommunications company that routinely engages in FCC proceedings and litigation over various access charges that it either pays or bills to others. Moreover, because the FCC has yet to act and issue a decision under the remand order, there is no final confirmation as to how the OTT VoIP switched access charges at issue will be regulated. Therefore, Plaintiff's "claimed harms

13

are contingent, not certain or immediate," a fact which favors dismissal and weighs strongly against any hardship finding. *See Utah*, 210 F.3d at 1197.

Second, as explained above, allowing this case to proceed will interfere with the FCC's decision-making scope and authority. Third, and relatedly, because this matter involves complex regulatory issues in the telecommunications industry, the Court would benefit from the FCC's further findings and factual development. *Utah*, 210 F.3d at 1197 ("While judicial intervention would probably not inappropriately interfere with further administrative action, we would benefit from further factual development of the issues presented.") (affirming dismissal for lack of ripeness). Such further findings and factual development are necessary to avoid potentially premature and conflicting results, given that the FCC's ruling would be "binding on the district courts and not subject to review except by the federal courts of appeals." *Chavez v. Advantage Grp.*, 959 F. Supp. 2d 1279, 1282 (D. Colo. 2013).

For these reasons, AT&T's claims are premature so long as the underlying legal issues remain pending before the FCC. The claims should therefore be dismissed for lack of ripeness.

C. **[*THIS SENTENCE AS ORIGINALLY FILED WITH THE COURT CONTAINS CONFIDENTIAL INFORMATION WHICH HAS BEEN REDACTED FROM THE PUBLICLY FILED VERSION OF THIS DOCUMENT*].**

[*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*] [*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*]  [*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*] Therefore, even if AT&T contends that its rights arise from contract law rather than a

yet-to-be-issued final administrative decision on OTT VoIP billing, its claims still rest upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas*, 523 U.S. at 300.

> 1. *[This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.]*

[*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*] *Sea Tow Servs. Int'l, Inc. v. Pontin*, 472 F. Supp. 2d 349, 357 (E.D.N.Y. 2007) (citation omitted). Therefore, when a breach has yet to occur, or where the evidence demonstrates that duties underlying the plaintiff's claims are contingent upon specific events occurring which have yet to occur, courts routinely dismiss such claims as unripe. *See, e.g., Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F. Supp. 2d 293, 295 (S.D.N.Y. 2003) (concluding that defendant's obligations under contract were never triggered by a required contingent action and dismissing plaintiff's claims for contractual damages under Rule 12(b)(1) as unripe and "premature").

[*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*] "The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." *Willsey v. Gjuraj*, 65 A.D.3d 1228, 1229–30 (N.Y. App. Div. 2009) (citations omitted); *see also G3-Purves St., LLC v. Thomson Purves, LLC*, 101 A.D.3d 37, 40 (N.Y. App. Div. 2012) ("[W]hen interpreting a contract, the court should arrive at a construction which will give fair meaning to all of the language employed by the parties to reach *a practical interpretation* of the expressions of the parties so that their reasonable expectations will be realized.") (emphasis added) (citations and internal quotation marks omitted). "In analyzing contractual text, a court

need not turn a blind eye to context. Rather, a court should accord [contractual] language its plain meaning giving due consideration to the surrounding circumstances [and] apparent purpose which the parties sought to accomplish." *In re Coudert Bros.*, 487 B.R. 375, 389 (S.D.N.Y. 2013) (citations and internal quotation marks omitted).

[*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*]

[*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*]

Marsh Dec., Exhibit 1 at 3 (emphases added); *see also* Compl. at ¶¶ 34, 62, 65, 69, 72–74, 81–84, 87–90, 92. [*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*] [*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*] *Id.* But the D.C. Circuit's order did not settle this question; as noted above, it merely remanded to the FCC for further consideration. [*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*]

### 2. *[This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.]*

AT&T may argue that the terms of the Agreement are ambiguous—"a question of law to be decided by the Court." *Coudert Bros.*, 487 B.R. at 389 (citation omitted). "To determine whether a writing is unambiguous, language should not be read in isolation because the contract must be considered as a whole." *NRT New York, LLC v. Harding*, 131 A.D.3d 952, 954 (N.Y. App. Div. 2015) (citations omitted); *see also Sayers v. Rochester Tel. Corp.*

16

*Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d. Cir. 1993) ("[O]ur task is to determine whether [contractual] clauses are ambiguous when read in the context of the entire agreement.") (citations and internal quotation marks omitted). "If the language of the contract is susceptible of more than one reasonable interpretation, the contract will be considered ambiguous." *Id.* (citations omitted). However, "[a] contract should not be interpreted to produce a result that is absurd . . . or contrary to the reasonable expectations of the parties." *In re Lipper Holdings, LLC*, 1 A.D.3d 170, 171 (N.Y. App. Div. 2003) (citations omitted).

