IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00112-RM-MEH

AT&T CORP.,

    Plaintiff,

v.

LEVEL 3 COMMUNICATIONS, LLC,

    Defendant.

---

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

    This lawsuit stems from a billing dispute between two providers of telecommunications services: Plaintiff AT&T Corporation (a long distance, inter-exchange carrier) and Defendant Level 3 Communications, LLC (a local exchange carrier or "LEC"). The parties disagree on the appropriate rate for Level 3's provision of certain services to AT&T. AT&T contends it is entitled to a refund based on *AT&T Corporation v. FCC*, 841 F.3d 1047 (D.C. Cir. 2016). But Level 3 does not consider that decision to be "final" for purposes of the governing contract because the D.C. Circuit remanded to the Federal Communications Commission ("FCC") and that remand remains pending. Level 3 therefore moves to dismiss AT&T's complaint under Federal Rule of Civil Procedure 12(b)(1) on the ground that AT&T's claims are not yet ripe for adjudication. Because I agree the claims are not yet ripe, I respectfully recommend that the Court grant the motion to dismiss based on lack of subject matter jurisdiction and dismiss this action without prejudice.

# BACKGROUND

## I. Facts

Level 3 is a local exchange carrier and AT&T provides long distance telephone services. Compl. ¶¶ 12, 13, ECF No. 1. Level 3 provides telecommunications services to AT&T under a contract. *Id.* ¶ 8. The parties are currently embroiled in a dispute over the rates billed for a type of local access service. Although those rates are regulated by the FCC, they also can be negotiated in contracts between LECs and long distance carriers. *Id.* ¶ 14. The calls at issue are referred to as "over-the top (OTT) VoIP calls," because they are routed using a type of Voice over Internet Protocol ("VoIP") through high-speed internet obtained by the callers themselves. *Id.* ¶ 2. AT&T takes the position that these calls should be classified as "tandem" switching services and billed at a lower rate; by contrast, Level 3 believes they should be classified as "end office" switching services and billed at a higher rate. *Id.* ¶ 23.

Both the FCC and the D.C. Circuit Court of Appeals have spoken on this issue. In 2015, the FCC issued a Declaratory Ruling in *In re Connect America Fund*, 30 FCC Rcd. 1587 (2015)— a proceeding to which AT&T was a party. That ruling (which expanded upon a 2011 decision by the FCC) found that OTT VoIP calls qualify as end office switching services, not tandem switching services. *Id.* at 1588–89, ¶ 3. AT&T appealed the Declaratory Ruling. *See AT&T Corp. v. FCC*, 841 F.3d 1047 (D.C. Cir. 2016). The D.C. Circuit vacated the ruling and remanded to the FCC for "further explanation." *Id.* at 1049.

In May 2015, amidst the uncertain outcome of the pending appeal, AT&T and Level 3 executed a Release and Settlement Agreement (the "Agreement") to try to resolve their billing dispute. *See* Mot. to Dismiss, Exh. 1, ECF No. 15-1. Among other topics, the Agreement addressed the parties' difference of opinion about the appropriate charges for OTT VoIP calls. *Id.*

at 2–4. For instance, it provided that Level 3 would refund AT&T if the D.C. Circuit overturned the Declaratory Ruling, with payment due after the appellate decision "becomes final and is no longer subject to further appeal or other judicial review." *Id.* at 3, ¶ 1(a)(iv). AT&T has made some payments under the Agreement but has withheld others. Compl. ¶¶ 26, 28–29. AT&T concedes that Level 3 has complied with portions of the Agreement, but asserts that Level 3 has not provided a required refund and continues to bill AT&T improperly, using higher rates. *Id.* ¶¶ 47–57. AT&T also questions the percentage of calls that Level 3 has designated to be OTT VoIP calls for billing purposes. *See id.* ¶¶ 39–46.

