**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-RM-MEH

AT&T CORP.,

      Plaintiff,

v.

LEVEL 3 COMMUNICATIONS, LLC,

      Defendant.

---

**AT&T CORP.'S OBJECTIONS TO**
**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE [PUBLIC**
**VERSION]**

---

Pursuant to 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure, plaintiff AT&T Corp. ("AT&T") submits its written objections to the Recommendation of the Magistrate Judge entered on August 1, 2018 (Doc. 63) ("Recommendation"). The Magistrate Judge recommends that the Court dismiss AT&T's suit against Level 3 Communications, LLC ("Level 3") for breach of contract and violation of the Federal Communications Act on the grounds that AT&T's claims are not ripe. AT&T respectfully submits that the Recommendation misapplies ripeness principles, misapprehends finality principles, and misconstrues the parties' contract.

The Recommendation endorses Level 3's view that a federal court can properly *resolve* a dispute over the meaning of a contract—*i.e.*, adopt the defendant's interpretation of the contract over the plaintiff's interpretation—to conclude that this very dispute is unripe. Rec. at 1. But the very resolution of that issue confirms that this dispute is ripe, and Level 3 cited no authority to the contrary.

Moreover, the Recommendation misinterprets the contract. The contract provides that Level 3 will refund certain amounts paid by AT&T if (1) the D.C. Circuit overturned a ruling of the Federal Communications Commission ("FCC") that authorized those charges, and (2) the D.C. Circuit's judgment became final and no longer subject to further review. The Recommendation concludes that the D.C. Circuit's November 18, 2016 judgment vacating the FCC's ruling was not "final"—even though the D.C. Circuit issued its mandate and denied a petition for rehearing e*n banc* (and no party sought Supreme Court review)—because the *FCC might* issue a ruling years later on remand that re-authorizes the disputed charges (or the FCC *might*, in a newly filed and wholly independent proceeding, reintroduce its vacated rule). This interpretation misapprehends the principles governing the finality of an appellate judgment, renders the contract's "rate-adjustment" provision superfluous, and defeats the contract's purpose of avoiding uncertainty and delay.

Finally, AT&T's separate statutory violation claim under the Communications Act likewise is ripe. AT&T alleges that, since the D.C. Circuit nullified the FCC's ruling, Level 3 has been obligated by federal law to bill AT&T a lower rate, yet Level 3 continues to bill AT&T a higher rate. Judicial resolution of this claim will not interfere with any FCC proceedings—instituted on remand or otherwise—nor benefit from any such proceedings. Indeed, three other federal district courts have exercised jurisdiction over the same claim that AT&T asserts here.

## BACKGROUND

This case arises from a dispute over the rates that local telecommunications carriers, such as Level 3, charge long-distance carriers, such as AT&T, for calls that are routed, in part, over the Internet—so-called "over-the-top" Voice over Internet Protocol ("OTT VoIP") calls. A brief

overview of the nature of these calls and the agency and judicial proceedings relating to them helps place AT&T's complaint, and Level 3's motion to dismiss, in their proper context.

**Charges for Traditional Versus OTT VoIP Calls.** A traditional long-distance call travels from the caller's premises (such as a home or office) over a local carrier's "local loops" to its "end-office switch," where the call is connected to trunks that carry it to the caller's long-distance provider's network. The long-distance provider then delivers it (directly or indirectly) to the local carrier that serves the called party. The called party's local carrier, in turn, transports the call to one of its end-offices switches, where the call is placed on the local loop that connects to the called party's premises. *See* Compl. ¶¶ 12, 15; *see also AT&T Corp. v. FCC*, 841 F.3d 1047, 1049-50 (D.C. Cir. 2016) (cited in Compl., ¶ 36).

Local carriers charge long-distance carriers for carrying the long-distance calls to and from their customers' premises to the long-distance provider's network. This service is known as "switched access services," and it is priced at FCC-regulated rates. There are different rates for different switching functions performed along the call's path; for example, end-office (or "local") switches connect to fiber or copper lines that run to each customer's home or business. End-office switching has been the most expensive of access rates, because of the investment-intensive nature of the facilities involved and the limited economies of scale associated with these "last-mile" facilities. Compl. ¶¶ 14-16; *see also AT&T*, 841 F.3d at 1056. Switches that connect trunks to other trunks are called "tandem switches."  The wholesale rates associated with tandem switches traditionally have been lower than the end office rates.

By contrast, if an OTT VoIP provider exchanges long-distance calls with long-distance carriers, the OTT VoIP customer must buy broadband service from a different provider, like

Comcast, before the OTT VoIP software can be used to make phone calls over the Internet. The broadband provider often supplies the "last-mile" facilities for high-speed Internet service that connect directly to a home or business. *Id.* Thus, OTT VoIP service, rides "over the top" of the facilities of the Internet provider, which actually provides the expensive last-mile facilities over which the call rides to the subscriber. *See id.*; Compl. ¶¶ 17-19.

