**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-MEH

AT&T CORPORATION,

      Plaintiff,

v.

LEVEL 3 COMMUNICATIONS, LLC,

      Defendant.

---

**LEVEL 3'S RESPONSE TO AT&T'S OBJECTIONS TO
RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
[PUBLIC VERSION]**

---

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................... 1

II.  Procedural and Factual Background ...................................................................... 2

III.  ARGUMENT ...................................................................................................... 6

A.  Legal Standard for Ripeness ........................................................................... 7

B.  AT&T's Claims are not Ripe for Adjudication because the Underlying Legal Issues are Pending on Remand to the FCC ............................................................................. 9

1.  As with any Contract, the Court Must Interpret the Settlement Agreement to Give Meaning to All of Its Provisions. ............................................................................ 9

2.  AT&T's Interpretation Negates the Settlement Agreement's Mandate that After Issuance of the Final Order, Level 3 Must Bill on OTT-VoIP Calls Consistent with the Final Order. ...................................................................................................... 10

3.  AT&T Inaccurately Claims that Current FCC Rules Prohibit LECs from Assessing End-Office Switching Charges on OTT VoIP Calls. ......................................................... 13

4.  A Remand to an Administrative Agency is Not a Final Decision. ............................. 18

C.  The Court has Jurisdiction to Determine its Own Jurisdiction ...................................... 20

D.  The *Abbott Labs* Ripeness Factors Support Dismissal of All Three Claims. ................ 22

IV.  CONCLUSION ................................................................................................... 24

Level 3 Communications, LLC ("Level 3" or "Defendant"), respectfully submits its response to the Objections of AT&T Corporation ("AT&T") to the Recommendation of the Magistrate Judge (ECF No. 63) ("Recommendation") pursuant to FED. R. CIV. P. 72(b)(1)(2), and requests that this Court grant Level 3's Motion to Dismiss (ECF No. 14) ("Motion") as recommended by the Magistrate Judge.

## I.  INTRODUCTION

In 2015, the Federal Communications Commission ("FCC") entered an order explaining that its rules permitted the assessment of end-office switching charges on over-the-top Voice-over-Internet-Protocol ("OTT-VoIP") calls. Shortly after this order was entered, AT&T and Level 3 entered into a Settlement Agreement to resolve their historic dispute over these types of charges. As part of the settlement, AT&T agreed to pay those charges in full going forward. However, the agreement also provided that AT&T would be entitled to a partial refund of those charges in the event that the FCC's 2015 order was overturned by a "final" order that vacated the FCC's decision and barred local exchange carriers ("LECs") like Level 3 from assessing end-office switching charges on OTT-VoIP calls.

In 2016, the D.C. Circuit Court of Appeals issued an order vacating the FCC's decision. But instead of barring these charges, it remanded to the FCC for further deliberations on the question of whether and when end-office switching charges could be assessed on OTT-VoIP calls.  As the Magistrate Judge and Judge Jackson have both recognized, the FCC is actively considering that issue even now; once its deliberations are completed, its new decision will also be subject to further appeal and judicial review.  Thus, as the Magistrate Judge recognized, the D.C. Circuit's order was not the "final" order the parties contemplated in their agreement.

AT&T nevertheless brought claims against Level 3, contending both that Level 3's assessment of these charges violates the Communications Act and that it must refund prior charges AT&T previously paid pursuant to the parties' agreement. Because AT&T's claims are predicated on a "final" order that has not yet been entered—and, indeed, may never be entered— and because the Court will benefit from the guidance the FCC will issue in resolving this dispute, AT&T's claims are not ripe for adjudication. The Magistrate Judge's recommendation that this Court grant Level 3's Motion to Dismiss therefore should be adopted in full.

## II.      PROCEDURAL AND FACTUAL BACKGROUND

The Magistrate Judge aptly set forth the facts of this case. *See* Recommendation at 2–3. Level 3 incorporates that explanation, as well as Level 3's factual summary from its Motion (*see* Motion at 3–9), by reference. Nevertheless, a few points merit discussion here.

The claims AT&T raised in its Complaint concern an agreement between the parties to settle a dispute dating back to 2011 regarding billing practices for OTT-VoIP telephone traffic— that is, telephone calls originated by or terminated to end users using their high-speed internet connection instead of a traditional telephone line. *See* Recommendation at 2; Motion at 4–5. When long distance carriers use a LEC's network to originate or terminate long distance calls, they pay the LEC what are known as "switched access charges." *See* Motion at 4. Switched access charges have several individual elements, one of which is end-office switching. This element is due when the call traverses the LEC's local switch or the "functional equivalent" of the local switch. 47 C.F.R. § 51.903(d)(3). The parties' historic dispute centered on whether

OTT-VoIP calls traversed the functional equivalent of the local switch.  *See* Motion at 3–4.[1]

Level 3, which operates as a LEC, maintained the charges were due.  AT&T, which operates as a

long distance carrier (otherwise known as an interexchange carriers or "IXC") claimed they were

not, and as a result, had withheld millions of dollars in such charges from Level 3. *See id.* at 5.[2]

  In 2015, the FCC considered this issue and agreed with Level 3, determining that rules it

promulgated in 2011 (*see In re Connect America Fund*, 26 FCC Rcd. 17663 (2011) (the

"*USF/ICC Transformation Order*") authorized LECs to assess end-office switching charges

regardless of whether they deliver the traffic to end users themselves or through arrangements

with VoIP service providers. *See* Motion at 5 (citing *In the Matter of Connect Am. Fund*, 30 FCC

Rcd. 1587 (2015) (the "OTT Declaratory Order"), ¶¶ 7, 31, 51).  This was so, the FCC

---

[1] AT&T suggests that end-office switching is a particularly expensive element of access rates because of the "investment-intensive nature of the facilities involved," such as the carrier's "local loops"—telephone lines connecting an end-user's premises to the local switch, "and the limited economies of scale associated with these 'last-mile' facilities." Objections at 3. AT&T thus appears to argue that LECs are authorized to assess higher end-office switching rates in order to recoup the costs of connecting to the end user. This is demonstrably false.

