**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-MEH

AT&T CORPORATION,

      Plaintiff,

v.

LEVEL 3 COMMUNICATIONS, LLC,

      Defendant.

---

**LEVEL 3'S RESPONSE TO AT&T'S OBJECTIONS TO**
**RECOMMENDATION OF UNITED STATES MAGISTRATE [PUBLIC VERSION]**

---

Level 3 Communications, LLC respectfully submits its response to the Objections of AT&T Corporation ("AT&T") to the Recommendation of the Magistrate (ECF No. 63) ("Recommendation") pursuant to FED. R. CIV. P. 72(b)(1)(2), and requests that this Court grant Level 3's Motion to Dismiss (ECF No. 14) ("Motion") as recommended by the Magistrate.

## I.      INTRODUCTION

In 2015, the Federal Communications Commission ("FCC") entered an order explaining that its rules permitted the assessment of end-office switching charges on over-the-top Voice-over-Internet-Protocol ("OTT-VoIP") calls. Shortly after this order was entered, AT&T and Level 3 entered into a Settlement Agreement ("Agreement") to resolve their historic dispute over these types of charges. As part of the Agreement, AT&T agreed to pay those charges in full going forward. However, the Agreement also provided that AT&T would be entitled to a partial refund of those charges in the event that the FCC's 2015 order was overturned by a "final" order

that vacated the FCC's decision and barred local exchange carriers ("LECs") like Level 3 from assessing end-office switching charges on OTT-VoIP calls.

In 2016, the D.C. Circuit Court of Appeals issued an order vacating the FCC's decision. But instead of barring these charges, it remanded to the FCC for further deliberations on the question of whether and when end-office switching charges could be assessed on OTT-VoIP calls.   As the Magistrate and Judge Jackson have both recognized, the FCC is actively considering that issue even now; once its deliberations are completed, its new decision will also be subject to further appeal and judicial review.   Thus, as the Magistrate recognized, the D.C. Circuit's order was not the "final" order the parties contemplated in their agreement.

AT&T nevertheless brought claims, contending both that Level 3's assessment of these charges violates the Agreement and Communications Act. Because AT&T's claims are predicated on a "final" order that has not yet been entered—and, indeed, may never be entered—and because the Court will benefit from the guidance the FCC will issue in resolving this dispute, AT&T's claims are not ripe for adjudication. The Magistrate's recommendation that this Court grant Level 3's Motion to Dismiss therefore should be adopted in full.

## II.        PROCEDURAL AND FACTUAL BACKGROUND

The claims AT&T raised in its Complaint concern an agreement between the parties to settle a dispute dating back to 2011 regarding billing practices for OTT-VoIP telephone traffic— that is, telephone calls originated by or terminated to end users using their internet connection instead of a traditional telephone line. *See* Recommendation at 2; Motion at 4–5. When long distance carriers use a LEC's network to originate or terminate long distance calls, they pay the LEC what are known as "switched access charges."   *See* Motion at 4.   Switched access charges

have several individual elements, one of which is end-office switching.  This element is due when the call traverses the LEC's local switch or the "functional equivalent" of the local switch. 47 C.F.R. § 51.903(d)(3).   The parties' historic dispute centered on whether OTT-VoIP calls traversed the "functional equivalent" of the local switch.  *See* Motion at 3–4.[1] Level 3, which here operates as a LEC, maintained the charges were due; AT&T, which here operates as a long distance carrier (aka, interexchange carriers or "IXC") claimed they were not. *Id.* at 5.

In 2015, the FCC considered this issue and agreed with Level 3, determining that rules it promulgated in 2011 (*see In re Connect America Fund*, 26 FCC Rcd. 17663 (2011) (the "*USF/ICC Transformation Order*") authorized LECs to assess end-office switching charges regardless of whether they deliver the traffic to end users themselves or through arrangements with VoIP service providers. *See* Motion at 5 (citing *In the Matter of Connect Am. Fund*, 30 FCC Rcd. 1587 (2015) (the "OTT Declaratory Order"), ¶¶ 7, 31, 51). This was so, the FCC determined, because a LEC "in conjunction with its over-the-top VoIP provider partner provides the functional equivalent of end office switching." *Id.* (quoting OTT Declaratory Order at ¶ 31).

