IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00112-RM-MEH

AT&T CORP.,

    Plaintiff,

v.

LEVEL 3 COMMUNICATIONS, LLC,

    Defendant.

## AT&T CORP.'S PROPOSED REPLY IN SUPPORT OF ITS WRITTEN OBJECTIONS TO RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff AT&T Corp. ("AT&T") submits this Reply in Support of its Written Objections (ECF No. 66) to the Recommendation of the Magistrate Judge ("Recommendation") (ECF No. 63). Defendant Level 3 Communications, LLC ("Level 3") has submitted a Response (ECF No. 73) that fails to justify dismissal of AT&T's claims on ripeness grounds and improperly relies on arguments and authorities that Level 3 did not raise or rely on before the Magistrate Judge.

## ARGUMENT

**I.   THE MAGISTRATE JUDGE'S RECOMMENDATION THAT AT&T'S CONTRACT CLAIMS ARE UNRIPE IS ERRONEOUS.**

    **A.   AT&T's Contract Claims Are Ripe.**

Level 3 claims that the Court can *resolve* a dispute over the meaning of a contract in order to decide that that very contract dispute is not fit for judicial resolution. That illogical proposition is contrary to the authorities AT&T cited in its objections, which Level 3 simply ignores. It is also unsupported by the inapposite authorities that Level 3 previously cited, and now tries to distort.

1

It is indisputable that, in order to grant Level 3's motion to dismiss, the Court must resolve a dispute over the meaning of a provision of the parties' Agreement. That provision addresses AT&T's then-pending appeal of an FCC decision (defined in Agreement as the "*OTT Declaratory Order*," see Doc. 15-1 at 1), which authorized end-office switching rates for over-the-top voice-over-internet-protocol ("OTT VoIP") calls. The provision at issue in this case recognizes the pendency of AT&T's "OTT Appeal," then obligates Level 3 to refund certain rates:

> in the event the *OTT Declaratory Order* is overturned … in whole … and **the applicable order on appeal becomes final and is no longer subject to further appeal or other judicial review ("Final Appellate Order")**,

*Id.* at 3 § 1(a)(iv) (emphasis added). The provision further states that "any billing payments for [OTT] traffic exchanged after such Final Appellate Order becomes final shall be in compliance with [the] terms of that order." *Id.*

AT&T contends that the term "Final Appellate Order" means the judgment in *AT&T Corp. v. FCC*, 841 F.3d 1047 (D.C. Cir. 2016), because that was "the applicable order *on appeal*" of the *OTT Declaratory Order* and that judgment "overturned" the FCC's order. AT&T contends that Level 3's refund and rate-adjustment obligations arose in May 2017, because that is when the Court's judgment became "final" and "no longer subject to further appeal or other judicial review."

By contrast, Level 3 claims that the "Final Appellate Order" is a future "'final' order … that settle[s] the question of the propriety of billing end-office switching charges on OTT-VoIP calls." Resp. at 4; *see also id.* at 6, 9. Level 3 therefore claims that its refund and rate-adjustment duties have not been triggered—and that AT&T's breach of contract claims are thus not ripe—because, under Level 3's *contested interpretation* of the contract, the D.C. Circuit's now-final judgment is not a "Final Appellate Order."

2

Numerous cases hold, however, that a contract dispute is ripe precisely when, as here, the parties dispute the meaning of the contract and their dispute has measurable financial consequences. *See* Objs. at 9 (citing cases). The proper method for resolving such disputes, therefore, is not through a jurisdictional motion. *See id.* at 10 n.3 (citing cases). Unable to contest or distinguish the holdings in these cases, Level 3 simply ignores them.

Level 3 likewise has not refuted AT&T's showing that the parties' dispute does not turn on uncertain or contingent future events. *Id.* at 10. The meaning of the contractual phrase "Final Appellate Order" can be determined now based on ordinary principles of contract interpretation—as the many pages the parties devote to such interpretive arguments confirm. A future FCC decision about the VoIP rules will shed no light on what the term "Final Appellate Order" means or on whether the D.C. Circuit's judgment currently prohibits Level 3 from charging end-office switching rates for OTT VoIP calls. Thus, the Court will not "benefit" from such an FCC decision, nor will it be bound by it. Resp. at 19-20. Instead, waiting for such a decision will effectively adopt Level 3's reading of the phrase "Final Appellate Order"—and will improperly do so under the guise of determining that the parties' dispute over the meaning of that phrase is not ripe.

