# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Raymond P. Moore

Case No. 18-cv-00112-RM-MEH

AT&T CORPORATION,

     Plaintiff,

v.

LEVEL 3 COMMUNICATIONS, LLC,

     Defendant.

---

## OPINION AND ORDER

---

On January 16, 2018, Plaintiff AT&T Corporation ("plaintiff") filed a Complaint against Defendant Level 3 Communications, LLC ("defendant"), asserting the following causes of action: (1) breach of contract (Claim One); (2) violation of "FCC Rules" and Sections 201(b), 203, and 251(b)(5) of the Communications Act, 42 U.S.C. §§ 201(b), 203, 251(b)(5) (Claim Two); and (3) declaratory judgment (Claim Three).  (ECF No. 1.)

On February 14, 2018, defendant filed a motion to dismiss the Complaint ("the motion to dismiss"), pursuant to Fed.R.Civ.P. 12(b)(1) ("Rule 12(b)(1)").  (ECF No. 14.)  Defendant argued that plaintiff's claims were not ripe.  (*Id.*)  Plaintiff filed a response to the motion to dismiss (ECF Nos. 47, 48),[1] and defendant filed a reply (ECF No. 52).

---

[1] Two versions of plaintiff's response were filed because one is a public version (ECF NO. 47) and one is a restricted version (ECF No. 48).

The motion to dismiss was referred to the U.S. Magistrate Judge.  (ECF No. 31.)  On August 1, 2018, the Magistrate Judge entered a report and recommendation ("R&R"), recommending that the motion to dismiss be granted and plaintiff's claims be dismissed without prejudice.  (ECF No. 63.)  The Magistrate Judge found that plaintiff's claims were not ripe, and thus, the court lacked subject matter jurisdiction over this action.  (*Id.*)  Plaintiff filed objections to the R&R (ECF No. 65), and defendant filed a response thereto (ECF No. 72).[2]  Various motions to restrict have also been filed.  (ECF Nos. 64, 67, 71.)

## I.     Review of a Magistrate Judge's Recommendations

A district court may refer pending motions to a magistrate judge for entry of a report and recommendation.  28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b).  The court is free to accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate judge.  28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(3).  A party is entitled to a *de novo* review of those portions of the report and recommendation to which specific objection is made.  *See* Fed.R.Civ.P. 72(b)(2), (3). "[O]bjections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. 2121 E. 30 St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

---

[2] Fourteen days after the filing of defendant's response, plaintiff filed a motion for leave to file a reply in support of its objections (ECF No. 74), which the Court DENIES and instructs the Clerk to STRIKE from the record.  First, the Court does not need a reply to resolve plaintiff's objections to the R&R.  Second, the Court finds incredibly disingenuous plaintiff's filing of the motion for leave, when counsel for plaintiff called Chambers to ask for direction on whether a reply would be allowed, and counsel was told that, although the Court would not prevent plaintiff from seeking to file a reply, plaintiff would need to do so within SEVEN days of entry of defendant's response.  Plaintiff failed to listen, and thus, it only has itself to blame.

2

## II.     Legal Standard for the Motion to Dismiss

Here, defendant argued that plaintiff's claims are not ripe.  (ECF No. 14.)  Because courts in this Circuit construe such an argument as contesting subject matter jurisdiction, *see, e.g., Atchison v. Saddleback Metro. Dist.*, 2009 WL 306701, at *2 (D. Colo. Feb. 5, 2009), and the parties and the Magistrate Judge proceeded under this assumption, the Court will assume that the motion to dismiss was properly filed pursuant to Rule 12(b)(1), *see United States v. Wilson*, 244 F.3d 1208, 1213 (10th Cir. 2001) ("Whether a claim is ripe for adjudication, and therefore presents a case or controversy, bears directly on [subject matter] jurisdiction.").

Motions to dismiss for lack of subject matter jurisdiction take two principal forms: (1) a facial attack, or (2) a factual attack on the allegations in the complaint.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  Here, defendant mounted a factual attack on the allegations in the Complaint.  (*See* ECF No. 14 at 10.)  When this occurs, a court does not presume the truthfulness of factual allegations in a complaint, and "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts …." *Holt*, 46 F.3d at 1002. However, where there has been no evidentiary hearing, "the plaintiff need only make a prima facie showing that jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). No evidentiary hearing has been requested or held here.

The party asserting jurisdiction has the burden of establishing it.  *Port City Properties v. Union Pacific R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

## III.    Ripeness Standard

In its motion to dismiss, defendant argued that, in considering whether the claims in this case were ripe, the Court must consider three factors: (1) whether delayed review would be harmful to

the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented, citing *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 118 S.Ct. 1665 (1998). (ECF No. 14 at 10.)  In the R&R, the Magistrate Judge assessed ripeness in light of these factors.  (ECF No. 63 at 5, 11-14.)

The Court disagrees that those are the correct factors.  In *Ohio Forestry Ass'n*, the Supreme Court stated that the three factors recited above should be considered when "deciding whether *an agency's decision* is, or is not, ripe for judicial review."  *Ohio Forestry Ass'n*, 523 U.S. at 733 (emphasis added).  In the motion to dismiss, defendant does not contend that an agency's decision is or is not ripe for judicial review in this case.  Nor could it, given that no agency is a party to this case and reviewing an agency's decision is not the purpose of this case.  Instead, defendant clearly states that *plaintiff's claims* are not ripe.  (*See* ECF No. 14 at 1.)  There is, thus, no reason to apply the factors set forth in *Ohio Forestry Ass'n*.

Instead, the Court applies the factors used to determine whether a *claim* is ripe.  Those are: "(1) the fitness of the issue for judicial resolution and (2) the hardship to the parties of withholding judicial consideration."  *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1275 (10th Cir. 2012) (emphasis omitted).  "A case meets the first prong if it does not involve uncertain or contingent events that may not occur at all (or may not occur as anticipated)."  *Id*. (quotation omitted).  "The second prong addresses whether the challenged action is a direct and immediate dilemma for the parties."  *Id*. (quotation omitted).

Case 1:18-cv-00112-RM-MEH   Document 76   Filed 09/18/18   USDC Colorado   Page 5 of 27

## IV.      Factual Background

Although the Magistrate Judge set forth a factual background in the R&R, the Court chooses to provide a factual background relevant to the matters presently before it.

