## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00112-RM-MEH

AT&T CORPORATION,

     Plaintiff,

v.

LEVEL 3 COMMUNICATIONS, LLC,

     Defendant.

---

## ANSWER

---

Defendant Level 3 Communications, LLC ("Level 3"), by and through undersigned counsel, hereby provides its Answer and Affirmative Defenses to the Complaint (ECF No. 1) filed by Plaintiff/Counter-Defendant AT&T Corporation ("AT&T"). Level 3 answers the separately numbered paragraphs of the Complaint as follows, with the text of the paragraph of the Complaint in bold and the answer thereto following:

**1.      In May 2015, during the pendency of an appeal by AT&T to the U.S. Court of Appeals for the District of Columbia Circuit from an order of the Federal Communications Commission ("FCC"), AT&T and Level 3 entered into a Release and Settlement Agreement ("Agreement") that provided for various billings and payments between the parties, depending in part upon the outcome of that appeal. The issue before both the FCC and the Court of Appeals was whether Level 3 and other carriers could charge AT&T the relatively high rates for "local switching" access services (also known as "end office" switching) when routing a certain type of telephone call.**

**ANSWER TO PARAGRAPH 1:**  Level 3 admits that it entered into a Settlement Agreement with AT&T in or around May 2015.  That Settlement Agreement has been submitted to the Court (*see* ECF No. 15-1) and speaks for itself.  To the extent AT&T's characterizations of

the Settlement Agreement are inconsistent with the text of the Agreement, Level 3 denies those characterizations.  Likewise, to the extent AT&T's description of the matters before the FCC and the D.C. Circuit are inconsistent with the pleadings submitted in connection with those cases, which are a matter of public record and also speak for themselves, Level 3 denies those allegations.  To the extent there are any remaining allegations, Level 3 denies them.

**2.     The calls at issue utilize a type of Voice over Internet Protocol ("VoIP") technology, known as over-the-top VoIP calls. There are two types of VoIP calling: (1) "facilities-based" VoIP, when a provider (like a cable company) owns the physical infrastructure connecting directly to subscribers' homes, thereby completing the "last-mile" of the call; and (2) "over-the-top" VoIP, where the provider does not connect directly to the last-mile facilities, and the callers cannot place or receive VoIP calls unless they separately obtain high-speed internet service. In the latter case, the VoIP calls ride "over-the-top" of those separately-provided internet transmission facilities. The issue in front of the FCC and the Court of Appeals was whether carriers routing over-the-top VoIP traffic may lawfully charge the higher end office switching rates typically associated with the connection to last-mile facilities, such as those provided by facilities-based VoIP carriers that actually operate the infrastructure connection between the internet and the callers.**

**ANSWER TO PARAGRAPH 2:**  Level 3 incorporates by reference its description of Voice-over-Internet-Protocol calls in its Counterclaims (ECF No. 38 ¶¶ 10–12).  To the extent AT&T's allegations regarding VoIP calling is consistent with Level 3's description, Level 3 admits them; to the extent AT&T's allegations differ from Level 3's, Level 3 denies them.   To the extent AT&T's description of the matters before the FCC and the D.C. Circuit are inconsistent with the pleadings submitted in connection with those cases, which are a matter of public record and speak for themselves, Level 3 denies those allegations.  To the extent there are any remaining allegations, Level 3 denies them.

**3.     Level 3 had prevailed on this issue at the FCC, and in November 2016, AT&T prevailed on this issue in the D.C. Circuit. Although Level 3 has complied in part with the Agreement, it has breached other provisions of that Agreement. Most notably, once AT&T prevailed on the appeal and the appeal process completed—a condition that was met as of May, 2017—the Agreement required Level 3 to pay AT&T a refund of Level**

3's charges on the over-the-top VoIP calls that Level 3 billed during the appeal process. **Level 3, however, has not provided the refund, and has breached this part of the Agreement.**

**ANSWER TO PARAGRAPH 3:** To the extent AT&T's description of the matters before the FCC and the D.C. Circuit are inconsistent with the pleadings and orders submitted in those cases, which are a matter of public record and speak for themselves, Level 3 denies those allegations. Level 3 admits that it has complied with its obligations under the Settlement Agreement and denies that it has breached the Agreement in whole or in part. Level 3 specifically denies that any condition for Level 3 to pay AT&T a refund on over-the-top VoIP calls in whole or in part has been met, and further denies that the D.C. Circuit order remanding the action before it to the FCC fulfilled any condition for such refunds. To the extent there are any remaining allegations, Level 3 denies them.

**4.** **Pursuant to the Agreement, Level 3 agreed that its over-the-top VoIP calls had "been approximately 65% of overall billing for end office switching." Under the D.C. Circuit decision, there is no longer any authority allowing Level 3 to charge the higher end office switching rates for those over-the-top VoIP calls. Shortly after the D.C. Circuit denied Level 3's petition for rehearing, Level 3 gave AT&T a "heads up" that the percentage of its OTT VoIP calls sent to or from AT&T mysteriously dropped to less than 20 percent. Level 3 has purported to substantiate this drop, but the analyses that it has provided to AT&T are facially defective by, for example, including wireless calls where it is conceded that no local switching access charges are ever due. And Level 3 has refused to provide AT&T with the records that would allow AT&T to determine whether the "historic" rate, as of May 2015, dropped by nearly two-thirds after the decision of the Court of Appeals.**

**ANSWER TO PARAGRAPH 4:** The Settlement Agreement has been submitted to the Court (*see* ECF No. 15-1) and speaks for itself. To the extent AT&T's characterizations of the Settlement Agreement are inconsistent with the text of the Agreement, Level 3 denies those characterizations. Level 3 denies that there is no authority allowing Level 3 to charge end-office switching charges for over-the-top VoIP calls; such charges are permitted by, *inter alia*, FCC

rules and Level 3's duly filed tariff.  Level 3 admits that the percentage of over-the-top VoIP

calls it routes is substantially less than the 65% alleged by AT&T.  Level 3 further denies that it

has refused to provide AT&T with evidence substantiating the actual percentage of over-the-top

VoIP calls on its network.  To the extent there are any remaining allegations, Level 3 denies

them.

**5.      The Agreement also requires that, after the D.C. Circuit's decision becomes final, the billing by Level 3 and payment by AT&T on over-the-top VoIP calls will comply with the appellate decision. Level 3 continues to bill AT&T improperly, using higher rates, in breach of the Agreement and in violation of federal law. As set forth herein, AT&T is entitled to damages and declaratory relief.**

**ANSWER TO PARAGRAPH 5:**  The Settlement Agreement has been submitted to the

Court (*see* ECF No. 15-1) and speaks for itself.  To the extent AT&T's characterizations of the

Settlement Agreement are inconsistent with the text of the Agreement, Level 3 denies those

characterizations.  Level 3 denies that the D.C. Circuit order satisfies any condition for refunding

switched access charges on OTT-VoIP calls, whether in whole or in part and denies that the

order sets forth any conditions regarding billing for OTT-VoIP calls with which the parties may

comply.  Level 3 denies that its billings to AT&T are improper.  Level 3 denies that its billings

breach the Settlement Agreement or violate federal law.  Level 3 denies that AT&T is entitled to

either damages or declaratory relief.  To the extent there are any remaining allegations, Level 3

denies them.

