# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-RM-MEH

AT&T CORPORATION,

     Plaintiff/Counterclaim -Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC,

     Defendant/Counterclaimant,

and

BROADWING COMMUNICATIONS, LLC, GLOBAL CROSSING
TELECOMMUNICATIONS, INC., and WILTEL COMMUNICATIONS, LLC

     Counterclaimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.
and DOE CORPORATIONS 1–5,

     Counterclaim Defendant.

---

**AMENDED COUNTERCLAIMS OF DEFENDANT LEVEL 3 COMMUNICATIONS**

---

Defendant/Counterclaimant Level 3 Communications, LLC and Counterclaimants
Broadwing Communications, LLC, Global Crossing Telecommunications, Inc., and WilTel
Communications LLC (collectively, "Level 3" or "Defendant"), for its Counterclaims against
Plaintiff AT&T Corporation ("AT&T") and Counterclaim Defendants Teleport Communications
Group, Inc. ("TCG") and Doe Corporations 1–5, states and alleges as follows:

1.      Level 3 and AT&T entered into a Settlement Agreement obligating AT&T to pay Level 3 switched access charges at full tariffed rates on over-the-top Voice over Internet Protocol long distance calls unless and until the FCC issued a final non-appealable decision finding that end-office switching charges do not apply to such traffic.  If such a final order issues, the agreement obligates Level 3 to refund AT&T 50 percent of all charges billed to and paid by AT&T on over-the-top VoIP traffic since June 2015.  While the D.C. Circuit Court of Appeals issued a decision on the topic in 2016, it simply remanded to the FCC so the agency could provide additional detail justifying its decision.  Despite that, AT&T has withheld payment in excess of one million of dollars due to Level 3 as though the FCC had reversed course.  To compound the problem, AT&T presumes that 65% of Level 3's traffic is OTT, when in reality it is but a fraction of this; as such, many of the charges AT&T is withholding have nothing to do with OTT calling.

2.      In addition, AT&T, either on its own and/or through its affiliates (including TCG and Doe Corporations 1–5), has itself assessed switched access charges to Level 3 on over-the-top Voice over Internet Protocol long distance calls—the very act which AT&T complains Level 3 cannot do.  Unlike Level 3, however, the interstate access tariffs of neither AT&T nor TCG or Doe Corporations 1–5 permit the assessment of such charges, and no agreement between the parties permits them.  The charges are therefore unlawful.

3.      Level 3 brings this counterclaim to recover these monies; to obtain an order obligating AT&T to continue making payments on Level 3's charges until a final order issues, if a final order issues; obligating AT&T to pay access charges on all non-OTT calls; and to

preclude AT&T, TCG, and/or Doe Corporations 1–5 from assessing charges which are not permitted under the terms of their tariffs.

## PARTIES

4.      Defendant/Counterclaimant Level 3 Communications, LLC is a Delaware limited liability company, with its principal place of business in Broomfield, Colorado.  Level 3 is an indirect wholly-owned subsidiary of CenturyLink, Inc., a publicly traded corporation.

5.      Plaintiff/Counterclaim -Defendant AT&T Corp. is a New York corporation with its principal place of business in Bedminster, New Jersey.

6.      Counterclaim Defendant Teleport Communications Group, Inc. is a Delaware Corporation with its principal place of business in Bedminster, New Jersey.

7.      Counterclaim Defendants Doe Corporations 1–5 are affiliates of AT&T whose identity is currently unknown to Level 3.

8.      Counterclaimant Broadwing Communications, LLC is a Delaware limited liability company with its principal place of business in Colorado.  Its sole owner and member is Level 3.

9.      Global Crossing Telecommunications, Inc. is a Michigan company with its principal place of business in Colorado.  Its sole owner is Level 3.

10.      WilTel Communications LLC is a Delaware limited liability company with its principal place of business in Colorado.  Its sole owner and member is Level 3.

7.11.   In this document Level 3, Broadwing Communications, LLC, Global Crossing Telecommunications, Inc., and WilTel Communications, LLC are collectively referred to as "Level 3."

## JURISDICTION AND VENUE

8.12.   This Court has original jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1332 because the matter is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9.13.   This Court also has original jurisdiction over the counterclaims rising under 47 U.S.C. § 207 for the violations by AT&T and TCG of the Communications Act, 47 U.S.C. 151 *et. seq.* pursuant to 28 U.S.C. § 1331.   The Court also has original jurisdiction over interpretations of AT&T and/or TCG's interstate access tariff.

10.14.  This Court also has original jurisdiction over all of the counterclaims pursuant to 28 U.S.C. § 1367, because they are so related to the claims brought by Level 3 arising from the Communications Act, over which the Court has original jurisdiction, that they form part of the same case or controversy.

