IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00112-RM-MEH

AT&T CORP.,

    Plaintiff/Counterclaim Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC,

    Defendant/Counterclaimant,

v.

TELEPORT COMMUNICATIONS GROUP, INC.

    Counterclaim Defendant

---

**OPPOSITION TO MOTION FOR LEAVE TO ADD LEVEL 3 AFFILIATES AS COUNTERCLAIMANTS**

---

AT&T Corp. ("AT&T") and Teleport Communications Group, Inc. ("TCG"), hereby oppose Level 3 Communications, LLC's ("Level 3") Motion for Leave to Add Level 3 Affiliates as Counterclaimants (ECF No. 110).

**INTRODUCTION**

By this motion (its *third* motion to amend and *second* within only six weeks, *see* ECF Nos. 78, 98, filed June 21, 2019), Level 3 seeks to add three subsidiaries—Broadwing Communications, LLC, Global Crossing Telecommunications, Inc., and WilTel Communications, LLC—as counterclaim plaintiffs to this action, in order to allow the subsidiaries to assert the type of overcharge claim that Level 3 raised nearly a year ago on September 24, 2018. *See* ECF No. 78. The deadline in this case for amending pleadings or joining parties—October 1, 2018 (*see* ECF No. 55 at 10)—has long since passed, however. Thus, to prevail on its motion, to add its

1

subsidiaries, Level 3 must establish good cause, that it has been diligent in raising the claims, and that the amendment would cause no prejudice. Level 3 cannot meet these standards, as its explanation for its late amendment is patently insufficient. Its motion to amend should be denied.

More than eleven months ago, on September 24, 2018, Level 3 filed its first amended counterclaims, alleging that it was overcharged on "over-the-top" Voice over Internet Protocol ("VoIP") calls, and the parties have been litigating these claims since then. ECF No. 78. The three subsidiaries' proposed amendment seeks to add counterclaims that are identical in all respects to Level 3's counterclaims. Level 3's wholly-owned subsidiaries could—and should—have raised these claims at the same time as Level 3 did. Level 3's assertion that its affiliates only recently learned about the overcharges (ECF. No. 110, at 2) makes no sense: the affiliates were billed the allegedly unlawful charges at the same time as Level 3. Because Level 3 was able to discover these alleged overcharges last September, then the affiliates could have as well, so long as they had been exercising reasonable diligence.[1] They did not.

Further, the proposed amendment would result in undue prejudice, because fact discovery is due to close in this case on September 27, 2019 (*see* ECF No. 96), and there is not sufficient time to complete discovery on the three subsidiaries' claims. Even though the merits of the subsidiaries' claims are the same as at issue with Level 3's counterclaims, the discovery on measure of any putative overcharges is different—not long after seeking leave to amend, Level 3 and its affiliates provided AT&T and TCG with over 1,700 dispute notices, challenging thousands

---

[1] AT&T understands these Level 3 subsidiaries are seeking recovery for bills issued to them separately from Level 3.

of invoices stretching back years. There is just not sufficient time to complete fact discovery under the current schedule, and thus the proposed amendment should be denied.

## ARGUMENT

When a party seeks to amend a pleading after the deadline provided for amendment of pleadings in a scheduling order, the movant must meet the standards for amending pleadings set forth in Rule 15(a) and also must show "good cause" to modify the scheduling order under Fed. R. Civ. P. 16(b)(4). *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).

Under Rule 15, a district court "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), but such motions should be denied when the amendment would cause undue delay, would prejudice the opposing party, or when the amendment is futile, *see Foman v. Davis*, 371 U.S. 178, 182 (1962). In the Tenth Circuit, denial of a leave to amend is appropriate when "the party filing the motion has no adequate explanation for the delay." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (quoting *Frank v. U.S. West*, 3 F.3d 1357, 1365–66 (10th Cir. 1993)); *see also Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir.1987*)* ("courts have denied leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend"). And the longer the delay, "the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Minter*, 451 F.3d at 1205 (quoting *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004)). Denial is also appropriate when the amendment prejudices the defendants by affecting their ability to prepare "their defense to the amendment." *Id.* at 1208.

