**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-MEH

AT&T CORPORATION,

    Plaintiff,

v.

LEVEL 3 COMMUNICATIONS, LLC,

    Defendant.

**LEVEL 3 COMMUNICATIONS, LLC'S REPLY IN SUPPORT OF ITS
MOTION FOR LEAVE TO ADD LEVEL 3 AFFILIATES AS COUNTERCLAIMANTS**

Level 3 Communications, LLC ("Level 3" or "Defendant"), respectfully submits this Reply in support of its Motion for leave to name three of its wholly owned subsidiaries—Broadwing Communications, LLC, Global Crossing Telecommunications, Inc., and WilTel Communications, LLC—as Counterclaimants (ECF No. 110) ("Motion").

The foundation of this lawsuit is a 2015 Settlement Agreement between AT&T on one hand, and Level 3 and its "affiliates" and "subsidiaries" on the other. *See* ECF No. 15-1 (2015 Settlement Agreement). Thus, this lawsuit has always involved Level 3's affiliates: Broadwing, Global Crossing, and WilTel. All Level 3 seeks to do here is, in effect, add their names to the caption. AT&T's Opposition, and its claims of prejudice, therefore ring hollow. Moreover, if claims involving the affiliates are not resolved in this action, the affiliates will simply have to initiate another action. The question is not whether or not the claims should be decided in their entirety, but whether they should be decided here and now, where the Court and parties can benefit from litigation and discovery already conducted on the same issue, or in another forum,

where the Court and parties will have to expend unnecessary effort to duplicate the gains of this litigation. Once the question is correctly understood, the answer is obvious. The Counterclaims should be amended to include claims by Level 3 as well as its affiliates—which is how the parties have understood the scope of the dispute all along.

For these reasons, the motion for leave to amend the counterclaims and include Level 3's affiliates as counterclaimants should be granted.

## I.  BACKGROUND

The dispute between AT&T and Level 3 regarding the propriety of billing end-office switching charges on OTT-VoIP traffic is a long-running one. For the entirety of its duration, moreover, the dispute has not involved solely AT&T Corporation and Level 3 Communications, LLC alone. This is apparent in, among other places, the 2015 Settlement Agreement entered into by AT&T and Level 3 which is at the heart of AT&T's claims against Level 3 as well as Counts I and II of the proposed Amended Counterclaims. *See* Release and Settlement Agreement (ECF No. 15-1). As stated in the Agreement, Level 3 entered into the Agreement not on its own, but "on behalf of itself and as agent for its direct or indirect affiliates, subsidiaries, and other related entities, whether currently or previously existing, that provide any product, service or facility to any AT&T entity that is a party to this Settlement Agreement or was or is the real party-in-interest to any of the Disputes" resolved by that Agreement. *Id.* at 1. AT&T, in turn, entered into its agreement "on behalf of itself and its direct and indirect subsidiaries." *Id.* at 1. And so the scope of the Agreement always extended beyond the two nominal parties in this action.

The parties' recurrent dispute resurfaced following the D.C. Circuit's 2016 order remanding the question of billing end-office switching on OTT-VoIP traffic to the FCC for

2

further deliberation. *See AT&T Corp. v. Fed. Commc'ns Comm'n*, 841 F.3d 1047 (D.C. Cir. 2016). This led to renewed discussions between Level 3 and AT&T to once again try to resolve the dispute. During these discussions, as before, Level 3 did not act solely on behalf of Level 3 Communications, LLC. Rather, it acted under the name of its then parent corporation, CenturyLink, representing and acting on behalf of its affiliates including ***but not limited to*** Level 3 Communications, LLC. *See*, *e.g.*, E. Stocker 12/19/2017 Email to K. Meola, *et al.* (attached hereto as Exhibit 1). Critically, this discussion was not limited to OTT traffic delivered by AT&T to Level 3, but encompassed "OTT traffic across *each* network," including proposals that both "CenturyLink"—as it identified itself—and AT&T to provide credits based on third-party estimates of their respective OTT-VoIP traffic. *Id.* (emphasis added). Thus, all parties have understood all along that the OTT-VoIP dispute embraced claims raised by Level 3, AT&T, and their respective affiliates and subsidiaries.

