**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-RM-MEH

AT&T CORPORATION,

 Plaintiff/Counterclaim Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC,

 Defendant/Counterclaimant,

and

BROADWING COMMUNICATIONS, LLC, GLOBAL CROSSING TELECOMMUNICATIONS, INC., and WILTEL COMMUNICATIONS, LLC

 Counterclaimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.,

 Counterclaim Defendant.

**MOTION TO PRECLUDE EXPERT TESTIMONY
REGARDING CHARGES ON CALLS ORIGINATING
FROM OR TERMINATING TO LEVEL 3 TELEPHONE NUMBERS**

  Defendant/Counterclaimant, Level 3 Communications, LLC and Counterclaimants Broadwing Communications, LLC, Global Crossing Telecommunications, Inc., and WilTel Communications, LLC (collectively, "Level 3"), respectfully move the Court to preclude expert testimony by AT&T's expert Dr. Penn Pfautz questioning the propriety of switched access charges for non-OTT-VoIP calls originating from or terminating to telephone numbers assigned to Level 3. Level 3 seeks to exclude this material because (1) the Settlement Agreement

specifically authorizes these charges, and (2) Dr. Pfautz admitted that he does not have any evidence that Level 3's conduct is inconsistent with the Settlement Agreement or otherwise improper. For that reason, Dr. Pfautz lacks an evidentiary basis to provide opinions about the subject, and as such the Court should bar his opinions on the subject.

Pursuant to D.C. Colo. LCivR 7.1, counsel for Plaintiffs certify that counsel has conferred in good faith with counsel for AT&T via telephone on June 15, 2020 in an effort to resolve this matter and was not successful in these efforts.

## I.     UNDISPUTED FACTS

This case concerns whether Level 3 breached the terms of a Settlement Agreement ("Agreement") between it and AT&T (and vice versa). *See* Settlement Agreement (attached hereto as *Exhibit 1*). The Agreement concerned the circumstances when Level 3 could bill AT&T rate elements for "end office" switched access. One aspect of the Agreement stated that Level 3 could bill end office charges on over-the-top voice over internet protocol ("OTT-VoIP") calls because in February 2015 the FCC had concluded that such charges were appropriate. *See In the Matter of Connect Am. Fund*, 30 FCC Rcd. 1587 ¶¶ 7, 16–18 (2015). The Agreement stated that if a final decision issued that precluded the assessment of such charges going forward, that Level 3 would bill in accordance with the requirements of the new decision. *Exhibit 1* at § 1(a)(iv) ("the Parties agree that any billing and payments for OTT traffic exchanged after such Final Appellate Order becomes final shall be in compliance with terms of that order."). While this provision is central to this lawsuit, it has no impact on this Motion.

Separate and apart from the OTT-VoIP aspect of the Agreement, the parties also agreed that Level 3 could not bill end office charges on calls unless the calls were originated from a

Level 3 telephone number. "For avoidance of doubt", the Agreement made plain that Level 3 could bill end office charges on all non-OTT-VoIP calls associated with a Level 3 telephone number. Specifically:

> (iii) Beginning June 1, 2015, Level 3 shall not bill AT&T for any end office switched access charge elements for domestic OTT traffic that does not originate from a calling party number or does not terminate to a called party number (together with calling party number "CPN") that is assigned by Level 3 and for which Level 3 is designated as the provider in the Number Portability Administration Center ('NPAC') database ("Non-Level 3 CPN OTT Calls"). ***For avoidance of doubt, the Parties agree that Level 3 will continue to bill AT&T full switched access charges on domestic traffic that originates with or terminates to Level 3 assigned CPN.***

*Id*. at § 1(a)(iii) (emphasis added).

