# EXHIBIT 1

Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules
SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION


EXHIBIT
AT+T  21
2-7-19

# RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement ("Settlement Agreement") is made and entered into by and between Level 3 Communications, LLC, on behalf of itself and as agent for its direct or indirect affiliates, subsidiaries, and other related entities, whether currently or previously existing, that provide any product, service or facility to any AT&T entity that is a party to this Settlement Agreement or was or is the real party-in-interest to any of the Disputes (as defined below) (collectively, "Level 3"), and AT&T Corp., on behalf of itself and its direct and indirect subsidiaries (collectively, "AT&T"). (Each of Level 3 and AT&T, a "Party," and collectively, the "Parties.") This Agreement is effective as of the date it is executed by the last of the Parties to sign (the "Effective Date").

WHEREAS, AT&T and Level 3 are providers of telecommunications services, including but not limited to switched exchange access services;

WHEREAS, in the course of Level 3's provision of switched access services to AT&T, AT&T has (i) disputed and not paid certain Level 3 end office switching charges, as set forth in more detail in Exhibit A, on traffic originating from and/or terminating to the local exchange service end-user customers served by providers of over-the-top voice over Internet protocol ("OTT") services and (ii) questioned the applicability of such charges for Non-Level 3 CPN OTT Calls (as defined below in Section 1(a)(iii)) (the "OTT Dispute");

WHEREAS, the question of the applicability of end office switching charges on OTT traffic was addressed by the Federal Communications Commission in a Declaratory Ruling released on February 11, 2015, see *Connect America Fund*, WC Docket No. 10-90, *et al.*, Declaratory Ruling, FCC 15-14 (released Feb. 11, 2015) ("*OTT Declaratory Order*"), and on March 21, 2015, AT&T filed a Petition for Review of the *OTT Declaratory Order* with the United States Court of Appeals for the District of Columbia Circuit (the "OTT Appeal");

WHEREAS, in the course of Level 3's provision of switched access services to AT&T, AT&T has also disputed and not paid certain charges Level 3 has assessed AT&T for tandem facilities, as set forth in more detail in Exhibit A (the "Tandem Dispute");

WHEREAS, in the course of Level 3's provision of switched access services to AT&T, AT&T has disputed certain Level 3 charges, as set forth in Exhibit A, for direct transport facilities between certain AT&T points of presence ("POPs") and Level 3 end offices for which AT&T submitted access service requests ("ASRs") but which AT&T claims Level 3 failed to provision (the "DEOT Billing Dispute", and together with the OTT Dispute and the Tandem Dispute, the "Disputes"); and

AT&T/LEVEL 3 Confidential
This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)

Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules
SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION

WHEREAS, to compromise and to settle the Disputes amicably, and to avoid further uncertainty, expense and delay, the Parties have agreed to the terms and conditions of this Agreement.

NOW THEREFORE, in consideration of foregoing, the mutual promises contained herein, and for other good valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each Party to the other, the Parties each intending to be legally bound hereby, covenant and agree as follows:

1. **Settlement and Adjustments**

    (a) OTT Dispute

    (i) In settlement of the OTT Dispute AT&T agrees to pay Level 3 the following:

    (A) Within fifteen business days of the Effective Date, ███ ████████ ████████████ ████████████ ███████████, which is ████████████████████ of the usage and late payment charges billed by Level 3 for the traffic exchanged by the Parties through March 2015 that is the subject of the OTT Dispute ("OTT Settlement Amount"). AT&T will transmit the OTT Settlement Amount to the Level 3 account designated to receive switched access payments using the Parties' standard process for switched access payments. The Parties recognize that due to invoice cycles and billing requirements, the calculation of usage and late payment charges included in the total amount of charges identified in this Section 1(a)(i)(A) may vary from the actual amount owed once all billing is complete. As a result, the Parties agree that the amount due for April and May 2015 usage may be subject to an adjustment to reflect the appropriate value.

