# EXHIBIT 3

1

1

2    IN THE UNITED STATES DISTRICT COURT
     FOR THE DISTRICT OF COLORADO
3    ---------------------------------------------X
     AT&T CORPORATION,
4
             Plaintiff/Counterclaim Defendant,
5
             v.
6
     LEVEL 3 COMMUNICATIONS, LLC.,
7
             Defendant/Counterclaimant,
8
             and
9
     BROADWING COMMUNICATIONS, LLC, GLOBAL
10    CROSSING TELECOMMUNICATIONS, INC., and
     WILTEL COMMUNICATIONS, LLC.
11
             Counterclaimants,
12
             v.
13
     TELEPORT COMMUNICATIONS GROUP, INC.
14
             Counterclaim Defendant.
15   ---------------------------------------------X
              ***CONFIDENTIAL***
16

17       DEPOSITION OF ANDREW McCLURE

18           Thursday, June 11, 2020

19

20

21

22

23    Reported by:

24    Rebecca Schaumloffel, CLR, RPR, CCR-NJ

25    Job No: 2020-86250

60

1           A. MCCLURE

2     Q.   In the answer that you just gave,        12:35PM

3   the process that you are talking about did      12:35PM

4   you do that in 2017 only?                       12:35PM

5     A.   Correct.                                 12:36PM

6     Q.   So none of the numbers this column       12:36PM

7   E, in Exhibit 63, are the result of inquiries   12:36PM

8   that you made in 2020 or 2019?                  12:36PM

9     A.   I made no inquiries because we           12:36PM

10  couldn't agree upon a standard eyes had         12:36PM

11  process.  The industry hasn't come to a         12:36PM

12  standardized process.  The FCC hasn't given a   12:36PM

13  standardized process and I felt that it was,    12:36PM

14  At would be burdensome on the customers         12:36PM

15  relationship with us and I also felt that if    12:36PM

16  AT&T couldn't agree to a method that I was      12:36PM

17  going to use, then it seemed like extra work    12:36PM

18  that wouldn't necessarily result in a result    12:36PM

19  that we can agree on.                           12:36PM

20        MR. HUNSEDER:  Could the Court            12:36PM

21    Reporter just read that back, please.         12:37PM

22        (Record read.)                            12:37PM

23    Q.   Earlier, Mr. McClure, you                12:37PM

24  testified that when -- that a Level 3 will      12:37PM

25  ask wholesale customers for PIUs for purposes   12:38PM

61

|    | A. MCCLURE | |
|----|---|---|
| 1  |  | |
| 2  | of taxation; is that correct? | 12:38PM |
| 3  | A.  Correct. | 12:38PM |
| 4  | Q.  And is that burdensome on those | 12:38PM |
| 5  | wholesale customers? | 12:38PM |
| 6  | A.  It's required and it's industry | 12:38PM |
| 7  | standard.  So whether a customer comes to | 12:38PM |
| 8  | Level 3 or AT&T, they are going to be | 12:38PM |
| 9  | required to provide those same factors. | 12:38PM |
| 10 | Q.  So that's an industry standard | 12:38PM |
| 11 | with respect to PIU, correct? | 12:38PM |
| 12 | A.  Correct. | 12:38PM |
| 13 | Q.  And did you consider whether that | 12:38PM |
| 14 | was a reasonable requirement for developing | 12:38PM |
| 15 | the OTT percentage in this case and in | 12:38PM |
| 16 | Exhibit 63? | 12:38PM |
| 17 | MR. STEESE:  Objection to form. | 12:38PM |
| 18 | When you say this, can you be more | 12:38PM |
| 19 | precise counselor. I am confused by | 12:38PM |
| 20 | the question. | 12:38PM |
| 21 | Q.  Let me rephrase the question.  Did | 12:38PM |
| 22 | you consider, in creating Exhibit 63, and in | 12:38PM |
| 23 | particular column E, that there was a | 12:39PM |
| 24 | standard industry practice in connection with | 12:39PM |
| 25 | obtaining PIUs from Level 3's wholesale | 12:39PM |

