# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-RM-MEH

AT&T CORPORATION,

    Plaintiff/Counterclaim Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC,

    Defendant/Counterclaimant,

and

BROADWING COMMUNICATIONS, LLC, GLOBAL CROSSING TELECOMMUNICATIONS, INC., and WILTEL COMMUNICATIONS, LLC,

    Counterclaimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.,

    Counterclaim Defendant.

**DEFENDANT/COUNTERCLAIMANTS'
SUPPLEMENTAL RULE 26(a)(2)(C) DISCLOSURE**

Defendant/Counterclaimant Level 3 Communications, LLC and Counterclaimants Broadwing Communications, LLC, Global Crossing Telecommunications, Inc., and WilTel Communications, LLC (collectively, "Level 3"), by and through its counsel, hereby submits the following supplemental disclosure pursuant to Federal Rule of Civil Procedure 26(a)(2).

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(A), Level 3 states that it will use Jennifer Torres and Andrew McClure as witnesses at trial to present evidence under Federal Rule of Evidence 702, 703, or 705. As neither witness is retained or specially employed to provide expert testimony in this case, and as their duties as the party's employee do not regularly involve giving expert testimony, neither Ms. Torres nor Mr. McClure are required under Federal Rule of Civil Procedure 26(a)(2)(B) to provide a written report.[1]

Pursuant to Federal Rule of Civil Procedure 26(a)(2)(C), Level 3 states:

Jennifer Torres will testify as an expert regarding Level 3's damages as described in Exhibit 1 to this disclosure. In addition, with regard to the attached spreadsheet, Level 3 clarifies the following to address AT&T's questions regarding Ms. Torres's expected expert testimony:

1. The "███ of Credit" referenced in Column F of the credit and debit Tab comes directly from Section 1(a)(iv) of the 2015 Level 3/AT&T settlement Agreement which states:

    a. "Although the Parties agree that this Settlement Agreement is intended to be a full and final settlement of all disputes and balances associated with OTT traffic prior to June 1, 2015, the Parties also recognize the pendency of the OTT Appeal. Therefore, in the event the OTT Declaratory Order is overturned, either in whole or in part, and the applicable order on appeal becomes final and is no longer subject to further appeal or other judicial review ("Final Appellate Order"), Level 3 will refund, within 30 days, ███

---

[1] Both Ms. Torres and Mr. McClure have also been designated as fact witnesses under Fed. R. Civ. P. 26(a)(1)(A)(i), and as such may be called upon to present fact testimony not subject to Rules of Evidence 702, 703, or 705, irrespective of whether that testimony is disclosed here.

2

**▓▓▓▓▓▓▓ of the disputed OTT charges beginning with June 2015 traffic through the date on which such Final Appellate Order becomes final and is no longer subject to further appeal or other judicial review; provided, however, that if the OTT Declaratory Order is overturned in part, and not in whole, then Level 3 will only be required to refund OTT charges to the extent they should not have been charged in accordance with the Final Appellate Order.** Further, the Parties agree that any billing and payments for OTT traffic exchanged after such Final Appellate Order becomes final shall be in compliance with terms of that order." (emphasis added).

b. While the Agreement used the date of June 1, 2015 or before, the parties reached another agreement where this date was modified to December 31, 2018. As such, data from January 1, 2019 and afterwards was used.

2. AT&T asked where the data from Columns C and D from the AR Summary Tab came from. Level 3 and AT&T had a separate dispute relating to charges Level 3 assessed to AT&T on calls that traversed DEOTs (direct end office transport). As part of the settlement of that dispute, Level 3 issued credits which are identified in Column C. Because Level 3 issued credits, Level 3 adjusted its damages calculation to account for late payment charges ("LPCs") billed by Level 3 associated with the DEOT credits. It did so based on the pro rata calculation. This pro rata credit is shown in Column D.

3

3. AT&T asked for an explanation for where the formula in Column G from the AR Summary Tab came from. It is the total LPCs that Level 3 billed to AT&T, less the LPCs credited for the DEOT dispute.

4. AT&T asked how the number in Column H from the AR Summary Tab was calculated. Column H is the Balance due from Column F less the late payment charges in Column G. This allows one to see damages AT&T caused to Level 3 not associated with LPCs associated with the OTT dispute.

5. AT&T asked where the data from Column I from the AR Summary Tab comes from. It comes directly from the Credit and Debit spreadsheet, which contains the same numbers.

6. AT&T also asked why the calculations in Column J (total damages) from the AR Summary Tab do not subtract amounts in Column G (Total OTT LPC). That is because the Settlement Agreement obligated AT&T to pay Level 3 all end office charges until a final decision issued changing the way Level 3 could bill end office charges on OTT calls. That did not happen until February 2020. In addition, AT&T over-withheld payments far in excess of any conceivable OTT traffic billed by Level 3 to AT&T. Thus OTT LPCs are an element of Level 3's damages.

Andrew McClure will testify as an expert regarding Level 3's percent OTT since January 1, 2019 as described in *Exhibit 2* to the original disclosure. In addition, with regard to the attached spreadsheet, Mr. McClure clarifies the following to address AT&T's questions:

4

1. AT&T asked where Mr. McClure got his "new customer specific percentages." The percentages in the disclosure are the same as those contained in the 2017 spreadsheet (CTL_0014135), with three notable exceptions:
   a. In light of the FCC's December 2019 OTT decision, Level 3's own internal traffic was calculated at 0 percent OTT.
   b. In 2017, Mr. McClure contacted the wholesale customers with the largest volume of MOUs based on 2017 volumes, and using those percentages, Mr. McClure calculated the average OTT percentage for wholesale customers, and applied that OTT average percentage to the remaining wholesale customers (i.e., to those he did not contact). For his expert report in this case, Mr. McClure went through the same exercise, using the same percentages obtained from customers in 2017, and obtained an average OTT percent for wholesale customers of 16% OTT. For his expert report, Mr. McClure applied that average wholesale OTT percentage of 16% for the customers he had not contacted in 2017.
2. For enterprise class customers— ▮▮▮▮▮▮▮▮▮ —Mr. McClure used the percentage of mobility based deployed TNs by Level 3 as a basis for calculating his OTT percentage.
3. AT&T asked how Level 3 calculated the percentage of each customer's TNs that Level 3 owned. Instead of estimating this percentage, as Level 3 did in the past, Mr. McClure used actual CDRs to determine (a) what calls were associated with

5

Level 3 TNs, and (b) the specific wholesale customer associated with each specific Level 3 TN.

Level 3 reserves the right to have its expert witnesses supplement its disclosures.

Respectfully submitted this 22nd day of April, 2020.

By: /s/ Charles W. Steese
Charles W. Steese, #26924
Douglas N. Marsh, #45964
Armstrong Teasdale LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676

csteese@armstrongteasdale.com
dmarsh@armstrongteasdale.com

*Attorneys for Defendant/Counterclaimants*

**CERTIFICATE OF SERVICE**

    I, Charles W. Steese, hereby certify that on April 22, 2020, I electronically served the foregoing document upon the following:

Rebecca B. DeCook
Andrew T. Flynn
Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1027
becky.decook@moyewhite.com
andrew.flynn@moyewhite.com

Michael J. Hunseder
Justin A. Benson
Michael D. Warden
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
E-mail: mhunseder@sidley.com
E-mail: jbenson@sidley.com
Email: mwarden@sidley.com

*Attorneys for Plaintiff AT&T Corp.*

                                                    /s/ Charles W. Steese
                                                  Charles W. Steese