**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-RM

AT&T CORP.,

      *Plaintiff/Counter Defendant,*

v.

LEVEL 3 COMMUNICATIONS, LLC,

      *Defendant/Counterclaimant,*

and

BROADWING COMMUNICATIONS, LLC, GLOBAL CROSSING
TELECOMMUNCATIONS, INC., and WILTEL COMMUNICATIONS, LLC

      *Counterclaimants,*

v.

TELEPORT COMMUNICATIONS GROUP, INC.

      *Counterclaim Defendant*

---

## AT&T's MOTION FOR PARTIAL SUMMARY JUDGMENT

---

      Plaintiff/Counterclaim Defendant AT&T Corp. ("AT&T"), by and through undersigned counsel, respectfully moves this Court to grant, pursuant to Fed. R. Civ. P. 56(a), partial summary judgment against Defendants/Counterclaimant Level 3 Communications, LLC; Broadwing Communications, LLC; Global Crossing Telecommunications, Inc.; and Wiltel Communications, LLC (collectively, "Level 3").

## INTRODUCTION

This case involves the "access" services that local carriers like Level 3 provide to long distance carriers like AT&T when callers place long distance calls using "over-the-top" Voice over Internet Protocol ("OTT VoIP") technology.  For years, Level 3 claimed that it was entitled under rules issued by the Federal Communications Commission ("FCC") to bill AT&T a type of high-priced access service—known as "end office switching"—on these OTT VoIP calls.  AT&T disagreed, claiming that a lower rate applies to the calls, and it disputed and withheld payment of a portion of Level 3's end office charges billed to AT&T.

A divided FCC initially agreed with Level 3, but AT&T appealed the FCC's ruling, and on appeal it was vacated and remanded to the FCC.[1]  AT&T later filed this action alleging, *inter alia*, that Level 3 breached a 2015 Settlement Agreement (the "2015 Agreement") between the parties (ECF No. 1, Count I), and that Level 3 was unlawfully billing AT&T end office switching charges on OTT VoIP calls in violation of the Communications Act (the "Act") and FCC rules (*id.*, Count II); the Complaint also seeks a declaratory judgment as to the issues raised in these first two counts (*id.*, Count III).  Level 3 filed and subsequently amended counterclaims.  ECF No. 124.  The parties reached a partial settlement in 2019 (the "2019 Agreement"), which resolved all payment issues regarding the parties' OTT VoIP billing disputes through December 31, 2018.  The 2019 Agreement did not resolve liability for bills issued by Level 3 after that date.

In December 2019, the FCC acted on remand from *AT&T*, unanimously rejecting Level

---

[1] *AT&T Corp. v. FCC*, 841 F.3d 1047 (D.C. Cir. 2016) ("*AT&T*"), *vacating and remanding*, Declaratory Ruling, *Connect America Fund*, 30 FCC Rcd. 1517 (2015) ("*2015 Declaratory Ruling*").

3's position and holding that "over-the-top VoIP[] partnerships do not perform the functional equivalent of end office switched access" and cannot collect end office charges.[2]  Based on this 2019 FCC Ruling, as well as the parties' Agreements and the undisputed facts, the Court can resolve three critical questions on summary judgment.

*First*, the FCC's *2019 Declaratory Ruling* establishes as a matter of law that Level 3's end office charges on OTT VoIP calls are improper.  AT&T thus seeks partial summary judgment on its breach of contract claim (Count I), because the *2019 Declaratory Ruling* removes any doubt that the terms of the 2015 Agreement prohibit Level 3 from billing end office access charges on OTT VoIP calls.  Because those end office charges now also clearly violate the Act, the FCC's rules, and Level 3's tariff, AT&T also seeks summary judgment on its claims under Count II.[3]

*Second*, Level 3 improperly claims that it need not credit AT&T the full amount of certain end office charges that Level 3 unlawfully billed AT&T, and instead should be allowed to credit AT&T with only ▮▮▮ of those charges based on its view of the 2015 Agreement.  Level 3's argument is predicated on the fiction that there was no "Final Appellate Order" within the meaning of the 2015 Agreement until the FCC resolved the meaning of its VoIP rules on remand.  *See* ECF No. 124, Am. Countercl., ¶ 75.  The 2015 Agreement says no such thing, and the Court has already held that the refund due AT&T has "nothing to do with resolution of the 'OTT-VoIP billing issue'

---

[2] Order on Remand and Declaratory Ruling, *In the Matter of Connect America Fund*, 34 FCC Rcd 12692, n.59 (Dec. 17, 2019) ("*2019 Declaratory Ruling*"); *id.* ¶¶ 4, 14.

[3] In September 2018, the Court dismissed without prejudice Count II (and the portion of Count III seeking a declaratory judgment as to the federal law issues raised in Count II) of AT&T's Complaint on ripeness grounds because the FCC had not yet acted on remand.  ECF Doc. 76, at 19–20, 25.  Because the FCC has now ruled that end office charges cannot be billed on OTT VoIP calls, AT&T has moved to reinstate those claims, by amendment, supplementation, or reconsideration.  *See* ECF No. 147.

by the FCC" and that "[a]ll that must be 'final' is the 'applicable order on appeal.'"  ECF No. 76 at 10.  The Court's conclusion in that regard is even more clear today, as there only ever was *one* order on appeal – the D.C. Circuit's 2016 order.  AT&T thus seeks partial summary judgment on Count I of its Complaint, as well as on Count II of Level 3's counterclaims, that the Agreement requires Level 3 to provide a full credit to AT&T, not the ▮▮ it asserts under its misreading of the 2015 Agreement.

*Finally*, because the 2015 Agreement and the FCC's interpretation of its rules prohibit charging end office switching on OTT VoIP calls, the only remaining issue between AT&T and Level 3 is what percentage of Level 3's calls for which it billed AT&T end office switching are OTT VoIP calls.  In the 2015 Agreement, the parties had agreed that 65 percent of Level 3's traffic consisted of such calls.  After the court of appeals' ruling a year later, Level 3 claimed that the volume of its OTT VoIP calls (and the corresponding amount of its overcharges) mysteriously dropped to approximately ▮▮ .  But the only evidence Level 3 proffers for this claim is the testimony of its employee Andrew McClure, whom Level 3 has sought to designate as an expert.  AT&T has moved to exclude that opinion testimony as unreliable, ECF No. 141; and, if the Court grants that motion, then it should also enter partial summary judgment on this issue as well, as Level 3 has no other evidence to support its claim for recovery based on its dramatically-reduced percentage for OTT VoIP traffic.

