**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-RM

AT&T CORP.,

       *Plaintiff/Counter Defendant,*

v.

LEVEL 3 COMMUNICATIONS, LLC,

       *Defendant/Counterclaimant,*

and

BROADWING COMMUNICATIONS, LLC, GLOBAL CROSSING
TELECOMMUNCATIONS, INC., and WILTEL COMMUNICATIONS, LLC

       *Counterclaimants,*

v.

TELEPORT COMMUNICATIONS GROUP, INC.

       *Counterclaim Defendant*

---

**AT&T's SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff/Counterclaim Defendant AT&T Corp. ("AT&T"), by and through undersigned counsel, respectfully submits this Separate Statement of Undisputed Material Facts in support of its motion for partial summary judgment against Defendants/Counterclaimants Level 3 Communications, LLC; Broadwing Communications, LLC; Global Crossing Telecommunications, Inc.; and Wiltel Communications, LLC ("Level 3").

|  | **Moving Party's Statement of Undisputed Material Facts ("MSUMF") and Supporting Evidence** | **Opposing Party's Response and Additional Facts and Supporting Evidence ("OSUMF")** | **Moving Party's Reply and Supporting Evidence ("RSUMF")** |
|---|---|---|---|
| 1 | Level 3's business model has long included partnering with retail providers of VoIP calling services. Ex. 1, Aug. 29, 2019 Deposition of A. McClure at 53:24 – 54:3. | | |
| 2 | AT&T disputed and withheld 65% of Level 3's billed end office access charges.  *See* Ex. 2, Feb. 8, 2019 Deposition of A. Burgess at 133:21-134:2. | | |
| 3 | Level 3's tariff permits customers to withhold disputed bills.  *See* Ex. 3, Level 3's Tariff at § 4.9(1). | | |
| 4 | AT&T and Level 3 entered into a Release and Settlement Agreement on April 27, 2015 (the "2015 Agreement").  *See* Ex. 4, ECF No. 15-1 (A true and correct copy of the 2015 Agreement was previously filed with the Court). | | |
| 5 | The Parties agreed in the 2015 Agreement that Level 3's percentage of OTT VoIP traffic was historically 65%.  *See* Ex. 4 at § 1(a)(i)(B). | | |
| 6 | After Level 3 declined to provide AT&T's refund, AT&T began withholding approximately 65% of Level 3's end office access service | | |

|  |  |  |  |
|---|---|---|---|
|  | charges relating to OTT-VoIP calls. Ex. 2 at 134:3-9. |  |  |
| 7 | Level 3 claimed that its OTT-VoIP percentage had dropped to ▮ of its total VoIP traffic. *See* Ex. 5, Nov. 18, 2019 Deposition of A. McClure at 91:5-12. |  |  |
| 8 | AT&T and Level 3 entered into a Confidential Release and Settlement Agreement on June 27, 2019 (the "2019 Agreement"). *See* Ex. 6 (A true and correct copy of relevant excerpts from the 2019 Agreement). |  |  |
| 9 | The 2019 Agreement provides that "all claims for amounts due or refunds due for traffic invoiced by Level 3 to AT&T through December 31, 2018 are settled and released with respect to the OTT-VoIP Compensation Dispute." *See* Ex. 6 at pp. 7-8. |  |  |
| 10 | The 2019 Agreement provides that the "OTT-VoIP Compensation Dispute shall continue to be an Ongoing Dispute," which means that the Dispute "will not be resolved for certain traffic and services . . . provided from January 1, 2019 forward." *See* Ex. 6 at pp. 4, 8. |  |  |
| 11 | Level 3 and its VoIP partners rely on third party public internet connections to carry calls from the calling party to AT&T and other long distance companies. *See* Ex. 1 at 65:18-24 |  |  |

