# EXHIBIT 9

CONFIDENTIAL

Page 1

```
 1              IN THE UNITED STATES DISTRICT
 2              FOR THE DISTRICT OF COLORADO
 3
 4     AT&T CORPORATION,
 5              Plaintiff,
                                   CIVIL ACTION FILE
 6        vs.                      NO.  18-cv-00112-RM-MEH
 7     LEVEL 3 COMMUNICATIONS, LLC,
 8              Defendant.
 9
10
11
12              VIDEOTAPED DEPOSITION OF
                     GEORGE SLOAN
13
                  September 24, 2019
14                    11:39 a.m.
15           1025 Lenox Park Boulevard, NE
                    Atlanta, Georgia
16
17        Lee Ann Barnes, CCR-1852B, RPR, CRR, CRC
18
19
20
21
22
23
24
25     Job No. CS3532263
```

CONFIDENTIAL

Page 2

```
 1                APPEARANCES OF COUNSEL
 2
 3      On behalf of Plaintiff:
 4           MICHAEL J. HUNSEDER, ESQ.
             JUSTIN A. BENSON, ESQ.
 5           SIDLEY AUSTIN LLP
             1501 K Street, N.W.
 6           Washington, D.C.  20005
             202.736.8236
 7           202.736.8711 (facsimile)
             mhunseder@sidley.com
 8           jbenson@sidley.com
 9      - and -
10           CARL MICKENS, ESQ.
             AT&T
11           675 West Peachtree Street, NW
             Atlanta, Georgia
12           404.216.5233
13
14      On behalf of the Defendant:
15           CHUCK STEESE, ESQ.
             ARMSTRONG TEASDALE LLP
16           4643 South Ulster Street, Suite 800
             Denver, Colorado  80237
17           720.200.0676+720.200.0679 (facsimile)
             csteese@armstrongteasdale.com
18
19      Also Present:
20           Jess Wiggins, Videographer
21
22
23
24
25
```

CONFIDENTIAL

Page 3

1              INDEX OF EXAMINATION

2      WITNESS:   GEORGE SLOAN

3      EXAMINATION                                    PAGE

       By Mr. Steese                                    6

4      By Mr. Hunseder                                 75

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CONFIDENTIAL

Page 18

1    Q.   (By Mr. Steese)  And underneath that,
2    there is a statement from Mr. Burgess, where you can
3    see at the top it says his response is to the
4    questions below and you can see a different font.
5         And he says, "The current pro- -- proposal
6    preserves AT&T's rights with respect to a pending
7    appeal and will enable AT&T to recover OTT values as
8    dec- -- defined by the decision."
9         Do you see that?
10        MR. HUNSEDER:  Objection.  Foundation.
11        THE WITNESS:  I see it.
12        MR. STEESE:  What's wrong with the
13   foundation?
14        MR. HUNSEDER:  Well, you've not
15   established whether he's reviewed the document,
16   whether he's ever seen it, whether he's had any
17   conversation with Mr. Burgess.  So right now
18   the record's not clear as to whether he's just
19   reading a document or whether he has any
20   recollection.
21        MR. STEESE:  Okay.
22   Q.   (By Mr. Steese)  Going into the
23   negotiation, did you understand that what AT&T was
24   trying to do was enable AT&T to recover OTT values
25   as defined by the decision?

CONFIDENTIAL

Page 19

1     MR. HUNSEDER:  Same objection.
2     THE WITNESS:  I don't recall.
3     Q.  (By Mr. Steese)  You don't have any
4  recollection one way or the other?
5     A.  I don't.
6     Q.  Do you recall meeting with Mr. Riederer in
7  person at one point in time?
8     A.  I do.
9     Q.  Where was the meeting?
10    A.  It was in Dallas, Texas.
11    Q.  Who else was present?
12    A.  I remember Mike was there and Bill Hague,
13  my boss.  There were a lot of people.  Some people
14  senior to Mike also.
15    Q.  Do you know if Shaun Andrews was there?
16    A.  I don't.
17    Q.  Okay.  So the only people you remember by
18  name are yourself, Mr. Hague -- am I saying Hague
19  correctly?
20    A.  Hague; that's right.
21    Q.  Hague, and Mr. Riederer?
22    A.  That's right.
23    Q.  Okay.  Do you recall the date of the
24  meeting?
25    A.  I do not.

