# EXHIBIT 13

Message

| | |
|---|---|
| From: | SLOAN, GEORGE B [gs8388@att.com] |
| Sent: | 5/8/2015 12:54:20 PM |
| To: | Riederer, Mike [/O=LEVEL3/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=Riederer, Mike2bb] |
| Subject: | Settlement Proposal - Confidential |
| Attachments: | May 8 Level3 Term Proposal.docx |
| Importance: | High |



EXHIBIT
AT+T 19
2-7-19

Mike:

Here is our attempt to capture our agreement construct. Two items you will notice: (a) The late fees are separated out. I know you guys don't want it recorded this way. If the math works out, Monday morning, I'll support the flat 75%. (b) The team added an additional item they believe is closed and can be formalized in this document. I look forward to discussing more Monday morning. I'll have Kim Meola with me from John Nolan's team. Thanks.
George

CONFIDENTIAL                                                                                                        CTL_0011324

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Level3 Settlement Proposal
Offer Date: May 8, 2015

***Settlement Terms – OTT Dispute***

(1) AT&T agrees to pay ▮▮ of L3's retrospective claims on OTT for usage incurred through the end of May 2015.  Note: Billed usage does not include LPCs.

(2) AT&T agrees to pay ▮▮ of the LPCs associated with OTT usage billed through end of May 2015.

(3) AT&T agrees to pay L3 full switched access per the Level3 tariffs for both originating and terminating OTT traffic on a prospective basis for June 2015 usage forward.

(4) On a prospective basis, beginning with June 2015, Level 3 will not bill any EO elements associated with domestic originated OTT 8YY traffic not reflecting a Level 3 owned CPN or CPNLess traffic that is not served by a Level 3 end office. Level 3 will continue to bill full switched access on Level 3 owned TNs.

(5) For any usage prior to June 2015, the settlement is a full and final settlement of all disputes and balances regardless of whether AT&T wins or loses its FCC appeal.

(6) If AT&T wins its FCC appeal, L3 will refund 50% of the disputed charges beginning with June 2015 through the date of a final ruling, either from the Court of Appeals or, if remanded, by the FCC ruling.

This is not an offer or proposal capable of acceptance, and is instead provided for conceptual purposes only.  A final proposal may not include all items referenced in this document, and neither party is under any obligation to propose or agree to any of the terms, conditions, or structures presented in this document.  This document does not cover all terms and conditions that may be included in a final proposal or in any final agreement.  No terms are binding until in final, formal written agreement mutually executed by the parties.

████████████████████████████████

Level3 Settlement Proposal
Offer Date: May 8, 2015

**Settlement Terms – Tandem Connect Dispute**

(1) AT&T agrees to pay ███ of L3's retrospective claims on Tandem Connect billing through the end of May 2015. Note: Billing does not include LPCs.

(2) AT&T agrees to pay ███ of the LPCs associated with Tandem Connect billing through end of May 2015.

(3) AT&T will pay L3 ███ of the FGD Tandem Connect billing on a prospective basis for facility and port beginning with June 2015.

(4) L3 will credit in full all charges for erroneously invoiced DEOTs that AT&T ordered and L3 did not complete.

**Additional Settlement Principle**

(1) The parties agree to execute a separate agreement for new incremental POP to LSO or POP to Prem DS3s comprising no more than 250 circuits at the negotiated rates.

This is not an offer or proposal capable of acceptance, and is instead provided for conceptual purposes only. A final proposal may not include all items referenced in this document, and neither party is under any obligation to propose or agree to any of the terms, conditions, or structures presented in this document. This document does not cover all terms and conditions that may be included in a final proposal or in any final agreement. No terms are binding until in final, formal written agreement mutually executed by the parties.