# EXHIBIT 17



Message

**From:** Ross, Steve [/O=LEVEL3/OU=DENVER/CN=RECIPIENTS/CN=ROSS.STEVE]
**Sent:** 5/15/2015 2:48:00 PM
**To:** Andrews, Shaun [/O=LEVEL3/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=Andrews, Shaun9b4]; Hurt, Austin [/O=LEVEL3/OU=DENVER/cn=Recipients/cn=hurt.austin]
**CC:** Torres, Jennifer [/O=LEVEL3/OU=DENVER/cn=Recipients/cn=olinger.jennifer]
**Subject:** Fwd: AT&T Edits to Level 3/AT&T Settlement re: OTT VoIP and 'Tandem Connect'
**Attachments:** ATT-Level 3 Settlement Agreement (Level 3 draft 5-15-15 rev2).docx; ATT00001.htm

Fyi - progress at least on a return copy.

Steve Ross
703 887 2600

Begin forwarded message:

> **From:** "NOLAN, JOHN C" <jn696a@att.com>
> **Date:** May 15, 2015, 4:40:22 PM EDT
> **To:** "Ross, Steve (Steve.Ross@level3.com)" <Steve.Ross@level3.com>
> **Subject: FW: AT&T Edits to Level 3/AT&T Settlement re: OTT VoIP and 'Tandem Connect'**
>
> FYI, let me know if you have any questions.
>
> jcn
>
> ---
>
> **From:** WALDBAUM, DEBBI (Legal)
> **Sent:** Friday, May 15, 2015 3:07 PM
> **To:** Ted.Price@level3.com
> **Cc:** Mike.Riederer@level3.com; Thayer, Rick; MEOLA, KIMBERLY A; BURGESS, ARDELL; JOHN, CRAIG R; NOLAN, JOHN C; SLOAN, GEORGE B
> **Subject:** AT&T Edits to Level 3/AT&T Settlement re: OTT VoIP and 'Tandem Connect'
>
> Ted –
>
> My client, Kim Meola, has asked me to return our edits to the Level 3 proposed settlement document. On a high level, we've made the following adjustments:
>
> - <!--[if !supportLists]--><!--[endif]-->Many of the changes relate to AT&T's requirements for making settlement payments (e.g., we've modified the payment time frame to 15 business day; we've added the clarification that we will make the payment to the existing Level 3 account for payment; we've included a 'true up' clause for April 2015 traffic because we hope to execute this agreement before AT&T receives all of the April traffic invoices);
> - <!--[if !supportLists]--><!--[endif]-->Added a WHEREAS clause to address the DEOT credit issue and a provision committing L3 to apply those credit adjustments;
> - <!--[if !supportLists]--><!--[endif]-->Included some identifying information regarding AT&T's appeal of the FCC Declaratory Order, as well as well as some clarification of going forward payments for OTT VoIP compensation and our agreement regarding the impact of an AT&T win on the appeal.
> - <!--[if !supportLists]--><!--[endif]-->Added some clarifying language on the appropriate compensation for CPN requirements associated with L3 originating and terminating traffic.

- <!--[if !supportLists]--><!--[endif]-->We are proposing a modification to the POP to LSO and POP to Prem circuit purchase.

I assume Kim will follow up with Mike on the AT&T proposals. Please feel free to call me if you have any questions.

Debbi Waldbaum
General Attorney
AT&T Services, Inc.
303-391-7703

Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules
SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION
AT&T Edits
May 15, 2015

# RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement ("Settlement Agreement") is made and entered into by and between Level 3 Communications, LLC, on behalf of itself and as agent for its direct or indirect affiliates, subsidiaries, and other related entities, whether currently or previously existing, that provide any product, service or facility to any AT&T entity that is a party to this Settlement Agreement or was or is the real party-in-interest to any of the Disputes (as defined below) (collectively, "Level 3"), and AT&T Corp., on behalf of itself and ~~as agent for~~ its direct and indirect subsidiaries ~~affiliates, subsidiaries, and other related entities, whether currently or previously existing, that was or is the real party-in-interest to any of the Disputes~~ (collectively, "AT&T"). (Each of Level 3 and AT&T, a "Party," and collectively, the "Parties.") This Agreement is effective as of the date it is executed by the last of the Parties to sign (the "Effective Date").

