# EXHIBIT 29

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-RM-MEH

AT&T CORPORATION,

    Plaintiff/Counterclaim Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC,

    Defendant/Counterclaimant,

and

BROADWING COMMUNICATIONS, LLC, GLOBAL CROSSING TELECOMMUNICATIONS, INC., and WILTEL COMMUNICATIONS, LLC

    Counterclaimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.,

    Counterclaim Defendant.

**CONFIDENTIAL DECLARATION OF ANDREW McCLURE IN
SUPPORT OF LEVEL 3'S MOTION FOR SUMMARY JUDGMENT**

    I, ANDREW MCCLURE, do depose on oath and state as follows in support of the Motion of Level 3 Communications, LLC, Broadwing Communications, LLC, Global Crossing Telecommunications, Inc., and WilTel Communications, LLC (collectively, "Level 3"), for Summary Judgment:

    1.    I am Manager of Revenue Assurance for Level 3 Communications, LLC.

    2.    I have personal knowledge of the following facts and affirm that they are all true and correct.

3. My day-to-day job functions include ensuring that voice revenue streams are invoiced accurately and correctly from order, quote, contract, or tariff to bill. In other words, I work to identify and correct under-billing and overbilling.

4. As described in my depositions, in 2017 I performed an analysis to calculate Level 3's percent OTT for calls originated by Level 3 telephone numbers destined for AT&T, or coming from AT&T to Level 3 telephone numbers. I updated that analysis in March 2020 as part of this litigation; however, in 2020 it only concerned calls originated by Level 3 telephone numbers destined for AT&T because the FCC had eliminated end office charges on all terminating calls.

5. Level 3 disclosed me as a non-retained expert in its Rule 26(a)(2)(C) disclosure, as supplemented on April 22, 2020. *See* Exhibit A hereto. I understand that the spreadsheet referenced as *Exhibit 2* to this disclosure is included as Exhibit 32 to Level 3's Movant's Statement of Undisputed Material Facts.

6. Among other things, the analysis contained in this spreadsheet shows that 47 percent of Level 3's traffic falls into three clear categories: (a) the traffic of Level 3 itself and some of its affiliates (identified as "Internal Enterprise VoIP," "Global Crossing," "Broadview Networks," "CenturyLink QCC," and "Qwest"), which represents approximately ▇ percent of Level 3's traffic; (b) "NULL" traffic, which (as explained during my deposition) is a network supporting enterprise class customers and is incapable of supporting OTT calling and constitutes approximately ▇ percent of Level 3's traffic; and (c) ▇▇▇▇▇▇▇▇, which is an enterprise class customer which has ▇% OTT because it has less than ▇ percent nomadic telephone numbers and constitutes ▇ percent of Level 3's traffic.

2

7. I also provided rebuttal opinions in response to the expert disclosure of AT&T's witness, Dr. Penn Pfautz. I understand that the disclosure of my rebuttal opinions is attached as Exhibit 25 to Level 3's Movant's Statement of Undisputed Material Facts.

8. I have been deposed on three occasions in this action: (a) on August 29, 2019, in my capacity as a 30(b)(6) witness for Level 3; (b) on November 18 and 19, 2019, as an individual fact witness; and (c) on June 11, 2020, as an expert witness.

9. During the June 11, 2020 deposition, I was asked about a number of the customers listed on the spreadsheet. Among the customers AT&T inquired about were four customers that were listed in the spreadsheet as having zero percent OTT: ▮▮▮, ▮▮▮▮, ▮▮▮, and ▮▮▮.

10. I did not recall specific information about ▮▮▮, ▮▮▮▮, ▮▮▮, or ▮▮▮ at the time of my deposition. However, I have since reviewed information about those customers, as discussed below.

11. During the deposition, AT&T provided me with a printout from a web page by ▮▮▮▮ that suggested it was possible that some of its traffic is OTT. I have since studied ▮▮▮▮ in detail, and conclude that none of ▮▮▮▮ traffic is OTT. ▮▮▮▮ provides hosted PBX traffic, meaning that all ▮▮▮▮ traffic is brought to its PBX or virtual PBX, and thus all of ▮▮▮▮ traffic traverses Level 3's last mile facilities.

