**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-RM

AT&T CORP.,

    Plaintiff/Counter Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC,

    Defendant/Counterclaimant,

and

BROADWING COMMUNICATIONS, LLC, GLOBAL CROSSING TELECOMMUNCATIONS, INC., and WILTEL COMMUNICATIONS, LLC

    Counterclaimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.

    Counterclaim Defendant

---

## AT&T & TCG'S OPPOSITION TO MOTION TO PRECLUDE EXPERT TESTIMONY REGARDING CHARGES ON CALLS ORIGINATING FROM OR TERMINATING TO LEVEL 3 TELEPHONE NUMBERS

Plaintiff/Counterclaim Defendant AT&T Corp. and Counterclaim Defendant Teleport Communications Group, Inc. (collectively, "AT&T"), by and through undersigned counsel, hereby oppose Level 3 Communications, LLC's ("Level 3") Motion to Preclude Expert Testimony Regarding Charges on Calls Originating From or Terminating to Level 3 Telephone numbers (ECF No. 139) (the "Motion to Preclude").

1

## INTRODUCTION

Level 3's Motion to Preclude is doubly-flawed and should be denied. *First*, although styled as a motion seeking an evidentiary ruling, the Motion to Preclude seemingly requests that this Court make a substantive legal determination regarding the 2015 Agreement between AT&T and Level 3. ECF No. 15-1 (the "Agreement"). In effect, Level 3 seeks a ruling that the Agreement allows Level 3 to "bill end office [access] charges on *all* non-["over-the-top" Voice over Internet Protocol ("OTT VoIP")] calls associated with a Level 3 telephone number." ECF No. 139, Motion to Preclude at 8 (emphasis added). Level 3 appears to make this sweeping claim even when it does not provide the functional equivalence of end office switching and another entity provides those facilities for a VoIP call. All that Level 3 claims is necessary for it to bill end office access charges is that the call be associated with one of Level 3's telephone numbers. Level 3 is wrong—assessing end office access charges on those calls is unlawful and inconsistent with the Agreement.[1]

*Second*, in seeking to exclude testimony of AT&T's expert, Dr. Penn Pfautz, Level 3 mischaracterizes his proposed testimony as offering a legal opinion on the meaning of the Agreement. *See* ECF No. 139, Motion to Preclude at 4-5 (alleging that "[T]he questions presented by Paragraphs 38-40 [of Dr. Pfautz's report] is whether the Agreement permits Level 3 to bill AT&T end office charges on non-OTT calls with a Level 3 telephone number."). In fact, Dr. Pfautz will not provide expert testimony on the meaning of the 2015 Agreement, nor will he opine on legal questions as to whether any particular type of call is compensable under the Agreement. *See* Ex. 1, Dr. Penn Pfautz Deposition at 201:8-17. Rather, Dr. Pfautz's testimony will concern

---

[1] *See infra* at 4-6; *see also AT&T Corp. v. FCC*, 841 F.3d 1047, 1049 (D.C. Cir. 2016); Order on Remand and Declaratory Ruling, *In the Matter of Connect America Fund*, 34 FCC Rcd 12692, n.59 (Dec. 17, 2019) ("2019 Declaratory Ruling"); *id.* ¶¶ 4, 14.

his evaluation of the methodology Level 3 used to estimate its OTT VoIP percentage, *see id.* 201:8-9, and his conclusion that "the method Level 3 used to estimate the over-the-top VoIP traffic of unaffiliated third party VoIP providers was unreasonable," and "almost certainly understated the proportion of that traffic billed by Level 3." ECF No. 144-2, Expert Report of Dr. Penn Pfautz ¶ 6.

Level 3's proposed methodology for determining its OTT VoIP percentage involves dividing the total number of estimated OTT VoIP calling minutes (the numerator) by the total number of end office minutes of use ("EO MOUs") associated with certain customers (the denominator). Whether Level 3's inputs into both the numerator and the denominator – which Level 3 will attempt to establish through one of its expert witnesses – are either too high or too low (or otherwise unreliable) are certainly appropriate areas for expert testimony. It is for this reason that Dr. Pfautz has questioned whether it was appropriate for Level 3 to bill end office charges for the minutes of use associated with certain customers. *See* ECF No. 144-2 ¶¶ 37-40; ECF No. 139-4, Expert Rebuttal Report of Dr. Penn Pfautz ¶¶ 21-24. As such, the portions of Dr. Pfautz's testimony that Level 3 seeks to exclude relate to facts squarely at issue. Accordingly, the Motion to Preclude should be denied.

