# EXHIBIT 1

Page 1

1                UNITED STATES DISTRICT COURT
2                 FOR THE DISTRICT OF COLORADO
3
4    AT&T CORPORATION,              ) Civil Action File No.:
5              Plaintiff,           ) 18-cv-00112-RM-MEH
6         vs.                       )
7    LEVEL 3 COMMUNICATIONS, LLC,   )
8              Defendant.           )
9    _____)
10
11            NON-CONFIDENTIAL PORTION
12   CONFIDENTIAL ATTORNEYS' EYES ONLY BOUND SEPARATELY
13                     PAGE 148
14                   PAGES 206-214
15
16       DEPOSITION OF PENN L. PFAUTZ, PH.D.
17                  VIRTUAL ZOOM
18             TUESDAY, APRIL 28, 2020
19
20
21   Reported by:
22   ASHALA TYLOR, CSR #2436, CLR, CRR, RPR
23   JOB NO. 4083362
24
25   PAGES 1 - 236

Page 2

1                 UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF COLORADO

3

4    AT&T CORPORATION,              ) Civil Action File No.:

5              Plaintiff,           ) 18-cv-00112-RM-MEH

6         vs.                       )

7    LEVEL 3 COMMUNICATIONS, LLC,   )

8              Defendant.           )

9    _____ )

10

11

12

13

14

15

16       Deposition of PENN L. PFAUTZ, PH.D., taken via

17    Zoom videoconference commencing at 8:08 a.m. (PST), and

18    ending at 3:05 p.m., on Tuesday, April 28, 2020, before

19    Ashala Tylor, CSR No. 2436, RPR, CRR, CLR.

20

21

22

23

24

25

```
                                                          Page 3

 1    APPEARANCES OF COUNSEL:
 2    On behalf of Plaintiff:
 3         SIDLEY AUSTIN LLP
 4         BY:  JUSTIN A. BENSON, ESQ.
 5              MICHAEL J. HUNSEDER, ESQ.
 6         1501 K Street, N.W.
 7         Washington, D.C.  20005
 8         202.736.8757
 9         jbenson@sidley.com
10         mhunseder@sidley.com
11
12    On behalf of the Defendant:
13         ARMSTRONG TEASDALE LLP
14         BY:  CHUCK STEESE, ESQ.
15              DOUG N. MARSH, ESQ.
16         4643 South Ulster Street, Suite 800
17         Denver, Colorado  80237
18         720.200.0676
19         csteese@armstrongteasdale.com
20
21
22    Also Present:
23         Mark Hesse
24
25
```

Page 132

1   traditional facilities-based carriers, and I'm
2   differentiating from cable companies, and you raised
3   One Communications, Inteliquent, Cincinnati Bell,
4   and others, correct?
5           (Reporter clarification.)
6       Q.   -- One Communications, Inteliquent,
7   Cincinnati Bell, and others, correct?
8       A.   That's correct.
9       Q.   Same questions with respect to this
10  category of calling, your concern is not OTT,
11  correct?
12      A.   That's correct.
13      Q.   Your concern here is, is there double
14  billing going on, correct?
15      A.   Correct.
16      Q.   And do you have any evidence that double
17  billing is going on?
18      A.   No, I do not.
19      Q.   And if these are indeed Level 3 TNs, you
20  would expect the same thing. You would expect that
21  AT&T would be able to identify those and keep from
22  paying double charges if, for some reason, double
23  billing had occurred?
24      A.   As before, I would expect they might but I
25  really don't have any information whether that's a

Page 201

1  THE WITNESS: Could you read a little bit
2  more from the beginning? I'll see where I left off.
3              (The record was read by the
4              court reporter, as requested)
5  THE WITNESS: And the -- I forgot what I
6  was going to say, but -- let me try to restate it
7  again.
8       I view my assignment as evaluate the
9  process Level 3 used to estimated OTT. I did not
10 particularly say based on this order or whatever.
11 It was, you know, the process, was what I was
12 focused on.
13      I understood that the companies had agreed
14 to a certain settlement framework that -- you know,
15 who owed who how much of what, depending on some
16 other circumstances. But those circumstances were
17 beyond, you know, what I was evaluating.
18 BY MR. STEESE:
19      Q.   So did you look at the settlement
20 agreement subparens 3 and 4 at all for purposes of
21 creating your expert report?
22      A.   I -- I looked at them really just in terms
23 of, okay, I understand what was the back and forth
24 between the companies. Beyond that, didn't really
25 figure into the report.