**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-RM

AT&T CORP.,

      *Plaintiff/Counter Defendant,*

v.

LEVEL 3 COMMUNICATIONS, LLC,

      *Defendant/Counterclaimant,*

and

BROADWING COMMUNICATIONS, LLC, GLOBAL CROSSING
TELECOMMUNCATIONS, INC., and WILTEL COMMUNICATIONS, LLC

      *Counterclaimants,*

v.

TELEPORT COMMUNICATIONS GROUP, INC.

      *Counterclaim Defendant*

---

**AT&T's OPPOSITION TO LEVEL 3's MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff/Counterclaim Defendant AT&T Corp. ("AT&T") and Counterclaim Defendant Teleport Communications Group, Inc. ("TCG") (collectively, "AT&T/TCG"), by and through undersigned counsel, submit this memorandum in opposition to the Motion for Summary Judgment (ECF No. 152) filed by Level 3 Communications, LLC; Broadwing Communications, LLC; Global Crossing Telecommunications, Inc.; and Wiltel Communications, LLC (collectively, "Level 3").

## INTRODUCTION

Level 3 has moved for partial summary judgment on three issues.  None of its arguments have merit.  *First*, Level 3 argues that, under the 2015 Settlement Agreement between Level 3 and AT&T (the "2015 Agreement," ECF No. 15-1), Level 3 does not need to credit AT&T for all of Level 3's overcharges to AT&T on "over-the-top" Voice over Internet Protocol ("OTT VoIP") calls.  ECF No. 151-2, Level 3 Motion for Summary Judgment ("Level 3 Mot.") at 11-20.  Level 3's position that it may retain ███ of its unlawful overcharges through February 2020 is wrong as a matter of law, and the Court should rule in favor of AT&T, which filed its own motion for summary judgment on this very issue.  *See* ECF No. 149, AT&T's Motion for Partial Summary Judgment ("AT&T Mot.") at 15-22.

As in its Motion to Dismiss, ECF No. 14, Level 3's argument relies on the mistaken view that the 2015 Agreement allowed it to pay only a partial refund until the Federal Communications Commission ("FCC") definitively resolved the appropriate charges on OTT VoIP calls.  As the Court concluded in its order on that motion, however, the 2015 Agreement is "clear" that the partial refund has "nothing to do with resolution of the 'OTT-VoIP billing issue' by the FCC."  ECF No. 76, at 10.  Instead, as the Court reasoned, under the plain terms of the 2015 Agreement, the period in which a partial refund was owed ended in, once three conditions were met.  *See id.* (partial refund owed "when (1) the Declaratory Ruling is overturned in whole or in part, and (2) 'the applicable order on appeal' (a) becomes final and (b) is no longer subject to further appeal or other judicial review").  Each of these conditions was met in May 2017.  In its summary judgment motion, the only condition that Level 3 contends was not met as of May 2017 was that the D.C. Circuit's judgment in *AT&T Corp. v. FCC*, 841 F.3d 1047 (D.C. Cir. 2016) ("*AT&T*") was not

2

"final"—because the Court of Appeals both vacated and *remanded* the *OTT Declaratory Order* to the FCC.[1]  Level 3 Mot. at 14.  Level 3 is wrong.  The D.C. Circuit's decision became final when it issued its mandate, regardless of whether it remanded to the FCC.  To argue to the contrary, Level 3 relies on inapposite cases about an appellate court's jurisdiction over appeals from a district court decision remanding to an agency, not on cases involving direct appeals of agency actions to courts of appeals.  Level 3 also seeks to rely on extrinsic evidence to interpret the 2015 Agreement, but extrinsic evidence cannot be used to contradict clear contractual terms.  And in any event, the extrinsic evidence cited by Level 3 supports AT&T's interpretation of the 2015 Agreement, not Level 3's interpretation.

*Second*, even though Level 3 admits that "the exact percentage of Level 3's OTT traffic is the subject of factual dispute," Level 3 nonetheless seeks to have this Court make a finding on summary judgment that "Level 3's percentage of OTT [VoIP] traffic is no higher than ███ percent." Level 3 Mot. at 22.  Level 3 bears a heavy burden in moving for summary judgment on this factual issue, *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008), and it does not meet its burden.  In claiming that this "factual dispute" of the percentage of Level 3's OTT traffic is somehow undisputed, Level 3 relies entirely on the estimates and opinion testimony of its employee-expert, Andrew McClure.  But his opinions are hotly disputed, in at least two ways.  First, there is a dispute as to the admissibility of those opinions and if the Court were to grant AT&T's *Daubert* motion, Level 3 could not even meet its burden of production—much less its burden of persuasion—on this issue.

---

[1] The 2015 Agreement defines the *OTT Declaratory Order* as the "Declaratory Ruling released on February 11, 2015, *see Connect America Fund*, WC Docket No. 10-90, *et al*., Declaratory Ruling, FCC 15-14 (released Feb. 11, 2015)."  *See* ECF No. 15-1, 2015 Agreement at 1.

Second, even if Mr. McClure's opinion were admissible, Level 3 falls far short of meeting its burden of persuasion that his testimony establishes as a matter of law that Level 3's OTT VoIP traffic is between ██ and ██ percent.  AT&T's expert disputes his conclusions, explaining several methodological flaws and flawed inputs in Mr. McClure's approach.  The fact-finder could credit the testimony of AT&T's expert and conclude that Mr. McClure's estimates, while admissible, are nonetheless unreliable.  The fact-finder could find those estimates unreliable because, for example, (1) Mr. McClure did not review any OTT VoIP percentages during the period at issue, but relied on data from 2017; (2) he did not examine OTT VoIP traffic patterns for many of Level 3's customers; and/or (3) a large portion of the data he collected in 2017 was based on undocumented internet "click-to-chat" sessions with unknown persons that Mr. McClure conceded could be unreliable.  In short, the percentage of Level 3's OTT VoIP traffic is manifestly a factual question on which the record evidence is in sharp dispute, and summary judgment on that issue is inappropriate under any circumstances.

