# EXHIBIT N

Confidential - Attorneys' Eyes Only

```
                                                          Page 1
 1            UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLORADO
 2

     _____
 3                                  )
     AT&T CORP.,                    )
 4                                  )
     Plaintiff,                     )
 5                                  )
     vs.                            )  Case No.
 6                                  )  18-cv-00112-RM
     LEVEL 3 COMMUNICATIONS,        )
 7   LLC,                           )
                                    )
 8   Defendant.                     )
     _____)
 9
10
11
             ** CONFIDENTIAL - ATTORNEYS' EYES ONLY **
12
13
14
15      30(b)(6) DEPOSITION OF LEVEL 3 COMMUNICATIONS
16          THROUGH ITS DESIGNATED REPRESENTATIVE
17                    ANDREW McCLURE
18                   Denver, Colorado
19                   August 29, 2019
20
21
22
23   Reported by:
24   MELANIE L. GIAMARCO, RMR, CRR, RPR, CSR
25   JOB NO.:  166466
```

Confidential - Attorneys' Eyes Only

Page 2

1       A. McClure

2       August 29, 2019

3         9:05 a.m.

4

5       30(b)(6) DEPOSITION OF LEVEL 3

6   COMMUNICATIONS THROUGH ITS DESIGNATED

7   REPRESENTATIVE ANDREW McCLURE, taken by the

8   Plaintiff, held at the law offices of Moye White,

9   1400 Sixteenth Street, 16 Market Square, Denver,

10  Colorado, before Melanie L. Giamarco, a Registered

11  Professional Reporter, Registered Merit Reporter,

12  Certified Realtime Reporter and Notary Public of

13  the State of Colorado.

14

15

16

17

18

19

20

21

22

23

24

25

Confidential - Attorneys' Eyes Only

Page 3

1                    A. McClure
2        APPEARANCES:
3        SIDLEY AUSTIN
         Attorneys for Plaintiff:
4            1501 K Street, N.W.
             Washington, D.C.  20005
5        BY:    MICHAEL WARDEN, ESQ.
                JUSTIN BENSON, ESQ.
6

         ARMSTRONG TEASDALE
7        Attorneys for Defendant:
             4643 South Ulster Street
8            Denver, Colorado  80202
         BY:    CHARLES STEESE, ESQ.
9               DOUGLAS MARSH, ESQ.
10

11       ALSO PRESENT:
12           Carmel Gill, CenturyLink
             Kim Meola, AT&T
13           Letty S. Friesen, AT&T
14
15
16
17
18
19
20
21
22
23
24
25

Confidential - Attorneys' Eyes Only

Page 60

1                    A. McClure
2           A.  Yes.
3           Q.  And you did click-to-chat; is that
4      right?
5           A.  Yes.
6           Q.  And did you do any other form of
7      communication with customers for purposes --
8           A.  No.
9           Q.  -- of this spreadsheet?
10          A.  No, I did not.
11          Q.  And so when you did the click-to-chat,
12     do you know with whom you were speaking, or
13     chatting?
14          A.  Not always, no.
15          Q.  Do you know where that person was in the
16     organization?
17          A.  No, I do not.
18          Q.  Do you know whether that person was
19     reliable?
20          A.  No.
21          Q.  And is there any record of the
22     click-to-chats?
23          A.  Not that I have, no.
24          Q.  Did you create any notes as you went
25     along?

Confidential - Attorneys' Eyes Only

Page 61

1  A. McClure

2  A. I entered them in the spreadsheet as I
3  went down the list.
4  Q. And so the click-to-chat, did you ever
5  take a screen shot of it?
6  A. No.
7  Q. Did you ever create any work papers for
8  purposes of creating this spreadsheet?
9  A. No.
10 Q. Did you understand that there was an
11 ongoing dispute between AT&T and Level 3 regarding
12 the over-the-top billing?
13 A. I did understand that there was a
14 potential for a dispute, yes.
15 Q. And did you go about conducting these
16 interviews purposefully in a way that wouldn't
17 create a record?
18 A. No.
19 Q. Did anyone ever tell you to try to
20 preserve information that you got from the
21 customers?
22 A. No.
23 Q. So when you did the click-to-chat, which
24 customers did you do click-to-chat with?
25 A. I don't remember which ones would be

Confidential - Attorneys' Eyes Only

Page 99

1        A. McClure

2    would look on their website and determine what

3    products they sold, what was available.  And if

4    they had a click-to-chat, I would oftentimes use

5    that.  If they didn't, if they had marketing or

6    contact information, I would call those numbers.

7    It depends on where I had success or where I didn't

8    for the --

9         Q.  And you don't know -- I'm sorry.  I

10   didn't mean to interrupt.

11        You don't know how you got the information

12   for West, that is, by phone or by chat?

13        A.  I do not recall.

14        Q.  And have you ever updated the

15   percentages that were used across these three

16   charts, Exhibit 28, 29 and 38?

17        A.  Which portion update?

18        Q.  Fair enough.

19        The over-the-top percentage?

20        A.  I did not.

21        Q.  So it could have changed since then?

22        A.  Yes.

23        Q.  And as a matter of fact, some companies

24   were moving away from their legacy products toward

25   all over-the-top?

Confidential - Attorneys' Eyes Only

Page 100

1      A. McClure
2           MR. STEESE: Objection; foundation.
3           A.   The larger customers were also moving
4      towards owning their own TN as well as adopting
5      newer technology.
6           Q.   ▮▮▮▮▮▮▮?
7           A.   Correct.
8           Q.   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9           MR. STEESE: It's right there on that page.
10          Q.   ▮▮▮▮▮▮▮ is probably stale; is that
11     right?
12          MR. STEESE: Objection; foundation.
13          A.   Today, I don't know what they are.
14          Q.   Could be stale, right?
15          A.   Could be, but their percent
16     Level 3-owned TN could also be less. I don't know.
17          Q.   Do you know what ▮▮▮▮ is?
18          A.   I'm not familiar.
19          Q.   You said you Googled these companies?
20          A.   Correct.
21          Q.   Do you know why ▮▮▮▮▮▮▮▮▮
22          A.   Yes.
23          Q.   Why?
24          A.   Because the applied 90 percent of the
25     traffic that we looked at, the factor that we came

Confidential - Attorneys' Eyes Only

Page 175

1     REPORTER'S CERTIFICATE

2     STATE OF COLORADO        )
3                              ) ss.
4     COUNTY OF DENVER         )

5            I, MELANIE L. GIAMARCO, do hereby certify
6     that I am a Registered Professional Reporter and
7     Notary Public within the State of Colorado; that
8     previous to the commencement of the examination,
9     the deponent was duly sworn by me.
10           I further certify that this deposition was
11    taken in machine shorthand by me at the time and
12    place herein set forth, that it was thereafter
13    reduced to typewritten form, and that the foregoing
14    constitutes a true and correct transcript of the
15    proceedings had.
16           I further certify that I am not employed by,
17    related to, nor of counsel for any of the parties
18    herein, nor otherwise interested in the result of
19    the within litigation.
20           In witness whereof, I have affixed my
21    signature this 10th day of September, 2019.
22
23    _____
                Melanie L. Giamarco, CSR RPR CRR
24
      My commission expires: August 21, 2021.
25    Notary ID: 20014025991