# EXHIBIT A

# In The Matter Of:

*AT&T Corporation v.*
*Level 3 Communications, LLC*

---

*Andrew McClure*
*June 11, 2020*
*Confidential*

---



*Min-U-Script® with Word Index*

**Confidential**

1

```
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
-------------------------------------------X
AT&T CORPORATION,

          Plaintiff/Counterclaim Defendant,

              v.

LEVEL 3 COMMUNICATIONS, LLC.,

          Defendant/Counterclaimant,

              and

BROADWING COMMUNICATIONS, LLC, GLOBAL
CROSSING TELECOMMUNICATIONS, INC., and
WILTEL COMMUNICATIONS, LLC.

          Counterclaimants,

              v.

TELEPORT COMMUNICATIONS GROUP, INC.

          Counterclaim Defendant.
-------------------------------------------X
                ***CONFIDENTIAL***


    DEPOSITION OF ANDREW McCLURE

           Thursday, June 11, 2020




  Reported by:

  Rebecca Schaumloffel, CLR, RPR, CCR-NJ

  Job No:  2020-86250
```

www.LexitasLegal.com/Premier      Lexitas      888-267-1200

Confidential

2

June 11, 2020

11:08 a.m.


         Deposition of ANDREW McCLURE, held
    remotely via Webex, before Rebecca
    Schaumloffel, a Certified Livenote Reporter,
    Registered Professional Reporter, Certified
    Court Reporter of New Jersey, and Notary
    Public of the States of New York, New Jersey,
    Delaware, and Pennsylvania.

Confidential

```
                                                           3

 1

 2       A P P E A R A N C E S:

 3

 4          SIDLEY AUSTIN
                 Attorneys for the Plaintiff
 5               1501 K. Street, N.W.
                 Washington, D.C. 20005
 6               BY:  MICHAEL HUNSEDER, ESQ.
                      JUSTIN BENSON, ESQ.
 7                    JOSH MOORE, ESQ.

 8

 9

10          ARMSTRONG TEASDALE
                 Attorneys for the Defendant
11               4643 South Ulster Street
                 Denver, Colorado 80202
12               BY:  CHARLES STEESE, ESQ.

13

14

15

16

17
            ALSO PRESENT:
18

19               Mark W. Lewis, Esq., AT&T

20               Christian Ruiz, Lexitas

21
                 *         *         *
22

23

24

25
```

202

```
 1                    A. MCCLURE
 2  05:41PM      MR. STEESE:  You can answer.
 3  05:41PM      Q.   I am just trying to figure out if
 4  05:41PM  there was disclosure -- is there any -- are
 5  05:41PM  you aware, did ████████ disclose any
 6  05:41PM  commercial relationship between AT&T and
 7  05:41PM  either ████████ or ████?
 8  05:41PM      A.   He did not.  He did not.  He just
 9  05:41PM  -- he was explaining to me how it was that
10  05:41PM  that traffic, explaining to me how telephone
11  05:41PM  numbers that are registered in MPAC, TCG,
12  05:41PM  were originating toll-free calls that were
13  05:42PM  coming to our network to terminate.
14  05:42PM      Q.   Okay.  I would like to turn your
15  05:42PM  attention to page 11 and paragraph 23.
16  05:43PM      A.   Yes.
17  05:43PM      Q.   There you say in your opinion, "it
18  05:43PM  is improper to simply take AT&T's word for
19  05:43PM  its percent OTT."
20  05:43PM           Do you see that?
21  05:43PM      A.   I do.
22  05:43PM      Q.   And let me ask you this, is it
23  05:43PM  improper to simply take Level 3's word for
24  05:43PM  its percent OTT?
25  05:43PM      A.   It just needs to be --
```

```
                       1              A. MCCLURE
05:43PM                2              MR. STEESE:  Objection to form.
05:43PM                3         A.   It just needs to be consistent,
05:43PM                4    right.  So if Dr. Pfautz takes AT&T's word
05:43PM                5    for, this is our OTT, it's 2.13%, and we
05:43PM                6    don't offer, this is all enterprise, it's all
05:43PM                7    zero, we don't sell to wholesalers, he never
05:43PM                8    looked at a single customer, never looked at
05:43PM                9    a single trunk group, never looked at any
05:43PM               10    information of AT&T's, but yet, for us, he is
05:44PM               11    asking all of the details of all of the
05:44PM               12    enterprise customers, even though AT&T itself
05:44PM               13    is saying that, well, the enterprise is not.
05:44PM               14    It's zero.  The enterprise is zero unless it
05:44PM               15    has mobility which we have accounted for.
05:44PM               16         Q.   So do you agree or disagree that
05:44PM               17    the converse of that statement is true?  Do
05:44PM               18    you agree that it's improper to simply take
05:44PM               19    Level 3's word for its percent OTT, yes or
05:44PM               20    no?
05:44PM               21              MR. STEESE:  Objection to form;
05:44PM               22         foundation.  Incomplete hypothetical.
05:44PM               23         You can answer.
05:44PM               24         A.   So I don't think that taking
05:44PM               25    anybody's word for it is a good option.  I
```

