**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-RM-MEH

AT&T CORPORATION,

    Plaintiff/Counterclaim Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC,

    Defendant/Counterclaimant,

and

BROADWING COMMUNICATIONS, LLC, GLOBAL CROSSING TELECOMMUNICATIONS, INC., and WILTEL COMMUNICATIONS, LLC

    Counterclaimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.,

    Counterclaim Defendant.

**REPLY IN SUPPORT OF MOTION TO PRECLUDE
EXPERT TESTIMONY REGARDING CHARGES ON CALLS
ORIGINATING FROM OR TERMINATING TO LEVEL 3 TELEPHONE NUMBERS**

    Defendant/Counterclaimant Level 3 Communications, LLC and Counterclaimants Broadwing Communications, LLC, Global Crossing Telecommunications, Inc., and WilTel Communications, LLC (collectively, "Level 3") respectfully submit this Reply in support of their Motion to preclude expert testimony by AT&T's expert Dr. Penn Pfautz regarding the propriety of switched access charges for non-OTT-VoIP calls originating from or terminating to telephone numbers assigned to Level 3 (ECF No. 139).

Dr. Pfautz admits that he does not have any evidence that Level 3's end office charges for non-OTT calls originating from Level 3 telephone numbers are inconsistent with the Settlement Agreement or are otherwise improper. Nothing AT&T says in its Response to the Motion changes those key admissions. In fact, AT&T disavows any claim that Dr. Pfautz will opine on "the meaning of the 2015 Agreement" or "whether any particular type of call is compensable under the Agreement." ECF No. 157 at 2. The reasons are obvious. The 2015 Agreement expressly states that Level 3 may continue to assess full switched access charges on calls associated with Level 3 telephone numbers. Dr. Pfautz's disregard of those facts, and the absence of any evidence that the end office charges on non-OTT calls originating from Level 3 numbers are in any way improper, leave Dr. Pfautz's opinions on this subject devoid of any evidentiary basis. His testimony on this subject is thus ungrounded in the facts of this case and is, for that reason, unreliable. The Court should therefore exclude it.

I.     **ARGUMENT**

As noted in the Motion, one of the ancillary issues the 2015 Agreement addressed (separate from the question of whether Level 3 could assess end office charges on OTT calls) was whether Level 3 could bill end office charges on calls that did not originate from a Level 3 telephone number. The Agreement made plain that Level 3 would not assess charges where the call did not originate from a Level 3 number. "For avoidance of doubt," however, the Agreement also made plain that Level 3 could "continue to bill" full switched access charges for calls associated with a Level 3 number. Specifically:

> (iii) Beginning June 1, 2015, Level 3 shall not bill AT&T for any end office switched access charge elements for domestic OTT traffic that does not originate from a calling party number or does not terminate to a called party number (together with calling party number "CPN") that is assigned by Level 3 and for

> which Level 3 is designated as the provider in the Number Portability Administration Center ('NPAC') database ("Non-Level 3 CPN OTT Calls"). ***For avoidance of doubt, the Parties agree that Level 3 will continue to bill AT&T full switched access charges on domestic traffic that originates with or terminates to Level 3 assigned CPN.***

ECF No. 139-1 § 1(a)(iii) (emphasis added). AT&T's own witnesses agree that "if traffic is traditional non-OTT traffic, Level 3 gets to bill full access, and AT&T will pay full access for non-OTT"; such charges were "never in dispute." ECF No. 152-6 at 207:14–23, 211:13–19 (Deposition testimony of AT&T 30(b)(6) witness Kim Meola).

Despite the clear language of the Agreement, AT&T's expert, Dr. Penn Pfautz, raised questions about whether or not Level 3 could bill AT&T for such calling even though—by Dr. Pfautz's own admission—the calls are not OTT-VoIP calls. Specifically, in his opening report, Dr. Pfautz noted certain "cable companies" that "often provide facilities-based telephone services to end users." ECF No. 139-3 ¶¶ 38–39. "If these cable companies or carriers are originating calls from their own end users over their own facilities, and then forwarding them to Level 3 so that Level 3 can route them onto AT&T, then I question whether Level 3 should be billing AT&T end office charges at all even where the telephone number belongs to Level 3. ***This would certainly be improper if these carriers or cable companies are themselves billing AT&T end office switching charges on these calls.***" *Id.* ¶ 39 (emphasis added).

