# EXHIBIT 1

**In The Matter Of:**

*AT&T Corporation v.*
*Level 3 Communications, LLC*

---

*Andrew McClure*
*June 11, 2020*
*Confidential*

---



*Min-U-Script® with Word Index*

**Confidential**

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
---------------------------------------------X
AT&T CORPORATION,

        Plaintiff/Counterclaim Defendant,

           v.

LEVEL 3 COMMUNICATIONS, LLC.,

        Defendant/Counterclaimant,

          and

BROADWING COMMUNICATIONS, LLC, GLOBAL
CROSSING TELECOMMUNICATIONS, INC., and
WILTEL COMMUNICATIONS, LLC.

        Counterclaimants,

           v.

TELEPORT COMMUNICATIONS GROUP, INC.

        Counterclaim Defendant.
---------------------------------------------X
          ***CONFIDENTIAL***

     DEPOSITION OF ANDREW McCLURE

       Thursday, June 11, 2020

Reported by:

Rebecca Schaumloffel, CLR, RPR, CCR-NJ

Job No:  2020-86250

**Confidential**

2

1

2

3                         June 11, 2020

4                         11:08 a.m.

5

6

7

8                 Deposition of ANDREW McCLURE, held

9        remotely via Webex, before Rebecca

10       Schaumloffel, a Certified Livenote Reporter,

11       Registered Professional Reporter, Certified

12       Court Reporter of New Jersey, and Notary

13       Public of the States of New York, New Jersey,

14       Delaware, and Pennsylvania.

15

16

17

18

19

20

21

22

23

24

25

**Confidential**

3

1

2        A P P E A R A N C E S:

3

4        SIDLEY AUSTIN
              Attorneys for the Plaintiff
5             1501 K. Street, N.W.
              Washington, D.C. 20005
6             BY:  MICHAEL HUNSEDER, ESQ.
                   JUSTIN BENSON, ESQ.
7                  JOSH MOORE, ESQ.

8

9

10       ARMSTRONG TEASDALE
              Attorneys for the Defendant
11            4643 South Ulster Street
              Denver, Colorado 80202
12            BY:  CHARLES STEESE, ESQ.

13

14

15

16

17

          ALSO PRESENT:
18

19            Mark W. Lewis, Esq., AT&T

20            Christian Ruiz, Lexitas

21
              *          *          *
22

23

24

25

**Andrew McClure - June 11, 2020**
**Confidential**

61

|     |     |
|-----|-----|
| 1 | A. MCCLURE |
| 12:35PM 2 | -- IM them.  Sometimes would be voice |
| 12:35PM 3 | conversation.  I went onto their websites and |
| 12:35PM 4 | tried to investigate them, figure out if they |
| 12:35PM 5 | were advertising an application-based product |
| 12:35PM 6 | that could be used, it would create no OTT |
| 12:35PM 7 | call, and then I would reach out to them and |
| 12:35PM 8 | ask them, you know, what kind of percentages |
| 12:35PM 9 | of your customers use this application versus |
| 12:35PM 10 | the traditional type of, you know, |
| 12:35PM 11 | TDM-dedicated circuit to a PBX and, in |
| 12:35PM 12 | general, that was my process, was to try to |
| 12:35PM 13 | investigate like that. |
| 12:35PM 14 | Q.    And in the answer that you just |
| 12:35PM 15 | gave, the process that you are talking about, |
| 12:35PM 16 | did you do that in 2017 only? |
| 12:36PM 17 | A.    Correct. |
| 12:36PM 18 | Q.    So none of the numbers in column |
| 12:36PM 19 | E, in Exhibit 63, are the result of inquiries |
| 12:36PM 20 | that you made in 2020 or 2019? |
| 12:36PM 21 | A.    I made no inquiries because we |
| 12:36PM 22 | couldn't agree upon a standardized process. |
| 12:36PM 23 | The industry hasn't come to a standardized |
| 12:36PM 24 | process.  The FCC hasn't given a standardized |
| 12:36PM 25 | process, and I felt that it was, A, would be |

