**EXHIBIT 2**

CONFIDENTIAL

Page 1

IN THE UNITED STATES DISTRICT CIRCUIT

FOR THE DISTRICT OF COLORADO

CIVIL ACTION NO: 18-cv-00112-RM-MEH

AT&T CORPORATION,

    Plaintiff/Counterclaim Defendant,

vs.

LEVEL 3 COMMUNICATIONS, LLC,

    Defendant/Counterclaimant.

And

CROADWING COMMUNICATIONS, LLC, GLOBAL

CROSSING TELECOMMUNICATIONS, INC, and

WILTEL COMMUNICATIONS, LLC,

    Counterclaimants,

V.

TELEPORT COMMUNICATIONS GROUP, INC.,

    Counterclaim Defendant.

DEPOSITION OF:  MARC CATHEY

DATE:  February 11, 2020

TIME:  11:02 a.m.

PLACE: AT&T Data Center, 1876 Data Drive

    Hoover, Alabama 35244

BEFORE:  Jennifer Madaris, CCR, RPR

Job No. CS3969039

CONFIDENTIAL

Page 2

1       Deposition of MARC CATHEY called as a
2   witness by the Defendants, before Jennifer
3   Madaris, Certified Court Reporter for the State of
4   Alabama, with principal offices in Jefferson
5   County, commencing at 11:02 a.m., on the 11th day
6   of February, 2020, at 1876 Data Drive, Hoover,
7   Alabama 35244.
8
9   A P P E A R A N C E S
10
11  APPEARING ON BEHALF OF THE PLAINTIFF:
12     SIDLEY AUSTIN
13     Mr. Justin A. Benson
14     Mr. Michael J. Hunseder
15     1501 K St. NW
16     Washington, DC 20005
17
18  APPEARING ON BEHALF OF THE DEFENDANTS:
19     ARMSTRONG TEASDALE
20     Mr. Charles W. Steese
21     4643 South Ulster Street
22     Suite 800
23     Denver, Colorado 80237

CONFIDENTIAL

Page 3

1                        I N D E X

2

3                                                  PAGE

4     Mr. Steese                                      4

5

6

7                      E X H I B I T S

8     Defendant's 107                                 5

9         Handwritten notes

10    Defendant's 108                                 5

11        Typed notes

12    Defendant's 109                                 5

13        Decision by the Federal Communications

14    Commission

15

16

17

18

19

20

21

22

23

CONFIDENTIAL

Page 9

1   It's hard for me to put it all together, Mr.
2   Steese, but maybe six hours.  You know, I don't
3   know what time and everything.
4        Q.   And you know the rules.  I'm not
5   going to go over the rules again.  I'll say this:
6   It is particularly hard on a video deposition let
7   alone in a telephone deposition to not speak over
8   each other.  I can promise you I will do my best,
9   and I will apologize now for the times I speak
10  over you.  I just can't see the body language that
11  you normally can, so I'll try to do that now.
12       A.   I'll try to do the same.
13       Q.   Perfect.  Did you review FCC's OTT
14  order, which is Exhibit 109, in advance of today?
15       A.   No, I did not.
16       Q.   You've never reviewed it?
17       A.   No.
18       Q.   Just yes or no.  I'm not going to ask
19  you.  Did you speak to anyone about the contents
20  of it?
21       A.   Yes.
22       Q.   Without talking about what was
23  discussed, can you tell me with whom it was

CONFIDENTIAL

Page 10

1    discussed?
2         A.    I spoke with our outside counsel
3    about kind of a high level summary of the order.
4         Q.    Anyone else?
5         A.    There were other inhouse counsels on
6    that telephone, but, you know, again, it was just
7    pretty much the highlights of the order itself.
8    Nothing specific.
9         Q.    When we spoke last time, you told me
10   that part of your job was reviewing FCC decisions
11   periodically --
12        A.    Yes.
13        Q.    -- towards that effect.  Do you
14   recall that?
15        A.    Yes, I do.
16        Q.    Is there any reason why you did not
17   review the OTT order in advance of this
18   deposition?
19             MR. BENSON:  I'll just instruct the
20   witness, if that makes you divulge any privilege
21   information, I'll instruct you not to answer.  But
22   if you can, go ahead without doing that.
23        A.    I mean, other than getting high level

CONFIDENTIAL

Page 11

1  summary, I didn't see the need to go into detail
2  to analyze the order itself.
3       Q.   (BY MR. STEESE)  Given that part of
4  the questions in -- for today are the products
5  that are, A, OTT; and, B, for which AT&T assesses
6  end office switching on them; and given that the
7  FCC order defines what calls are, OTT calls for
8  which end office switching can or cannot be
9  assessed, it seems particularly relevant to your
10 testimony.  You disagree with that?
11           MR. BENSON:  Objection.  Calls for
12 legal conclusion.
13      A.   I'm not sure how to answer that.
14      Q.   (BY MR. STEESE)  You do recognize
15 you're here today to identify the products of --
16 among -- I'm not trying to say only.  But one of
17 the reasons you're here today is to talk about
18 AT&T's products that are over the top or OTT,
19 correct?
20      A.   Correct.
21      Q.   And you are aware that the FCC's
22 decision defines what is and is not OTT, correct?
23      A.   That's what I understand.

CONFIDENTIAL

Page 12

1  Q. And one of the reasons you're here
2  today is to identify the OTT products on which
3  AT&T assesses end office switching, correct?
4  A. That's correct.
5  Q. And this FCC decision defines when
6  parties can assess end office switching on OTT
7  products, correct?
8  MR. BENSON: Objection. Calls for a
9  legal conclusion.
10 A. I understand from the summary that it
11 does, that I was provided.
12 Q. (BY MR. STEESE) So given that OTT --
13 the FCC's OTT decision relates specifically to two
14 of the subjects for which you are here, you didn't
15 see it as particularly relevant? Help me
16 understand why.
17 MR. BENSON: Objection. Calls for a
18 legal conclusion.
19 A. We planned to have a broad review of
20 the order in more specific detail. And we're
21 trying to identify the correct parties in order to
22 do that, and they haven't all been identified yet.
23 Q. (BY MR. STEESE) So if I'm

CONFIDENTIAL

Page 86

1           C E R T I F I C A T E

3    STATE OF ALABAMA     )

4    JEFFERSON COUNTY     )

5              I hereby certify that the above and
6    foregoing proceeding was taken down by me in
7    stenotype, and the questions and answers thereto
8    were transcribed by means of computer-aided
9    transcription, and that the foregoing represents a
10   true and correct transcript of the testimony given
11   by said witness upon said hearing.
12             I further certify that I am neither of
13   counsel, nor of kin to the parties to the action,
14   nor am I in anyway interested in the result of
15   said cause.
16          Signed the 11th day of February, 2020.

19                    Jennifer Madaris
20                        ACCR 585
21        My license expires September 30, 2020
22        My Commission expires January 4, 2022