EXHIBIT 36

CONFIDENTIAL

Page 216

```
 1
 2          IN THE UNITED STATES DISTRICT COURT
 3            FOR THE DISTRICT OF COLORADO
 4    AT&T CORP.,                   )
                                    )
 5          Plaintiff/             )
      Counterclaim Defendant,      )
 6                                  )
      vs.                          )      Case No.
 7                                  ) 18-cv-00112-RM
      LEVEL 3 COMMUNICATIONS,       )
 8    LLC,                          )
                                    )
 9          Defendant/             )
      Counterclaim Plaintiff,      )
10                                  )
      and                          )
11                                  )
      BROADWING COMMUNICATIONS,     )
12    LLC; GLOBAL CROSSING          )
      TELECOMMUNICATIONS,           )
13    INC.; and WILTEL              )
      COMMUNICATIONS, LLC,          )
14                                  )
      Counterclaim Plaintiff,      )
15                                  )
      vs.                          )
16                                  )
      TELEPORT COMMUNICATIONS       )
17    GROUP, INC.,                  )
                                    )
18    Counterclaim Defendant.       )
19            * * * CONFIDENTIAL * * *
20            30(b)(6) DEPOSITION OF
              LEVEL 3 COMMUNICATIONS, LLC
21     by and through their corporate representative
                    JENNIFER TORRES
22                  VOLUME 2
23          Thursday, December 19, 2019
24    Reported by:  LISA A. KNIGHT, RDR, CRR, RSA
25    Job No. 173629
```

CONFIDENTIAL

Page 217

1

2

3

4

December 19, 2019

5

7:51 a.m.

6

7

8

9      30(b)(6) deposition of Level 3

10   Communications, LLC, by and through their

11   corporate representative JENNIFER TORRES, held

12   at the law offices of Armstrong Teasdale LLP,

13   4643 South Ulster Street, Suite 800, Denver,

14   Colorado, before Lisa A. Knight, Registered

15   Diplomate Reporter, Certified Realtime Reporter,

16   Realtime Systems Administrator, and Notary

17   Public in and for the State of Colorado.

18

19

20

21

22

23

24

25

CONFIDENTIAL

1

2   A P P E A R A N C E S:

3

4       SIDLEY AUSTIN

5       Attorneys for Plaintiff AT&T Corp.
        and Counterclaim Defendant Teleport

6       Communications Group, Inc.:

7           1501 K Street, Northwest
            Washington, D.C. 20005

8       BY:  JUSTIN BENSON, ESQ.
             JOSHUA MOORE, ESQ.

9           (Via videoconference)

10

11

12      ARMSTRONG TEASDALE

13      Attorneys for Defendant
        Level 3 Communications, LLC:

14

            4643 South Ulster Street

15          Denver, Colorado 80237

        BY:  CHARLES STEESE, ESQ.

16

17

18

19

20  ALSO PRESENT:

21      CARMEL GILL, Comcast

22      AMY PAULI

23

24

25

CONFIDENTIAL

Page 219

1

2          IT IS HEREBY STIPULATED AND AGREED

3     by and between the attorneys for the respective

4     parties herein that filing and sealing be and

5     the same are hereby waived.

6          IT IS FURTHER STIPULATED AND AGREED

7     that all objections, except as to the form of

8     the question, shall be reserved to the time of

9     the trial.

10         IT IS FURTHER STIPULATED AND AGREED

11    that the within deposition may be sworn to and

12    signed before any officer authorized to

13    administer an oath, with the same force and

14    effect as if signed and sworn to before the

15    Court.

16

17

18

19                    - oOo -

20

21

22

23

24

25

CONFIDENTIAL

Page 233

1           J. Torres - Volume 2

2      Q.     What did Level 3 understand this

3   proposal to mean?

4           MR. STEESE:   Objection.   Form.

5   BY MR. BENSON:

6      Q.     You can answer the question.

7      A.     Can you be more specific in the

8   question?

9      Q.     Sure.

10           So when Level 3 received this

11   settlement proposal from AT&T, it had a

12   number of what are called settlement

13   principles on the document.   And one of the

14   settlement principles was that AT&T will

15   recover retro settlement for OTT if appeal

16   successful.

17           So my question, Ms. Torres,

18   is:   When Level 3 received this settlement

19   proposal, what did it understand this

20   particular point to mean?

21      A.     If there was any future change in

22   law informing us how to bill differently,

23   that we were agreeing to refund some

24   revenues to AT&T.

25      Q.     How would there be a future

CONFIDENTIAL

Page 234

1              J. Torres - Volume 2

2   change in law?

3       A.    If there was some sort of final

4   decision that was informing us how we bill

5   OTT traffic.

6       Q.    When you say "we," is it Level 3

7   in particular or is that industrywide?

