# EXHIBIT 42

# In The Matter Of:

*AT&T Corporation v.*
*Level 3 Communications, LLC*

*Andrew McClure*
*June 11, 2020*
*Confidential*



*Min-U-Script® with Word Index*

**Confidential**

1

```
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
-----------------------------------------X
AT&T CORPORATION,

        Plaintiff/Counterclaim Defendant,

              v.

LEVEL 3 COMMUNICATIONS, LLC.,

        Defendant/Counterclaimant,

              and

BROADWING COMMUNICATIONS, LLC, GLOBAL
CROSSING TELECOMMUNICATIONS, INC., and
WILTEL COMMUNICATIONS, LLC.

        Counterclaimants,

              v.

TELEPORT COMMUNICATIONS GROUP, INC.

        Counterclaim Defendant.
-----------------------------------------X
             ***CONFIDENTIAL***

      DEPOSITION OF ANDREW McCLURE

             Thursday, June 11, 2020




Reported by:

Rebecca Schaumloffel, CLR, RPR, CCR-NJ

Job No:  2020-86250
```

www.LexitasLegal.com/Premier    Lexitas    888-267-1200

Confidential

2

3      June 11, 2020

4      11:08 a.m.

8      Deposition of ANDREW McCLURE, held
9   remotely via Webex, before Rebecca
10  Schaumloffel, a Certified Livenote Reporter,
11  Registered Professional Reporter, Certified
12  Court Reporter of New Jersey, and Notary
13  Public of the States of New York, New Jersey,
14  Delaware, and Pennsylvania.

Confidential

3

A P P E A R A N C E S:

    SIDLEY AUSTIN
        Attorneys for the Plaintiff
        1501 K. Street, N.W.
        Washington, D.C. 20005
        BY:  MICHAEL HUNSEDER, ESQ.
            JUSTIN BENSON, ESQ.
            JOSH MOORE, ESQ.

    ARMSTRONG TEASDALE
        Attorneys for the Defendant
        4643 South Ulster Street
        Denver, Colorado 80202
        BY:  CHARLES STEESE, ESQ.

    ALSO PRESENT:

        Mark W. Lewis, Esq., AT&T

        Christian Ruiz, Lexitas

        *       *       *

202

|  |  |
|---|---|
| 1 | A. MCCLURE |
| 05:41PM 2 | MR. STEESE: You can answer. |
| 05:41PM 3 | Q. I am just trying to figure out if |
| 05:41PM 4 | there was disclosure -- is there any -- are |
| 05:41PM 5 | you aware, did Mr. ▇▇▇▇ disclose any |
| 05:41PM 6 | commercial relationship between AT&T and |
| 05:41PM 7 | either ▇▇▇▇ or ▇▇ |
| 05:41PM 8 | A. He did not. He did not. He just |
| 05:41PM 9 | -- he was explaining to me how it was that |
| 05:41PM 10 | that traffic, explaining to me how telephone |
| 05:41PM 11 | numbers that are registered in MPAC, TCG, |
| 05:41PM 12 | were originating toll-free calls that were |
| 05:42PM 13 | coming to our network to terminate. |
| 05:42PM 14 | Q. Okay. I would like to turn your |
| 05:42PM 15 | attention to page 11 and paragraph 23. |
| 05:43PM 16 | A. Yes. |
| 05:43PM 17 | Q. There you say in your opinion, "it |
| 05:43PM 18 | is improper to simply take AT&T's word for |
| 05:43PM 19 | its percent OTT." |
| 05:43PM 20 | Do you see that? |
| 05:43PM 21 | A. I do. |
| 05:43PM 22 | Q. And let me ask you this, is it |
| 05:43PM 23 | improper to simply take Level 3's word for |
| 05:43PM 24 | its percent OTT? |
| 05:43PM 25 | A. It just needs to be -- |

203

```
                           1                    A. MCCLURE
05:43PM                    2              MR. STEESE:  Objection to form.
05:43PM                    3         A.    It just needs to be consistent,
05:43PM                    4    right.  So if Dr. Pfautz takes AT&T's word
05:43PM                    5    for, this is our OTT, it's ▆▆▆▆, and we
05:43PM                    6    don't offer, this is all enterprise, it's all
05:43PM                    7    zero, we don't sell to wholesalers, he never
05:43PM                    8    looked at a single customer, never looked at
05:43PM                    9    a single trunk group, never looked at any
05:43PM                   10    information of AT&T's, but yet, for us, he is
05:44PM                   11    asking all of the details of all of the
05:44PM                   12    enterprise customers, even though AT&T itself
05:44PM                   13    is saying that, well, the enterprise is not.
05:44PM                   14    It's zero.  The enterprise is zero unless it
05:44PM                   15    has mobility which we have accounted for.
05:44PM                   16         Q.    So do you agree or disagree that
05:44PM                   17    the converse of that statement is true?  Do
05:44PM                   18    you agree that it's improper to simply take
05:44PM                   19    Level 3's word for its percent OTT, yes or
05:44PM                   20    no?
05:44PM                   21              MR. STEESE:  Objection to form;
05:44PM                   22         foundation.  Incomplete hypothetical.
05:44PM                   23         You can answer.
05:44PM                   24         A.    So I don't think that taking
05:44PM                   25    anybody's word for it is a good option.  I
```

