IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00112-RM

AT&T CORP.,

    Plaintiff/Counter Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC,

    Defendant/Counterclaimant,

and

BROADWING COMMUNICATIONS, LLC, GLOBAL CROSSING TELECOMMUNCATIONS, INC., and WILTEL COMMUNICATIONS, LLC

    Counterclaimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.

    Counterclaim Defendant

---

### AT&T'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

---

    Plaintiff/Counterclaim Defendant AT&T Corp. ("AT&T"), by and through undersigned counsel, submits this reply brief in support of its motion for partial summary judgment (ECF No. 149).

### INTRODUCTION

    AT&T moved for partial summary judgment on three grounds: (1) Level 3 breached the parties' 2015 Agreement (the "Agreement" (ECF No. 15-1)), the Communications Act and

implementing rules, and its tariff by improperly billing AT&T end-office switching charges on over-the-top Voice over Internet Protocol ("OTT-VoIP") calls, (2) during the period now in dispute, Level 3 owes a full credit for improperly billed end-office charges based on the "Final Appellate Order" language in the Agreement, and (3) because Level 3 has no admissible evidence to support its claimed percentage of OTT-VoIP calls, it cannot recover end office charges that it alleges AT&T improperly withheld.[1]  *See* AT&T Mot. for Par. Sum. Jud. ("AT&T Mot."), ECF No. 149, at 3-4, 11, 15, 22.  In its opposition, Level 3 primarily addresses only the second ground, *i.e.*, when there was a Final Appellate Order and the timing of any refund.  *See* ECF No. 170, Level 3 Resp. to AT&T's Mot. for Par. Sum. Jud. ("Level 3 Opp."), at 15-24.[2]  As explained more fully below, Level 3's reading of the Agreement is wrong.  *See infra* 7-14.

Furthermore, Level 3 fails to address AT&T's third ground for partial summary judgment and largely fails to grapple with AT&T's first ground—that Level 3 breached the parties' Agreement, and violated the Federal Communications Commission's ("FCC") rules and its tariff, by improperly billing AT&T end office switching charges on OTT-VoIP calls.  *See* AT&T Mot. at 11-15.  In its *2019 Declaratory Ruling*,[3] the FCC conclusively rejected Level 3's reading of the

---

[1] The term "Level 3" collectively refers to Defendant/Counterclaimant Level 3 Communications, LLC and Counterclaimants Broadwing Communications, LLC, Global Crossing Telecommunications, Inc., and WilTel Communications, LLC.

[2] Level 3 spends the rest of its response rearguing the merits of *Level 3's* motion for summary judgment— thereby effectively granting itself an extension of the page limits for that motion.  *Compare id*. at 1-3, 7-15 (arguing that AT&T over-withheld payment, an issue that AT&T did not include in its motion), *with* ECF No. 151-2, Level 3 Mot. for Sum. Jud., at 8-10, 22-23 (same).  The Court should not consider those improper argument in its opposition.  In any event, those arguments lack merit for the reasons stated in AT&T's opposition.  ECF No. 166, at 17-21.

[3] The term "2019 Declaratory Ruling" refers to Order on Remand and Declaratory Ruling, *In the Matter of Connect America Fund*, 34 FCC Rcd 12692 (Dec. 17, 2019).

applicable VoIP rules (which Level 3 incorporated in its tariff), and contrary to Level 3's claim, *see* Level 3 Opp. at 1-2, the dispute over the meaning of these rules has been a central issue from the outset of this case.[4] In light of the FCC's *2019 Declaratory Ruling*, AT&T's first ground is ripe and can be resolved as a matter of law by entering partial summary judgment for AT&T.

While Level 3's opposition does ultimately respond to the second ground on which AT&T moved for partial summary judgment, *see* Level 3 Opp. at 15-24, its arguments lack merit. Level 3 tellingly never discusses the actual text of the parties' Agreement that is relevant to this issue, and barely mentions this Court's prior Opinion and Order, ECF No. 76, at 9-15. Instead, Level 3 invites the Court to consider contra-factual hypotheticals and interpret a private contract based on the filed tariff doctrine. None of Level 3's fanciful interpretations of the Agreement's text makes sense. Level 3 also seeks to rely on extrinsic evidence to override the terms of the Agreement that the Court previously described as "clear," but fundamental principles of contract law prohibit that approach (and in any event the extrinsic evidence supports AT&T, not Level 3).