[*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*] The D.C. Circuit instructed the FCC to provide a clearer explanation of the basis for its decision that end-office switching charges could be assessed on OTT VoIP calls. This leaves open the possibility that the FCC could revisit the issue and reach the same outcome. [*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*][5]

This proposed construction is absurd. *See In re Lipper Holdings, LLC*, 1 A.D.3d at 171. [*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*]

3. **[This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.]**

[*This sentence as originally filed with the Court contains confidential information which

---

[5] [*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*] Without a crystal ball, it would be impossible for the parties to comply in advance with terms to be set later by the FCC.

*has been redacted from the publicly filed version of this document.*] "If the terms of the complete written contract are unclear, ambiguous or contradictory . . . the parol evidence rule permits the consideration of [extrinsic] evidence in order to ascertain the true meaning of the terms." *Mun. Capital Appreciation Partners, I, L.P. v. Page*, 181 F. Supp. 2d 379, 391 (S.D.N.Y. 2002) (citations omitted); *see also Wayland Inv. Fund, LLC v. Millenium Seacarriers, Inc.*, 111 F. Supp. 2d 450, 454 (S.D.N.Y. 2000) ("If the terms are ambiguous or contradictory, . . . the [parol evidence] rule permits the consideration of such evidence not to alter the terms but solely to ascertain the true meaning of the terms."); *Stage Club Corp. v. W. Realty Co.*, 212 A.D.2d 458, 459 (N.Y. App. Div. 1995) (noting that extrinsic evidence should not be precluded "to clarify an ambiguity caused by the absence of particulars from the writing, provided that the parol evidence to be introduced does not contradict the written agreement").

[*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*] [*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*]  *See* Marsh Dec., Exhibit 2.  [*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*] *See* Marsh Dec., Exhibit 2 ([*confidential information redacted from publicly filed version of this document*]) (emphasis added).

This makes perfect sense because, as described above and as admitted in the Complaint, the Court of Appeal's order merely sent the issues back to the FCC for further explanation and did not make any conclusive determinations; the FCC, not the Court of Appeals, will decide the issue. [*This sentence as originally filed with the Court contains confidential information which

*has been redacted from the publicly filed version of this document.*] As noted above, any other interpretation would be absurd and unlawful.

[*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*] [*This sentence as originally filed with the Court contains confidential information which has been redacted from the publicly filed version of this document.*] Therefore, the Court should dismiss all three claims as unripe pursuant to Fed. R. Civ. P. 12(b)(1).

## IV.  CONCLUSION

For the reasons stated above, Defendant Level 3 Communications, LLC respectfully moves the Court to dismiss the Complaint in its entirety.

Respectfully submitted this 21st day of March, 2018.

By: */s/ Charles W. Steese*
Charles W. Steese, #26924
Douglas N. Marsh, #45964
Martin J. Estevao, #46260
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
csteese@armstrongteasdale.com
dmarsh@armstrongteasdale.com
mestevao@armstrongteasdale.com

*Attorneys for Defendant Level 3 Communications, LLC*

## CERTIFICATE OF SERVICE

I, Charles W. Steese, hereby certify that on March 21, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Rebecca B. DeCook
Andrew T. Flynn
Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1027
becky.decook@moyewhite.com
andrew.flynn@moyewhite.com

Micahel J. Hunseder
Justin A. Benson
Sidley Austin, LLP
1501 K Street, NW
Washington, D.C. 20005
202-736-8000
mhunseder@sidley.com
jbenson@sidley.com

*Attorneys for Plaintiff AT&T Corp.*

/s/ Charles W. Steese
Charles W. Steese