## II. Procedural History

AT&T filed its complaint on January 16, 2018, asserting claims for (1) breach of contract; (2) violations of the FCC's rules on VoIP calls and the Communications Act of 1934, 47 U.S.C. §§ 201(b), 203, and 251(b)(5); and (3) declaratory judgment. Level 3 filed its motion to dismiss on February 14, 2018 (ECF No. 14). AT&T filed its opposition to that motion on March 23, 2018 (ECF No. 48). Level 3 filed a reply brief in support of its motion on April 4, 2018 (ECF No. 52).

## **LEGAL STANDARD**

Level 3 seeks a dismissal under Rule 12(b)(1), which empowers a court to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015) (recognizing that federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Id.* (quoting *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013)).

Any such dismissal is without prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006).

Level 3 challenges jurisdiction on ripeness grounds. "[F]or a claim to be justiciable under Article III, it must be shown to be a ripe controversy." *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995); *see also Alto Eldorado P'ship v. County of Santa Fe*, 634 F.3d 1170, 1173 (10th Cir. 2011) (explaining that the "[r]ipeness doctrine is rooted both in the jurisdictional requirement that Article III courts hear only 'cases and controversies' and in prudential considerations limiting our jurisdiction"). "Ripeness is peculiarly a question of timing, intended to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract agreements. In short, the doctrine of ripeness is intended to forestall judicial determinations of disputes until the controversy is presented in 'clean-cut and concrete form.'" *New Mexicans for Bill Richardson*, 64 F.3d at 1499 (brackets and internal citations omitted) (quoting *Renne v. Geary*, 501 U.S. 312, 313 (1991)); *see also Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967) (discussing the need "to protect the agencies from judicial interference until an administrative decision has been formalized"). For example, "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)).

The question of ripeness properly falls within a Rule 12(b)(1) motion to dismiss. *New Mexicans for Bill Richardson*, 64 F.3d at 1499. A Rule 12(b)(1) motion "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). Even so, a Rule 12(b)(1) movant may go beyond those allegations "by presenting evidence to challenge the factual basis

4

upon which subject matter jurisdiction rests" without converting the motion into one for summary judgment. *Maldonado v. Prudential Ins. Co. of Am.*, No. 10-cv-00074-PAB-MEH, 2011 WL 819751, at *1 (D. Colo. Mar. 2, 2011). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Pueblo of Jemez*, 790 F.3d at 1151. Accordingly, AT&T bears the burden of establishing that this Court has jurisdiction to hear its claims.

The Supreme Court has articulated three factors to consider in evaluating ripeness: "(1) whether delayed review would cause hardship to the plaintiff; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Utah v. U.S. Dep't of the Interior*, 210 F.3d 1193, 1196 (10th Cir. 2000) (citing *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998)). Stated otherwise, courts must assess "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* (quoting *Abbott Labs.*, 387 U.S. at 149).

## **ANALYSIS**

The parties dispute whether OTT VoIP calls should be classified as lower-priced "tandem switching services" (AT&T's preference) or higher-priced "end office switching services" (Level 3's preference) for billing purposes. Level 3 contends this issue is not ripe for the Court's consideration because (1) AT&T's claims are not triggered until entry of a final order resolving this question and (2) the question is still pending before the FCC on remand from the D.C. Circuit. Mot. to Dismiss at 11–20. AT&T counters that it is entitled to a refund under the Agreement because Level 3 is misreading the contract; it also argues that the triggering event has occurred because the D.C. Circuit's opinion is final. Resp. to Mot. to Dismiss at 8–19.

5

To assess whether this Court has subject matter jurisdiction, I first examine the substance and procedural history of several critical rulings by the FCC and the D.C. Circuit on this very topic. Next, I consider how a remand affects finality, paying close attention to the language of the Agreement. Against that backdrop, I apply the relevant factors to evaluate ripeness, guided by a decision issued by a court in this District in a similar lawsuit. In the end, I conclude that AT&T has not satisfied its burden to establish subject matter jurisdiction.