Prior to 2011, the charges, if any, that could be billed for OTT VoIP calls were unclear. In its "*Transformation Order*,"[1] however, the FCC explained that switched access charges were appropriate only when the provider actually provided the analogous function in the traditional phone service model. *Id.* ¶ 970; 47 C.F.R. § 51.913(b).

In 2015, however, a divided FCC purported to clarify its 2011 *Transformation Order* and authorized end-office access charges on OTT calls for reasons that AT&T claimed conflicted with its previous precedents, including its functional equivalence analysis. *Connect America Fund*, 30 FCC Rcd. 1587 (2015) ("*OTT Declaratory Order*"). AT&T filed a petition for review in the D.C. Circuit. Compl. ¶ 24.

**The Parties' Contract.** While AT&T's appeal was pending, the parties executed a Release and Settlement Agreement to resolve their dispute over the proper rates for OTT VoIP calls. *See* Doc. 15-1 (the "Agreement") at 2. *First*, AT&T agreed to pay Level 3 over ██████████ % of the usage and late payment charges billed by Level 3 for over-the-top traffic from 2011 through March 2015, when AT&T filed its appeal. *Id.* at 2, § 1(a)(i)(A). *Second*, AT&T agreed to pay ██ % of the amount Level 3 charged for such traffic between April 1 and May 31, 2015. *Id.* at 2,

---

[1] *In re Connect Am. Fund*, 26 FCC Rcd. 17663, ¶¶ 933-71 (2011) ("*Transformation Order*").

§ 1(a)(i)(B). Neither payment was contingent upon the outcome of AT&T's appeal.

*Third*, for the period from June 1, 2015 through the date of the "Final Appellate Order" (as defined in the Agreement), AT&T agreed to pay ▉▉% of Level 3's end-office switching rate for OTT VoIP traffic with telephone numbers assigned to Level 3, in accordance with the FCC's *OTT Declaratory Order*. *See* Agreement at 3, § 1(a)(ii) & p. 1. But because of the "pendency of the OTT Appeal," these payments *were* subject to an express right of refund:

> in the event the *OTT Declaratory Order* is *overturned*, either in whole or in part, and the applicable order on appeal becomes final and is no longer subject to further appeal or other judicial review ("Final Appellate Order"), Level 3 will refund, within 30 days, ▉▉▉▉▉▉▉▉▉%) of the disputed OTT charges beginning with June 2015 traffic through the date on which such Final Appellate Order becomes final and is no longer subject to further appeal or other judicial review.

*Id.* at 3 § 1(a)(iv) (emphasis added). This provision went on to say: "if the *OTT Declaratory Order* is overturned in part, and not in whole, then Level 3 will only be required to refund OTT charges to the extent they should not have been charged in accordance with the Final Appellate Order." *Id.*

In addition to this refund obligation, the Agreement included a rate-adjustment provision. Specifically, it provided "that any billing and payments for OTT traffic exchanged after such Final Appellate Order becomes final shall be in compliance with [the] terms of that order." *Id.*

**The D.C. Circuit Decision.** The D.C. Circuit vacated the *OTT Declaratory Order*. The court found that the FCC had failed to explain how the functions performed on over-the-top VoIP calls were equivalent to end-office switching. *AT&T*, 841 F.3d at 1052-54. Statements in the FCC's 2011 *Transformation Order* seemed "[o]n their face … to deny an over-the-top provider authority to charge end-office switching rates" *id.* at 1054, and the FCC had elsewhere been "remarkably clear, even emphatic" that local switching entailed interconnection of "tangible connections" to callers, and not placing calls onto the Internet. *Id.* at 1056. The *OTT Declaratory Order* "falls

down in its failure to explain why [the] failure to provide interconnection is not fatal to the claim that [a local carrier and its VoIP partner] provide the functional equivalent of end-office switching." *Id.*

Level 3 and other intervenors sought rehearing, which was denied; and the Court issued its mandate. *See* Orders (Per Curiam), *AT&T Corp. v. FCC*, No. 15-1059 (D.C. Cir. Feb. 6, 2017). Neither the FCC nor any intervenor sought Supreme Court review of the D.C. Circuit decision.

**Level 3's Breach Of The Contract.** By vacating the *OTT Declaratory Order*, the D.C. Circuit "overturned" it in "whole." The D.C. Circuit's judgment became a "Final Appellate Order" as of May 2017, after the D.C. Circuit issued its mandate and no party sought Supreme Court review. The contract required Level 3 to issue a refund 30 days later, but Level 3 has failed to do so and has continued to charge end-office switching rates on over-the-top calls. Compl. ¶¶ 53-57.