In 1997, the FCC adjusted its access compensation regime so that the costs associated with connecting end users to the LEC's end offices would be borne not by per-minute end-office switching charges paid by IXCs, but by flat-rate common line charges which, following regulatory reforms by the FCC, are paid by the end users directly to the LECs. *See In the Matter of Access Charge Reform Price Cap Performance Review for Local Exch. Carriers Transp. Rate Structure & Pricing End User Common Line Charges,* 12 FCC Rcd. 15982, 15998–99 (1997). In other words, end users directly pay the costs of connecting to the LECs' end offices, primarily through flat-rate common line charges such as end-user common line ("EUCL") charges and subscriber line charges ("SLC"). *Id.* at 15999. Contrary to AT&T's insinuations, end-office switching charges are *not* intended to compensate LECs for furnishing the costs of the facilities connecting to the end user's premises.

[2] As Level 3 noted in its Counterclaims, both Level 3 and AT&T operate at times as either IXCs or LECs. *See* Level 3's Counterclaims (ECF No. 38) ¶¶ 7–9. AT&T's claims nevertheless concern only its conduct as an IXC and Level 3's conduct as a LEC.

determined, because a LEC "in conjunction with its over-the-top VoIP provider partner provides the functional equivalent of end office switching." *Id.* (quoting OTT Declaratory Order at ¶ 31).

AT&T appealed this determination to the U.S. Court of Appeals for the District of Columbia Circuit. In May 2015, while AT&T's appeal was pending, AT&T and Level 3 entered into negotiations to resolve their historic dispute over unpaid charges for OTT-VoIP traffic. During these negotiations, AT&T sent Level 3 a "Settlement Proposal" which it described as its "████████████████████████." Exhibit 3 to Motion, ECF No. 15-3 (the "Term Sheet"). According to the Term Sheet, ████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████ *Id.* (emphasis added).

The parties' Settlement Agreement ultimately adopted this framework. Specifically, AT&T agreed to pay Level 3's end-office switching charges on OTT-VoIP traffic in full going forward; however, "██████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████," Level 3 would be required to refund a portion of the disputed OTT charges. Motion at 14 (quoting Exhibit 1 to Motion (the "Settlement Agreement" or "Agreement") at 3, § 1(a)(iv) (emphasis added)). The parties also agreed "████████████ ██████████████████████████████████████████████████ ██████████████████████" *Id.* (emphasis added). The Agreement thus expressly contemplated that the "final" order would be one that settled the question of the propriety of

billing end-office switching charges on OTT-VoIP calls, and that provided terms with which the parties could comply in billing end-office switching charges going forward.

When the D.C. Circuit decided AT&T's appeal, it vacated the FCC's ruling, determining the FCC "had not properly explained why the local carrier and its VoIP partner were performing the functional equivalent of end office switching on over-the-top VoIP calls." *AT&T Corp. v. FCC*, 841 F.3d 1047, 1049 (D.C. Cir. 2016) ("D.C. Circuit Order"). Yet it did not provide terms for the billing and payment of end-office charges for OTT-VoIP traffic. Nor did it decide that LECs were not performing the "functional equivalent" of end office switching on OTT-VoIP calls. Instead, it "remand[ed] the order to the Commission for further explanation." *Id.* As the Magistrate Judge recognized, the D.C. Circuit "effectively s[ought] a better explanation of the phrase 'functional equivalent' to enable the court 'to sustain [the] conclusion' that the services provided by OTT VoIP-LEC providers are the 'functional equivalent' of end office switching." Recommendation at 7 (quoting D.C. Circuit Order, 841 F.3d at 1049). By remanding the issue to the FCC, the D.C. Circuit did not enter a "final" order as contemplated in the parties' Agreement. Thus, the triggering event contemplated in the Agreement—a "final" order negating a LEC's ability to charge end-office switching charges on OTT-VoIP traffic—has yet to occur.

AT&T nevertheless brought this action against Level 3, claiming Level 3 breached the Settlement Agreement by failing to refund charges following the entry of the D.C. Circuit Order, and that Level 3 violated the Communications Act by continuing to assess end-office switching charges on OTT-VoIP traffic. *See* Complaint at ¶¶ 62–64, 72, 89.[3] These claims are expressly

---

[3] AT&T also resumed withholding payment on Level 3's end-office switching charges. As a result, Level 3 has asserted claims against AT&T for the payment of these charges. *See* Counterclaims of Defendant Level 3 Communications (ECF No. 38) at ¶¶ 31–34. As the

predicated on the mistaken notion that a "final order" or "final decision" has been issued that conclusively negates the ability to bill on OTT-VoIP calls. *See* Compl. at ¶¶ 34, 62, 65, 69, 72–74, 81–84, 87–90, 92.

Because the triggering event giving rise to the duties about which AT&T complains has not yet occurred, Level 3 moved to dismiss AT&T's claims as unripe. In his Recommendation on the Motion, the Magistrate Judge found that, under the plain language of the Agreement, the Court cannot assess whether a breach has occurred unless and until the D.C. Circuit's decision became "final" and could "no longer [be] subject to further appeal or other judicial review." Recommendation at 9. "[T]here is no dispute," the Magistrate Judge acknowledged, "that the FCC is actively considering the issue presented here"; this "pending remand," he recognized, "readily defeats the . . . condition of finality." *Id.* at 10. Finding that judicial intervention in this case would "inappropriately interfere with further administrative action" and that the Court would "benefit from further factual development of the issues presented," the Magistrate Judge concluded that AT&T's claims were not ripe and recommended that the claims be dismissed. *Id.* at 13 (quoting *Utah v. U.S. Dep't of the Interior*, 210 F.3d 1193, 1196 (10th Cir. 2000)).