AT&T appealed this determination to the D. C. Circuit Court of Appeals. In May 2015, while AT&T's appeal was pending, AT&T and Level 3 entered into negotiations to resolve their historic dispute over unpaid charges for OTT-VoIP traffic. During these negotiations, AT&T

---

[1] AT&T suggests that end-office switching is a particularly expensive element of access rates, arguing that LECs are authorized to assess higher end-office switching rates in order to recoup the costs of provisioning lines to the end user. Objections at 3. This is demonstrably false. In 1997, the FCC adjusted its access compensation regime so the costs of connecting end users to the LEC's end offices would be borne not by per-minute end-office switching charges paid by IXCs, but by flat-rate common line charges which, following regulatory reforms by the FCC, are paid by the end users directly to the LECs. *See In the Matter of Access Charge Reform Price Cap Performance Review for Local Exch. Carriers Transp. Rate Structure & Pricing End User Common Line Charges,* 12 FCC Rcd. 15982, 15998–99 (1997). Thus, end-office switching charges are *not* intended to compensate LECs for costs associated with provisioning lines.

sent Level 3 a "Settlement Proposal" which it described as its "███████████████ ███████." Exhibit 3 to Motion, ECF No. 15-3 (the "Term Sheet"). According to the Term Sheet, ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████ *Id.* (emphasis added).

The Agreement ultimately adopted this framework. AT&T agreed to pay Level 3's end-office switching charges on OTT-VoIP traffic going forward; however, "███████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████," Level 3 would be required to refund a portion of the disputed charges. Motion at 14 (quoting Exhibit 1 to Motion (the "Agreement") at 3, § 1(a)(iv) (emphasis added)). The parties also agreed "███████ ███████████████████████████████████████████████████████████ ███████████████████████████████████" *Id.* (emphasis added). The Agreement thus expressly contemplated that the "final" order would be one that settled the question of the propriety of billing end-office switching charges on OTT-VoIP calls, and that provided terms with which the parties could comply in billing end-office switching charges going forward.

When the D.C. Circuit decided AT&T's appeal, it vacated the FCC's ruling, determining the FCC "had not properly explained why the local carrier and its VoIP partner were performing the functional equivalent of end office switching on over-the-top VoIP calls." *AT&T Corp. v. FCC*, 841 F.3d 1047, 1049 (D.C. Cir. 2016) ("D.C. Circuit Order"). Yet it did not provide terms for the billing and payment of end-office charges for OTT-VoIP traffic. Nor did it decide that

LECs were not performing the "functional equivalent" of end office switching on OTT-VoIP calls. Instead, it "remand[ed] the order to the Commission for further explanation." *Id.* As the Magistrate recognized, the D.C. Circuit "effectively s[ought] a better explanation of the phrase 'functional equivalent' to enable the court 'to sustain [the] conclusion' that the services provided by OTT VoIP-LEC providers are the 'functional equivalent' of end office switching." Recommendation at 7 (quoting D.C. Circuit Order, 841 F.3d at 1049). By remanding the issue to the FCC, the D.C. Circuit did not enter a "final" order as contemplated in the parties' Agreement.

AT&T nevertheless brought this action, claiming Level 3 breached the Agreement by failing to refund charges following the entry of the D.C. Circuit Order, and that Level 3 violated the Communications Act by continuing to assess end-office switching charges on OTT-VoIP traffic. *See* Complaint at ¶¶ 62–64, 72, 89. These claims are expressly predicated on the mistaken notion that a "final order" or "final decision" has been issued that conclusively negates the ability to bill on OTT-VoIP calls. *See* Compl. at ¶¶ 34, 62-69, 72–74, 81–84, 87–92.

Because the triggering event giving rise to the duties about which AT&T complains has not yet occurred, Level 3 moved to dismiss AT&T's claims as unripe. In his Recommendation, the Magistrate found that, under the plain language of the Agreement, the Court cannot assess whether a breach has occurred unless and until the D.C. Circuit's decision became "final" and could "no longer [be] subject to further appeal or other judicial review." Recommendation at 9. "[T]here is no dispute," the Magistrate acknowledged, "that the FCC is actively considering the issue presented here"; this "pending remand readily defeats the ... condition of finality." *Id.* at 10. Finding that judicial intervention in this case would "inappropriately interfere with further administrative action" and that the Court would "benefit from further factual development of the

issues presented," the Magistrate concluded that AT&T's claims were not ripe and recommended that the claims be dismissed. *Id*. at 13 (quoting *Utah v. U.S. Dep't of the Interior*, 210 F.3d 1193, 1196 (10th Cir. 2000)).

## III.   ARGUMENT

The Agreement contemplates that the "final" order giving rise to AT&T's claims would settle the question of whether LECs can assess end-office switching charges on OTT-VoIP traffic, and requires the parties to conduct themselves consistent with the terms of that "final" order if and when it is entered. The D.C. Circuit Order is no such order; far from settling the issue, it remanded the question to the FCC, which is presently engaged in deliberations on that very issue. *See* FCC Public Notice, 2018 WL 2316903, at *1 (May 18, 2018). Thus, the triggering event on which AT&T's claims are based has not yet occurred. When the FCC does weigh in on this issue on remand, its guidance as to how the parties must conduct themselves will be not only helpful to this Court, but binding upon it. *See Chavez v. Advantage Grp.*, 959 F. Supp. 2d 1279, 1282 (D. Colo. 2013). As both a matter of prudence and proper deference to the agency, this Court should adopt the Magistrate's Recommendation in full and dismiss this action.