Ultimately, Level 3 falls back on the truism that courts have jurisdiction to determine their jurisdiction and it cites one decision in which a federal court construed a contract "in the context of a rule 12(b)(1) motion to dismiss." Resp. at 18 (citing *Warren v. Fox Family Worldwide, Inc.*, 171 F. Supp. 2d 1057 (C.D. Cal. 2001)). The issue in *Warren*, however, was whether the plaintiff possessed a contract right necessary to establish standing to bring a claim under federal copyright law. *Id.* at 1063-64, 1070-72. The issue here, by contrast, is whether the parties' contract dispute is fit for judicial resolution. The very fact that Level 3 is arguing that the Court can construe the

3

Agreement *now* demonstrates that the dispute is fit for judicial resolution.

Level 3's remaining cases are equally inapposite. All involved a plaintiff's failure to satisfy an *undisputed* precondition, either to a right to damages for breach of insurance coverage or to invoke arbitration.[1] Level 3 now claims that the court in *Duane Reade I* "rejected various *constructions of the contract* proposed by the plaintiff," Resp. at 17 (emphasis added), but this is false. The plaintiff sought to be excused from its failure to submit a proof of loss based on waiver theories and a claim of substantial compliance—none of which turned on an interpretation of the contract. The substantial compliance and waiver-by-repudiation theories were governed by New York law; waiver based on an asserted failure to plead an affirmative defense was governed by the terms of defendant's answer. *See* 261 F. Supp. 2d at 294. In rejecting these theories, the court did not mention any "construction" of the proof-of-loss provision "proposed by the plaintiff," much less resolve a dispute over competing "constructions" to find plaintiff's claim unripe.[2]

In short, no authority justifies Level 3's claim that the Court can construe the Agreement and adopt Level 3's disputed interpretation as a basis for ruling that the parties' contract dispute is not ripe. Level 3's motion to dismiss the contract claims should therefore be denied.

---

[1] *See Anagnostopoulos v. Union Tpk. Mgmt. Corp.*, 300 A.D.2d 393, 751 n.y.s.3D 7632 (2002); *Duane Reade, Inc. v. St. Paul Fire & Mar. Ins. Co.*, 261 F. Supp. 2d 293 (S.D.N.Y. 2003) (*Duane Reade I*); *Duane Reade, Inc. v. St. Paul Fire & Mar. Ins. Co.*, 279 F. Supp. 2d 235 (S.D.N.Y. 2003) (*Duane Reade II*); *Brooklyn Hosp. Ctr. v. Westport Ins. Corp.*, No. 03 CIV. 5190 (BSJ), 2004 WL 868208 (S.D.N.Y. Apr. 21, 2004).

[2] Similarly, while Level 3 claims that AT&T misconstrues *Brooklyn Hosp. Ctr.*, Resp. at 17 n.6, the court in that case did not consider, much less reject, any construction of the insurance contract proposed by the plaintiff. Instead, it suggested that plaintiff's allegations of detrimental reliance on assurances from its insurer might give rise to ripe claims for declaratory relief and anticipatory breach. *See Brooklyn Hosp. Ctr.*, 2004 WL 868208 at *3.

### B. Level 3's Interpretation Of The Disputed Provision Is Wrong.

Even if it were proper to interpret the Agreement to decide ripeness—and it is not—the interpretation Level 3 advances as a basis for dismissing the complaint is plainly wrong. Level 3 claims that its contractual duties are triggered only by a "final" order that "settle[s] the question of the propriety of billing end-office switching charges on OTT-VoIP calls." Resp. at 4. Such a final order will either be a *future* FCC decision that is not appealed, or a *future* appellate decision upholding a future FCC decision. The Agreement, however, does not refer to such future rulings.