Plaintiff provides long distance telephone services.  (ECF No. 1 at ¶ 12.)  Defendant is a provider of regulated telecommunications services known as "switched access services."  (*Id*. at ¶ 8.)  Defendant provides these services via filed tariffs and negotiated contracts, including a contract with plaintiff.  (*Id*.)  Defendant is a "competitive local exchange carrier" ("CLEC").  (*Id*. at ¶ 13.)  Local exchange carriers ("LECs"), such as defendant, traditionally operate local switches and/or last-mile transmission facilities.  (*Id*. at ¶¶ 12-13.)  LECs also sell access services that allow long distance carriers, such as plaintiff, both to originate and complete a customer's long distance calls.  (*Id*. at ¶ 12.)

The rates and terms for access services are regulated by the Federal Communications Commission ("the FCC").  (*Id*. at ¶ 14.)  The billed rates for access services are often divided into "rate elements."  (*Id*. at ¶ 15.)  The "rate elements" can include "local switching," which is also known as "end-office switching," and "tandem services."  (*Id*. at ¶¶ 1, 15-16.)  End-office switching occurs when a LEC carries a call over last-mile transmission facilities.  (*Id*. at ¶ 15.)  Tandem services are not used to connect directly to calling or called parties; instead, they are used to route calls between switches or other telephone facilities.  (*Id*. at ¶ 16.)

Increasingly, telephone calls can be placed or received by way of something known as "over-the-top" ("OTT") "voice over internet protocol" ("VoIP") calls.  (*Id*. at ¶¶ 2, 17.)  With OTT VoIP calls, a VoIP provider does not connect directly to last-mile facilities and a caller cannot place or receive such a call unless they separately obtain high-speed internet service.  (*Id*. at ¶ 2.)  VoIP providers have often partnered with LECs, such as defendant.  (*Id*. at ¶ 19.)

In 2011, the FCC issued rules governing access services that LECs could bill on VoIP traffic when they partner with a VoIP provider ("the Transformation Order"). (*Id.* at ¶ 21.)

At some point, a dispute arose between plaintiff and defendant, as to how the FCC rules should be applied OTT VoIP services. (*Id.* at ¶ 23.) Essentially, plaintiff believes that the maximum charge for an OTT VoIP call should be equal to a charge for tandem switching. (*Id.*) Defendant believes that OTT VoIP calls can be charged as end-office switching, which is traditionally a higher charge. (*Id.*) The parties' dispute began at least as early as 2011. (*Id.* at ¶ 26.) As part of the dispute, plaintiff withheld certain charges defendant billed. (*Id.*)

In 2015, the FCC issued a ruling ("the Declaratory Ruling") authorizing the billing of end-office switching for OTT VoIP calls. (*Id.* at ¶ 24.) Plaintiff then sought review of that ruling before the D.C. Circuit Court of Appeals. (*Id.*)

While review of the Declaratory Ruling was pending before the D.C. Circuit, plaintiff and defendant entered into a Release and Settlement Agreement ("the Settlement Agreement"). (*Id.* at ¶ 25; ECF No. 15-1.) Because a copy of the Settlement Agreement is in the record, the Court chooses to summarize the same itself, rather than rely on the parties' characterizations of it. The Settlement Agreement provides for the settling of past disputes between the parties. For example, plaintiff agreed to pay defendant an amount for traffic exchanged through March 2015, and an amount for traffic exchanged from April 1 through May 31, 2015.[3] (ECF No. 15-1 at ¶ 1(a)(i).)

More pertinently for this case, the Settlement Agreement also attempts to set the terms for future payments between the parties. Notably, from June 1, 2015, plaintiff was required to pay defendant "its applicable switched access tariffed rate for OTT traffic, pursuant to the terms of the

---

[3] The Settlement Agreement was effective as of May 27, 2015, the day on which the last party executed it. (*See* ECF No. 15-1 at 1, 10.)

6

[Declaratory Ruling]." (*Id.* at ¶ 1(a)(ii).)[4]  The parties, though, had not forgotten that the Declaratory

Ruling was being appealed.  As a result, they crafted another provision.  Because of its import to the

breach of contract claim plaintiff brings in this case, the Court recites the entire provision below:

> Although the Parties agree that this Settlement Agreement is intended to be
> a full and final settlement of all disputes and balances associated with OTT traffic
> prior to June 1, 2015, the Parties also recognize the pendency of the OTT Appeal
> [i.e., the appeal before the D.C. Circuit].  Therefore, in the event the [Declaratory
> Ruling] is overturned, either in whole or in part, and the applicable order on appeal
> becomes final and is no longer subject to further appeal or other judicial review
> ("Final Appellate Order"), [defendant] will refund, within 30 days, ▮▮▮▮▮▮
> ▮▮▮▮▮ of the disputed OTT charges beginning with June 2015 traffic through the date
> on which such Final Appellate Order becomes final and is no longer subject to
> further appeal or other judicial review; provided, however, that if the [Declaratory
> Ruling] is overturned in part, and not in whole, then [defendant] will only be required
> to refund OTT charges to the extent they should not have been charged in accordance
> with the Final Appellate Order.  Further, the Parties agree that any billing and
> payments for OTT traffic exchanged after such Final Appellate Order becomes final
> shall be in compliance with terms of that order.

(*Id.* at ¶ 1(a)(iv).)

In November 2016, the D.C. Circuit vacated and remanded the Declaratory Ruling ("the D.C.

Circuit Order").  *AT&T Corp. v. FCC*, 841 F.3d 1047, 1056 (D.C. Cir. 2016).[5]  Defendant petitioned

for rehearing of the D.C. Circuit Order, which was denied.  (ECF No. 1 at ¶ 37.)  The D.C. Circuit's

mandate issued on February 15, 2017.  No entity sought review of the D.C. Circuit Order from the

U.S. Supreme Court.  (*Id.*)

---

[4] Plaintiff retained the right, though, to dispute these bills for reasons unrelated to the Declaratory
Ruling.  (ECF No. 15-1 at ¶ 1(a)(ii).)  In addition, defendant agreed not to bill plaintiff for end-office
switching with respect to certain OTT traffic.  (*Id.* at ¶ 1(a)(iii).)

[5] The D.C. Circuit Order will be discussed more fully later, and the Court declines to discuss the
conclusions therein in this factual background.

7

Defendant has not issued plaintiff a refund for disputed charges on OTT VoIP calls.  (*Id.* at ¶¶ 51-52.)  Defendant has continued to charge plaintiff for end-office switching on OTT VoIP calls. (*Id.* at ¶ 57.)