**6.      Plaintiff AT&T Corp. is a corporation organized and existing under the laws of the State of New York. Its principal place of business is located at One AT&T Way, Bedminster, New Jersey 07921.**

**ANSWER TO PARAGRAPH 6:**  Level 3 admits the allegations of paragraph 6.

**7.      Defendant Level 3 is a Delaware limited liability company, with its principal place of business at 1025 Eldorado Blvd., Broomfield, Colorado, 80021. Upon information**

**and belief, its sole member is Level 3 Financing, Inc., a Delaware corporation whose principal place of business is 1025 Eldorado Blvd., Broomfield, Colorado, 80021. Upon information and belief, Level 3 Financing, Inc. is wholly owned by Level 3 Communications, Inc. As of November 1, 2017, Level 3 Communications, Inc. became an indirect wholly owned subsidiary of CenturyLink, Inc.**

**ANSWER TO PARAGRAPH 7:**  Level 3 states that Level 3 Financing, Inc. is wholly owned by Level 3 Parent, LLC, an indirect wholly owned subsidiary of CenturyLink, Inc.  Level 3 otherwise admits the allegations of paragraph 7.

**8.     Level 3 is a provider of regulated telecommunications services known as switched access services. Level 3 provides those services via filed tariffs and negotiated contracts, including a contract with AT&T.**

**ANSWER TO PARAGRAPH 8:**  Level 3 admits that it provides switched access services pursuant to the terms of its duly filed tariffs, including to AT&T.  Level 3 denies that its contracts with AT&T govern the provision of tariffed services.  To the extent there are any remaining allegations, Level 3 denies them.

**9.     This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 because the matter is between citizens of different states, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.**

**ANSWER TO PARAGRAPH 9:**  Level 3 admits the allegations of paragraph 9.

**10.    This Court also has original jurisdiction over this civil action pursuant to 47 U.S.C. § 207, because Defendant Level 3 is a common carrier engaged in the provision of common carrier services, and has violated the Communications Act, as alleged herein.**

**ANSWER TO PARAGRAPH 10:**  in light of the Court's dismissal of AT&T's claims rising under the Communications Act, Level 3 denies that Section 207 confers subject matter jurisdiction upon the Court as to any remaining claims.  Level 3 further denies that it has violated the Communications Act.  To the extent there are any remaining allegations, Level 3 denies them.

**11.** **Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because defendant Level 3 resides in this district, and a substantial part of the events or omissions giving rise to the claim occurred in this district.**

**ANSWER TO PARAGRAPH 11:** Level 3 admits that venue is proper in this district.

**12.** **Access Services. AT&T is, among other things, a provider of long distance telephone services. A long distance carrier traditionally did not operate local facilities, including local switches and "last-mile" transmission facilities, to connect its long distance network directly to callers. In the past, and where long distance carriers lack such local facilities today, they therefore purchase a type of local service—known as "access service"—from local exchange carriers. Local exchange carriers traditionally operate local switches and/or last-mile transmission facilities, and sell access services that can allow long distance carriers both to originate and to complete (also known as "terminate") customer's long distance calls.**

**ANSWER TO PARAGRAPH 12:** Level 3 admits that AT&T is, among other things, a provider of long-distance telephone services, though it is also a local exchange carrier ("LEC") which operates local facilities. Level 3 admits that, under the FCC's switched access regime, long-distance carriers (also known as "interexchange carriers," or "IXCs") may transmit calls between LECs, which originate the calls from or terminate the calls to end users within their exchanges. Level 3 further admits that IXCs may purchase switched access service from a LEC in order to hand off/receive the call to/from the LEC. To the extent there are any remaining allegations, Level 3 denies them.

**13.** **Local exchange carriers are often divided into two categories: "incumbent" local exchange carriers, which existed for years and at one time had monopolies over local telephone services (such as CenturyLink), and "competitive" local exchange carriers, which are (relatively) recent entrants to local telephone markets. Level 3 is a competitive local exchange carrier.**

**ANSWER TO PARAGRAPH 13:** Level 3 admits that LECs can be either incumbent LECs ("ILECs") or competitive LECs ("CLECs"), and that it is a CLEC. To the extent there are any remaining allegations, Level 3 denies them.

14.     The rates and terms for access services are regulated by the FCC, and can be set forth in tariffs or can be negotiated in express contracts between local exchange carriers and long distance carriers.

ANSWER TO PARAGRAPH 14:  As this paragraph merely describes the switched access regime as regulated by the FCC, it sets forth legal contentions only and alleges no facts requiring admission or denial.  To the extent this paragraph contains any allegations of fact requiring a response or incorrect descriptions of the FCC's regulatory regime, Level 3 denies them.

15.     The billed rates for access services are often divided into certain "rate elements." These rate elements include switching and transport functions, among others. Local switching, the rate element at issue here, occurs when a local carrier uses complex computer equipment known as a local switch to place and then carry a call over last-mile transmission facilities (known as "loops") to or from the caller. Traditionally, local switching has been the most expensive component of switched access services.

ANSWER TO PARAGRAPH 15:  As this paragraph merely describes the switched access regime as regulated by the FCC, it sets forth legal contentions only and alleges no facts requiring admission or denial.  Level 3 denies that local switching only applies when a LEC uses its local switch to place and then carry a call over its own last-mile transmission facilities (known as "loops") to or from the caller.  To the extent this paragraph contains any allegations of fact requiring a response or incorrect descriptions of the FCC's regulatory regime, Level 3 denies them.

16.     Other rate elements for switched access service include "tandem" services, which are intermediate services used to route calls between switches or other telephone facilities. Tandem services are not used to connect directly to calling or called parties, and charges for tandem switching services are traditionally much lower than those for local switching.

ANSWER TO PARAGRAPH 16:  As this paragraph merely describes the switched access regime as regulated by the FCC, it sets forth legal contentions only and alleges no facts

requiring admission or denial.  Tandem services can differ by carrier and are usually defined in each telecommunications carrier's access tariffs.   To the extent this paragraph contains any allegations of fact requiring a response or incorrect descriptions of the FCC's regulatory regime, Level 3 denies them.