11.15.  Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these counterclaims occurred in this district.

## ALLEGATIONS OF FACT

12.16.  Level 3 is, among other things, a competitive local exchange carrier ("CLEC"), and as such operates as a common carrier engaged in the provision of telephone services to end users within its local exchange network.

13.17.  Level 3 also operates as a long distance or interexchange carrier ("IXC"), which operates by connecting calls made by end users of one local exchange carrier ("LEC") to end users of other LECs.

14.18.  AT&T operates as both an IXC and a LEC.  In its capacity as a LEC, AT&T operates as a common carrier engaged in the provision of telephone services to end users within its local exchange network.

15.19.  TCG also operates as a LEC, and in that capacity operates as a common carrier engaged in the provision of telephone services to end users within its local exchange network.

16.20.  Doe Corporations 1–5 are AT&T affiliates whose identity is currently unknown to Level 3 which also operate as LECs, and in that capacity operate as common carriers engaged in the provision of telephone services to end users within their local exchange networks.

### *PSTN Network and VoIP Calling*

17.21.  Historically, telecommunications carriers exchanged calls through the public switched telephone network ("PSTN") utilizing a protocol known as time-division multiplexing ("TDM").  Long distance calls originated by or terminated to end users through this technology were subject to "switched access charges" from the LECs' access tariffs on file with the FCC (for interstate calling) or the applicable state regulatory agencies (for intrastate calling).

18.22.  There are two different kinds of switched access service for which switched access charges can be assessed.  "Originating" switched access applies to long distance calls that the LEC's customer originates, and "Terminating" switched access applies when a LEC delivers a long distance call to a customer.  For purposes of these Counterclaims, the term "switched access" may refer to either originating or terminating switched access, and "switched access charges" may refer to either originating or terminating switched access charges.

19.23.  Over the last several years, more and more calls are being originated, terminated, and/or transmitted over the PSTN via Voice over Internet Protocol ("VoIP") technology, instead

of via TDM technology.

20. 24.  There are two different types of VoIP calling:  "facilities-based" VoIP, in which the VoIP provider owns or leases the physical infrastructure connected to the customer's premises, thus completing the "last mile" of the call; and "over-the-top" VoIP, in which the VoIP provider connects the call to the customer's end user through the internet connection provided by a third-party internet service provider ("ISP").

21. 25.  Throughout the period of time relevant to this dispute and on information and belief, AT&T, operating as a LEC, has originated calls from and terminated calls to customers via both facilities-based and over-the-top VoIP technology.

22. 26.  Indeed, AT&T, TCG, and/or Doe Corporations 1–5 offer a cloud-based telephony service it refers to as "AT&T Collaborate," which it describes on its website as an "Over-The-Top solution" that "will work on any internet connection."[1]  As this language confirms, for at least a portion of its traffic, AT&T connects to its customers only through third-party ISPs and does not itself complete the "last mile" of calls to and from these customers. AT&T, TCG, and Doe Corporations 1–5 offer other similar OTT products as well.

23. 27.  In defending against Level 3's claims against AT&T, AT&T claims that its affiliate, TCG, is the entity that bills access charges associated with Collaborate and other OTT products.  On information and belief, Doe Corporations 1–5, which are other AT&T affiliates whose identity is currently unknown to Level 3, also bill access charges associated with

---

[1]  *See*  https://www.business.att.com/content/infographic/vc-att-collaborate-what-is-collaborate-infographic.pdf.

Collaborate and/or other OTT products.

24.28.  On information and belief, when AT&T, TCG, and/or Doe Corporations 1–5 originates or terminates calls to and from customers via both facilities-based and over-the-top VoIP technology, it assesses switched access charges on the calls, including the end-office switching element of switched access, to IXCs including Level 3 and other unknown IXCs.

25.29.  Likewise, Level 3 has originated calls from and terminated calls to customers via both facilities-based and over-the-top VoIP technology.

### *The FCC Determined that AT&T was Required to Pay End-Office Switching Access Charges on Over-the-Top VoIP Calls*

26.30.  The FCC's order in *In re Connect America Fund*, 26 FCC Rcd. 17663 (2011) (the "CAF Order"), permits LECs to bill and collect end-office switching charges for originating or terminating facilities-based VoIP calls.  Two specific quotes from the decision make this point:

a.      "We thus adopt rules making clear that origination and termination charges may be imposed under our transitional intercarrier compensation framework, including when an entity 'uses Internet Protocol facilities to transmit such traffic to [or from] the called party's premises.'" CAF Order at ¶ 969.

b.      The order then stated that "we adopt rules that permit a LEC to charge the relevant intercarrier compensation for functions performed by it and/or by its retail VoIP partner, regardless of whether the functions performed or the technology used correspond precisely to those used under a traditional TDM architecture." *Id*. at ¶ 970.