3

Under Rule 16, a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "[T]his standard requires the movant to show the scheduling deadlines cannot be met despite [the movant's] diligent efforts. . . . If the plaintiff knew of the underlying conduct but simply failed to raise [its] claims, however, the claims are barred." *Gorsuch, Ltd., B.C*, 771 F.3d at 1240 (Internal quotation marks omitted). Satisfying the "good cause" standard "requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay." *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009) (quoting *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994)).

The proposed amendment to add overcharge claims by three Level 3 subsidiaries does not meet the standard under either Rule 15 or Rule 16, and the motion should therefore be denied.

### 1. The Three Subsidiaries Were Not Diligent In Raising Their Claims

For the switched access services at issue, carriers provide monthly bills to their customers. As a general matter, under Section 415 of the Communications Act, 47 U.S.C. § 415, a "two-year limitations period begins to run when the customer receives a bill from the carrier assessing the disputed rate." *Communications Vending Corp. v. FCC*, 365 F.3d 1064, 1073 (D.C. Cir. 2004) (quoting *In re MCI Telecomms. Corp. v. U.S. West Communications, Inc.*, 15 FCC Rcd. 9328, 9330, ¶ 5 (2000)) *aff'g Communications Vending Corp v. Citizens Comm.*, 17 FCC Rcd. 24201 (2002). Thus, once customers receive a bill from a regulated common carrier, the customers have "an affirmative obligation to exercise due diligence in preserving [their] legal rights." *Communications Vending Corp*, 17 FCC Rcd. at 24222, ¶ 50 (quotation marks omitted).

4

Level 3 and its three subsidiaries received the same type of bills for access services from AT&T or TCG.  Nearly a year ago, Level 3 filed amended counterclaims in which it alleged that it had been overcharged on over-the-top VoIP calls.  ECF Nos. 78, 79.  Level 3's allegations were by no means detailed—it merely asserted that it had received bills for access services, that, on "information and belief," some of those services were provided on over-the-top VoIP calls, and that the tariffs at issue precluded the billing of certain access charges on such over-the-top VoIP calls.  ECF No. 79, ¶¶ 17, 19, 39, 46, 47, 50, 89.  Because Level 3 was able to plead these claims long ago, so too could Level 3's three subsidiaries—but they failed to do so because they did not satisfy their "affirmative obligation" to exercise due diligence in pursuing these claims.

Despite being required by Rules 15 and 16, Level 3 offers no reasonable explanation as to why it did not seek to add claims on behalf of its three subsidiaries back in September, 2018—or, at a minimum, when it amended its claims to add TCG as a party in June, 2019.  *Cf. Strope*, 315 F. App'x at 61.

Because the subsidiaries are wholly-owned by Level 3, the subsidiaries possessed (or should have possessed) the same information about the alleged overcharges as Level 3 did.  *See* ECF No. 110, at 2–3 (asserting that in September 2018, Level 3 "discover[ed] sufficient facts to inform its belief that AT&T assesses end-office switching charges on OTT-VoIP" calls).  The bills the subsidiaries received are identical in form to the bills received by Level 3.  If Level 3 and its subsidiaries had been diligent once they received the bills, they would have realized that the subsidiaries could have raised the same types of overcharge claims as Level 3, and the subsidiaries' overcharge claims could easily have been included in Level 3's prior amendment in September, 2018.

5

In its Motion, Level 3 argues that it diligently pursued these subsidiaries' overcharge claims, "pausing only with the Court's approval and in accordance with the parties' mutual desire to explore settlement possibilities." ECF No. 110, at 3. This assertion is a red herring. The stay in this matter was entered on March 25, 2019 (ECF No. 92) and ended on June 10, 2019 (ECF No. 93). Had Level 3 and its affiliates been diligent, they could have raised the three subsidiaries' claims well before the stay was entered.