As Level 3 pressed for discovery supporting its claims, AT&T and Teleport Communications Group, Inc. ("TCG"), which Level 3 is adding as a counterclaim defendant at AT&T's suggestion, claimed that AT&T Corp. does not itself bill access charges for OTT-VoIP traffic and that TCG billed for less than $12,000 of access charges on OTT-VoIP traffic. *See* M. Hunseder 7/12/2019 letter to C. Steese *et al.* (attached hereto as Exhibit 2). Level 3 contends the facts do not support these assertions. As relevant here, however, AT&T's claims that the damages in this case were so minimal led Level 3 to believe AT&T might argue that Level 3 acts solely on behalf of itself in this action, excluding the affiliates on whose behalf Level 3 acted when entering into the 2015 Settlement Agreement. Any such argument would be contrary to the

parties' mutual understanding, dating back to at least the Settlement Agreement, which states that Level 3 acts on behalf of itself as well as similarly situated affiliates and subsidiaries.

Nevertheless, to remove any doubt as to whether these affiliates and subsidiaries are included in Level 3's claims against AT&T, Level 3 has moved to amend its Counterclaims to expressly name some of its affiliates as Counterclaimants. This will ensure the broadest possible resolution to the issues in dispute rather than require the Level 3 subsidiaries to bring their claims in a duplicative action.

## II.  ARGUMENT

### A.  GOOD CAUSE EXISTS FOR AMENDING THE COUNTERCLAIMS.

In its Opposition, AT&T contends that Level 3 must show good cause for its motion for leave to amend its Counterclaims pursuant to Fed. R. Civ. P. 16(b)(4), given that the deadline in this case for amending pleadings or joining parties—October 1, 2018 (*see* ECF No. 55 at 10)—has passed. Opposition at 1. The Tenth Circuit has previously noted "the rough similarity between the 'good cause' standard of Rule 16(b) and our 'undue delay' analysis under Rule 15." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006). "Properly construed, good cause means that the scheduling deadlines cannot be met despite a party's diligent efforts. In other words, the Court may 'modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension.'" *Ross v. Union Pac. R.R. Co.*, No. 18-CV-01187-WYD-KLM, 2019 WL 1615069, at *2 (D. Colo. Apr. 15, 2019) (quoting *Pumpco, Inc. v. Schenker Int'l Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)).

Good cause is present here, as Level 3 could not have brought its motion to add its affiliates as Counterclaimants earlier than it did notwithstanding its diligence. Here, as AT&T

4

notes, the deadline for amending pleadings or joining parties was October 1, 2018. *See* Opposition at 1. Level 3 had filed its first motion for leave to amend its counterclaims to include claims based on AT&T's assessment of end-office switching charges before this deadline, on September 24, 2018. *See* ECF No. 78. In or around February 2019—several months after Level 3 filed its motion for leave to amend—AT&T first raised the suggestion that it was not AT&T, but its affiliate TCG, that assessed the end-office switching charges at issue in Level 3's recently filed counterclaims. *See* ECF No. 98-1. Before Level 3 could act on this suggestion, the parties stayed discovery in this case to allow for settlement negotiations. *See* ECF No. 90. When the parties failed to reach an agreement, discovery resumed in the summer of 2019. Then, in a letter dated July 12, 2019, AT&T claimed that the amount of charges TCG assessed to Level 3 for end-office switching on OTT-VoIP calls was less than $12,000. *See* Exhibit 2. Only then did it become clear that AT&T was attempting to exclude from the scope of the litigation the Level 3 affiliates on whose behalf Level 3 had acted on this issue from the earliest stages of the dispute. Level 3 moved for leave to amend shortly thereafter. Thus, Level 3 was diligent in bringing the claims and including the subsidiaries it seeks to add in its Motion.