Level 3's expert—Andrew McClure—analyzed all calls delivered to AT&T based upon whether or not the call originated from a Level 3 telephone number. *See* Defendant/Counterclaimants' Confidential Responsive Rule 26(a)(2)(C) Disclosure (attached hereto as *Exhibit 2*) at ¶ 10. Despite the clear language of the Agreement, AT&T's expert raised questions about whether or not Level 3 could bill AT&T bill for such calling even though the calls are not are OTT-VoIP calls. Specifically, in his opening report, Dr. Pfautz stated:

> 38. I do, however, have questions about the inclusion in all of the MOU certain customers as involving calls for which Level 3 billed AT&T end office switching charges. As noted above, to the extent Level 3 is merely passing calls from one carrier's end users to a long distance carrier like AT&T, then Level 3 should not ordinarily be billing end office switching charges at all. Column K indicates the total number of MOU passed to AT&T. A number of the customers listed in column D appear to be facilities-based carriers that, based on my experience, would have their own end user customers. For example, customers included in Column D, and for which Level 3 appears to have billed end office switching charges, are Comcast, Cable One, Time Warner Cable, and CSC Holdings, which is associated with Altice USA. These are cable companies, and cable companies often provide facilities-based telephone services to end users.

3

> 39. Likewise, other customers included in Column D, are facilities-based carriers like One Communications, Inteliquent, Cincinnati Bell, Qwest, Blue Ridge Communications, and wireless carriers like Commnet Wireless and TelCel, and Level 3 has billed AT&T end office access charges associated with these carriers. If these cable companies or carriers are originating calls from their own end users over their own facilities, and then forwarding them to Level 3 so that Level 3 can route them onto AT&T, then I question whether Level 3 should be billing AT&T end office charges at all even where the telephone number belongs to Level 3. This would certainly be improper if these carriers or cable companies are themselves billing AT&T end office switching charges on these calls.
>
> 40. To the extent this is occurring, then the total number of end office switching minutes is inflated, resulting in more charges to AT&T. I am not aware of any data or documentation as to these cable companies or carriers, or as to the arrangements under which Level 3 provides the end office functions for some of these carriers' traffic. I am also not aware of material that shows why Level 3 included these carriers and cable companies on the list of customers, and why Level 3 billed AT&T for end office switching charges on calls associated with these carrier-customers. Absent more information, I cannot conclude with certainty that Level 3's end office charges associated with these customers are improper, but it raises questions, and I reserve the right to revise my opinion and report if further information comes to light. I would note that in earlier exchanges with AT&T it was determined that Level 3 was including charges for wireless minutes which are not eligible for end office switched access services, and those minutes were removed by Level 3.

*See* Opening Expert Report of Dr. Pfautz (attached hereto as *Exhibit 3*). In his rebuttal report, Dr. Pfautz reiterated the same thing. *See* Rebuttal Report of Dr. Pfautz (attached hereto as *Exhibit 4*) at ¶¶ 22–24 ("Absent more information, I cannot conclude with certainty that Level 3's end office charges associated with these customers are improper, but it raises questions, and I reserve the right to revise my opinion and report if further information comes to light."); *see also* Deposition of Dr. Pfautz (attached hereto as *Exhibit 5*) at 127:17–128:1; 132:9–12 (Dr. Pfautz recognizes that paragraphs 38–40 of his report do not concern OTT-VoIP calling). Thus, the question presented by Paragraphs 38–40 is whether the Agreement permits Level 3 to bill AT&T

4

end office charges on non-OTT calls with a Level 3 telephone number. Even a cursory review of the Agreement confirms that it does.

In deposition, Dr. Pfautz made several key admissions about these paragraphs of his report. First, Dr. Pfautz admitted that he did not factor any provision of the Agreement into any aspect of his report. *Exhibit 5* (Pfautz Depo.) at 23:15–18 (he just perused the Agreement); 201:19–203:14 (he did not consider Agreement). Second, Dr. Pfautz did not analyze whether or not the subject calling originated from or terminated to a Level 3 telephone number. *Id*. at 129:9–130:2. Third, the reason for billing on Level 3 telephone numbers only is to prevent the potential for double billing. Dr. Pfautz has no evidence that Level 3 and another carrier both billed AT&T end office charges on the same calls. *Id*. at 130:3–5; 132:9-15. Fourth, Dr. Pfautz goes so far as to admit that he has no evidence "something improper is going on here." *Id*. at 129:9–130:2.