    (B) No later than thirty (30) days after the receipt of Level 3's invoice for traffic exchanged from April 1 through May 31, 2015, ███████████ █ of the amount of the switched access usage charges for traffic that is the subject of the OTT Dispute billed by Level 3, which has historically been approximately ██████████ █ of overall billing for end office switching ("April-May Supplemental Settlement Amount"). AT&T will transmit the April-May Supplemental Settlement Amount to the Level 3 account designated to receive switched access payments using the Parties' standard process for switched access payments.

AT&T/LEVEL 3 Confidential
This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)

CONFIDENTIAL                                                                                       CTL_0001564

Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules
SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION

Within thirty (30) days, following receipt of both the OTT Settlement Amount and the April – May Supplemental Settlement Amount payments, Level 3 shall issue credits to the relevant AT&T billing account numbers ("BANs") as set forth in Exhibit A.

(ii)  For switched access traffic exchanged by the Parties beginning on June 1, 2015, AT&T shall pay Level 3 its applicable switched access tariffed rate for OTT traffic, pursuant to the terms of the *OTT Declaratory Order*. For avoidance of doubt, this Settlement Agreement shall not prohibit AT&T from disputing Level 3's billing for switched access traffic for reasons unrelated to the requirements of the *OTT Declaratory Order*, including but not limited to disputes regarding volumes or applicable rates.

(iii)  Beginning June 1, 2015, Level 3 shall not bill AT&T for any end office switched access charge elements for domestic OTT traffic that does not originate from a calling party number or does not terminate to a called party number (together with calling party number "CPN") that is assigned by Level 3 and for which Level 3 is designated as the provider in the Number Portability Administration Center ('NPAC') database ("Non-Level 3 CPN OTT Calls"). For avoidance of doubt, the Parties agree that Level 3 will continue to bill AT&T full switched access charges on domestic traffic that originates with or terminates to Level 3 assigned CPN.

(iv)  Although the Parties agree that this Settlement Agreement is intended to be a full and final settlement of all disputes and balances associated with OTT traffic prior to June 1, 2015, the Parties also recognize the pendency of the OTT Appeal. Therefore, in the event the *OTT Declaratory Order* is overturned, either in whole or in part, and the applicable order on appeal becomes final and is no longer subject to further appeal or other judicial review ("Final Appellate Order"), Level 3 will refund, within 30 days, ███████████ of the disputed OTT charges beginning with June 2015 traffic through the date on which such Final Appellate Order becomes final and is no longer subject to further appeal or other judicial review; provided, however, that if the *OTT Declaratory Order* is overturned in part, and not in whole, then Level 3 will only be required to refund OTT charges to the extent they should not have been charged in accordance with the Final Appellate Order. Further, the Parties agree that any billing and payments for OTT traffic exchanged after such Final Appellate Order becomes final shall be in compliance with terms of that order.

(b)  Tandem Dispute

(i)  In settlement of the Tandem Dispute, within fifteen business days of the Effective Date AT&T shall pay Level 3 ███████████████████████

AT&T/LEVEL 3 Confidential
This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)

-3-

Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules
SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION

which is ███████ ███████████████ of the Level 3 facility, port and late payment charges associated with the facilities and services that are the subject of the Tandem Dispute through the end of May 2015 incurred ("Tandem Settlement Amount"). AT&T will transmit the Tandem Settlement Amount to the Level 3 account designated to receive switched access payments using the Parties' standard process for switched access payments. Within thirty (30) days following receipt of such payment, Level 3 shall issue credits to the relevant BANs as set forth in Exhibit A.

(ii)     Beginning with June 2015 incurred, and for a period of three (3) years following the Effective Date ("Discount Term"), AT&T shall pay Level 3 ███ ███████████ of Level 3's tariffed rate for facility and port charges for both existing circuits and additional circuits necessary to accommodate the switched access traffic exchanged by the Parties over such facilities. AT&T agrees that it is at all times responsible for submitting access service requests to Level 3 for all circuits, including both DS1 and DS3 circuits, that AT&T wishes to order from Level 3 pursuant to the procedures contained in Level 3's switched access tariffs.