62

|    | A. MCCLURE | |
|----|---|---|
| 1  |  | |
| 2  | customers? | 12:39PM |
| 3  | A.  I considered there is a standard | 12:39PM |
| 4  | process.  Decide also consider there is a no | 12:39PM |
| 5  | standard process for OTT that I am aware of | 12:39PM |
| 6  | with anybody else as well. | 12:39PM |
| 7  | Q.  All right.  And did you -- you | 12:39PM |
| 8  | mentioned that you felt you didn't have an | 12:39PM |
| 9  | agreement with AT&T on the methodology; is | 12:39PM |
| 10 | that correct? | 12:39PM |
| 11 | A.  Correct. | 12:39PM |
| 12 | Q.  In connection with preparing | 12:39PM |
| 13 | Exhibit 63 or Exhibit E, did you have any | 12:39PM |
| 14 | communications with anyone at AT&T about the | 12:39PM |
| 15 | methodology? | 12:39PM |
| 16 | A.  I personally no, did not. | 12:39PM |
| 17 | Q.  Are you aware of any | 12:39PM |
| 18 | communications between Level 3 and AT&T about | 12:40PM |
| 19 | the methodology to create the percent OTT | 12:40PM |
| 20 | represented in column E? | 12:40PM |
| 21 | A.  I am not aware of AT&T providing | 12:40PM |
| 22 | any proposed methodology. | 12:40PM |
| 23 | Q.  And did Level 3 reach out to AT&T | 12:40PM |
| 24 | to your knowledge and propose a methodology | 12:40PM |
| 25 | apart from Exhibit 63? | 12:40PM |

...

63

```
1              A. MCCLURE
2     A.   Not that I am aware of.        12:40PM
3     Q.   Okay.                          12:40PM
4     A.   May I clarify that?            12:40PM
5     Q.   Yes, sure.                     12:40PM
6     A.   So we did attempt to create a  12:40PM
7     questionnaire, a small questionnaire that    12:40PM
8     maybe could be sent to our customers through 12:40PM
9     sales channels, very small questionnaire,    12:40PM
10    maybe two questions, three questions to make 12:41PM
11    it less burdensome. ▇▇▇▇▇▇▇▇   ▇▇▇▇▇▇
```

▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇
▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇
▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇
▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇
▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇
▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇
▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇
▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇
▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇
▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇
▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇
▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇
▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇
▇ ▇▇▇▇                12:41PM

73

1         A. MCCLURE

2         ***AFTERNOON SESSION*** by.        02:29PM

3         MR. HUNSEDER:                       02:29PM

4    Q.   All right, Mr. McClure, before the  02:29PM

5    break we were talking a little bit ███   ███

6    ██    and your conversations with        02:29PM

7    Mr. Stocker. Do you recall that?         02:29PM

8    A.   I do.                               02:29PM

9    Q.   And my question is this, you have   02:29PM

10   in Exhibit 63 the spreadsheet, you have the   02:29PM

11   ████████ OTT percentage as 85%; is that  02:29PM

12   correct?                                 02:29PM

13   A.   Correct.                            02:29PM

14   Q.   And that's, we will get into this   02:29PM

15   a lot more detail in a minute but that's your   02:29PM

16   estimate based on a variety of sources; is   02:29PM

17   that right or information that you       02:29PM

18   considered, correct, that's your estimate?   02:29PM

19   A.   That is not my estimate. That is    02:29PM

20   the estimate coming from ████████.       02:29PM

21   Q.   And how did it come from            02:30PM

22   ████████?                                02:30PM

23   ███ ████████████████████ ████

     ████████████████████ ████

25   Q.   This number was from your -- was    02:30PM

74

| | | |
|---|---|---|
| 1 | A. MCCLURE | |
| 2 | carried forward from your 2017 analysis? | 02:30PM |
| 3 | A.   Correct. | 02:30PM |
| 4 | Q.   Do you recall with it was whether | 02:30PM |
| 5 | what you described earlier, your prior | 02:30PM |
| 6 | deposition click to chat? | 02:30PM |
| 7 | A.   I don't recall if ▇▇▇ was | 02:30PM |
| 8 | click to chat or if ▇▇▇ was provided by | 02:30PM |
| 9 | ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | 02:30PM |
| 10 | ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | 02:30PM |
| 11 | the customer set, his customer set, he did | 02:30PM |
| 12 | have knowledge of certain customers that he | 02:30PM |
| 13 | did give as 100% you know if he knew a | 02:30PM |
| 14 | percentage I gave it. | 02:30PM |
| 15 | Q.   And in 2017, when you put together | 02:30PM |
| 16 | the 2017 analysis, was ▇▇▇ employed | 02:31PM |
| 17 | at Level 3 at that time? | 02:31PM |
| 18 | A.   He was. | 02:31PM |
| 19 | Q.   So what you are saying your | 02:31PM |
| 20 | recollection that he provided a specific | 02:31PM |
| 21 | number for ▇▇▇ while he was employed at | 02:31PM |
| 22 | Level 3? | 02:31PM |
| 23 | A.   That's my recollection. | 02:31PM |
| 24 | MR. STEESE:  Objection. | 02:31PM |
| 25 | Misstates testimony. | 02:31PM |