## BACKGROUND

**Charges for Traditional and VoIP Calls.**  Long distance calls traditionally traveled from the caller's premises (such as a home or office) over a local carrier's "local loops" to the carrier's "end office," where the call is connected to trunks that carry it either to other switches or directly

4

to the caller's long-distance provider.  The long-distance provider then delivers the call over its network (directly or indirectly) to the local exchange carrier (also known as a "LEC") that serves the called party.  *See AT&T*, 841 F.3d at 1049–50.

LECs charge long distance carriers for performing these functions, known as "switched access services," at FCC-regulated rates.  There are different rates that apply depending on the function performed by the local carrier.  *See, e.g.,* 47 C.F.R. § 51.913(b).  As relevant here, "end office" charges (also known as "local switching") generally apply when the local carrier takes a call from a calling party, carries it over the loop, and switches the call at the carrier's end office. *Id.* § 51.903(d).  "Tandem" charges apply when the local carrier provides an intermediate function, such as passing a call from an end office switch via an intermediate switch to another carrier.  *Id.* § 51.903(i).  Historically, end-office switching has been the most expensive of the various rates. *See AT&T*, 841 F.3d at 1056.[4]

In contrast to calls over the traditional telephone network, VoIP calls are routed in part over the Internet.  VoIP calls, and providers of those calls, can be divided into two types.  A "facilities-based" VoIP provider, such as a cable company like Comcast, provides "last-mile" facilities for high-speed Internet service that connect directly to a home or business.  *See id.* at 1050–51.  Thus, for a long-distance call from a Comcast VoIP customer, the call is placed and

---

[4] "Originating" access charges are billed by the local carrier (or carriers) that transport the calls in whole or in part from the calling party to the appropriate long distance carrier.  "Terminating" access charges are billed by the local carrier (or carriers) that transport the calls in whole or in part from the long distance company to the called party.  As of 2018, the FCC determined that terminating end office switching charges—but not originating—should no longer be billed.  Because Level 3 and AT&T have settled all charges prior to January 1, 2019, the only end office charges at issue in this case consist of originating access charges.

arrives at a Comcast router, which delivers it to the Comcast last-mile facilities that connect to the called party's home or business.  By contrast, an OTT VoIP provider, like Vonage, does not provide this last-mile connection to its subscriber.  Rather, that subscriber must purchase that last-mile connection from a separate Internet service provider, such as Comcast.  Vonage's service thus rides "over the top" of the facilities of the Internet provider, which actually provides the last-mile services that allow the calls to be placed or received by the subscriber.

**Billing End Office Access Charges on OTT VoIP Calls is Unlawful.**  As part of a broad reform of its access charges rules, the FCC in 2011 issued rules pertaining to charges on VoIP calls.[5]  On VoIP calls, some of the functions to originate or complete a call are being performed by a VoIP provider, rather than a local carrier.  Under the new rules, local carriers were nonetheless permitted to file tariffs and recover for functions performed by their VoIP provider-partners—but not for functions performed by neither the LEC nor its VoIP partner.  *See, e.g., Transformation Order*, ¶ 970; 47 C.F.R. § 51.913(b).

Disputes then arose under the rules as to whether local carriers could bill end office charges on OTT VoIP calls, or whether the carriers and their VoIP partners were merely providing an intermediate service more akin to "tandem" switching.  Initially, the FCC issued a *Declaratory Ruling* in 2015 that end office charges could be billed on OTT VoIP calls, but the D.C. Circuit vacated the ruling and remanded.  *AT&T*, 841 F.3d at 1052–56, *vacating 2015 Declaratory Ruling*. Level 3 and other parties sought rehearing, but the D.C. Circuit denied this request on February 6,

---

[5] *In re Connect America Order*, 26 FCC Rcd. 17663, ¶¶ 1, 933-34 (2011) ("*Transformation Order*"), *pets. for review denied sub nom. In re FCC 11-161*, 753 F.3d 1015 (10th Cir. 2014); 47 C.F.R. §§ 51.901, 51.913. The FCC refers to this traffic as "VoIP-PSTN" traffic.  *Transformation* Order, ¶ 940.

2017.  The D.C. Circuit's mandate issued that same day, and the time to seek Supreme Court review expired 90 days later.

In December 2019, the FCC issued its order on remand, in which it made clear that local carriers are *not* allowed to bill end-office switched access charges on OTT VoIP calls.  *2019 Declaratory Ruling*, ¶¶ 4, 14.   The FCC determined that its ruling—which construes its 2011 rules—applies retroactively.  *Id.* ¶ 26.  No party sought judicial review of the FCC's ruling, and it is now final.

**The Dispute Between Level 3 and AT&T.**   Level 3 has long had a business model in which it partners with retail providers of VoIP calling services (which are not subject to regulation as common carriers and which initially could not obtain standard telephone numbers and had to obtain them from a carrier like Level 3).  *See* MSUMF ¶ 1.[6]  After an investigation and discussions with Level 3, AT&T began disputing, and withholding, 65% of Level 3's billed end office access charges, on the grounds that no end office switching service was being provided on these OTT VoIP calls, and thus end office charges could not be collected.  *See id.* ¶ 2.[7]

After the FCC's *2015 Declaratory Ruling* (and AT&T's filing of a petition for review with the D.C. Circuit), AT&T and Level 3 entered into the 2015 Agreement.[8]  *See* MSUMF ¶ 4.  As

---

[6] All "MSUMF" references are to the movant's Separate Statement of Undisputed Material Facts filed in support of its motion for summary judgment.

[7] Level 3's tariff expressly permits the customer to withhold payment for disputed bills (as do the FCC's orders, at least when there is a dispute as to whether service has been provided).  *See id.* ¶ 3; *see also Sprint Commc'ns v. No. Valley*, 26 FCC Rcd 10780, ¶ 14 (2011).