| 12 | Level 3's tariff permits charges for local switching (or end office) services in certain circumstances. *See* Ex. 3 at §§ 15.1.1.1 - 15.1.1.2 | | |
|----|----------------------------------------------------------------------------------------------------------------------------------------------|---|---|
| 13 | Level 3's tariff defines end office access service co-extensively with the FCC's rules. *See* Ex. 3 at § 1, First Revised page 6.1. | | |
| 14 | The 2015 Agreement provides that Level 3 may bill, and AT&T shall pay, Level's "applicable switched access tariffed rate for OTT traffic, pursuant to the terms of the OTT Declaratory Order." Ex. 4 at § 1(a)(ii). | | |
| 15 | The 2015 Agreement provides that "any billing and payments for OTT traffic exchanged after such Final Appellate order becomes final shall be in compliance with terms of that order." Ex. 4 at § 1(a)(iv). | | |
| 16 | The 2015 Agreement provides that Level 3 should provide a ███ refund "beginning with June 2015 traffic through the date on which such Final Appellate Order becomes final and is no longer subject to further appeal or other judicial review." Ex. 4 at § 1(a)(iv). | | |
| 17 | The 2015 Agreement provides that it shall be construed in accordance with and governed by the laws of the State of New York. Ex. 4 at § 5. | | |

| | | | |
|---|---|---|---|
| 18 | The 2015 Agreement defines the term "Final Appellate Order" to mean the order that could "overturn[]" the "*OTT Declaratory Order*" either in whole or in part, once that "applicable order on appeal becomes final and is no longer subject to further appeal or other judicial review." Ex. 4 at § 1(a)(iv). | | |
| 19 | The 2015 Agreement defines the term "OTT Declaratory Order" as "a Declaratory Ruling released on February 11, 2015, see Connect America Fund, WC Docket No. 10-90, et al. Declaratory Ruling FCC 15-14 (released Feb. 11, 2015)." Ex. 4 at p. 1. | | |
| 20 | The 2015 Agreement defines the term "OTT Appeal" to mean "the Petition for Review of the *OTT Declaratory Order* [filed by AT&T] with the United States Court of Appeals for the District of Columbia Circuit." Ex. 4 at p.1. | | |
| 21 | The parties drafted a Term Sheet prior to executing the 2015 Agreement. *See* Ex. 7, ECF No. 15-2 (A true and correct copy of the Term Sheet was previously filed with the Court). | | |
| 22 | The Parties agreed that historically 65% of Level 3's end office charges to AT&T were for OTT VoIP calls. *See* Ex. 4 at § 1(a)(i)(B); Ex. 8, Aug 28, | | |

| | | | |
|---|---|---|---|
| | 2019 Deposition of J. Torres at 50:14-22. | | |
| 23 | Andrew McClure's estimates of the OTT VoIP percentages of Level 3's customers are not verifiable by anyone at Level 3.  *See* Ex. 9, June 11, 2020 Deposition of A. McClure at 207:12-21. | | |

Respectfully submitted this 29th day of June, 2020.

By: /s/ Justin A. Benson

Rebecca B. DeCook
Andrew T. Flynn
Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1027
becky.decook@moyewhite.com
andrew.flynn@moyewhite.com

Michael J. Hunseder
Michael D. Warden
Justin A. Benson
Joshua W. Moore
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
mhunseder@sidley.com
mwarden@sidley.com
jbenson@sidley.com
joshua.moore@sidley.com

*Attorneys for Plaintiff AT&T Corp. and Counterclaim Defendant Teleport Communications Group*

## CERTIFICATE OF SERVICE

I, Justin A. Benson, hereby certify that on June 29, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Charles W. Steese, #26924
Douglas N. Marsh, #45964
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
Email: csteese@armstrongteasdale.com
Email: dmarsh@armstrongteasdale.com

*Attorneys for Defendant Level 3*
*Communications, LLC*

/s/ Justin A. Benson
Justin A. Benson
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
E-mail: jbenson@sidley.com

*Attorney for Plaintiff AT&T Corp. and*
*Counterclaim Defendant Teleport*
*Communications Group*