CONFIDENTIAL

Page 20

1       Q.   Let's see if I can refresh recollection
2   here.
3       A.   Okay.
4       Q.   Let's show you what was previously marked
5   as Exhibit 18.
6            (Exhibit 18 previously marked for
7        identification.)
8       Q.   (By Mr. Steese)  Exhibit 18, if you turn
9   to the second page, Bates -4196, there's an email
10  from you to Mr. Riederer dated May 7, 2015.
11           Do you see that?
12      A.   I see it.
13      Q.   And it says, "It was nice to meet you
14  today."
15           Do you see that?
16      A.   I do.
17      Q.   So does that help refresh recollection
18  that the meeting was May 7, 2015?
19      A.   Yes.
20      Q.   And this email from yourself, just a few
21  questions about you with email.
22           Do you use email regularly in your work at
23  AT&T?
24      A.   I do.
25      Q.   And do you do your best to be accurate and

CONFIDENTIAL

Page 21

```
 1      complete in the materials that you send in emails?
 2           A.    Sure.
 3           Q.    And do you doubt that -- I'll ask this
 4      differently.  Strike that.
 5                 Does this look like a true and correct
 6      copy of the email that you sent to Mr. Riederer on
 7      May 7, 2015?
 8           A.    Well, I don't recall any of this, but I
 9      have no reason to believe that it's not correct.
10           Q.    Perfect.  If you look on your email,
11      second -- it says paragraphs number 1 and 2, looking
12      at paragraph number 2, it says, "Is there a time
13      late morning tomorrow when we could get on the phone
14      to...(b) walk through proposed language to close the
15      AT&T -- OTT/Tandem disputes."
16                 Do you see that?
17           A.    I do.
18           Q.    Do you remember if you had a telephone
19      call with Mr. Riederer the next day?
20           A.    I don't remember.
21           Q.    Do you remember if you had any telephone
22      calls shortly after your in-person meeting --
23           A.    I do.
24           Q.    -- to try --
25                 Let me finish, please.
```

CONFIDENTIAL

Page 53

1      know if the exact concept made it over.
2           Q.   Okay.
3           A.   And I don't recall.
4           Q.   Okay.  Then I'll ask a more fundamental
5      question.
6                So you're sending Exhibit No. 20 to
7      Ms. Meola, and Ms. Meola, whether it's her directly
8      or she's having someone do it on her behalf, they
9      are creating the last two pages of Exhibit 19 to
10     formulate the construct that had been discussed with
11     Mr. Riederer on May the 7th when you met with him in
12     Dallas.
13          A.   I think Kim is -- I think it's highly
14     likely that Kim and her team or our attorneys built
15     this document.  I think she's --
16          Q.   And this document is Exhibit 19?
17          A.   Exhibit 19.  I think she's partially
18     responding to what I'm suggesting.  In the end, she
19     had to make the decisions about what the -- what was
20     the right language because she had the history and
21     the experience.
22          Q.   Okay.  So in other words, Exhibit 20,
23     you're sending to Ms. Meola, and I'm going to call
24     it and her team.  And her team --
25          A.   Sure.

CONFIDENTIAL

Page 54

1    Q.  -- include people that work for her and
2    legal or whoever she needs to support her.  I'm just
3    defining it so you know I'm not trying to just
4    say --
5    A.  Right.
6    Q.  -- Ms. Meola individually.
7        So you're sending Exhibit 20 to Ms. Meola
8    and her team so they can formulate a document that
9    you can send to Mr. Riederer that gets the ball
10   moving to say here's what we discussed and make sure
11   that we now can try and close the gap between this
12   OTT dispute.
13   A.  Yeah.  That gets the ball moving and
14   reflects upon what Mike and I likely discussed and
15   probably adds in what Kim thinks is important.
16   Q.  And so the language in paragraph 19 --
17   paragraph -- strike that.
18       The language in Exhibit 19 would have been
19   the language that those more experienced than you on
20   the subject would have been thinking this is the
21   right language to include in the term sheet.
22       MR. HUNSEDER:  Object to the form.
23       THE WITNESS:  Can you ask the question
24   again?
25       MR. STEESE:  Can you read that one back,

CONFIDENTIAL

Page 56

1  nonresponsive.
2  Q. (By Mr. Steese) My question was you've
3  said all along this was not your area of expertise
4  and you're only here for a brief period of time;
5  correct?
6  A. Agreed.
7  Q. And so you're sending Exhibit 20, that
8  email, and you're giving it to Ms. Meola who is the
9  one very experienced in this area and is the person
10 that understands the nuances of the subject;
11 correct?
12 A. Correct.
13 Q. And so what you're doing is you're giving
14 an email with some basic points to Ms. Meola so she
15 and her team can formulate a term sheet to be sent
16 to Ms. -- Mr. Riederer; correct?
17         MR. HUNSEDER: Objection to the form.
18     Misstates the testimony.
19         THE WITNESS: It -- it -- it's -- it's
20     correct that this is -- these are ideas that
21     Kim thinks are important to bring to Mike
22     altogether; that's right.
23 Q. (By Mr. Steese) Okay. Okay. Pause one
24 second.
25         I'm going to show you what's been