WHEREAS, AT&T and Level 3 are providers of telecommunications services, including but not limited to switched local exchange access services;

WHEREAS, in the course of Level 3's provision of switched access services by to AT&T, AT&T has disputed and not paid certain Level 3 end office switching charges, as set forth in more detail in Exhibit A, on traffic originating from and/or terminating to the local exchange service end-user customers served by providers of over-the-top voice over Internet protocol ("OTT") services (the "OTT Dispute");

WHEREAS, the question of the applicability of end office switching charges on OTT traffic was addressed by the Federal Communications Commission in a Declaratory Ruling released on February 11, 2015, *see Connect America Fund*, WC Docket No. 10-90, *et al.*, Declaratory Ruling, FCC 15-14 (released Feb. 11, 2015) ("*OTT Declaratory Order*"), and on March 21, 2015, AT&T filed a Petition for Review of the *OTT Declaratory Order* with the United States District Court for the District of Columbia ~~AT&T has appealed such FCC decision~~ (the "OTT Appeal");

Formatted: Font: Italic

Formatted: Font: Italic

WHEREAS, in the course of Level 3's provision of switched access services to AT&T, AT&T has also disputed and not paid certain charges Level 3 has assessed AT&T for tandem facilities, as set forth in more detail in Exhibit A (the "Tandem Dispute"); ~~and, together with the OTT Dispute, the "Disputes");~~

Formatted: Indent: First line: 0"

WHEREAS, in the course of Level 3's provision of switched access services to AT&T, AT&T submitted access service requests ("ASRs") for direct transport facilities between certain AT&T points of presence ("POP") and Level 3 end offices, which Level 3 failed to provision, but which Level 3 nonetheless issued invoices to AT&T for the facilities (the "DEOT Billing Dispute", and together with the OTT Dispute and the Tandem Dispute, the Disputes);

AT&T/LEVEL 3 Confidential
*This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)*

CONFIDENTIAL

CTL_0012893

Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules
SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION

WHEREAS, to compromise and to settle the Disputes amicably, and to avoid further uncertainty, expense and delay, the Parties have agreed to the terms and conditions of this Agreement.

NOW THEREFORE, in consideration of foregoing, the mutual promises contained herein, and for other good valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each Party to the other, the Parties each intending to be legally bound hereby, covenant and agree as follows:

**1. Settlement and Adjustments**

(a) OTT Dispute

(i) In settlement of the OTT Dispute AT&T agrees to pay Level 3 the following:

(A) ~~(A) w~~Within ~~five (5)~~ fifteen business days of the Effective Date, ~~AT&T shall pay Level 3~~ $_______________, which is seventy-five percent (75%) of the usage and late payment charges billed by Level 3 for the traffic exchanged by the Parties through April 2015, that is the subject of the OTT Dispute ("Settlement Amount"). AT&T will transmit the Settlement Amount to the Level 3 account designated to receive switched access payments using the Parties' standard process for switched access payments. ~~through April 2015; and~~

Formatted: List Paragraph, Numbered + Level: 1 + Numbering Style: A, B, C, … + Start at: 1 + Alignment: Left + Aligned at: 1" + Indent at: 1.29"

Formatted: List Paragraph, Indent: Before: 1.29"

(i) The Parties recognize that due to invoice cycles and billing requirements, the calculation of usage and late payment charges included in the total amount of charges identified in Section 1(A), above, may vary from the actual amount owed once all billing is complete. As a result, the Parties agree that the amount due for April 2015 usage may be subject to an adjustment to reflect the appropriate value.

Formatted: List Paragraph, Numbered + Level: 1 + Numbering Style: I, ii, iii, … + Start at: 1 + Alignment: Left + Aligned at: 1.29" + Indent at: 1.79"

Formatted: List Paragraph, Indent: Before: 1.29"

(B) ~~(B) n~~No later than thirty (30) days after the receipt of Level 3's invoice for traffic exchanged between May 1 through May 31, 2015, ~~June 30, 2015,~~ seventy-five percent (75%) of the amount ~~Level 3 invoices~~ of the switched access usage charges for traffic that is the subject of the OTT Dispute billed by Level 3 ("May Supplemental Settlement Amount"). AT&T will transmit the Settlement Amount to the Level 3 account designated to receive switched access payments using the Parties' standard process for switched access

Formatted: List Paragraph, Numbered + Level: 1 + Numbering Style: A, B, C, … + Start at: 1 + Alignment: Left + Aligned at: 1" + Indent at: 1.29"

**AT&T/LEVEL 3 Confidential**
*This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)*

-2-

CONFIDENTIAL CTL_0012894

Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules
SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION

payments.AT&T in June 2015 for switched access usage charges for OTT traffic for the month of May 2015.