12. When calls flow over facilities Level 3 provisioned to the customer's premises to Level 3's end office, the calls are not OTT calls because Level 3's last mile facilities are being used.

3

13. ▇▇▇ is not a telecommunications provider; it is a manufacturer of service assurance, testing, and monitoring equipment. Based on my review of that customer, it is appropriate to list ▇▇▇ as having zero percent OTT.

14. ▇▇▇ is a provider of cloud communications platforms and services. On review of information about that customer it appears they have created a process and software for users to resell voice services. It is possible that ▇▇▇ has some OTT, but not 100 percent OTT.

15. ▇▇▇ is a customer experience service provider, not a telecom or OTT provider. ▇▇▇ is a Level 3 enterprise class customer. Based on my review of that customer, it is appropriate to list ▇▇▇ as having zero percent OTT.

16. Level 3 provides ▇▇▇ with facilities at ▇▇▇ premises, and all calls flow over the facilities Level 3 provisioned and provided to ▇▇▇. Therefore, as I explained in my June 11 deposition, none of ▇▇▇ traffic is OTT.

17. After my June 11, 2020 deposition, I went back and reevaluated all of Level 3's customers through Row 125 to Exhibit 2 to my disclosure, including all customers with up to or over 2.4 million minutes of traffic. Customers below this level are so small that they do not meaningfully impact percentage OTT. In this review, with one exception, I found the following.

    a. The customers are enterprise class customers (e.g., ▇▇▇) with no nomadic telephone numbers; or

    b. The customers are traditional facilities based providers (e.g., ▇▇▇), using Level 3 telephone numbers; or

4

      c. The customers are wholesale (e.g., ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮) without any OTT capability.

18. The exception is ▮▮▮▮▮▮▮▮▮▮. In re-reviewing this customer, I have concluded that they are an OTT provider. I will assume that 100 percent of ▮▮▮▮▮ traffic is OTT. Upon making this correction, Level 3's OTT percentage stays at 16 percent.

19. Even if I assumed that one hundred percent of the traffic of ▮▮▮▮, ▮▮, and ▮▮▮▮▮ was OTT, that would raise Level 3's OTT percent to 20 percent.

20. Furthermore, even if I assumed every possible doubt in AT&T's favor, Level 3's OTT traffic would still be a fraction of what AT&T claims it is. Specifically, if I assume the following percentages of traffic for the following categories of customers,

      a. **100 percent** for all customers previously assumed to have at least ▮ percent OTT or a larger percentage of OTT, plus ▮▮▮▮▮▮▮▮▮▮▮▮;

      b. ▮▮▮▮▮ for cable customers, an assumption which, as I explained in my deposition, is too high because they are facilities based providers principally serving residential customers, and even business customers use nomadic telephone numbers less than 2 percent of the time (*see* McClure 6-11-2020 Depo. at 109:14–110:5);

      c. ▮▮▮▮▮ for ▮▮▮▮▮▮ is an exact calculation; and,

      d. **0 percent** for all remaining customers, who are either enterprise class customers for whom AT&T agrees it is reasonable to assume zero percent OTT; wholesale customers whom I have evaluated to have 0 percent OTT;

5

facilities-based carriers who use Level 3 telephone numbers; Level 3 entities known to have no OTT; or is identified as "NULL", which constitutes Level 3's network known to serve enterprise class customers and is incapable of having OTT or nomadic telephone numbers.

21. Making each of those assumptions, Level 3's percent OTT would raise from ▇ percent to ▇ percent.

Executed this 29th day of June, 2020 in Denver, Colorado.

By: /s/ Andrew McClure
Andrew McClure
CenturyLink
1025 Eldorado Blvd
Broomfield, CO 80021-8254
andrew.mcclure@centurylink.com

6