## ARGUMENT

**1.** Level 3's Motion to Preclude is fundamentally flawed because it appears to seek a legal determination to which it is not entitled (and for which it did not seek summary judgment). The premise of its motion is that, for any calls made from a telephone number assigned to Level 3, Level 3 has the right to assess end office access charges. ECF No. 139, Motion to Preclude at 4-5; *see also* ECF No. 144-1, McClure Resp. Discl. ¶ 10 (Claiming that "the Settlement Agreement

3

gave Level 3 the right to bill *end office charges* on calls associated with its own TNs.") (emphasis added).[2]  But Level 3 ignores the law and misinterprets the parties' Agreement.

Under the rules and orders of the Federal Communications Commission ("FCC"), local carriers like Level 3 can generally only charge for services they provide, although the FCC has also determined that on VoIP calls, local carriers can bill either for services they provide, or for services (or functions) that their VoIP partners provide.  *See* Eighth Report & Order, *Access Charge Reform*, FCC 04-110, ¶ 21 (the FCC's "long-standing policy" is that local carriers "should charge only for those services that they provide") ("*Eighth Report and Order*"); *In re Connect America Order*, 26 FCC Rcd. 17663, ¶ 970 (2011) (on VoIP calls, a local carrier can charge for "functions performed by it and/or by its retail VoIP partner" but the FCC's "rules do not permit a LEC to charge for functions performed neither by itself or its retail service provider partner.").

Under these rules, when a local carrier is providing only an intermediate routing function, and another carrier—such as a wireless carrier or a cable company—is providing the connection to the customer placing or receiving the call, then the local carrier is entitled to bill only tandem access charges, and not end office switching charges.  *See Eighth Report & Order*, ¶ 21 (the appropriate rate is "the end office switching rate when a competitive [local carrier] originates or terminates calls to end-users and the tandem switching rate when a competitive [local carrier] passes calls between two other carriers."); *see also id.* ¶ 16.

Thus, if a local carrier like Level 3 provides a telephone number to an end user, but performs only an intermediate routing function on a particular call, the FCC's rules provide that

---

[2] Under procedures established by the FCC, carriers and other entities may obtain 10-digit telephone numbers that they then can assign for use by their customers.  There is an industry database of telephone numbers that shows which provider the number is assigned.

Level 3 can bill tandem switching charges, but not end office charges. *Id.* ¶ 21. What is more, on VoIP calls, the FCC explicitly rejected the position that a local carrier's provision of a telephone number was sufficient to allow the carrier to assess the "full" amount of access charges, *i.e.*, including both end office and tandem switch charges. *Connect America Order*, 27 FCC Rcd. 2142, ¶ 4 (2012) (rejecting the argument that a local carrier is "entitled to charge the full 'benchmark' rate level, whenever it is providing telephone numbers and some portion of the interconnection . . . regardless of how or by whom the last-mile transmission is provided." (internal citation omitted)).

Despite these clear FCC rules, Level 3 claims that the Agreement provides it with the right to bill *end office* access charges whenever it provides the end user with the telephone number— even if Level 3 (or its VoIP partner) do not provide end office switching functions. ECF No. 144-1, McClure Resp. Discl. ¶¶ 2, 10. But that is not what the Agreement says. It merely says that "Level 3 will continue to bill AT&T *full switched access charges* on domestic traffic that originates with or terminates to Level 3 assigned [telephone numbers]." ECF No. 15-1 at 3 (emphasis added). In other words, where Level 3 provides the caller with a Level 3-assigned telephone number, but neither Level 3 nor its VoIP partner provides the end office/last-mile functions, the "full access charges" that Level 3 is entitled to bill are *tandem switching* charges—not end office. This is a straightforward matter of contract interpretation. The 2015 Agreement doesn't define what "full" access charges are, but agreements are construed to be lawful, Restatement (Second) of Contracts § 203 (1981), so reading the Agreement to allow end office charges in "full" where they otherwise would be unlawful does not make sense.