*Third,* Level 3 seeks partial summary judgment on its statutory counterclaim, based on the Communications Act, that TCG overcharged Level 3 on OTT VoIP calls.  Level 3 Mot. at 23-25.[2] Once TCG understood that it was billing end office access charges on products that included a small, partial OTT VoIP calling capability, TCG began issuing simultaneous credits to Level 3 for the charges in July 2019, so there is no liability after the credits were issued.  Further for the period prior to July 2019, Level 3 began withholding payment of billed charges, and the amounts withheld

---

[2] The Court dismissed AT&T's mirror-image statutory claims as unripe because the FCC had not issued a final ruling, but because the FCC has since done so, AT&T has moved to reinstate those claims.  Level 3's Communications Act claim against TCG is identical to AT&T's statutory claims, and Level 3's decision to seek partial judgment on that claim confirms that AT&T's statutory claims likewise are now ripe and should be reinstated.  *See* ECF No. 147.

far exceed any overcharges, and Level 3 thus has incurred no damages for that pre-July 2019 period.

## ARGUMENT

### I.   THE PERIOD IN WHICH A PARTIAL REFUND IS OWED ENDED IN MAY, 2017 WHEN THE COURT OF APPEALS ORDER BECAME FINAL, AND NOT IN 2020 WHEN THE FCC RULED ON REMAND.

Level 3 argues that the refund provisions of the 2015 Agreement were not triggered until February 19, 2020, when the FCC's *2019 Declaratory Ruling*[3] was no longer subject to judicial review.  Level 3 Mot. at 12-13.  In support of this argument, Level 3 ignores the plain language in the 2015 Agreement, which provides that the period in which only a partial refund of end office charges on OTT VoIP calls is owed ended once the D.C. Circuit's judgment became final in May 2017; this Court has already found this language is not tied to further action by the FCC. Accordingly, Level 3 unquestionably owes a full refund for all end office charges billed to AT&T on OTT VoIP calls from January 1, 2019 to the present.  The Court should therefore deny Level 3's Motion as to Count 1 of Level 3's counterclaims and, for the reasons set forth in AT&T's Motion for Partial Summary Judgment, grant judgment as to Count 1 of AT&T's Complaint.

### A.   This Court Has Already Rejected Level 3's Position that Refund Obligation Under the 2015 Agreement Was Tied to An Order of the FCC.

This Court has already made clear that the 2015 Agreement does not support Level 3's convoluted argument that the 2019 FCC Order is the "Final Appellate Order."[4]  In fact, this Court

---

[3] Order on Remand and Declaratory Ruling, *In the Matter of Connect America Fund*, 34 FCC Rcd 12692 (Dec. 17, 2019) ("*2019 FCC Order*").

[4] The term "2019 FCC Order" refers to the Order on Remand and Declaratory Ruling, *In the Matter of Connect America Fund*, 34 FCC Rcd 12692 (Dec. 17, 2019) ("*2019 FCC Order*").  On December 17, 2019, on remand from the September 8, 2016 D.C. Circuit Court of Appeals' decision, the FCC issued an "Order

found that the 2015 Agreement is "clear in the following respect[: the] refund that [AT&T] may or may not be entitled, has nothing to do with resolution of the 'OTT-VoIP billing issue' by the FCC." ECF No. 76 at 10. Indeed, "the conditions that must be satisfied in order for [AT&T] to be entitled to a refund do not involve final resolution of the OTT VoIP billing issue." *Id.* Rather, the 2015 Agreement makes clear that AT&T "will be entitled to a refund when (1) the [*OTT Declaratory Order*] is overturned in whole or in part, and (2) 'the applicable order on appeal' (a) becomes final and (b) is no longer subject to further appeal or other judicial review." *Id.* These events have unquestionably occurred. Level 3's attempt to tie its refund obligation to the 2019 FCC Order is wrong.

*First*, the FCC's 2015 *OTT Declaratory Order* was unquestionably overturned "in whole or part" by the D.C. Circuit's decision in *AT&T*, which was issued on November 18 2016. The D.C. Circuit vacated the *OTT Declaratory Order*, *AT&T*, 841 F.3d at 1056, which plainly means that the *OTT Declaratory Order* was overturned "in whole or part." *See Action on Smoking & Health v. CAB*, 713 F.2d 795, 797 (D.C. Cir. 1983) ("To 'vacate' . . . means 'to annul; to cancel or rescind; to declare, to make, or to render, void; to defeat; to deprive of force; to make of no authority or validity; to set aside.'"). The first condition under the Court's interpretation of the 2015 Agreement is therefore met.

*Second*, the D.C. Circuit's judgment in *AT&T* – the *only* order on appeal – is the "applicable order on appeal" and the "Final Appellate Order." The 2015 Agreement establishes the "applicable order on appeal" is the order that "overturn[s]" the *OTT Declaratory Order* either in whole or in

---

on Remand and Declaratory Ruling" in which it clarified that end office switched access charges do not apply to OTT calls. *Id.* ¶ 3, 24.

part, and as explained above, the D.C. Circuit clearly overturned the *OTT Declaratory Order* when it vacated it.

*Third*, the judgment in *AT&T* became "final" on February 6, 2017, when the D.C Circuit's mandate issued.  *See In re Sunset Sales, Inc.*, 195 F.3d 568, 570 (10th Cir. 1999) ("Issuance of the mandate formally marks the end of appellate jurisdiction.").  And that judgment was no longer subject to further appeal or other judicial review 90 days later when the time to seek Supreme Court review expired.  *See* 47 U.S.C. § 402(h), (j); 28 U.S.C. § 2350(a).