204

1  A. MCCLURE
05:44PM 2  think that it should all be verifiable.
05:44PM 3  There should all be -- there should all be a
05:44PM 4  way to validate that everybody is playing by
05:44PM 5  the rules.
05:44PM 6           Now, whether that's by a third
05:44PM 7  party or however it may be decided, but
05:44PM 8  obviously taking somebody's word for it is
05:45PM 9  probably not the best option.
05:45PM 10      Q.   Okay.  Let me turn back, then, to
05:45PM 11 Exhibit 63 which is your spreadsheet that you
05:45PM 12 disclosed in May, the main spreadsheet.  In
05:45PM 13 column E, which is your percent OTT for each
05:45PM 14 customer, right?
05:45PM 15          Do you see that?
05:45PM 16      A.   I do.
05:45PM 17      Q.   Other than this spreadsheet and
05:45PM 18 other than the information in this
05:45PM 19 spreadsheet, is there any documentation in
05:45PM 20 the spreadsheet itself or otherwise that
05:45PM 21 corroborates the numbers in column E?
05:45PM 22      A.   No, this goes back to the original
05:45PM 23 documentation, the original report and the
05:45PM 24 original method and how I documented what
05:45PM 25 company's percent.

|  |  |
|---|---|
| | 1    A. MCCLURE |
| 05:46PM | 2    Q.    So with respect to column E, if |
| 05:46PM | 3    there is no other documentation other than |
| 05:46PM | 4    what's in the spreadsheet in column E, are |
| 05:46PM | 5    you not asking AT&T to take your word for the |
| 05:46PM | 6    accuracy of the numbers in column E? |
| 05:46PM | 7         MR. STEESE:  Object to form. |
| 05:46PM | 8       Incomplete and improper comparison. |
| 05:46PM | 9       In fact, quite different, incomplete |
| 05:46PM | 10      hypothetical form. |
| 05:46PM | 11          MR. HUNSEDER:  Are you done with |
| 05:46PM | 12      that objection or are you going to |
| 05:46PM | 13      keep going? |
| 05:46PM | 14          MR. STEESE:  I can keep going. |
| 05:46PM | 15          MR. HUNSEDER:  I just want to |
| 05:46PM | 16      make sure if, you know, you have got |
| 05:46PM | 17      any other speaking objections, you |
| 05:46PM | 18      throw them out. |
| 05:46PM | 19          MR. STEESE:  I have been mild as |
| 05:47PM | 20      compared to objections. |
| 05:47PM | 21          MR. HUNSEDER:  Yes, other than |
| 05:47PM | 22      in this instance, perhaps. |
| 05:47PM | 23          Can I have the question read |
| 05:47PM | 24      back, please. |
| 05:47PM | 25          (Record read.) |

                                                                206

            1                     A. MCCLURE

05:47PM     2           MR. STEESE:  Same objections.
05:47PM     3     You can answer, Andrew.
05:47PM     4     A.     So at the time that this was
05:47PM     5     released, the original numbers, the
05:47PM     6     percentages in 2017, when they were accurate
05:47PM     7     for the time of the research, AT&T had the
05:47PM     8     information by customer and could have tried
05:47PM     9     to validate those percentages themselves
05:47PM    10     independently.  They could have reached out
05:47PM    11     and said, ███████, what is your OTT, and
05:48PM    12     ███████ may have given them a number and
05:48PM    13     said, yes, here is our number, and they would
05:48PM    14     have something that's -- they could validate.
05:48PM    15               Originally, again, I go back to
05:48PM    16     when I was asked to do this, there was no
05:48PM    17     matter, there was no documentation.  This was
05:48PM    18     a huge ask to grab all of the usage for the
05:48PM    19     time period, and so I did not do that because
05:48PM    20     I wasn't aware of any way to do that and
05:48PM    21     either was █ or anybody else.  So I did the
05:48PM    22     best I could with what I had at the time.
05:48PM    23               Now, with the current data of AT&T
05:48PM    24     would like to go out and validate these and
05:48PM    25     go and research the customers and if they had

Andrew McClure - June 11, 2020
**Confidential**

207

1      A. MCCLURE
05:48PM  2   something where a customer like ▮ or ▮
05:48PM  3   or ▮ could come back and say this is
05:48PM  4   our OTT given this information or given the
05:48PM  5   understanding of what constitutes OTT and you
05:48PM  6   were given that and I could take that same
05:48PM  7   information and ask them, then I think that
05:48PM  8   that's acceptable if the industry agrees to
05:49PM  9   the question and the stated purpose of it.
05:49PM  10  But, again, it's -- you know, those are
05:49PM  11  hypotheticals.
05:49PM  12         Q.    Well, let me ask the question this
05:49PM  13  way:  Suppose, Mr. McClure, you accept your
05:49PM  14  dream job and go off to work for whoever in
05:49PM  15  whatever country and you are no longer
05:49PM  16  available to testify on behalf of Level 3.
05:49PM  17              Is there anyone else at Level 3
05:49PM  18  that can replicate what you do to determine
05:49PM  19  the percent of OTT in column E?
05:49PM  20         A.    Not unless they went back to 2017
05:50PM  21  and contacted the same people, no.
05:50PM  22         Q.    A couple quick questions back on
05:50PM  23  Exhibit 63 that I want to take care of before
05:50PM  24  we adjourn.
05:50PM  25              I want to ask you, this is again