However, Dr. Pfautz also admitted that he had no evidence this was occurring: "I am not aware of any data or documentation as to these cable companies or carriers, or as to the arrangements under which Level 3 provides the end office functions for some of these carriers' traffic. . . . Absent more information, I cannot conclude with certainty that Level 3's end office charges associated with these customers are improper." *Id.* ¶ 40. He repeated that concession in

3

his rebuttal report: "Absent more information, I cannot conclude with certainty that Level 3's end office charges associated with these customers are improper." ECF No. 139-4 ¶¶ 22–24. And he confirmed in his deposition that he has no evidence that Level 3 and another carrier both billed AT&T end office charges on the same calls. ECF No. 139-5 at 130:3–5; 132:9–15. In fact, he went even further, admitting that he has no evidence "something improper is going on here." *Id.* at 129:9–130:2.

The absence of evidence renders Dr. Pfautz's opinions on this point inadmissible. Federal Rule of Evidence 702 permits a qualified expert's testimony only if "based on sufficient facts or data" and if "the expert has reliably applied the principles and methods to the facts of the case." Because Dr. Pfautz concedes he has no evidence these end office charges on non-OTT calls are improper, he cannot be permitted to offer opinions as to their propriety.

AT&T's Response to Level 3's Motion ignores this fundamental flaw. Instead, it simply repeats Dr. Pfautz's opinion that the total number of end office switching minutes *might* be inflated "[t]o the extent [double billing] is occurring." ECF No. 157 at 6 (quoting ECF No. 144-2 ¶ 40); *see also* ECF No. 157 at 7 ("It is clear that such double billing *would be* unlawful.") (emphasis added). All the while, AT&T simply ignores the absence of any evidence that such double billing ever occurred. Whether the double billing would or would not have been improper had it occurred is beside the point; neither AT&T nor Dr. Pfautz have any evidence that any double billing ever occurred. Thus, his opinions that such double billing would be improper, without any evidence it ever happened, are not "based on sufficient facts or data" and are not reliably applied "to the facts of this case." Fed. R. Evid. 702.

4

The absence of supporting evidence is sufficient reason on its own to exclude Dr. Pfautz's opinion. To make matters worse, Dr. Pfautz also ignores the facts that *are* a part of this case. Specifically, the parties' Settlement Agreement included language making clear that Level 3 could bill end office charges on all non-OTT-VoIP calls associated with a Level 3 telephone number: "[f]or avoidance of doubt, the Parties agree that Level 3 will continue to bill AT&T full switched access charges on domestic traffic that originates with or terminates to Level 3 assigned CPN." ECF No. 139-1 § 1(a)(iii).

Dr. Pfautz concedes that he did not take the 2015 Agreement into consideration when forming his opinions. *See* ECF No. 139-5 at 201:19–25, 202:6–203:1. AT&T's Response confirms as much: "Dr. Pfautz will not provide expert testimony on the meaning of the 2015 Agreement, nor will he opine on legal questions as to whether any particular type of call is compensable under the Agreement." ECF No. 157 at 2. That is precisely the problem: in opining that charges for calls originating from Level 3 numbers might have been improper (though he admits having no evidence that they were), Dr. Pfautz simply ignores the facts of the case. In particular, he ignored the controlling language of the parties' Agreement (a negotiated instrument setting forth the rights and obligations of the parties, which AT&T voluntarily entered into, and which governs the parties' relationship) specifically permitting such charges.

For that reason, AT&T's contention that Level 3 has "mischaracterized" Dr. Pfautz's report "as offering a legal opinion on the meaning of the Agreement" (ECF No. 157 at 2) misses the mark. The problem with Dr. Pfautz's report is not that he misinterpreted the Agreement; it is that he did not even consider it. If he had done so, he might have seen that the Agreement settles

the question these sections of his reports raise, establishing that Level 3's charges on non-OTT calls are proper.[1]

AT&T nevertheless suggests that the Settlement Agreement might not permit Level 3 to assess end office charges "when it does not provide the functional equivalence of end office switching and another entity provides those facilities for a VoIP call." ECF No. 157 at 2. But as Dr. Pfautz admits, there is zero evidence that this is ever the case, and no evidence that "something improper is going on here." ECF No. 139-5 at 129:9–130:5; 132:9–15. AT&T's contention that there may be some heretofore unidentified basis for arguing the end office charges might not apply is sheer speculation, and provides no basis for expert testimony.