www.LexitasLegal.com/Premier     Lexitas     888-267-1200

**Andrew McClure - June 11, 2020**
**Confidential**

62

| | | |
|---|---|---|
| | 1 | A. MCCLURE |
| 12:36PM | 2 | burdensome on the customer's relationship |
| 12:36PM | 3 | with us, and I also felt that if AT&T |
| 12:36PM | 4 | couldn't agree to a method that I was going |
| 12:36PM | 5 | to use, then it seemed like extra work that |
| 12:36PM | 6 | wouldn't necessarily result in a result that |
| 12:36PM | 7 | we can agree on. |
| 12:36PM | 8 | MR. HUNSEDER:  Could the Court |
| 12:37PM | 9 | Reporter just read that back, please. |
| 12:37PM | 10 | (Record read.) |
| 12:37PM | 11 | Q.   Earlier, Mr. McClure, you |
| 12:37PM | 12 | testified that when -- that a Level 3 will |
| 12:38PM | 13 | ask wholesale customers for PIUs for purposes |
| 12:38PM | 14 | of taxation; is that correct? |
| 12:38PM | 15 | A.   Correct. |
| 12:38PM | 16 | Q.   And is that burdensome on those |
| 12:38PM | 17 | wholesale customers? |
| 12:38PM | 18 | A.   It's required and it's industry |
| 12:38PM | 19 | standard.  So whether a customer comes to |
| 12:38PM | 20 | Level 3 or AT&T, they are going to be |
| 12:38PM | 21 | required to provide those same factors. |
| 12:38PM | 22 | Q.   So that's an industry standard |
| 12:38PM | 23 | with respect to PIU, correct? |
| 12:38PM | 24 | A.   Correct. |
| 12:38PM | 25 | Q.   And did you consider whether that |

**Andrew McClure - June 11, 2020**
**Confidential**

75

| | |
|---|---|
| 1 | A. MCCLURE |
| 2 | ***AFTERNOON SESSION*** |
| 02:29PM 3 | BY MR. HUNSEDER: |
| 02:29PM 4 | Q.    All right, Mr. McClure, before the |
| 02:29PM 5 | break we were talking a little bit about |
| 02:29PM 6 | ▓▓▓▓▓▓ and your conversations with |
| 02:29PM 7 | Mr. Stocker. |
| 02:29PM 8 | Do you recall that? |
| 02:29PM 9 | A.    I do. |
| 02:29PM 10 | Q.    And my question is this, you have |
| 02:29PM 11 | in Exhibit 63 the spreadsheet.  You have the |
| 02:29PM 12 | ▓▓▓▓▓▓ OTT percentage as ▓▓; is that |
| 02:29PM 13 | correct? |
| 02:29PM 14 | A.    Correct. |
| 02:29PM 15 | Q.    And that's -- we will get into |
| 02:29PM 16 | this a lot more detail in a minute, but |
| 02:29PM 17 | that's your estimate based on a variety of |
| 02:29PM 18 | sources; is that right, or based on |
| 02:29PM 19 | information that you considered, correct, |
| 02:29PM 20 | that's your estimate? |
| 02:29PM 21 | A.    That is not my estimate.  That is |
| 02:29PM 22 | the estimate coming from ▓▓▓▓▓▓. |
| 02:30PM 23 | Q.    And how did it come from |
| 02:30PM 24 | ▓▓▓▓▓▓? |
| 02:30PM 25 | A.    I believe Ed Stocker provided us |

**Andrew McClure - June 11, 2020**
**Confidential**

1                         A. MCCLURE

02:30PM   2     an estimate early on of ███ .

02:30PM   3          Q.    This number was from your -- was

02:30PM   4     carried forward from your 2017 analysis?

02:30PM   5          A.    Correct.

02:30PM   6          Q.    Do you recall whether it was

02:30PM   7     through what you described earlier, your

02:30PM   8     prior deposition, Click to Chat?

02:30PM   9          A.    I don't recall if ██████ was

02:30PM  10     Click to Chat or if ██████ was provided by

02:30PM  11     Ed Stocker at the time.  So Ed Stocker having

02:30PM  12     -- sorry, so Ed Stocker having knowledge of

02:30PM  13     the customer set, his customer set, he did

02:30PM  14     have knowledge of certain customers that he

02:30PM  15     did give as ████ or, you know, if he knew a

02:30PM  16     percentage, he gave it.

02:30PM  17          Q.    And in 2017, when you put together

02:31PM  18     the 2017 analysis, was Mr. Stocker employed

02:31PM  19     at Level 3 at that time?