8       A.    Industrywide.

9       Q.    Okay.  And I apologize,

10  Ms. Torres.  I keep saying "Level 3."

11  I understand that you work for CenturyLink,

12  but at the time, it was Level 3.  Does that

13  make sense?

14      A.    Yes.

15      Q.    Okay.

16           Do you recall seeing this

17  proposal in the April 2015 time frame?  Was

18  this ever shared with you?

19      A.    Yes.

20      Q.    Okay.  Do you recall who shared

21  it with you?

22      A.    Not specifically.  My assumption

23  would be Shaun, since it was sent to Shaun.

24      Q.    Okay.  Take a look at the very

25  bottom of this page, Ms. Torres.  And it's

CONFIDENTIAL

Page 257

1          J. Torres - Volume 2

2      communications with lawyers, I'm going

3      to instruct you not to answer.  If you

4      can answer without -- with regard to

5      communications with others outside the

6      presence of lawyers, you can answer

7      that.

8      A.     To my recollection, discussions

9   at this level were all inclusive of lawyers.

10  BY MR. BENSON:

11     Q.     Okay.  That's fair.

12            If you need a moment to read it

13  again, that's fine, but my question now is:

14  What did Level 3 understand number 6 to

15  mean?

16     A.     The understanding would be if

17  there is a change in law that instructs us

18  how to bill OTT differently than how we had

19  been billing prior, that Level 3 would be in

20  compliance with whatever the new rules were,

21  and that we would credit AT&T ██ percent of

22  any disputed charges from the date of this

23  settlement to when that new law was decided.

24     Q.     So "the new law is decided,"

25  that's what I want to focus in on a little

CONFIDENTIAL

Page 258

1          J. Torres - Volume 2

2    bit.

3              Does that phrase appear in number

4    6?

5         A.     Those specific words do not, but

6    the intent is there.

7         Q.     Okay.  Where in number 6 is the

8    intent?

9         A.     We needed a final ruling, final

10   ruling being a final decision instructing us

11   how to bill OTT.

12        Q.     Okay.  I'm going to give you an

13   interpretation of number 6.  I'm going to

14   ask whether or not Level 3 agrees with that

15   interpretation.  Is that okay?

16        A.     Okay.

17        Q.     Okay.  Does number 6 mean that if

18   the Court of Appeals remanded back to the

19   FCC and the FCC then were to make a ruling,

20   Level 3 would be required to provide a

21   refund of ███ percent of the disputed

22   charges, assuming that the refund -- excuse

23   me, assuming that the remand instructed

24   Level 3 and others like Level 3 to change

25   its billing in favor of AT&T?

Page 259

1          J. Torres - Volume 2

2          MR. STEESE:  Can you read that

3     whole thing back one more time,

4     please.

5          MR. BENSON:  And I apologize.

6     That was not a model of clarity.

7          (The record was read back as

8     follows:

9          QUESTION:  "Does number 6 mean

10     that if the Court of Appeals remanded

11     back to the FCC and the FCC then were

12     to make a ruling, Level 3 would be

13     required to provide a refund of

14     ██████ percent of the disputed charges,

15     assuming that the refund -- excuse me,

16     assuming that the remand instructed

17     Level 3 and others like Level 3 to

18     change its billing in favor of AT&T?")

19     A.    So I'm not a lawyer, and the

20     verbiage -- I don't want to assume that I'm

21     accurate, but the remand itself just means

22     that it's asking for clarity.

23          So the FCC, making a ruling,

24     I think is what that language said.  So if

25     the FCC ruling tells us how to bill, that's

CONFIDENTIAL

Page 260

1              J. Torres - Volume 2

2     what we would be in accordance with.  The

3     remand itself doesn't require us to change

4     billing because there was no direction on

5     how to bill from a decision -- a final

6     decision.

7     BY MR. BENSON:

8          Q.    Okay.

9              MR. BENSON:  Why don't we take a

10        five-minute break.

11             MR. STEESE:  Sounds good.

12             (Recess:  8:36 a.m. to 8:43 a.m.)

13    BY MR. BENSON:

14         Q.    Okay, Ms. Torres.  Thank you for

15    coming back after the break.  I appreciate

16    it.

17             If you could turn back to Bates

18    -11324 -- we're still on Exhibit 40 -- you

19    see that there is a sentence on here that

20    says, "I look forward to discussing more

21    Monday morning."

22             Do you see that?

23         A.    I do.

24         Q.    Okay.  So based on the calendar,

25    that appears to be May 11th, 2015.  Were you

CONFIDENTIAL

Page 264

                    J. Torres - Volume 2

1   position that at that time, item 6 in

3   Exhibit 40 had been satisfied?

4           MR. STEESE:  Objection.  Calls

5       for a legal conclusion.  Form.

6           You can answer the question if

7       you can.