204

1        A. MCCLURE

05:44PM  2    think that it should all be verifiable.
05:44PM  3    There should all be -- there should all be a
05:44PM  4    way to validate that everybody is playing by
05:44PM  5    the rules.
05:44PM  6             Now, whether that's by a third
05:44PM  7    party or however it may be decided, but
05:44PM  8    obviously taking somebody's word for it is
05:45PM  9    probably not the best option.
05:45PM 10        Q.   Okay.  Let me turn back, then, to
05:45PM 11    Exhibit 63 which is your spreadsheet that you
05:45PM 12    disclosed in May, the main spreadsheet.  In
05:45PM 13    column E, which is your percent OTT for each
05:45PM 14    customer, right?
05:45PM 15             Do you see that?
05:45PM 16        A.   I do.
05:45PM 17        Q.   Other than this spreadsheet and
05:45PM 18    other than the information in this
05:45PM 19    spreadsheet, is there any documentation in
05:45PM 20    the spreadsheet itself or otherwise that
05:45PM 21    corroborates the numbers in column E?
05:45PM 22        A.   No, this goes back to the original
05:45PM 23    documentation, the original report and the
05:45PM 24    original method and how I documented what
05:45PM 25    company's percent.

205

1         A. MCCLURE
05:46PM  2         Q.   So with respect to column E, if
05:46PM  3    there is no other documentation other than
05:46PM  4    what's in the spreadsheet in column E, are
05:46PM  5    you not asking AT&T to take your word for the
05:46PM  6    accuracy of the numbers in column E?
05:46PM  7              MR. STEESE:  Object to form.
05:46PM  8         Incomplete and improper comparison.
05:46PM  9         In fact, quite different, incomplete
05:46PM 10         hypothetical form.
05:46PM 11              MR. HUNSEDER:  Are you done with
05:46PM 12         that objection or are you going to
05:46PM 13         keep going?
05:46PM 14              MR. STEESE:  I can keep going.
05:46PM 15              MR. HUNSEDER:  I just want to
05:46PM 16         make sure if, you know, you have got
05:46PM 17         any other speaking objections, you
05:46PM 18         throw them out.
05:46PM 19              MR. STEESE:  I have been mild as
05:47PM 20         compared to objections.
05:47PM 21              MR. HUNSEDER:  Yes, other than
05:47PM 22         in this instance, perhaps.
05:47PM 23              Can I have the question read
05:47PM 24         back, please.
05:47PM 25              (Record read.)

Andrew McClure - June 11, 2020
**Confidential**

206

```
              1              A. MCCLURE
05:47PM       2         MR. STEESE:  Same objections.
05:47PM       3     You can answer, Andrew.
05:47PM       4     A.    So at the time that this was
05:47PM       5  released, the original numbers, the
05:47PM       6  percentages in 2017, when they were accurate
05:47PM       7  for the time of the research, AT&T had the
05:47PM       8  information by customer and could have tried
05:47PM       9  to validate those percentages themselves
05:47PM      10  independently.  They could have reached out
05:47PM      11  and said, [redacted] what is your OTT, and
05:48PM      12  [redacted] may have given them a number and
05:48PM      13  said, yes, here is our number, and they would
05:48PM      14  have something that's -- they could validate.
05:48PM      15          Originally, again, I go back to
05:48PM      16  when I was asked to do this, there was no
05:48PM      17  matter, there was no documentation.  This was
05:48PM      18  a huge ask to grab all of the usage for the
05:48PM      19  time period, and so I did not do that because
05:48PM      20  I wasn't aware of any way to do that and
05:48PM      21  either was [redacted] or anybody else.  So I did the
05:48PM      22  best I could with what I had at the time.
05:48PM      23          Now, with the current data of AT&T
05:48PM      24  would like to go out and validate these and
05:48PM      25  go and research the customers and if they had
```

www.LexitasLegal.com/Premier      Lexitas      888-267-1200

Andrew McClure - June 11, 2020
Confidential

207

1        A. MCCLURE
05:48PM  2    something where a customer like ▇ or ▇
05:48PM  3    or ▇ could come back and say this is
05:48PM  4    our OTT given this information or given the
05:48PM  5    understanding of what constitutes OTT and you
05:48PM  6    were given that and I could take that same
05:48PM  7    information and ask them, then I think that
05:48PM  8    that's acceptable if the industry agrees to
05:49PM  9    the question and the stated purpose of it.
05:49PM  10   But, again, it's -- you know, those are
05:49PM  11   hypotheticals.
05:49PM  12        Q.   Well, let me ask the question this
05:49PM  13   way:  Suppose, Mr. McClure, you accept your
05:49PM  14   dream job and go off to work for whoever in
05:49PM  15   whatever country and you are no longer
05:49PM  16   available to testify on behalf of Level 3.
05:49PM  17             Is there anyone else at Level 3
05:49PM  18   that can replicate what you do to determine
05:49PM  19   the percent of OTT in column E?
05:49PM  20        A.   Not unless they went back to 2017
05:50PM  21   and contacted the same people, no.
05:50PM  22        Q.   A couple quick questions back on
05:50PM  23   Exhibit 63 that I want to take care of before
05:50PM  24   we adjourn.
05:50PM  25             I want to ask you, this is again