## ARGUMENT

**I. LEVEL 3 IS LIABLE UNDER THE FCC'S RULES, LEVEL 3'S TARIFFS, AND THE 2015 AGREEMENT FOR BILLING AT&T END OFFICE CHARGES ON OTT-VOIP CALLS.**

AT&T's summary judgment motion explained that, in light of the FCC's *2019 Declaratory Ruling*, Level 3's longstanding position that it can properly bill end office charges on OTT-VoIP

---

[4] *See, e.g.*, ECF No. 1, Compl., ¶ 5 ("Level 3 continues to bill AT&T improperly, using higher rates, in breach of the Agreement and in violation of federal law"); ECF No. 85, Answer, ¶ 5 ("Level 3 denies that its billings breach the Settlement Agreement or violate federal law."); ECF No. 50, Proposed Scheduling Order, Level 3 Stmt. of Claims and Defenses, at 3 ("Level 3 denies that it is liable to refund any of the end-office switching access charges it has assessed to AT&T and further maintains that AT&T is responsible to continue to pay these charges").

3

calls has been authoritatively rejected.  AT&T Mot., at 2-3, 11-12.  Accordingly, since January 2019 (the date of another settlement agreement releasing claims prior to that date), Level 3's end office charges on all OTT-VoIP calls it sent to AT&T are unlawful under the Act and the FCC's rules, Level 3's tariff, and the Agreement.  *Id.* at 11-15.[5]

*The FCC's VoIP Rules.*  In its opposition, Level 3 barely mentions this aspect of AT&T's motion.  *Cf.* Level 3 Opp. at 1-2 (purporting to frame the "key issues" in this case).  Having litigated and lost this issue at the FCC, Level 3 has no valid defense to this aspect of AT&T's Complaint.  It argues that AT&T's statutory and declaratory judgment claims are "not properly before this Court."  Level 3 Opp. at 16 n.5.  Not so.  As explained in AT&T's motion to reinstate the claims (ECF No. 147) and its Reply (ECF No. 179), the Court dismissed these counts, without prejudice, on ripeness grounds.  But the claims are now indisputably ripe in light of the FCC *2019 Declaratory Ruling*.  Accordingly, those claims should be reinstated and the only question is the procedural vehicle for doing so.  Once reinstated, Level 3 has no defense to the argument that it has been violating the FCC's rules and the Act.

*Level 3's Tariff.*  Level 3 also plainly violated its tariff.  *See* AT&T Mot. at 13.  Level 3 addresses this argument only in a footnote (*See* Level 3 Opp. at 16 n.5), in which it concedes that its tariff incorporates the entirety of the FCC's rule defining "End Office Access Service" (47 C.F.R. § 51.903(d))—one of the rules that FCC construed as prohibiting end office access charges on OTT-VoIP calls.  *2019 Declaratory Ruling*, ¶ 8 & n.20.  But Level 3 claims that an additional

---

[5] The Court should enter partial summary judgment on (i) AT&T's breach of contract claim in Count I of AT&T's Complaint (Compl. ¶¶ 59-61, 65-70); (ii) AT&T's statutory claim in Count II (*id*. ¶¶ 76-85); and (iii) AT&T's declaratory relief claim in Count III.  The Court should also enter partial summary judgment dismissing those aspects of Count I of Level 3's Counterclaims that seek to recover end office charges for OTT-VoIP calls.  *E.g.*, ECF No. 124, ¶¶ 64-67, 69-71.

sentence that it added to its tariff "expressly includes OTT-VoIP traffic" and this sentence is the "reason that the [end office] charges do not violate the terms of Level 3's tariff." Level 3 Opp. at 16 n.5. This claim is nonsense.[6] Nothing in this additional sentence purports to authorize end office charges on OTT-VoIP calls.