I.      **Relevant Administrative and Judicial Decisions**

The FCC regulates rates for inter-carrier compensation—a complicated task given the regulatory system's origin in the pre-internet world and the continuing evolution of the internet. *See AT&T Corporation v. FCC*, 841 F.3d 1047, 1048 (D.C. Cir. 2016) (discussing the challenges posed by the "ongoing transition of American telephony to the Internet"). In 2011, the FCC issued a Transformation Order in *In re Connect America Fund*, 26 FCC Rcd. 17663 (2011). This order was part of the FCC's "broad effort to update its system for regulating intercarrier compensation." *AT&T Corp.*, 841 F.3d at 1048. Relevant here, the order defined "End Office Access Service" and "Tandem-Switched Transport Access Service"; it also allowed a VoIP provider and its LEC to charge for providing the "functional equivalent" of end office or tandem switching services, whichever was at issue. *See id.* at 1048–49. The functional-equivalence concept is important because the services performed by LECs like Level 3 do not fall into a black-and-white classification system for billing purposes.

As a follow-up to the Transformation Order, the FCC issued a Declaratory Ruling in *In re Connect America Fund*, 30 FCC Rcd. 1587 (2015)—a proceeding to which AT&T was a party. In

6

the Declaratory Ruling, the FCC rejected AT&T's position and found that OTT VoIP calls qualify as end office access services, not tandem switching services. *Id.* at 1588–89, ¶ 3.

AT&T appealed the Declaratory Ruling to the D.C. Circuit, challenging it on two grounds: first, the ruling cannot be upheld as an interpretation of the Transformation Order; and second, it was arbitrary and capricious for the FCC to apply its "interpretation" retroactively to AT&T. In *AT&T Corporation v. FCC*, the D.C. Circuit engaged in a comprehensive analysis of the FCC's two rulings. The court outlined numerous deficiencies in the FCC's "functional equivalence" analysis, referring to its "muddled treatment of functional equivalence" and its failure to provide "distinctive . . . criterion" to assess it. 841 F.3d at 1054, 1056. Ultimately, the court vacated the Declaratory Ruling and remanded to the FCC for "further explanation," effectively seeking a better explanation of the phrase "functional equivalent" to enable the court "to sustain [the] conclusion" that the services provided by OTT VoIP-LEC providers are the "functional equivalent" of end office switching:

> [W]e must uphold the Commission unless its proffered interpretation is "plainly erroneous or inconsistent with the regulation." If the *Declaratory Ruling* fails that test, then imposition of the fees would require a change in the Commission's rules, which could occur only through the usual notice-and-comment rulemaking under the Administrative Procedure Act. In the end, we find that the *Declaratory Ruling* does not disclose the Commission's reasoning with the requisite clarity to enable us to sustain its conclusion."

*Id.* at 1049 (internal citations omitted) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)). The court declined to reach AT&T's retroactivity argument.

Level 3 filed a petition for rehearing, which was denied. *See AT&T Corp. v. FCC*, No. 15-1059 (D.C. Cir. Feb. 6, 2017) (denying petitions for rehearing and rehearing en banc). The D.C. Circuit issued its mandate to the FCC on February 15, 2017, but the FCC has not yet taken any action in response to the remand. Another telecommunications provider, CenturyLink,

7

recently filed a Petition for Declaratory Ruling, in which it urged the FCC to "complete the remand" from the D.C. Circuit so as to resolve the underlying dispute regarding the proper interpretation of its rules; in response; the FCC invited comments from interested parties, to be completed by July 3, 2018. FCC Public Notice, 2018 WL 2316903 (May 18, 2018).

## II. Finality Principles

Level 3's motion ultimately turns on the finality of the D.C. Circuit's decision in *AT&T Corporation v. FCC*, 841 F.3d 1047 (D.C. Cir. 2016). According to Level 3, AT&T's claims are triggered under the Agreement if, and only if, that decision becomes final; additionally, the decision's finality comes into play during an evaluation of the second and third ripeness factors.