AT&T filed this suit alleging that Level 3 breached its refund and rate-adjustment duties under the contract and seeks damages as well as declaratory and injunctive relief for those breaches. As an alternative to the rate-adjustment claim, AT&T sued Level 3 for charging rates on over-the-top traffic that violate federal law. Level 3 moved to dismiss, claiming that the Court lacks jurisdiction because AT&T's claim are unripe. Doc. 14.

**The Recommendation.** The Magistrate Judge recommends granting Level 3's motion. The Magistrate Judge recognized that Level 3's motion "turns on the finality of the D.C. Circuit's decision in *AT&T Corp. v. FCC*," "because the Agreement clearly defines the parties' respective obligations in relation to a 'final' decision *by the D.C. Circuit*." Recommendation at 8, 9 (emphasis added). "Under the plain language of the Agreement," he emphasized, "three conditions are relevant to finality: (1) the [FCC's] Declaratory Order must be 'overturned, either in whole or in

part'; (2) the D.C. Circuit's decision must 'become[] final'; and (3) the D.C. Circuit's decision can 'no longer [be] subject to further appeal or other judicial review.'" *Id.* at 9 (quoting Agreement).

Although the Magistrate Judge noted AT&T's "fairly convincing argument" that the D.C. Circuit had "overturned" the *OTT Declaratory Order*, he considered that issue debatable. *Id.* at 9, 10. Ultimately, however, he rested his recommendation on his view "that the pending remand [before the FCC] defeats the second [contractual] condition of finality." *Id.* This conclusion, he stated, was supported by cases holding that district court decisions remanding matters to an agency are not considered final. *Id.* at 10-11.

Relying on that conclusion, the Magistrate Judge applied the ripeness factors traditionally considered in determining whether a court should adjudicate a challenge to an agency action, and accepted Level 3's view "that judicial intervention in this case might inappropriately interfere with further administrative action and that the court would certainly benefit from further factual development of the issues presented—namely, the FCC's position on" the rate local carriers can charge for handling over-the-top VoIP calls. *Id.* at 13. The Magistrate Judge reached this conclusion with respect to both AT&T's contract and statutory claims. *Id.* at 13-14. As to the former, he stated that "the rate applicable to [over-the-top] VoIP calls … remains undecided" and, "[b]ecause the *Agreement* expressly conditions the parties' rights and obligations on a definitive ruling on *this question*, I conclude that AT&T's claims are not ripe." *Id.* at 14 (emphases added).

## ARGUMENT

## I. AT&T OBJECTS TO THE RECOMMENDATION THAT ITS CONTRACT CLAIMS ARE UNRIPE.

As the Magistrate Judge recognized, Level 3's contractual refund and rate-adjustment duties are tied "to a 'final' decision by the D.C. Circuit," as defined by the Agreement. *Id.* at 9.

The Magistrate Judge erred, however, in concluding that the parties' dispute over the meaning of the Agreement's definition of a "Final Appellate Order" is unripe. That error includes both the Recommendation's misapplication of ripeness principles to the parties' contract dispute and its erroneous interpretation of the Agreement. Consequently, AT&T objects to each of these errors and submits that, under the applicable *de novo* standard of review, *see* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), *Garcia v. Family Dollar Stores of Colorado, Inc.,* No. 16-cv-02348, 2017 WL 3498955 at *1 (D. Colo. Aug. 16, 2017) (*citing United States v. 2121 E. 30 St.*, 73 F.3d 1057, 1060 (10th Cir. 1996)), the Court should reject the recommendation to dismiss AT&T's contract claims as unripe.

### A.      AT&T's Contract Claims Are Ripe.

In evaluating whether breach-of-contract claims are ripe, the Tenth Circuit considers "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Salt Lake Tribune Publ'g. Co. v. Mgmt. Planning, Inc.*, 454 F.3d 1128, 1140 (10th Cir. 2006). The fitness inquiry turns on "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* This precondition to a finding that AT&T's contract claims are unripe does not exist.

AT&T alleges that Level 3 has breached its obligations under the Agreement to refund previously paid rates and to adjust those rates on a going-forward basis. As the Magistrate Judge recognized, both duties are triggered by "a 'final' decision by the D.C. Circuit." *Id.* at 9. And, as the Magistrate Judge also recognized, the "plain language of the Agreement" established "three conditions" for determining whether the decision in *AT&T Corp. v. FCC* is a "Final Appellate Order": "(1) the [FCC's] Declaratory Order must be 'overturned, either in whole or in part'; (2)

the D.C. Circuit's decision must 'become[] final'; and (3) the D.C. Circuit's decision can 'no longer [be] subject to further appeal or other judicial review.'" *Id.* (quoting Agreement).