## III.    ARGUMENT

The Settlement Agreement contemplates that the "final" order giving rise to the duties and rights on which AT&T's claims are based would settle the question of whether LECs can assess end-office switching charges on OTT-VoIP traffic, and requires the parties to conduct themselves consistent with the terms and requirements of that "final" order if and when it is

---

Magistrate Judge recognized, Level 3's claims are not in the same posture as AT&T's claims, and their validity is not before the Court. *See* Recommendation at 14. Indeed, AT&T's Objection to the Magistrate Judge's Recommendation does not so much as mention the Counterclaims.

entered. The D.C. Circuit Order is no such order; far from settling the issue, it remanded the question to the FCC, which is presently engaged in deliberations on that very issue. *See* FCC Public Notice, 2018 WL 2316903, at *1 (May 18, 2018) (calling for comments from the public on or before July 3, 2018, "to address disagreements over the application of the VoIP symmetry rule to long distance providers delivering traffic by partnering with 'over the top' VoIP service providers"). Thus, the triggering event on which AT&T's claims are based has not yet occurred. When the FCC does weigh in on this issue on remand from the D.C. Circuit, its guidance as to how the parties must conduct themselves will be not only helpful to this Court, but binding upon it. *See Chavez v. Advantage Grp.*, 959 F. Supp. 2d 1279, 1282 (D. Colo. 2013).  As both a matter of prudence and proper deference to the agency uniquely equipped to evaluate this issue, this Court should adopt the Magistrate Judge's Recommendation in full and dismiss this action.

## A.   LEGAL STANDARD FOR RIPENESS

The Magistrate granted Level 3's Motion to dismiss under FED. R. CIV. P. 12(b)(1) for lack of subject-matter jurisdiction because AT&T's claims are not yet ripe for adjudication. *See Bateman v. City of W. Bountiful*, 89 F.3d 704, 706 (10th Cir. 1996) ("a ripeness challenge, like most other challenges to a court's subject matter jurisdiction, is treated as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)"). In deciding a Rule 12(b)(1) motion, the Court may "go beyond allegations contained in the complaint" in order "to resolve disputed jurisdictional facts." *See Maldonado v. Prudential Ins. Co. of Am.*, No. 10-CV-00074-PAB-MEH, 2011 WL 819751, at *1 (D. Colo. Mar. 2, 2011). "The burden is on the plaintiff to provide evidence establishing that the issues are ripe for review." *Park Lake Res. Liab. Co. v. U.S. Dep't*

*of Agr.*, 197 F.3d 448, 450 (10th Cir. 1999) (citation omitted).  As the Magistrate found, AT&T did not meet its burden.

The "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *San Juan Citizens All. v. Stiles*, 654 F.3d 1038, 1046 (10th Cir. 2011) (citing *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)). The Magistrate spelled out the legal doctrine perfectly:

> Ripeness is peculiarly a question of timing, intended to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract agreements. In short, the doctrine of ripeness is intended to forestall judicial determinations of disputes until the controversy is presented in 'clean-cut and concrete form.'" *New Mexicans for Bill Richardson*, 64 F.3d at 1499 (brackets and internal citations omitted) (quoting *Renne v. Geary*, 501 U.S. 312, 313 (1991)); *see also Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967) (discussing the need "to protect the agencies from judicial interference until an administrative decision has been formalized"). **For example, "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"** *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)).

Recommendation at 4 (emphasis added).  AT&T does not take issue with the law cited by the Magistrate, but its application.

"To determine whether an issue is ripe for judicial review, [courts] must examine 'both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *San Juan Citizens All.*, 654 F.3d at 1046 (citing *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998)). To conduct this examination, the Magistrate recognized that courts "must consider: (1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues

presented." *Ohio Forestry Ass'n, Inc.*, 523 U.S. at 732–33 (citing *Abbott Labs*, 387 U.S. at 148–49); Recommendation at 5.

**B.  AT&T's Claims are not Ripe for Adjudication because the Underlying Legal Issues are Pending on Remand to the FCC.**

As Level 3 explained in its Motion, all three of AT&T's claims—one alleging breach of the Settlement Agreement, and two based on alleged violations of the Communications Act—are premised on the notion that the D.C. Circuit's decision conclusively decided the issue of whether LECs may assess end-office switching charges on OTT-VoIP calls. *See* Motion at 11, 13–14. Indeed, as the Magistrate Judge recognized, AT&T's Complaint "is peppered with allegations that presume the finality of the *AT&T* decision." Recommendation at 8. Just as Judge Jackson found in *Teliax Inc. v. AT&T,* the underlying legal issue is still pending before the FCC on remand from the D.C. Circuit. 2017 WL 3839459, *2 (D. Colo. Sept. 1, 2017) ("the issue of whether any services . . . constitute the 'functional equivalent' of end-office switching remains an issue the FCC is currently grappling with. Accordingly . . . this is an undecided matter that the administrative agency tasked with clarifying this regulatory issue is currently deciding."). AT&Ts claims are therefore premised on "contingent future events that may not occur as anticipated, or indeed may not occur at all."  As such, they are not ripe for adjudication.

> ### 1.  As with any Contract, the Court Must Interpret the Settlement Agreement to Give Meaning to All of Its Provisions.

Under New York law, which governs the Settlement Agreement's interpretation and enforcement (*see* Agreement at 6), "[a] breach of contract case . . . is ripe immediately upon the [alleged] breach, even where damages remain uncertain." *Sea Tow Servs. Int'l, Inc. v. Pontin*, 472 F. Supp. 2d 349, 357 (E.D.N.Y. 2007) (citation omitted). But where the evidence

demonstrates that duties underlying the plaintiff's claims are contingent upon specific events occurring which have yet to occur, courts routinely dismiss such claims as unripe. *See, e.g., Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F. Supp. 2d 293, 295 (S.D.N.Y. 2003) ("*Duane Reade I*") (concluding that defendant's obligations under contract were never triggered by a required contingent action and dismissing plaintiff's claims for contractual damages under Rule 12(b)(1) as unripe and "premature").