### A.   LEGAL STANDARD FOR RIPENESS

The Magistrate granted Level 3's Motion to dismiss under FED. R. CIV. P. 12(b)(1) for lack of subject-matter jurisdiction because AT&T's claims are not yet ripe for adjudication. *See Bateman v. City of W. Bountiful*, 89 F.3d 704, 706 (10th Cir. 1996) ("a ripeness challenge, like most other challenges to a court's subject matter jurisdiction, is treated as a motion to dismiss under … Rule … 12(b)(1)"). In deciding a Rule 12(b)(1) motion, the Court may "go beyond allegations contained in the complaint" in order "to resolve disputed jurisdictional facts." *See*

*Maldonado v. Prudential Ins. Co. of Am.*, No. 10-CV-00074-PAB-MEH, 2011 WL 819751, at *1

(D. Colo. Mar. 2, 2011). "The burden is on the plaintiff to provide evidence establishing that the

issues are ripe for review." *Park Lake Res. Liab. Co. v. U.S. Dep't of Agr.*, 197 F.3d 448, 450

(10th Cir. 1999) (citation omitted).  As the Magistrate found, AT&T did not meet its burden.

The "ripeness doctrine is drawn both from Article III limitations on judicial power and

from prudential reasons for refusing to exercise jurisdiction." *San Juan Citizens All. v. Stiles*, 654

F.3d 1038, 1046 (10th Cir. 2011). The Magistrate spelled out the legal doctrine perfectly:

> Ripeness is peculiarly a question of timing, intended to prevent the courts,
> through avoidance of premature adjudication, from entangling themselves in
> abstract agreements. In short, the doctrine of ripeness is intended to forestall
> judicial determinations of disputes until the controversy is presented in 'clean-cut
> and concrete form.'" *New Mexicans for Bill Richardson*, 64 F.3d at 1499
> (brackets and internal citations omitted) (quoting *Renne v. Geary*, 501 U.S. 312,
> 313 (1991)); *see also Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)
> (discussing the need "to protect the agencies from judicial interference until an
> administrative decision has been formalized"). **For example, "[a] claim is not
> ripe for adjudication if it rests upon 'contingent future events that may not
> occur as anticipated, or indeed may not occur at all."'** *Texas v. United States*,
> 523 U.S. 296, 300 (1998)….

Recommendation at 4 (emphasis added).

"To determine whether an issue is ripe for judicial review, [courts] must examine 'both

the fitness of the issues for judicial decision and the hardship to the parties of withholding court

consideration.'" *San Juan Citizens All.*, 654 F.3d at 1046 (citing *Ohio Forestry Ass'n v. Sierra*

*Club*, 523 U.S. 726, 733 (1998)). To conduct this examination, courts "must consider: (1)

whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention

would inappropriately interfere with further administrative action; and (3) whether the courts

would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n,*

*Inc.*, 523 U.S. at 732–33 (citing *Abbott Labs*, 387 U.S. at 148–49); Recommendation at 5.

**B.     AT&T'S CLAIMS ARE NOT RIPE FOR ADJUDICATION BECAUSE THE UNDERLYING LEGAL ISSUES ARE PENDING ON REMAND TO THE FCC.**

As Level 3 explained in its Motion, all three of AT&T's claims—one alleging breach of the Agreement, and two based on alleged violations of the Communications Act—are premised on the notion that the D.C. Circuit's decision conclusively decided the issue of whether LECs may assess end-office switching charges on OTT-VoIP calls. *See* Motion at 11, 13–14. Indeed, as the Magistrate recognized, AT&T's Complaint "is peppered with allegations that presume the finality of the *AT&T* decision." Recommendation at 8. Just as Judge Jackson found in *Teliax Inc. v. AT&T,* the underlying legal issue is still pending before the FCC on remand from the D.C. Circuit. 2017 WL 3839459, *2 (D. Colo. Sept. 1, 2017).  AT&Ts claims are therefore premised on contingent future events.  As such, they are not ripe for adjudication.

### 1.     *The Court Must Interpret the Agreement to Give Meaning to All Provisions.*

Under New York law, which governs the Agreement's interpretation and enforcement (*see* Agreement at 6), "[a] breach of contract case ... is ripe immediately upon the [alleged] breach, even where damages remain uncertain." *Sea Tow Servs. Int'l, Inc. v. Pontin*, 472 F. Supp. 2d 349, 357 (E.D.N.Y. 2007) (citation omitted). But where the evidence demonstrates that duties underlying the plaintiff's claims are contingent upon specific events occurring which have yet to occur, courts routinely dismiss such claims as unripe. *See, e.g., Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F. Supp. 2d 293, 295 (S.D.N.Y. 2003).