The Agreement refers to the "OTT Appeal," which is defined as the petition for review of the *OTT Declaratory Order* that AT&T filed in the D.C. Circuit. *See* Agreement at 1. The provision at issue in this case then expressly "recognize[s] the pendency of *the OTT Appeal*," and states that Level 3's contractual duties "*[t]herefore*" are triggered [1] "in the event the *OTT Declaratory Order* is overturned … in whole … and [2] the applicable order *on appeal* becomes final and [3] is no longer subject to further judicial review ('Final Appellate Order')." Agreement at 3, § 1(a)(iv) (emphases added). The "applicable order *on appeal*" thus refers to a D.C. Circuit judgment in the "OTT Appeal" that "overturn[s]" the *OTT Declaratory Order* "in whole."

Level 3 does not mention, much less refute, AT&T's showing that any appeal of a *future* FCC order will occur in an entirely new case. *See* Objs. at 14. Any order issued in that future appeal, therefore, cannot be the "applicable order on appeal" of the *OTT Declaratory Order*, nor can it "overturn" the now-reversed and vacated *OTT Declaratory Order*. And, by definition, a future FCC ruling that is not appealed cannot be the "applicable order on appeal."

Because the foregoing contract language refutes its claims, Level 3 relies instead on the parties' Term Sheet. *See* Resp. at 4, 14. But the Magistrate Judge never mentioned the Term

5

Sheet—and for good reason: the Agreement provides that "[a]ll prior discussions and negotiations regarding the Disputes have been and are, merged and *integrated* into, *and are superseded by*, this Agreement." Agreement at 6, § 3 (emphasis added). The Term Sheet is thus impermissible parol evidence. *See Marine Midland Bank v. Thurlow*, 425 N.E.2d 805, 807 (N.Y. 1981) ("[W]here the parties have reduced their agreement to an integrated writing, the parol evidence rule operates to exclude evidence of all prior or contemporaneous negotiations between the parties offered to contradict or modify the terms of their writing").[3] Moreover, even if it were proper to consider it, the Term Sheet shows that the parties knew how to tie Level 3's duties to a "final ruling, either from the Court of Appeals or, if remanded, by the FCC," but chose not to do so in the Agreement.

Level 3 also claims that the D.C. Circuit's now-final judgment overturning the *OTT Declaratory Order* cannot be the "Final Appellate Order" because it does not "*conclusively* negate[] the ability to bill" end-office switching charges on OTT VoIP calls. Resp. at 5 (emphasis added). But the fact that the D.C. Circuit did not *prohibit* the FCC from re-instating its authorization of such rates in the future is irrelevant. As AT&T has shown—again, without any contradiction by Level 3—the D.C. Circuit can reverse and remand an erroneous agency action *without* vacating. *See Allied–Signal, Inc. v. U.S. Nuclear Regulatory Comm'n,* 988 F.2d 146, 150-51 (D.C. Cir. 1993). Here, however, it took the legally meaningful step of vacating the FCC's order, which rendered that order "void" and "deprive[d] [it] of force[,] … authority or validity." *Action on Smoking & Health v. CAB*, 713 F.2d 795, 797 (D.C. Cir. 1983) (citation omitted). The D.C. Circuit's judgment thus *did* negate Level 3's ability to charge end-office switching rates as

---

[3] AT&T raised this argument in its opposition, *see* Doc. 47 at 13-14, but Level 3 choose to ignore it. *See* Resp. at 14 n.4.

of May 2017, when that judgment became final and no longer subject to further judicial review, and that judgment will continue to bar such rates unless and until the FCC issues a new order authorizing such rates (and that future FCC order withstands judicial review).[4]

Indeed, at least one other court has recognized this very fact. In *O1 Commc'ns, Inc. v. AT&T*, No. 3:16-cv-1452-VC (N.D. Cal. Dec. 19, 2017), the court held that, as a result of the vacatur of the *OTT Declaratory Order*, "existing law **bars**" imposition of end-office rates for OTT traffic. Slip op. at 2 (Doc. 106) (emphasis added). Having studiously ignored this case in its filings before the Magistrate Judge, Level 3 now claims that, "[i]nstead of finding the FCC rules did not permit end-office switching charges on OTT-VoIP calls," the *O1* court "focused on the fact that 'O1 violated its own tariffs.'" Resp. at 13. This claim is demonstrably false.