Plaintiff alleges that the failure to issue it a refund and defendant's continued billing for end-office switching on OTT VoIP calls violate the Settlement Agreement.  (*Id.* at ¶¶ 62-65, 68-69.) Plaintiff further alleges that defendant's continued billing for end-office switching on OTT VoIP calls is "inconsistent" with FCC rules and Sections 201(b), 203, and 251(b)(5) of the Communications Act.  (*Id.* at ¶ 82.)  Plaintiff further alleges that defendant's continued billing for end-office switching on OTT VoIP calls is "inconsistent" with defendant's tariffs.  (*Id.* at ¶ 83.)

## V.     The Report and Recommendation

The Magistrate Judge made the following findings.  First, the Magistrate Judge addressed the parties' differing interpretations of language in the Settlement Agreement, specifically, the following: "in the event the [Declaratory Ruling] is overturned, either in whole or in part, and the applicable order on appeal becomes final and is no longer subject to further appeal or other judicial review …."  (ECF No. 63 at 9.)  The Magistrate Judge appeared to accept as "true" plaintiff's contention that the D.C. Circuit Order was no longer subject to further appeal or other judicial review.  (*Id.*)  The Magistrate Judge was far less convinced, though, with plaintiff's arguments that the Declaratory Ruling had been overturned and the D.C. Circuit Order was final.  The Magistrate Judge found that it was "debatable" whether the Declaratory Ruling had been overturned.  (*Id.* at 9-10.)  The Magistrate Judge further found that, because the D.C. Circuit had issued a remand, the D.C. Circuit Order was not final, analogizing such a remand to a district court's remand to an administrative agency.  (*Id.* at 10-11.)

8

Second, the Magistrate Judge addressed the three ripeness factors this Court rejected *supra*, finding that plaintiff's claims were not ripe. (*Id*. at 11-15.) Although the Magistrate Judge "appreciate[d]" the financial stakes for plaintiff, the Magistrate Judge found that "this monetary hardship" had to yield to the other factors. (*Id*. at 11.) In that regard, the Magistrate Judge found that judicial intervention in this case might interfere with administrative action and this case would benefit from further factual development, citing *Teliax, Inc. v. AT&T Corp.*, 2017 WL 3839459 (D. Colo. Sep. 1, 2017). (*Id*. at 13.)

For the reasons discussed in the next Section, this Court disagrees with at least some of the findings in the R&R, and thus, chooses to reject the R&R.

## VI.    Discussion

The sole question raised by the motion to dismiss is whether plaintiff's claims are ripe for adjudication. To determine that, the Court begins with plaintiff's claims. They are threefold: breach of contract; violations of the Communications Act and rules of the FCC; and a declaratory judgment that defendant is prohibited from billing for end-office switching on OTT VoIP calls. In the motion to dismiss, defendant argued that each one of those claims was not ripe because they each depend on a condition taking place which has not yet occurred. (ECF No. 14 at 9.)

### A.    Claim One—Breach of Contract

The Court starts with the breach of contract claim. To recall, plaintiff's breach of contract claim involves both (1) an alleged refund plaintiff believes it is entitled for the period from June 1, 2015 up to the date of a "Final Appellate Order," and (2) billing from the date of the Final Appellate Order in compliance with the Final Appellate Order. In the motion to dismiss, defendant argued that the breach of contract claim depends on the entry of a "final order on the issue," with "the issue"

9

Case 1:18-cv-00112-RM-MEH   Document 79   Filed 09/18/18   USDC Colorado   Page 10 of 27

being "the OTT-VoIP billing issue." (*Id.*) That is simply wrong. Although the Settlement

Agreement has problems, it is clear in the following respect. The refund that plaintiff may or may

not be entitled, has nothing to do with resolution of the "OTT-VoIP billing issue" by the FCC.

Instead, the Settlement Agreement provides that plaintiff will be entitled to a refund when (1) the

Declaratory Ruling is overturned in whole or in part, and (2) "the applicable order on appeal"

(a) becomes final and (b) is no longer subject to further appeal or other judicial review. Although

the extent of the refund that plaintiff may or may not be entitled is certainly open to debate,[6] the

conditions that must be satisfied in order for plaintiff to be entitled to a refund do not involve final

resolution of the OTT VoIP billing issue. All that must be "final" is the "applicable order on

appeal." Put simply, defendant has framed the issue wrong.

That, though, is not the main problem with defendant's attempt to have the breach of contract

claim dismissed as unripe. After all, whether the "applicable order on appeal" was final could itself

be a condition that had not yet occurred. That appears to be, essentially, what the Magistrate Judge

found. And, ultimately, that is the greatest problem, at least with respect to the breach of contract

claim. In deciding that one of the conditions necessary for plaintiff to be entitled to a refund had not

occurred, the Magistrate Judge resolved a clear and present dispute between the parties. In other

words, the Magistrate Judge did not address an "abstract" disagreement, *see City of Glenpool*, 698

F.3d at 1275, the dispute the Magistrate Judge addressed is the heart of the R&R and plaintiff's

breach of contract claim. How this Court could resolve that dispute, while also finding that the

breach of contract claim is not ripe, is a mystery.

---

[6] Similarly, it is also open to debate on what terms defendant must bill plaintiff going forward. What is not open to debate is that billing must be "in accordance with terms of [the Final Appellate Order]" once that order becomes final.

Defendant certainly tries to de-mystify the matter. Defendant starts by arguing that a court has jurisdiction to determine its own jurisdiction. As mentioned earlier, at the Rule 12(b)(1) stage, a court may consider evidence to resolve disputed jurisdictional facts. The problem is, in arguing that a condition precedent to the Settlement Agreement had not occurred, defendant was not asking this Court to resolve disputed *jurisdictional* facts. Under New York law, which defendant asserts is the applicable law for the breach of contract claim (ECF No. 14 at 15), the occurrence of a condition precedent is an affirmative defense. *United Resource Recovery Corp. v. Ramko Venture Mgmt., Inc.*, 584 F. Supp. 2d 645, 657 (S.D.N.Y. 2008); *see also* N.Y. C.P.L.R. 3015(a). In addition, this affirmative defense can be waived. *City of New York v. Delafield 246 Corp.*, 662 N.Y.S.2d 286, 293 (N.Y. App. Div. 1997).