17.    **VoIP Services. Increasingly, consumers are placing or receiving telephone calls, including long distance calls, using VoIP technology. Such VoIP calling services are offered using several variations. In "facilities-based" VoIP services, the VoIP service provider or its partner provides the local switch functionality and the local loop, which is the last mile physical transmission path, connecting the customer to the Internet.**

**ANSWER TO PARAGRAPH 17:**  As this paragraph merely describes the switched access regime as regulated by the FCC, it sets forth legal contentions only and alleges no facts requiring admission or denial.  Level 3 admits that consumers are increasingly placing and receiving telephone calls using VoIP technology, and that such calls can include "facilities-based" VoIP calls.  To the extent this paragraph contains any other allegations of fact requiring a response or incorrect descriptions of the FCC's regulatory regime, Level 3 denies them.

18.    **This case, however, involves a type of VoIP service known as over-the-top VoIP. An over-the-top VoIP provider does not provide physical transmission facilities to callers. To use the VoIP services of an over-the-top VoIP provider (such as Vonage), the customer must separately obtain a high-speed internet connection from a third party, such as its local cable company. Thus, the over-the-top VoIP calls ride "over-the-top" of this separate internet connection.**

**ANSWER TO PARAGRAPH 18:**  As this paragraph merely describes the switched access regime as regulated by the FCC, it sets forth legal contentions only and alleges no facts requiring admission or denial.  Level 3 admits that consumers are increasingly placing and receiving telephone calls using VoIP technology, and that such calls can include "over-the-top" VoIP calls.  To the extent this paragraph contains any other allegations of fact requiring a response or incorrect descriptions of the FCC's regulatory regime, Level 3 denies them.

19.     Until recently, VoIP providers were not able directly to obtain traditional, ten-digit telephone numbers that could be used by their customers. VoIP providers also often cannot directly connect to the public switched telephone network ("PSTN"), which is used to complete traditional telephone calls. Consequently, VoIP providers have often partnered with local exchange carriers (such as Level 3), which obtain and provide telephone numbers, and which are connected to the PSTN.

**ANSWER TO PARAGRAPH 19:**  Level 3 admits that it partners with third parties to transmit over-the-top VoIP calls to and from end users.  To the extent this paragraph generally describes the activities of "VoIP providers," with whom Level 3 may or may not have had any interaction, Level 3 lacks knowledge and information sufficient to form a belief as to the allegations of this paragraph and therefore denies them.   To the extent there are any remaining allegations, Level 3 denies them.

20.     Level 3, for example, is a local exchange carrier, and it has been assigned various telephone numbers. The telephone numbers associated with Level 3 (and other providers) are listed in a database known as the Number Portability Administration Center ("NPAC") database.

**ANSWER TO PARAGRAPH 20:**  Level 3 admits the allegations of paragraph 20.

21.     FCC Rules on VoIP. In 2011, the FCC issued rules that governed the access services that local exchange carriers may lawfully bill on VoIP traffic when they partner with a VoIP provider. Prior to that time, it had been uncertain whether any charges could be billed when local exchange carriers completed (or originated) VoIP long distance calls.

**ANSWER TO PARAGRAPH 21:**  The FCC's 2011 rules are a matter of public record and speak for themselves.  To the extent AT&T inaccurately describes those rules or the state of the law prior to or following their enactment, Level 3 denies the allegations of this paragraph. Level 3 specifically denies that the 2011 rules prohibit the assessment of end-office switching charges on OTT-VoIP calls.

22.     As a general matter, under the FCC's 2011 rules, on VoIP calls, the charges that could be billed are equal to the access charges that are billed on ordinary, non-VoIP calls by incumbent local exchange carriers, so long as the local exchange carrier or its VoIP

provider partner were providing the "functional equivalent" of the incumbent's access services. If the local exchange carrier or VoIP partner provides the functional equivalent of end office access services, then the local carrier could bill a rate equal to the end office access services billed on traditional, non-VoIP telephone calls by incumbent carriers. When the local carrier or VoIP partner provided the functional equivalent of tandem switching access services, then the local carrier could bill a rate equal to the tandem switching access services billed on traditional, non-VoIP telephone calls by incumbent carriers.

**ANSWER TO PARAGRAPH 22:** The FCC's 2011 rules are a matter of public record and speak for themselves. To the extent AT&T inaccurately describes those rules or the state of the law prior to or following their enactment, Level 3 denies the allegations of this paragraph. Level 3 specifically denies that the 2011 rules prohibit the assessment of end-office switching charges on OTT-VoIP calls or in any way suggest that LECs do not provide the functional equivalent of end-office switching when connecting OTT-VoIP calls.

23.     A dispute arose among long distance and local carriers, including AT&T and Level 3, respectively, as to how the FCC rules should be applied to over-the-top VoIP services. AT&T's position is that, on over-the-top VoIP calls, the local carrier's access charges should not include any local switching (or end office) charges—the traditionally higher priced service. Rather, the maximum charge on an over-the-top VoIP call would be equal to a charge for tandem switching. Other carriers, including Level 3, took the position that end office charges (as well as tandem charges) could be properly billed on any VoIP calls, including over-the-top VoIP calls.

**ANSWER TO PARAGRAPH 23:** Level 3 admits that a dispute arose between the parties regarding billing for OTT-VoIP calls. The position taken in litigation by the respective parties is a matter of public record and the pleadings in connection with this litigation speak for themselves. To the extent AT&T's description thereof is inaccurate, Level 3 denies the allegations. To the extent there are any remaining allegations, Level 3 denies them.

24.     In 2015, the FCC—by a vote of 3 to 2—issued a Declaratory Ruling that authorized the billing of end office access services on over-the-top VoIP calls. *See* Declaratory Ruling, 30 FCC Rcd. 1587 (2015). AT&T timely filed a petition for review of the Declaratory Ruling in the D.C. Circuit, which, as described below, ultimately was granted.

**ANSWER TO PARAGRAPH 24:**  The Declaratory Ruling and petition for review are matters of public record and speak for themselves.  To the extent AT&T's description thereof is inaccurate, Level 3 denies the allegations.  To the extent there are any remaining allegations, Level 3 denies them.

**25.     The AT&T-Level 3 Agreement. In late May, 2015, after the FCC issued the Declaratory Ruling, but while the AT&T petition for review was pending, AT&T and Level 3 entered into the Agreement, which addressed the parties' dispute for Level 3's charges on over-the-top VoIP calling.**

**ANSWER TO PARAGRAPH 25:**  Level 3 admits that it entered into a Settlement Agreement with AT&T in or around May 2015.  That Settlement Agreement has been submitted to the Court (*see* ECF No. 15-1) and speaks for itself.  To the extent AT&T's characterizations of the Settlement Agreement are inconsistent with the text of the Agreement, Level 3 denies those characterizations.  To the extent there are any remaining allegations, Level 3 denies them.