27.31.  Prior to June 2015, AT&T disputed and withheld payment on the end-office switching charges (an element of switched access charges) that Level 3 accessed to it on over-the-top VoIP calls.

28.32.  In February 2015, the Federal Communications Commission ("FCC") confirmed its instructions in the CAF Order, clarifying that over-the-top VoIP calls constituted the "functional equivalent of end office switching" and that LECs therefore could assess end-office switching charges for connecting over-the-top VoIP calls, thus overriding the objections and arguments of AT&T that such charges did not apply to over-the-top VoIP calls.  *See In the Matter of Connect Am. Fund,* 30 FCC Rcd. 1587 ¶ 19 (2015).

### *AT&T Agreed to Pay End-Office Switching Access Charges on Over-the-Top VoIP Calls*

29.33.  AT&T appealed the FCC's February 2015 decision to the D.C. Circuit.

30.34.  In June 2015, while AT&T's appeal of the FCC's decision was pending, AT&T and Level 3 entered into a settlement agreement to resolve the historic dispute between them regarding the applicability of end office switching charges to over-the-top VoIP calls.

31.35.  As part of the settlement agreement, AT&T agreed that, beginning on June 1, 2015, it would pay the switched access charges set forth in Level 3's access tariffs for over-the-top VoIP traffic.

32.36.  Level 3's access tariff includes rates for end office switching that applies to all calls, including for over-the-top VoIP calls.  Specifically, since at least December 2011, Level 3's FCC Tariff No. 4 states:  The definition of "End Office Access Service" includes "(4) The origination and termination of interexchange telecommunications traffic to any end user, either directly or via contractual or other arrangements with an affiliated or unaffiliated provider of interconnected VoIP service, as defined in 47 U.S.C. § 153(25), or a non-interconnected VoIP service, as defined in 47 U.S.C. § 153(36), that does not itself seek to collect reciprocal

compensation charges prescribed by this subpart for that traffic, regardless of the specific functions provided or facilities used."

~~33.~~37.  Recognizing that AT&T's appeal from the FCC's order was still pending, the parties agreed that, "in the event the [FCC's order] is overturned, either in whole or in part, ***and the applicable order on appeal becomes final and is no longer subject to further appeal or other judicial review***" (emphasis added), Level 3 would refund ▮▮ percent of the charges Level 3 had billed, and AT&T had paid, on over-the-top VoIP traffic since June 2015.

~~34.~~38.  The parties further agreed "that any billing and payments for [over-the-top VoIP] traffic exchanged after such Final Appellate Order becomes final shall be in compliance with [the] terms of that order."

~~35.~~39.  Thus, as expressly stated in the parties' settlement agreement, only in the event that a final order is entered definitively determining that end-office switching access charges may not be assessed on over-the-top VoIP calls is AT&T entitled under the terms of the settlement agreement to withhold such payment.  Without such an order, Level 3 may continue to assess, and AT&T must continue to pay, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ for over-the-top VoIP calls.

~~36.~~40.  Furthermore, if and when such a final order is entered, the settlement agreement provides that AT&T would be entitled to a refund of only ▮▮ of the charges AT&T paid between June 2015 and the date the final order is entered.

~~37.~~41.  The requirement of a final order is validated by an email exchange between the parties.  On May 8, 2015, at the outset of the negotiations that led to the settlement agreement, AT&T sent Level 3 an email attaching a document that it described as AT&T's "attempt to

capture our agreement construct."   The attached document provides: "If AT&T wins its FCC appeal, L3 will refund ███ of the disputed charges beginning with June 2015 through the date of a final ruling, either from the Court of Appeals *or, if remanded, by the FCC ruling*."  (Emphasis added.)

### *The D.C. Circuit Remanded to the FCC to Determine Whether End-Office Switching Access Charges Could be Assessed on Over-the-Top VoIP Calls*

~~38.~~42.   The D.C. Circuit subsequently issued an order vacating the FCC's 2015 decision.  *See AT&T Corp. v. Fed. Commc'ns Comm'n*, 841 F.3d 1047 (D.C. Cir. 2016).  However, the circuit court did not determine the issue of whether LECs could assess end-office switching charges on over-the-top VoIP calls, and did not set forth terms for billing or paying for over-the-top VoIP traffic.  Instead, it remanded to the FCC for further consideration of this issue.

~~39.~~43.   The FCC has not yet issued a decision on remand.

~~40.~~44.   Because the D.C. Circuit's decision did not settle the legal issue of whether and how LECs could bill for over-the-top VoIP calls, but rather left that issue to be resolved by the FCC, no final decision or order has issued as contemplated in parties' settlement agreement.