Nor is there any merit to the assertion that the delay in raising the subsidiaries' claims is due to "information [from AT&T] regarding how it and its affiliates assess the charges at issue." ECF No. 110, at 3. What AT&T told Level 3 was that its affiliate TCG would have billed any access charges on any over-the-top VoIP calls, which led Level 3 to file a motion—which AT&T did not oppose—to add TCG as a party. ECF No. 98. Regardless of which AT&T entity allegedly billed the overcharges, Level 3 was plainly aware of its overcharge claims no later than September 21, 2018, which is when Level 3 amended its counterclaims to plead these claims. As explained above, because Level 3 was able to plead these claims long ago against AT&T, so too could Level 3's subsidiaries have raised those same claims.[2]

## 2. The Proposed Amendment Would Result in Prejudice

Fact discovery in this case is due to close on September 27, 2019. Even as to the existing claims, the parties have substantial work to do by that time: AT&T will be taking multiple corporate depositions of Level 3, Level 3 will be deposing multiple corporate representatives of

---

[2] At a minimum, Level 3 provides absolutely no explanation for why it did not add these three subsidiaries' claims on June, 21, 2019, when it added TCG as a party. The reason is clear: Level 3 and its subsidiaries were not acting with due diligence, which is why they needed to file the current motion, just weeks after adding TCG as a party.

6

AT&T and TCG, as well as personal depositions of three other witnesses. Further, Level 3 has yet to provide any factual evidence to substantiate the amount of any alleged overcharges by AT&T or TCG.

In these circumstances, the proposed amendments—which would add new claims for three new entities for which there has been no discovery whatsoever—would cause prejudice because it would affect AT&T and TCG's ability to properly defend against these new claims. There is simply no way to complete all of the existing discovery and *also* the new discovery as to the three subsidiaries by September 27, 2019. Level 3's assertion that it is "unaware of any additional discovery that will be needed" (ECF No. 110, at 3) is bewildering. The new claims by the three subsidiaries add substantially to the analysis of the alleged damages—TCG and AT&T recently received over 1,700 letters of dispute from Level 3 and its affiliates, and each of these claims would need to be investigated. Moreover, while the liability issues raised by the three subsidiaries' proposed claims are the same as those presented by Level 3's existing counterclaims, that similarity only underscores that Level 3 could and should have raised those claims no later than last September.

In conclusion, AT&T respectfully requests the Court deny Level 3's motion to amend as to its three subsidiaries because it is both untimely and prejudicial under Rule 15, and without "good cause" under Rule 16.

Dated: August 26, 2019                             Respectfully Submitted,


                                                   BY:  /s/ Michael J. Hunseder

                                                   Rebecca B. DeCook, #14590
                                                   Andrew T. Flynn, #43843
                                                   MOYE WHITE LLP
                                                   1400 16th Street, 6th Floor
                                                   Denver, Colorado 80202-1027
                                                   Telephone: (303) 292-2900
                                                   E-mail: becky.decook@moyewhite.com
                                                   E-mail: andrew.flynn@moyewhite.com

                                                   Michael D. Warden
                                                   Michael J. Hunseder
                                                   Justin A. Benson
                                                   Joshua W. Moore
                                                   SIDLEY AUSTIN LLP
                                                   1501 K ST NW
                                                   Washington, DC 20005
                                                   Telephone: (202) 736-8000
                                                   E-mail: mwarden@sidley.com
                                                   E-mail: mhunseder@sidley.com
                                                   E-mail: jbenson@sidley.com
                                                   E-mail: joshua.moore@sidley.com

                                                   *Attorneys for Plaintiff AT&T Corp.*

## CERTIFICATE OF SERVICE

I, Joshua W. Moore, hereby certify that on August 26, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Charles W. Steese, #26924
Douglas N. Marsh, #45964
Martin J. Estevao, #46260
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
Email: csteese@armstrongteasdale.com
Email: dmarsh@armstrongteasdale.com
Email: mestevao@armstrongteasdale.com

*Attorneys for Defendant Level 3 Communications, LLC*

/s/ Joshua W. Moore