AT&T contends the subsidiaries' claims should have been brought earlier because the subsidiaries "possessed (or should have possessed) the same information about the alleged overcharges as Level 3 did." Opposition at 5. But to suggest the claims should have been brought earlier ignores the fact that the affiliates were involved in the lawsuit all along. Moreover, as to all of the counterclaimants—Level 3 included—AT&T possesses detailed information that will strongly assist in the calculation of damages, a fact Level 3 has raised in several (mostly unsuccessful) attempts to induce AT&T and TCG to respond to requests to produce that

5

information. *See* C. Steese 8/22/2019 email to J. Benson (attached hereto as Exhibit 3). In fact, AT&T has taken the astonishing position that Level 3 must first provide "plausible facts that support a claim of overcharges," and *then* "AT&T/TCG will investigate and provide discovery that will allow a factfinder to determine the merit of any overcharge claims." *See* J. Benson 8/26/2019 email to C. Steese (attached hereto as Exhibit 4). This turns the usual course of civil procedure on its head. Level 3 and its affiliates have already provided plausible facts supporting claims of overcharges in their Counterclaims; indeed, AT&T admits that they owe Level 3 at least $12,000. It is now AT&T's duty to provide responsive discovery regarding those claims. AT&T cannot withhold crucial information from Level 3 and then claim Level 3 was not diligent for not acting on the very information AT&T withheld.

Notably, when AT&T *has* given information to Level 3 in response to its discovery requests showing AT&T's perception of the scope of the action, Level 3 diligently acted on it. As noted above, AT&T suggested that TCG, not AT&T, assessed the charges at issue in Level 3's counterclaims in or around February 2019, just before the action was stayed to allow the parties to explore settlement possibilities. Level 3 moved for leave to amend its Counterclaims to include TCG soon after the stay was lifted. And within weeks of learning that AT&T considered charges to these subsidiaries to be beyond the scope of the claims at issue, Level 3 brought the instant Motion to ensure that the scope of the dispute was drawn to include its subsidiaries, as has been the case ever since before the Settlement Agreement was executed. Thus, Level 3 has exercised reasonable diligence in acting on what limited information AT&T has provided in order to pursue its claims regarding AT&T's assessment of end-office charges.

6

The purpose of Level 3's Motion is to make clear what, frankly, the parties have long understood: Level 3 seeks to recover charges by AT&T and its affiliates both to itself and to its subsidiaries. The need for this clarification did not become apparent until well after October 2018. Once it became apparent, Level 3 promptly acted to address any possible confusion as to the scope of the action, filing another Motion for leave to amend its counterclaims to include its subsidiaries as Counterclaimants on August 5, 2019. *See* Motion, ECF No. 109. Level 3 was thus diligent in addressing the need for this Motion, which did not arise before October 2018 and thus could not have been filed before then in spite of Level 3's diligence.

As such, good cause exists for granting the requested Motion for leave to amend.

**B.    JUSTICE REQUIRES LEAVE TO AMEND BE GRANTED.**

AT&T also claims granting Level 3 leave to amend its counterclaims would result in prejudice to AT&T, such that the Court would be justified in refusing leave notwithstanding Rule 15(a)(2)'s mandate to "freely give leave when justice so requires." Opposition at 6. AT&T's claims of prejudice are baseless. In discussions with counsel, the only point AT&T raised as to reasons it might oppose Level 3's Motion was that it was uncertain whether claims by Level 3's subsidiaries would relate back to the date of the original Complaint. *See* Exhibit 3 (responding to issue of the applicable limitations period). That point of contention is entirely absent from AT&T's Opposition brief; nowhere does AT&T suggest as a potential source of prejudice or cause for concern the question of how far back the claims of Level 3's affiliates would reach.