Under these circumstances—and particularly, the plain language of the Settlement Agreement permitting Level 3 to assess charges for calls terminating to or originating from a Level 3 telephone number—Dr. Pfautz should not be able to testify about the materials contained in paragraphs 38–40 of his original report or paragraphs 22–24 of his rebuttal report. Simply put, the questions Dr. Pfautz raises concern non-OTT-VoIP calls and thus do not concern "a fact in issue"—and in any event, the Settlement Agreement definitively answers these "questions." These "opinions" thus do not meet the Rule 702 requirements and should be precluded.

**II.     ARGUMENT**

Federal Rule of Evidence 702 permits a qualified expert's testimony if it "will help the trier of fact . . . to determine a fact in issue"; if it is "based on sufficient facts or data;" and "the expert has reliably applied the principles and methods to the facts of the case." The Rule

5

"imposes on a district court a gatekeeper obligation" to ensure that expert testimony "is not only relevant, but also reliable.'" *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)).

"Under the relevance prong of the *Daubert* analysis, the court must ensure that the proposed expert testimony logically advances a material aspect of the case." *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 n.2 (10th Cir. 2005) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) (on remand)). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591. Under the reliability prong, "[t]he evidence must have a valid scientific connection to the disputed facts in the case." *Id.* (citing *Daubert*, 509 U.S. at 591). "This gatekeeper function requires the judge to assess the reasoning and methodology underlying the expert's opinion and determine whether it is scientifically valid and applicable to a particular set of facts." *Goebel v. Denver & Rio Grande Western R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000).

For example, in *FidoTV Channel, Inc. v. Inspirational Network, Inc.*, No. 18-CV-02295-CMA-NYW, 2020 WL 417586 (D. Colo. Jan. 24, 2020), the plaintiff, a cable television channel, brought claims against a media company that was to connect the channel to cable and satellite video distributors and which allegedly breached the parties' contract. *Id.* at *1. Plaintiff proffered an expert to testify on the valuation and structure of the network television industry. However, "the Court d[id] not see any connection between [the expert's] proposed testimony on the structure of the network television industry and Plaintiff's remaining claims" for breach of contract and breach of the implied covenant; in fact, the expert specifically acknowledged his report "does not include damages directly stemming from" these two claims. *Id.* at *2, 4. The

6

Court therefore found that the expert's testimony "would not logically advance any material aspect of the case" and "would not be of consequence in determining the action," and so excluded them. *Id.* at *4.

Here, Dr. Pfautz's opinions as contained in paragraphs 38–40 of his original report and paragraphs 22–24 of his rebuttal report—specifically, his "opinions" questioning "whether Level 3 should be billing AT&T end office charges [on non-OTT-VoIP calls to or from so-called 'carrier-customers'] even though the telephone number belongs to Level 3"—should be excluded because they fail both the relevance and reliability prongs of the *Daubert* test. That is, they are not relevant to any fact in issue and are not based on the facts of this case. This case concerns end-office charges on OTT-VoIP calls. End office switched access charges on non-OTT-VoIP traffic simply are not at issue. Thus, Dr. Pfautz's "opinions"[1] do not "logically advance[ ] a material aspect of the case" (*Norris*, 397 F.3d at 884 n.2) and will not "help the trier of fact . . . to determine a fact in issue." Fed. R. Evid. 702(a). As such, they will be of no consequence in determining this action and fail *Daubert's* relevance test.