(iii)    Within thirty (30) days of the Effective Date (unless the Parties mutually agree to an extension), the Parties agree to execute a separate agreement for the provision of DS1 and DS3 dedicated circuits by Level 3 to AT&T. Under the terms of such agreement, AT&T shall be allowed to purchase, at locations and pricing to be agreed to by the Parties: (A) POP to local serving office ("LSO") DS3s for connectivity between AT&T POPs and incumbent local exchange carrier LSOs; (B) POP to LSO DS1 circuits; and (C) POP to Prem DS1s and DS3s for connectivity between an AT&T POP and customer premises at a rate to be mutually agreed to by the Parties. The Parties further agree that to obtain the rates included in such agreement, AT&T shall agree to a service term of three (3) years for each circuit.

(c)  DEOT Billing Dispute. Level 3 will credit AT&T in full for all charges associated with ASRs submitted by AT&T for direct transport facilities between certain AT&T POPs and Level 3 end offices that Level 3 failed to provision. Level 3 shall issue the credit associated with such charges, including late payment charges if applicable, to BAN 88250028EO as set forth in Exhibit A, within thirty (30) days following the receipt of the OTT Settlement Amount, the April - May Supplemental Settlement Amount and the Tandem Settlement Amount.

2.  **Mutual Releases**

(a)  Upon the Effective Date, Level 3, on behalf of itself and its agents, subsidiaries, predecessors, affiliates, parent corporations, if any, partners, joint venturers, successors, employees, officers, directors, shareholders, owners, managers,

**AT&T/LEVEL 3 Confidential**
*This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)*

CONFIDENTIAL                                                                                                                                                                        CTL_0001566

representatives, accountants, attorneys, trustees, advisors, executors and assigns (the "Level 3 Releasors"), discharges and releases AT&T and its agents, subsidiaries, heirs, past, present and future officers, agents, shareholders, officers, directors (in their individual and representative capacities), past and present employees, managers, representatives, attorneys, accountants, advisors, owners subsidiaries, affiliates, parent corporations, if any, joint venturers, predecessors and successors in interest and assigns (the "AT&T Releasees"), from any and all rights, claims, damages, actions or liabilities, at law or in equity, known or unknown, matured or unmatured, foreseeable or unforeseeable, which the Level 3 Releasors now have or ever had against the AT&T Releasees arising out of or related to the Disputes.

(b) Upon the Effective Date, AT&T, on behalf of itself and its agents, subsidiaries, predecessors, affiliates, parent corporations, if any, partners, joint venturers, successors, employees, officers, directors, shareholders, owners, managers, representatives, accountants, attorneys, trustees, advisors, executors and assigns (the "AT&T Releasors"), discharges and releases Level 3 and its agents, subsidiaries, heirs, past, present and future officers, agents, shareholders, officers, directors (in their individual and representative capacities), past and present employees, managers, representatives, attorneys, accountants, advisors, owners, affiliates, parent corporations, if any, joint venturers, successors in interest and assigns (the "Level 3 Releasees"), from any and all rights, claims, damages, actions or liabilities, at law or in equity, known or unknown, matured or unmatured, foreseeable or unforeseeable, which the AT&T Releasors now have or ever had against the Level 3 Releasees arising out of or related to the Disputes.

(c) Nothing in Section 2(a) or 2(b) affects the enforceability of this Agreement by either party against the other party.

(d) This Agreement shall constitute and is a general release for the Disputes as defined herein. The Parties each represent and warrant to the other that they have not heretofore assigned or transferred, or purported to assign or transfer, any claim, demand, debt, liability or cause of action herein released. Notwithstanding anything contained in this Agreement to the contrary, the Parties acknowledge and agree, and it is the intent of the Parties that the only matters being resolved by this Agreement are the items explicitly defined as the Disputes herein and that no other claims are encompassed within the release granted in this Agreement.