1          A. MCCLURE

2          [redacted]

                                         02:38PM

6     Q.   Okay.  So let me start with, again      02:38PM

7  the one in row two, what is in my row two and   02:38PM

8  it's called null.                     02:38PM

9        Do you see that?                02:38PM

10    A.   Yes.                          02:38PM

11    Q.   What is null?                  02:38PM

12    A.   So null is, when there is a return     02:39PM

13  of the trunk group owner, null is saying that  02:39PM

14  essentially there is no customer assigned to   02:39PM

15  that trunk group because it's a network       02:39PM

16  entity.  So it's a bridge trunk and if in an   02:39PM

17  I -- it's bringing from one network to        02:39PM

18  another network.  So in this case, it could   02:39PM

19  be Time Warner or global crossing or Wiltel.  02:39PM

20  A number of our legacy networks.  So the      02:39PM

21  majority of those networks are actually TDM,   02:39PM

22  circuit switched traditional five E's, DM S-1  02:39PM

23  hundred, DMS250, DMS 500 and then some of      02:39PM

24  them are using son that is but almost         02:39PM

25  exclusively foyer, on the soft switch side.   02:39PM

86

| | |
|---|---|
| 1 | A. MCCLURE |
| 2   originated from by looking at what company | 02:46PM |
| 3   the telephone number is associated with, | 02:46PM |
| 4   correct? | 02:46PM |
| 5       A.   Exactly. | 02:46PM |
| 6       Q.   And so can you be more precise | 02:46PM |
| 7   about what you did to ascertain that the null | 02:46PM |
| 8   set in row two was 0% over the top what | 02:46PM |
| 9   records did you look at? | 02:46PM |
| 10      A.   So I ran a subsequent sub query to | 02:46PM |
| 11  look at a more detailed level of those trunk | 02:46PM |
| 12  groups so only where the originating trunk | 02:46PM |
| 13  group was null, the trunk group owner, | 02:46PM |
| 14  meaning that customer name, so I took the | 02:46PM |
| 15  subset of the trunk groups that they | 02:46PM |
| 16  originated from and looked into the trunk | 02:46PM |
| 17  groups from top to bottom volumes and I think | 02:46PM |
| 18  after about, I don't know, the first, I can't | 02:47PM |
| 19  recall how many trunk groups, but after I had | 02:47PM |
| 20  gone through the first, however many trunk | 02:47PM |
| 21  groups that were 90% of the volume you really | 02:47PM |
| 22  they were all NNI trunks, bridge trunks just | 02:47PM |
| 23  going it to our other networks which makes | 02:47PM |
| 24  sense which is why they were not in our | 02:47PM |
| 25  inventory system for the Level 3 network. | 02:47PM |

88

| | A. MCCLURE | |
|---|---|---|
| 1 | | |
| 2 | that telephone number get term and and you | 02:48PM |
| 3 | can see they terminate to you know, an end | 02:48PM |
| 4 | office, you know, you can see the end office | 02:48PM |
| 5 | and trunk groups and switches they terminate | 02:48PM |
| 6 | to and it seemed to correlate very quickly | 02:48PM |
| 7 | that, okay, well that's why.  It's coming | 02:48PM |
| 8 | into our network when it's an out band out of | 02:48PM |
| 9 | our tandem because we used the Level 3 | 02:48PM |
| 10 | tandems so it made sense that Level 3 TN had | 02:48PM |
| 11 | been used on a customer on one of our older | 02:49PM |
| 12 | networks and they made this an outbound | 02:49PM |
| 13 | toll-free call and it bridged into our | 02:49PM |
| 14 | network and then traverse today AT&T.  So | 02:49PM |
| 15 | just understanding that that was indeed what | 02:49PM |
| 16 | I was seeing in that the reason why those | 02:49PM |
| 17 | call records originating trunk group is only | 02:49PM |
| 18 | showing the correlation of the red switches | 02:49PM |
| 19 | made sense.  So I didn't investigate any | 02:49PM |
| 20 | further because that seemed to be a pretty | 02:49PM |
| 21 | easy solid straightforward answer. | 02:49PM |
| 22 |     Q.   Did you retain any of the material | 02:49PM |
| 23 | that you reviewed and that you just discussed | 02:49PM |
| 24 | relating to your examination of the null | 02:49PM |
| 25 | telephone calls in row two? | 02:49PM |