[8] In its prior Order, the Court asked the parties to address the effect of the filed tariff doctrine on the validity of the Agreement in light of the Tenth Circuit's 2007 decision in *Qwest Corp v. AT&T Corp.*, 479 F.3d 1206 (10th Cir. 2007)  ECF No. 76, at 22-25.  For two separate reasons, that doctrine has no effect on the result here.  First, the rates that Level 3 may charge under the 2015 Agreement are *consistent* with its filed tariff rates.  *See infra* Part I.  Second, and in any event, in 2011 the FCC dramatically changed the regulatory

discussed in the Court's prior ruling, *see* ECF Doc. 76, at 6-7, the 2015 Agreement resolved the prior disputes (and AT&T's withholding) through May 31, 2015. The 2015 Agreement also "attempts to set the terms for future payments between the parties." *Id.* AT&T agreed to pay, subject to certain conditions, Level 3's tariffed end office charges on OTT VoIP traffic. *Id.* at 6-7 & n.4. The 2015 Agreement also had an additional provision, which pertained to AT&T's then-pending petition for review of the *2015 Declaratory Ruling*, and which provided that, if AT&T prevailed on its petition for review, Level 3 would pay only a partial refund until the appellate ruling became final. That provision was discussed extensively in the Court's prior order, and is also addressed in greater detail below. Finally, the parties agreed that Level 3's percentage of OTT VoIP traffic was historically 65%. *See* MSUMF ¶ 5.

After the D.C. Circuit's ruling became final, Level 3 declined to pay AT&T any refund, and AT&T again began withholding about 65 percent of Level 3's end office access service charges relating to the OTT VoIP calls. *Id.* ¶ 6. Level 3 claimed that its position on its percentage of OTT VoIP traffic had evolved, and that the percentage was as low as ▬. *Id.* ¶ 7.

---

regime applicable to all intercarrier compensation, including access charges. Previously, there were different types of intercarrier compensation, with varied rates that caused inefficiencies. *See* NPRM, *Connect America Fund*, 26 FCC Rcd 4554, ¶ 502 (2011); *id.* ¶¶ 494-500. The FCC relied in part on authority granted by Congress in 47 U.S.C. § 251(b)(5), and determined that, as a default, carriers ultimately would exchange traffic using a "bill-and-keep" method, where carriers would recover costs primarily from their own end users rather than other carriers. *Transformation Order*, ¶¶ 736-37, 760-78. The FCC provided for a lengthy transition to bill-and-keep, and it is still not complete today. *See id.* ¶¶ 800-01, 817-21. During the transition, the FCC made clear that carriers could use negotiated agreements to set any intercarrier compensation, but could also still rely on tariffs, so long as the tariffs complied with the FCC's pricing rules during the transition. *See id.* ¶ 812; 47 C.F.R. § 51.905(a). The Tenth Circuit upheld the FCC's *Transformation Order* in its entirety. *In re FCC 11-161*, 753 F.3d 1015 (10th Cir. 2014). With intercarrier compensation now governed by Section 251(b)(5), and because the rates in tariffs during the transition are "default" rates that can be modified by agreement, 47 C.F.R. § 51.905(a), it can be appropriate for a local carrier to file a tariff but also negotiate an agreement for intercarrier compensation.

**Procedural Background.**  AT&T then filed this suit.  ECF Doc. 1.  Count I of AT&T's Complaint alleges a breach of the 2015 Agreement, on the grounds that Level 3 was obligated to pay AT&T a partial refund after the D.C. Circuit decision became final (*id.* ¶¶ 62-64), and that the Agreement prohibits Level 3 from billing end office charges on OTT VoIP calls after the vacatur of the *2015 Declaratory Ruling* (*id.* ¶¶ 65-68).  Count II alleges that Level 3's charges violate the Act, the FCC's rules, and Level 3's tariff.  *Id.* ¶¶ 75-85.  Count III seeks declaratory relief as to both the 2015 Agreement and federal law.  *Id.* ¶¶ 87-91.

Level 3 moved to dismiss all of AT&T's claims as unripe, ECF No. 14, and the Magistrate Judge recommended dismissal.  ECF No. 63.  After AT&T objected to that ruling, the Court ruled that the breach of contract claim (Count I) was ripe, and that the federal law claims (Count II) were not yet ripe because the FCC had not resolved the meaning of its 2011 VoIP rules on remand from the D.C. Circuit.  ECF No. 76, at 9-20.  As noted above, the FCC has since done so.

Level 3 filed counterclaims against AT&T, ECF No. 38, and later amended to add an AT&T affiliate, TCG Communications as a counterclaim defendant, and three of its affiliates as counterclaim plaintiffs.  ECF No. 124.  Count I of the Counterclaims alleges AT&T breached the 2015 Agreement, based on Level 3's view that it could bill end office charges on OTT VoIP calls unless and until the FCC, "once and for all," issues a contrary decision that is no longer subject to appellate review.  *Id.* ¶ 65.  Count I also alleges a breach of the 2015 Agreement on the grounds that AT&T – by using the parties' agreed-to 65% factor – somehow significantly overestimated the percentage of Level 3's traffic that is OTT VoIP traffic.  *Id.* ¶ 68.  Count II seeks declaratory relief that the 2015 Agreement entitled Level to keep ▆▆▆▆▆ of the charges on OTT VoIP traffic that was terminated between June 2015 and the date of the order determining that such

9

charges could not be assessed.  *Id.* ¶ 75.  Counts III-VI of the Counterclaims allege that AT&T or its affiliate TCG improperly billed Level 3 for end office charges on OTT VoIP calls.  *Id.* ¶¶ 82-112.  Notably, Count IV alleges, in the alternative, that if the FCC ultimately determines that the FCC's rules on VoIP calls do not permit a LEC to assess end-office switching access charges on OTT VoIP calls, then AT&T/TCG have violated the Act and the FCC's rules.  *Id.* ¶¶ 99, 101.  The parties have engaged in fact and expert discovery on all of these claims, including the production of documents, written discovery, depositions, and expert disclosures and depositions.  Each party also recently filed a *Daubert* motion.  ECF Nos. 139, 141.

During discovery in this litigation, as part of the settlement of many unrelated disputes, Level 3 and AT&T also executed a partial settlement of the OTT VoIP disputes regarding AT&T's claims against Level 3.  *See* MSUMF ¶ 8.  After exchange of valid consideration (*e.g.*, various credits and payments relating to all of the various disputes), the 2019 Settlement Agreement provides that "all claims for amounts due or refunds due for traffic invoiced by Level 3 to AT&T through December 31, 2018 are settled and released with respect to the OTT-VoIP Compensation Dispute."[9]  *Id.* ¶ 9.  The 2019 Agreement further provides that the "OTT-VoIP Compensation Dispute shall continue to be an Ongoing Dispute," which means that the Dispute "will not be resolved for certain traffic and services . . . provided from January 1, 2019 forward."  *Id.* ¶ 10.