Within thirty (30) days, Ffollowing receipt of such both the Settlement Amount and the May Supplemental Settlement Amount payments, Level 3 shall issue credits to the relevant AT&T billing account numbers ("BANs") as set forth in Exhibit A.

Formatted: Indent: Before: 1"

(ii) For switched access traffic exchanged by the Parties beginning on June 1, 2015, AT&T shall pay Level 3 its applicable switched access tariffed rate for OTT traffic, pursuant to the terms of the *OTT Declaratory Order*. For avoidance of doubt, this agreement shall not prohibit AT&T from disputing Level 3's billing for switched access traffic for reasons unrelated to the requirements of the *OTT Declaratory Order*, including but not limited to, disputes regarding volumes or applicable rates. AT&T shall pay full switched access charges to Level 3 for OTT traffic from June 1, 2015 onward.

Formatted: Font: Italic

Formatted: Font: Italic

(iii) Beginning June 1, 2015, Level 3 shall not bill AT&T for any end office switched access charge elements for domestic U.S. originated OTT 8YY domestic OTT traffic that (A) does not originate from a calling party number or does not does not terminate to a called party number (together with calling party number "CPN") that is assigned by Level 3 and for which Level 3 is designated as the provider in the Number Portability Administration Center ("NPAC") database.a Level 3-owned telephone number or (B) does not contain a called party number that is not served by a Level 3 end office. For avoidance of doubt, the Parties agree that Level 3 will continue to bill AT&T full switched access charges on domestic traffic that originates with or terminates to Level 3 owned assigned CPN. telephone numbers.

(iv) For any OTT usage prior to June 2015, Although the Parties agree that this Ssettlement Agreement is intended to be a full and final settlement of all disputes and balances associated with OTT traffic prior to June 1, 2015, the Parties also recognize the pendency of the OTT Appeal.regardless of whether AT&T wins or loses its OTT Appeal. Therefore, in the event the OTT Declaratory Order is overturned, either in whole or in part, If AT&T wins its OTT Appeal and and the applicable order on appeal becomes final and is no longer subject to further appeal or other judicial review, Level 3 will refund within 30 days, fifty percent (50%) of the disputed OTT charges beginning with June 2015 usage traffic through the date on which such order becomes final and is no longer subject to further appeal or other judicial review. Further, the Parties agree that any billing and payments for OTT traffic exchanged after such order becomes final shall be in compliance with terms of that order.

AT&T/LEVEL 3 Confidential
*This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)*

-3-

CONFIDENTIAL CTL_0012895

Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules
SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION

(b) Tandem Dispute

Formatted: Indent: Before: 0.5", Hanging: 0.38"

(i) In settlement of the Tandem Dispute, within ~~five (5)~~ fifteen business days of the Effective Date AT&T shall pay Level 3 $_________________, which is [REDACTED] of the Level 3 facility, port and late payment charges associated with the facilities and services that are the subject of the Tandem Dispute through the end of May 2015incurred. AT&T will transmit the Settlement Amount to the Level 3 account designated to receive switched access payments using the Parties' standard process for switched access payments. Within thirty (30) days ~~F~~following receipt of such payment, Level 3 shall issue credits to the relevant BANs as set forth in Exhibit A.

(ii) Beginning in June 2015, and ~~F~~for a period of three (3) years following the Effective Date ("Discount Term"), AT&T shall pay Level 3 [REDACTED] of Level 3's tariffed rate for facility and port charges for both existing ~~existing~~ circuits and additional circuits necessary to accommodate the switched access traffic exchange by the Parties over such facilities. AT&T agrees that it is at all times responsible for submitting access service requests to Level 3 for all circuits, including both DS1 and DS3 circuits, that AT&T wishes to order from Level 3 pursuant to the procedures contained in Level 3's switched access tariffs. ~~connecting to Level 3 tandems beginning in June 2015, with such rate increasing to one hundred percent (100%) of Level 3's tariffed rate three (3) years after the Effective Date; and (B) purchase from Level 3,~~