**2.** The second fundamental problem with the Motion to Preclude is that Level 3 has mischaracterized its own expert's methodology and the inputs that their expert uses to determine

Level 3's OTT VoIP percentage by stating that "[e]nd office switched access charges on non-OTT-VoIP traffic simply are not at issue." ECF No. 139, Motion to Preclude at 7. In fact, Level 3's expert has made clear that the "total end-office minutes" billed to AT&T on all end office traffic is a key component of Level 3's OTT VoIP calculation. *See* Ex. 2, McClure Depo. 53:15-23. For this reason, Dr. Pfautz's testimony regarding whether certain end-office minutes of use should be included in Level 3's OTT VoIP calculation is highly relevant and certainly admissible under Rule 702. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

Dr. Pfautz will testify that Level 3's methodology and inputs for determining its OTT VoIP percentage is seriously flawed, and that one of those flaws involves EO MOUs associated with certain customers. *See, e.g.*, ECF No. 144-2 ¶¶ 38-40. Level 3's methodology for determining its OTT VoIP percentage requires it to divide the total number of estimated OTT VoIP calling minutes by the total number of EO MOUs. *See* Ex. 2, McClure Depo. 54:14-17; *see also* ECF No. 144-2 ¶ 30. The testimony that Level 3 seeks to exclude concerns the denominator—that is, the total amount of EO MOUs that have properly been billed to AT&T. In short, Dr. Pfautz will challenge whether Level 3 has properly included in the denominator of its OTT VoIP calculation EO MOUs belonging to certain customers that "appear to be facilities based carriers that, based on [his] experience, would have their own end user customers," and other customers that may be "originating calls from their own end users over their own facilities." ECF No. 144-2 ¶¶ 38-39. Dr. Pfautz will explain that "[t]o the extent this is occurring, then the total number of end office switching minutes [i.e. the denominator] is inflated." *Id.* ¶ 40.[3] Accordingly, if the "end office

---

[3] Level 3's own expert has acknowledged that end office charges would not be appropriate if a customer provided its own facility. *See* Ex. 2, McClure Depo. 170:8-14.

minutes of use is not accurate" because "they are too high, then the denominator used . . . will be too high, and the resulting [OTT VoIP percentage] would be too low." *Id.* ¶ 33 (internal parenthetical omitted). Given that Level 3's OTT VoIP percentage is a key disputed issue, *see* ECF No. 151-2, Level 3 Mot. For Sum. Jud. at 10 (noting that "the exact percentage of Level 3's OTT [VoIP] traffic is the subject of factual dispute"), Dr. Pfautz's testimony is, therefore, highly relevant and should be admitted.

Dr. Pfautz's testimony is also reliable. *Daubert*, 509 U.S. at 592. Dr. Pfautz has made clear that his challenge to these inputs relates to the fact that Level 3 and Level 3's relevant customers could *both* be billing AT&T end-office access charges. *See* Ex. 1, Dr. Penn Pfautz Deposition at 132:13-15. It is clear that such double billing would be unlawful. *In re Connect America Order*, 26 FCC Rcd. 17663, ¶ 970 (2011). Given that Dr. Pfautz's testimony relates to Level 3's *own* data and inputs and to potential flaws in Level 3's *own* OTT VoIP methodology and inputs, his testimony about those concerns is clearly admissible pursuant to Rule 702 of the Federal Rules of Evidence.

## CONCLUSION

For the foregoing reason, Level 3's motion should be denied.

Respectfully submitted this 16th day of July, 2020.

By: /s/ Justin A. Benson

Rebecca B. DeCook
Andrew T. Flynn
Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1027
becky.decook@moyewhite.com

7

andrew.flynn@moyewhite.com

Michael J. Hunseder
Michael D. Warden
Justin A. Benson
Joshua W. Moore
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
mhunseder@sidley.com
mwarden@sidley.com
jbenson@sidley.com
joshua.moore@sidley.com

*Attorneys for Plaintiff AT&T Corp. and Counterclaim Defendant Teleport Communications Group*

## CERTIFICATE OF SERVICE

I, Justin A. Benson, hereby certify that on July 16, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Charles W. Steese, #26924
Douglas N. Marsh, #45964
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
Email: csteese@armstrongteasdale.com
Email: dmarsh@armstrongteasdale.com

*Attorneys for Defendant Level 3 Communications, LLC*

/s/ Justin A. Benson
Justin A. Benson
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
E-mail: jbenson@sidley.com

*Attorney for Plaintiff AT&T Corp. and Counterclaim Defendant Teleport Communications Group*