Therefore, "the conditions that must be satisfied in order for [AT&T] to be entitled to a refund" have indisputably occurred, as the "applicable order on appeal" has been final since May 2017.  ECF No. 76 at 10.  "Put simply, [Level 3] has framed the issue wrong," by arguing that its refund obligations "involve final resolution of the OTT VoIP billing issue."  *Id.*  The 2015 Agreement is clear:  the period in which Level 3 need pay only a partial refund of end office charges that AT&T was then paying in full ended in May 2017.  After that point, Level 3 owes a full refund of all end office charges on OTT VoIP calls.  *See* ECF No. 149, AT&T Mot., Part I.

Level 3 also attempts to argue that *AT&T* was not final because the D.C. Circuit vacated and remanded the *OTT Declaratory Order* back to the FCC.  Level 3 Mot. at 14.  The cases cited by Level 3 in support of its position are inapposite because they all involve appeals from trial court orders remanding an issue back to an agency.[5]  Here, once the D.C. Circuit vacated the *OTT*

---

[5] *See Caesar v. West*, 195 F.3d 1373, 1374 (Fed. Cir. 1999) (holding that remand order from the Court of Appeals for Veterans Claims to the Board of Veterans' Appeals is not final for purposes of Federal Circuit jurisdiction); *Klees-Wallace v. FCC*, 815 F.3d 805, 808 (Fed. Cir. 2016) (holding that an arbitrator's non-final determination did not confer appellate jurisdiction.); *Cabot Corp. v. United States*, 788 F.2d 1539, 1542-43 (Fed. Cir. 1986) (holding that trial court remand orders do not confer appellate jurisdiction); *Miami Tribe Of Oklahoma v. United States*, 656 F.3d 1129, 1139-40 (10th Cir. 2011) (holding that a remand *by a district court* to an administrative agency was not final to confer *appellate* jurisdiction); *Schreck v. Wyman*,

*Declaratory Order*, it was required to "remand the case" back to the FCC, *see* 47 U.S.C. § 402(h), and "[t]he court's judgment *shall be final*, subject, however, to review by the Supreme Court . . . ." *Id.* § 402(j) (emphasis added). Indeed, Level 3 does not cite a single case that establishes that once the mandate of a federal court of appeals issues, the judgment is somehow not final. This is because it is black letter law that "'[i]ssuance of the mandate formally marks the end of appellate jurisdiction,'" *In re Sunset Sales, Inc.*, 195 F.3d 568, 570 (10th Cir. 1999) (*quoting Johnson v. Bechtel Assocs. Prof'l Corp.*, 801 F.2d 412, 415 (D.C. Cir. 1986)), and it is for this reason that the Supreme Court routinely reviews appellate decisions remanding matters to agencies. *See*, *e.g.*, *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009). Consequently, the D.C. Circuit's judgment in *AT&T* is final and "no longer subject to further appeal or other judicial review." That has been true since May 2017—90 days after the D.C. Circuit denied the petition for rehearing that Level 3 and other intervenors had filed, and the period for seeking Supreme Court review expired. *See* Sup. Ct. R. 13; 28 U.S.C. § 2350(a). For all of these reasons, under the 2015 Agreement, the period in which only a partial refund may have been owed began in June 2015, and ended in May 2017, when there was no possibility of further judicial review of the D.C. Circuit order in AT&T. ECF No. 15-1, 2015 Agreement at 3, § 1(a)(iv) (partial refund applies "beginning with June 2015 traffic *through the date on which such Final Appellate Order becomes final* and is no longer subject to further appeal or other judicial review") (emphasis added).

### B. Level 3's Interpretation Conflicts With the 2015 Agreement's Clear Terms.

Level 3 argues that the conditions trigging the refund provisions of the 2015 Settlement

---

39 A.D.2d 809, 810, (N.Y. App. Div. 1972) (holding that a remand to a state agency by trial court did not grant appellate jurisdiction).

Agreement were not satisfied until February 19, 2020, when the 2019 FCC Order was no longer subject to appeal.  *See* Level 3 Mot. at 12-13.  But in so arguing, Level 3 fails to address either the actual terms in the 2015 Agreement that address this issue, or this Court's prior holding that AT&T's refund "has nothing to do with resolution of the 'OTT-VoIP billing issue' by the FCC." ECF No. 76 at 10.  Instead, Level 3 asks the Court to construe *other* terms in the 2015 Agreement that are no longer at issue, and contends that its interpretation is the only one that gives legal meaning to all of the 2015 Agreement's terms.  In particular, relying on the final sentence of Section 1(a)(iv) of the Agreement (which has nothing to do with the refund issue), Level 3 argues that the FCC's 2019 Order must be the "Final Appellate Order" because the D.C. Circuit's judgment in *AT&T* "did not determine that the OTT charges 'should not have been charged."  Level 3 Mot. at 15.  Level 3's argument is flawed, because it fails to address those terms of the 2015 Agreement that (as the Court previously ruled) govern when the partial refund was owed.  In any event, its interpretation is fundamentally inconsistent with the plain meaning of the 2015 Agreement.

While Level 3 is correct that contracts are to be "'construed in accord with the parties' intent,'" Level 3 Mot. at 13 (quoting *Willsey v. Gjuraj*, 885 N.Y.S.2d 528 (N.Y. App. Div. 2009)), Level 3 fails to note, however, that "[t]he best evidence of what parties to a written agreement intend is what they say in their writing."  *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (N.Y. 2002) (quotation marks omitted).  For this reason, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Id.*  Given that the 2015 Agreement is "clear" on the issue of when the partial refund was owed (ECF No. 76, at 10)—namely, that the Final Appellate Order triggered Level 3's refund obligation

is the D.C. Circuit's judgment in *AT&T*—the inquiry ends there.