AT&T presses on, suggesting that the provision permitting Level 3 to "continue to bill AT&T full switched access charges" on calls originating from Level 3 numbers might merely permit Level 3 to bill "***tandem switching charges***—not end office." ECF No. 157 at 5 (emphasis in original). Its feigned ignorance as to what constitutes "full switched access charges," and whether that includes the end office charges Level 3 is assessing, ignores the fact that the Agreement allows Level 3 to "***continue to bill*** AT&T full switched access charges." ECF No. 139-1 § 1(a)(iii) (emphasis added). In other words, except where the Agreement expressly stated otherwise, Level 3 was entitled to "continue" assessing charges exactly as it had done in the past. That means Level 3 could "continue" to assess end office charges where it previously assessed end office charges, so long as the charges (a) were not affected by other provisions in the

---

[1] AT&T's complaint that the Motion purportedly requests a legal determination regarding the Agreement (*see id.*) is likewise baseless. In the absence of any evidence that the charges on non-OTT traffic are improper, there is no legal question to resolve. What is required here is not determination of the Agreement, but application. Because Dr. Pfautz gave the Agreement no consideration, he could not apply it, and thus could not base his opinions on the facts of this case.

Agreement regarding charges on OTT traffic, and (b) were not assessed on traffic associated with a non-Level 3 number. This motion concerns only end office charges Level 3 "continues" to assess on (a) non-OTT traffic (b) originating from a Level 3 telephone number. The Agreement affirmatively removes such charges from the scope of controversy; as a result, Dr. Pfautz's opinions, already lacking any evidentiary basis, do not "logically advance[ ] a material aspect of the case." *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 n.2 (10th Cir. 2005) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) (on remand)).

AT&T's suggestion that these provisions would conflict with FCC rules on what charges Level 3 could assess under its tariff (ECF No. 157 at 4–5) is doubly baseless. For one, as AT&T acknowledges, the Settlement Agreement provides independent authority for assessing charges separate and apart from the tariff. *See*, *e.g.*, ECF No. 161-1 at 12–13. This is particularly so given that end office charges are generally higher than tandem switching charges, such that there is no possibility that Level 3 is charging AT&T less than what the tariff requires. *See* ECF No. 164 at 16–18. In the context of a detariffed agreement (which all the parties recognize as falling outside the scope of FCC regulation), AT&T's attempt to invoke FCC rules in this context completely misses the mark. But more importantly, AT&T once again offers no evidence to suggest these charges would not have been lawful even if the only authority for the charges was Level 3's tariff. AT&T can offer nothing more than speculation that this might be so. Such speculation is not sufficient to remedy the defects in Dr. Pfautz's opinions. Nor are they helpful in determining the facts that are at issue.

In sum, Dr. Pfautz's opinions on end office charges on non-OTT calls associated with Level 3 telephone numbers lack any basis in evidence suggesting such charges are improper, and

7

affirmatively ignore the facts of the case—the 2015 Agreement in particular—showing that they are proper. AT&T's Response does not even attempt to remedy these fundamental defects. Thus, Dr. Pfautz's testimony on the propriety of charges for non-OTT calls originating from or terminating to Level 3's numbers do not satisfy the requirements of Rule 702.

## II.     CONCLUSION

For the reasons stated above and in its Motion, Level 3 respectfully requests that the Court preclude any expert testimony by Dr. Pfautz or any other AT&T expert questioning the propriety of charges for non-OTT calls originating from or terminating to telephone numbers assigned to Level 3 for which it is designated as the provider in the Number Portability Adminsitration Center ("NPAC") database. Level 3 also requests that paragraphs 38–40 of Dr. Pfautz's original report and paragraphs 22–24 of his rebuttal report be stricken.

Respectfully submitted this 30th day of July, 2020.

By:   /s/ *Charles W. Steese*
Charles W. Steese, #26924
Douglas N. Marsh, #45964
Armstrong Teasdale LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
csteese@armstrongteasdale.com
dmarsh@armstrongteasdale.com

*Attorneys for Defendant/Counterclaimant, Level 3 Communications, LLC and Counterclaimants Broadwing Communications, LLC, Global Crossing Telecommunications, Inc., and WilTel Communications, LLC*

## **CERTIFICATE OF SERVICE**

      I, Charles W. Steese, hereby certify that on July 30, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

    Rebecca B. DeCook
    Andrew T. Flynn
    Moye White LLP
    1400 16th Street, 6th Floor
    Denver, CO 80202-1027
    becky.decook@moyewhite.com
    andrew.flynn@moyewhite.com

    Michael D. Warden
    Michael J. Hunseder
    Justin A. Benson
    Joshua W. Moore
    SIDLEY AUSTIN LLP
    1501 K ST NW
    Washington, DC 20005
    Telephone: (202) 736-8000
    E-mail: mwarden@sidley.com
    E-mail: mhunseder@sidley.com
    E-mail: jbenson@sidley.com
    E-mail: joshua.moore@sidley.com

*Attorneys for Plaintiff AT&T Corp.*

                                                    /s/ *Charles W. Steese*
                                                    Charles W. Steese