02:31PM  20          A.    He was.

02:31PM  21          Q.    So what you are saying is your

02:31PM  22     recollection that he provided a specific

02:31PM  23     number for ██████ while he was employed at

02:31PM  24     Level 3?

02:31PM  25          A.    That's my recollection.

**Andrew McClure - June 11, 2020**
**Confidential**

107

|       |    |                                                    |
|-------|----|----------------------------------------------------|
|       | 1  | A. MCCLURE                                         |
| 03:10PM | 2  | these customers a questionnaire to say what's     |
| 03:11PM | 3  | your OTT, then I could come back and plug it       |
| 03:11PM | 4  | in and put it in.                                  |
| 03:11PM | 5  | Q.    So apart from -- so let me ask               |
| 03:11PM | 6  | this, do you have any documentation in your        |
| 03:11PM | 7  | possession that corroborates the figure in         |
| 03:11PM | 8  | column E that ████████ is █?                       |
| 03:12PM | 9  | A.    I do not.                                     |
| 03:12PM | 10 | Q.    Going back, did you review your              |
| 03:12PM | 11 | 2017 -- strike that.                               |
| 03:12PM | 12 | Did you review your prior                          |
| 03:12PM | 13 | deposition testimony in this case in               |
| 03:12PM | 14 | preparation for this deposition?                   |
| 03:12PM | 15 | A.    I may have at a high level, but I             |
| 03:12PM | 16 | don't recall.                                      |
| 03:12PM | 17 | Q.    Okay.  In general, I think, you --           |
| 03:12PM | 18 | so in 2017, when you did the review of, I          |
| 03:12PM | 19 | think you said the top 90% of minutes; is          |
| 03:12PM | 20 | that fair?                                         |
| 03:12PM | 21 | A.    Yes.                                          |
| 03:12PM | 22 | Q.    You have no documentation from               |
| 03:12PM | 23 | that analysis or investigation, correct?  I        |
| 03:12PM | 24 | mean, you did not have at the time and you         |
| 03:12PM | 25 | still do not have; is that correct?                |

**Andrew McClure - June 11, 2020**
**Confidential**

108

1                    A. MCCLURE

03:12PM  2        A.    Correct.  Just the click to chats

03:12PM  3    and the calls, and there is some notes that I

03:13PM  4    wrote down for certain customers, I believe,

03:13PM  5    ███ might have been one and there might have

03:13PM  6    been a couple others.

03:13PM  7        Q.    And you were -- again, you were

03:13PM  8    questioned at length on that.  I don't want

03:13PM  9    to redo that.

03:13PM  10            As far as you can recall, your

03:13PM  11    testimony was accurate at the time; is that

03:13PM  12    fair?

03:13PM  13        A.    Yes.

03:13PM  14        Q.    So going to line 8, there is a

03:13PM  15    company ███, and do you have an

03:13PM  16    understanding of what they do, Mr. McClure?

03:13PM  17        A.    I do not.

03:14PM  18        Q.    Do you know if you considered them

03:14PM  19    an enterprise or wholesale customer?

03:14PM  20        A.    I don't have any recollection or

03:14PM  21    knowledge of them.

03:14PM  22        Q.    Again, you don't have any

03:14PM  23    documentation in your possession as to the ███

03:14PM  24    figure in column E; is that correct, other

03:14PM  25    than this spreadsheet?

**Andrew McClure - June 11, 2020**
**Confidential**

143

| | |
|---|---|
| 1 | A. MCCLURE |
| 04:09PM 2 | know, you can get this, you don't need our |
| 04:09PM 3 | Internet, and they are stating it.  Most of |
| 04:09PM 4 | these customers that, you know, we reviewed |
| 04:09PM 5 | and that I have reviewed in the past, if they |
| 04:10PM 6 | offer it and they offer fixed VoIP, which is |
| 04:10PM 7 | in here, that tells me that it's not their |
| 04:10PM 8 | whole business.  It's a part of their |
| 04:10PM 9 | business and, typically, when you are |
| 04:10PM 10 | offering that, there is licensed costs to |
| 04:10PM 11 | have those mobility.  There is extra costs. |
| 04:10PM 12 | So you charge that. |
| 04:10PM 13 | So customers typically only adopt |
| 04:10PM 14 | that or take that if they really need it and |
| 04:10PM 15 | if it's a value to them.  So without -- you |
| 04:10PM 16 | know, again, I am not this customer, but if |
| 04:10PM 17 | there was a document that I could give them |
| 04:10PM 18 | and say you have to fill this out, the FCC, |
| 04:10PM 19 | the whole industry requires this from all |
| 04:10PM 20 | customers, then I would absolutely do that, |
| 04:10PM 21 | yes. |
| 04:10PM 22 | Q.   All right.  But in your |
| 04:10PM 23 | spreadsheet and your opinion today is that |
| 04:10PM 24 | it's ▉ , correct? |
| 04:10PM 25 | A.   According to the original 2017 |