8       A.   I would have to refer to my

9   lawyers on that.  I don't understand the

10  specific definition of each of those words.

11  BY MR. BENSON:

12      Q.   Okay.  Let's just -- in plain

13  English, the word "vacated" and "remanded"

14  appears in Exhibit 7.  Does number 6 talk

15  about anything vacated or remanded?

16          MR. STEESE:  I'm confused.  You

17      referred to Exhibit 7 -- ask that

18      question one more time, please.

19  BY MR. BENSON:

20      Q.   Exhibit 7 says, "The declaratory

21  ruling is accordingly vacated and remanded,"

22  and then number 6, back on Exhibit 40, talks

23  about a final ruling, and it also says the

24  word "remanded."

25          Does that help you at all answer

CONFIDENTIAL

Page 265

1                  J. Torres - Volume 2

2    the question whether or not, when the

3    DC Circuit issued its opinion in Exhibit 7,

4    number 6 is satisfied in Exhibit 40?

5         A.    So I'm not a lawyer, but my

6    understanding would be no because I don't

7    have direction of how to bill OTT.  And

8    until I have direction of how to bill OTT

9    traffic, I cannot satisfy number 6.

10        Q.    Okay.  Let's now look at what I'm

11   going to ask -- first off, Ms. Torres, based

12   on Exhibit 7, did Level 3 appeal the

13   decision of the DC Circuit to the Supreme

14   Court of the United States?

15             MR. STEESE:  We'll stipulate that

16        that did not happen.

17             MR. BENSON:  Okay.  That's fine.

18        AT&T accepts that stipulation.  Thank

19        you.

20   BY MR. BENSON:

21        Q.    Let's turn to what I'd like the

22   court reporter to now mark as the next

23   exhibit.

24             MR. BENSON:  I've lost track --

25        I apologize -- but it's the next

CONFIDENTIAL

Page 274

1                    J. Torres - Volume 2

2          conclusion.

3                    Answer if you can.

4          A.     I do not know.

5    BY MR. BENSON:

6          Q.     Okay.  Later in the paragraph, it

7    says "which such order becomes final."

8                    How would the applicable order on

9    appeal become final?

10                   MR. STEESE:   Objection.  Calls

11         for a legal conclusion.

12                   Answer if you can.

13         A.     I don't know specifically, you

14   know, what that means.  I can tell you what

15   we were looking for, is to be told how OTT

16   should be billed.  And that's when we would

17   assume it would be final, when it was no

18   longer subject to any further appeals.

19   BY MR. BENSON:

20         Q.     Okay.  I want to unpack that a

21   little bit.

22                   You said "what we were looking

23   for."  Just to confirm, when you say "we,"

24   do you mean Level 3, as a collective?

25         A.     Yes.

CONFIDENTIAL

Page 275

J. Torres - Volume 2

1

2      Q.      And did Level 3 ever indicate to

3  AT&T that that's what it was looking for?

4      A.      I believe our term sheets

5  captured that intent as well as assume --

6  but I can't say specifically because I

7  wasn't part of the conversations -- assume

8  discussions captured that intent as well.

9      Q.      Does this draft agreement, at

10 least (iv), reflect that language at all,

11 you know, instruction on how to bill?

12     A.      In my opinion, yes.  We have to

13 be told how to bill in order to understand

14 what ███ percent -- what we need to be

15 billing OTT traffic as.

16     Q.      Can you point to the language

17 that reflects that, please?

18     A.      (Document(s) reviewed.)

19         I believe the language discussing

20 that it becomes final; you know, additional

21 language saying "no longer subject to

22 further appeal" means that we have direction

23 on how to bill OTT traffic.

24     Q.      Okay.  "Becomes final," does that

25 mean when the DC Circuit ruled in

CONFIDENTIAL

Page 325

                    J. Torres - Volume 2

1

2      A.    I don't know Level 3's position,

3   and I really don't know AT&T's position.

4   BY MR. BENSON:

5      Q.    Okay.  All right.

6           MR. BENSON:  If the court

7      reporter could now show the witness

8      the next document, which was

9      previously marked as Exhibit 18.

10          (Previously marked Deposition

11      Exhibit 18, E-mail to Stocker and Andrews

12      from Torres, 7/28/17, Subject:  RE:  ATT

13      OTT Dispute, Bates CTL_0002775 to -2782,

14      tendered to the deponent.)

15   BY MR. BENSON:

16      Q.    Ms. Torres, just so we're clear.

17   Exhibit 18 was placed in front of you; is

18   that correct?

19      A.    Yes.

20      Q.    Okay.  And Exhibit 18 is an

21   e-mail from yourself back on July 28th,

22   2017, to Mr. Stocker and Shaun Andrews re

23   AT&T OTT Exchange.

24          Do you see that?

25      A.    I do.

CONFIDENTIAL

Page 326

1            J. Torres - Volume 2

2      Q.    Okay.  Ms. Torres, can you please

3  turn to Bates -778 -- 2778.