*First*, the plain text of this additional sentence refers to "*the origination* and *termination* of interexchange telecommunications traffic *to any end user*." *Id.* (emphasis added). In its *2019 Declaratory Ruling*, however, the FCC explained that local carriers and their VoIP partners relying on over-the-top VoIP technology—*i.e.*, the public Internet and other third party connections—do *not* "originate" or "terminate" calls to "end users," but instead play a more limited, intermediate role. *2019 Declaratory Ruling*, ¶¶ 4, 14. Level 3 has violated the terms of this additional sentence when it bills end office switching on OTT-VoIP calls, because (as the FCC has found) it does not "originate" those calls from an "end user" in those circumstances.

*Second,* Level 3 fails to state that this additional sentence in its tariff was copied virtually word-for-word from language added by the FCC to another part of the FCC's rules, *see* 47 C.F.R. § 61.26(a)(3)(ii); *Transformation Order*, 26 FCC Rcd 17663, 18169, 18224-25 (2011). The FCC added this language to its rules in 2011—as part of the same *Transformation Order* that promulgated its VoIP rules (*see id.*; *see also, e.g.,* 47 C.F.R. § 51.913, 51.903(d)), which the FCC

---

[6] The additional sentence provides that "End Office Access Service" shall mean "(4) [t]he origination and termination of interexchange telecommunications traffic to any end user, either directly or via contractual or other arrangements with an affiliated or unaffiliated provider of interconnected VoIP service, as defined in 47 U.S.C. § 153(25), or a non-interconnected VoIP service, as defined in 47 U.S.C. § 153(36), that does not itself seek to collect reciprocal compensation charges prescribed by this subpart for that traffic, regardless of the specific functions provided or facilities used." ECF No. 150-3 at § 1, First Revised Page 6.1. This sentence does *not* "expressly" mention "OTT-VoIP traffic"—indeed, that term is not found anywhere in Level 3's tariff.

has now stated do *not* permit Level 3 to bill end office charges on OTT-VoIP calls. Level 3 has no explanation as to how the language it copied from § 61.26(a)(3)(ii) permits end office charges on OTT-VoIP calls, even though the other FCC rules added contemporaneously with that language prohibit the end office charges on OTT-VoIP calls.[7]

*Third*, Level 3 cannot lawfully file a tariff provision that allows it to violate the FCC's rules, by charging a higher end office rate when it only provides a lower-priced intermediate function.[8] There would be little point to the FCC's VoIP rules and policies if local carriers could simply elect to depart from the rules unilaterally by filing tariffs with higher rates than those set by the FCC. In fact, when the FCC issued its rules that allowed tariffing for VoIP services and set the appropriate maximum rates, *see Transformation Order*, 26 FCC Rcd. 17663, ¶¶ 933-45, it also promulgated a regulation specifying that local carriers filing tariffs were "required to tariff rates *no higher than*" the transitional rates established by the FCC.[9] For all these reasons, Level 3's

---

[7] Furthermore, the FCC added this language to its general definition of "switched exchange access services." 47 C.F.R. § 61.26(a)(3). Switched access services is a broad term that includes not just end office functions, but tandem switching and other functions needed to complete calls. *See id.* § 61.26(a)(3)(i) (companion definition listing functions including "local end office switching" and "tandem switching"). Level 3's insertion of this broad definition of "switched exchange access service" into its tariff definition of "end office access service" means that its tariff makes no sense. If taken literally, it would mean that the "end office access service" defined in the tariff includes *all* functions of *all* types of switched access service. Given that Level 3 placed this language right next to other terms that the FCC has interpreted to prohibit end office charges, then under the principle of *noscitur a sociis*, it is far more reasonable to conclude that the additional language in Level 3's tariff also prohibits end office charges on OTT-VoIP calls. At the very best, Level 3's tariff is ambiguous, and because ambiguities in a carrier's tariff are construed against the carrier, that would mean that Level 3's reading would fail, and AT&T's reading would be appropriate. *See, e.g., AT&T Corp. v. Alpine Commc'ns*, 27 FCC Rcd 11511, ¶ 27 (2011).