Notably, AT&T frames its Complaint in terms of the very issue before both the FCC and the D.C. Circuit:

> In May 2015, during the pendency of an appeal by AT&T to [the D.C. Circuit] from an order of the [FCC], AT&T and Level 3 entered into [an agreement] that provided for various billings and payments between the parties, depending in part upon the outcome of that appeal. The issue before both the FCC and the Court of Appeals was whether Level 3 and other carriers could charge AT&T the relatively high rates for "local switching" access services (also known as "end office" switching) when routing a certain type of telephone call. . . . The issue in front of the FCC and the Court of Appeals was whether carriers routing over-the-top VoIP traffic may lawfully charge the higher end office switching rates typically associated with the connection to last-mile facilities, such as those provided by facilities-based VoIP carriers that actually operate the infrastructure connection between the internet and the callers. Level 3 had prevailed on this issue at the FCC, and in November 2016, AT&T prevailed on this issue in the D.C. Circuit.

Compl. ¶¶ 1–3. The Complaint is peppered with allegations that presume the finality of the *AT&T* decision. *See, e.g.*, *id.* ¶ 3 ("once AT&T prevailed on the appeal and the appeal process completed"); ¶ 37 ("the D.C. Circuit decision in *AT&T* became final as of May, 2017"); ¶ 62 ("30 days after the D.C. Circuit in *AT&T* became final and no longer subject to further review"); ¶ 72 ("in or around May, 2017, when the D.C. Circuit's decision in *AT&T* became final"); ¶ 81 ("after

8

the D.C. Circuit's decision in *AT&T* became final"); ¶¶ 82–83, 89 ("Since the D.C. Circuit's decision in *AT&T* became final.").

Finality is a threshold issue in this lawsuit, because the Agreement clearly defines the parties' respective obligations in relation to a "final" decision by the D.C. Circuit:

> Although the Parties agree that this Settlement Agreement is intended to be a full and final settlement of all disputes and balances associated with OTT traffic prior to June 1, 2015, the Parties also recognize the pendency of the OTT Appeal. Therefore, ***in the event the OTT Declaratory Order is overturned, either in whole or in part, and the applicable order on appeal becomes final and is no longer subject to further appeal or other judicial review ("Final Appellate Order")***, Level 3 will refund, within 30 days, fifty percent (50%) of the disputed OTT charges beginning with June 2015 traffic through the date on which such Final Appellate Order becomes final and is no longer subject to further appeal or other judicial review; provided, however, that if the *OTT Declaratory Order* is overturned in part, and not in whole, then Level 3 will only be required to refund OTT charges to the extent they should not have been charged in accordance with the Final Appellate Order. . . .

Mot. to Dismiss, Exh. 1 at 3, ¶ 1(a)(iv) (emphasis added). Stated otherwise, the Court cannot assess whether a breach has occurred absent the triggering events highlighted above.

"Where a written contract is free from ambiguity, it . . . will be enforced according to its plain language." *Running Foxes Petroleum, Inc. v. Nighthawk Prod. LLC*, 175 F. Supp. 3d 1279, 1287 (D. Colo. 2016). Under the plain language of the Agreement, three conditions are relevant to finality: (1) the Declaratory Order must be "overturned, either in whole or in part"; (2) the D.C. Circuit's decision must "become[] final"; and (3) the D.C. Circuit's decision can "no longer [be] subject to further appeal or other judicial review." *See* Mot. to Dismiss, Exh. 1 at 3, ¶ 1(a)(iv). AT&T focuses primarily on the last condition, stating that "[n]either the FCC, Level 3, nor any other intervenor sought Supreme Court review of the D.C. Circuit decision." Resp. to Mot. to Dismiss at 7. This is true, but AT&T must still meet the preceding conditions.

Though AT&T presents a fairly convincing argument based on the definition of "vacate,"

9

*see id.* at 11, whether the Declaratory Order was "overturned" still strikes me as debatable. After all, the D.C. Circuit did not reject the FCC's position outright; instead, the court offered the agency a second chance to explain its reasoning. There remains at least a possibility that the FCC will articulate its reasoning in a manner that will withstand further review by the D.C. Circuit. Indeed, the standard of review applicable to agency rulings is quite stringent. *See San Juan Citizens All. v. Stiles*, 654 F.3d 1038, 1046 (10th Cir. 2011) (explaining that a circuit court "can set aside an agency decision if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'") (quoting 5 U.S.C. § 706(2)(A))).