The parties dispute the meaning of these contractual conditions and whether the D.C. Circuit's decision satisfies them. But the *meaning* of these conditions does not depend in any way on uncertain or contingent future events. The Court can determine now what these conditions mean and whether they are satisfied. The parties' dispute, therefore, is clearly ripe. *See Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 671 (9th Cir. 2005) (contract claim ripe where the parties "disagreed as to what [the contract] means" and "the dispute has measurable financial consequences"); *Hartford Fire Ins. Co. v. Peninsula Logistics, Inc.*, No. 6:14-cv-00154, 2014 WL 1416339 at *2 (M.D. Fla. Apr. 11, 2014) (dispute over indemnification duty "turned on the interpretation of the policy, and was therefore ripe for declaratory relief prior to the resolution of the underlying case" against insured); *Davis v. Farmers Ins. Co.*, No. 4:17-cv-1191, 2017 WL 4758887 at *3 (E.D. Mo. Oct. 20, 2017) (coverage dispute ripe where insurer "denied coverage based on its reading of the Policy" and the "only remaining task [was] contract interpretation").

In fact, the Magistrate Judge did decide (erroneously) what the second of these conditions means and that the D.C. Circuit's decision did not satisfy that condition. Recommendation at 10-11. The Recommendation thus proposes that the Court rely on a partial *resolution* of a dispute over the meaning of the contractual term "Final Appellate Order" to rule that the parties' dispute over the meaning of that very term is unripe. That outcome is illogical.

Level 3 cited no authority that justifies such an outcome. Instead, it cited cases in which a plaintiff's failure to satisfy *undisputed* preconditions to insurance coverage led to dismissal of breach of contract claims as unripe. *See Duane Reade, Inc. v. St. Paul Fire & Mar. Ins. Co.*, 261

F. Supp. 2d 293, 295 (S.D.N.Y. 2003) (damages claim for breach of insurance contract unripe where it was "undisputed" that plaintiff had not filed a proof of loss, which was a precondition to insurance payment); *Brooklyn Hosp. Ctr. v. Westport Ins. Corp.*, No. 03 CIV. 5190 (BSJ), 2004 WL 868208, at *3 (S.D.N.Y. Apr. 21, 2004) (same where plaintiff "concede[d] … that it failed to submit a formal proof of loss"). In neither case did the court resolve the merits of a dispute over the meaning of a contract provision in order to dismiss a breach of contract claim as unripe.[2]

In short, there is no basis for concluding that the parties' dispute over the meaning of the Agreement turns on "uncertain or contingent future events." *Salt Lake Tribune*, 454 F.3d at 1140. As the Magistrate Judge implicitly recognized, the Court need not await future events to determine (1) the meaning of the contractual term "Final Appellate Order" and (2) whether the D.C. Circuit's decision satisfies the three conditions that define that term. Those issues can be resolved now, but the proper way to resolve them is through a motion for judgment on the pleadings or for summary judgment, both of which involve an exercise—not a disavowal—of jurisdiction.[3]

Accordingly, the other ripeness factors are irrelevant. Because the issues are fit for judicial determination, it is enough to show, as AT&T has, that "the dispute has measurable financial

---

[2] Level 3 also cited *Duane Reade, Inc. v. St. Paul Fire & Mar. Ins. Co.*, 279 F. Supp. 2d 235, 236 n.1 (S.D.N.Y. 2003) (*Duane Reade II*), where the court dismissed the insured's claims based on its failure to submit valuation aspects of the claim to an appraiser, which was another precondition to coverage. Nothing in the opinion indicates that the parties disputed the meaning of this precondition or that the court construed it in order to determine ripeness. Level 3 also cited *United Steelworkers of Am. v. Rome Indus., Inc.*, 437 F.2d 881 (5th Cir. 1970), and *Warren v. Fox Family Worldwide, Inc.*, 171 F. Supp. 2d 1057 (C.D. Cal. 2001), but neither involved the ripeness doctrine.

[3] *See Remington v. Newbridge Sec. Corp.*, No. 13-cv-60384, 2013 WL 4496504 at *3 (S.D. Fla. Aug. 20, 2013) (improper to "engage in contract interpretation at the motion to dismiss stage. [Such] arguments are appropriate for summary judgment"); *cf. Yellowbird Bus Co. v. Lexington Ins.*, 2010 WL 2766987 at *3-*9 (E.D. Pa. July 12, 2010) (declining to dismiss claims as unripe under Rule 12(b)(1), but dismissing under Rule 12(b)(6) where contract's meaning was plain).

consequences." *Robinson*, 394 F.3d at 671; *see also AT&T Corp. v. FCC*, 349 F.3d 692, 700 (D.C.