The dispositive question here is whether the Settlement Agreement imposes duties upon Level 3 to refund AT&T's payments if a "final" order has not yet issued after remand from the D.C. Circuit to the FCC. "The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." *Willsey v. Gjuraj*, 65 A.D.3d 1228, 1229–30 (N.Y. App. Div. 2009) (citations omitted). "In analyzing contractual text, a court need not turn a blind eye to context. Rather, a court should accord [contractual] language its plain meaning giving due consideration to the surrounding circumstances [and] apparent purpose which the parties sought to accomplish." *In re Coudert Bros.*, 487 B.R. 375, 389 (S.D.N.Y. 2013) (citations and internal quotation marks omitted).

### 2. AT&T's Interpretation Negates the Settlement Agreement's Mandate that After Issuance of the Final Order, Level 3 Must Bill on OTT-VoIP Calls Consistent with the Final Order.

Here, the plain language of the Agreement shows the parties understood the "final" order to be one that settled the question of whether LECs could assess end-office switching charges on OTT-VoIP calls. Importantly, the Agreement provides that, if the "final" order were to overturn the FCC's OTT Declaratory Order in part and not in whole, then " █████████████████

███████████████████████████████████████████████

██████████████████████" Agreement at 3, ¶ 1(a)(iv) (emphasis added). The parties further agreed that "████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" *Id.* (emphasis added). In other words, the Agreement calls upon the parties to bill and pay for end-office switching charges if and to the extent the FCC's rules so require, ***as determined by the "final" order***. If an order does not determine the terms and conditions with which the parties must comply, by definition, it cannot be the "final" order the Agreement describes.

But the D.C. Circuit Order offered no direction as to whether or to what extent Level 3 should or should not assess end-office charges for OTT-VoIP calls, and gave no terms with which the parties could comply in billing and paying for end-office switching. Instead, it remanded to the FCC for further deliberations on the question. Notably, AT&T acknowledges that the provisions of the D.C. Circuit Order "authorize further agency proceedings, and thus would permit Level 3 to charge to end-office rates on over-the-top calls if a later FCC decision (that survives judicial review) authorizes such charges." AT&T Corp.'s Objections to Recommendation of United States Magistrate Judge ("Objections") at 18, n.6. AT&T thus concedes that the legal issue underlying its claims is in fact subject to further review, including further appeal or judicial review. The Agreement defines the "final" order as one that is "██ ████████████████████████████████████████████████" Agreement at 3 (emphasis added). Thus, the D.C. Circuit's order cannot be the "final" order the Agreement contemplates.  Only after the FCC completes its pending consideration of the issue—which is occurring at this very moment—and appellate review of its determination is completed, can the parties assess and pay charges "████████████████" or "████████████████" the instruction they receive. Agreement at

3, ¶ 1(a)(iv). Until then, claims that Level 3 has breached the Settlement Agreement are premature; as the Magistrate Judge recognized, "the pending remand readily defeats the second condition of finality." Recommendation at 10.

AT&T suggests that these provisions of the Agreement are "utterly meaningless" if they apply only after a "final" order clarifies what it is the FCC's rules require; "[i]t goes without saying," it reasons, "that Level 3 must comply with FCC-established rates." Objections at 16. But the very essence of the parties' historic dispute was that they disagreed on whether the FCC's 2011 rules permitted end-office switching charges on OTT-VoIP calls. *See* Complaint at ¶ 26. The whole point of the Settlement Agreement was to settle the disputes and balances associated with OTT-VoIP traffic while AT&T's arguments on how to interpret the FCC's rules on this point were being considered. Agreement at 3, § 1(a)(iv). Because the D.C. Circuit remanded the issue to the FCC, that consideration is still ongoing; overturning the OTT Declaratory Order merely returned the state of the law where it was in 2015, before the Order was issued.  To adopt AT&T's proposed construction would thrust the parties back into the very uncertainty that the Agreement was intended to settle.

This is why the Agreement conditions the duties underlying AT&T's claims upon the finality of the legal proceedings deciding these issues. While these proceedings are pending, the parties can enjoy the peace and settled expectations the Agreement provided. These expectations change only when—and if—a "final" order vindicates AT&T's position; if that ever occurs, the parties would bill and pay for OTT traffic "in compliance with the terms of that order."[4]

---

[4] AT&T argues that the FCC's pending decision will likely have a prospective effect only, making it difficult to retroactively challenge charges assessed (or payments withheld). Objections at 20–21. This is mere speculation. After all, in its 2015 decision, the FCC gave its

### 3. AT&T Inaccurately Claims that Current FCC Rules Prohibit LECs from Assessing End-Office Switching Charges on OTT VoIP Calls.

AT&T attempts to justify its erroneous interpretation of the Settlement Agreement by claiming the D.C. Circuit Order *did* settle the question of whether Level 3 can assess end-office switching charges on OTT-VoIP traffic. *See* Objections at 17. But the D.C. Circuit did not believe so; otherwise, the remand to the FCC would have been a pointless exercise. "[R]emand is not required when it 'would be an idle and useless formality.'" *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 401 (2d Cir. 2005) (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969)) (the law "does not require that we convert judicial review of agency action into a ping-pong game"). If the question were so settled, the D.C. Circuit could have simply said so and reversed without remand. *See Crysler v. Astrue*, 563 F. Supp. 2d 418 (N.D.N.Y. 2008) (noting that reversal without remand is appropriate where "it would serve no useful purpose to remand the matter for further proceedings before the agency"). But, of course, it did not, because the question is *not* settled; it remains for the FCC to decide.[5]

---

ruling retroactive effect, because the FCC "intended" when it issued its 2011 rules that LEC's be able to bill end office switching on OTT-VoIP calls. OTT Declaratory Order, 30 FCC Rcd. 1587 ¶ 41. On remand, it may very well do so again.