The dispositive question here is whether the Agreement imposes duties upon Level 3 to refund AT&T's payments if a "final" order has not yet issued after remand from the D.C. Circuit to the FCC. "The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." *Willsey v. Gjuraj*, 65 A.D.3d 1228, 1229–30 (N.Y.

App. Div. 2009). "In analyzing contractual text, a court need not turn a blind eye to context. Rather, a court should accord language its plain meaning giving due consideration to the surrounding circumstances [and] apparent purpose which the parties sought to accomplish." *In re Coudert Bros.*, 487 B.R. 375, 389 (S.D.N.Y. 2013) (citations and quotation marks omitted).

### 2. AT&T's Interpretation Negates the Agreement's Mandate that, After Issuance of the Final Order, Level 3 Must Bill on OTT-VoIP Calls Consistent with the Order.

Here, the plain language of the Agreement shows the parties understood the "final" order to be one that settled the question of whether LECs could assess end-office switching charges on OTT-VoIP calls. Importantly, the Agreement provides that, if the "final" order were to overturn the FCC's OTT Declaratory Order in part and not in whole, then " ██████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████ " Agreement at 3, ¶ 1(a)(iv) (emphasis added). The parties further agreed that " ███████████████████████████████████████████████████████████ ██████████████████████████████████████████ " *Id.* (emphasis added). In other words, the Agreement calls upon the parties to bill and pay for end-office switching charges if and to the extent the FCC's rules so require, ***as determined by the "final" order***.

But the D.C. Circuit Order offered no direction as to whether or to what extent Level 3 should or should not assess end-office charges for OTT-VoIP calls. Instead, it remanded to the FCC for further deliberations on the question. AT&T acknowledges that the D.C. Circuit Order "authorize further agency proceedings, and thus would permit Level 3 to charge to end-office rates on over-the-top calls if a later FCC decision (that survives judicial review) authorizes such charges." Dkt. 63 ("Objections") at 18, n.6. AT&T thus concedes that the legal issue underlying its claims is in fact subject to further review. The Agreement defines the "final" order as one that

is "█████████████████████████████████████." Agreement at 3. Thus, the D.C. Circuit's order cannot be the "final" order the Agreement contemplates.  Only after the FCC completes its pending consideration of the issue—which is occurring at this very moment—and appellate review of its determination is completed, can the parties assess and pay charges "█ ██████████████" the instruction they receive. Agreement at 3, ¶ 1(a)(iv). Until then, claims that Level 3 has breached the Agreement are premature; as the Magistrate recognized, "the pending remand readily defeats the second condition of finality." Recommendation at 10.

AT&T claims these provisions of the Agreement are "utterly meaningless" if they apply only after a "final" order clarifies the FCC's rules; "[i]t goes without saying," it reasons, "that Level 3 must comply with FCC-established rates." Objections at 16. But the whole point of the Agreement was to settle the parties' disputes while AT&T's arguments on how to interpret the FCC's rules were being considered. Agreement at 3, § 1(a)(iv). Because the D.C. Circuit remanded the issue to the FCC, that consideration is still ongoing; overturning the OTT Declaratory Order merely returned the state of the law where it was in 2015, before the Order was issued. AT&T's proposed construction would thrust the parties back into the very uncertainty the Agreement was intended to settle.[2]

This is why the Agreement conditions the duties underlying AT&T's claims upon the finality of the legal proceedings deciding these issues. While these proceedings are pending, the parties can enjoy the peace and settled expectations the Agreement provided. These expectations

---

[2] AT&T argues that the FCC's pending decision will likely have a prospective effect only, making it difficult to retroactively challenge charges assessed (or payments withheld). Objections at 20–21. This is speculation. After all, in its 2015 decision, the FCC gave its ruling retroactive effect, because the FCC "intended" when it issued its 2011 rules that LEC's be able to bill end office switching on OTT-VoIP calls. OTT Declaratory Order, 30 FCC Rcd. 1587 ¶ 41.

change only when—and if—a "final" order vindicates AT&T's position; if that ever occurs, the parties would bill and pay for OTT traffic "in compliance with the terms of that order."

### 3.    AT&T Inaccurately Claims that Current FCC Rules Prohibit LECs from Assessing End-Office Switching Charges on OTT VoIP Calls.