The *O1* court expressly found that the services that LECs like O1 and Level 3 provide for OTT VoIP calls "are *not* end office access services, as those services are defined by current FCC policy." *O1 Commc'ns*, Slip op. at 1 (emphasis added). Like Level 3, O1 relied on the *OTT Declaratory Order* to argue otherwise, "[b]ut that decision was vacated by the D.C. Circuit" and "is therefore not a valid source of authority." *Id.* at 2. "Upon concluding that existing law bars a ruling that the services at issue are end-office access services, the Court sought supplemental

---

[4] Level 3's argument not only gives no legal effect to the D.C. Circuit's decision to vacate, it implausibly assumes that AT&T agreed to tie Level 3's refund and rate-adjustment duties to an outcome AT&T was not even seeking in its appeal. *See* Objs. at 13. Contrary to Level 3's claim, Resp. at 11 n.3, "waiver" principles do not foreclose consideration of this obvious flaw in Level 3's interpretation. In its motion to dismiss, Level 3 did not argue that the D.C. Circuit's vacatur did not "overturn" the *OTT Declaratory Order* "in whole" and that the D.C. Circuit instead had to "reverse[] without a remand." In all events, AT&T's observation about the relief it sought in its appeal merely amplified its argument that the contract did not require it to continue to pay the contested rates Level 3 was charging "even if it won its appeal and the D.C. Circuit nullified the FCC's decision permitting such charges." Doc. 47 at 15.

7

briefing on whether the language of O1's tariffs *nonetheless* allows O1 to charge the higher end-office access services rates," *id.* (emphasis added), but it ruled that this alternative theory also failed, *id.* at 2-4. It is indisputably clear, therefore, that the *O1* court *did* find that, as a result of the vacatur of the *OTT Declaratory Order*, "FCC rules did not permit end-office switching charges on OTT-VoIP calls." Resp. at 13. Level 3 also criticizes the *O1* decision as only "two-pages long" and "lack[ing] in detail." *Id.* But it is Level 3's analysis that completely ignores, and gives no legal effect to, the D.C. Circuit's decision to vacate the *OTT Declaratory Order*.

Level 3 likewise ignores binding legal principles in claiming that the D.C. Circuit's judgment is not final. Resp. at 15-16. Level 3 does not dispute that the "administrative remand" rule on which it relies implements the finality requirement of 28 U.S.C. § 1291, which is a jurisdictional limit on the authority of appellate courts to review district court decisions, and that there is no analogous finality requirement for circuit court decisions, *see* 28 U.S.C. § 1294. Instead, Level 3 blithely asserts that any distinction between district and appellate courts "is meaningless" when it comes to review of agency action. Resp. at 16. But the very cases it relies on recognize that district court remand orders "are generally not considered final decisions *for jurisdictional purposes*." *Caesar v. West*, 195 F.3d 1373, 1374 (Fed. Cir. 1999) (emphasis added). And it is black letter law in this circuit that "'[i]ssuance of the mandate formally marks the end of appellate jurisdiction.'" *In re Sunset Sales, Inc.*, 195 F.3d 568, 570 (10th Cir. 1999) (quoting *Johnson v. Bechtel Assocs. Prof'l Corp.*, 801 F.2d 412 (D.C. Cir. 1986)). Because the D.C. Circuit issued its mandate, its judgment vacating the *OTT Declaratory Order* is final both as a matter of binding Tenth Circuit law and D.C. Circuit practice. *See* P. Wald, *Regulation at Risk: Are Courts Part of the Solution or Most of the Problem?*, 67 S. Cal. L. Rev. 621, 640-41 (1994) (D.C. Circuit treats

agency remands "as terminated cases"). Level 3's claims to the contrary are legally baseless.

Finally, Level 3 fails to explain how its interpretation gives meaning to the rate-adjustment requirement. On its view, this provision requires it to charge rates in compliance with a future appellate decision that upholds a future FCC decision establishing rates for OTT VoIP calls. But this is an utterly meaningless contract "right," because Level 3 must comply with FCC-established rates that have been upheld on appeal. It is no answer to assert that "the whole point of the Agreement was to settle the parties' dispute while AT&T's arguments on how to interpret the FCC's rules were being considered." Resp. at 10. AT&T's appeal created legal uncertainty for both parties. Yet under Level 3's reading, AT&T agreed to make substantial payments in "exchange" for a legal right it would possess even in the absence of the contract.