Returning to this Circuit, the Tenth Circuit has explained that subject matter jurisdiction cannot be waived. *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004). In *Radil*, the Tenth Circuit further explained that, under Colorado law, it is an affirmative defense that a plaintiff's exclusive remedy exists under workers' compensation law. *Id*. at 1225. Importantly, the Tenth Circuit held that, "[a]s a waivable defense, this issue [whether workers' compensation was the plaintiff's exclusive remedy] does not implicate the federal courts' subject matter jurisdiction." *Id*. The Circuit then rejected the defendant's arguments that, in other cases, Colorado courts had barred civil suits when workers' compensation was available because "in none of these cases did the parties dispute the existence of the state law bar, as they have done in the current case." *Id*. at 1226. Moreover, when the existence of the affirmative defense had been challenged, "the issue has always been sent to the trier of fact." *Id*. The Tenth Circuit reached a similar result in *City of Glenpool*. Notably, the Tenth Circuit concluded that, because the plaintiff had "alleged" the violation of its

11

statutory rights, the defendant's assertion of an affirmative defense did not defeat subject matter jurisdiction. *City of Glenpool*, 698 F.3d at 1274.

As far as the Court is concerned, the foregoing demonstrates that the parties clear and present dispute over the occurrence (or lack thereof) of one or more conditions precedent to the performance of defendant under the Settlement Agreement is *not* a jurisdictional fact that the Court can resolve at the Rule 12(b)(1) stage. Instead, it is an essential part of the *merits* of the breach of contract claim. As such, there is no basis for the Court to resolve the parties' merits dispute in the context of the instant motion because, at this juncture, the Court may only resolve jurisdictional facts. *See Holt*, 46 F.3d at 1002. Because this Court cannot resolve the parties' dispute at this juncture, the allegations in the Complaint must be accepted as true. *See City of Glenpool*, 698 F.3d at 1275 (accepting that alleged facts had allegedly occurred).[7] In that light, plaintiff's breach of contract claim is clearly ripe because plaintiff plausibly (and not conclusorily) alleges that a breach has occurred.

Defendant also relies on a couple of decisions for its proposition that the parties' dispute can be resolved in determining whether the breach of contract claim is ripe. The cases do not help. Defendant relies predominately on *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F.

---

[7] There are at least two other reasons why the allegations of the Complaint must be accepted as true at this juncture. One, no evidentiary hearing has occurred in this case. As a result, "all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Wenz*, 55 F.3d at 1505. Two, "a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." *Holt*, 46 F.3d at 1002. As far as this Court is concerned, the jurisdictional question—whether plaintiff's breach of contract claim is unripe because conditions precedent have not occurred under the contract—is intertwined with the disputed merits of that claim—whether defendant is obligated to refund money to plaintiff and bill plaintiff in accordance with the D.C. Circuit Order because conditions precedent to those obligations have occurred.

12

Case 1:18-cv-00112-RM-MEH   Document 80   Filed 09/18/18   USDC Colorado   Page 13 of 27

Supp. 2d 293 (S.D.N.Y. 2003). (*See* ECF No. 72 at 16-17.)  As defendant tells it, in *Duane Reade*, the court dismissed breach of contract claims as unripe because the plaintiff had failed to perform a condition precedent.  (ECF No. 72 at 17.)  That is true.  In *Duane Reade*, it was undisputed that the condition precedent had not been performed.  *Duane Reade*, 261 F. Supp. 2d at 295.  Defendant contends that the undisputed nature of the condition precedent is of no moment because "[t]he legal significance of that fact under the parties' contract was very much in dispute, and the court rejected various constructions of the contract proposed by the plaintiff …."  (ECF No. 72 at 17.)  Although defendant fails to explain what it means by "legal significance of that fact," it is irrelevant in terms of comparing *Duane Reade* to this case.  It appears that defendant is attempting to suggest that, although the facts concerning the condition precedent were undisputed, it was disputed whether the failure to perform the condition precedent made the claims unripe.  Even if that is so, here, it is *both* disputed whether the condition precedent occurred *and* whether the breach of contract of claim is ripe.  So, whereas in *Duane Reade*, the court made a legal conclusion that the claims were unripe when the underlying facts were undisputed,[8] here, defendant wants this Court to resolve both factual disputes and a legal dispute.  Put another way, for *Duane Reade* to be relevant here, plaintiff would need to have accepted that the condition precedents in the Settlement Agreement had not occurred, *but*, occurrence of those conditions was unnecessary because, like the plaintiff in *Duane Reade* contended, the conditions had substantially occurred and/or defendant had waived occurrence of the conditions.  Here, plaintiff disputes that the condition precedents have not occurred, and plaintiff has

---

[8] In addition to the facts concerning the performance of the condition precedent being undisputed, it is not apparent from the court's discussion of the plaintiff's excuses for "avoid[ing]" the condition precedent that there was any factual dispute regarding the excuses.  *See Duane Reade*, 261 F. Supp. 2d at 295.

never argued that the conditions have only substantially occurred or that defendant has waived their occurrence.[9]  As such, *Duane Reade* is simply not the same as this case.[10]

In summary, the Court finds that, because the parties dispute whether a breach of the Settlement Agreement has occurred, plaintiff's breach of contract claim is very much fit for judicial resolution.  *See City of Glenpool*, 698 F.3d at 1275.  In addition, the Court rejects defendant's contention that, because plaintiff is a "large telecommunications company," it essentially cannot suffer a hardship.  (*See* ECF No. 72 at 18.)  As an initial matter, that argument does not appear to be relevant to the analysis.  *See City of Glenpool*, 698 F.3d at 1275 ("The second prong addresses whether the challenged action is a direct and immediate dilemma for the parties.").  Here, there is definitely a direct and immediate dilemma for the parties as to whether the Settlement Agreement

_____

[9] It should be noted that one of the arguments the plaintiff raised in *Duane Reade* was that the condition precedent had been waived because the defendant failed to raise it as an affirmative defense.  *Duane Reade*, 261 F. Supp. 2d at 295.  The court found that the affirmative defense had been raised, and thus, there had been no waiver.  *Id.*  In light of the discussion *supra*, defendant might believe there is an argument to advance in this regard.  There is not, at least not in light of Tenth Circuit precedent.  Notably, unlike *Duane Reade*, here, it is very much disputed whether the condition precedents occurred.  As the Tenth Circuit explained in *Radil*, when parties dispute whether an affirmative defense bars a claim, such a dispute is for the trier of fact.  *See Radil*, 384 F.3d at 1226.