**26.     Since at least 2011, AT&T had disputed Level 3's access charges on over-the-top VoIP calls, and, pursuant to the terms of Level 3's tariffs, had withheld certain charges billed by Level 3.**

**ANSWER TO PARAGRAPH 26:**  Level 3 admits that, since 2011, AT&T had disputed Level 3's access charges on OTT-VoIP calls and that it has withheld charges assessed by Level 3.  Level 3 denies that the challenged charges were not expressly permitted under Level 3's tariff, and further denies that AT&T was entitled to withhold these charges under the terms of Level 3's tariff.  To the extent there are any remaining allegations, Level 3 denies them.

**27.     The Agreement provided for various payments and/or billings for three separate timeframes: (1) the period through March 31, 2015; (2) the months of April and May 2015; and (3) from June 1, 2015 forward.**

**ANSWER TO PARAGRAPH 27:**  The Settlement Agreement has been submitted to the Court (see ECF No. 15-1) and speaks for itself.  To the extent AT&T's characterizations of the

11

Settlement Agreement are inconsistent with the text of the Agreement, Level 3 denies those characterizations.  To the extent there are any remaining allegations, Level 3 denies them.

**28.    Pursuant to the Agreement, AT&T made a settlement payment of in excess of $15 million to Level 3 for the disputed access charges on over-the-top calling, through March, 2015.**

**ANSWER TO PARAGRAPH 28:**  Level 3 admits the allegations of paragraph 28.

**29.    A further settlement payment was made by AT&T for charges in April and May of 2015.**

**ANSWER TO PARAGRAPH 29:**  Level 3 admits the allegations of paragraph 29.

**30.    These settlement payments were based on the parties' agreement that "approximately sixty-five percent 65%" of Level 3's billing for end office access services to AT&T was "historically" provided in connection with over-the-top VoIP calls.**

**ANSWER TO PARAGRAPH 30:**  The Settlement Agreement has been submitted to the Court (see ECF No. 15-1) and speaks for itself.  To the extent AT&T's characterizations of the Settlement Agreement are inconsistent with the text of the Agreement, Level 3 denies those characterizations.  Level 3 incorporates its answer to paragraphs 28 and 29 by reference. To the extent there are any remaining allegations, Level 3 denies them.

**31.    The Agreement also addresses, in several respects, the billing and payment of access charges between AT&T and Level 3 beginning on and after June 1, 2015.**

**ANSWER TO PARAGRAPH 31:**  The Settlement Agreement has been submitted to the Court (see ECF No. 15-1) and speaks for itself.  To the extent AT&T's characterizations of the Settlement Agreement are inconsistent with the text of the Agreement, Level 3 denies those characterizations.  To the extent there are any remaining allegations, Level 3 denies them.

**32. The Agreement provides that, as to over-the-top VoIP traffic exchanged beginning June 1, 2015, AT&T would pay Level 3 its tariffed rate, which would include the end office access charges, as well as tandem charges when Level 3 provides such tandem service. AT&T was specifically allowed to continue to dispute such payments.**

**ANSWER TO PARAGRAPH 32:**  The Settlement Agreement has been submitted to the Court (see ECF No. 15-1) and speaks for itself.  To the extent AT&T's characterizations of the Settlement Agreement are inconsistent with the text of the Agreement, Level 3 denies those characterizations.  Level 3 admits that AT&T agreed to pay switched access charges, including end-office switching charges, at the rates provided in Level 3's tariff, and that Level 3's tariff specifically and expressly allows for these charges to be assessed.  To the extent there are any remaining allegations, Level 3 denies them.

**33.     The Agreement further provides that, beginning on June 1, 2015, Level 3 should not bill AT&T any end office access charges on domestic over-the-top VoIP traffic that were sent or received from telephone numbers not assigned to Level 3 in the NPAC database.**

**ANSWER TO PARAGRAPH 33:**  The Settlement Agreement has been submitted to the Court (see ECF No. 15-1) and speaks for itself.  To the extent AT&T's characterizations of the Settlement Agreement are inconsistent with the text of the Agreement, Level 3 denies those characterizations.  To the extent there are any remaining allegations, Level 3 denies them.

**34.     The Agreement also provides that, if the FCC's Declaratory Ruling were overturned, in whole or in part, and the applicable order on appeal were to become final and no longer subject to further appeal or judicial review, Level 3 will refund, within 30 days, fifty percent of the disputed over-the-top VoIP charges, beginning with the June 2015 traffic through the date on which the appellate order becomes final.**

**ANSWER TO PARAGRAPH 34:**  The Settlement Agreement has been submitted to the Court (see ECF No. 15-1) and speaks for itself.  To the extent AT&T's characterizations of the Settlement Agreement are inconsistent with the text of the Agreement, Level 3 denies those characterizations.  To the extent there are any remaining allegations, Level 3 denies them.

**35.     The Agreement also provides that any billing and payments for over-the-top VoIP traffic exchanged after any final appellate order shall be in compliance with the terms of that order.**

**ANSWER TO PARAGRAPH 35:**  The Settlement Agreement has been submitted to the Court (see ECF No. 15-1) and speaks for itself.  To the extent AT&T's characterizations of the Settlement Agreement are inconsistent with the text of the Agreement, Level 3 denies those characterizations.  To the extent there are any remaining allegations, Level 3 denies them.

**36.     The Vacatur of the Declaratory Ruling. In November, 2016, the D.C. Circuit granted AT&T's petition, and vacated and remanded the Declaratory Ruling. *See AT&T Corp. v. FCC*, 841 F.3d 1047, 1056 (D.C. Cir. 2016) ("AT&T"), vacating Declaratory Ruling, 30 FCC Rcd. 1587 (2015). The D.C. Circuit held that, in the Declaratory Ruling, the FCC had not properly explained why the local carrier and its VoIP partner were performing the functional equivalent of end office switching on over-the-top VoIP calls. Because over-the-top VoIP providers do not connect directly to the last-mile transmission facility, and can complete calls only if their customers separately obtain high-speed internet facilities from a third party, the FCC had not justified its conclusion that the local carriers or the over-the-top VoIP providers provided the functional equivalent of local switching. The FCC had previously identified local switching as requiring actual or physical interconnection.**

**ANSWER TO PARAGRAPH 36:**  The D.C. Circuit's order is a matter of public record and speaks for itself.  To the extent AT&T's characterizations of the order are inconsistent with the text of the order, Level 3 denies those characterizations.  Level 3 further denies that the FCC previously identified local switching as requiring actual or physical connection, that the service Level 3 provides in connecting OTT-VoIP calls is not the functional equivalent of end-office switching, or that its rules do not allow for assessment of end-office switching charges on OTT-VoIP calls.  To the extent there are any remaining allegations, Level 3 denies them.