### *AT&T has Refused to Pay the End-Office Switching Access Charges as Required by Level 3's Tariff and as Promised in the Settlement Agreement*

~~41.~~45.   After the D.C. Circuit issued its decision, AT&T withheld payment for the end-office switching access charges assessed by Level 3 on many long distance calls.   AT&T significantly overestimated the percentage of OTT VoIP calls on Level 3's network.  At the time this lawsuit was filed, AT&T had withheld over $1.8 million, and the number has grown substantially since. Since January 1, 2019 alone, AT&T has withheld in excess of one million dollars.

42.46.  AT&T's settlement agreement with Level 3 obligates it to pay end-office switching access charges at ████████ rates unless and until a final order issues determining that IXCs need not pay end-office switching charges on over-the-top VoIP calls.  As the question of whether such charges cannot be assessed is currently pending before the FCC, no "final" order (as contemplated in the parties' settlement agreement) has yet been entered resolving the question of whether and how LECs may bill for over-the-top VoIP calls.

43.47.  AT&T's refusal to pay these end-office switching access charges constitutes a breach of the settlement agreement with Level 3.

### AT&T and/or its Affiliates, including TCG, Has Assessed Switched Access Charges to Level 3 on OTT-VoIP Calls and has Refused to Refund Those Charges.

44.48.  AT&T's own practices have been inconsistent with its argument that it need not pay end-office switching access charges for over-the-top VoIP calls.  Though AT&T is an IXC, it also operates as a LEC.  Level 3 states on information and belief that, in AT&T's capacity as a LEC, it has charged (and continues to charge) switched access charges—including end office switching charges—to Level 3 for over-the-top VoIP calls to or from customers within its exchange.

45.49.  AT&T has claimed that TCG is the entity that bills access charges associated with Collaborate and other OTT products.  Level 3 states on information and belief that, in its capacity as a LEC, TCG has charged (and continues to charge) switched access charges—including end office switching charges—to Level 3 for over-the-top VoIP calls to or from customers within its exchange.

46.50.  On information and belief, Doe Corporations 1–5 are other AT&T-affiliated LECs which, in their capacity as LECs, charge (and continue to charge) switched access charges—including end office switching charges—to Level 3 for over-the-top VoIP calls to or from customers within their exchanges.

47.51.  The terms of AT&T's and TCG's interstate access tariffs, however, do not permit the assessment of such charges, and the access charges AT&T and/or TCG assesses on OTT-VoIP traffic (even as AT&T claims it need not pay such charges when acting as an IXC) are therefore unlawful.  On information and belief, the tariffs of Doe Corporations 1–5 likewise do not permit the assessment of such charges.

48.52.  AT&T's interstate access tariff defines "Access Service" as "denot[ing] the use of the network or facilities of the Company to enable a Customer to originate or terminate a call." It also defines a "customer" as one who "subscribes to the services offered under this tariff."  *See* AT&T Corp. Tariff F.C.C. No. 2, Section 2.7.

49.53.  Section 4.12.3 of TCG's Tariff F.C.C. No. 2 states that the "End Office rate category" "provides for the local switching and end user/origination or termination functions necessary to complete the transmission of Call Completion Services to and from the end users served by the Company's end offices."  *Id.*  On OTT-VoIP calls, customers are served via a third-party internet connection. The tariff also defines a "customer" as one who "orders interstate common carrier service pursuant to this tariff and is responsible for the payment of charges." *Id.*

12

Section 1. It does not appear that Collaborate and other OTT services are ordered from this tariff.[2]

~~50.~~54.  Therefore, under the terms of their tariffs, in order for AT&T and/or TCG to assess switched access charges or any elements thereof, they must originate or terminate the long distance call on facilities that AT&T and/or TCG provides to the customer, and to a customer who subscribes to a tariffed service from AT&T and/or TCG.  Neither AT&T nor TCG can rely upon an ISP or other third parties to originate or terminate the call.

~~51.~~55.  On information and belief, the language in the tariffs of Doe Corporations1–5 are substantially similar to the language in the tariffs of AT&T and TCG, and thus do not permit the assessment of switched access charges or any element thereof on OTT-VoIP calls.