And the objections AT&T *does* raise, which were never mentioned in discussions with counsel, do not pass muster. AT&T complains, for example, of the work remaining to be done

7

before the close of discovery and the purported need to conduct additional discovery for claims brought by three new entities. Opposition at 7. As noted above, however, the entities are not new at all—they have long been understood as being part and parcel of the underlying dispute. And the majority of the facts underlying their claims—how AT&T and TCG interpret their tariffs, the call path of traffic for which they assess end-office switching charges, their policies on billing end-office switching charges for OTT-VoIP calls, etc.—are the same as those underlying Level 3's claims. The focus of the remaining discovery to be undertaken will be to establish what percentage of the end-office charges AT&T and TCG assess are for OTT-VoIP traffic, a question that will require no more or less discovery if asked by Level 3 alone than if in conjunction with its affiliates. Once those percentages are established, the only additional discovery that may be necessary will be to determine the amount of charges to be discounted by that factor, a matter of looking at bills and applying simple math. Thus, the "challenge" of completing this discovery is (a) little different if it includes the subsidiaries' claims rather than if it included only Level 3's claims, and (b) largely occasioned by AT&T's refusal to provide the discovery Level 3 has requested.

Above all else, the claims of prejudice ring hollow because the subsidiaries seek resolution of a legal dispute as to present and ongoing conduct. AT&T and TCG continue to assess end-office switching charges on OTT-VoIP traffic, though these charges are not permitted under their tariffs (and, depending on how the FCC decides the issue, may not be permitted under the Communications Act and applicable regulations). At some point, it will be necessary to determine whether and to what extent AT&T and TCG may assess the charges at issue to Level 3 and its subsidiaries. This determination will require evaluation of historical damages, but it will

8

also set expectations for how the parties must conduct themselves going forward. If done in this proceeding, the parties will benefit from the discovery generated in this case as well as from this Court's decisions of fact and law, including whether AT&T and TCG are entitled to bill switched access charges on OTT-VoIP traffic under their tariffs, their respective volumes of OTT-VoIP traffic, and other questions common to each party's claims. But if those questions are not addressed here and now, and are instead postponed to a later day for decision by another court, the parties will have to expend significant resources reinventing the wheel.

One way or the other, the claims of Level 3 and its subsidiaries are going to be decided. The only question is whether this action will decide them in whole or in part. It is to every party's benefit to explore the broadest possible resolution of the disputes at issue here, and this can most efficiently be done by proceeding with the claims in the same action. Level 3 therefore expects that AT&T and its affiliates would suffer no prejudice at all as a result of adding these Counterclaimants.

### III.     CONCLUSION

For the reasons stated above, Defendant Level 3 Communications, LLC respectfully requests that the Court grant leave to Level 3 to add its affiliates Broadwing Communications, LLC, Global Crossing Telecommunications, Inc., and WilTel Communications, LLC as Counterclaimants as set forth in its proposed Amended Counterclaims (*see* ECF No. 111).

Respectfully submitted this 9th day of September, 2019.

By:     */s/ Douglas N. Marsh*
Douglas N. Marsh, #45964
Charles W. Steese, #26924
Martin J. Estevao, #46260
Armstrong Teasdale LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
csteese@armstrongteasdale.com
dmarsh@armstrongteasdale.com

*Attorneys for Defendant Level 3 Communications, LLC*

## CERTIFICATE OF SERVICE

      I, Douglas N. Marsh, hereby certify that on September 9th, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Rebecca B. DeCook
Andrew T. Flynn
Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1027
becky.decook@moyewhite.com
andrew.flynn@moyewhite.com

Micahel J. Hunseder
Justin A. Benson
Sidley Austin, LLP
1501 K Street, NW
Washington, D.C. 20005
202-736-8000
mhunseder@sidley.com
jbenson@sidley.com

*Attorneys for Plaintiff AT&T Corp.*

                                                */s/ Douglas N. Marsh*
                                                Douglas N. Marsh