They also fail the reliability test because they are not sufficiently based on the facts of this case. And not just because, as Dr. Pfautz admits, he is unaware of "any data or documentation as to these cable companies or carriers, or as the arrangements under which Level 3 provides the end office functions for some of these carriers' traffic," or of "material that shows why Level 3 included these carriers and cable companies on the list of customers, and why Level

---

[1] Indeed, they are scarcely even "opinions"; he does not conclude that the charges are in fact improper, but merely believes the circumstances "raise[ ] questions." *See* Exhibit 3 ¶ 40. The facts of this case, in particular the plain language of the Settlement Agreement, definitively answer these purported "questions."

7

3 billed AT&T for end office switching charges on calls associated with these carrier-customers." *Exhibit 3* ¶ 40. This lack of data would be disqualifying on its own.

But more importantly, the parties' Settlement Agreement made plain that Level 3 ***could*** bill end office charges on all non-OTT-VoIP calls associated with a Level 3 telephone number. Specifically: "[f]or avoidance of doubt, the Parties agree that Level 3 will continue to bill AT&T full switched access charges on domestic traffic that originates with or terminates to Level 3 assigned CPN." *Exhibit 1* § 1(a)(iii).

Even as it is, Dr. Pfautz acknowledges that there is not enough information to substantiate his opinions: "Absent more information," he admits, "I cannot conclude with certainty that Level 3's end office charges associated with these customers are improper." *See Exhibit 3* ¶ 40. Rather, he simply claims the circumstances "raise[ ] questions." *Id.* Such questions are not proper subjects of expert testimony; all the more so where the facts of this case, in particular the plain language of the Settlement Agreement, definitively answer them.

The Settlement Agreement unambiguously permits Level 3 to bill full switched access charges on domestic traffic that originates with or terminates to Level 3 assigned CPN. Dr. Pfautz's opinions questioning whether such charges are proper therefore lacks any basis in the facts of this case, and in any event do not help the trier of fact determine any fact in issue.

These opinions therefore should be excluded.

### III. CONCLUSION

For the reasons stated above, Level 3 respectfully requests that the Court preclude any expert testimony by Dr. Pfautz or any other AT&T expert questioning the propriety of charges for non-OTT-VoIP calls originating from or terminating to telephone numbers assigned to Level

3 for which it is designated as the provider in the Number Portability Adminsitration Center ("NPAC") database. Level 3 also requests that paragraphs 38–40 of Dr. Pfautz's original report and paragraphs 22–24 of his rebuttal report be stricken.

Respectfully submitted this 15th day of June, 2020.

> By: /s/ *Charles W. Steese*
> Charles W. Steese, #26924
> Douglas N. Marsh, #45964
> Armstrong Teasdale LLP
> 4643 South Ulster Street, Suite 800
> Denver, Colorado 80237
> Telephone: (720) 200-0676
> csteese@armstrongteasdale.com
> dmarsh@armstrongteasdale.com
>
> *Attorneys for Defendant/Counterclaimant, Level 3 Communications, LLC and Counterclaimants Broadwing Communications, LLC, Global Crossing Telecommunications, Inc., and WilTel Communications, LLC*

**CERTIFICATE OF SERVICE**

      I, Charles W. Steese, hereby certify that on June 15, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

    Rebecca B. DeCook
    Andrew T. Flynn
    Moye White LLP
    1400 16th Street, 6th Floor
    Denver, CO 80202-1027
    becky.decook@moyewhite.com
    andrew.flynn@moyewhite.com

    Michael D. Warden
    Michael J. Hunseder
    Justin A. Benson
    Joshua W. Moore
    SIDLEY AUSTIN LLP
    1501 K ST NW
    Washington, DC 20005
    Telephone: (202) 736-8000
    mwarden@sidley.com
    mhunseder@sidley.com
    jbenson@sidley.com
    joshua.moore@sidley.com

*Attorneys for Plaintiff AT&T Corp.*

                                        /s/ *Charles W. Steese*
                                        Charles W. Steese