(e) <u>Waiver of California Civil Code §1542 or any similarly worded statute in another state</u>. With respect to the Releases, each Party further agrees that if, subsequent to the execution of the Releases, the other Party incurs or suffers loss, damage, or injuries that are in any way related to any charges and/or billing of any of the Disputes, but that are unknown and unanticipated at the time this Agreement is signed, the following applies:

**AT&T/LEVEL 3 Confidential**
This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)

-5-

CONFIDENTIAL

CTL_0001567

Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules
SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION

(i) Each Party assumes the above-mentioned risks and understands that the Releases **SHALL APPLY TO ALL UNKNOWN CLAIMS RELATED TO THE DISPUTES OR UNANTICIPATED RESULTS OF THE TRANSACTIONS AND OCURRENCES DESCRIBED ABOVE, AS WELL AS THOSE KNOWN AND ANTICIPATED**, and upon advice of counsel, each Party hereby waives any and all rights under California Civil Code §1542, which section has been duly explained and reads as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor" or any similarly worded statute in another state.

(ii) Each Party represents that it has obtained the advice of legal counsel prior to signing this Agreement, and that each executes this Agreement voluntarily, with full knowledge of its significance, and with the express intention of effecting the legal consequences provided by California Civil Code §1541 or any similarly worded statute in another state, *i.e.*, "the extinguishments of all obligations" arising directly out of or relating to the Disputes.

## 3. Entire Agreement Regarding the Disputes

This Agreement is the entire and complete agreement of the Parties regarding the subject matter hereof. No statements, promises or representations have been made by any Party to any Party, or are relied upon, and no consideration has been or is offered, promised, expected or held out, other than as stated in this Agreement. There are no oral or written collateral agreements. All prior discussions and negotiations regarding the Disputes have been, and are, merged and integrated into, and are superseded by, this Agreement.

## 4. Legal Counsel

Each Party represents that in the execution of this Agreement, and the negotiations leading thereto, it consulted with legal counsel of its own selection.

## 5. Applicable Law

This Agreement shall be construed in accordance with and be governed by the laws of the State of New York, not including its choice of law principles.

## 6. No Admission of Liability

This Agreement is a compromise of disputed claims, and therefore, nothing contained herein shall constitute an adjudication or finding on the merits as to the claims of any Party, nor

**AT&T/LEVEL 3 Confidential**
*This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)*

CONFIDENTIAL                                                                                                       CTL_0001568

Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules
SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION

shall be construed as an admission of fact or liability or acknowledgement of any fact, allegation, or claim that has been or could have been made concerning the Party in question. This Agreement shall not be admissible for any purpose in any proceeding except for a proceeding to interpret or enforce this Agreement. It is further understood that all statements contained herein and all statements and conduct of any Party made in connection with the negotiation of this Agreement shall be inadmissible as evidence under Federal Rule of Evidence 408 and any similar federal or state statute or rule, except that in a proceeding brought to enforce the terms of this Agreement, the Agreement itself shall be admissible only in order to prove the terms hereof. Further, neither Party shall raise any issue related to the Disputes or the resolution memorialized herein, for any purpose, in any regulatory, legislative, court or arbitration proceeding.

7. **Miscellaneous**

   (a) The delay or failure of a Party to exercise any right, power or privilege hereunder or failure to strictly enforce any breach or default shall not constitute a waiver with respect thereto and no waiver of any such right, power, privilege, breach or default on any one occasion shall constitute a waiver thereof on any subsequent occasion unless clear and express notice thereof in writing is provided.

   (b) If any provision of this Agreement is held to be invalid or unenforceable, all other provisions shall nevertheless continue in full force and effect.

   (c) This Agreement has been jointly negotiated and drafted. The language of this Agreement shall be construed as a whole according to its fair meaning and not strictly for or against either of the Parties.