89

1          A. MCCLURE

2     A.   No, but it's easily repeatable.      02:49PM

3     Q.   So did you look at it in creating      02:50PM

4   and validating Exhibit 63 but you didn't      02:50PM

5   retain it?                                    02:50PM

6     A.   Correct.                               02:50PM

7     Q.   Okay.  We will have to consider        02:50PM

8   what we want to do with that.  Then what did  02:50PM

9   you do, if anything, to make sure that the    02:50PM

10  person placing the call, the 800 call that    02:50PM

11  you described in your prior answer was using  02:50PM

12  a facilities paid in connection to get to     02:50PM

13  that end office?                              02:50PM

14    A.   So these are primarily enterprise      02:50PM

15  networks so they don't offer mobility.  They  02:50PM

16  don't offer pneumatic /( capability.  So I    02:51PM

17  didn't feel the need to investigate that.     02:51PM

18    Q.   Okay so the answer is you did          02:51PM

19  nothing to investigate that, you -- because   02:51PM

20  of your prior answer, you assumed that it was 02:51PM

21  0% OTT VoIP in the facilities space; is that  02:51PM

22  correct?                                      02:51PM

23         MR. STEESE:  Objection to form.        02:51PM

24      You can answer.                           02:51PM

25    A.   Yes, I made the assumption that        02:51PM

104

A. MCCLURE

2   A.   I do not.                                       03:12PM

3   Q.   Going back, did you review your                 03:12PM

4   2017 -- strike that.  Did you review your            03:12PM

5   prior deposition testimony in this case in           03:12PM

6   preparation for this deposition?                     03:12PM

7   A.   I may have at a high level but I                03:12PM

8   don't recall.                                        03:12PM

9   Q.   Okay.  In general, I think, you --              03:12PM

10  so in 2017, when you did the review of, I            03:12PM

11  think you said the top 90% of minutes.  Is           03:12PM

12  that fair?                                           03:12PM

13  A.   Yes.                                            03:12PM

14  Q.   You have no documentation from                  03:12PM

15  that analysis or investigation, correct?  I          03:12PM

16  mean did you not have at the time and you            03:12PM

17  still do not have; is that correct?                  03:12PM

18  A.   Correct.  Just the click to chats               03:12PM

19  and the calls and there is some notes that I         03:12PM

20  wrote down for certain customers, I believe,         03:13PM

21  eight by eight might have been one and there         03:13PM

22  might have been a couple others.                     03:13PM

23  Q.   And you were -- again, you were                 03:13PM

24  questioned at length on that.  I don't want          03:13PM

25  to redo that.  As far as you can recall, your        03:13PM

188

| | | |
|---|---|---|
| 1 | A. MCCLURE | |
| 2 | that relationship, I actually fully expected | 05:28PM |
| 3 | him to actually give me a number or to give | 05:28PM |
| 4 | me, you know, ask me more questions or -- but | 05:28PM |
| 5 | I was surprised that I didn't get anything. | 05:28PM |
| 6 | Q.   And so but you were talking to a | 05:28PM |
| 7 | person who is familiar with the dispute | 05:28PM |
| 8 | between AT&T and Level 3 and indeed has given | 05:28PM |
| 9 | testimony in this matter, right?  But you | 05:28PM |
| 10 | didn't ask anyone outside of Level 3 or you | 05:28PM |
| 11 | didn't ask any of the other 466 customers on | 05:28PM |
| 12 | Exhibit 63, you asked one person; is that | 05:28PM |
| 13 | correct? | 05:28PM |
| 14 | A.   That is correct. | 05:28PM |
| 15 | Q.   Okay.  Let me go to Page 9, | 05:28PM |
| 16 | paragraph 15. | 05:29PM |
| 17 | A.   Yes. | 05:29PM |
| 18 | Q.   And there you are talking about | 05:29PM |
| 19 | the form 477. | 05:29PM |
| 20 | Do you see that? | 05:29PM |
| 21 | A.   Yes. | 05:29PM |
| 22 | Q.   And you say, you have no idea | 05:29PM |
| 23 | what, if any, providers actually submit form | 05:29PM |
| 24 | 477, correct? | 05:29PM |
| 25 | A.   Correct. | 05:29PM |