## LEGAL STANDARD

"Summary judgment is appropriate if the movant 'shows that there is no genuine dispute

---

[9] The "OTT Compensation Dispute" is defined as "certain outstanding disputes including a dispute regarding AT&T payments to Level 3 for Over-the-Top Voice over Internet Protocol ('OTT-VoIP') traffic" and referenced specific disputed invoices.  The 2019 Agreement does not apply to the counterclaims asserted in this case by Level 3 and its three affiliates.

as to any material fact and the movant is entitled to judgment as a matter of law.'" *Roberts v. Jackson Hole Mountain Resort Corp.*, 884 F.3d 967, 972 (10th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)).  The party moving for summary judgment "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once this burden is met, "the burden then shifts to the nonmovant to 'set forth specific facts' from which a rational trier of fact could find for the nonmovant." *Id.* (quoting Fed. R. Civ. P. 56(e)).

## ARGUMENT

**I.     LEVEL 3 BREACHED THE 2015 AGREEMENT AND VIOLATED FCC RULES AND ITS TARIFF BY IMPROPERLY BILLING AT&T END OFFICE SWITCHING CHARGES ON OTT VOIP CALLS.**

Based on the FCC's *2019 Declaratory Ruling*, it is now indisputable that Level 3 has acted unlawfully in billing AT&T end office switching charges on OTT VoIP calls. *Id.* ¶¶ 4, 14.  Level 3's charges on these calls violate the Communications Act, the FCC's valid implementing rules, Level 3's tariffs, and the 2015 Agreement.

*First*, Level 3's end office charges on OTT VoIP calls violate the Act and the FCC's rules. The FCC's 2011 rules "do[] not permit" a local exchange carrier like Level 3 to "charge for functions not performed by the local exchange carrier itself" or a VoIP partner.  47 C.F.R. § 51.913(b).  The rules also define end office switching service, *id.* § 51.903(d), and allow such charges only where the local carrier or its VoIP partner provide the "functional equivalent" of traditional end office services.  *Id.*

11

The FCC has now authoritatively construed these rules by prohibiting the imposition of end office switching charges on OTT VoIP calls.[10]  On OTT VoIP calls, Level 3 and its VoIP partners rely on third party public internet connections to carry calls from the calling party to AT&T and other long distance companies, *see* MSUMF ¶ 11, and thus end office charges on these calls are prohibited.  *See 2019 Declaratory Ruling* ¶ 4 (LECs may "assess end office switched access charges only if the LEC or its VoIP partner provides a physical connection to the last-mile facilities used to serve an end user").

AT&T and Level 3 disagree as to the percentage of Level 3's overall end office charges that consist of OTT VoIP calls.  *See* ECF No. 141 at 4; *see also infra* Part III.  Level 3 indisputably billed AT&T end office switching charges on *some* OTT calls (which even Level 3 concedes is at least ██ of traffic), and accordingly Level 3 has violated the FCC's rules and the Communications Act.[11]  The Court therefore should enter a partial summary judgment on Count II of AT&T's Complaint, and enter a declaration pursuant to Count III, finding that Level 3's end

---

[10] *2019 Declaratory Ruling*, ¶ 14 (a "VoIP-LEC partnership that interconnects a call with a customer's last-mile facility performs the functional equivalent of end office switching and may charge for that functionality.  By contrast, a VoIP provider, or a VoIP-LEC partnership, that transmits calls to an unaffiliated [internet service provider] for routing over the Internet does not provide the functional equivalent of end office switching, and may not impose an end office switching access charge.").

[11] Both the FCC's VoIP rules and its *2019 Declaratory Ruling* implement Section 201(b) of the Communications Act, which proscribes "unreasonable" rates and practices.  *See* 47 U.S.C. § 201(b); *2019 Declaratory Ruling*, ¶ 27.  Level 3's violation of the FCC's rules thus means that Level 3 also has violated Section 201(b) of the Act.  *See, e.g.*, *Global Crossing v. Metrophones*, 550 U.S. 45, 54 (2007) ("to violate a regulation that lawfully implements § 201(b)'s requirements *is* to violate the statute").

office charges since January 1, 2019 (the date of the releases in the 2019 Agreement) violate the Act and FCC rules.  *See* Compl. ¶¶ 76-85.[12]

*Second*, Level 3 also violated its tariff by billing AT&T end office switching on OTT VoIP calls.  Level 3's tariff permits charges for local switching (or end office) services, *see* MSUMF ¶ 12, but the tariff defines end office access service co-extensively with the FCC's rules: indeed, the definition of "End Office Access Service" in Level 3's tariff is identical to the definition in the FCC's rules.  *Compare id.* ¶ 13 *with* 47 C.F.R. § 51.903(d).  Because the FCC has now interpreted its rules to prohibit end office switching charges on OTT VoIP calls, the identical terms that Level 3 incorporated in its tariff likewise operate to prohibit such charges.[13]  A carrier that bills contrary to the terms of its tariff violates Section 203 of the Communications Act.  47 U.S.C. § 203(c); *see also AT&T Corp. v. YMax Commc'ns*, 26 FCC Rcd 5742, ¶ 12 (2011).  Accordingly, Level 3's charges are barred by its tariff and Section 203 of the Act, as alleged in Count II of AT&T's Complaint.  Compl. ¶¶ 76, 79, 84-85.  The Court should enter judgment for AT&T and declare that Level 3's end office charges on OTT calls since January 1, 2019, violated the terms of its tariff and Section 203.

*Third*, Level 3's end office charges on OTT VoIP calls violate the 2015 Agreement.  That Agreement provides that Level 3 may bill, and AT&T shall pay, Level 3's "*applicable* switched access *tariffed* rate for OTT traffic, pursuant to the terms of the *OTT Declaratory Order*," which

---

[12] As noted above and in AT&T's motion to reinstate Counts II and III, the Court should reinstate these claims through amendment or otherwise.  *See* ECF No. 147.

[13] *See also O1 Commc'ns v. AT&T*, 2017 WL 8294245, *1-2 (N.D. Cal. Dec. 19, 2017) (tariffs barred VoIP charges where the tariffs incorporated the FCC VoIP rules).