(iii) Within thirty (30) days of the Effective Date (unless the Parties mutually agree to an extension), the Parties agree to execute ~~pursuant to~~ a separate agreement for the provision of DS1s and DS3 dedicated facilities by Level 3 to AT&T. Under the terms of such agreement, AT&T shall be allowed to purchase (A) POP to LSO DS3s for connectivity between AT&T POP and an incumbent local exchange carrier local serving offices at a rate of [REDACTED] per month, and DS1s POP to LSO at a rate to be mutually agreed to by the Parties; and (B) POP to Prem DS1s and DS3s for connectivity between an AT&T POP and customer premises at a rate to be mutually agreed to by the Parties. The Parties further agree that to obtain the rates included in such agreement, AT&T shall agree to a service term of [REDACTED] for each circuit. ~~AT&T agrees that it is at all times responsible for submitting access service requests to Level 3 for all circuits, including both DS1 and DS3 circuits, that AT&T wishes to order from Level 3 pursuant to the procedures contained in Level 3's switched access tariffs.~~ ~~to be executed by the Parties within thirty (30) days of the Effective Date, a minimum of five hundred (500) new DS3 circuits, for a term of at least three (3) years from the Effective Date, for connectivity between AT&T points of presence and incumbent local exchange~~

AT&T/LEVEL 3 Confidential
*This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)*

-4-

CONFIDENTIAL CTL_0012896

Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules
SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION

~~carrier local serving offices or customer premises. AT&T agrees that it is at all times responsible for submitting access service requests to Level 3 for all circuits, including both DS1 and DS3 circuits, that AT&T wishes to order from Level 3 pursuant to the procedures contained in Level 3's switched access tariffs.~~

(c). DEOT Billing Dispute. Level 3 will credit AT&T [REDACTED] associated with ASRs submitted by AT&T for direct transport facilities between certain AT&T points of presence ("POP") and Level 3 end offices, which Level 3 failed to provision. Level 3 shall issue the credit associated with such charges, including late payment charges if applicable, to [REDACTED], within thirty (30) days following the receipt of the payments set forth in Section 1(a)(i), above.

Formatted: Indent: Before: 0.5", Hanging: 0.38"

Formatted: Indent: Before: 0.5", Hanging: 0.5"

Formatted: Indent: Before: 0"

2. **Mutual Releases**

(a) Upon the Effective Date, Level 3, on behalf of itself and its agents, subsidiaries, predecessors, affiliates, parent corporations, if any, partners, joint venturers~~venturers~~, successors, employees, officers, directors, shareholders, owners, managers, representatives, accountants, attorneys, trustees, advisors, executors and assigns (the "Level 3 Releasors"), discharges and releases AT&T and its agents, subsidiaries, heirs, past, present and future officers, -agents, shareholders, officers, directors (in their individual and representative capacities), past and present employees, managers, representatives, attorneys, accountants, advisors, owners ~~agents, shareholders, officers, directors (in their individual and representative capacities),~~ subsidiaries, ~~predecessors,~~ affiliates, parent corporations, if any, joint venturers, predecessors and successors in interest and assigns (the "AT&T Releasees"), from any and all rights, claims, damages, actions or liabilities, at law or in equity, known or unknown, matured or unmatured, foreseeable or unforeseeable, which the Level 3 Releasors now have or ever had against the AT&T Releasees arising out of or related to the Disputes.

(b) Upon the Effective Date, AT&T, on behalf of itself and its agents, subsidiaries, predecessors, affiliates, parent corporations, if any, partners, joint venturers, successors, employees, officers, directors, shareholders, owners, managers, representatives, accountants, attorneys, trustees, advisors, executors and assigns (the "AT&T Releasors"), discharges and releases Level 3 and its agents, subsidiaries, heirs, past, present and future officers, agents, shareholders, officers, directors (in their individual and representative capacities), past and present employees,

AT&T/LEVEL 3 Confidential
*This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)*

-5-

CONFIDENTIAL CTL_0012897

**Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules**
**SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION**

managers, representatives, attorneys, accountants, advisors, owners, ~~agents, shareholders, officers, directors (in their individual and representative capacities), subsidiaries, predecessors,~~ affiliates, parent corporations, if any, joint venturers, successors in interest and assigns (the "Level 3 Releasees"), from any and all rights, claims, damages, actions or liabilities, at law or in equity, known or unknown, matured or unmatured, foreseeable or unforeseeable, which the AT&T Releasors now have or ever had against the Level 3 Releasees arising out of or related to the Disputes.