Further, although Level 3 is correct that a court need not ignore the context in which the Parties executed the 2015 Agreement, *see* Level 3 Mot. at 13, the context here is inconsistent with Level 3's interpretation of the 2015 Agreement.   In essence, the Parties drafted and executed the 2015 Agreement to address the uncertain outcome regarding the FCC's *OTT Declaratory Order* then before the D.C. Circuit.  For this reason, the 2015 Agreement's recitals note that "AT&T filed a Petition for Review of the *OTT Declaratory Order* with the [D.C. Circuit] (the "OTT Appeal"). ECF No. 15-1, 2015 Agreement at 1.  The Parties further "recognize[d] the pendency of the OTT Appeal."  *Id.* at 3, § 1(a)(iv).  Accordingly, they agreed that Level 3's obligation to refund AT&T would depend upon whether the D.C. Circuit overturned the *OTT Declaratory Order* "in whole or part;" and, at the point when the D.C Circuit's order became final, AT&T would be entitled to a refund.  *Id.*  On the other hand, if the D.C. Circuit were to affirm the *OTT Declaratory Order*, Level 3 would not be required to provide a refund.  *Id.*  As such, by its plain terms, the 2015 Agreement establishes that the "applicable order on appeal" and the "Final Appellate Order" refer to the D.C. Circuit's forthcoming decision in AT&T's pending "OTT Appeal," and not any subsequent orders of the FCC.

Level 3 attempts to disregard the 2015 Agreement's plain language by citing to other provisions that it contends somehow demonstrate the Parties' intent to tie Level 3's refund obligation to the 2019 FCC Order.  *See* Level 3 Mot. at 14-15.  It strains credulity, however, to believe that AT&T would agree to pay end office rates on OTT calls indefinitely, irrespective of the D.C. Circuit's ruling, and while waiting for the FCC to issue an order—which the FCC was under no obligation to issue and did not issue until December 2019, more than three years after the

Court of Appeals' ruling—that determined whether end office rates applied to OTT calls. Level 3's selective quotations from the 2015 Agreement do not change this conclusion. Based on the plain language of the Agreement, *see supra* Part I.A., ECF No. 76 at 10, the period in which Level 3 was obligated to provide its partial refund to Level 3 ended when the D.C. Circuit's judgment became final and no longer subject to further review in May 2017.

Although the Court need no longer grapple with exactly how the last sentence of section 1(a)(iv) of the 2015 Agreement applies, *see* ECF No. 149, AT&T Mot., Part II, Level 3's reading of that provision is, in all events, wrong. When the D.C. Circuit's Final Appellate Order became final, Level 3 was required to bill OTT traffic "in compliance with [the] terms of that order." ECF 15-1, 2015 Agreement, § 1(a)(iv). The D.C. Circuit's judgment in *AT&T* had the effect of reinstating the *Transformation Order*, which were the FCC's rules in effect before the *OTT Declaratory Order*.[6] *See Action on Smoking & Health v. C.A.B.*, 713 F.2d 795, 797 (D.C. Cir. 1983) ("[B]y vacating [the order]. . ., the judgment of this court had the effect of reinstating the rules previously in force."). The *Transformation Order* does not—and did not—permit Level 3 to bill switched access charges on OTT calls. *Transformation Order,* ¶ 970. Certainly, that result is indisputable in light of the FCC's *2019 Order*. The FCC has explained that the *Transformation Order* prohibited end office charges on OTT traffic all along. *See* 2019 FCC Order ¶ 26 ("[R]etroactivity is necessary to prevent an undue hardship being worked upon those parties who properly interpreted the [*Transformation Order* to prohibit end office charges on OTT VoIP calls where the LEC or its carrier or its partner do not provide the end office switching functions] and

---

[6] The term "*Transformation Order*" refers to the In re Connect America Order, 26 FCC Rcd. 17663 (2011) ("*Transformation Order*"), *Pets. for review denied sub nom. In re FCC 11-161*, 753 F.3d 1015 (10th Cir. 2014).

have been in disputes ever since.").[7]

Despite this, Level 3 insists that it somehow can ignore the requirements of the *Transformation Order* because the 2015 Agreement requires it to bill end office charges in accordance with the Final Appellate Order. *See* Level 3 Mot. at 16. Level 3's circular argument is unavailing, because as explained above, *AT&T* had the effect of reinstating the *Transformation Order*'s prohibition on switched access charges on OTT VoIP calls. As such, in order to comply with the Final Appellate Order, Level 3 was required to comply with the *Transformation Order*'s prohibition on switched access billing on OTT VoIP calls.

Finally, Level 3's lengthy argument (at Level 3 Mot. 16-19) that its reading of the 2015 Agreement (but not AT&T's) is consistent with the filed tariff doctrine is wrong, and ultimately beside the point. It is wrong because the FCC's VoIP pricing rules are unambiguous: while carriers are permitted to file tariffs that apply to VoIP services, they also "remain free to negotiate interconnection agreements specifying alternative compensation for that traffic instead."[8]

---

[7] In fact, although the point is now largely academic in light of the retroactivity determination by the FCC, there was no valid argument even before the FCC 2019 Order that end office charges were permitted by the FCC's VoIP rules and other precedents. The D.C. Circuit cited passages from the Transformation Order that "[o]n their face . . . seem to deny an over-the-top provider authority to charge end-office switching rates." *AT&T*, 841 F.3d at 1054. This makes sense because the FCC's 2011 rules "do[] not permit" a local exchange carrier ("LEC") like Level 3 to "charge for functions not performed by the local exchange carrier itself" or a VoIP partner, 47 C.F.R. § 51.913(b), and LECs like Level 3 do not perform the functions needed to complete an OTT VoIP call. *See* Concurring Statement Of Commissioner Jessica Rosenworcel, 34 FCC Rcd 12692 (In switching her vote from allowing end office charges in 2015 to denying them in 2019, she stated "the [appellate] court has spoken. . . . I am mindful that the court left us with little room to maneuver."); *See also O1 Commc'ns v. AT&T*, 2017 WL 8294245, *1-2 (N.D. Cal. Dec. 19, 2017) (tariffs barred VoIP charges where the tariffs incorporated the FCC VoIP rules).