**Andrew McClure - June 11, 2020**
**Confidential**

144

|  |  |  |
|---|---|---|
| | 1 | A. MCCLURE |
| 04:10PM | 2 | research for whatever reason, that is -- |
| 04:10PM | 3 | whether it was, didn't have the volume or |
| 04:11PM | 4 | whether it is they -- that at the time they |
| 04:11PM | 5 | didn't have that service or that this web |
| 04:11PM | 6 | page wasn't there, I can't speak to it, but, |
| 04:11PM | 7 | yes. |
| 04:11PM | 8 | Q.    Right.  What I'm saying is in |
| 04:11PM | 9 | 2020, when you put together this spreadsheet |
| 04:11PM | 10 | and entered ██, you didn't make the inquiry. |
| 04:11PM | 11 | So it's possible that it could be ██, right, |
| 04:11PM | 12 | that's what you are saying? |
| 04:11PM | 13 | A.    Right, it's possible that it could |
| 04:11PM | 14 | be, yes. |
| 04:11PM | 15 | Q.    But it's also possible it could be |
| 04:11PM | 16 | 90% and you didn't ask; is that fair? |
| 04:11PM | 17 | A.    That is completely fair.  And that |
| 04:11PM | 18 | would be true with all of the ones that are |
| 04:11PM | 19 | -- |
| 04:11PM | 20 | Q.    ██? |
| 04:11PM | 21 | A.    Or even stated at ██ or ███ or █. |
| 04:11PM | 22 | Those are all from 2017. |
| 04:11PM | 23 | Q.    And they all could have gone up or |
| 04:11PM | 24 | down is what you are saying? |
| 04:11PM | 25 | A.    Exactly.  And the original stance |

**Andrew McClure - June 11, 2020**
**Confidential**

145

| | |
|---|---|
| 1 | A. MCCLURE |
| 04:11PM 2 | was based upon application, not connectivity |
| 04:11PM 3 | to the customer.  So, again, some could go |
| 04:11PM 4 | down and you are right, some could go up. |
| 04:12PM 5 | Q.    A couple more questions and we |
| 04:12PM 6 | will -- up on number 21, ████████ |
| 04:12PM 7 | ████████████. |
| 04:12PM 8 | Do you have any idea what they |
| 04:12PM 9 | are? |
| 04:12PM 10 | A.    I recall looking at them, but I |
| 04:12PM 11 | don't recall what it is. |
| 04:12PM 12 | Q.    Hypothetically, if they were -- |
| 04:12PM 13 | sorry, didn't mean to interrupt your answer. |
| 04:12PM 14 | I apologize. |
| 04:12PM 15 | A.    No, go ahead. |
| 04:12PM 16 | Q.    Were you finished?  Okay. |
| 04:12PM 17 | Hypothetically, I looked at them.  I think |
| 04:12PM 18 | they are a ████████████.  Hypothetically, if |
| 04:12PM 19 | they were a ████████████, would it be |
| 04:12PM 20 | appropriate to give them a ██ figure like |
| 04:12PM 21 | ████ -- like ████████ |
| 04:12PM 22 | A.    If they have -- |
| 04:12PM 23 | Q.    In row 10. |
| 04:12PM 24 | A.    ████████ and Row 10 was research |
| 04:12PM 25 | because their volume was significant at the |