4      A.    Okay.

5      Q.    And I apologize.  If you flip the

6  page backwards one more, it's from Ed

7  Stocker -- it appears at the very bottom --

8  to Shaun Andrews, CCing you.  He sends it on

9  July 27, 2017, with the subject line:  ATT

10  OTT dispute.

11            Do you see that?

12      A.    I do.

13      Q.    So this e-mail is from Ed

14  Stocker.  Ed Stocker writes, at the top of

15  -2778, "I do want to call out to you a

16  second date.  May 8th, 2017, was the date

17  the ruling became final and no longer

18  subject to appeals.  AT&T may argue to make

19  this the effective date for the 65 percent."

20            Do you see that that language?

21      A.    I do.

22      Q.    What does that mean?

23            MR. STEESE:  Objection.

24  Foundation.  Outside the scope.  Part

25            of a settlement document, Rule 408

CONFIDENTIAL

Page 327

```
 1              J. Torres - Volume 2
 2         protected.
 3              You can answer.
 4       A.    So this e-mail exchange is to --
 5   for settlement purposes to understand the
 6   impact financially of any perspective we
 7   believed AT&T to have on this issue.
 8              And based on the Exhibit 17 we
 9   looked at earlier, an e-mail May 17th from
10   Alison Miller, in her e-mail she stated that
11   they believe May 8th is the -- when the
12   order became final.
13              So using AT&T's perspective, our
14   job was to understand the financial impact
15   for settlement purposes of what any position
16   may be for the company.
17   BY MR. BENSON:
18       Q.    Okay, Ms. Torres.  So I'm
19   interested to ask you if you see on -- flip
20   back one document that we've been discussing
21   to Exhibit 17.
22              And Mr. Stocker wrote on May 19,
23   2017, that the DC Circuit order did not
24   overturn the FCC's decision; it simply
25   remanded this issue to the FCC to better
```

CONFIDENTIAL

1              J. Torres - Volume 2

2   explain its reasoning.  The FCC's rule

3   remains the same, and it's Level 3's

4   position that end office switching continues

5   to be owed on OTT traffic.

6           Do you see that?

7      A.    I do.

8      Q.    And that was a public-facing

9   document.  When I mean [sic] "public," it

10  was sent to AT&T.  Is that correct?

11     A.    Yes.

12     Q.    If you switch back to Exhibit 18,

13  Mr. Stocker writes a couple months later

14  that May 8th, 2017, was the date that the

15  ruling became final and no longer subject to

16  appeals.

17          So my question is:  Why was

18  Level 3 saying one thing to AT&T and then

19  internally saying something different?

20          MR. STEESE:  Objection.

21     Foundation.  Outside the scope.

22     A.    As I stated, this was truly an

23  exercise to understand the financial impact

24  from AT&T's perspective of where we think

25  AT&T will be landing so we can calculate a

CONFIDENTIAL

Page 329

1              J. Torres - Volume 2

2    financial impact to the company.

3    BY MR. BENSON:

4        Q.    If the ruling was final and no

5    longer subject to appeal, does Level 3 owe

6    AT&T a refund for the access charges that it

7    paid?

8              And I'm going to call you out --

9    if you want, we can look back at the

10   settlement agreement, but we're talking

11   about (iv) where Level 3 agreed that it

12   would owe a refund 30 days after the ruling

13   became final.

14             MR. STEESE:  Can you ask that

15        question again?  That was very long.

16        Just the question part, not the

17        reference back to (iv).

18   BY MR. BENSON:

19       Q.    The question is:  Based on what

20   Mr. Stocker wrote, that on May 8th, 2017 --

21   which was the date the ruling became final

22   and no longer subject to appeal -- is the

23   language in (iv) satisfied so that Level 3

24   owes a refund?

25       A.    So just to clarify.  Ed's comment

CONFIDENTIAL

Page 330

1                J. Torres - Volume 2

2    was to calculate settlement -- for

3    settlement purposes, calculating a financial

4    impact to the company based on AT&T's

5    position that they had shared with us.

6              Secondly, there have been

7    settlements from this point in time to now,

8    and I don't know what those settlements read

9    and how they treated OTT traffic.

10             And third, I do not know

11   Level 3's position on the ruling that came

12   out this week.

13      Q.   So I'm not asking about the

14   ruling that came out this week.  I'm asking

15   about May 8th, 2017, the ruling from the

16   DC Circuit.  And that's the ruling that

17   Mr. Stocker references.

18             Does that change your answer at

19   all?

20      A.    No.  Ed's comment was to take

21   AT&T's position to calculate a financial

22   impact to the company to understand the

23   impact to Level 3.

24      Q.   Okay.  Now please flip back to

25   Bates -2776.