[8] *See, e.g., Global NAPS, Inc. v. FCC*, 247 F.3d 252, 260 (D.C. Cir. 2001) ("tariffs still must comply with the applicable statutory and regulatory requirements" and "[t]hose that do not may be declared invalid."); *PaeTec Commc'ns v. Commpartners*, No. 08-0397, 2010 WL 1767193, *4 (D.D.C. Feb 18, 2010) ("a tariff cannot be inconsistent with the statutory framework pursuant to which it is promulgated.").

[9] 47 C.F.R. § 51.905(b) (emphasis added). The FCC's VoIP rules, including 47 C.F.R. § 51.903(d) and § 51.913(b), are part of the FCC's "default transitional rules." *See id.* §§ 51.901-51.919.

tariff—like the FCC's rules that it incorporates—prohibits end office switching on OTT-VoIP.

***The 2015 Agreement***. Finally, Level 3's end office charges on OTT-VoIP calls violate the plain terms of the 2015 Agreement. *See* AT&T Mot. at 13-14. Level 3 contends—without discussing the text—that the Agreement "required AT&T to pay tariffed end office charges on *all telephone calls* originating from a Level 3 telephone number, even if it was an OTT call." Level 3 Opp. at 3. The Agreement does no such thing. Rather, it provides that "[f]or switched access traffic exchanged by the Parties beginning on June 1, 2015, AT&T shall pay Level 3 its ***applicable switched access tariffed rate*** for OTT traffic, pursuant to the terms of the *OTT Declaratory Order*." ECF No. 15-1 at 3 (first emphasis added). Under the plain language, AT&T's is not obliged to pay "end office charges on all telephone calls originating from a Level 3 telephone number." *See* Level 3 Opp. at 2. Rather, it is obliged to pay Level 3's "applicable switched access tariffed rate." Under the FCC's *2019 Declaratory Ruling*—which applies retroactively, *see id.* ¶ 26—the "applicable" tariffed rate on OTT-VoIP calls is the tandem rate, not the end office rate.

## II. DURING THE PERIOD IN DISPUTE, LEVEL 3 OWES AT&T A FULL CREDIT FOR THE IMPROPERLY BILLED END OFFICE CHARGES, AND LEVEL 3 CANNOT RETAIN ANY PORTION OF THOSE UNLAWFUL CHARGES.

AT&T has moved for summary judgment on Count II of Level 3's Counterclaims, and partial summary judgment on its own breach of contract claim in Count I, on the grounds that, during the period still in dispute (January 2019 to the present), AT&T is entitled to a full credit of end office charges billed by Level 3 on OTT-VoIP calls. AT&T Mot. at 15-22. The Court should decline Level 3's invitation to ignore the plain language of the Agreement, and hold that under the Agreement's terms, the period in which Level 3 was required to provide only a partial refund ended in May 2017, when the judgment in *AT&T* became final and no longer subject to judicial review.

7

### A. The 2015 Agreement Is Clear As To When The Partial Refund Period Ended, And Level 3's Arguments That The Period Was Extended Until Final Action By The FCC Are Incorrect.

Level 3 does not even *attempt* to interpret the relevant language of the parties' Agreement. Instead, it simply asserts that "AT&T's interpretation of the [Agreement] is . . . incorrect." Level 3 Opp. at 15. In fact, Level 3's arguments are incorrect. The parties' Agreement provides:

> in the event the *OTT Declaratory Order* is overturned, either in whole or in part, and the applicable order on appeal becomes final and is no longer subject to further appeal or other judicial review ("Final Appellate Order"), Level 3 will refund, within 30 days, ▇▇▇▇▇▇▇ ) of the disputed OTT charges beginning with June 2015 traffic through the date on which such Final Appellate Order becomes final and is no longer subject to further appeal or other judicial review.[10]

The Court previously reviewed this language and found it "clear" in the "following respect. The refund that plaintiff may or may not be entitled, has nothing to do with resolution of the 'OTT-VoIP billing issue' *by the FCC*. Instead, the Settlement Agreement provides that plaintiff will be entitled to a refund *when (1) the Declaratory Ruling is overturned in whole or in part, and (2) 'the applicable order on appeal' (a) becomes final and (b) is no longer subject to further appeal or other judicial review*." ECF No. 76 at 10 (emphases added).