In any event, there is no dispute that the FCC is actively considering the issue presented here. *See* Compl. ¶ 38 (acknowledging that "[t]he FCC has not yet taken action in response to the remand"). It therefore seems clear to me that the pending remand readily defeats the second condition of finality. My conclusion finds firm support in case law discussing the interplay between finality and remands in a related context. "It is well settled law that 'the remand by a district court to an administrative agency for further proceedings is ordinarily not appealable because it is not a final decision.'" *W. Energy All. v. Salazar*, 709 F.3d 1040, 1047 (10th Cir. 2013) (brackets omitted) (quoting *Bender v. Clark*, 744 F.2d 1424, 1426 (10th Cir. 1984)) (collecting cases); *accord Baca-Prieto v. Guigni*, 95 F.3d 1006, 1008 (10th Cir. 1996) (characterizing this position as "the prevailing view"). The Federal Circuit has taken a similar approach to the Tenth Circuit's. *See, e.g.*, *Caesar v. West*, 195 F.3d 1373, 1374 (Fed. Cir. 1999) ("Remands to administrative agencies, because they mark a continuation of the case, are not generally considered final decisions for jurisdictional purposes.") (dismissing appeal for lack of subject matter jurisdiction because appellant challenged a non-final order of the United States Court of Appeals for Veteran Claims); *Cabot Corp. v. United States*, 788 F.2d 1539, 1543 (Fed.

Cir. 1986) (citing cases) (stating that a district court "order remanding a matter to an administrative agency for further findings and proceedings is not final").

AT&T discounts this authority because it speaks to ***district*** court remands to agencies, *see* Resp. to Mot. to Dismiss at 12 n.5, not remands by an appellate court. But in the absence of binding authority addressing the precise scenario presented here, I find this case law to be persuasive in illustrating the general lack of finality engendered by remands to an administrative agency.

### III.  Ripeness Factors

The Agreement, the lack of finality due to the remand, and the continuing uncertainty engendered by the remand all affect my analysis of the ripeness factors. *Utah v. U.S. Dep't of the Interior*, 210 F.3d 1193, 1196 (10th Cir. 2000). Collectively, those factors require the Court to assess "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).

The first factor is "whether delayed review would cause hardship to the plaintiff." *Id.* The only hardship articulated by AT&T is financial. *See* Resp. to Mot. to Dismiss at 8–9 ("Withholding consideration . . . would cause significant hardship to AT&T, which (1) has been denied several million dollars in refunds it is already owed, (2) has been charged excess rates for over-the-top traffic since the Final Appellate Order in May 2017, and (3) absent declaratory relief, will continue to face such charges into the future."). While I appreciate these financial stakes, a recent decision by this court convinces me that this monetary hardship must yield to the remaining factors: namely, "whether judicial intervention would inappropriately interfere with further administrative

11

action" and "whether the courts would benefit from further factual development of the issues presented." *Utah v. U.S. Dep't of the Interior*, 210 F.3d at 1196.

In *Teliax, Inc. v. AT&T Corporation*, No. 15-cv-01472-RBJ, 2017 WL 3839459 (D. Colo. Sept. 1, 2017), a court in this District addressed the uncertainty of the FCC's ruling head-on within the context of a similar billing dispute. There, too, AT&T refused to pay another telecommunications company (Teliax, Inc.) "certain 'end-office switching' charges because of its belief that the services Teliax provided to it [by routing OTT VoIP traffic] did not constitute end-office switching." *Id.* at *1. This court initially granted summary judgment in Teliax's favor, citing the Declaratory Order and "finding that the routing services Teliax provided to AT&T . . . constituted the functional equivalent of end-offices switching." *Id.* at *1–2. But on the heels of the D.C. Circuit's opinion, the court vacated that ruling and referred the case to the FCC for further guidance under the doctrine of primary jurisdiction:

> [B]ecause the D.C. Circuit remanded to the FCC for further clarification [on] this issue of what "functional equivalence" lawfully means, the opposite conclusion AT&T wants me to reach—i.e., that Teliax's services do *not* constitute the functional equivalent of end-office switching as a matter of law and that AT&T is therefore entitled to summary judgment in its favor—are not necessarily borne out either. In other words, even though the D.C. Circuit expressed in dicta its skepticism that over-the-top VoIP providers and LECs could lawfully charge for end-office switching. . . ***whether any services companies like Teliax provide constitute the "functional equivalent" of end-office switching remains an issue the FCC is currently grappling with***.