Cir. 2003) (noting, in a case involving suit against an agency, that "where there are no institutional

interests favoring postponement of review, a petitioner need not satisfy the hardship prong").

Moreover, a determination that, as of May 2017, the D.C. Circuit's decision became a Final

Appellate Order within the meaning of the Agreement—and thus triggered Level 3's refund

obligations under the Agreement—cannot "inappropriately interfere with further administrative

action," or "benefit from" such administrative action. Recommendation at 13. A judicial

interpretation of a private contract has no bearing on how the FCC decides to interpret its

regulations on remand from the D.C. Circuit. Nor will an FCC interpretation of its regulations shed

any light on the meaning of the phrase "Final Appellate Order" in a private contract.

Similarly, a judicial determination of the meaning of the Agreement's rate-adjustment

requirement—*i.e.*, that Level 3 charge rates "in compliance with [the] terms of" the Final Appellate

Order, Agreement, at 3 § 1(a)(iv)—will not "benefit from" the FCC's interpretation of its

regulation. The Recommendation's contrary conclusion, *see id.* at 13, 15, rests, once again, on

improper resolution of the parties' dispute. AT&T contends that the D.C. Circuit's decision is the

Final Appellate Order and that it bars Level 3 from charging end-office switching rates unless and

until the FCC issues a new ruling that re-authorizes such rates (and that ruling survives judicial

review). Level 3 contends that the Final Appellate Order is a future judicial decision upholding a

future FCC ruling establishing rates for OTT VoIP calls. Waiting for such a future FCC ruling,

which may never come to pass, will not help determine which parties' interpretation of the rate-

adjustment provision is correct. Instead, waiting for such a ruling effectively adopts Level 3's

position and rejects AT&T's position. Courts cannot simultaneously choose sides in a contract

dispute while concluding that the dispute is unripe.

**B.      Level 3's Interpretation Of The Disputed Provisions Is Wrong.**

Even if it were proper to interpret the Agreement to conclude that a claim is not ripe, the Court should reject the Recommendation's reading of the Agreement.   The contract terms governing Level 3's refund and rate-adjustment duties have clear meanings that are flatly inconsistent with the interpretation Level 3 advances as a basis for dismissing the complaint.

**1.      Level 3's Refund Duty.**

The triggering events for Level 3's refund duty are [1] that "the *OTT Declaratory Order* is overturned … in whole … and [2] the applicable order on appeal becomes final and [3] is no longer subject to further . . . judicial review ('Final Appellate Order')." Agreement at 3, § 1(a)(iv). The Magistrate Judge recognized that the third condition is met. Recommendation at 9. The D.C. Circuit's decision plainly satisfies the other conditions as well.

The requirement that the *OTT Declaratory Order* be "overturned … in whole" refers to an appellate decision that *vacates* the *OTT Declaratory Order.* "To 'vacate' . . . means 'to annul; to cancel or rescind; to declare, to make, or to render, void; to defeat; to deprive of force; to make of no authority or validity; to set aside.'" *Action on Smoking & Health v. CAB*, 713 F.2d 795, 797 (D.C. Cir. 1983) (citation omitted). A judicial decision that "annul[s]" and "void[s]" an agency order indisputably "overturn[s]" that order "*in whole.*"

This conclusion is not rendered "debatable" simply because the D.C. Circuit gave the FCC "a second chance to explain its reasoning." Recommendation at 10. When the D.C. Circuit concludes that an agency's action or conclusions must be set aside, it can remand without vacating if it believes the agency's reasoning was not seriously flawed. *See Allied–Signal, Inc. v. U.S.*

*Nuclear Regulatory Comm'n,* 988 F.2d 146, 150-51 (D.C. Cir. 1993). In its appeal, AT&T asked for vacatur, not because the FCC could *never* authorize end-office switching rates for over-the-top VoIP calls (at least on a prospective basis), but because it had done so improperly in the *OTT Declaratory Order*. Alternatively, AT&T asked for a remand with instructions to impose such rates only prospectively. Br. of Pet'r AT&T Corp., at 55, *AT&T Corp. v. FCC*, No. 15-1059 (D.C. Cir. Aug. 10, 2015) ("AT&T D.C. Cir. Br.").

It is simply untenable to conclude that, in linking its refund right to the outcome of its appeal, AT&T would use the phrase "overturned … in whole" to specify a type of judicial victory that it was not even seeking—*i.e.*, an order *foreclosing* the FCC from re-authorizing end-office switching rates. That interpretation is particularly implausible because such an outcome is extremely rare. *See FCC v. Nat'l Citizens Comm. for Broad.*, 436 U.S. 775, 792 n.15 (1978) ("absent *extraordinary circumstances*, the function of the reviewing court ends when an error of law is laid bare. At that point the matter once more goes to the Commission for reconsideration") (emphasis added).[4] It simply makes no sense to conclude that AT&T would have agreed that, even if it won its appeal and obtained all the relief it requested, it could get a refund only if the D.C. Circuit went beyond the relief AT&T requested and issued an extraordinary ruling *prohibiting* the FCC from re-authorizing end-office switching rates for over-the-top VoIP calls.