[5] AT&T contends, citing its Petitioner Brief to the D.C. Circuit, that it was not seeking an order from the D.C. Circuit foreclosing the FCC from re-authorizing end-office switching rates, and that it therefore would not have agreed to a right to receive a refund only if the D.C. Circuit gave relief beyond what AT&T requested. Objections at 13. AT&T never raised this argument in its response to Level 3's Motion, which did not so much as mention the Petitioner Brief or arguments raised (or not raised) therein. Because this argument was not raised in response to the Motion, it is waived. *See Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996); *Nasious v. City & Cty. of Denver*, No. CIVA08CV00275-ZLWKMT, 2010 WL 330223, at *1 (D. Colo. Jan. 20, 2010).

The argument fails on its merits as well. The conclusion of AT&T's Petitioner Brief reads as follows: "For the foregoing reasons, the Court should vacate the *Declaratory Ruling.* In the alternative, the Court should remand the *Declaratory Ruling* to the Commission with instructions

Indeed, AT&T's suggestion that the D.C. Circuit Order "confirmed" some "status quo" prohibiting assessment of end-office switching rates for OTT-VoIP traffic (*see* Objections at 17) is refuted by the FCC's own decisions.  As the FCC explained in the OTT Declaratory Order, the dispute underlying that 2015 order concerned "the appropriate interpretation of the so-called 'VoIP symmetry' rule **that the Commission adopted in the 2011 *USF/ICC Transformation Order*.**"  30 FCC Rcd. 1587 ¶ 1 (emphasis added).   In addressing the question, the FCC determined, "***under the VoIP symmetry rule***," that "the call control functions jointly provided by a competitive LEC and its over-the-top VoIP partner are the functional equivalent of end-office switching."  *Id.* ¶ 29 (emphasis added).   Thus, the FCC acknowledged the "status quo" since 2011 was that these charges were permissible.[6]   In fact, the FCC found AT&T's argument to the contrary so "inconsistent with the VoIP symmetry rule as adopted in the *USF/ICC Transformation Order*" (*id.* ¶ 30) that the FCC applied its ruling retroactively, concluding that it

to revise that portion of the Ruling imposing retroactive application of monetary charges on AT&T." Thus, the primary relief AT&T requested was vacature and vacature alone, which would have settled the question without need to refer to the FCC for more deliberation; remand was requested as an alternative relief in the event the D.C. Circuit did *not* vacate, and was aimed solely at the issue of retroactivity. Furthermore, as shown herein, AT&T *did* condition its refund rights under the Agreement to a "final" order settling the question of whether LECs can bill end-office switching charges on OTT-VoIP calls, even if this required a remand to the FCC and appellate review of the FCC's subsequent deliberations. The plain language of the Agreement attests to this, and the Term Sheet confirms that this was the parties' understanding.

[6] Language from the FCC's 2011 decision promulgating these rules strongly supports this conclusion. The FCC stated that "We thus adopt rules making clear that origination and termination charges may be imposed under our transitional intercarrier compensation framework, including when an entity 'uses Internet Protocol facilities to transmit such traffic to [or from] the called party's premises.'" *USF/ICC Transformation Order*, 26 FCC Rcd. 17663 at ¶ 969. It then stated that "we adopt rules that permit a LEC to charge the relevant intercarrier compensation for functions performed by it and/or by its retail VoIP partner, 2025 regardless of whether the functions performed or the technology used correspond precisely to those used under a traditional TDM architecture." *Id.* at ¶ 970.

was "not changing our rules or our interpretation of them, and reject[ing] arguments that there was a reasonable reliance on a contrary interpretation." *Id.* ¶ 49.

When the D.C. Circuit vacated the 2015 order, it did not reject this interpretation outright; instead, it remanded to the FCC "for further explanation." D.C. Circuit Order, 841 F.3d at 1049. This action merely placed the parties back where they were before 2015: under the guidance of the 2011 rules, which the FCC interpreted as allowing LECs to bill end-office switching charges on OTT-VoIP in the OTT Declaratory Order. At worst, the "status quo" is an uncertain question the FCC will soon address on remand; and, as the Magistrate Judge acknowledged, "[t]here remains at least a possibility that the FCC will articulate its reasoning in a manner that will withstand further review by the D.C. Circuit." Recommendation at 10.

AT&T contends that another federal court has recognized that end-office switching rates cannot be charged for OTT-VoIP traffic consistent with the FCC's rules. *See* Objections at 17 (citing *O1 Commc'ns, Inc. v. AT&T,* No. 3:16-cv-1452-VC, 2017 WL 8294245 (N.D. Cal. Dec. 19, 2017)). As an initial matter, this position is contrary to a decision from Judge Jackson issued less than one year ago. *See Teliax Inc. v. AT&T,* 2017 WL 3839459, *2 (D. Colo. Sept. 1, 2017) ("because the D.C. Circuit remanded to the FCC for further clarification [on] this issue of what 'functional equivalence' lawfully means, the opposite conclusion AT&T wants me to reach— *i.e.*, that Teliax's services do *not* constitute the functional equivalent of end-office switching as a matter of law . . . are not necessarily borne out either. . . . [T]he issue . . . remains an issue the FCC is currently grappling with."). Moreover, the *O1* decision is two-pages long and lacks detail, suggesting both that *O1* failed to make any meaningful arguments, and also that the Court

did not make a serious effort to resolve the complicated legal question of whether end-office switching charges may be assessed on OTT-VoIP calls.

Indeed, the *O1* court determined the matter before it on very different grounds than what AT&T suggests.  Instead of finding the FCC rules did not permit end-office switching charges on OTT-VoIP calls, the court focused on the fact that "O1 *violated its own tariffs* by billing end office access rates" on OTT VoIP calls.  2017 WL 829425, at *2 (emphasis added). Because O1's tariffs did not permit the assessment of such charges, the court did not need to decide whether the FCC's rules permitted the charges. *See also AT&T Corp. v. YMax*, 26 FCC Rcd. 5742, 5761 n.7 (declining to address whether charges were permissible under FCC rules; "this Order addresses only the particular language in YMax's Tariff").  Here, by contrast, there is not and has never been any suggestion that Level 3's tariffs do not permit the assessment of end-office switching charges on OTT-VoIP calls. The question at issue here is the one pending before the FCC: whether the FCC's rules allow LECs to assess these charges on OTT VoIP calls.