AT&T attempts to justify its erroneous interpretation of the Agreement by claiming the D.C. Circuit Order *did* settle the question of whether Level 3 can assess end-office switching charges on OTT-VoIP traffic. *See* Objections at 17. But the D.C. Circuit did not believe so; otherwise, remand to the FCC would have been pointless. "[R]emand is not required when it 'would be an idle and useless formality.'" *Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 401 (2d Cir. 2005) (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969)). If the question were so settled, the D.C. Circuit could have simply said so and reversed without remand. *See Crysler v. Astrue*, 563 F. Supp. 2d 418 (N.D.N.Y. 2008) (reversal is appropriate where "it would serve no useful purpose to remand the matter for further proceedings"). But, of course, it did not, because the question is *not* settled; it remains for the FCC to decide.[3]

Indeed, AT&T's suggestion that the D.C. Circuit Order "confirmed" some "status quo" prohibiting assessment of end-office switching rates for OTT-VoIP traffic (*see* Objections at 17) is refuted by the FCC's own decisions.  As the FCC explained in the OTT Declaratory Order, the

---

[3] AT&T contends, citing its Petitioner Brief to the D.C. Circuit, that it was not seeking an order from the D.C. Circuit foreclosing the FCC from re-authorizing end-office switching rates, and that it therefore would not have agreed to a right to receive a refund only if the D.C. Circuit gave relief beyond what AT&T requested. Objections at 13. AT&T never raised this argument in its response to Level 3's Motion, and as a result waived it. *See Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996). In addition, AT&T's Petitioner Brief sought vacatur, which would have settled the question without need to refer to the FCC; remand was requested as an alternative relief in the event the D.C. Circuit did *not* vacate, and was aimed solely at the issue of retroactivity. Moreover, in the Agreement AT&T *did* condition its refund rights to a final order settling the question of whether LECs can bill end-office switching charges on OTT-VoIP calls.

dispute underlying that 2015 order concerned "the appropriate interpretation of the so-called 'VoIP symmetry' rule that the Commission adopted in the 2011 *USF/ICC Transformation Order*." 30 FCC Rcd. 1587 ¶ 1. In addressing the question, the FCC determined, "under the VoIP symmetry rule," that "the call control functions jointly provided by a competitive LEC and its over-the-top VoIP partner are the functional equivalent of end-office switching." *Id.* ¶ 29.

The FCC's 2011 decision contained language strongly suggesting that end office switching charges were recoverable on OTT VoIP calls: "We thus adopt rules making clear that origination and termination charges may be imposed under our transitional intercarrier compensation framework, including when an entity 'uses Internet Protocol facilities to transmit such traffic to [or from] the called party's premises.'" *USF/ICC Transformation Order*, 26 FCC Rcd. 17663 at ¶ 969. The order then stated that "we adopt rules that permit a LEC to charge the relevant intercarrier compensation for functions performed by it and/or by its retail VoIP partner, regardless of whether the functions performed or the technology used correspond precisely to those used under a traditional TDM architecture." *Id.* at ¶ 970. Thus, the FCC's 2015 Order acknowledged the "status quo" since 2011 was that these charges were permissible. In fact, the FCC found AT&T's argument to the contrary so "inconsistent with the VoIP symmetry rule as adopted in the *USF/ICC Transformation Order*" (*id.* ¶ 30) that the FCC applied its ruling retroactively, concluding that it was "not changing our rules or our interpretation of them, and reject[ing] arguments that there was a reasonable reliance on a contrary interpretation." *Id.* ¶ 49.

When the D.C. Circuit vacated the 2015 order, it did not reject this interpretation outright; instead, it remanded to the FCC "for further explanation." 841 F.3d at 1049. This action merely placed the parties back where they were before 2015: bound by the 2011 rules,

which the FCC interpreted as allowing LECs to bill end-office switching charges on OTT-VoIP calls. At worst, the "status quo" is an uncertain question the FCC will soon address on remand. Recommendation at 10 ("There remains at least a possibility that the FCC will articulate its reasoning in a manner that will withstand further review by the D.C. Circuit.").

AT&T contends that another federal court has recognized that end-office switching rates cannot be charged for OTT-VoIP traffic consistent with the FCC's rules. *See* Objections at 17 (citing *O1 Commc'ns, Inc. v. AT&T*, No. 3:16-cv-1452-VC, 2017 WL 8294245 (N.D. Cal. Dec. 19, 2017)). As an initial matter, this position is contrary to a decision from Judge Jackson issued less than one year ago. *See Teliax Inc. v. AT&T,* 2017 WL 3839459, *2 (D. Colo. Sept. 1, 2017). Moreover, the *O1* decision is two-pages long and lacks detail, suggesting both that *O1* failed to make any meaningful arguments, and that the Court did not make a serious effort to resolve the question of whether end-office switching charges may be assessed on OTT-VoIP calls.