## II. AT&T OBJECTS TO THE RECOMMENDATION THAT ITS STATUTORY CLAIM IS RIPE.

Level 3 has likewise failed to justify the Magistrate Judge's recommendation that AT&T's federal law claims be dismissed as unripe. Level 3 mechanically recites the traditional ripeness factors, but it does not—because it cannot—show that a determination by this Court that federal law currently bars end-office switching charges for OTT-VoIP calls will interfere with any FCC proceedings. The decision in *O1*, moreover, demonstrates that there is no need to await an FCC decision in order to resolve that legal question. That is particularly true given that the FCC may never issue a decision, or may only interpret its rules on a prospective basis.

Level 3 cites *Teliax v. AT&T Corp.*, No. 15-cv-01472, 2017 WL 3839459, at *3 (D. Colo. Sept. 1, 2017), as support for its ripeness claim, suggesting that the Court there found it appropriate to await instructions from the FCC. Resp. at 19. But, *Teliax* did not dismiss AT&T's complaint on ripeness grounds; it made a primary jurisdiction referral and stayed proceedings. *See* 2017 WL

9

3839459 at *3. That decision involved an exercise, not a disavowal, of jurisdiction.

In its response, Level 3 cites two new cases to try to show that a primary jurisdiction referral is the same as a dismissal on ripeness grounds. Resp. at 20 n.7. In *Schering Corp. v. Heckler*, 779 F.2d 683 (D.C. Cir. 1985), the district court dismissed a complaint on both primary jurisdiction and ripeness grounds, but the D.C. Circuit *declined* to endorse that reasoning, and instead affirmed on a different theory. *See id.* at 684 & n.3. And in *Broadvox-CLEC, LLC v. AT&T Corp.*, No. PWG-13-1130, 2014 WL 3013275 (D. Md. July 2, 2014), the district court stated that AT&T's answer had "raised the primary jurisdiction doctrine . . . as a question of ripeness," *id.* at *1, but that passing description was mistaken, and the Court never dismissed claims as unripe. AT&T pled that the plaintiff was "not entitled to *immediate* relief in this Court because its claims are subject to the primary jurisdiction doctrine." *Broadvox-CLEC, LLC v. AT&T Corp.*, No. PWG-13-1130, Doc. 20 at 9 (emphasis added). In all events, AT&T's pleadings cannot transform the doctrine of primary jurisdiction into a species of ripeness.

## CONCLUSION

For the foregoing reasons as well as those set forth in its Written Objections, AT&T objects to the Magistrate Judge's Recommendation to grant Level 3's motion to dismiss and urges the Court to deny that motion in its entirety.

Dated: Sept. 14, 2018						Respectfully submitted,


							By:	*/s/ Rebecca B. DeCook*
								Rebecca B. DeCook, #14590
								Andrew T. Flynn, #43843
								MOYE WHITE LLP
								1400 16th Street, 6th Floor
								Denver, Colorado 80202-1027
								Telephone: (303) 292-2900
								E-mail: becky.decook@moyewhite.com
								E-mail: andrew.flynn@moyewhite.com

								Michael D. Warden
								Michael J. Hunseder
								Justin A. Benson
								SIDLEY AUSTIN LLP
								1501 K ST NW
								Washington, DC 20005
								Telephone: (202) 736-8000
								E-mail: mhunseder@sidley.com
								E-mail: jbenson@sidley.com

								*Attorneys for Plaintiff AT&T Corp.*

## CERTIFICATE OF SERVICE

I, Carolyn M. Lux, hereby certify that on September 14, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

>Charles W. Steese, #26924
>Douglas N. Marsh, #45964
>Martin J. Estevao, #46260
>ARMSTRONG TEASDALE LLP
>4643 South Ulster Street, Suite 800
>Denver, Colorado 80237
>Telephone: (720) 200-0676
>Email: csteese@armstrongteasdale.com
>Email: dmarsh@armstrongteasdale.com
>Email: mestevao@armstrongteasdale.com
>
>*Attorneys for Defendant Level 3 Communications, LLC*

>/s/ Carolyn M. Lux