[10] Defendant also cites *Brooklyn Hosp. Ctr. v. Westport Ins. Corp.*, 2004 WL 868208 (S.D.N.Y. Apr. 21, 2004), for the proposition that, although the failure to satisfy a condition precedent was undisputed, "[n]othing in the order suggests that its legal significance as a precondition to coverage was undisputed."  (ECF No. 72 at 17 n.6.)  Defendant's fixation with the "legal significance" of undisputed facts is again unexplained, but, in any event, *Brooklyn Hosp.* is abundantly clear that, because the plaintiff conceded the "actual facts," a breach of contract claim was not ripe.  *Brooklyn Hosp.*, 2004 WL 868208, at *3.  There is no further discussion in the decision, which would seem to suggest the "legal significance" of the conceded facts was fairly clear for the court.

Defendant also cites *Anagnostopoulos v. Union Turnpike Mgmt. Corp.*, 751 N.Y.S.2d 762 (N.Y. App. Div. 2002), for the apparent proposition that resolution of conditions precedent are "a question for threshold judicial resolution."  (ECF No. 72 at 16.)  It would have been better if defendant had not conveniently excluded the important contextual phrase from its quotations—namely, that a court may determine whether "contractual conditions precedent to *arbitration*" have been fulfilled, which the court described as a threshold question.  *See Anagnostopoulos*, 751 N.Y.S.2d at 763.  That is not the situation here.  In any event, to describe a condition precedent to contractual performance as a threshold question for a breach of contract claim, is like saying discrimination is a threshold question for a claim brought under a discrimination statute.

has been breached.  In any event, to the extent plaintiff's allegations are true that defendant has breached the Settlement Agreement by not refunding plaintiff money and incorrectly billing it (a practice that allegedly continues), that is hardship enough, irrespective of how much of a splash any recovery may make in plaintiff's corporate bank account.

As a result, the Court finds that plaintiff's breach of contract claim (Claim One) is ripe.

## B. Claim Two—Violations of FCC Rules and the Communications Act

Plaintiff's next claim is for violations of "FCC rules" and various sections of the Communications Act ("the statutory claim").  In the motion to dismiss, defendant argued that this claim depends upon the FCC "determining that end-office switching charges may not be assessed for OTT VoIP calls."  (ECF No. 14 at 9.)  This is a much closer call.

In the statutory claim, plaintiff essentially alleges that FCC rules in a world in which the Declaratory Ruling never existed (for ease of reference, the Court will refer to these rules as the "2011 FCC rules")[11] require defendant to provide the functional equivalence of end-office switching on OTT VoIP calls if defendant wants to charge for end-office switching.  (*See id.* at ¶¶ 74-75.) Plaintiff alleges that, although defendant does not provide the functional equivalence of end-office switching, defendant has billed and continues to bill plaintiff for end-office switching.  (*Id.* at ¶¶ 80-81.)  Plaintiff alleges that, as a result, defendant's billing for end-office switching is not "consistent[]" with the 2011 FCC rules.  (*See id.* at ¶ 74, 82.)  Plaintiff further alleges that, because

---

[11] By "those FCC rules [that] existed absent the Declaratory Ruling" (ECF No. 1 at ¶ 74), the Court presumes plaintiff refers to the rules set forth in the FCC's 2011 Transformation Order (*see* ECF No. 1 at ¶¶ 21-22).  Hence, the Court referring to these rules as the "2011 FCC rules."  By doing so, the Court does not intend to suggest that plaintiff's construction of the rules set forth in the Transformation Order is correct.

the 2011 FCC rules validly implement provisions of the Communications Act, defendant's billing is "inconsistent" with Sections 201(b), 203, and 251(b)(5) of that Act.  (*Id*. at ¶¶ 76, 82.)[12]

As the Court reads the Complaint, defendant's contention    that the statutory claim depends upon an FCC determination that end-office switching charges are prohibited for OTT VoIP calls    is not quite accurate.  Instead, plaintiff appears to do everything in its power to avoid alleging that, which is, presumably, why plaintiff ends up wanting the statutory claim to depend upon the 2011 FCC rules.  Essentially, as far as the Court sees things, the statutory claim depends upon the Court determining what charges for OTT VoIP calls would be "consistent[]" with the 2011 FCC rules.  Merely because defendant did not quite decipher (in the Court's mind) the intent of the statutory claim, though, does not ultimately help plaintiff too much.

In a nutshell, no one knows what is "consistent[]" with the 2011 FCC rules.  That is presumably why the parties got into a dispute in the first place and why the Declaratory Ruling was needed.  The FCC has tried and (according to the D.C. Circuit, initially) failed to adequately explain how charges for end-office switching on OTT VoIP calls are consistent with the 2011 FCC rules.  The D.C. Circuit Order, meanwhile, returns the matter to the FCC.  So, however the D.C. Circuit Order may be described in terms of overturning the Declaratory Ruling,[13] because the FCC has allegedly not done anything with the returned case (ECF No. 1 at ¶ 38), the matter is still open as to what is or is not consistent with the Transformation Order.

---

[12] The Court also notes that peppered throughout the statutory claim are unhelpful references to the Settlement Agreement.  (*See* ECF No. 1 at ¶¶ 72, 74, 84.)  The parties' efforts to draw a line between the breach of contract claim and the statutory claim have been unhelpful enough as it is; the Complaint simply did not set a good tone in that regard.

[13] The Court makes no findings as to whether or not the D.C. Circuit Order overturned the Declaratory Ruling for purposes of the Settlement Agreement, or, if the Declaratory Ruling was overturned, whether it was overturned in whole or in part.

Plaintiff cites one case for the proposition that this matter has been resolved: *O1 Communications, Inc. v. AT&T*, 2017 WL 8294245 (N.D. Cal. Dec. 19, 2017). (ECF No. 65 at 17.) Undoubtedly, *O1* answers the question in a manner favorable to plaintiff, who was one of the parties in *O1*, in that it found that the functional equivalence of end-office switching had not been provided on OTT VoIP calls. *O1 Communications*, 2017 WL 8294245, at *1. That notwithstanding, the decision in *O1* seems to be missing something. Put another way, in reading the brief discussion of the issue in *O1*, one would think that answering whether end-office switching was consistent with the 2011 FCC rules was a piece of cake. But, that simply cannot be the case, in light of the FCC's failure to do so itself.