**37.     Level 3, which had intervened in support of the Declaratory Ruling, petitioned for rehearing of the D.C. Circuit's decision, but that petition was denied. *See* Orders (Per Curiam), *AT&T Corp. v. FCC*, No. 15-1059 (D.C. Cir. Feb. 6, 2017) (denying petitions for rehearing and rehearing en banc). The D.C. Circuit issued its mandate to the FCC on February 15, 2017. Neither Level 3, the FCC, nor any other entity sought Supreme Court review of the D.C. Circuit's decision. As such, the D.C. Circuit decision in AT&T became final as of May, 2017.**

**ANSWER TO PARAGRAPH 37:**  Level 3's petition for rehearing, the order on Level 3's petition, and the D.C. Circuit's mandate are matters of public record and speak for themselves.  To the extent AT&T's characterizations of those documents are inconsistent therewith, Level 3 denies those characterizations.  Level 3 admits that no party sought Supreme Court review of the D.C. Circuit order.  Level 3 denies that the D.C. Circuit order became "final" or constituted a "final" order as contemplated in the Settlement Agreement, whether in May 2017 or since.  To the extent there are any remaining allegations, Level 3 denies them.

**38.     Indeed, this Court recently has explained that, in the wake of the court of appeals ruling and the vacatur of the FCC Declaratory Ruling, "there is no longer any authority to suggest that, as a matter of law, the services [that a local exchange carrier] provided constituted the 'functional equivalent' of end-office switching" on over-the-top VoIP calls. *Teliax, Inc. v. AT&T Corp.*, No. 15-cv-1472, 2017 WL 3839459, \*2 n.1 (D. Colo. Sept. 1, 2017). The FCC has not yet taken action in response to the remand.**

**ANSWER TO PARAGRAPH 38:**  This Court's decision in the above-referenced action is a matter of public record and speaks for itself.  To the extent AT&T's description of that decision is inconsistent therewith, Level 3 denies that description.  Level 3 further denies that there is no authority for assessing end-office switching charges on OTT-VoIP calls.  Level 3 denies that the FCC has taken no action whatsoever in response to the remand, as a declaratory action regarding the remand is currently pending before it.  Level 3 admits that the FCC has not yet entered an order in that declaratory action.  To the extent there are any remaining allegations, Level 3 denies them.

**39.     Level 3's Unsupported and Contradictory Assertions Regarding Declines in over-the-top VoIP Traffic. By email dated March 9, 2017, a month after the D.C. Circuit denied Level 3's petition for rehearing, Level 3 wrote to AT&T to give it a "heads up" that it had been "working on some of the over-the-top data since the 2015 settlement [Agreement]" and that the percentage of over-the-top VoIP traffic purportedly was no longer at the 65% level, but was now less than 20%.**

**ANSWER TO PARAGRAPH 39:**  Level 3 denies that its assertions regarding over-the-top VoIP traffic are either unsupported or contradictory.  Level 3 admits sending an email to AT&T in March 2017 to inform it that the percentage of over-the-top VoIP traffic was nowhere close to the 67% alleged by AT&T.  To the extent there are any remaining allegations, Level 3 denies them.

**40.    Notwithstanding its agreement that approximately 65 percent of its charges to AT&T related to over-the-top VoIP calls and the fact that the parties relied on that figure to establish the settlement payments AT&T made to Level 3, Level 3 now asserts that its percentage of over-the-top VoIP calls is a mere fraction of the historic, pre-Agreement level of approximately 26 percent.**

**ANSWER TO PARAGRAPH 40:**  The Settlement Agreement has been submitted to the Court (see ECF No. 15-1) and speaks for itself.  To the extent AT&T's characterizations of the Settlement Agreement are inconsistent with the text of the Agreement, Level 3 denies those characterizations.  Level 3 denies having previously agreed that approximately 65 percent of its charges to AT&T related to over-the-top VoIP calls or relying on that figure to establish payments AT&T was to make to Level 3.  Level 3 states that all of these assertions are based on communications with AT&T that were the subject of settlement discussions and therefore are inadmissible pursuant to Fed. R. Evid. 408.  To the extent there are any remaining allegations, Level 3 denies them.

**41.    AT&T has asked Level 3 for various documentation, including regularly-maintained industry data known as call detail records, in an attempt to verify Level 3's assertions that its percentage of over-the-top VoIP traffic has dropped precipitously. Level 3 has refused to provide all of the necessary information requested by AT&T, and AT&T has no way of independently verifying Level 3's claims.**

**ANSWER TO PARAGRAPH 41:**  Level 3 admits that it is difficult if not impossible to distinguish over-the-top VoIP traffic from other kinds of traffic from documentation kept in the

ordinary course of business by a LEC. Level 3 does not have information sufficient to form a belief as to AT&T's abilities to distinguish over-the-top VoIP traffic from other kinds of traffic and on that basis denies the allegations that AT&T has no way of independently verifying Level 3's claims. Level 3 denies that it has refused to provide available information to AT&T. To the extent there are any remaining allegations, Level 3 denies them.

**42.    Further, the limited data that Level 3 has provided to AT&T has been flawed. For example, earlier this year, Level 3 provided charts that purported to show that only 13 percent of its total billed minutes of end office access services was related to over-the-top VoIP calls. However, AT&T pointed out that Level 3 had improperly included, within its total billed minutes of end office access services, large volumes of calls where Level 3 could not have properly billed any end office access services.**

**ANSWER TO PARAGRAPH 42:** Level 3 denies that the information it has provided to AT&T is either limited or flawed. Level 3 admits that only a fraction of its billed minutes of end-office access service was related to over-the-top VoIP calls, and admits to providing AT&T documentation demonstrating as much. Level 3 states that all of these assertions are based on communications with AT&T that were the subject of settlement discussions and therefore are inadmissible pursuant to Fed. R. Evid. 408. To the extent there are any remaining allegations, Level 3 denies them.

**43.    Calls that are originated by customers of wireless companies, and then handed off to Level 3, do not result in end office access charges that Level 3 can bill. Yet, in its purported study, a wireless company comprised nearly 60 percent of the total Level 3 originating end office access charges that were included in Level 3's study. Level 3 purported to fix this mistake, and adjusted its claimed over-the-top percentage from 13 percent to 26 percent. However, Level 3 refused to provide its calculations or the data underlying them, citing "proprietary reasons."**

**ANSWER TO PARAGRAPH 43:** AT&T's assertions regarding the charges Level 3 may or may not assess on a given type of call are legal arguments which do not require an answer; to the extent they constitute allegations of fact, Level 3 denies them. Level 3 admits that

it has adjusted its internal calculations of what percentage of calls are OTT-VoIP based on feedback provided by AT&T and others, including regarding wireless calling.  Level 3 further admits that the percentage of OTT-VoIP calls it originates or terminates is only a fraction of its total traffic load.  Level 3 states that all of these assertions are based on communications with AT&T that were the subject of settlement discussions and therefore are inadmissible pursuant to Fed. R. Evid. 408.  To the extent there are any remaining allegations, Level 3 denies them.