~~52.~~56.  Numerous decisions by the Federal Communications Commission ("FCC") and federal courts interpreting similar tariff provisions have recognized as much: as a condition precedent to charging and collecting switched access charges pursuant to tariff, the LEC must originate or terminate the calls in strict conformance with its tariff's language. *See, e.g.*, *Farmers & Merchants Mut. Tel. Co. of Wayland, Iowa v. F.C.C.*, 668 F.3d 714, 723 (D.C. Cir. 2011) ("If Farmers' tariff did not apply to the services it was providing to Qwest, then Farmers violated

---

[2] By contrast, Level 3's interstate access tariff defines "End Office Access Service" as including, among other things, "[t]he origination and termination of interexchange telecommunications traffic to any end user, either directly or via contractual or other arrangements with an affiliated or unaffiliated provider of interconnected VoIP service, as defined in 47 U.S.C. § 153(25), or a non-interconnected VoIP service, as defined in 47 U.S.C. § 153(36) . . . regardless of the specific functions provided or facilities used."  Level 3 Tariff F.C.C. No. 1 § 2.6.  Thus, Level 3's tariff expressly includes the origination and termination of OTT-VoIP traffic within its definition of switched access service.

such rules, not the Commission"); *Qwest Commc'ns Corp. v. Farmers and Merchants Mut. Tel. Co.*, 24 FCC Rcd. 14801, 14812 (2009) ("The fact remains, however, that the relevant tariff defines switched access service as providing a communications path to an end user. Whether or not this definition is narrower than that used for purposes of the Act and Commission rules, it is nonetheless the definition to which Farmers is bound for purposes of determining whether its charges are in compliance with its tariff.") (footnotes omitted).

53.57.  In one such case, *AT&T Corp. v. Ymax Commc'ns Corp.*, 26 FCC Rcd. 5742 (2011), AT&T brought claims against a LEC whose tariff, like AT&T's, defined switched access as requiring calls to be originated from or terminated to customers, who were likewise defined as those who subscribed to tariffed services.  In that case, the LEC claimed that exchanging data packets over the internet serves the same function as transmitting a call via a direct connection between the called party's premises and the PSTN so as to allow for the assessment of switched access charges.  *Id.* at 5758.   But AT&T argued, and the FCC agreed, that where the LEC did not itself terminate calls to an "end user," it did not provide switched access as defined by the tariff and therefore could not lawfully assess switched access charges.

54.58.  Thus, as these many decisions have concluded (and as AT&T itself has argued), if the service provided does not meet the terms and conditions of the tariff (including the requirement that the LEC originate the calls from or terminate the calls to a customer as defined in the tariff), LECs may not assess switched access charges.

55.59.  In its role as an IXC, Level 3 has routed long distance calls that were originate by or terminated to AT&T, TCG, and/or Doe Corporations 1–5 in their roles as LECs. On information and belief, Level 3 asserts that a portion of these calls were over-the-top VoIP calls.

As described above, AT&T, TCG, and/or Doe Corporations 1–5 either obtained those calls from or routed those calls to third-party ISPs, which originated/terminated the calls via "over the top" VoIP through an internet connection.   AT&T, TCG, and/or Doe Corporations 1–5 did not themselves originate or terminate the calls, and therefore did not provide "Access Service" as defined in their tariffs.

56.60.  Even though AT&T, TCG, and/or Doe Corporations 1–5 did not provide "Access Service" as defined in their tariffs for these OTT-VoIP calls, on information and belief, Level 3 asserts that AT&T, TCG, and/or Doe Corporations 1–5 has assessed access charges to Level 3 for those calls.

57.61.  Level 3 has paid those charges.

58.62.  On September 10, 2018, Level 3 sent a notice of dispute to AT&T asserting that these charges are unlawful and seeking recovery thereof.   AT&T has not refunded those incorrectly billed and paid charges to Level 3.

59.63.  On information and belief, Level 3 asserts that AT&T and/or TCG continue to assess access charges to Level 3 on over-the-top VoIP calls, even as AT&T maintains in this action that such charges (when assessed to it by Level 3) are unlawful.

## CAUSES OF ACTION

### Count I:  Breach of Contract

60.64.  Level 3 incorporates each of the preceding paragraphs as if fully stated herein.

61.65.  AT&T and Level 3 executed a settlement agreement that provided rates and terms for Level 3's provision of access services to AT&T on over-the-top VoIP calls.

62.66.  The settlement agreement is valid and binding on AT&T and Level 3.

63.67.  Level 3 performed its obligations under the settlement agreement.

64.68.  Under the settlement agreement, beginning in June 2015, AT&T is and remains obligated to pay Level 3 end-office switching access charges at ████ rates for all calls, including over-the-top VoIP calls.

65.69.  This obligation continues unless and until the FCC issues a decision that is no longer subject to appellate review that, once and for all, determines that end-office switching charges do not apply to over-the-top VoIP traffic.

66.70.  AT&T withheld in excess of one million dollars on payments for Level 3's tariffed charges, ostensibly withholding charges on over-the-top VoIP traffic.  However, a vast percentage of this withholding is on traditional traffic, not over-the-top VoIP traffic.