   (d) Each Party represents that it owns all rights to the Disputes and the matters subject to the releases, and that none of the foregoing has been assigned or otherwise transferred to any other entity or individual.

   (e) Each person whose signature appears on this Agreement on behalf of a Party represents that he or she has authority to bind such Party and acknowledges that the other Party is and will be acting in reliance upon said representation in acting upon the terms and conditions hereof.

   (f) Nothing in this Agreement is intended to affect any claim or claims unrelated to the Disputes. Except with respect to the Disputes, Level 3 and AT&T hereby agree that nothing contained in this Agreement constitutes or shall be deemed to constitute a waiver by either Party of any right of recoupment and/or any right of set-off that either Party may have with respect to the other Party for any payments or charges other than those made in relation to the Disputes, and the Parties further agree that any right of recoupment and/or any right of set-off that one Party may have with respect to the other Party or, in the event a petition is filed under Chapter 7 or 11 of

**AT&T/LEVEL 3 Confidential**
*This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)*

-7-

Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules
SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION

Title 11 of the United States Code, the debtor's estate, shall survive and be preserved even after confirmation of any plan of reorganization despite any discharge that might be granted to the debtor in bankruptcy under Section 1141 of the Bankruptcy Code and any effect given to that discharge under Section 524 of the Bankruptcy Code.

(g) No supplement, modification, amendment, waiver or termination of this Agreement shall be binding unless executed in writing by the Parties to be bound thereby. No provisions of this Agreement may be waived unless in writing, signed by the Party to be charged therewith. Waiver of any one provision shall not be deemed to be a waiver of any other provision.

## 8. Confidentiality

This Agreement, and the terms and existence hereof, constitutes the confidential and proprietary information of each Party. The Parties agree to use their best efforts to keep this Agreement, and the terms and existence hereof, confidential. Neither Party shall disclose such information to others, unless required by a Court or regulatory agency of competent jurisdiction, and only then upon prior written notice to the other Party. If asked about the dispute, each Party may respond that the dispute has been resolved to its satisfaction.

## 9. Counterparts

This Agreement may be signed in counterparts, which together will constitute the original Agreement.

## 10. Notices.

Any notices required under this Agreement shall be served upon the Parties via overnight priority mail or certified mail, return receipt requested as follows

To Level 3:

Level 3 Communications, LLC
Attn:
1025 Eldorado Boulevard
Broomfield, CO 80021

With a copy to:

Level 3 Communications, LLC
Attn: Chief Legal Officer
1025 Eldorado Boulevard
Broomfield, CO 80021

**AT&T/LEVEL 3 Confidential**
*This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)*

-8-

CONFIDENTIAL

CTL_0001570

Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules
SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION

To AT&T:

Kim Meola
Assistant Vice President
Domestic Access Management AT&T Corp
1 AT&T Way
4A107
Bedminster, N.J. 07921-2693
km1274@att.com

With a copy to:

AT&T Legal Department
c/o Jerry Hicks
Director
AT&T Services, Inc.
9505 Arboretum Blvd.
Room 9S10
Austin, TX 78759

[SIGNATURE PAGE FOLLOWS]

AT&T/LEVEL 3 Confidential
This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)

CONFIDENTIAL

Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules
SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION

IN WITNESS WHEREOF, the Parties have duly executed and agreed to be bound by this Agreement by the signatures of their authorized representatives below.

| Level 3 Communications, LLC | AT&T Corp. |
|---|---|
| By: _[signature]_ | By: _Kim Meola_ For John Nolan |
| (Authorized Signature) | (Authorized Signature) |
| Mike Redorer | Kim Meola |
| (Typed or Printed Name) | (Typed or Printed Name) |
| SUP Access Mgmt & Planning | AVP |
| (Title) | (Title) |
| 5-22-15 | 5/27/15 |
| (Date) | (Date) |

AT&T/LEVEL 3 Confidential
This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)

-10-

Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules
SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION

## EXHIBIT A

| Outstanding AR Through 4/2015 invoices | |
|---|---|
| BAN | Total |
| 88260288D0 | ■ |
| 48020288D0 | ■ |
| 61140288D0 | ■ |
| 40060288D0 | ■ |
| 48040288D0 | ■ |
| 61150288D0 | ■ |
| 61190288D0 | ■ |
| 48630288D0 | ■ |
| 61200288D0 | ■ |
| 40180288D0 | ■ |
| 82730288D3 | ■ |
| 61210288D0 | ■ |
| 32350288D0 | ■ |
| 88250288D0 | ■ |
| 32310288D0 | ■ |
| 40070288D0 | ■ |
| 32340288D0 | ■ |
| 32850288D0 | ■ |
| 61160288D0 | ■ |
| 61180288D0 | ■ |
| 48030288D0 | ■ |
| 52570288D0 | ■ |
| 22400288D0 | ■ |
| 48000288D0 | ■ |
| 51780288D0 | ■ |
| T72370288D | ■ |
| 48060288D0 | ■ |
| 48010288D0 | ■ |
| 52550288D0 | ■ |
| 49380288D0 | ■ |
| 43690288D0 | ■ |
| 54890288D0 | ■ |
| 88270288D0 | ■ |
| 40170288D0 | ■ |
| 52560288D0 | ■ |
| 52580288D0 | ■ |



**AT&T/LEVEL 3 Confidential**
*This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)*

-11-

CONFIDENTIAL                                                                                      CTL_0001573

Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules
SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION

| Circuit ID | |
|---|---|
| 48050288D0 | |
| 49320288D0 | |
| 32320288D0 | |
| T71310288D | |
| 89240288D0 | |
| T48600288D | |
| 51790288D0 | |
| 54700288D0 | |
| T72340288D | |
| 75580288D0 | |
| 78010288D0 | |
| 77210288D0 | |
| 71630288D0 | |
| T71870288D | |
| T75660288D | |
| T71300288D | |
| 40160288D0 | |
| 42730288D0 | |
| 94150288D0 | |
| 87560288D0 | |
| 99440288D0 | |
| 51800288D0 | |
| 32330288D0 | |
| T71880288D | |
| 40880288D0 | |
| T72360288D | |
| 94500288D0 | |
| 60880288D0 | |
| T49840288D | |
| 94160288D0 | |
| 80540288D0 | |
| 34490288D0 | |
| 94140288D0 | |
| T72320288D | |
| 89250288D0 | |
| 98410288D0 | |
| T71000288D | |
| 40076438D0 | |
| 40930288D0 | |



**AT&T/LEVEL 3 Confidential**
*This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)*

-12-

Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules
SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION



| | |
|---|---|
| 28270288D0 | |
| 37010288D0 | |
| T47490288D | |
| T47470288D | |
| T72350288D | |
| T46360288D | |
| 61170288D0 | |
| 48020292D0 | |
| 94130288D0 | |
| 48026438D0 | |
| T72376438D | |
| 40176438D0 | |
| 88650288D0 | |
| T72360292D | |
| T70980288D | |
| 382D0288D0 | |
| 70590288D0 | |
| 61196438D0 | |
| 52586438D0 | |
| T70970288D | |
| 88640288D0 | |
| T83180288D | |
| 51780377D0 | |
| T17520288D | |
| 48010292D0 | |
| T30740288D | |
| 51780303D0 | |
| 82730303D3 | |
| 54895465D0 | |
| T49360288D | |
| 40070292D0 | $ |
| 48035465D0 | $ |
| 88250292D0 | $ |
| 48040292D0 | $ |
| 82730292D3 | $ |
| 48016438D0 | $ |
| 61160303D0 | $ |
| 29890288D1 | $ |
| 86540288D0 | $ |