199

A. MCCLURE

| | | |
|---|---|---|
| 2 | what's in the spreadsheet in column E, are | 05:46PM |
| 3 | you not asking AT&T to take your word for the | 05:46PM |
| 4 | accuracy of the numbers in column E? | 05:46PM |
| 5 | MR. STEESE: Object to form. | 05:46PM |
| 6 | Incomplete and improper comparison. | 05:46PM |
| 7 | In fact, quite different, incomplete | 05:46PM |
| 8 | hypothetical form. | 05:46PM |
| 9 | MR. HUNSEDER: Are you done with | 05:46PM |
| 10 | that objection or are you going to | 05:46PM |
| 11 | keep going. | 05:46PM |
| 12 | MR. STEESE: I can keep going. | 05:46PM |
| 13 | MR. HUNSEDER: I just want to | 05:46PM |
| 14 | make sure you have any other speaking | 05:46PM |
| 15 | objections you throw them out. | 05:46PM |
| 16 | MR. STEESE: I have been mild as | 05:46PM |
| 17 | compared to objections. | 05:47PM |
| 18 | MR. HUNSEDER: Yes, other than | 05:47PM |
| 19 | in this instance, perhaps: Can I have | 05:47PM |
| 20 | the question read back, please. | 05:47PM |
| 21 | MR. STEESE: Same objections. | 05:47PM |
| 22 | You can answer, Andrew. | 05:47PM |
| 23 | A.   So at the time that this was | 05:47PM |
| 24 | released, the original numbers, the | 05:47PM |
| 25 | percentages in 2017, when they were accurate | 05:47PM |

200

| | | |
|---|---|---|
| 1 | A. MCCLURE | |
| 2 | for the time the time of the research, AT&T | 05:47PM |
| 3 | had the information by customer and could | 05:47PM |
| 4 | have tried to valid date those percentages | 05:47PM |
| 5 | themselves independently. They could have | 05:47PM |
| 6 | reached out and said ▓▓▓, what is your | 05:47PM |
| 7 | OTT, and ▓▓▓ may have given them a | 05:47PM |
| 8 | number and said yes here is our number and | 05:48PM |
| 9 | they would have something that's, they could | 05:48PM |
| 10 | validate. Originally again, I go back to | 05:48PM |
| 11 | what I was asked to do this, there was no | 05:48PM |
| 12 | matter, no documentation /( this was a huge | 05:48PM |
| 13 | ask to grab all of the usage for the time | 05:48PM |
| 14 | period and so I did not do that because I | 05:48PM |
| 15 | wasn't aware of any way to do that and either | 05:48PM |
| 16 | was Ed or anybody else. So I did the best I | 05:48PM |
| 17 | could with what I had at the time. Now, with | 05:48PM |
| 18 | the current data of AT&T would like to go out | 05:48PM |
| 19 | and validate these and go and research the | 05:48PM |
| 20 | customers and if they had something where a | 05:48PM |
| 21 | customer like ▓▓▓ ▓▓▓ | |
| 22 | ▓▓▓ ▓▓▓ could come back and say this is our | 05:48PM |
| 23 | OTT given this information or given the | 05:48PM |
| 24 | understanding of what constitutes OTT, and | 05:48PM |
| 25 | you were given that and I could take that | 05:48PM |