13

is the FCC's now-vacated *2015 Declaratory Ruling.*  MSUMF ¶ 14 (emphasis added).  But, for the reasons set forth above, the "applicable" rate for OTT traffic in Level 3's tariff excludes end office switching charges on OTT VoIP calls.  Further, now that the FCC has acted on remand, the final sentence of Section 1(a)(iv) of the Agreement likewise prohibits Level 3's end office charges on OTT VoIP calls.  That sentence provides: "the Parties agree that any billing and payments for OTT traffic exchanged after such Final Appellate Order becomes final shall be in compliance with terms of that order."  The combined effect of D.C. Circuit's 2016 decision, *AT&T*, 841 F.3d at 1052-56, and the FCC's *2019 Declaratory Ruling* (which applies retroactively by its terms) confirms that Level 3's imposition of end office charges on OTT calls is not "in compliance with terms of [those] order[s]."  *See* MSUMF ¶ 15.[14]

Accordingly, because Level 3's end office charges on OTT calls are inconsistent with the 2015 Agreement, the Court should enter partial summary judgment for AT&T on the breach of contract claim in Count I of AT&T's Complaint.  Compl. ¶¶ 59-61, 65-70.[15]  Further, in light of the retroactive nature of the *2019 Declaratory Ruling*, Level 3's tariffed end office charges have never been "applicable" to OTT VoIP calls under the terms of the 2015 Agreement.  Consequently,

---

[14] The Court thus need not address whether such end office charges would be "in compliance with" the D.C. Circuit's decision standing alone, as the *2019 Declaratory Ruling* is fully consistent with that decision.  *Cf.* ECF No. 76, at 21-22.  As one FCC commissioner acknowledged in switching her vote from allowing end office charges in 2015 to denying them in 2019, "the [appellate] court has spoken. . . . I am mindful that the court left us with little room to maneuver."  Concurring Statement Of Commissioner Jessica Rosenworcel, 34 FCC Rcd 12692.

[15] In light of the 2019 Settlement Agreement, Level 3's breach goes back to January 1, 2019.  The 2019 Agreement also moots the need for the Court to resolve the aspects of AT&T's breach of contract claim (¶¶ 62-64) alleging that Level 3 owed a partial refund of end office charges that AT&T paid between June 2015 and May, 2017, the date on which the D.C. Circuit's judgment in *AT&T* became final and no longer subject to judicial review.  *See infra* Part II.

Level 3 has no right under the 2015 Agreement to recover end office charges for OTT calls. The Court should therefore enter partial summary judgment dismissing those aspects of Count I of Level 3's Counterclaims that seek to recover end office charges for OTT VoIP calls. *E.g.*, ECF No. 124, ¶¶ 64-67, 69-71.

## II. LEVEL 3 OWES AT&T A FULL CREDIT FOR THE IMPROPERLY BILLED END OFFICE CHARGES, AND LEVEL 3 CANNOT RECOVER ANY PORTION OF THOSE UNLAWFUL CHARGES.

Based on its view of the 2015 Agreement, Level 3 seeks declaratory relief that it is "entitled to keep . . . ▇▇▇ of the charges on OTT VoIP traffic that was terminated between June 2015 and the date of the order determining that such charges could not be assessed." ECF No. 124, ¶ 75. To implement that theory, Level 3 asserts that it need only credit AT&T ▇ of the end office switching charges that it imposed between January 1, 2019 (the beginning of the period not covered by the parties' 2019 Settlement Agreement) and February 15, 2020 (60 days after the FCC's *2019 Declaratory Ruling* – or the date that that order was no longer subject to judicial review).

Level 3's request for this declaratory relief relies on Section 1(a)(iv) of the 2015 Agreement.[16] As it did in arguing that AT&T's breach of contract claim was unripe, Level 3 argues that the "Final Appellate Order" described in that Section is not the D.C. Circuit's judgment in *AT&T*. *See* ECF No. 124, ¶ 76. Rather, in Level 3's view, Section 1(a)(iv) does not refer to an "Appellate Order" but rather to the point when the "FCC issues a decision that is no longer subject to appellate review that, once and for all, determines that end-office switching charges do not apply to OTT VoIP traffic." *Id.* ¶ 65; *see id.* ¶ 74.

---

[16] *See* MSUMF ¶¶ 16, 18 (providing citation to relevant language in 2015 Agreement).

Ignoring the fact that there is only a single "Final Appellate Order" (or, for that matter, only one appellate order at all) in the long-running dispute between the parties, Level 3 argues that that term somehow means the *2019 Declaratory Ruling*, which became no longer subject to judicial review on February 15, 2020.[17]  Because Section (1)(a)(iv) provides that Level 3 should provide a ████ refund "beginning with June 2015 traffic *through the date on which such Final Appellate Order becomes final* and is no longer subject to further appeal or other judicial review," MSUMF ¶ 16 (emphasis added), Level 3 argues that the terms of the 2015 Agreement allow Level 3 to collect ████, and credit AT&T the other ████ of the unlawful end office charges from June 2015 to February 15, 2020, when the *2019 Declaratory Ruling* became final.  Level 3's theory is meritless, and is foreclosed by both the 2015 Agreement and the fundamental distinction between agency action and an appellate court's review of that action.

***This Court's Prior Ruling***.  The Court has already found that the language of the 2015 Agreement does not support Level 3's argument.  *See* ECF No. 76, at 9-10.  In moving to dismiss the case, Level 3 argued that AT&T's breach of contract claim was unripe because the contract "depend[ed]," as a condition precedent, on the entry of a "final order on the [OTT-VoIP billing] issue" by the FCC.  *See id.* (citing ECF No. 14 at 9).  Although the Court found that other aspects of the 2015 Agreement "ha[ve] problems, it is clear in the following respect.  The refund that plaintiff may or may not be entitled, has nothing to do with resolution of the 'OTT-VoIP billing issue.' by the FCC."  *Id.* at 10.  The Court went on to state that "the conditions that must be satisfied

---

[17] The FCC's *2019 Declaratory Ruling* was issued on December 17, 2019, and pursuant to 47 U.S.C. § 402(a) and 28 U.S.C. §§ 2341-51, any petition for review of the *Ruling* had to be filed within 60 days of that date.  Since no petition was filed, the *Ruling* became final and not subject to judicial review on February 15, 2020.

in order for plaintiff to be entitled to a refund do not involve final resolution of the OTT VoIP billing issue.  All that must be 'final' is the 'applicable order on appeal.'  Put simply, defendant has framed the issue wrong."  *Id.*  The Court then suggested, at several different points in its Opinion, that the "applicable order on appeal" and the "Final Appellate Order" referred to in Section 1(a)(iv) of the 2015 Agreement is the D.C. Circuit's order in *AT&T Corp. v. FCC*, but it stopped short of expressly so holding.[18]  This motion asks this Court to so hold.