(c) Nothing in Section 2(a) or 2(b) affects the enforceability of this Agreement by either party against the other party.

(d) This Agreement shall constitute and is a general release for the Disputes as defined herein. The Parties each represent and warrant to the other that they have not heretofore assigned or transferred, or purported to assign or transfer, any claim, demand, debt, liability or cause of action herein released. Notwithstanding anything contained in this Agreement to the contrary, the Parties acknowledge and agree, and it is the intent of the Parties that the only matters being resolved by this Agreement are the items explicitly defined as the Disputes herein and that no other claims are encompassed within the release granted in this Agreement.

(e) Waiver of California Civil Code §1542 or any similarly worded statute in another state. With respect to the Releases, each Party further agrees that if, subsequent to the execution of the Releases, the other Party incurs or suffers loss, damage, or injuries that are in any way related to any charges and/or billing of any of the Disputes, but that are unknown and unanticipated at the time this Agreement is signed, the following applies:

(i) Each Party assumes the above-mentioned risks and understands that the Releases **SHALL APPLY TO ALL UNKNOWN CLAIMS RELATED TO THE DISPUTES OR UNANTICIPATED RESULTS OF THE TRANSACTIONS AND OCURRENCES DESCRIBED ABOVE, AS WELL AS THOSE KNOWN AND ANTICIPATED**, and upon advice of counsel, each Party hereby waives any and all rights under California Civil Code §1542, which section has been duly explained and reads as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor" or any similarly worded statute in another state.

(ii) Each Party represents that it has obtained the advice of legal counsel prior to signing this Agreement, and that each executes this Agreement voluntarily, with full knowledge of its significance, and with the express intention of

**AT&T/LEVEL 3 Confidential**
*This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)*

CONFIDENTIAL

Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules
SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION

effecting the legal consequences provided by California Civil Code §1541 or any similarly worded statute in another state, *i.e.*, "the extinguishments of all obligations" arising directly out of or relating to the Disputes.

**3. Entire Agreement Regarding the Disputes**

This Agreement is the entire and complete agreement of the Parties regarding the subject matter hereof. No statements, promises or representations have been made by any Party to any Party, or are relied upon, and no consideration has been or is offered, promised, expected or held out, other than as stated in this Agreement. There are no oral or written collateral agreements. All prior discussions and negotiations regarding the Disputes have been, and are, merged and integrated into, and are superseded by, this Agreement.

**4. Legal Counsel**

Each Party represents that in the execution of this Agreement, and the negotiations leading thereto, it consulted with legal counsel of its own selection.

**5. Applicable Law**

This Agreement shall be construed in accordance with and be governed by the laws of the State of New York, not including its choice of law principles.

**6. No Admission of Liability**

This Agreement is a compromise of disputed claims, and therefore, nothing contained herein shall constitute an adjudication or finding on the merits as to the claims of any Party, nor shall be construed as an admission of fact or liability or acknowledgement of any fact, allegation, or claim that has been or could have been made concerning the Party in question. This Agreement shall not be admissible for any purpose in any proceeding except for a proceeding to interpret or enforce this Agreement. It is further understood that all statements contained herein and all statements and conduct of any Party made in connection with the negotiation of this Agreement shall be inadmissible as evidence under Federal Rule of Evidence 408 and any similar federal or state statute or rule, except that in a proceeding brought to enforce the terms of this Agreement, the Agreement itself shall be admissible only in order to prove the terms hereof. Further, neither Party shall raise any issue related to the Disputes or the resolution memorialized herein, for any purpose, in any regulatory, legislative, court or arbitration proceeding.

**7. Miscellaneous**

(a) The delay or failure of a Party to exercise any right, power or privilege hereunder or failure to strictly enforce any breach or default shall not constitute a waiver with respect thereto and no waiver of any such right, power, privilege, breach or default

**AT&T/LEVEL 3 Confidential**
*This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)*

-7-

CONFIDENTIAL CTL_0012899

**Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules**
**SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION**

on any one occasion shall constitute a waiver thereof on any subsequent occasion unless clear and express notice thereof in writing is provided.

(b) If any provision of this Agreement is held to be invalid or unenforceable, all other provisions shall nevertheless continue in full force and effect.

(c) This Agreement has been jointly negotiated and drafted. The language of this Agreement shall be construed as a whole according to its fair meaning and not strictly for or against either of the Parties.