[8] *Transformation Order*, ¶ 960; *see id.* ¶¶ 812, 961. Level 3 (Level 3 Mot. at 17-18) misstates the applicable law under the FCC's VoIP rules. *See* ECF No. 149, AT&T Mot. at 7 n.8. The FCC's transitional pricing rules specify "*default*" rates, but "telecommunications carriers may agree to rates *different* from the default rates." 47 C.F.R. § 51.905(a) (emphases added); *Transformation Order*, ¶¶ 812, 960-61. The cases cited by Level 3 apply to time periods that pre-date the FCC's 2011 transitional pricing rules and Section

Contrary to Level 3's contention (Level 3 Mot. at 17-18), under these current FCC pricing rules, it does not matter whether the agreed-to rates are lower or higher; the FCC's rules simply provide that the negotiated rates applicable to VoIP calling may be "different."  47 C.F.R. § 51.905(a).

In any event, Level 3's argument is beside the point, because even under Level 3's misguided reading of the filed tariff doctrine, neither parties' interpretation of the Agreement runs afoul of that doctrine.  Both parties agree that, for some past period, Level 3 owed only a partial credit of overcharges under the 2015 Agreement, instead of the full credit that would apply under Level 3's tariff.  The current dispute is whether that period ended in May 2017 when *AT&T* became final (as AT&T contends), or in February 2020 when the 2019 FCC Order became final (as Level 3 contends).  Under either circumstance, Level 3 is retaining *more* than what it could otherwise collect under its tariff.  But Level 3 concedes that, under the FCC's rules and the filed tariff doctrine, a local carrier can charge *more* than its filed tariff rate so long as it has a negotiated agreement.  *See* Level 3 Mot. at 17.  Accordingly, there is no issue under the filed tariff doctrine even under Level 3's misguided reading.  The current dispute thus has nothing to do with the filed tariff doctrine.[9]

---

51.905(a).  In any event, the Court need not address this issue, because even under Level 3's reading of the doctrine, it is inapplicable.

[9] Level 3 nonetheless argues that the 2015 Agreement *would* violate the filed tariff doctrine *if* the FCC had ruled in Level 3's favor on remand.  Level 3 Mot. at 18.  The Court need not address this hypothetical, in light of the FCC's ruling in AT&T's favor.  In any event, the relevant provision in the 2015 Agreement would not violate the filed tariff doctrine (even as Level 3 misinterprets it) in this hypothetical.  Rather, the provision is best understood as effecting the type of retroactive settlement that is consistent with the filed tariff doctrine.  *Qwest Corp. v. AT&T Corp.*, 479 F.3d 1206 (10th Cir.2007).  The parties were settling their disputes prior to June 2015, but continuing to dispute the applicable tariffed charges, pending the outcome of AT&T's appeal to the D.C. Circuit.  OSUMF No. 4, ECF No. 15-1, 2015 Agreement at 1.  The partial refund provision is akin to coming to a settlement of the continuing dispute that applied once the D.C. Circuit rendered a final decision no longer subject to review (which turned out to be in May 2017).  The partial refund provision means that the parties would "settle" the continued dispute between June 2015 and

**C.**   **Level 3's Resort To Extrinsic Evidence Is Inappropriate And Even if Considered By The Court, It Supports AT&T's Reading Of The 2015 Agreement.**

As a last resort, and even though this Court has already determined that Level 3's refund obligation "has nothing to do with resolution of the OTT-VoIP billing issue" by the FCC," ECF No. 76 at 10, Level 3 turns to extrinsic evidence, which it alleges establishes that the Parties intended the "Final Appellate Order" referenced in the 2015 Agreement to be an order of the FCC. Level 3 argues that the Court should ignore the plain language of the 2015 Agreement in favor of a document that contains terms not integrated into the Parties' final executed agreement—but that easily could have been if that had been what the parties intended.[10]   However, New York law does not permit the introduction of extrinsic evidence to interpret clear contractual terms.  In any event, the extrinsic evidence cited by Level 3 supports the AT&T's interpretation of the 2015 Agreement—that the Final Appellate Order was the D.C. Circuit's judgment in *AT&T*.

"Where a 'contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence.'"   *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003) (quoting *De Luca v. De Luca*, 751 N.Y.S.2d 766, 766 (N.Y. App. Div. 2002).  A contract is not ambiguous just because "the Parties disagree on the proper interpretation of the contract."  *Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 329 (S.D.N.Y. 2010); *see also Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889

---

May 2017:  if AT&T lost its appeal, it would pay the tariffed rate, and if it won in whole or in part, it would receive the disputed charges back.

[10] The 2015 Agreement makes clear that it "is the entire and complete agreement of the Parties regarding the subject matter hereof," and that "[a]ll prior discussions and negotiations regarding the Disputes have been, and are, merged and integrated into, and are superseded by, [the 2015 Agreement]."  ECF No. 15-1 at 6.

F.2d 1274, 1277 (2d Cir.1989) ("Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation."). Rather, a contract is "ambiguous where reasonable minds could differ on what a term means." *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 299 (2d Cir. 1996). As explained above, the 2015 Agreement is clear and unambiguous—the Final Appellate Order is the D.C. Circuit's judgement in *AT&T. See also* ECF No. 76 at 10 (the 2015 Agreement is "clear in the following respect. The refund that plaintiff may or may not be entitled, has nothing to do with resolution of the 'OTT-VoIP billing issue' by the FCC"). For this reason, Level 3's attempt to have this Court consider materials beyond the terms of the 2015 Agreement is inappropriate.