**Andrew McClure - June 11, 2020**
**Confidential**

194

| | | |
|---|---|---|
| | 1 | A. MCCLURE |
| 05:28PM | 2 | him to actually give me a number or to give |
| 05:28PM | 3 | me, you know, ask me more questions or -- but |
| 05:28PM | 4 | I was surprised that I didn't get anything. |
| 05:28PM | 5 | Q.   And so but you were talking to a |
| 05:28PM | 6 | person who is familiar with the dispute |
| 05:28PM | 7 | between AT&T and Level 3 and indeed has given |
| 05:28PM | 8 | testimony in this matter, right?  But you |
| 05:28PM | 9 | didn't ask anyone outside of Level 3 or you |
| 05:28PM | 10 | didn't ask any of the other 466 customers on |
| 05:28PM | 11 | Exhibit 63, you asked one person; is that |
| 05:28PM | 12 | correct? |
| 05:28PM | 13 | A.   That is correct. |
| 05:28PM | 14 | Q.   Okay.  Let me go to Page 9, |
| 05:29PM | 15 | paragraph 15. |
| 05:29PM | 16 | A.   Yes. |
| 05:29PM | 17 | Q.   And there you are talking about |
| 05:29PM | 18 | the Form 477. |
| 05:29PM | 19 | Do you see that? |
| 05:29PM | 20 | A.   Yes. |
| 05:29PM | 21 | Q.   And you say you "have no idea |
| 05:29PM | 22 | what, if any, providers actually submit Form |
| 05:29PM | 23 | 477s," correct? |
| 05:29PM | 24 | A.   Correct. |
| 05:29PM | 25 | Q.   Again, you didn't ask any of the |

**Andrew McClure - June 11, 2020**
**Confidential**

197

| | |
|---|---|
| 1 | A. MCCLURE |
| 05:32PM 2 | Have you looked at the Form 477s to see if |
| 05:32PM 3 | there is any information about the number of |
| 05:32PM 4 | over-the-top subscriptions by an entity |
| 05:32PM 5 | that's a retail VoIP provider, like a |
| 05:32PM 6 | ██████████, for example? |
| 05:32PM 7 | A.    I did not. |
| 05:32PM 8 | Q.    And I am not asking did you look |
| 05:32PM 9 | at ████████████ Form 477, I am asking have you |
| 05:33PM 10 | looked at the Form 477 to determine whether |
| 05:33PM 11 | there is data requested about the number of |
| 05:33PM 12 | over-the-top subscriptions? |
| 05:33PM 13 | A.    I don't remember seeing the |
| 05:33PM 14 | over-the-top subscriptions field in 477. |
| 05:33PM 15 | Q.    And if there is such information, |
| 05:33PM 16 | would that be potentially relevant to your |
| 05:33PM 17 | calculations in your spreadsheet such as |
| 05:33PM 18 | Exhibit 63? |
| 05:33PM 19 | A.    Having a subscription would be |
| 05:33PM 20 | similar to having paid for mobility by a TN, |
| 05:33PM 21 | right?  So, yes, it would say that, yes, |
| 05:33PM 22 | there is the potential for OTT, but it |
| 05:33PM 23 | doesn't necessarily constitute that if you |
| 05:33PM 24 | are measuring it by that telephone number |
| 05:33PM 25 | that it would mean that it would be, you |

Andrew McClure - June 11, 2020
Confidential

198

1                          A. MCCLURE

05:34PM  2          know, all of the minutes or none of the

05:34PM  3          minutes or very small amount of the minutes.

05:34PM  4                    So, again, I don't know that this

05:34PM  5          Form can give you the information that we are

05:34PM  6          looking for.

05:34PM  7               Q.    But in your view, that Form --

05:34PM  8          that kind of information would be inferior to

05:34PM  9          doing some sort of Click to Chat with the

05:34PM 10          carrier customer of Level 3?

05:34PM 11               A.    I think it it's a good starting

05:34PM 12          point.

05:34PM 13               Q.    Sorry.  Could you say that again?

05:34PM 14               A.    I think that it would be a good

05:34PM 15          starting point as well as looking at a

05:34PM 16          customer's website to determine if they are

05:34PM 17          offering that type of subscription or that

05:34PM 18          type of product but, again, if this Form had

05:34PM 19          been filled out four years ago or earlier,

05:34PM 20          this one is February 2019, if it was old

05:35PM 21          enough, right, if the idea or the concept of

05:35PM 22          over-the-top, the idea or the concept of what

05:35PM 23          over-the-top meant before clarification might

05:35PM 24          change what they think that that data means.