In its opposition, Level 3 does not offer any valid interpretation of this language in the Agreement. Nor does it attempt to refute AT&T's showing that the conditions set forth in the Agreement's text and identified by Court were met as of May, 2017. As AT&T has explained, *see* AT&T Mot. at 13-15, 17-22, the first condition was met in November, 2016, because the D.C.

---

[10] ECF No. 15-1. The *OTT Declaratory Order* is elsewhere defined in the Agreement as the FCC's "Declaratory Ruling released on February 11, 2015, *see Connect America Fund,* WC Docket No. 10-90, *et al.*, Declaratory Ruling, FCC 15-14 (released Feb. 11, 2015)." *See id.* at 1. This brief will refer to the *OTT Declaratory Order* as the "*2015 Declaratory Ruling*." The *2015 Declaratory Ruling* is the order that was later vacated and remanded by the D.C. Circuit in *AT&T*.

Circuit's opinion in *AT&T* unquestionably "overturned . . . in whole or part" the *2015 Declaratory Ruling* when it vacated that order.[11]  The second condition—2(a) in the Court's prior Order—has also been met.  The "applicable order on appeal" (and the "Final Appellate Order") is the D.C Circuit's judgment in *AT&T*, as the D.C. Circuit's judgment is the only order that could "overturn[] the *OTT Declaratory Order*," either in whole or in part.  *See* AT&T Mot. at 18-19.  The "Final Appellate Order," *i.e.,* the D.C. Circuit's judgment in *AT&T*, became "final" when the court issued its mandate, *see In re Sunset Sales, Inc.*, 195 F.3d 568, 570 (10th Cir. 1999).  The third condition—that the Final Appellate Order be "no longer subject to further appeal or other judicial review"—was met in May, 2017.  That was approximately 90 days after the D.C. Circuit denied the petition for rehearing that Level 3 and other intervenors had filed, and the period for seeking Supreme Court review expired.  *See* Sup. Ct. R. 13; 28 U.S.C. § 2350(a).

Rather than engage with the Court's discussion of the Agreement's relevant language, Level 3 minimizes the Court's prior findings.  *See* Level 3 Opp. at 20.  It claims, for example, that the Court has not "already rejected Level 3's interpretation of the Agreement."  *Id.*  In fact, although the Court's prior ruling was on a motion to dismiss, the Court has already rejected Level 3's arguments.  As it did on its motion to dismiss, Level 3 argues that the Agreement allows Level 3 to provide AT&T with only a partial refund until the FCC acts on remand from AT&T (or a court reviews that action).  *Id.* at 2.  Now that the FCC has acted, Level 3 contends that the "Final Appellate Order" is the FCC's *2019 Declaratory Ruling.  Id.* at 21.

But the Court rejected this exact argument in its prior order, explaining that Level 3 had

---

[11] *See, e.g.*, *Action on Smoking & Health v. CAB*, 713 F.2d 795, 797 (D.C. Cir. 1983) ("To vacate . . . means to annul; to cancel or rescind; to declare, to make, or to render, void; to defeat; to deprive of force; to make of no authority or validity; to set aside." (internal quotation marks and citation omitted)).

9

"argued that the breach of contract claim depends on the entry of a 'final order on the issue,' with 'the issue' being 'the OTT-VoIP billing issue.' *That is simply wrong*." ECF No. 76 at 9-10 (emphasis added, citation omitted).[12] Level 3 provides no grounds for the Court to re-visit its prior Order, and there is none.