*Id.* at *2 (emphasis added). Another district court has followed suit, adopting the reasoning in *Teliax*. *See Peerless Network, Inc. v. MCI Commc'ns Servs., Inc.*, No. 14-C-7417, 2018 WL 1378347, at *10–12 (N.D. Ill. Mar. 16, 2018).

Because this case is still in its initial stages, I do not think it is necessary—or efficient—to stay this case and invoke the doctrine of primary jurisdiction. Nor have the parties requested such

relief. Instead, AT&T tries to put a positive spin on *Teliax*, pointing out that the Court stayed Teliax's claims, rather than dismissing them for lack of jurisdiction. *See* Resp. to Mot. to Dismiss at 19. As explained below, however, the factors that support referral to an administrative agency substantially overlap with the second and third ripeness factors—lending further support to a finding that subject matter jurisdiction is lacking here.

In applying the doctrine of primary jurisdiction, this court aptly explained why the issue before the Court now is better suited for agency consideration and determination:

> Although it perhaps goes without saying, judges with no technical background in telecommunications are ill-prepared when compared to the FCC to decide what services if any performed by over-the-top VoIP-LEC providers constitute the "functional equivalent" of the end-office switching. Furthermore, it is quite clear that the FCC desires uniformity with respect to this issue as its previous attempt to do so through the [2015 Declaratory] Order evidences.

*Id.* at *3. These statements apply equally here. Level 3 has persuaded me that judicial intervention in this case might "inappropriately interfere with further administrative action" and that the court would certainly "benefit from further factual development of the issues presented"—namely, the FCC's position on the question before us. *See Utah v. U.S. Dep't of the Interior*, 210 F.3d at 1196. A situation in which an agency is considering a complicated issue within its purview on remand presents an exception to AT&T's contention that "questions of contract interpretation . . . are universally recognized as fit for judicial decision[] because they are questions of law." Resp. to Mot. to Dismiss at 8.

Simply put, I cannot see how the Court can rule on whether Level 3 violated the FCC's rules on VoIP calls and the Communications Act of 1934 given the uncertainty surrounding the relevant benchmarks for liability. This issue is far from being "in clean-cut and concrete form," as required by *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995).

Given the stakes, it is more important to resolve this dispute correctly than to do quickly.

**IV.     Counterclaims**

Finally, Level 3 has filed counterclaims for breach of contract and declaratory relief, seeking to recover amounts that have been withheld by AT&T and to obtain an order obligating AT&T to continue making payments under the Agreement until a final order issues on the billing question. *See* Countercls. of Def. Level 3 Communications, ECF No. 38. I do not consider the viability of those counterclaims within this Recommendation because that issue is not before the Court. Moreover, it seems to me that resolution of that issue would require additional briefing. AT&T equates its breach of contract claims with Level 3's claims for ripeness purposes, but it is not obvious from the record that they are in the same posture.

## CONCLUSION

The question that underlies this lawsuit—the rate applicable to OTT VoIP calls—remains undecided. Because the Agreement expressly conditions the parties' rights and obligations on a definitive ruling on this question, I conclude that AT&T's claims are not yet ripe such that this Court lacks subject matter jurisdiction. Accordingly, I respectfully recommend that the Court grant Level 3's motion to dismiss [filed February 14, 2018; ECF No. 14] without prejudice.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545

Allowing the FCC to resolve the pending question will clarify what is due under the Agreement, with the added benefit of ensuring that telecommunication companies like AT&T and Level 3 can adopt a uniform billing approach for OTT VoIP calls.

    Dated and entered at Denver, Colorado, this 1st day of August, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).