Nor does the remand render the D.C. Circuit's judgment non-final. *See* Recommendation at 10. In concluding otherwise, the Magistrate Judge relied on cases holding that a remand by a

---

[4] *See also PPG Indus. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995) ("[u]nder settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards.").

district court to an administrative agency is not appealable because it is not a final decision. *Id.* But this "administrative remand" rule implements the finality requirement of 28 U.S.C. § 1291, which is a jurisdictional limit on the authority of appellate courts to review district court decisions. *See* C.A. Wright, A. Miller & E. Cooper, 15B *Federal Practice and Procedure*, § 3914.32 at 237-39 (1991). There is no finality requirement for Supreme Court review of circuit court decisions, *see* 28 U.S.C. § 1294, and thus no analogue to § 1291's "administrative remand" rule—which is why the Supreme Court routinely reviews appellate decisions remanding matters to agencies. *See*, *e.g.*, *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009).

Instead, an appellate judgment becomes "final" when the court issues its mandate. Indeed, it is black letter law that "'[i]ssuance of the mandate formally marks the end of appellate jurisdiction.'" *In re Sunset Sales, Inc.*, 195 F.3d 568, 570 (10th Cir. 1999) (quoting *Johnson v. Bechtel Assocs. Prof'l Corp.*, 801 F.2d 412 (D.C. Cir. 1986)). This is why the time prescribed for issuance of the mandate "is frequently the same as, or slightly longer than, the time for petitioning for rehearing," as this timing "allow[s] for the filing of a timely petition for rehearing *before the decision becomes final*." R. Stern, *Appellate Practice in the United States* (2d ed. 1989) at 466 (emphasis added). Moreover, the D.C. Circuit treats agency remands not as interim relief in an ongoing appeal, but "as terminated cases, and any appeal from a remanded rule is treated as a new case and sent to a randomly selected panel." P. Wald, *Regulation at Risk: Are Courts Part of the Solution or Most of the Problem?*, 67 S. Cal. L. Rev. 621, 640-41 (1994). As sophisticated litigants frequently involved in appellate challenges to FCC rules and decisions, the parties are properly presumed to have intended to incorporate these principles of *appellate* finality—not inapposite rules pertaining to district court decisions—when they defined a Final *Appellate* Order.

Not only is the Magistrate Judge's interpretation of the "finality" requirement inconsistent with settled legal principles, it leads to an internal inconsistency in the Recommendation. Although the Magistrate Judge recognized that the Agreement tied Level 3's refund and rate-adjustment duties "to a 'final' decision *by the D.C. Circuit*," Recommendation at 9 (emphasis added), his misunderstanding of the finality requirement ultimately led him to the very different (and erroneous) view that the "Agreement expressly conditions the parties' rights and obligations on a definitive ruling on [a legal] question"—*i.e.*, "the rate applicable to OTT VoIP calls," *id.* at 14— *by the FCC*. The parties could have written the Agreement that way—indeed, Level 3 improperly introduced a Term Sheet that shows that the parties knew how to tie Level 3's obligations to a "final ruling, either from the Court of Appeals or, if remanded, by the FCC." *See* Doc. 15-2. But they did *not* write the Agreement that way, much less "expressly" include such a condition.

And for good reason: tying Level 3's refund and rate-adjustment duties to a definitive resolution of the underlying legal question frustrates the Agreement's purpose of "avoid[ing] further uncertainty, expense and delay." Agreement at 3, § 1(a)(iv). The FCC has taken no action to resolve that question since the D.C. Circuit's decision became final well over a year ago, and the FCC may not act for years if ever. Indeed, Level 3 acknowledges that such resolution "*may never occur.*" Doc. 14 at 9 (emphasis added).[5] An Agreement that obligates AT&T to pay end-office switching rates indefinitely (or perhaps in perpetuity) even if it won its appeal and the D.C. Circuit nullified the only decision permitting such charges does not "avoid further uncertainty,

---

[5] The FCC has before it, for example, a case that was remanded by the D.C. Circuit over 12 years ago and has yet to address it. *See AT&T Inc. v. FCC*, 452 F.3d 830 (D.C. Cir. 2006). Moreover, in this case, while the FCC recently issued a request for comments related to a newly-filed petition concerning OTT VoIP calls, there is no deadline for the FCC to act on the petition.

expense and delay." Agreement at 3, § 1(a)(iv). Nor is it plausible that AT&T would agree to pay ███████████ in exchange for a refund right that was contingent, not on the outcome of its then-pending appeal, but on future agency action that might never occur.