AT&T also tries the other side of the same coin, suggesting that a decision by the FCC on this point may *never* issue and that the parties could not have plausibly conditioned the rights and duties specified in the Agreement "on future agency action that might never occur." Objections at 16. But there is nothing unusual about contracting for a contingency. That is exactly what the provision of the Agreement at issue does: it conditions certain rights upon the ultimate outcome of the litigation before the parties knew what that outcome would be, acknowledging the possibility that these conditions might never be satisfied. AT&T's concession that this contingency may never come to pass, and that the rights and duties of which it complains may never come into being, establish Level 3's position and the Magistrate Judge's recommendation

that AT&T's claims are not yet ripe. *See Texas*, 523 U.S. at 300 ("A claim is not ripe for adjudication of it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'").

Besides, AT&T can hardly be heard to complain that it could not have plausibly contemplated conditioning these rights upon the FCC taking action upon remand; it plainly did contemplate this possibility, and proposed it to Level 3 in the Term Sheet memorializing the parties' agreement.[7] Notably, the Court need not look beyond the plain language of the Agreement to find, as the Magistrate Judge did, that its meaning is clear on its face, and that the "final" order contemplated therein, unlike the D.C. Circuit Order, would resolve the ultimate underlying legal question of the propriety of billing end-office switching charges. *See* Recommendation at 9–10. But even where "the terms of the complete written contract are unclear, ambiguous or contradictory . . . the parol evidence rule permits the consideration of [extrinsic] evidence in order to ascertain the true meaning of the terms." *Mun. Capital Appreciation Partners, I, L.P. v. Page*, 181 F. Supp. 2d 379, 391 (S.D.N.Y. 2002) (citations omitted). Thus, even if there were any ambiguity in the plain language of the Agreement, the Term Sheet would dispel it. As the Term Sheet demonstrates, the parties understood that, in the event that the issues before the D.C. Circuit were remanded to the FCC, the rights and duties of

---

[7] AT&T largely ignores this Term Sheet in its Objections other than to claim in passing that Level 3 improperly introduced it. *See* Objections at 15. What was improper about its introduction, AT&T does not say. In its Response to Level 3's Motion, however, it claims the Term Sheet could not be used as evidence because it was sent to Level 3 subject to FED. R. EVID. 408. *See* Response (ECF No. 42) at 16, n.8. But this rule applies only where a settlement offer is used "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Here, the Term Sheet is not used as evidence that the FCC's 2011 rules require payment of end-office switching charges on OTT-VoIP calls, but to show what the parties intended by their Settlement Agreement.

which AT&T complains would come into being only after the FCC concluded its own deliberations, and after those deliberations were themselves subjected to judicial review.

In any event, as the Magistrate Judge acknowledged, "there is no dispute that the FCC is actively considering the issue presented here." Recommendation at 10. In fact, CenturyLink Inc.—the parent of Level 3—has submitted a petition for declaratory ruling to the FCC to "complete the remand" from the D.C. Circuit and resolve the dispute regarding the proper interpretation of the FCC's rules as to end-office switching charges for OTT-VoIP calls. FCC Public Notice, 2018 WL 2316903, at *1 (May 18, 2018).[8] The FCC is thus currently undertaking action to specify the terms under which LECs such as Level 3 may assess end-office switching charges for OTT-VoIP calls. Depending on the outcome of that action, the duties specified in the Agreement may or may not take effect.

Until they do, under the terms of the Agreement the rights and duties of which AT&T complains do not come into being.  At this stage, AT&T's claims rising are simply unripe.

### 4.   A Remand to an Administrative Agency is Not a Final Decision.

In support of his Recommendation, the Magistrate Judge also cited to "well settled law" that a remand to an administrative agency for further proceedings "is not a final decision." Recommendation at 10 (quoting, *inter alia*, *W. Energy All. v. Salazar*, 709 F.3d 1040, 1047 (10th Cir. 2013), *Cabot Corp. v. United States*, 788 F.2d 1539, 1543 (Fed. Cir. 1986) (stating that a district court "order remanding a matter to an administrative agency for further findings and proceedings is not final")). In its Objections, as in its response to Level 3's Motion, AT&T

---

[8] AT&T acknowledges as much, but counters that "there is no deadline for the FCC to act on the petition." Objections at 15, n.5. But then again, there was no deadline for the D.C. Circuit to decide the appeal from the FCC's OTT Declaratory Order either. The absence of any deadline to act is neither unusual nor remarkable.

claims this authority is inapposite to the extent it refers to remands to agencies by *district* courts instead of *appellate* courts. *See* Objections at 13–15; Recommendation at 11. This attempted distinction is meaningless. When they review administrative action, district courts *are* appellate courts: "Reviews of agency action in the district courts must be processed as appeals. In such circumstances the district court should govern itself by referring to the Federal Rules of Appellate Procedure." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994).[9]

AT&T's attempt to distinguish these authorities thus misses the point: whether a remand order is issued by a circuit court or a district court, "[r]emands to administrative agencies . . . mark a continuation of the case," as deliberations over the issues in dispute return from the appellate forum to the agency. Recommendation at 10 (quoting *Caesar v. West*, 195 F.3d 1373, 1374 (Fed. Cir. 1999)). Whether and at what point a decision may be appealed, the question on which AT&T focuses in its Objections, is neither here nor there. The parties' Agreement conditioned the complained-of duties on the issuance of a "final" decision that settled the question of how and whether Level 3 could assess end-office switching charges on OTT-VoIP calls. The D.C. Circuit Opinion merely continued deliberations on the issue; as such, it was not a "final" decision.