Indeed, the *O1* court determined the matter before it on different grounds than what AT&T suggests. Instead of finding the FCC rules did not permit end-office switching charges on OTT-VoIP calls, the court focused on the fact that "O1 violated its own tariffs by billing end office access rates" on OTT VoIP calls. 2017 WL 829425, at *2. Because O1's tariffs did not permit the assessment of such charges, the court did not need to decide whether the FCC's rules permitted the charges. *See also AT&T Corp. v. YMax*, 26 FCC Rcd. 5742, 5761 n.7 (declining to address whether charges were permissible under FCC rules; "this Order addresses only the particular language in YMax's Tariff"). Here, by contrast, there is not and has never been any suggestion that Level 3's tariffs do not permit the assessment of end-office switching charges on OTT-VoIP calls. The question at issue here is the one pending before the FCC: whether the

FCC's rules allow LECs to assess these charges on OTT VoIP calls.

AT&T also tries the other side of the same coin, suggesting that a decision by the FCC on this point may *never* issue and that the parties could not have plausibly conditioned the rights and duties specified in the Agreement "on future agency action that might never occur." Objections at 16. But there is nothing unusual about contracting for a contingency. That is exactly what the Agreement at issue does: it conditions certain rights upon the ultimate outcome of the litigation before the parties knew what that outcome would be, acknowledging the possibility that these conditions might never be satisfied. AT&T's concession that this contingency may never come to pass validates the Magistrate Judge's recommendation that AT&T's claims are not yet ripe. *See Texas*, 523 U.S. at 300 ("A claim is not ripe for adjudication of it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'").

Besides, AT&T can hardly be heard to complain that it could not have plausibly contemplated conditioning these rights upon the FCC taking action upon remand; it plainly did contemplate this possibility, and proposed it to Level 3 in the Term Sheet[4] memorializing the parties' Agreement. Notably, the Court need not look beyond the plain language of the Agreement to find, as the Magistrate did, that its meaning is clear on its face, and that the "final" order contemplated therein, unlike the D.C. Circuit Order, would resolve the ultimate underlying legal question of the propriety of billing end-office switching charges. *See* Recommendation at

---

[4] AT&T largely ignores this Term Sheet in its Objections other than to claim in passing that Level 3 improperly introduced it. *See* Objections at 15. What was improper about its introduction, AT&T does not say. In its Response to Level 3's Motion, however, it claims the Term Sheet could not be used as evidence because it was sent to Level 3 subject to FED. R. EVID. 408. *See* Response (ECF No. 42) at 16, n.8. But this rule is inapplicable here. The Term Sheet is not used as evidence that the FCC's 2011 rules require payment of end-office switching charges on OTT-VoIP calls, but to show what the parties intended by their Settlement Agreement.

9–10. But even where "the terms of the complete written contract are unclear, ambiguous or contradictory ... the parol evidence rule permits the consideration of [extrinsic] evidence in order to ascertain the true meaning of the terms." *Mun. Capital Appreciation Partners, I, L.P. v. Page*, 181 F. Supp. 2d 379, 391 (S.D.N.Y. 2002) (citations omitted). Thus, even if there were any ambiguity in the plain language of the Agreement, the Term Sheet would dispel it. The Term Sheet demonstrates the parties' understanding that, in the event issues before the D.C. Circuit were remanded to the FCC, the rights and duties of which AT&T complains would come into being only after the FCC completed the remand, and the remand became final on appeal.

In any event, as the Magistrate acknowledged, "there is no dispute that the FCC is actively considering the issue presented here." Recommendation at 10. In fact, CenturyLink has submitted a petition for declaratory ruling to the FCC to "complete the remand" from the D.C. Circuit and resolve the dispute regarding the proper interpretation of the FCC's rules as to end-office switching charges for OTT-VoIP calls. FCC Public Notice, 2018 WL 2316903, at *1 (May 18, 2018).[5] Depending on the outcome of that action, the duties specified in the Agreement may or may not take effect. Until they do, under the express terms of the Agreement, AT&T's claims rising are simply unripe.

### 4.    *A Remand to an Administrative Agency is Not a Final Decision.*

In support of his Recommendation, the Magistrate cited "well settled law" that a remand to an administrative agency for further proceedings "is not a final decision." Recommendation at 10 (quoting, *inter alia*, *W. Energy All. v. Salazar*, 709 F.3d 1040, 1047 (10th Cir. 2013). AT&T

---

[5] AT&T acknowledges as much, but counters that "there is no deadline for the FCC to act on the petition." Objections at 15, n.5. But then again, there was no deadline for the D.C. Circuit to decide the appeal from the FCC's OTT Declaratory Order either.

claims this authority is inapposite to the extent it refers to remands to agencies by *district* courts instead of *appellate* courts. *See* Objections at 13–15; Recommendation at 11. This distinction is meaningless. When reviewing an administrative action, district courts *are* appellate courts: "Reviews of agency action in the district courts must be processed as appeals." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994). AT&T's attempt to distinguish these authorities thus misses the point: whether a remand order is issued by a circuit court or a district court, "[r]emands to administrative agencies ... mark a continuation of the case," as deliberations over the issues in dispute return from the appellate forum to the agency. Recommendation at 10 (quoting *Caesar v. West*, 195 F.3d 1373, 1374 (Fed. Cir. 1999)).