Moreover, the *O1* court relied on the D.C. Circuit Order to find that entities like defendant do not provide end-office switching on OTT VoIP calls, as end-office switching is defined under the 2011 FCC rules. *Id.* That is not quite what the D.C. Circuit held though. Instead, the D.C. Circuit held that the FCC had failed to provide "distinctive" criteria for end-office switching in the context of OTT VoIP calls. *AT&T*, 841 F.3d at 1053-56. The *O1* court also found that the plaintiff in that case did not provide "physical delivery" of traffic to a caller's premises, something which the court described as a "fundamental characteristic" of end-office switching. *O1 Communications*, 2017 WL 8294245, at *1. But, again, that is not quite what the D.C. Circuit held. Instead, the D.C. Circuit left open the question whether the Transformation Order "cast off interconnection" (or physical delivery) as being necessary to provide the functional equivalence of end-office switching on OTT VoIP calls. *See AT&T*, 841 F.3d at 1056 ("Even assuming that the Transformation Order cast off interconnection as the remnant of preexisting, technology-specific, TDM-based guidance for

17

determining functional equivalency, that reading would still require the Commission to provide some distinctive functional equivalence criterion in its place.") (citation and quotations omitted).[14]

Ultimately, if resolving whether LECs like defendant provide end-office switching on OTT VoIP calls was as straightforward as the court in *O1* suggests, this Court does not believe the D.C. Circuit would have remanded its proceeding to the FCC. As the D.C. Circuit stated, if the Declaratory Ruling had been an inconsistent or plainly erroneous interpretation of the Transformation Order, the FCC would have been required to go through notice and comment rulemaking to allow end-office switching charges on OTT VoIP calls. *AT&T*, 841 F.3d at 1049. Thus, if the 2011 FCC rules were as plain as plaintiff contends, the D.C. Circuit could have simply thrown out the Declaratory Ruling as having not provided the necessary notice and comment procedures or instructed the FCC to undertake those procedures. The D.C. Circuit did not do that though.

What does this mean in terms of whether the statutory claim is ripe? First, the Court finds that the claim is not fit for judicial resolution. Simply put, the FCC is surely in a better position than this Court to determine what is consistent with its own rules. Although the D.C. Circuit concluded that the FCC did not do an adequate job the first go round, that does not mean that this Court should start cooking in the FCC's kitchen. Of course, this Court *could* go down the road of trying to resolve what it is the FCC meant in 2011. As plaintiff accurately states, there is a *dispute* between the parties in that regard. The Court does not discount that, but, unlike plaintiff's breach of contract

---

[14] Contrary to defendant's argument, though, *O1* is not distinguishable because it found that the provider's tariffs did not permit assessment of OTT VoIP charges. (ECF No. 72 at 13. The *O1* court clearly held that "existing law bars a ruling that the services at issue are end-office access services ...." *O1 Communications*, 2017 WL 8294245, at *1. Only after that finding did the court then consider whether, irrespective of the legal bar, the plaintiff's tariffs permitted charging for end-office switching. *Id*. at *1-2.

18

claim, it's statutory claim is not fit for judicial resolution merely because there is a dispute. Notably, to the extent resolution of the statutory claim does not involve a contingent event, resolving what is consistent with the 2011 FCC rules is uncertain. *See City of Glenpool*, 698 F.3d at 1275. In addition, if the Court were to try to resolve the matter, in doing so, the Court will only have the input of the two parties to this case; the FCC, presumably, will have a much greater number of voices providing input. While the foregoing may sound similar to a primary-jurisdiction-referral analysis, the Court does not believe that weakens the overall point: there is a far better forum for interpreting the FCC's rules than the judicial one. That may not necessarily mean that such interpretation is *un*fit for judicial resolution, but, when considered in light of the uncertain application of the 2011 FCC rules, this Court finds that the statutory claim is not fit enough.

As for hardship, there is certainly a "dilemma" between the parties as to what is allowed under the 2011 FCC rules. *See City of Glenpool*, 698 F.3d at 1275. That being said, it is far from clear how direct and immediate it is. *See id*. In any event, to the extent this factor weighs in favor of ripeness, the Court finds it to be outweighed by the first factor.[15]

Accordingly, the Court finds that plaintiff's statutory claim (Claim Two) is not ripe, and thus, the Court dismisses Claim Two for lack of subject matter jurisdiction.

## C.   Claim Three—Declaratory Judgment

Plaintiff's final claim is for declaratory relief. The claim as pleaded in the Complaint, like the statutory claim, suffers from plaintiff's unfortunate desire to mention the Settlement Agreement

---

[15] This is especially so, here, given that (1) the Court is allowing plaintiff's breach of contract claim to proceed, and (2) even if this Court could allow the statutory claim to proceed past the instant motion to dismiss, it is highly likely that the end result would be the same: i.e., the Court would refer the interpretation of the FCC's rules to the FCC pursuant to the primary jurisdiction doctrine. In other words, this Court would not resolve the matter.

whenever it feels it can.  Arguably, it could be said then that plaintiff seeks declaratory relief with respect to both the alleged breach of contract and the alleged violation of the FCC's rules.  Matters are not helped further by the allegation containing what it is plaintiff wants declared, as plaintiff mentions neither the Settlement Agreement nor any FCC rules or statutory provisions.  Instead, plaintiff wants a declaration that "now that the [D.C. Circuit Order] became final, [defendant] is prohibited from billing [plaintiff] charges for end office access services on [OTT VoIP] calls." (ECF No. 1 at ¶ 91; *see also id*. at ¶ 92(b)).)

In that light, it is far from clear on precisely what basis plaintiff wants the Court to enter such a declaration.  The Court doubts that is by accident.  In any event, it is not this Court's role to make plaintiff's allegations intelligible, at least not when it is represented by counsel.  As a result, for the reasons set forth *supra*, the Court rules as follows with respect to plaintiff's claim for declaratory relief.  To the extent it is premised upon the Settlement Agreement (i.e., a declaration that, pursuant to the Settlement Agreement, defendant is prohibited from billing plaintiff for end-office switching), the claim may proceed.[16]  To the extent it is premised upon alleged violations of the FCC's rules, the claim is dismissed for lack of subject matter jurisdiction as unripe.

As a result, plaintiff's claim for declaratory relief (Claim Three) may proceed in part and is dismissed in part.