**44.    Notably, even though Level 3 has told AT&T for purposes of this dispute that its percentage of over-the-top VoIP traffic has dropped substantially, Level 3 has represented in FCC proceedings that the total number of subscribers to VoIP calling services has grown significantly.**

**ANSWER TO PARAGRAPH 44:**  Level 3 states that all of these assertions are based on communications with AT&T that were the subject of settlement discussions and therefore are inadmissible pursuant to Fed. R. Evid. 408.  Level 3 states that AT&T's allegation conflates calling originated and/or terminated via over-the-top VoIP with calling transmitted via VoIP in general (which includes much more than over-the-top VoIP), and therefore denies the allegations of paragraph 44.  Level 3 denies that it has made any false or misleading statements either to AT&T or to the FCC on the subject of VoIP traffic or OTT-VoIP calls.  To the extent there are any remaining allegations, Level 3 denies them.

**45.    Upon information and belief, the percentage of Level 3's traffic and charges to AT&T that are associated with over-the-top VoIP calls is close to, or possibly exceeds, the historic 65 percent figure used by the parties.**

**ANSWER TO PARAGRAPH 45:**  Level 3 denies the allegations in paragraph 45.

**46.    Because the percentage of over-the-top VoIP traffic on Level 3 charges to AT&T remains high, the refund that Level 3 owes to AT&T is significant. AT&T estimates that, in the relevant period, it has paid Level 3 several million in access charges.**

**ANSWER TO PARAGRAPH 46:**  Level 3 denies that it owes AT&T any refund, "significant" or otherwise.  Level 3 admits that AT&T has paid Level 3 end-office switching charges on some OTT-VoIP calls since May 2015 but denies that AT&T has paid those charges in full, as AT&T has withheld millions of dollars in lawful end-office switching charges on both OTT-VoIP calls and other types of traffic.  To the extent there are any remaining allegations, Level 3 denies them.

47.     **Level 3's Breaches of the Agreement And Improper Billing. After the execution of the Agreement, AT&T performed its duties under the Agreement. Among other things, AT&T made the settlement payments, and it made monthly payments to Level 3 when billed in accordance with the Agreement.**

**ANSWER TO PARAGRAPH 47:**  Level 3 denies that it has breached its Agreement with AT&T or improperly billed AT&T.  Level 3 denies that AT&T has performed its duties under the Agreement.  Level 3 admits that AT&T has made some of the payments required under the Agreement but denies that it has made all payments required under the Agreement, including but not limited to end-office switching charges assessed since the entry of the D.C. Circuit order. To the extent there are any remaining allegations, Level 3 denies them.

48.     **Although Level 3 has abided by certain parts of the Agreement (and made payments to refund some charges that Level 3 improperly billed under the Agreement), it has failed to perform certain of its duties under the Agreement and has breached its obligations under the Agreement.**

**ANSWER TO PARAGRAPH 48:**  Level 3 admits that it has abided by the Agreement and denies that it has failed to perform any duty or breached any obligation under the Agreement.  To the extent there are any remaining allegations, Level 3 denies them.

49.     **First, pursuant to the Agreement, within 30 days of the D.C. Circuit decision in AT&T becoming final and no longer subject to appellate review, Level 3 was required to issue AT&T a partial refund of access charges that AT&T had paid Level 3 on over-the-top VoIP traffic.**

**ANSWER TO PARAGRAPH 49:**  The Settlement Agreement has been submitted to the Court (see ECF No. 15-1) and speaks for itself.  To the extent AT&T's characterizations of the Settlement Agreement are inconsistent with the text of the Agreement, Level 3 denies those characterizations.  Level 3 specifically denies that the D.C. Circuit decision became "final and no longer subject to appellate review" as contemplated in the Settlement Agreement.  Level 3 further denies that the conditions precedent to issuing a refund to AT&T of access charges paid on over-the-top VoIP traffic have been met, and Level 3 therefore denies that it was required to issue any such refund.  To the extent there are any remaining allegations, Level 3 denies them.

**50.     Under the Agreement, Level 3 is required to refund a 50 percent [sic] of the disputed charges on over-the-top VoIP calls, beginning with June, 2015 traffic through the date on which the decision in AT&T became final as no longer subject to judicial review.**

**ANSWER TO PARAGRAPH 50:**  The Settlement Agreement has been submitted to the Court (see ECF No. 15-1) and speaks for itself.  To the extent AT&T's characterizations of the Settlement Agreement are inconsistent with the text of the Agreement, Level 3 denies those characterizations.  Level 3 specifically denies that the D.C. Circuit decision became "final and no longer subject to appellate review" as contemplated in the Settlement Agreement.  Level 3 further denies that the conditions precedent to issuing a refund to AT&T of access charges paid on over-the-top VoIP traffic under the Agreement have been met, and Level 3 therefore denies that it was required to issue any such refund.  To the extent there are any remaining allegations, Level 3 denies them.

**51.     In order to determine the amount of the refund, it is necessary to determine the percentage of Level 3's access charges to AT&T that relate to over-the-top VoIP calls. Such information is not publicly available, however; and AT&T cannot determine the appropriate percentage from AT&T's records alone.**

**ANSWER TO PARAGRAPH 51:**  Level 3 denies that AT&T is entitled to any refund, as the conditions precedent to issuing such a refund have not been met.  Level 3 therefore denies that it is necessary to determine the percentage of Level 3's access charges to AT&T that relate to over-the-top VoIP calls.  Level 3 admits that it may be difficult if not impossible to distinguish OTT-VoIP traffic from other forms of traffic, whether using public or private information.  Level 3 lacks information sufficient to form a belief as to AT&T's abilities to determine an "appropriate" percentage or the level of detail available in its records and on that basis denies its allegation that AT&T is unable to determine this percentage.  To the extent there are any remaining allegations, Level 3 denies them.

**52.     In violation of the Agreement, Level 3 has not issued AT&T the appropriate refund. Further, Level 3 has improperly and unlawfully denied AT&T information necessary to determine the amount of the refund.**

**ANSWER TO PARAGRAPH 52:**  Level 3 denies that it has violated the Agreement. Level 3 denies that it has not issued to AT&T any appropriate refund.  Because no refund is warranted, Level 3 denies that it has improperly and unlawfully denied AT&T information necessary to determine the amount of the refund.  To the extent there are any remaining allegations, Level 3 denies them.