67.71.  Beginning in or around June 2017, AT&T has refused to pay any of the end-office switching access charges Level 3 has assessed for over-the-top VoIP traffic, as it is required to do by the settlement agreement.

68.72.  In withholding payment, AT&T significantly overestimates the percentage of Level 3's traffic that is over-the-top VoIP traffic; as a result, it is also withholding access charges on traditional calling as well. AT&T's withholds payment on 65% of the end office switching charges even to this day.

69.73.  AT&T's failure to pay these end-office switching access charges directly and proximately caused and continues to cause Level 3 to suffer damage and loss.

70.74.  Level 3 is entitled to damages in an amount to be determined at trial for payment in full of all end-office switching access charges owed by AT&T on over-the-top VoIP calls (as well as the traditional traffic on which AT&T is withholding payment).

71. 75.  Level 3 demands judgment against AT&T for all amounts due under the agreement, including interest and late payment charges in an amount to be determined at trial.

## Count II:  Declaratory Relief

72. 76.  Level 3 incorporates each of the preceding paragraphs as if fully stated herein.

73. 77.   Under the settlement agreement, AT&T is obligated to continue to pay end-office switching access charges on over-the-top VoIP calls to Level 3's end users unless and until a final order determines that these charges are not applicable to over-the-top VoIP calls.

74. 78.  Only if a final order is entered deciding that LECs may not assess these charges for over-the-top VoIP calls is Level 3 obligated to refund any portion of these charges to AT&T.

75. 79.  Further, the amount Level 3 would be obligated to refund is no more than ███ of those charges AT&T is obligated to have paid since June 2015.  Level 3 would be entitled to keep ██ of what was billed on traffic terminated to Level 3's customers before June 2015, and (a) ██ percent of access charges billed to AT&T associated with customers not using OTT VoIP and (b) ██ percent of the charges on OTT VoIP traffic that was terminated between June 2015 and the date of the order determining that such charges could not be assessed.

76. 80.  On AT&T's appeal of the FCC's June 2015 decision, the D.C. Circuit remanded to the FCC to clarify the FCC's earlier order that end-office switching access charges apply to over-the-top VoIP calls.  Thus, no final order as contemplated by the parties in their settlement agreement has yet been entered.

77. 81.  Notwithstanding the absence of a final order, AT&T has refused to pay the ███ end-office switching access charges on Level 3's over-the-top VoIP traffic, and

maintains that Level 3 is presently obligated to refund █ percent of the charges AT&T has paid since June 2015.

~~78.~~ 82.  An actual and substantial controversy exists between the parties as to whether AT&T is obligated under the settlement agreement to continue to pay end-office switching access rates at ██████ rates, and whether any duty on the part of Level 3 to refund any part of the charges AT&T has paid has been triggered by the entry of a "final" order as contemplated by the parties in their settlement agreement.

~~79.~~ 83.  The controversy concerns the legitimacy of charges presently being assessed by Level 3 and disputed by AT&T each month, and thus presents a real, immediate, and substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

~~80.~~ 84.  Level 3 is entitled to judgment under 28 U.S.C. § 2201(a) declaring that no "final" order as contemplated in the agreement has yet been issued, that no duty on the part of Level 3 to refund all or any part of the end-office switching access charges assessed to AT&T for over-the-top VoIP calls has yet arisen, and that AT&T is obligated by the agreement of the parties to continue to pay end-office switching access charges to Level 3 at ██████ rate.

**Count III: Violation of Section 203 of the Communications Act**

~~81.~~ 85.  Level 3 incorporates each of the preceding paragraphs as if fully stated herein.

~~82.~~ 86.  47 U.S.C. § 203(a) states that "[e]very common carrier . . . shall . . . file with the Commission . . . schedules showing all charges . . . for interstate and foreign wire or radio communication between the different points in its own system, and between points on its own system and points on the system of its connecting carriers or points on the system of any other

carrier subject to this chapter and when a through route has been established . . . and showing the classifications, practices, and regulations affecting such charges."

83. 87. Section 203(c) provides that "[n]o carrier, unless otherwise provided by or under authority of this chapter, shall engage or participate in such communication unless schedules have been filed and published in accordance with the provisions of this chapter and with the regulations made thereunder; and no carrier shall (1) charge, demand, or receive a greater or lesser or different compensation for such communication, or for any service in connection therewith, between the points named in any such schedule than the charges specified in the schedule then in effect, or (2) refund or remit by any means or devise any portion of the charges so specified, or (3) . . . employ or enforce any classifications, regulations, or practices affecting such charges, except as specified in such schedule."