**AT&T/LEVEL 3 Confidential**
*This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)*

-13-

Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules
SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION



| |
|---|
| T49840303D |
| 88256438D0 |
| T72350303D |
| T71300732D |
| 87090288D1 |
| T49630288D |
| T71310292D |
| 71635465D0 |
| T48600292D |
| 83910288D1 |
| 86380288D1 |
| T49840292D |
| 73430288D1 |
| 29020288D1 |
| 82735465D3 |
| 25470288D1 |
| 40440288D1 |
| 41610288D1 |
| T49840732D |
| T71316438D |
| 94136438D0 |
| T72370292D |
| T72320292D |
| T75660292D |
| 89750288D0 |
| 94130866D0 |
| 88265465D0 |
| 84890288D1 |
| 28270292D0 |
| 83450288D1 |
| 88590288D1 |
| T71310303D |
| 99446438D0 |
| 32510288D1 |
| 40040288D1 |
| T72370732D |
| 48020303D0 |
| 89250292D0 |
| 25480288D1 |

**AT&T/LEVEL 3 Confidential**
*This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)*

-14-

| |
|---|
| 40930292D0 |
| 60880292D0 |
| 52550303D0 |
| 70590763D0 |
| 82740288D1 |
| T46366438D |
| 87650288D1 |
| T47475465D |
| 61155465D0 |
| 48635465D0 |
| 40060763D0 |
| 25470187D1 |
| 87650292D1 |
| 29660288D1 |
| 88275465D0 |
| 49385465D0 |
| 61190292D0 |
| 40050288D1 |
| 48026110D0 |
| 49820288D1 |
| T49635465D |
| 32510187D1 |
| 29020187D1 |
| 52575792D0 |
| 48000763D0 |
| T46360292D |
| T49845124D |
| T72356438D |
| 86385465D1 |
| T72340732D |
| 51786110D0 |
| T46360303D |
| 61205465D0 |
| 29020292D1 |
| 29020303D1 |
| 40870288D1 |
| T71306348D |
| 86900288D1 |
| 48035124D0 |



AT&T/LEVEL 3 Confidential
This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)

CONFIDENTIAL

CTL_0001577

Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules
SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION



| |
|---|
| 25470303D1 |
| 61145465D0 |
| 61170292D0 |
| 61205500D0 |
| 32510303D1 |
| 41610292D1 |
| T71310377D |
| 88260866D0 |
| 60505438D1 |
| 61145792D0 |
| 82730763D3 |
| 25476438D1 |
| 25470292D1 |
| 29665124D1 |
| 22405792D0 |
| 77215465D0 |
| 61205792D0 |
| 22405722D0 |
| 49325792D0 |
| 61155792D0 |
| T75660303D |
| 29890292D1 |
| 40050292D1 |
| 40075792D0 |
| 88265792D0 |
| 61165792D0 |
| 28270377D0 |
| 88640292D0 |
| 37015465D0 |
| 40060234D0 |
| 40445465D1 |
| T72375438D |
| 29660303D1 |
| 41616438D1 |
| 43696110D0 |
| 54895792D0 |
| 61185792D0 |
| 77210292D0 |
| 88255792D0 |

**AT&T/LEVEL 3 Confidential**
*This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)*

-16-


*Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules*
**SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION**

| ID | Amount |
|---|---|
| 94165792D0 | [REDACTED] |
| 49820292D1 | |
| 60500292D1 | |
| 32320377D0 | |
| 40070763D0 | |
| 51795465D0 | |
| 52550377D0 | |
| 88255438D0 | |
| 98410763D0 | |
| T47490292D | |
| T70980303D | |
| 60500288D1 | |
| T30745465D | |
| **Total OTT Dispute** | |
| 88250288T0 | |
| 61160288T0 | |
| 61180288T0 | |
| 88260288T0 | |
| 61150288T0 | |
| **Total Tandem Dispute** | |
| 88250288E0 | |
| **Total DEOT Billing Dispute** | |
| **Total Outstanding AR** | |

**AT&T/LEVEL 3 Confidential**
*This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)*

-17-

CONFIDENTIAL

CTL_0001579