201

| | A. MCCLURE | |
|---|---|---|
| 1 | | |
| 2 | same information and ask them, then I think | 05:48PM |
| 3 | that that's acceptable if the industry agrees | 05:48PM |
| 4 | to the question and the stated purpose of it. | 05:49PM |
| 5 | But, again, it's -- you know, those are | 05:49PM |
| 6 | hypotheticals. | 05:49PM |
| 7 | Q.   Well, let me ask the question this | 05:49PM |
| 8 | way.  Suppose Mr. McClure, you accept your | 05:49PM |
| 9 | dream job and go off to work for whoever in | 05:49PM |
| 10 | whatever country and you are no longer | 05:49PM |
| 11 | available to testify on behalf of Level 3. | 05:49PM |
| 12 | Is there anyone else at Level 3 that can | 05:49PM |
| 13 | replicate what you do to determine the | 05:49PM |
| 14 | percent of OTT in column E? | 05:49PM |
| 15 | A.   Not unless they went back to 2017 | 05:49PM |
| 16 | and contacted the same people, no. | 05:50PM |
| 17 | Q.   A couple quick questions back on | 05:50PM |
| 18 | Exhibit 63 that I want to take carrier of | 05:50PM |
| 19 | before we adjourn.  I want to ask you, this | 05:50PM |
| 20 | is again your spreadsheet.  I just want to | 05:50PM |
| 21 | ask you some housekeeping questions on the | 05:50PM |
| 22 | different tabs. | 05:50PM |
| 23 | A.   Sure. | 05:50PM |
| 24 | Q.   To make sure that I understand. | 05:50PM |
| 25 | A.   Sure. | 05:50PM |

202

```
1              A. MCCLURE
2        Q.   At a high level.  I am not,            05:50PM
3     frankly, since we are at the end of the day    05:50PM
4     here I am not going to ask any -- I don't      05:50PM
5     think I am going 0 to ask any detailed         05:50PM
6     questions about them, but I would just like    05:50PM
7     to make sure I go through and understand       05:50PM
8     them.  So the second tab in Exhibit 63 is      05:50PM
9     called OTT percentage MOM2019 to current?      05:50PM
10       A.   Yes /O*LT percentage, month over       05:50PM
11    month, 2019 to current, yes?                   05:50PM
12       Q.   Is it fair to characterize those       05:50PM
13    as summaries data in the tab in aggregate      05:51PM
14    basis /(?                                      05:51PM
15       A.   I believe so, yes.                     05:51PM
16       Q.   I don't want to mischaracterize.       05:51PM
17    I am just trying to summarize it in a way      05:51PM
18    that everybody can understand?                 05:51PM
19       A.   Yes I believe so.                      05:51PM
20       Q.   Is there any different                 05:51PM
21    characterization of you say at a high level?   05:51PM
22       A.   No.  I think that's a fair.            05:51PM
23       Q.   It shows obviously the OTT             05:51PM
24    percentage changes somewhat from month to      05:51PM
25    month but again, obviously for the entire      05:51PM
```

208

| | | |
|---|---|---|
| 1 | A. MCCLURE | |
| 2 | Q. And then the last, I think the | 05:59PM |
| 3 | last tab is journal 2019 and is this just the | 05:59PM |
| 4 | detailed back up of the -- from the bills? | 05:59PM |
| 5 | A. Correct. | 05:59PM |
| 6 | Q. Okay. Other than these tabs in | 05:59PM |
| 7 | the spreadsheet, did you create any other | 05:59PM |
| 8 | work papers in creating Exhibit 63? | 05:59PM |
| 9 | A. No, I did not. | 05:59PM |
| 10 | MR. HUNSEDER: Let me take a | 05:59PM |
| 11 | short break and then we can hopefully | 05:59PM |
| 12 | adjourn pretty quickly after that. | 05:59PM |
| 13 | (Whereupon, a recess was held.) | 05:59PM |
| 14 | I don't have any further questions | 06:07PM |
| 15 | other than perhaps, response to | 06:07PM |
| 16 | whatever Mr. Steese has. | 06:07PM |
| 17 | A. Thank you. By. | 06:07PM |
| 18 | MR. STEESE: | 06:07PM |
| 19 | Q. Just a few questions here. I want | 06:07PM |
| 20 | to talk to you about the following fact | 06:07PM |
| 21 | pattern. Level 3 end office trunk -- excuse | 06:07PM |
| 22 | me, end office switch connecting to a set | 06:07PM |
| 23 | trunk, going to a customer location that | 06:07PM |
| 24 | houses either a PBX or a voice application | 06:07PM |
| 25 | server. Are you with me in construct? | 06:07PM |