**The D.C. Circuit's Order is the Final Appellate Order under the 2015 Agreement**.  The Court's reading of the 2015 Agreement on the motion to dismiss is plainly correct, and Level 3's ongoing argument—that the FCC's *2019 Declaratory Ruling* is the "Final Appellate Order" and the "applicable order on appeal"—is wrong.

Because the contract provisions at issue are unambiguous, the Court can decide their meaning as a matter of law on summary judgment.  *Gomez v. Am. Elec. Power Corp.*, 726 F.2d 649, 651 (10th Cir. 1984); *Postlewaite v. McGraw-Hill*, 411 F.3d 63, 67 (2d Cir. 2005) ("In New York, if a contract is straightforward and unambiguous, its interpretation presents a question of law for the court to be made without resort to extrinsic evidence." (citation and quotation omitted)).[19]

---

[18] *See* Doc. 76 at 12 n.7 (dispute turns on "whether defendant is obligated to refund money to plaintiff and bill plaintiff in accordance with the D.C. Circuit Order"); *id.* at 16 n.13 (reserving the question whether the D.C. Circuit's order "overturned the Declaratory Ruling for purposes of the Settlement Agreement"); *id.* at 21 n.17 (parties should address whether 47 U.S.C. § 40[2](j) answers "whether the D.C. Circuit Order has become final"); *but see id.* at 22 n.19 (referring to the "'terms' of the D.C. [Circuit] Order (assuming the D.C. Circuit Order is the 'Final Appellate Order')").

[19] The "best evidence of what parties to a written agreement intend is what they say in their writing."  *Id.* at 69. New York law is clear: "[w]hen the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving practical interpretation to the language employed and the parties' reasonable expectations." *Franklin Apartment Assocs. v. Westbrook*

17

The Court stated in its prior ruling that the refund period in the 2015 Agreement occurred "when (1) the Declaratory Ruling is overturned in whole or in part, and (2) 'the applicable order on appeal' (a) becomes final and (b) is no longer subject to further appeal or other judicial review." ECF No. 76 at 10.  *All* of these conditions occurred in 2017 in connection with the D.C. Circuit's decision, not in 2019 or 2020 in connection with the FCC's *2019 Declaratory Ruling*.

*First*, the FCC's *2015 Declaratory Ruling* unquestionably was overturned "in whole or in part" by the D.C. Circuit in *AT&T*, which was issued on November 18, 2016.  The court of appeals vacated the *2015 Declaratory Ruling*.  "To 'vacate' . . . means 'to annul; to cancel or rescind; to declare, to make, or to render, void; to defeat; to deprive of force; to make of no authority or validity; to set aside.'"  *Action on Smoking & Health v. CAB*, 713 F.2d 795, 797 (D.C. Cir. 1983) (citation omitted).  The court of appeals plainly "overturned" or disagreed with the decision of the FCC.  *Overturn the Decision,* Merriam Webster, https://www.merriam-webster.com/dictionary/overturn%20the%20decision ("overturn the decision" means "to disagree with a decision made earlier by a lower court").  The first condition is thus met.

*Second*, the "applicable order on appeal" (and the "Final Appellate Order") is the D.C. Circuit's judgment in *AT&T* – the *only* order on appeal.  In the 2015 Agreement, the term "Final Appellate Order" is defined as the order that could "overturn[]" the "*OTT Declaratory Order*" either in whole or in part, once that "applicable order on appeal becomes final and is no longer

---

*Tenants Corp.*, 841 N.Y.S.2d 673, 674 (N.Y. App. Div. 2007). The 2015 Agreement provides that it "shall be construed in accordance with and be governed by the laws of the State of New York."  MSUMF ¶ 17; *see also King v. PA Consulting Grp.*, 485 F.3d 577, 585 (10th Cir. 2007) (explaining that "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied" except in situations not applicable here).

subject to further appeal or other judicial review." MSUMF ¶ 18. In turn, the phrase "*OTT Declaratory Order*" is defined as "a Declaratory Ruling released on February 11, 2015, see *Connect America Fund*, WC Docket No. 10-90, et al. Declaratory Ruling FCC 15-14 (released Feb. 11, 2015)." MSUMF ¶ 19. Accordingly, the "applicable order on appeal," as well as the "Final Appellate Order," is necessarily the D.C. Circuit's judgment in *AT&T*, because that is the only order that could "overturn[] the *OTT Declaratory Order*," either in whole or in part.[20]

The "Final Appellate Order" cannot be the FCC's *2019 Declaratory Ruling*. To begin with, it would be surpassing strange for the term "Final *Appellate* Order" to apply to an order of the FCC. Further, Section 1(a)(iv) was placed in the 2015 Agreement to "recognize the pendency of the OTT Appeal." The Agreement defines the term "OTT Appeal" to be "the Petition for Review of the *OTT Declaratory Order* [filed by AT&T] with the United States Court of Appeals for the District of Columbia Circuit." MSUMF ¶ 20. This provision acknowledging the pendency of AT&T's D.C. Circuit appeal is the provision discussing the "applicable order on appeal" and the "Final Appellate Order."[21] These two terms thus refer to the forthcoming decision on AT&T's pending "OTT appeal," and not any subsequent orders of the FCC.

---

[20] *See* 28 U.S.C. § 2342 ("The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has *exclusive jurisdiction* to enjoin, set aside, suspend (*in whole or in part*), or to determine the validity of— (1) all final orders of the Federal Communication Commission made reviewable by section 402(a) of title 47.") (emphases added).

[21] If the parties had intended to refer to a final order from the FCC, they would have used far different language. Indeed, at an earlier point prior to executing the final version of the 2015 Agreement, the parties had drafted a Term Sheet, which shows that the parties knew how to tie Level 3's obligations to a "final ruling, either from the Court of *Appeals or, if remanded, by the FCC*." *See* MSUMF ¶ 21 (emphasis added). But that language regarding an FCC order on remand was not included in the 2015 Agreement executed by the parties, leaving only the reference to the appellate order.