(d) Each Party represents that it owns all rights to the Disputes and the matters subject to the releases, and that none of the foregoing has been assigned or otherwise transferred to any other entity or individual.

(e) Each person whose signature appears on this Agreement on behalf of a Party represents that he or she has authority to bind such Party and acknowledges that the other Party is and will be acting in reliance upon said representation in acting upon the terms and conditions hereof.

(f) Nothing in this Agreement is intended to affect any claim or claims unrelated to the Disputes. Except with respect to the Disputes, Level 3 and AT&T hereby agree that nothing contained in this Agreement constitutes or shall be deemed to constitute a waiver by either Party of any right of recoupment and/or any right of set-off that either Party may have with respect to the other Party for any payments or charges other than those made in relation to the Disputes, and the Parties further agree that any right of recoupment and/or any right of set-off that one Party may have with respect to the other Party or, in the event a petition is filed under Chapter 7 or 11 of Title 11 of the United States Code, the debtor's estate, shall survive and be preserved even after confirmation of any plan of reorganization despite any discharge that might be granted to the debtor in bankruptcy under Section 1141 of the Bankruptcy Code and any effect given to that discharge under Section 524 of the Bankruptcy Code.

(g) No supplement, modification, amendment, waiver or termination of this Agreement shall be binding unless executed in writing by the Parties to be bound thereby. No provisions of this Agreement may be waived unless in writing, signed by the Party to be charged therewith. Waiver of any one provision shall not be deemed to be a waiver of any other provision.

**8. Confidentiality**

This Agreement, and the terms and existence hereof, constitutes the confidential and proprietary information of each Party. The Parties agree to use their best efforts to keep this

**AT&T/LEVEL 3 Confidential**
*This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)*

-8-

CONFIDENTIAL CTL_0012900

**Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules**
**SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION**

Agreement, and the terms and existence hereof, confidential. Neither Party shall disclose such information to others, unless required by a Court or regulatory agency of competent jurisdiction, and only then upon prior written notice to the other Party. If asked about the dispute, each Party may respond that the dispute has been resolved to its satisfaction.

**9. Counterparts**

This Agreement may be signed in counterparts, which together will constitute the original Agreement.

**10. Notices.**

Any notices required under this Agreement shall be served upon the Parties via overnight priority mail or certified mail, return receipt requested as follows

To Level 3:

Level 3 Communications, LLC
Attn:
1025 Eldorado Boulevard
Broomfield, CO 80021

With a copy to:

Level 3 Communications, LLC
Attn: Chief Legal Officer
1025 Eldorado Boulevard
Broomfield, CO 80021

To AT&T:

Kim Meola
Assistant Vice President
Domestic Access Management
AT&T Corp
1 AT&T Way
4A107
Bedminster, N.J. 07921-2693
km1274@att.com

With a copy to:

AT&T Legal Department

**AT&T/LEVEL 3 Confidential**
*This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)*

-9-

CONFIDENTIAL CTL_0012901

**Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules**
**SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION**

c/o ~~%~~ Jerry Hicks
Director
AT&T Services, Inc.
9505 Arboretum Blvd.
Room 9S10
Austin, TX 78759

[SIGNATURE PAGE FOLLOWS]

**AT&T/LEVEL 3 Confidential**
*This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)*

-10-

CONFIDENTIAL

CTL_0012902

**Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules**
**SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION**

IN WITNESS WHEREOF, the Parties have duly executed and agreed to be bound by this Agreement by the signatures of their authorized representatives below.

| **Level 3 Communications, LLC** | **AT&T Corp.** |
| --- | --- |
| By: ______________________ | By: ______________________ |
| (Authorized Signature) | (Authorized Signature) |
| ______________________ | ______________________ |
| —(Typed or Printed ~~Name )~~Name) | (Typed or Printed Name) |
| ______________________ | ______________________ |
| (Title) | (Title) |
| ______________________ | ______________________ |
| (Date) | (Date) |

**AT&T/LEVEL 3 Confidential**
*This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)*

CONFIDENTIAL

Confidential and Proprietary Document Subject to FRE 408 and Analogous State Rules
SUBJECT TO MODIFICATION IN ALL RESPECTS PRIOR TO EXECUTION

**EXHIBIT A**

**AT&T/LEVEL 3 Confidential**
*This document and the information contained herein may only be disclosed to authorized persons, and may only be used for authorized purposes, in accordance with applicable agreement(s)*

CONFIDENTIAL