In any event, the extrinsic evidence that Level 3 claims supports its position actually does the opposite—it supports a finding that the Parties intended for the 2015 Agreement to mean exactly what it says: AT&T would be entitled to a refund "in the event the *OTT Declaratory Order* is overturned, either in whole or in part, and the *applicable order on appeal becomes final* and is no longer subject to further appeal or other judicial review," ECF No. 15-1, 2015 Agreement at 3, § 1(a)(iv) (emphasis added), without regard to whether the court of appeals also remanded to the FCC. Level 3's reliance on an unexecuted term sheet sent by AT&T, which provides that Level 3 would provide a refund of disputed charges "through the date of a final ruling, either from the Court of Appeals or, if remanded, by the FCC ruling" is misplaced.[11]  OSUMF Nos. 17, 18, 19,

---

[11] Level 3 cited to the term sheet in response to AT&T's objections to the Recommendation of the Magistrate Judge. *See* ECF No. 72 at 4 (citing ECF No. 15-3 (the "Term Sheet")). Despite having the Term Sheet before it, the Court still determined that Level 3's refund obligation "has nothing to do with resolution of the 'OTT-VoIP billing issue' by the FCC." ECF No. 76 at 10.

Plaintiff's Separate Statement.[12]

The final executed version of the 2015 Agreement, which both Parties drafted with the assistance of counsel, does *not* include this language.  ECF No. 15-1, 2015 Agreement at 3, § 1(a)(iv); OSUMF Nos. 17, 19.  In fact, the phrase "if remanded, by the FCC ruling" was not included in even the first draft of the Settlement Agreement, which was prepared *by Level 3*. MSUMF No 22.  Moreover, the terms "FCC" or "remand" are not included in the relevant paragraph in any subsequent draft exchanged between the Parties, MSUMF 23; OSUMF 19, 24, 25, nor in the final executed 2015 Agreement,  ECF No. 15-1 at 3, § 1(a)(iv).  Given that the 2015 Agreement is "the entire and complete agreement of the Parties," ECF No. 15-1, 2015 Agreement at 6, § 3, it is clear that if the Parties intended to tie Level 3's refund obligation to a future action of the FCC, the Parties would have included the language from the term sheet in the 2015 Agreement.  They indisputably did not.  OSUMF Nos. 5, 17, 19.  The Parties made their intent clear by "recogniz[ing] the pendency of the OTT Appeal," and, tying Level 3's refund obligation to when the "applicable order on appeal becomes final and is no longer subject to further appeal or other judicial review ('Final Appellate Order.')." [13]  ECF No. 15-1, 2015 Agreement at 3, § 1(a)(iv).

---

[12] All "OSUMF" references are to the opposing party's Separate Statement of Undisputed Material Facts filed contemporaneously with AT&T's Opposition to Level 3's Motion for Summary Judgment.

[13] Level 3's own internal documents show that they believed the "applicable order on appeal" became "final" in May 2017 when the time expired for Level 3 to appeal the D.C. Circuit decision.  OSUMF No. 81.  ("The [2015] Settlement specifically states that we credit ▮▮▮ of OTT up to the date it becomes final, which is May. It also says that we bill accordingly after the final date.";  "May, 8, 2017 was the date the ruling became final and no longer subject to appeal[].")

II.    **LEVEL 3'S FACTUAL CLAIMS AS TO THE AMOUNT OF PAYMENTS WITHHELD AND ITS PERCENTAGE OF OTT VOIP CALLING CANNOT BE RESOLVED ON SUMMARY JUDGMENT.**

In Part C of its Motion, Level 3 asserts that "AT&T dramatically overestimated the percentage of Level 3's OTT traffic, and as a result, unlawfully withheld payment on valid charges."  Level 3 Mot. at 22.  Like Level 3, *see infra*, AT&T withheld payments of billed end office charges for OTT VoIP calls.  OSUMF Nos. 45, 46.  AT&T withheld based on the view that approximately 65% of Level 3's end office charges were for OTT VoIP calls; AT&T used that 65% figure because the 2015 Agreement itself specifically provides that OTT-VoIP traffic "has historically been approximately sixty-five percent (65%) of overall billing for end office switching."  *See* ECF Doc. 15-1, 2015 Agreement at 2, § 1(a)(i)(B); OSUMF Nos. 39, 40, 45. Whether AT&T's withheld payments accurately reflects the actual amount of Level 3's OTT VoIP calling plainly presents a factual issue that cannot be resolved on summary judgment—as Level 3 concedes.  Level 3 Mot. at 23 n.9.

Beyond that, the actual percentage of Level 3's end office charges that were billed on OTT VoIP calls is also quintessentially a disputed question of fact—as Level 3 also concedes.  *See id.* at 22 ("[T]he exact percentage of Level 3's OTT traffic is the subject of factual dispute."). Nevertheless, "Level 3 asks the Court to enter a finding that Level 3's percentage of OTT traffic is no higher than █ percent."  *Id.*.  Level 3 does not meet the standard for summary judgment on this issue.

Level 3, not AT&T, bears the burden of establishing the validity and accuracy of Level 3's switched access charges to AT&T—including the accuracy of its claims regarding Level 3's

percentage of its charges that involve OTT VoIP calling.[14]  In moving for summary judgment,

Level 3's burden is "stringent," and it must meet both the burden of production and persuasion.

*See Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).  The "evidence in [Level 3's] favor must

be so powerful that no reasonable [fact-finder] would be free to disbelieve it.  Anything less should

result in denial of summary judgment."  *Leone v. Owsley*, 810 F.3d 1149, 1153-54 (10th Cir. 2015)

(citing numerous cases).

In fact, AT&T has moved to exclude the "expert" testimony disclosed by Level 3 that

purports to measure Level 3's percentage of OTT VoIP calls—specifically, the opinion of Level

3's employee-expert, Andrew McClure, that Level 3's OTT VoIP percentage dropped

precipitously from the historic figure of 65% to as low as ██.  ECF No. 141, AT&T & TCG'S

Daubert Motion to Exclude Certain Testimony of Andrew McClure, Part I.  As explained in

AT&T's *Daubert* motion, the methodology and inputs used by Level 3's employee-expert to

estimate the percentage of Level 3's OTT VoIP traffic are deeply flawed and unreliable.  *Id.*

Absent Mr. McClure's testimony, Level 3 cannot meet its burden of production and cannot obtain

summary judgment.  Indeed, partial summary judgment for AT&T would be appropriate.  *See* ECF

No. 149, AT&T Mot. at 23-24.