05:35PM 25                    MR. HUNSEDER:  Can I have that

**Andrew McClure - June 11, 2020**
**Confidential**

207

| | |
|---|---|
| | 1                      A. MCCLURE |

1                    A. MCCLURE

05:48PM  2    something where a customer like ▮ or ▮

05:48PM  3    or ▮ could come back and say this is

05:48PM  4    our OTT given this information or given the

05:48PM  5    understanding of what constitutes OTT and you

05:48PM  6    were given that and I could take that same

05:48PM  7    information and ask them, then I think that

05:48PM  8    that's acceptable if the industry agrees to

05:49PM  9    the question and the stated purpose of it.

05:49PM 10    But, again, it's -- you know, those are

05:49PM 11    hypotheticals.

05:49PM 12        Q.    Well, let me ask the question this

05:49PM 13    way:  Suppose, Mr. McClure, you accept your

05:49PM 14    dream job and go off to work for whoever in

05:49PM 15    whatever country and you are no longer

05:49PM 16    available to testify on behalf of Level 3.

05:49PM 17           Is there anyone else at Level 3

05:49PM 18    that can replicate what you do to determine

05:49PM 19    the percent of OTT in column E?

05:49PM 20        A.    Not unless they went back to 2017

05:50PM 21    and contacted the same people, no.

05:50PM 22        Q.    A couple quick questions back on

05:50PM 23    Exhibit 63 that I want to take care of before

05:50PM 24    we adjourn.

05:50PM 25           I want to ask you, this is again

**Andrew McClure - June 11, 2020**
**Confidential**

214

|          |    |                                            |
|----------|----|--------------------------------------------|
|          | 1  | A. MCCLURE                                 |
| 05:58PM  | 2  | Q.    Is that correct?  Do you consider    |
| 05:58PM  | 3  | that an outlier, let me say that?          |
| 05:58PM  | 4  | A.    Yes, I did see that as an outlier,   |
| 05:58PM  | 5  | and I did investigate that.  There was some |
| 05:58PM  | 6  | usage that I was not able to obtain that   |
| 05:58PM  | 7  | build.  I believed that it was out of period. |
| 05:59PM  | 8  | I don't recall the exact reason why it was |
| 05:59PM  | 9  | off, but I believe that usage that build   |
| 05:59PM  | 10 | might have been out of period and, hence, the |
| 05:59PM  | 11 | difference between -- the difference between |
| 05:59PM  | 12 | the invoice and what I collected.          |
| 05:59PM  | 13 | Q.    And then the last, I think the       |
| 05:59PM  | 14 | last tab is Journal 2019, and is this just |
| 05:59PM  | 15 | the detailed backup of the -- from the bills? |
| 05:59PM  | 16 | A.    Correct.                             |
| 05:59PM  | 17 | Q.    Okay.  Other than these tabs in      |
| 05:59PM  | 18 | the spreadsheet, did you create any other  |
| 05:59PM  | 19 | work papers in creating Exhibit 63?        |
| 05:59PM  | 20 | A.    No, I did not.                        |
| 05:59PM  | 21 | MR. HUNSEDER:  Let me take a               |
| 05:59PM  | 22 | short break, and then we can hopefully     |
| 05:59PM  | 23 | adjourn pretty quickly after that.         |
| 05:59PM  | 24 | (Whereupon, a recess was held.)            |
| 06:07PM  | 25 | MR. HUNSEDER:  I don't have any            |

**Confidential**

224

1

2           C E R T I F I C A T E

3

4       STATE OF NEW YORK         )
                              :  SS.:
5       COUNTY OF NASSAU          )

6

7               I, REBECCA SCHAUMLOFFEL, a Notary

8       Public for and within the State of New York,

9       do hereby certify:

10              That the witness whose examination

11      is hereinbefore set forth was duly sworn and

12      that such examination is a true record of the

13      testimony given by that witness.

14              I further certify that I am not

15      related to any of the parties to this action

16      by blood or by marriage and that I am in no

17      way interested in the outcome of this matter.

18              IN WITNESS WHEREOF, I have hereunto

19      set my hand this 21st day of June

20      _____

21              REBECCA SCHAUMLOFFEL

22

23

24

25