Level 3 also quotes from *other* portions of the Court's prior order to minimize the Court's holding rejecting Level 3's position on the issue at hand. *See* Level 3 Opp. at 20-21. Although the Court undoubtedly found other portions of the Settlement Agreement to be unclear, those other aspects of the 2015 Agreement are now irrelevant in light of subsequent developments. *See* AT&T Mot. at 22 n.24. For example, the Court need not decide whether AT&T was entitled to a partial refund or how that refund should be determined, because the partial refund period ended in May, 2017, and the parties' 2019 Settlement Agreement resolved all disputes prior to January, 2019. Since then, Level 3 must provide AT&T with a full credit of all end office charges billed on OTT-VoIP calls.

    **B.**    **Level 3's Arguments Ignore The Agreement's Language, And Are Irrelevant To The Interpretation Of The Agreement As To The Refund Period.**

Rather than address the text of the Agreement, or explain why the conditions identified in the Court's prior order have not been satisfied, Level 3's opposition brief seeks to obscure the issues with a series of smoke-screens. Level 3 Opp. at 15-24. None of them has merit.

---

[12] *See id.* ("Although the extent of the refund that plaintiff may or may not be entitled is certainly open to debate, *the conditions that must be satisfied in order for plaintiff to be entitled to a refund do not involve final resolution of the OTT-VoIP billing issue. All that must be 'final' is the 'applicable order on appeal.'* Put simply, *defendant has framed the issue wrong*." (emphases added, footnote omitted)). The Court later noted that "whether the 'applicable order on appeal' was final could itself be a condition that had not yet occurred." ECF No. 76 at 10. As AT&T noted, ECF No. 149, Mot. for Sum. Jud. at 17, this and other language shows that the Court's prior order did not definitively hold that all three conditions had been met. However, it should do so now on summary judgment.

Level 3 first makes an inaccurate and internally inconsistent argument about the relationship between the 2015 Agreement and the filed tariff doctrine. *See id*. at 15-20. It claims that the Agreement must be interpreted to comply with the "mandates" of the filed tariff doctrine, *id.* at 18, which is a doctrine that applies as a result the Communications Act's tariffing requirement in 47 U.S.C. § 203. As an initial matter, this assertion contradicts the contention made by Level 3, just a few pages earlier, that "the 'filed-tariff doctrine,' does not apply to . . . detariffed agreements" like the 2015 Agreement. Level 3 Opp. at 16. Level 3's arguments are confused, and the Agreement does not conflict with the filed tariff doctrine.

In 2011, the FCC issued new rules (the "VoIP rules") that expressly and comprehensively regulated "VoIP-PSTN" calling, which includes the calls in dispute in this case.[13] The new rules set "default" rates for VoIP calls (including OTT-VoIP calls), and its rules allowed local carriers like Level 3 to file these default rates in tariffs. *See Transformation Order*, ¶¶ 933, 944. However, the FCC's rules also explicitly permitted carriers to enter into negotiated agreements that provided for "different" rates. *Id.* ¶¶ 933, 944, 960-61; 47 C.F.R. § 51.905(a) ("The rates set forth in this section are default rates. Notwithstanding any other provision of the Commission's rules, telecommunications carriers may agree to rates different from the default rates."). Level 3 is simply wrong that carrier agreements on VoIP calling—like the Agreement—can only contain rates that are at or above the default VoIP rates that may appear in tariffs.[14]

---

[13] *Transformation Order*, ¶ 940. PSTN refers to the "public switched telephone network," *i.e.* the traditional networks that do not always use internet protocol facilities. VoIP-PSTN calling occurs when a caller using a VoIP phone dials the number and communicates with a caller using a traditional phone (or vice-versa).

[14] It is also significant that the FCC exercised its authority to bring "all VoIP-PSTN traffic within the section 251(b)(5) framework." *Transformation Order*, ¶¶ 933-34, *see id*. ¶¶ 954-55 (explaining legal authority for use of Section 251(b)(5)). Section 251(b)(5) provides that local exchange carriers have the "duty to