## 2.     Level 3's Rate-Adjustment Duty.

Dismissal of AT&T's contract claims on ripeness grounds would also effectively—and impermissibly—render the Agreement's rate-adjustment provision meaningless. That provision states "that any billing and payments for OTT traffic exchanged after such Final Appellate Order becomes final shall be in compliance with the terms of that order." Agreement at 3, § 1(a)(iv). The Magistrate Judge concluded that this duty is triggered only after there is a "definitive ruling on th[e] question" of what rate is "applicable to OTT VoIP calls." Recommendation at 14.

Thus, according to the Magistrate Judge and Level 3, this provision requires Level 3 to charge rates in compliance with a future appellate decision that upholds a future FCC decision establishing the proper rates for OTT VoIP calls. But this is an utterly meaningless contractual "right." It goes without saying that Level 3 must comply with FCC-established rates that have been upheld on appeal. Federal law dictates this. *See* 47 U.S.C. § 201. It is absurd to conclude that AT&T agreed to pay ███████████ in exchange for this hollow "right."

AT&T's interpretation, by contrast, gives meaning to this provision, and demonstrates why its claim that Level 3 has breached its duty under the provision is ripe. The central thrust of AT&T's appeal was that (1) prior FCC decisions had established that end-office switching rates could not be charged for OTT VoIP calls, because the processing of such calls did not involve the functional equivalent of end-office switching, (2) the FCC's *Transformation Order* rules incorporated these rules, and (3) the *OTT Declaratory Order* was an impermissible attempt to

change that rule without going through notice-and-comment rulemaking. *See* AT&T D.C. Cir. Br. at 24-41. The D.C. Circuit agreed that the FCC had failed to reconcile the *OTT Declaratory Order* with prior agency precedent and pronouncements, which made clear that the functions performed for over-the-top traffic are *not* functionally equivalent to end-office switching. Indeed, the court cited statements in the *Transformation Order* that, "[o]n their face … seem to deny an over-the-top provider authority to charge end-office switching rates," *AT&T*, 841 F.3d at 1054), and stressed the FCC's "emphatic" statements in a contemporaneous order that local switching entailed interconnection of "tangible connections." *Id.* at 1056. Indeed, by stating that it was difficult to understand "why [the] failure to provide interconnection is not *fatal* to the claim that [a local carrier and its VoIP partner] provide the functional equivalent of end-office switching," *id.* (emphasis added), the D.C. Circuit made clear that, under the FCC's 2011 rules, local carriers could *not* charge end-office rates for over-the-top traffic, and that the court was nullifying the order authorizing such charges because the FCC had failed to justify a contrary conclusion.

Thus, the D.C. Circuit's decision confirmed that the status quo prior to the *OTT Declaratory Order* was that end-office switching rates could not be charged for over-the-top traffic. And, by vacating the *OTT Declaratory Order*, the D.C. Circuit returned the parties to that status quo, while leaving open the possibility that the FCC could identify a valid rationale for changing that rule. Indeed, another federal court has recognized this very point. *See O1 Commc'ns, Inc. v. AT&T*, No. 3:16-cv-1452-VC (N.D. Cal. Dec. 19, 2017), (Doc. 106) Slip op. at 2 (without the *OTT Declaratory Order*, "existing law bars" imposition of end-office rates for over-the-top traffic). Accordingly, by providing that rates for over-the-top traffic exchanged after the D.C. Circuit's decision became final and no longer subject to further review (*i.e.*, traffic exchanged after

the Final Appellate Order) "shall be in compliance with the terms of that order," Agreement at 3, § 1(a)(iv), the rate-adjustment clause required Level 3 to stop charging end-office switching, which were impermissible prior to the *OTT Declaratory Order*, and became impermissible again once that order was vacated.[6]

* * *

In sum, the D.C. Circuit's decision "overturned" the *OTT Declaratory Order* "in whole," and became a Final Appellate Order in May 2017, triggering Level 3's refund and rate-adjustment obligations. Rather than dismiss the action, the Court should allow the parties to litigate the issue of the amount of the refund Level 3 owes under the Agreement.

## II.   AT&T OBJECTS TO THE RECOMMENDATION THAT ITS STATUTORY CLAIM IS RIPE.

AT&T's other claim is that the FCC's 2011 rules, properly interpreted, prohibit end-office charges on OTT VoIP traffic and that, by charging such rates, Level 3 is *currently* violating the Communications Act and overcharging AT&T. Compl. ¶¶ 71-85; *see* 47 U.S.C. § 206. The fact that Level 3 disputes AT&T's view of federal law establishes that this statutory claim is ripe. AT&T therefore objects to the Recommendation's contrary conclusion.