---

[9] Though district courts typically review actions of administrative agencies pursuant to the Administrative Procedure Act, appellate review of the OTT Declaratory Order proceeded directly to the D.C. Circuit because courts of appeals are given "exclusive jurisdiction" to determine the validity of FCC orders. 28 U.S.C. § 2342(1). Because review of FCC decisions is the exclusive domain of courts of appeals, an FCC ruling "is binding on the district courts and not subject to review except by the federal courts of appeals." *Chavez*, 959 F. Supp. 2d at 1282. As discussed below, the controlling weight of an FCC decision is all the more reason the Court should wait for the FCC to issue its forthcoming guidance on how to bill for OTT-VoIP calls before adjudicating AT&T's claims on that subject.

**C.    THE COURT HAS JURISDICTION TO DETERMINE ITS OWN JURISDICTION**

The primary thrust of AT&T's Objection is an argument that the Court cannot properly determine whether it has jurisdiction over AT&T's breach of contract claims if in doing so it must evaluate competing claims as to how the contract should be construed. *See* Objections at 9. Not so: as Level 3 noted in its Motion and supporting pleadings, "a court always has jurisdiction to determine its own jurisdiction." Level 3's Reply in Support of its Motion to Dismiss (ECF No. 52) ("Reply") at 2 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 (1998)). The Court thus "has the jurisdiction to determine whether contractual conditions precedent . . . have been fulfilled" as "a question for threshold judicial resolution." Reply at 2 (quoting *Anagnostopoulos v. Union Tpk. Mgmt. Corp.*, 300 A.D.2d 393, 394, 751 N.Y.S.2d 762 (2002)).

AT&T suggests that the Court has authority to determine threshold jurisdictional questions only if those questions are undisputed, and that the Court thus cannot decide a dispute over the meaning of a contract provision in order to dismiss a breach of contract claim as unripe. *See* Objections at 10. But this too happens all the time. For example, in *Duane Reade I,* 261 F. Supp. 2d at 295, the court dismissed two breach of contract claims as unripe where the plaintiff had not yet filed proofs of losses, a condition precedent to raising the contractual claims. And even after the plaintiff filed these proofs, the court dismissed the contract claims as unripe again when the plaintiff failed to submit valuation aspects of the claim to an appraiser, another condition precedent to filing the complaint. *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 279 F. Supp. 2d 235, 236 n.1 (S.D.N.Y. 2003) ("*Duane Reade II*").

AT&T attempts to distinguish this case by claiming the plaintiff had failed to satisfy *undisputed* preconditions to coverage, and that the court thus did not "resolve the merits of a

dispute over the meaning of a contract provision." Objections at 10. This is incorrect: it was only

"undisputed" that the plaintiff had not in fact filed a proof of loss. The legal significance of that

fact under the parties' contract was very much in dispute, and the court rejected various

constructions of the contract proposed by the plaintiff (including, among other things, arguments

that the plaintiff had "substantially complied with the proof of loss condition" and that the

defendant's own conduct resulted in a waiver of the contractual condition) in dismissing the

claims as unripe. *Duane Reade I*, 261 F. Supp. 2d at 295. In other words, while the facts were

undisputed, the meaning of the contract was not; yet the court did not hesitate to decide the

dispute over the meaning of the contract in order to determine whether the breach of contract

claims were ripe for adjudication.[10]

The situation is the same here. All parties acknowledge the events underlying the

Complaint and Level 3's Motion, including AT&T's transmission of the Term Sheet, the

execution of the Agreement, the entry of the D.C. Circuit's opinion, the remand to the FCC, and

the obligation or the FCC to issue a new decision. The issue is the legal significance of those

facts under the Agreement, and whether those facts satisfy conditions precedent to the Court's

exercise of jurisdiction over AT&T's claims. "The proper interpretation of a contract is a matter

of law for the court to decide," even in the context of a Rule 12(b)(1) motion to dismiss. *Warren*

*v. Fox Family Worldwide, Inc.*, 171 F. Supp. 2d 1057, 1063 (C.D. Cal. 2001), *aff'd*, 328 F.3d

---

[10] Similarly, in *Brooklyn Hosp. Ctr. v. Westport Ins. Corp.*, No. 03 CIV. 5190 (BSJ), 2004 WL
868208, at *3 (S.D.N.Y. April 21, 2004), a plaintiff's claim was dismissed as unripe where it had
"concede[d] . . . that it failed to submit a formal proof of loss." AT&T misconstrues this case as
one in which the claim was dismissed as unripe because plaintiff "fail[ed] to satisfy *undisputed*
preconditions to insurance coverage." Objections at 9 (emphasis in original). But the only point
the court stated was not in dispute was the fact that the proof of loss had not been filed. Nothing
in the order suggests that its legal significance as a precondition to coverage was undisputed.

1136 (9th Cir. 2003) (considering arguments over contract interpretation under Rule 12(b)(1)). As shown above, the answer to that question is clear: no "final" order has yet been entered, and while the FCC continues its deliberations over this issue, AT&T's claims are unripe. That AT&T claims that the Settlement Agreement says other than what it says cannot frustrate the Court's exercise of its jurisdiction to determine its jurisdiction.

**D.    THE *ABBOTT LABS* RIPENESS FACTORS SUPPORT DISMISSAL OF ALL THREE CLAIMS.**

Given the pending issues before the FCC on remand from the D.C. Circuit, this action is not yet fit for judicial adjudication. Indeed, each factor identified in *Abbott Labs*—hardship to the plaintiff, interference with further administrative action, and the benefit of further factual development—weighs in favor of dismissing this action as unripe.

As to the first factor, AT&T does not contest that delayed review would cause it any hardship. To the contrary, it mentions the issue of hardship in its Objection only to claim that it need not address it. *See* Objection at 10–11. AT&T is a large telecommunications company more than capable of weathering any financial strain that may result from being required to wait for the conditions of its contract to be satisfied. And considering that the rights of which it complains are contingent upon the FCC deciding the issue of OTT-VoIP billing in its favor— which is far from certain, as the Magistrate Judge recognized (*see* Recommendation at 10)—its "claimed harms are contingent, not certain or immediate," which favors dismissal and weighs strongly against any hardship finding. *See Utah v. U.S. Dep't of the Interior*, 210 F.3d at 1197.