**C.    THE COURT HAS JURISDICTION TO DETERMINE ITS OWN JURISDICTION**

The primary thrust of AT&T's Objection is an argument that the Court cannot properly determine whether it has jurisdiction over AT&T's breach of contract claims if in doing so it must evaluate competing claims as to how the contract should be construed. *See* Objections at 9. Not so: as Level 3 noted in its Motion and supporting pleadings, "a court always has jurisdiction to determine its own jurisdiction." Level 3's Reply in Support of its Motion to Dismiss (ECF No. 52) ("Reply") at 2 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 (1998)). The Court "has the jurisdiction to determine whether contractual conditions precedent ... have been fulfilled" as "a question for threshold judicial resolution." Reply at 2 (quoting *Anagnostopoulos v. Union Tpk. Mgmt. Corp.*, 300 A.D.2d 393, 394, 751 N.Y.S.2d 762 (2002)).

AT&T suggests the Court has authority to determine threshold jurisdictional questions only if those questions are undisputed, and that the Court thus cannot decide a dispute over the meaning of a contract provision in order to dismiss a breach of contract claim as unripe. *See*

Objections at 10. But this too happens all the time. For example, in *Duane Reade I,* 261 F. Supp. 2d at 295, the court dismissed two breach of contract claims as unripe where the plaintiff had not yet filed proofs of losses, a condition precedent to raising the contractual claims. And even after the plaintiff filed these proofs, the court dismissed the contract claims as unripe again when the plaintiff failed to submit valuations, another condition precedent to filing a complaint. *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 279 F. Supp. 2d 235, 236, n.1 (S.D.N.Y. 2003).

AT&T attempts to distinguish this case by claiming the plaintiff had failed to satisfy *undisputed* preconditions to coverage, and that the court thus did not "resolve the merits of a dispute over the meaning of a contract provision." Objections at 10. This is incorrect: it was only "undisputed" that the plaintiff had not in fact filed a proof of loss. The legal significance of that fact under the parties' contract was very much in dispute, and the court rejected various constructions of the contract proposed by the plaintiff (including, among other things, arguments that the plaintiff had "substantially complied with the proof of loss condition" and that the defendant's own conduct resulted in a waiver of the contractual condition) in dismissing the claims as unripe. 261 F. Supp. 2d at 295. In other words, while the facts were undisputed, the meaning of the contract was not; yet the court did not hesitate to decide the dispute over the meaning of the contract to determine whether the breach of contract claims were ripe.[6]

The situation is the same here. All parties acknowledge the events underlying the Complaint and Level 3's Motion, including AT&T's transmission of the Term Sheet, remand to

---

[6] AT&T similarly misconstrues *Brooklyn Hosp. Ctr. v. Westport Ins. Corp.*, No. 03 CIV. 5190 (BSJ), 2004 WL 868208, at *3 (S.D.N.Y. April 21, 2004), as one where the plaintiff "fail[ed] to satisfy *undisputed* preconditions to insurance coverage." Objections at 9. But the only point the court stated was not in dispute was the fact that a proof of loss had not been filed. Nothing in the order suggests that its legal significance as a precondition to coverage was undisputed.

the FCC, and the FCC's obligation to issue a new decision. The issue is the legal significance of those facts under the Agreement, and whether those facts satisfy conditions precedent to the Court's exercise of jurisdiction over AT&T's claims. "The proper interpretation of a contract is a matter of law for the court to decide," even in the context of a Rule 12(b)(1) motion to dismiss. *Warren v. Fox Family Worldwide, Inc.*, 171 F. Supp. 2d 1057, 1063 (C.D. Cal. 2001), *aff'd*, 328 F.3d 1136 (9th Cir. 2003). As shown above, the answer to that question is clear: no "final" order has yet been entered; while the FCC continues its deliberations, AT&T's claims are unripe.

**D.    THE *ABBOTT LABS* RIPENESS FACTORS SUPPORT DISMISSAL OF ALL THREE CLAIMS.**

Given the pending issues before the FCC, this action is not yet fit for adjudication. Indeed, each *Abbott Labs factor*—hardship to the plaintiff, interference with administrative action, and the benefit of further factual development—weighs in favor of dismissing.

As to the first factor, AT&T does not contest that delayed review would cause it any hardship. To the contrary, it mentions the issue of hardship in its Objection only to claim that it need not address it. *See* Objection at 10–11. AT&T is a large telecommunications company more than capable of weathering any financial strain that may result from being required to wait for the conditions of its contract to be satisfied. And considering that the rights of which it complains are contingent upon the FCC deciding the issue of OTT-VoIP billing in its favor— which is far from certain, as the Magistrate recognized (*see* Recommendation at 10)—its "claimed harms are contingent, not certain or immediate," which favors dismissal and weighs strongly against any hardship finding. *See Utah v. U.S. Dep't of the Interior*, 210 F.3d at 1197.