---

[16] The Court notes that even the cases to which defendant cites, *Duane Reade* and *Brooklyn Hosp.*, either allowed a claim for declaratory relief to proceed or allowed amendment of the complaint to allege such a claim despite finding breach of contract claims to be unripe.  *Duane Reade*, 261 F. Supp. 2d at 295-296; *Brooklyn Hosp.*, 2004 WL 868208, at *3-4.  Thus, even if the Court had not allowed plaintiff's breach of contract claim to proceed, it would have allowed a claim for declaratory relief to proceed that alleged similar facts and circumstances as the breach of contract claim.  *See Brooklyn Hosp.*, 2004 WL 868208, at *3-4.

## VII.    Going Forward

Because the Court has the opportunity, and because it is important so the parties can be as efficient as possible in presenting any future arguments, the Court makes the following observations.

One.   As the Court mentioned earlier, there are many problems with the Settlement Agreement, particularly a provision concerning billing *after* June 1, 2015.  In further particular, the Court is pointing to Section 1(a)(iv).  The Court does not want to say that, that provision was poorly drafted.  But, if it was not poorly drafted, those who drafted it poorly thought through the consequences of what its words could mean.  The Court's greatest concern is not even with the words the parties have fought over so far.  Ultimately, whichever way the chips fall, the Court believes that the words or phrases "overturned," "becomes final,"[17] and "is no longer subject to further appeal or other judicial review" can be brought to meaning.

The Court's greater concern is with, assuming the conditions precedent contained in Section 1(a)(iv) can be shown to have occurred, what happens after that.  First, with respect to payments made between June 1, 2015 and the date of the Final Appellate Order, the extent of plaintiff's refund depends on whether the Declaratory Ruling was overturned in part or in whole. In light of the end result of the D.C. Circuit Order, going forward, the parties will need to do a good job of setting forth their positions on whether the Declaratory Order was overturned in whole or in part.  Second, and of much greater concern, is what happens next under Section 1(a)(iv).  Assuming that the Declaratory Ruling was only overturned in part, the Settlement Agreement provides that defendant will only need to refund charges "to the extent they should not have been charged in

---

[17] Because the words "becomes final" have preoccupied the parties to a great extent, going forward, the Court expects the parties to address the following: does 47 U.S.C. § 407(j) answer the question whether the D.C. Circuit Order has become final?

21

accordance with the Final Appellate Order."  In similar, but not completely identical language, the

Settlement Agreement further provides that, after the date of the Final Appellate Order,[18] defendant

must bill plaintiff for OTT traffic "in accordance with terms of [the Final Appellate Order]."  The

Court does not believe that it is going out on a limb to say that the "terms" of the Final Appellate

Order or doing things "in accordance" with the Final Appellate Order may not be an easy thing to

decipher.[19]  Thus, the parties should be sure to make their positions, and reasoning for those

positions, abundantly clear going forward.

     Two.  Putting aside everything that has been said herein, there is one matter that the parties

have not addressed at all.  There may be good reason for this, and, if that is the case, the parties can

inform the Court of why the matter is of no concern in this case.  Nonetheless, it is a matter the Court

expects to be addressed in one way or the other.  Specifically, in reviewing the entire record

submitted in this case to date, the Court could not help but notice that it appears the parties

(amazingly) agree on at least one thing: defendant has filed tariffs for the services it provides on OTT

VoIP calls.  (*See* ECF No. 1 at ¶¶ 26, 32, 79, 83; ECF No. 15-1 at ¶ 1(a)(ii); ECF No. 72 at 13.)

Assuming defendant has filed tariffs for the services (including end-office switching and tandem

---

[18] The Court notes that the Settlement Agreement uses the language "becomes final" immediately after "Final Appellate Order."  (*See* ECF No. 15-1 at ¶ 1(a)(iv).)  The "Final Appellate Order" cannot become the "Final Appellate Order" unless it "becomes final."  (*See id.*)  Thus, to say "after such Final Appellate Order becomes final" or "the date on which such Final Appellate Order becomes final" is, at best, excessive.

[19] To be clear, though, that is no reason to wait for the FCC to do whatever it is the FCC may do in the future.  Instead, the problem is purely the result of the parties' drafting of the Settlement Agreement.  To put things simply, the drafting of Section 1(a)(iv) appears to have been designed to cause litigation.  Perhaps plaintiff and defendant like paying their attorneys money, the Settlement Agreement will certainly allow such payments to continue.  Presumably, though, plaintiff and defendant do not like spending their shareholders' capital in that manner.  Nevertheless, the words that the parties drafted and agreed upon are what they will have to live with in this case, however ill-fitted they may be to the "terms" of the D.C. District Order (assuming the D.C. Circuit Order is the "Final Appellate Order).

services) it provides on OTT VoIP calls, the Court is not convinced there is not a large problem for

the survival of the provision of the Settlement Agreement in dispute in this case.[20]

      To set the stage, the Tenth Circuit has stated that: "[t]he filed-rate doctrine, or filed-tariff

doctrine, provides that the rate of the carrier duly filed is the only lawful charge, and deviation from

it is not permitted upon any pretext." *Qwest Corp. v. AT&T Corp.*, 479 F.3d 1206, 1210 (10th Cir.

2007) (quotations and internal quotations omitted). Further, "[t]he doctrine admits of few

exceptions: This rule is undeniably strict and it obviously may work hardship in some cases, but it

embodies the policy which has been adopted by Congress." *Id*. (quotation and internal quotation

omitted). That being said, the name long ago given to the filed-*rate* doctrine does not quite portray

all that it encompasses in terms of the charges that may be lawful as between a LEC like defendant

and an interstate carrier (or "IXC") like plaintiff. That is because, in 2001, the FCC ruled that a

CLEC (like plaintiff) could set rates either through a filed tariff that did not exceed a benchmark rate

set by the FCC, *or*, in order to charge rates higher than the benchmark, a negotiated contract with an

IXC. *AT&T Servs. Inc. v. Great Lakes Comnet, Inc.*, 30 FCC Rcd 2586, 2588-89 (2015).

      With that in mind, the Court now turns to the Settlement Agreement. Therein, as far as the

Court is concerned, with respect to defendant's billing *after* June 1, 2015, the Settlement Agreement

sets rates for switched exchange access services. (*See* ECF No. 15-1 at ¶ 1(a)(ii) (setting the rate for

"switched access traffic")). That being said, the Court will assume for present purposes that the

Settlement Agreement is a negotiated contract between a CLEC and an IXC.[21] In that light, a

---

[20] At the moment, the Court believes the only provision of the Settlement Agreement in dispute is
Section 1(a)(iv).