**53.     Second, pursuant to the Agreement, after the D.C. Circuit decision in AT&T became final, Level 3 is required to bill AT&T, on a going forward basis, for access services on over-the-top VoIP calls in compliance with the decision in AT&T.**

**ANSWER TO PARAGRAPH 53:**  The Settlement Agreement has been submitted to the Court (see ECF No. 15-1) and speaks for itself.  To the extent AT&T's characterizations of the Settlement Agreement are inconsistent with the text of the Agreement, Level 3 denies those characterizations.  Level 3 further denies that the D.C. Circuit order has become "final" or is a

"final" order as contemplated in the Settlement Agreement.  Level 3 admits that the Settlement Agreement requires the parties to bill and pay for switched access, including the end-office switching element of switched access, in accordance with the terms of the "final" order if and when such an order is entered.  Level 3 denies that the D.C. Circuit order constitutes a "final" order and denies that it contains terms with which the parties may comply in billing and assessing end-office switching charges. To the extent there are any remaining allegations, Level 3 denies them.

**54.    In AT&T, the D.C. Circuit vacated and remanded the FCC's Declaratory Ruling, which had purported to authorize local exchange carriers to bill end office switching access charges on over-the-top VoIP calls. The D.C. Circuit concluded that the Declaratory Ruling was "wholly arbitrary" in explaining the basis for that conclusion. 841 F.3d at 1053-54.**

**ANSWER TO PARAGRAPH 54:**  The D.C. Circuit order and the FCC's Declaratory Ruling are matters of public record and speak for themselves.   To the extent AT&T's characterizations of the order and ruling are inconsistent with the text thereof, Level 3 denies those characterizations.   Level 3 admits that the Declaratory Ruling found that end-office switching charges on OTT-VoIP calls were permissible under the FCC's 2011 rules.   To the extent AT&T suggests that these charges were unauthorized prior to the 2015 Declaratory Ruling, Level 3 denies those suggestions.  Level 3 admits that the D.C. Circuit's order remanded to the FCC for further deliberations on the propriety of billing end-office switching charges on OTT-VoIP calls.  Level 3 admits that it entered into a Settlement Agreement with AT&T in or around May 2015.  To the extent there are any remaining allegations, Level 3 denies them.

**55.    As the D.C. Circuit explained, the FCC put in place rules in 2011 that defined end office access service (as well as tandem-switched transport access service), and that allowed a local exchange carrier to charge long distance carriers when the local carrier or its VoIP provider partner provided the functional equivalent of access services provided**

by incumbent local exchange carriers. The FCC had previously determined that end office switching involved supplying actual or physical interconnection with a caller. Yet, in the Declaratory Ruling, the FCC failed to account for those precedents, and relied on the fact that, on over-the-top VoIP calls, the local exchange carrier or VoIP provider partner performed various "call control" functions that assisted in determining the route of the call. The D.C. Circuit found that explanation to be arbitrary, because the FCC had previously explained that such call control functions were also performed in connection with other switches, including tandem switches.

ANSWER TO PARAGRAPH 55:  The D.C. Circuit order, the FCC's 2015 Declaratory Ruling, and the FCC's 2011 rules are matters of public record and speak for themselves.  To the extent AT&T's characterizations of the order, ruling, and rules are inconsistent with the text thereof, Level 3 denies those characterizations.  Level 3 denies that the services it provides in originating or terminating OTT-VoIP calls do not constitute the functional equivalent of end-office switching pursuant to the FCC's 2011 rules and denies that the rules do not authorize the assessment of end-office switching charges on such calls.  To the extent there are any remaining allegations, Level 3 denies them.

56.    The D.C. Circuit thus vacated and remanded the Declaratory Ruling. An order that is vacated is void, and has no legal effect. Consequently, as a result of the D.C. Circuit's decision in AT&T, Level 3 is prohibited from billing AT&T for end office access services on over-the-top calls VoIP calls unless it were established that Level 3 or its VoIP provider partners perform the functional equivalent of end office services.

ANSWER TO PARAGRAPH 56:  The D.C. Circuit order and the FCC's Declaratory Ruling are matters of public record and speak for themselves.  To the extent AT&T's characterizations of the order, ruling, and rules are inconsistent with the text thereof, Level 3 denies those characterizations.  AT&T's assertions regarding the legal effect of the D.C. Circuit Order and the Declaratory Ruling are legal arguments which require no answer here; to the effect they constitute allegations of fact, Level 3 denies them.  Level 3 denies that it is prohibited from billing AT&T for end-office switching charges on OTT-VoIP calls, as such charges as permitted

under the FCC's 2011 rules and under the express terms of Level 3's tariff.  To the extent there are any remaining allegations, Level 3 denies them.

**57.     Because, as this Court has held, there is no longer any legal authority supporting the position that carriers like Level 3 are performing the functional equivalent of end office switching, Level 3's ongoing attempts to charge AT&T with end office access services on over-the-top VoIP calls do not comply with the D.C. Circuit's decision, with federal law, or with the parties' Agreement.**

**ANSWER TO PARAGRAPH 57:**  Level 3 denies that there is no legal authority supporting the position that carriers like Level 3 are performing the functional equivalent of end-office switching in originating or terminating OTT-VoIP calls.  This Court's prior orders are a matter of public record and speak for themselves; to the extent AT&T's characterizations of those orders are inconsistent with their text, Level 3 denies those characterizations.  Level 3 denies that its end-office switching charges do not comply with the D.C. Circuit's decision, federal law, the parties' Agreement, or any other applicable authority.  To the extent there are any remaining allegations, Level 3 denies them.

**58.     AT&T incorporates paragraphs 1 to 57 of this Complaint as if fully stated herein.**

**ANSWER TO PARAGRAPH 58:**  Level 3 incorporates its responses to the previous paragraphs of the Complaint as if fully stated herein.

**59.     AT&T and Level 3 executed an Agreement that provided terms and rates for Level 3's provision of access services to AT&T on over-the-top VoIP calls.**

**ANSWER TO PARAGRAPH 59:**  Level 3 admits that it entered into a Settlement Agreement with AT&T.  That Settlement Agreement has been submitted to the Court (*see* ECF No. 15-1) and speaks for itself.  To the extent AT&T's characterizations of the Settlement

Agreement are inconsistent with the text of the Agreement, Level 3 denies those characterizations.  To the extent there are any remaining allegations, Level 3 denies them.

**60.     The Agreement is valid and binding on Level 3 and AT&T.**

**ANSWER TO PARAGRAPH 60:**  This paragraph constitutes an assertion of law that Level 3 can neither admit nor deny.  To the extent there are any allegations of fact, Level 3 denies them.

**61.     AT&T performed its obligations under the Agreement.**

**ANSWER TO PARAGRAPH 61:**  Level 3 denies the allegations of paragraph 61.

**62.     Under the Agreement, in or around June, 2017 (30 days after the D.C. Circuit decision in AT&T became final and no longer subject to further review) Level 3 was obligated to pay AT&T a refund of access charges that AT&T had paid for over-the-top VoIP calls.**

**ANSWER TO PARAGRAPH 62:**  Level 3 denies the allegations of paragraph 62.

**63.     Level 3 has not provided AT&T with the refund required by the Agreement.**

**ANSWER TO PARAGRAPH 63:**  Level 3 denies that any refund is required by the Agreement and therefore denies the allegations of paragraph 63.