84. 88. As to the access service charges that it has billed to Level 3, AT&T, TCG, and Doe Corporations 1–5 are common carriers and local exchange carriers, and subject to Section 203 of the Communications Act.

85. 89. The access services that AT&T, TCG, and Doe Corporations 1–5 provided and billed to Level 3 on over-the-top VoIP calls are subject to Section 203 of the Communications Act.

86. 90. AT&T's, TCG's, and Doe Corporations 1–5's interstate access tariffs requires that they originate calls from or terminate calls to customers over their own facilities and to customers who subscribe to AT&T's, TCG's and/or Doe Corporations 1–5's tariffed services in order to assess switched access charges.

87.91.  When AT&T, TCG, and Doe Corporations 1–5 route over-the-top VoIP calls through third-party ISPs for delivery to calling parties (or vice versa), AT&T, TCG, and Doe Corporations 1–5 do not themselves provide the called or calling party a tariffed telecommunications service.

88.92.  In its capacity as an IXC, Level 3 has routed over-the-top VoIP calls both to and from AT&T, TCG, and Doe Corporations 1–5 in its capacity as a LEC.

89.93.  AT&T, TCG, and Doe Corporations 1–5 have assessed switched access charges to Level 3 for originating and/or terminating these calls.

90.94.  Level 3 has paid the switched access charges assessed by AT&T, TCG, and Doe Corporations 1–5.

91.95.  Notwithstanding Level 3's September 10, 2018 notice of dispute seeking a refund of these improper charges, AT&T has failed to remit credits in the amounts compensating Level 3 for the improperly billed switched access charges.

92.96.  AT&T's, TCG's, and Doe Corporations 1–5's assessment of such charges to Level 3 violates its obligations under Section 203 of the Communications Act to charge for service and provide credits in accordance with its tariff.

93.97.  By erroneously billing Level 3 switched access charges on over-the-top VoIP calls, AT&T, TCG, and Doe Corporations 1–5 have received greater compensation than allowed under its tariff and Section 203(c).

94.98.  As a direct and proximate result of AT&T, TCG, and Doe Corporations 1–5's violations of Section 203 of the Communications Act, Level 3 has suffered damages and loss, and is entitled to damages in an amount to be determined at trial for switched access charges that

it has paid AT&T, TCG, and Doe Corporations 1–5 on over-the-top VoIP calls for which it has not received proper credits, along with interest and its reasonable costs and attorneys' fees pursuant to 47 U.S.C. § 206.

### Count IV: Violation of Section 201(b) of the Communications Act

95.99.  Level 3 incorporates each of the preceding paragraphs as if fully stated herein.

96.100.      Under Section 201(b) of the Communications Act, "[a]ll charges, practices, classifications, and regulations for and in connection with [an interstate or foreign] communications service, shall be just and reasonable. . . ."

97.101.      Numerous rules and FCC decisions, including *inter alia AT&T Corp. v. YMax*, 26 FCC Rcd. 5472 (2011), recognize that it is unjust and unreasonable for a telecommunications carrier to bill for services in a manner that is contrary to the carrier's filed interstate tariffs.

98.102.      As set forth above, AT&T, TCG, and Doe Corporations 1–5's conduct in erroneously billing Level 3 switched access charges on over-the-top VoIP calls is unjust and unreasonable because AT&T, TCG, and Doe Corporations 1–5 are billing for services that their tariffs does not provide, in violation of their tariffs, Section 203, and FCC decisions such as *YMax*.

99.103.      Additionally, and in the alternative, in the event that the FCC ultimately determines that the FCC's rules on VoIP calls do not permit a LEC to assess end-office switching access charges on over-the-top VoIP calls, then AT&T, TCG, and Doe Corporations 1–5's assessment of such charges to Level 3 violate these FCC rules.

100.104.     Notwithstanding Level 3's September 10, 2018 notice of dispute seeking a refund of these improper charges, AT&T has failed to remit credits in the amounts compensating Level 3 for the improperly billed switched access charges.

101.105.     As a direct and proximate result of AT&T, TCG, and Doe Corporations 1–5's violations of the FCC's rules, its tariff, and Sections 201(b) and 203 of the Communications Act, on information and belief, Level 3 has suffered damages and loss, and is entitled to damages in an amount to be determined at trial for switched access charges that it has paid AT&T, TCG, and Doe Corporations 1–5 on over-the-top VoIP calls, along with interest and its reasonable costs and attorneys' fees pursuant to 47 U.S.C. § 206.

### Count V: Breach of Contract

102.106.     Level 3 incorporates each of the preceding paragraphs as if fully stated herein.

103.107.     AT&T, TCG, and Doe Corporations 1–5's tariffs constitute contracts between them and any purchaser of services from those tariffs, which includes Level 3.