19

*Third*, the D.C. Circuit's order in *AT&T* long ago became (a) final and (b) no longer subject to further judicial review.  The D.C. Circuit's judgment in *AT&T* became "final" when the court issued its mandate. Indeed, it is black letter law that "'[i]ssuance of the mandate formally marks the end of appellate jurisdiction.'" *In re Sunset Sales, Inc*., 195 F.3d 568, 570 (10th Cir. 1999) (quoting *Johnson v. Bechtel Assocs. Prof'l Corp.*, 801 F.2d 412 (D.C. Cir. 1986)).  That is why the D.C. Circuit has on occasion remanded but withheld its mandate to allow an agency to correct an error before the court's judgment becomes final. *See, e.g., Independent United States Tanker Owners Comm. v. Dole*, 809 F.2d 847, 855 (D.C. Cir. 1987).  It is also why the time prescribed for issuance of the mandate "is frequently the same as, or slightly longer than, the time for petitioning for rehearing," as this timing "allow[s] for the filing of a timely petition for rehearing before the decision becomes final."  R. Stern, Appellate Practice in the United States (2d ed. 1989) at 466 (emphasis added).  Similarly, the D.C. Circuit's judgment in *AT&T* is "no longer subject to further appeal or other judicial review."  That has been true since May, 2017—90 days after the D.C. Circuit denied the petition for rehearing that Level 3 and other intervenors had filed, and the period for seeking Supreme Court review expired.  *See* Sup.Ct. R. 13; 28 U.S.C. § 2350(a).

If there were any reasonable grounds for doubting the finality of an appellate judgment that vacates and remands a matter to an agency—and there are none—they would be eliminated by the judicial review provisions applicable to FCC orders.[22]  Sections 402(h) and (j) state that, when a reviewing court enters "an order reversing the order of the Commission, [the court] *shall remand*

---

[22] *See also* ECF No. 76, at 21 n.17.  AT&T understands the Court's reference to "§ 407(j)" to mean 47 U.S.C. § 402(j).

the case to the Commission," 47 U.S.C. § 402(h) (emphasis added), and that "[t]he court's judgment *shall be final*, subject, however, to review by the Supreme Court of the United States upon writ of certiorari on petition therefor under section 1254 of title 28," *id.* § 402(j) (emphasis added). The statute thus makes clear that remands do not render appellate judgments concerning FCC orders non-final; if they did, the statute would be nonsensical.[23]

Accordingly, for all these reasons, under the 2015 Agreement, the period in which only a partial refund may have been owed began in June, 2015, and ended in May, 2017, when there was no possibility of further judicial review of the D.C. Circuit order in *AT&T*. *See* MSUMF ¶ 16 (partial refund applies "beginning with June 2015 traffic *through the date on which such Final Appellate Order becomes final* and is no longer subject to further appeal or other judicial review") (emphasis added). That period—and the question as to whether AT&T was entitled to any refund—is no longer at issue in this case. In their 2019 Agreement, the parties resolved all disputes on Level 3's end office charges for OTT VoIP calls issued prior to January 1, 2019. *See* MSUMF

---

[23] Section 402 provides two "mutually exclusive" avenues for review of FCC orders: ten specified types of FCC action are subject to review under Section 402(b) (which provides for review in the D.C. Circuit, and which must be brought in 30 days), whereas all other orders are reviewed under 402(a) (which can occur in other courts of appeals and which can be brought in 60 days). 47 U.S.C. §§ 402(a), (b); *see, e.g.*, *Freeman Engineering v. FCC*, 103 F.3d 169, 176-77 (D.C. Cir. 1997). AT&T has found no direct authority on the issue, but it is possible that Sections 402(h)-(j) apply only to appeals under Section 402(b). AT&T's appeal of the *2015 Declaratory Ruling* was brought under 402(a). Nevertheless, the procedures under 402(a) (which incorporate the Hobbs Act, 28 U.S.C. §§ 2341-2351) are analogous to those in 402(h)-(j). *See, e.g.*, 28 U.S.C. §§ 2342, 2350(a). In short, under either 402(a) or 402(b) appeals, the judgment of a court of appeals—including judgments that remand to agencies—is considered "final" when the mandate issues, and are no longer subject to judicial review if no petition for certiorari is sought within 90 days.

¶ 9.[24]  For the period now in dispute in this case, *i.e.* January 1, 2019 to the present, Level 3 owes AT&T a full refund of all end office charges.

Accordingly, the Court should enter summary judgment in favor of AT&T on Count II of Level 3's Counterclaims.  ECF No. 124, ¶¶ 72-80.[25]  In addition, by billing and then seeking to recover half of the end office charges it billed on OTT VoIP traffic, Level 3 is in breach of the 2015 Agreement.  Accordingly, AT&T is also entitled to partial summary judgment on its breach of contract claim in Count I that it is entitled to a full credit of end office charges, which are not "applicable" to any OTT VoIP calls.  ECF No. 1, ¶¶ 65-70.

**III.    BECAUSE THE TESTIMONY OF LEVEL 3'S EMPLOYEE-EXPERT IS INADMISSIBLE AND LEVEL 3 HAS NO ADMISSIBLE EVIDENCE TO SUPPORT ITS CLAIM, THE COURT SHOULD ENTER SUMMARY JUDGMENT FOR AT&T AS TO LEVEL 3'S CLAIM FOR RECOVERY.**

As discussed above, in the 2015 Agreement, the parties agreed that 65 percent of its end office charges were historically for OTT VoIP calls.  MSUMF ¶ 5; *see also id.* ¶ 22.  Level 3 now

---

[24] Although the Court had questions about how the terms of Section 1(a)(iv) should otherwise be applied to determine whether AT&T was entitled to a partial refund or whether the Agreement prohibited Level 3's end office charges after the D.C. Circuit decision in *AT&T*, *see* ECF No. 76, at 10, 21-22, those questions have now largely been mooted by the parties' 2019 Settlement Agreement.  In light of that Agreement, the Court need not decide the refund question at all.  And, Level 3's ongoing obligation to refrain from billing end office charges on OTT calls arises primarily from the FCC's rules, the *2019 Declaratory Order*, Level 3's tariff, with the 2015 Agreement prohibiting those charges largely because the Agreement incorporates the terms of Level 3's tariff.  *See supra* Section I.  The only issue now before the Court is the one that it already answered (or all but answered) – Section 1(a)(iv) relates to AT&T's D.C. Circuit appeal, and has "nothing to do" with how the FCC ultimately could interpret its 2011 rules.  ECF No. 76, at 9-10.