But even assuming, *arguendo*, that AT&T's *Daubert* motion were denied and Mr. McClure

were permitted to testify, his opinion testimony is not remotely sufficient to establish—as a matter

of law—the percentage of Level 3's OTT VoIP calling during the period in dispute.  This is

especially true at the summary judgment stage where the court is required to "view facts in the

---

[14] *See* ECF No. 149, AT&T Mot. at 23-24 (citing cases).  Level 3 claims that, once it bills for service under its tariff, the burden shifts to the customer to disprove the charges.  Level 3 Mot. at 3 n.1.  But Level 3 cites no cases for that claim, and the FCC rejected that proposition in the cases cited by AT&T.

light most favorable to [AT&T] and 'draw all reasonable inferences in [its] favor.'" *Leone*, 810 F.3d at 1153 (quoting *Tabor v. Hilti, Inc.,* 703 F.3d 1206, 1215 (10th Cir.2013)).

Level 3 cannot obtain partial summary judgment because a fact-finder could surely discredit Mr. McClure's conclusions and methodologies. Mr. McClure has continued to rely on the unreliable data that he gathered in *2017*, which cannot support his calculations and conclusions regarding Level 3's *current* OTT VoIP percentage. OSUMF Nos. 50, 56, 58, 62, 65, 84. Mr. McClure did not even ask, except in one instance, for data on the OTT VoIP percentages of Level 3's customers for periods after 2019, and he conceded the percentages could have changed since 2017. OSUMF Nos. 56, 65, 84. Of the hundreds of Level 3 customers listed in Mr. McClure's disclosure, the vast majority are listed, based on his flawed 2017 inquiries, as having ■ OTT VoIP traffic. But even assuming that the data were accurate in 2017 (which is unlikely), Mr. McClure conceded that it was "completely fair" that since that time, the percentage of OTT VoIP traffic for "all" of these customers could have increased, even dramatically. OSUMF No. 84. And, Mr. McClure had no documentation to support any of the individual percentages for Level 3 customers, including the many ■ OTT VoIP figures. OSUMF No. 85. In other cases, publicly available information about the customers showed that they appeared to have OTT VoIP traffic, yet Mr. McClure never re-examined his assumptions from 2017; indeed, in a number of cases, he admitted that "I don't know if that number is accurate, the ■. I would guess that it's probably not." OSUMF No. 86.

Accordingly, a fact-finder could conclude either that (i) his 2017 data is flawed and/or that (ii) his lack of data after January 2019 means that his opinion on the current Level 3 OTT VoIP percentage is no longer reliable. Further, because Mr. McClure did not retain any documentation

or other records about his 2017 inquiry, it is not possible for the fact-finder to assess the reliability of his OTT VoIP calculations.  *See* OSUMF Nos. 82, 83.  Indeed, Level 3 has admitted that Mr. McClure discovered errors in his calculation after his deposition.  *See* MSUMF No. 64. Accordingly, Level 3 is unable to make the required showing on summary judgment.  *Leone*, 810 F.3d at 1153 ("[W]here the moving party has the burden of proof . . . his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." (internal brackets and emphasis omitted)).

Nor is there any merit to Level 3's argument that the evidence is undisputed that Level 3's OTT VoIP percentage is between ███%.  OSUMF Nos. 56, 66.  Level 3 attempts to muddy the waters by suggesting that, if it were to fix a few minor errors in Mr. McClure's calculation, Mr. McClure's methodology and inputs would somehow be reliable.  *See* Level 3 Mot. at 22.  However, Level 3's attempt ignores the basic problem with Level 3's evidence, which purports to establish its OTT VoIP percentage is between ███%:  Mr. McClure's methodology is riddled with severe flaws that infect its overall reliability, such as the failure to query customers during the period in dispute, and the use of concededly "unreliable" and undocumented "click-to-chat" sessions to estimate the OTT VoIP percentages of Level 3's customers.  OSUMF No. 87.  If the fact finder agrees with Dr. Pfautz's criticisms and discredits Mr. McClure's opinion, the fact finder could reasonably determine that Level 3 has not met its burden of persuasion and that AT&T properly withheld 65% pursuant to the parties' agreement as to the historic figure.  *See* OSUMF Nos. 38, 45.  For these reasons, Level 3's request that this Court make a finding regarding its OTT VoIP percentage is clearly inappropriate at the summary judgment stage.  *See Roberts v. Jackson Hole Mountain Resort Corp.*, 884 F.3d 967, 972 (10th Cir. 2018) ("Summary judgment is inappropriate

where there is a genuine dispute over a material fact, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)).

**III.      SINCE JULY 2019, TCG HAS BEEN ISSUING CREDITS FOR OTT VOIP CALLS AND IS NOT OVERCHARGING LEVEL 3, AND PRIOR TO THAT PERIOD LEVEL 3 HAS INCURRED NO DAMAGES BECAUSE IT OVER-WITHHELD PAYMENT OF CHARGES TO TCG.**

Level 3 moves for partial summary judgment against TCG on Count 3 of its Counterclaims, based on violations of the Communications Act and the FCCs' VoIP rules, on the grounds that TCG charged Level 3 end office access on some OTT VoIP calls.  Level 3 Mot. at 23-24.  The motion should be denied.[15]

*First*, since July 2019, TCG no longer bills end office access charges on over-the-top VoIP calling.  OSUMF No. 88.  Since July 2019, each bill that TCG has sent to Level 3 contains a full credit to Level 3 of end office charges, based on TCG's calculations of the amount of OTT VoIP calls.  OSUMF No. 78.  TCG thus is not liable for overcharges for the post-July 2019 period.  Level 3 asserts that it has not been credited for these amounts as of September 2019.  Level 3 Mot. at 24; MSUMF Nos. 78, 79.  However, TCG has in fact continued to issue these credits.  OSUMF Nos. 78, 79.[16]  There is, at a minimum, a factual dispute on this issue, making summary judgment inappropriate.  Fed R. Civ. P. 56(a).