11

Level 3's argument relies on a separate set of FCC rules that are generally applicable to switched access services provided by competitive local exchange carriers ("CLECs"), like Level 3. Level 3 Opp. at 16-17; 47 C.F.R. § 61.26; *Access Charge Reform*, 16 FCC Rcd. 9923 (2001). Contrary to Level 3's claims, these rules also do not forbid CLECs from negotiating agreements with rates that are lower than those they might file in tariffs. *See id.* ¶ 4 (the FCC's rules for CLEC access charges "maintain[] the ability of CLECs to negotiate access service arrangements with IXCs *at **any** mutually agreed upon rate*.") (emphases added).[15] However, even if Level 3's view were correct and there were some conflict between the CLEC access rule (§ 61.26) and the VoIP rules, the Court need not rule on the issue. That is because the FCC's VoIP rules, which explicitly allow carriers to agree to rates "different" than the FCC default rates, apply "[n]otwithstanding any other provision of the Commission's rules." 47 C.F.R. § 51.905(a).[16] Thus, Level 3's arguments about the meaning of the CLEC rules in Section 61.26 are beside the point.

---

establish reciprocal compensation arrangements for the transport and termination of telecommunications." 47 U.S.C. § 251(b)(5). The FCC has authority to set rates for reciprocal compensation arrangements, and after explaining that VoIP-PSTN traffic could fall within Section 251(b)(5), it set those default rates. *Transformation Order*, ¶¶ 933-34, 954-55. Level 3 cites no authority that these reciprocal compensation arrangements (whether set by the FCC or negotiation) must comply with the filed tariff doctrine.

[15] Although Level 3 cites some authorities that appear to hold otherwise, these holdings appear to be dicta or otherwise fail to account for language in the FCC's rules and orders that allow negotiation of "any" rate. *CLEC Access Reform Order*, ¶ 3; *see also id.* ¶ 54 (encouraging "CLECs to negotiate rates outside of the tariff safe harbor where they see fit"); *id.* ¶ 28 ("Tariffs require IXCs to pay the published rate for tariffed CLEC access services, *absent an agreement to the contrary*") (emphasis added); *id.* ¶ 57 (the FCC rule "will have no effect on *negotiated contracts, under which CLECs have chosen to charge even more favorable access rates to particular IXCs*") (emphasis added).

[16] *See also id.* § 51.905(b)(1) (carriers filing tariffs should follow "the procedures specified in part 61 of this chapter [which includes 47 C.F.R. § 61.26] when filing such tariffs," "[e]xcept as expressly superseded below" in the VoIP rules; *id.* § 51.913(b) (VoIP rule on default charges applies "[n]otwithstanding any other provision of the Commission's rules").

Level 3's filed tariff doctrine argument fails for another, independent reason: it is entirely counter-factual. Based on the undisputed facts, the 2015 Agreement does not violate the filed tariff doctrine because AT&T pays no less than the "applicable" tariff rate, and, under the partial refund provision in which it receives back only ▆ of the end office charges it paid Level 3 on OTT-VoIP calls, AT&T effectively pays more than Level 3's tariffed rate—and there is no violation of the filed tariff doctrine even under Level 3's misguided reading of it.

Level 3's argument on how the 2015 Agreement should be interpreted relies on a counterfactual hypothetical: it contends that, *if* the FCC had ruled in Level 3's favor on remand, then under AT&T's interpretation, AT&T would pay less than the "applicable" tariffed rate during the partial refund period, which Level 3 (wrongly) claims is inconsistent with the filed tariff doctrine. Level 3 Opp. at 19-20. But there is no need to engage counterfactual hypotheticals to construe the provisions of the 2015 Agreement that are at issue. The Agreement is clear, and the Court need not decide how to interpret the Agreement if the FCC had, contrary to what actually happened, ruled in Level 3's favor.[17]

Level 3 also argues that its interpretation of the Agreement—in which the FCC's *2019 Declaratory Ruling* is somehow the "Final Appellate Order"—best explains the last sentence of Section 1(a)(iv) of the Agreement. *Id.* at 21. For reasons AT&T has explained, it disagrees. ECF

---

[17] There is, in any event, nothing amiss in the Agreement even under Level 3's hypothetical. Level 3 simply misreads the filed tariff doctrine. Under the hypothetical facts posed by Level 3, the 2015 Agreement's refund provision is simply akin to a settlement of a dispute about how to apply Level 3's tariff. *See Qwest Corp. v. AT&T Corp.*, 479 F.3d 1206 (10th Cir.2007). During the partial refund period, AT&T contended that, despite the FCC's 2015 order, it owed only tandem charges based on the expected outcome of its appeal. Level 3 contended that end office charges applied and AT&T would lose it appeal. The parties settled this dispute, dependent upon the outcome of AT&T's appeal. Such settlements of disputes under tariffs and the uncertain application of FCC rules are permissible.