The fact that the FCC may (or may not) act on remand from the D.C. Circuit's decision does not render this dispute unripe. The doctrine of primary jurisdiction recognizes that both a federal court and a federal agency can simultaneously have authority to resolve a question of law

---

[6] Contrary to Level 3's claims, this interpretation of the rate-adjustment clause would not mean that, if the FCC later re-authorizes end-office rates for over-the-top traffic, Level 3 would be barred from charging those rates. Doc. 14 at 18. The "terms" of the Final Appellate Order authorize further agency proceedings, and thus would permit Level 3 to charge to end-office rates on over-the-top calls if a later FCC decision (that survives judicial review) authorizes such charges.

arising out of a regulatory scheme. *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1238–39 (10th Cir. 2007) (unlike administrative exhaustion, "which prevents a federal court from exercising jurisdiction over a claim," the doctrine of primary jurisdiction is specifically applicable to claims properly cognizable in court). That is precisely the situation raised by AT&T's statutory claim here. Thus, this Court can choose itself to resolve the question whether the FCC's 2011 rules authorize end-office rates for over-the-top traffic, as one other federal court has.   *See O1 Commc'ns, Inc. v. AT&T*, No. 3:16-cv-1452-VC (N.D. Cal. Dec. 19, 2017), (Doc. 106) Slip op. at 2. Or the Court can invoke the doctrine of primary jurisdiction, as two other courts have. *See Peerless Network, Inc. v. MCI Commc'ns Servs., Inc.*, No. 14-C-7417, 2018 WL 1378347 (N.D. Ill. Mar. 16, 2018); *Teliax v. AT&T Corp.*, No. 15-cv-01472, 2017 WL 3839459, at *3 (D. Colo. Sept. 1, 2017). Both of these options, however, involve exercises, not disavowals, of jurisdiction.

Nor is it true that resolving AT&T's statutory claims would improperly interfere with further administrative action. Recommendation at 13. AT&T is not suing the FCC in this case, much less asking this Court to direct an agency to conduct its proceedings in any manner. Resolution of AT&T's statutory claim, therefore, will not impede the FCC from reaching a decision, if any, on remand from the D.C. Circuit. The possibility that its decision will differ from this Court's is not a form of "interference." It is a function of the simultaneous authority that this Court and the agency have to resolve the question at issue in this case.

To the extent the Court believes it would benefit from a future FCC ruling, *see* Recommendation at 13-14, that is simply an argument in favor of a primary jurisdiction referral, not a basis for dismissing the case as unripe. Here, AT&T submits that, in light of the D.C. Circuit's recognition that end-office rates did not apply to over-the-top traffic prior to the *OTT Declaratory*

19

*Order*, it is entirely possible that the Court would derive no benefit from such a referral because, even if the FCC chooses to re-authorize such rates, it could do so on a prospective basis only, by amending its rules. Indeed, it is nearly certain that a retroactive authorization based on its current rules would face a very powerful judicial challenge.

## CONCLUSION

For the foregoing reasons, AT&T objects to the Magistrate Judge's Recommendation to grant Level 3's motion to dismiss and urges the Court to deny that motion in its entirety.

Dated: Aug. 15, 2018                                    Respectfully Submitted,

/s/ Rebecca B. DeCook
Rebecca B. DeCook, #14590
Andrew T. Flynn, #43843
MOYE WHITE LLP
1400 16th Street, 6th Floor
Denver, Colorado 80202-1027
Telephone: (303) 292-2900
E-mail: becky.decook@moyewhite.com
E-mail: andrew.flynn@moyewhite.com

Michael D. Warden
Michael J. Hunseder
Justin A. Benson
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
E-mail: mwarden@sidley.com
E-mail: mhunseder@sidley.com
E-mail: jbenson@sidley.com

*Attorneys for Plaintiff AT&T Corp.*

## CERTIFICATE OF SERVICE

I, Rebecca B. DeCook, hereby certify that on August 15, 2018, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system which will send notification of such

filing to the following:

Charles W. Steese, #26924
Douglas N. Marsh, #45964
Martin J. Estevao, #46260
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
Email: csteese@armstrongteasdale.com
Email: dmarsh@armstrongteasdale.com
Email: mestevao@armstrongteasdale.com

Attorneys for Defendant Level 3
Communications, LLC

/s/ Rebecca B. DeCook
Rebecca B. DeCook, #14590
MOYE WHITE LLP
1400 16th Street, 6th Floor
Denver, Colorado 80202-1027
Telephone: (303) 292-2900
E-mail: becky.decook@moyewhite.com

Attorney for Plaintiff AT&T Corp.