In addition, as the Magistrate Judge recognized, allowing this case to proceed would interfere with the FCC's decision-making scope and authority, whereas dismissing will allow the Court to benefit from the FCC's further findings and factual development. *See* Recommendation

at 13. AT&T suggests that this action merely involves a "judicial interpretation of a private contract," and thus "has no bearing on how the FCC decides to interpret its regulations on remand from the D.C. Circuit." Objections at 11. This is plainly untrue as to its claims that "Level 3 is *currently* violating the Communications Act and overcharging AT&T." Objections at 18 (emphasis in original). And, as noted above, the Settlement Agreement requires the parties to bill and pay charges on OTT-VoIP calls in conformance with the FCC's orders. Indeed, AT&T concedes that, if the FCC determines LECs may assess end-office switching charges on OTT-VoIP calls, Level 3 will be allowed to assess those charges, and AT&T must pay them. Objections at 16, 18 n.6; *see also* AT&T's Response to Level 3's Motion (ECF No. 42) at 17 ("If, on remand, the FCC were to re-adopt its interpretation of the 2011 rules . . . Level 3 can resume charging end-office rates."). The FCC's forthcoming instructions as to how its rules must govern the parties' conduct is thus fundamental to each of AT&T's claims.

As a matter of prudence, the best course of action is for this Court to await those instructions. As the Magistrate Judge recognized, in this situation, "an agency is considering a complicated issue within its purview on remand"—a question which "is far from being 'in clean-cut and concrete form.'" Recommendation at 13 (quoting *New Mexicans for Bill Richardson v. Gonzales* , 64 F.3d 1495, 1499 (10th Cir. 1995)). Again, this District has recently found the same. *See Teliax Inc.,* 2017 WL 3839459 at *2. Even where judicial intervention would "probably not inappropriately interfere with further administrative action," courts apply the ripeness doctrine as a matter of prudence if they "would benefit from further factual development of the issues presented." *Utah v. U.S. Dep't of the Interior*, 210 F.3d at 1197. That a decision on this issue by the FCC—the agency specifically charged with regulating this field—would benefit

the Court is self-evident. This is especially so given that the FCC's orders are "binding on the district courts and not subject to review except by the federal courts of appeals." *Chavez*, 959 F. Supp. 2d at 1282. Because the FCC's decision will be binding upon this Court, as the Magistrate Judge noted, the Court's ability to "rule on whether Level 3 violated the FCC's rules on VoIP calls and the Communications Act of 1934 given the uncertainty surrounding the relevant benchmarks for liability" is unclear. Recommendation at 13.

The Court need not attempt to predict what binding authority the FCC will promulgate when it can dismiss this action to allow the FCC to proceed with its deliberations. Better, as the Magistrate Judge observed, "to resolve this dispute correctly than to do quickly." Recommendation at 14.[11]

## IV.   CONCLUSION

For the reasons stated above, Defendant Level 3 Communications, LLC respectfully requests that the Court adopt the Recommendation of the Magistrate Judge and dismiss the Complaint in its entirety.

---

[11] AT&T suggests that the Court could exercise jurisdiction over these claims notwithstanding the FCC's deliberations on the same underlying issues under the doctrine of primary jurisdiction. Objections at 18. Under this doctrine, the district court may either stay the case pending the agency action, or dismiss the case without prejudice. *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1239 (10th Cir. 2007). Notably, no party here has suggested that a stay of proceedings is appropriate, given that the FCC's deliberations on the underlying issues are already underway.

AT&T also claims that the invocation of the primary jurisdiction doctrine "involve[s] exercises, not disavowals, of jurisdiction." Objections at 19. To the extent it suggests that this Court cannot dismiss as unripe claims that other courts have stayed and referred to the FCC under the primary jurisdiction doctrine, this suggestion misses the mark. In reality, the related doctrines of primary jurisdiction and ripeness overlap; a case can be dismissed under one, either, or both. *See, e.g.*, *Schering Corp. v. Heckler*, 779 F.2d 683, 685 (D.C. Cir. 1985) (affirming dismissal of action "on primary jurisdiction **and** ripeness grounds") (emphasis added). In fact, AT&T itself has in other actions invoked "the primary jurisdiction doctrine . . . as a question of ripeness." *See Broadvox-CLEC, LLC v. AT&T Corp.*, No. PWG-13-1130, 2014 WL 3013275, at *1 (D. Md. July 2, 2014).

Respectfully submitted this 29th day of August, 2018.

By:      /s/ Charles W. Steese
         Charles W. Steese, #26924
         Douglas N. Marsh, #45964
         Martin J. Estevao, #46260
         Armstrong Teasdale LLP
         4643 South Ulster Street, Suite 800
         Denver, Colorado 80237
         Telephone: (720) 200-0676
         csteese@armstrongteasdale.com
         dmarsh@armstrongteasdale.com
         mestevao@armstrongteasdale.com

         *Attorneys for Defendant Level 3
         Communications, LLC*

## CERTIFICATE OF SERVICE

       I, Charles W. Steese, hereby certify that on August 29, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

      Rebecca B. DeCook
      Andrew T. Flynn
      Moye White LLP
      1400 16th Street, 6th Floor
      Denver, CO 80202-1027
      becky.decook@moyewhite.com
      andrew.flynn@moyewhite.com

      Micahel J. Hunseder
      Justin A. Benson
      Sidley Austin, LLP
      1501 K Street, NW
      Washington, D.C. 20005
      202-736-8000
      mhunseder@sidley.com
      jbenson@sidley.com

      *Attorneys for Plaintiff AT&T Corp.*

                        /s/ Charles W. Steese
                        Charles W. Steese