In addition, as the Magistrate recognized, allowing this case to proceed would interfere with the FCC's decision-making authority, whereas dismissing will allow the Court to benefit

from the FCC's further findings. *See* Recommendation at 13. AT&T suggests that this action merely involves a "judicial interpretation of a private contract," and thus "has no bearing on how the FCC decides to interpret its regulations on remand from the D.C. Circuit." Objections at 11. This is plainly untrue as to its claims that "Level 3 is *currently* violating the Communications Act and overcharging AT&T." Objections at 18. And, as noted above, the Agreement requires the parties to bill and pay charges on OTT-VoIP calls in conformance with the FCC's orders. Indeed, AT&T concedes that, if the FCC determines LECs may assess end-office switching charges on OTT-VoIP calls, Level 3 will be allowed to assess those charges, and AT&T must pay them. Objections at 16, 18 n.6. The FCC's forthcoming instructions as to how its rules must govern the parties' conduct is thus fundamental to each of AT&T's claims.

As a matter of prudence, the best course of action is for this Court to await those instructions. As the Magistrate recognized, "an agency is considering a complicated issue within its purview on remand", a question which "is far from being 'in clean-cut and concrete form.'" Recommendation at 13 (quoting *New Mexicans for Bill Richardson v. Gonzales* , 64 F.3d 1495, 1499 (10th Cir. 1995)). Again, this District has recently found the same. *See Teliax Inc.,* 2017 WL 3839459 at *2. Even where judicial intervention would "probably not inappropriately interfere with further administrative action," courts apply the ripeness doctrine as a matter of prudence if they "would benefit from further factual development of the issues presented." *Utah*, 210 F.3d at 1197. That a decision on this issue by the FCC—the agency specifically charged with regulating this field—would benefit the Court is self-evident. This is especially so given that the FCC's orders are "binding on the district courts and not subject to review except by the federal courts of appeals." *Chavez*, 959 F. Supp. 2d at 1282. Because the FCC's decision will be

binding upon this Court, as the Magistrate noted, the Court's ability to "rule on whether Level 3 violated the FCC's rules on VoIP calls and the Communications Act of 1934 given the uncertainty surrounding the relevant benchmarks for liability" is unclear. Recommendation at 13.

The Court need not try to predict what binding authority the FCC will promulgate when it can dismiss this action to allow the FCC to proceed with its deliberations. As the Magistrate observed, better "to resolve this dispute correctly than to do quickly." Recommendation at 14.[7]

## IV.   CONCLUSION

For the reasons stated above, Level 3 Communications, LLC respectfully requests that the Court adopt the Recommendation of the Magistrate and dismiss the Complaint in its entirety.

Respectfully submitted this 31st day of August, 2018.

By:   */s/ Charles W. Steese*
Charles W. Steese, #26924
Douglas N. Marsh, #45964
Martin J. Estevao, #46260
Armstrong Teasdale LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
csteese@armstrongteasdale.com
dmarsh@armstrongteasdale.com
mestevao@armstrongteasdale.com

*Attorneys for Level 3 Communications, LLC*

---

[7] AT&T claims the Court could take action through doctrine of primary jurisdiction. Objections at 18. Under this doctrine, the district court may either stay the case pending agency action, or dismiss the case without prejudice. *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1239 (10th Cir. 2007). No party here seeks a stay. Moreover, the doctrines of primary jurisdiction and ripeness overlap; a case can be dismissed under one, either, or both. *See, e.g.*, *Schering Corp. v. Heckler*, 779 F.2d 683, 685 (D.C. Cir. 1985) (affirming dismissal of action "on primary jurisdiction *and* ripeness grounds") (emphasis added). In fact, AT&T itself has in other actions invoked "the primary jurisdiction doctrine ... as a question of ripeness." *See Broadvox-CLEC, LLC v. AT&T Corp.*, No. PWG-13-1130, 2014 WL 3013275, at *1 (D. Md. July 2, 2014).

## CERTIFICATE OF SERVICE

I, Charles W. Steese, hereby certify that on August 31, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Rebecca B. DeCook
Andrew T. Flynn
Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1027
becky.decook@moyewhite.com
andrew.flynn@moyewhite.com

Micahel J. Hunseder
Justin A. Benson
Sidley Austin, LLP
1501 K Street, NW
Washington, D.C. 20005
202-736-8000
mhunseder@sidley.com
jbenson@sidley.com

*Attorneys for Plaintiff AT&T Corp.*

*/s/ Charles W. Steese*
Charles W. Steese