[21] Of course, the rate for switched access traffic after June 1, 2015 in the Settlement Agreement, at
least initially, was defendant's applicable "tariffed rate." (ECF No. 15-1 at ¶ 1(a)(ii). Whether that makes
the rate in the Settlement Agreement one set by a tariff or by a negotiated contract is open to debate. *See*

problem appears to arise from the Tenth Circuit's decision in *Qwest*.  In *Qwest*, the Tenth Circuit

was asked to answer the following question: "whether, in order to settle a dispute between two

parties, the parties may execute a release of any claims that a party charged a rate in contravention

of the filed-tariff."  *Qwest*, 479 F.3d at 1210.  The Circuit, assuming that there had been a breach of

the tariff, stated that the answer would be a "resounding 'No'" because "[t]he filed-rate doctrine

makes clear that the tariff on file sets the rate that is to be charged    no more, no less, no negotiation

allowed."  *Id*.  The Circuit, though, further explained that the question it had been asked to consider

was, in fact, the wrong question.  *Id*. at 1211.  The right question was: "whether the filed-rate

doctrine precludes the good faith settlement of a dispute regarding a federal tariff's applicability in

the first instance in the absence of a regulatory or judicial ruling directly resolving the issue."  The

Circuit held that the filed-rate doctrine did not preclude such a settlement because the doctrine's

policies of preventing collusion and discrimination were not implicated.  *Id*.

  The question, thus, becomes: whether the rate negotiated in Sections 1(a)(ii) and 1(a)(iv) for

switched access traffic after June 1, 2015, constitutes the settlement "of a dispute regarding a federal

tariff's applicability in the first instance in the absence of a regulatory or judicial ruling directly

resolving the issue."  *See id*.  If it is, then the failure to comply with the terms of Sections 1(a)(ii) and

1(a)(iv) could constitute a breach of the Settlement Agreement, and thus, plaintiff's breach of

contract claim could proceed.  It is not, then it would seem that the rate defendant can charge for

---

*Midcontinent Communications v. MCI Communications Services, Inc.*, 2016 WL 6833944, at \*1-2 (D.S.D. Nov. 18, 2016).  Another large open question is whether the rate set in the Settlement Agreement is a rate "higher than those permitted under the benchmark rule," which appears to be a requirement for parties to enter into a negotiated contract in the first place.  *See Great Lakes*, 300 FCC Rcd at 2589.  Otherwise, parties could negotiate contracts for a rate *below* the benchmark, which would "affect the rate for services once a tariff has been filed," *In the Matter of All Am. Tel. Co.*, 26 FCC Rcd 723, 730 n.47 (2011), as well as create the appearance that the filed-rate doctrine's policies of preventing collusion and discrimination were at threat.

switched access traffic is the "tariff on file" "no more, no less, no negotiation allowed." *See id.* at 1210. Of course, the "tariff on file" is subject to much dispute because, as far as plaintiff is concerned, defendant's tariff does not allow defendant to charge for end-office switching. (*See* ECF No. 1 at ¶ 83.) That, though, would be a *tariff* dispute, and referral of the same to the FCC might be warranted.

The Court will go little further. Going forward, it will be up to the parties to explain the relevance of this matter as well as answer the question in the preceding paragraph. To be clear, the Court does not do the latter herein.

## VIII.  Conclusion

In summary, the Court believes there are clear and present disputes between the parties. There are also issues that the parties have failed to adequately and/or remotely address. Although resolving those issues and disputes may not be straightforward, at least in part, the parties only have themselves to blame for that.

For the reasons discussed herein, the Court ORDERS as follows:

(1)      the R&R (ECF No. 63) is REJECTED;

(2)      defendant's motion to dismiss (ECF No. 14) is DENIED in part and GRANTED in part as follows:

(a)      the motion to dismiss is GRANTED to the extent that Claim Two of the Complaint shall be DISMISSED WITHOUT PREJUDICE;

(b)      the motion to dismiss is DENIED to the extent that Claim One of the Complaint shall proceed;

(c)      the motion to dismiss is DENIED in part and GRANTED in part with respect to Claim Three;

    (3)      plaintiff's motion for leave to file a reply in support of its objections (ECF No. 74) is DENIED;

    (4)      plaintiff's motion for leave to restrict (ECF No. 64) is GRANTED; and

    (5)      defendant's first and second motions for leave to restrict (ECF Nos. 67, 71) are DENIED in part and GRANTED in part as follows:

        (a)      the first and second motions for leave to restrict are DENIED in virtually every respect, except

        (b)      the first and second motions for leave to restrict are GRANTED solely with respect to the words ████ and ████ on, respectively, page 6 and page 4 of the relevant restricted documents.[22]

Defendant shall file revised public versions of the documents at ECF Nos. 67-1 and 71-1 within seven (7) days of entry of this Order so that they comply with the instructions herein. Failure to do so will result in the restriction level on the relevant documents being lifted in full.

The Clerk is instructed to STRIKE plaintiff's motion for leave to file a reply in support of its objections (ECF No. 74).

The Clerk is further instructed to file this Opinion and Order under a level 1 restriction. The parties may have seven (7) days from entry of this Opinion and Order to file any motion(s) for leave to restrict the same, identifying the part(s) of the Opinion and Order they believe warrant restriction under the Local Rules. Assuming the Court agrees with any identified part(s), a public version of

---

[22] Defendant appears to be under the mistaken belief that merely because words come from documents the parties have designated as confidential, they must be restricted. That is not the case. Rather, a party is only entitled to restrict a document if, *inter alia*, disclosure would cause a clearly defined and serious injury. D.C.Colo. L.Civ.R. 7.2(c). In the future, the Court suggests defendant take a leaf from plaintiff's book when attempting to restrict language from the Settlement Agreement or other documents they have designated as confidential. (*See generally* ECF No. 64-1.)

the Opinion and Order will be entered restricting the same. Failure to file a motion for leave to

restrict will result in this Opinion and Order being opened to public view.


**SO ORDERED.**

DATED this 18th day of September, 2018.


BY THE COURT:

_____

RAYMOND P. MOORE
United States District Judge