**64.     As a direct and proximate result of Level 3's breach of the Agreement, AT&T has suffered damages and loss, and AT&T is entitled to damages, in an amount to be determined at trial, for the refund required by the Agreement. The amount of the refund exceeds $75,000.**

**ANSWER TO PARAGRAPH 64:**  Level 3 denies the allegations of paragraph 64.

**65.     Under the Agreement, after the D.C. Circuit decision in AT&T became final and no longer subject to further review, Level 3 was obligated to bill AT&T for access services on over-the-top VoIP calls in compliance with the decision in AT&T.**

**ANSWER TO PARAGRAPH 65:**  Level 3 denies the allegations of paragraph 65.

**66.     Under AT&T, and under federal law, there is no longer any authority providing that Level 3 (or its VoIP partners) are entitled to bill AT&T for end office access services on over-the-top VoIP calls.**

**ANSWER TO PARAGRAPH 66:**  Level 3 denies the allegations of paragraph 66.

**67.     On over-the-top VoIP calls, neither Level 3 nor any of its VoIP provider partners provide the functional equivalence of end office switching access service.**

**ANSWER TO PARAGRAPH 66:**  Level 3 denies the allegations of paragraph 67.

**68.     In breach of the Agreement, Level 3 continues to bill AT&T improperly, by including charges for end office access service on over-the-top VoIP calls.**

**ANSWER TO PARAGRAPH 67:**  Level 3 denies that it has breached the Agreement. Level 3 denies that its bills to AT&T are improper and in particular denies that its charges to AT&T for end-office switching on OTT-VoIP calls are improper.  To the extent there are any remaining allegations, Level 3 denies them.

**69.     As a direct and proximate result of Level 3's breaches of the Agreement, AT&T has suffered damages and loss, and AT&T is entitled to damages, in an amount to be determined at trial, for end office access charges that it paid Level 3 on over-the-top VoIP calls, since the time that the D.C. Circuit decision in AT&T became final and no longer subject to further review.**

**ANSWER TO PARAGRAPH 69:**  Level 3 denies that it has breached the Agreement, and therefore denies that AT&T has suffered damages or loss as a result or is entitled to damages.  To the extent there are any remaining allegations, Level 3 denies them.

**70.     AT&T demands judgment against Level 3 for all amounts due under the Agreement, including interest, in an amount to be determined at trial.**

**ANSWER TO PARAGRAPH 70:**  Level 3 denies that AT&T is entitled to judgment against Level 3 for any amounts under the Agreement.  To the extent there are any remaining allegations, Level 3 denies them.

*[Paragraphs 71 through 85 comprise AT&T's second cause of action, for alleged violations of the Communications Act.  As this claim was dismissed (see ECF No. 76), no answer is warranted.  Level 3 therefore omits the allegations in these paragraphs from its Answer.]*

**86.** AT&T incorporates paragraphs 1 to 85 of this Complaint as if fully stated herein.

**ANSWER TO PARAGRAPH 86:** Level 3 incorporates its responses to the previous paragraphs of the Complaint as if fully stated herein.

**87.** Under the Agreement and federal law, and, Level 3's bills to AT&T for access services on over-the-top VoIP calls must be in compliance with the D.C. Circuit decision in AT&T.

**ANSWER TO PARAGRAPH 87:** Level 3 denies the allegations of paragraph 87.

**88.** Because the D.C. Circuit decision in AT&T vacated the Declaratory Ruling, Level 3's bills to AT&T for access services on over-the-top VoIP calls must be in compliance with the FCC's rules as the exist absent the Declaratory Ruling.

**ANSWER TO PARAGRAPH 88:** Level 3 denies the allegations of paragraph 88.

**89.** Since the D.C. Circuit's decision in AT&T became final, Level 3's charges for access services to AT&T on over-the-top VoIP calls have not complied with federal law.

**ANSWER TO PARAGRAPH 89:** Level 3 denies the allegations of paragraph 89.

**90.** Since the D.C. Circuit's decision in AT&T became final, Level 3 has improperly billed AT&T charges for end office access service, even though neither Level 3 nor any of its VoIP provider partners have provided the functional equivalent of end office access services.

**ANSWER TO PARAGRAPH 90:** Level 3 denies the allegations of paragraph 90.

**91.** AT&T is entitled to judgment under 28 U.S.C. § 2201(a) declaring that, now that the D.C. Circuit's decision in AT&T became final, Level 3 is prohibited from billing AT&T charges for end office access services on over-the-top VoIP calls.

**ANSWER TO PARAGRAPH 91:** Level 3 denies the allegations of paragraph 91.

\*       \*       \*

Answering further, Level 3 denies each and every allegation in the Complaint that is not specifically admitted above.

### AFFIRMATIVE DEFENSES TO AT&T'S COMPLAINT

Level 3 states that AT&T's claims are barred, in whole or in part, by the Affirmative Defenses set forth below.  Level 3 reserves the right to supplement and/or amend these Affirmative Defenses as additional discovery and/or information comes to light.

FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim or cause of action upon which relief may be granted.

SECOND AFFIRMATIVE DEFENSE

AT&T's claims are barred in whole or in part by the terms of the parties' Settlement Agreement, FCC rules, controlling law, and Level 3's access tariffs.

THIRD AFFIRMATIVE DEFENSE

AT&T's claims are barred in whole or in part due to unsatisfied conditions precedent to obtaining the relief it seeks.

FOURTH AFFIRMATIVE DEFENSE

AT&T's claims are barred in whole or in part by its own material breach of the parties' Settlement Agreement.

FIFTH AFFIRMATIVE DEFENSE

AT&T's claims are barred in whole or in part by the doctrine of unclean hands.

Level 3 reserves the right to assert additional defenses that become known to it during the course of this action.

Respectfully submitted this 2nd day of October, 2018.

By: */s/ Charles W. Steese*
Charles W. Steese, #26924
Douglas N. Marsh, #45964
Martin J. Estevao, #46260
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
csteese@armstrongteasdale.com
dmarsh@armstrongteasdale.com
mestevao@armstrongteasdale.com

*Attorneys for Defendant Level 3
Communications, LLC*

## CERTIFICATE OF SERVICE

I, Charles W. Steese, hereby certify that on October 2, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Rebecca B. DeCook
Andrew T. Flynn
Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1027
becky.decook@moyewhite.com
andrew.flynn@moyewhite.com

Micahel J. Hunseder
Justin A. Benson
Sidley Austin, LLP
1501 K Street, NW
Washington, D.C. 20005
202-736-8000
mhunseder@sidley.com
jbenson@sidley.com

*Attorneys for Plaintiff AT&T Corp.*

/s/ Charles W. Steese
Charles W. Steese