104.108.     As set forth above, AT&T, TCG, and Doe Corporations 1–5 have erroneously billed for services under its tariff by assessing switched access charges on over-the-top VoIP calls.

105.109.     AT&T, TCG, and Doe Corporations 1–5 breached their tariffs by billing Level 3 for access service when they did not provide such service as defined in their tariffs.

106.110.     As a direct and proximate result of AT&T, TCG, and Doe Corporations 1–5's conduct as alleged above, on information and belief, Level 3 has been damaged in an amount

to be determined at trial and is thus entitled to compensation for all amounts for which it has not received proper credits, plus interest.

## Count VI:  Declaratory Relief

~~107.~~111.    Level 3 incorporates each of the preceding paragraphs as if fully stated herein.

~~108.~~112.    AT&T, TCG, and Doe Corporations 1–5's continuing assessment of switched access charges to Level 3 on over-the-top VoIP calls violates 47 U.S.C. § 203, which requires a common carrier to bill for tariffed services exactly as provided in the carrier's tariff.

~~109.~~113.    Additionally, in the event that the FCC ultimately finds that the FCC's rules on VoIP calls do not permit a LEC to assess end-office switching access charges on over-the-top VoIP calls, then AT&T, TCG, and Doe Corporations 1–5's continuing assessment of such charges to Level 3 violates 47 U.S.C. § 201(b), which requires a carrier's charges to be just and reasonable, and in conformance with FCC rules.

~~110.~~114.    An actual and substantial controversy exists between the parties as to whether AT&T, TCG, and Doe Corporations 1–5 are entitled under the FCC's rules and federal law to assess switched access charges at the tariffed rates on over-the-top VoIP calls.

~~111.~~115.    The controversy concerns the legitimacy of charges presently being assessed by AT&T, TCG, and Doe Corporations 1–5 each month, and thus presents a real and immediate dispute and a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

112.116.    Level 3 is entitled to judgment under 28 U.S.C. § 2201(a) declaring that AT&T, TCG, and Doe Corporations 1–5 are prohibited from billing Level 3 switched access charges on over-the-top VoIP calls.

**PRAYER FOR RELIEF**

113.117.    As relief against Plaintiff and Counterclaim Defendants AT&T, TCG, and Doe Corporations 1–5, Defendant and Counterclaimant Level 3 respectfully requests that the Court enter judgment in favor of Level 3 and against AT&T, TCG, and Doe Corporations 1–5 as follows:

    a.   Ordering AT&T to pay Level 3 damages for AT&T's breaches of the parties' settlement agreement, in an amount to be determined at trial, plus interest and late payment charges;

    b.   Entering a declaratory judgment that no "final" order as contemplated in the parties' settlement agreement has yet been issued, that no duty on the part of Level 3 to refund all or part of the end-office switching access charges assessed to AT&T for over-the-top VoIP calls has yet arisen, and that AT&T remains bound by the agreement to pay end-office switching access charges to Level 3 on all calls, including over-the-top VoIP calls, at the ███████ rate;

    c.   Ordering AT&T, TCG, and Doe Corporations 1–5 to refund all switched access charges they have assessed to Level 3 on over-the-top VoIP calls;

    d.   Ordering AT&T, TCG, and Doe Corporations 1–5 to pay Level 3's reasonable attorneys' fees and costs;

e.  Entering a declaratory judgment that AT&T, TCG, and Doe Corporations 1–5 are prohibited from billing Level 3 switched access charges on calls originated or terminated as over-the-top VoIP calls; and,

f.  All other relief the Court may deem just and necessary.

Respectfully submitted this ##th day of ####, 2019.

By: */s/ Charles W. Steese*
Charles W. Steese, #26924
Douglas N. Marsh, #45964
Martin J. Estevao, #46260
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
csteese@armstrongteasdale.com
dmarsh@armstrongteasdale.com
mestevao@armstrongteasdale.com

*Attorneys for Defendant/Counterclaimant Level 3 Communications, LLC and Counterclaimants Broadwing Communications, LLC, Global Crossing Telecommunications, Inc., and WilTel Communications, LLC*

25

## CERTIFICATE OF SERVICE

I, Charles W. Steese, hereby certify that on ##### ##, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Rebecca B. DeCook
Andrew T. Flynn
Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1027
becky.decook@moyewhite.com
andrew.flynn@moyewhite.com

Micahel J. Hunseder
Justin A. Benson
Sidley Austin, LLP
1501 K Street, NW
Washington, D.C. 20005
202-736-8000
mhunseder@sidley.com
jbenson@sidley.com

*Attorneys for Plaintiff AT&T Corp.*
*and Counterclaim Defendant TCG.*

/s/ Charles W. Steese
Charles W. Steese