[25] At a minimum, the declaratory judgment sought by Level 3 is plainly untenable in light of the issuance of the *2019 Declaratory Ruling*.  *See* ECF No. 124, ¶ 80 ("Level 3 is entitled to judgment under 28 U.S.C. § 2201(a) declaring that no 'final' order as contemplated in the agreement has yet been issued, that no duty on the part of Level 3 to refund all or any part of the end-office switching access charges assessed to AT&T for OTT VoIP calls has yet arisen, and that AT&T is obligated by the agreement of the parties to continue to pay end-office switching access charges to Level 3 at the full tariffed rate.").

asserts that that percentage has dropped dramatically, and that only ███ of Level 3's end office charges since January 1, 2019 relate to OTT VoIP calls.  Level 3's only "evidence" of that percentage is the deeply flawed, and wholly unreliable, assessment conducted by its employee Andrew McClure.

AT&T has separately moved to exclude Mr. McClure's testimony under *Daubert*, ECF Doc. No. 141, and the Court should grant AT&T's motion.  In its Motion, AT&T explained that while Mr. McClure purported to measure Level 3's percentage of OTT VoIP calls by reaching out to customers, he contacted just one customer about the period in dispute, and otherwise relied on stale contacts.  *Id.* at 12-13.  The prior contacts he made were with unknown individuals, and he conceded that he did not know if they were providing reliable information.  *Id.* 8, 13-14.  Moreover, Mr. McClure retained no documentation, contrary to industry practice and Level 3's own tariff as to a similar traffic factor.  *Id.* at 9, 14-17.

Other than Mr. McClure's unverifiable, *ipse dixit* view as to Level 3's percentage of OTT VoIP calls, there is no other evidence of that percentage for the relevant time period.  *See id.* at 12-15; *see also* MSUMF ¶ 23.  Level 3—as the carrier providing the access services and seeking to collect for them, and the party that has access to data on the traffic at issue (including traffic handled by its VoIP partners)—should bear the burden of proof to substantiate the accuracy of its billed charges.  *See, e.g.*, *Annual 1987 Access Tariff Filings*, 2 FCC Rcd. 280, 299 (1986) (under the FCC's access charge system, local carriers cannot "unreasonably shift the burden of proof to the [long distance carriers] and customers," and "it is incumbent upon the LECs to charge properly and therefore to demonstrate to their customers that these charges are accurate"); *Tele-Valuation*, 73 F.C.C.2d 450, ¶ 8 (1979) (given the complexity of the access charge system and the

"difficult[y]" of "calculat[ing] correct charges," the "primary responsibility for correct billings remains with the carriers").[26]

Although Level 3 alleges that AT&T's withholding of 65% of the billed end office charges "significantly overestimates the percentage of Level 3's traffic that is OTT VoIP traffic," ECF No. 124, ¶ 68, Level 3 "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Accordingly, if the Court grants AT&T's *Daubert* motion, then it should also enter partial summary judgment in favor of AT&T on Count I of Level 3's Counterclaim, which alleges AT&T breached the 2015 Agreement and seeks to recover end office charges that it claims AT&T withheld on either OTT VoIP calls or traditional calls. ECF No. 124, ¶¶ 60-71.

## CONCLUSION

For the foregoing reasons, the Court should grant AT&T's motion for partial summary judgment. On AT&T's breach of contract claim (Count I), it should enter judgment finding Level 3 in breach of the 2015 Agreement, as of January 1, 2019, by (i) billing end office charges on OTT VoIP calls and (ii) refusing to credit AT&T for the full amount of end office charges Level 3 billed on OTT VoIP calls. The Court should reinstate AT&T's statutory claims (Count II), and it should

---

[26] *See also, e.g.*, *AT&T Corp. v. Alpine*, 27 FCC Rcd. 16606, n.79 (2012) ("As the carrier attempting to enforce the terms of its tariff in the underlying litigation, [the local carrier], not AT&T, bears the burden of proving that it complied with its tariff"); *Copley Press v. FCC*, 444 F.2d 984, 988 (D.C. Cir. 1971) ("To determine who has the burden, it is helpful to analyze what must be proved;" newswire services were "the only ones who can provide information on the[] matters so crucial to their claim. This being true, they must necessarily bear the burden of ultimate persuasion"); *cf. Atchison, T. & S. F. Ry. Co. v. U.S.*, 218 F.Supp. 359, 374 (N.D. Ill. 1963) (Under the Interstate Commerce Act, the predecessor to the Communications Act, "where an aspect of transportation conditions is one as to which the railroads have peculiar knowledge, the railroads properly should bear the burden of proof with regard to that issue").

24

enter judgment finding Level 3 liable under the Act, the FCC's rules, and Level 3's tariff for billing end office charges on OTT VoIP calls.

On Level 3's breach of contract counterclaim (Count I), the Court should enter judgment in favor of AT&T that AT&T has not breached the 2015 Agreement because it has no obligation to pay end office charges on OTT VoIP calls.  The Court should enter summary judgment for AT&T on Count II of Level 3's counterclaims, and dismiss that Count in its entirety. Respectfully submitted this 29th day of June, 2020.

By: /s/ Justin A. Benson

Rebecca B. DeCook
Andrew T. Flynn
Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1027
becky.decook@moyewhite.com
andrew.flynn@moyewhite.com

Michael J. Hunseder
Michael D. Warden
Justin A. Benson
Joshua W. Moore
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
mhunseder@sidley.com
mwarden@sidley.com
jbenson@sidley.com
joshua.moore@sidley.com

*Attorneys for Plaintiff AT&T Corp.
and Counterclaim Defendant Teleport
Communications Group*

## CERTIFICATE OF SERVICE

I, Justin A. Benson, hereby certify that on June 29, 2020, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system which will send notification of such

filing to the following:

Charles W. Steese, #26924
Douglas N. Marsh, #45964
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
Email: csteese@armstrongteasdale.com
Email: dmarsh@armstrongteasdale.com

*Attorneys for Defendant Level 3
Communications, LLC*

/s/ Justin A. Benson
Justin A. Benson
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
E-mail: jbenson@sidley.com

*Attorney for Plaintiff AT&T Corp. and
Counterclaim Defendant Teleport
Communications Group*

26