---

[15] AT&T/TCG understand Level 3's motion to seek partial summary judgment only as to TCG.  To the extent Level 3 also seeks summary judgment against AT&T, its motion should be denied on the additional ground that Level 3 has not provided any evidence (let alone established undisputed facts) that AT&T has billed end office access charges on OTT VoIP calls.  *See* OSUMF No. 74.

[16] For TCG's bills in July and August of 2019, the credits appeared in a section of the billed entitled "Detail of Adjustments" and, contrary to Level 3's claims (MSUMF No. 78), were plainly labeled as an "Adjustment Of VoIP Usage."  OSUMF No. 78.  After that time, the credits appeared in a section of the bill entitled "Detail of Other Charges and Credits," and were labeled "Adjustment Of ████████ Usage."  *Id*. nos. 78, 79.  "████████" and "████" are the two products on which it is possible for an AT&T customer to place an OTT VoIP call.

*Second*, as to the period prior to July 2019, although TCG billed end office charges on some calling products that had a small, partial OTT VoIP calling capability, Level 3 has over-withheld payment of TCG's billed charges and has incurred no damages.  OSUMF No. 89.  After an investigation, TCG concluded that only about ▮ of a particular segment of its traffic (business VoIP products) consisted of OTT VoIP calling.  MSUMF No. 77.  However, even if TCG were to issue a credit for that traffic, Level 3 would still need to pay TCG unpaid end office charges, and TCG would not need to pay any refund.  *See* OSUMF Nos. 89, 90.  That is because, even though Level 3 elsewhere complains that AT&T "unlawfully withheld payment" of disputed OTT VoIP charges, Level 3 Mot. at 22, Level 3 itself began withholding payment of a portion of TCG's end office charges to Level 3.  OSUMF No. 89.  Specifically, beginning around August 2019, Level 3 withheld ▮ of TCG's *total* end office switching charges (*i.e.*, not merely on the business VoIP products) *Id.*  Because Level 3 has withheld more in access charges than the credit to which it is entitled, *Level 3 owes TCG.  See* OSUMF No. 90.  Accordingly, summary judgment as to the pre-July 2019 period should also be denied.[17]

Level 3 also asserts that, if it prevails on its partial summary judgment motion, it is entitled to an award of attorneys' fees.  Level 3 Mot. at 24-25.  This request is premature at best and should be denied.  Even if Level 3 were entitled to partial summary judgment, its attorneys' fee request does not comply with the requirements of Rule 54(d)(2)(B), including that Level 3 "state the amount sought or provide a fair estimate." Fed. R. Civ. P. 54(d)(2)(B).  More fundamentally, there

---

[17] As with Level 3's charges for OTT VoIP calls to AT&T, *see* Level 3 Mot. at 23 n.9, AT&T anticipates that the parties should be able to stipulate to the amounts of any credit to which Level 3 is entitled or the amount that Level 3 owes TCG (or at least some components of those amounts).  To the extent that is not possible, then a trial will be necessary to determine these amounts, among other issues.

are substantial questions regarding Level 3's entitlement to attorneys' fees.  Even assuming Level 3 were to obtain a partial summary judgment against TCG, that result would occur because Level 3 *lost*—and AT&T prevailed—on the underlying issue as to whether end office charges on OTT VoIP calls are impermissible under the FCC's rules.  In addition, because of Level 3's withholding, it is unlikely that it will be able to collect damages from TCG, which presents a substantial additional hurdle.[18]  Finally, AT&T may have its own motion for attorneys' fees, and in these circumstances, it is far more efficient and reasonable to defer any decision on any party's right to attorneys' fees to an appropriate later point in the case and based on a complete record.

## CONCLUSION

For the foregoing reasons, the Court should deny Level 3's motion for partial summary judgment.

Respectfully submitted this 20th day of July, 2020.

By: /s/ Justin A. Benson

Rebecca B. DeCook
Andrew T. Flynn
Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1027
becky.decook@moyewhite.com
andrew.flynn@moyewhite.com

Michael J. Hunseder

---

[18] 47 U.S.C. § 206 (providing for attorneys' fees against carriers "in every case of recovery"); *American Tel. & Tel. Co. v. United Artists Payphone Corp.*, 852 F. Supp. 221, 222-25 (S.D.N.Y. 1994) (no attorneys' fees under § 206 without an award of damages); *Sprint v. Crow Creek*, 2017 WL 1194208 (D.S.D. March 30, 2017) (same); *Swain v. AT&T Corp.*, 1997 WL 573464, at *1-2 (N.D. Tex. Sept. 9, 1997) (same).  Level 3's cites a single decision by a magistrate judge, Level 3 Mot. at 25 (*citing Seeklocal v. Ameritech Servs.*, 2007 WL 1847281, at *1 (E.D. Wis. June 26, 2007)), but reliance on that decision is unwarranted as it failed to discuss either the text of § 206 of the Communications Act or the extensive case law under that Section and the cognate provision of the Interstate Commerce Act.

Michael D. Warden
Justin A. Benson
Joshua W. Moore
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
mhunseder@sidley.com
mwarden@sidley.com
jbenson@sidley.com
joshua.moore@sidley.com

*Attorneys for Plaintiff AT&T Corp.*
*and Counterclaim Defendant Teleport*
*Communications Group*

## CERTIFICATE OF SERVICE

I, Justin A. Benson, hereby certify that on July 20, 2020, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system which will send notification of such

filing to the following:

Charles W. Steese, #26924
Douglas N. Marsh, #45964
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
Email: csteese@armstrongteasdale.com
Email: dmarsh@armstrongteasdale.com

*Attorneys for Defendant Level 3*
*Communications, LLC*

/s/ Justin A. Benson
Justin A. Benson
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
E-mail: jbenson@sidley.com

*Attorney for Plaintiff AT&T Corp. and*
*Counterclaim Defendant Teleport*
*Communications Group*