No. 166, AT&T Opp. to Level 3 Mot. for Sum. Jud. at 11 & n.7. But here again, Level 3 misses the point. The Court need not decide the meaning of the last sentence in order to decide when the partial refund period ended—those provisions are distinct. Rather, as confirmed by the plain text of the Agreement, and the Court's prior order, that refund period ended in May, 2017, when all the conditions in the text of the Agreement were satisfied.

### C. Level 3's Use of Extrinsic Evidence is Inappropriate, and In Any Event, Supports AT&T's Reading of the 2015 Agreement.

Despite the fact that this Court has previously ruled that the relevant language from the Agreement is "clear," ECF No. 76 at 10, Level 3 continues to argue that the parties' "negotiations confirm" its interpretation of the Agreement. Level 3 Opp. at 23. Level 3's resort to extrinsic evidence is improper. *See RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003). In any event, as AT&T has explained, *see* AT&T Mot. at 15-16, the extrinsic evidence on which Level 3 relies is unavailing. While the unexecuted term-sheet cited by Level 3 would have provided a refund of disputed charges "through the date of a final ruling, either from the Court of Appeals or, if remanded, by the FCC ruling" ECF No. 15-2, this language was not included in any draft of the Agreement exchanged between the parties, RSUMF No. 29, and is certainly not found in the final executed version of the Agreement. *See* ECF No. 15-1 at 3, § 1(a)(iv). The parties would have included the term sheet's language in the 2015 Agreement had the parties intended to tie Level 3's refund obligation to a future action of the FCC.

### III. LEVEL 3 DOES NOT ADDRESS AT&T'S THIRD GROUND FOR PARTIAL SUMMARY JUDGMENT.

Level 3's opposition entirely fails to address the third ground for AT&T's motion for partial summary judgment, which is that, if the Court grants AT&T's motion to preclude testimony

14

by Level 3's expert, it should enter partial summary judgment in favor of AT&T on Count I of Level 3's Counterclaim.  *See* AT&T Mot.*,* at 22-24.  As AT&T has explained, other than Mr. McClure's unverifiable, *ipse dixit* view as to Level 3's percentage of OTT-VoIP calls, Level 3 has no other evidence of that percentage for the relevant time period.  *See id.* at 23.  For this additional reason, the Court should grant this aspect of AT&T's summary judgment motion.

## CONCLUSION

For the foregoing reasons, the Court should grant AT&T's partial motion for summary judgment.

Respectfully submitted this 3rd day of August, 2020.

By: /s/ Justin A. Benson

Rebecca B. DeCook
Andrew T. Flynn
Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1027
becky.decook@moyewhite.com
andrew.flynn@moyewhite.com

Michael J. Hunseder
Michael D. Warden
Justin A. Benson
Joshua W. Moore
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
mhunseder@sidley.com
mwarden@sidley.com
jbenson@sidley.com
joshua.moore@sidley.com

*Attorneys for Plaintiff AT&T Corp.
and Counterclaim Defendant Teleport
Communications Group*

**CERTIFICATE OF SERVICE**

I, Justin A. Benson, hereby certify that on August 3, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Charles W. Steese, #26924
Douglas N. Marsh, #45964
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
Email: csteese@armstrongteasdale.com
Email: dmarsh@armstrongteasdale.com

*Attorneys for Defendant Level 3 Communications, LLC*

/s/ Justin A. Benson
Justin A. Benson
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
E-mail: jbenson@sidley.com

*Attorney for Plaintiff AT&T Corp. and Counterclaim Defendant Teleport Communications Group*