**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-RM

AT&T CORP.,

     *Plaintiff/Counter Defendant,*

v.

LEVEL 3 COMMUNICATIONS, LLC,

     *Defendant/Counterclaimant,*

and

BROADWING COMMUNICATIONS, LLC, GLOBAL CROSSING
TELECOMMUNCATIONS, INC., and WILTEL COMMUNICATIONS, LLC

     *Counterclaimants,*

v.

TELEPORT COMMUNICATIONS GROUP, INC.

     *Counterclaim Defendant*

---

**AT&T & TCG'S REPLY AND SUPPORTING EVIDENCE IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

     Plaintiff/Counterclaim Defendant AT&T Corp. and Counterclaim Defendant Teleport Communications Group (collectively, "AT&T"), by and through undersigned counsel, respectfully submits this Reply and Supporting Evidence ("RSUMF") in support of its Motion for Partial Summary Judgment (ECF No. 149).

*    *    *

| | Moving Party's Statement of Undisputed Material Facts ("MSUMF") and Supporting Evidence | Opposing Party's Response and Additional Facts and Supporting Evidence ("OSUMF") | Moving Party's Reply and Supporting Evidence ("RSUMF") |
|---|---|---|---|
| 1. | Level 3's business model has long included partnering with retail providers of VoIP calling services. Ex. 1, Aug. 29, 2019 Deposition of A. McClure at 53:24 – 54:3. | Disputed. The referenced testimony does not support the assertion. The testimony states that "as our co-providers have matured, they've started owning more and more percentage of their TNs (i.e., telephone numbers)." | Level 3 has long recognized that it resells services to VoIP calling services. See Ex. 10, Aug. 28, 2019 Deposition of J. Torres (Exhibit 4); Ex. 11, Aug. 28, 2019 Deposition of J. Torres at 66:14 to 67:13. In fact, one of the services that Level 3 offers to providers of VoIP calling services are telephone numbers. See id. at 67:10-18. |
| 2. | AT&T disputed and withheld 65% of Level 3's billed end office access charges. See Ex. 2, Feb. 8, 2019 Deposition of A. Burgess at 133:21-134:2. | Disputed in part.<br><br>AT&T historically disputed and withheld 65 percent of Level 3's end office switched access charges. See ECF No. 151-7 (Level 3 MSJ Exhibit 11) (A. Burgess Depo.) at 130:9–24 & 154:16–155:12; ECF No. 152-24 (Level 3 MSJ Exhibit 23) (J. Torres 8-28-19 Depo.) at 50:23–54:9.<br><br>AT&T continued to withhold 65 percent of Level 3's end office charges even after Level 3 stopped billing end office charges on terminating calls, which the FCC's | AT&T has continued to withhold 65% of OTT VoIP charges as the last agreed-upon factor until Level 3 can demonstrate its OTT traffic is not 65%.   ECF No. 167-2 (AT&T OSUMF Exhibit B), Meola Depo., at 257:12-18, 264:16-265:16.<br><br>AT&T also disputes Level 3's total end office billings number, which AT&T believes is too high. See ECF No. 167-15 (AT&T OSUMF Exhibit O), AT&T Rule 26(e) Disclosure, at 2-3. Furthermore, the parties have other unrelated disputes as to end office charges billed by Level 3, which has |

| | | | |
|---|---|---|---|
| | | Transformation Order required to occur in July 2017, and as a result has withheld millions of dollars each year from Level 3. *See* ECF No. 151-7 (Level 3 MSJ *Exhibit 11*) (A. Burgess Depo.) at 200:23–201:23.<br><br>Throughout 2019 and 2020, AT&T withheld more than Level 3's total end office billings each month. *See* ECF No. 151-19 (Level 3 MSJ *Exhibit 28*) (Declaration of M. Kellow) ¶ 6. | affected AT&T's total withholdings, and Level 3's analysis does not take account all payments made by AT&T. *Id.* AT&T's intention was to withhold 65% of end office billings for the OTT dispute.   ECF No.  167-12 (AT&T OSUMF Exhibit L), Burgess Depo., at 134:3-12. |
| 3. | Level 3's tariff permits customers to withhold disputed bills.  *See* Ex. 3, Level 3's Tariff at § 4.9(1). | Disputed as incomplete.   Section 4.9(1) states: "The Customer may dispute a bill in good faith only by written notice to the Company. Unless such notice is received within 90 days …, the bill statement shall be deemed to be correct and payable in full by Customer. Any Customer who has a dispute shall be advised by the Company that the Customer may file a formal or informal complaint with the Commission. Such claim must identify in detail the basis for the dispute,   and   if   the   Customer withholds disputed amounts, it must identify the account number under which the bill has been rendered, the | The tariff says nothing about not permitting a customer "to withhold more than it is disputing, or amounts it cannot justify as disputing, both of which occurred here." In fact, the Tariff clearly states that a customer "may dispute a bill in good faith," which AT&T has done. *See* Ex. 3, Level 3's Tariff at § 4.9(1).<br><br>In any event, AT&T is <u>not</u> withholding more than it is disputing, *see* ECF No. 167-15 (AT&T OSUMF Exhibit O), AT&T Rule 26(e) Disclosure at 2-3, and its withholding is justified by the 2015 Settlement Agreement because by signing the 2015 Agreement, Level |

| | | date of the bill, and the specific items on the bill being disputed to permit the Company to investigate the merits of the dispute.<br><br>This provision does not permit a customer like AT&T to withhold more than it is disputing, or amounts it cannot justify as disputing, both of which occurred here.  See OSUMF ¶ 2. | 3 agreed that its OTT percentage was historically 65%.  ECF No. 167-11 (AT&T OSUMF Exhibit K), Torres Depo., at 50:14-22; ECF No 15-1, 2015 Settlement Agreement, at 2.  AT&T's intent in agreeing to the 65% number was to use it prospectively.  ECF No. 167-2 (AT&T OSUMF Exhibit B), Meola Depo., at 204:13-18.<br><br>AT&T conducted studies that demonstrated that Level 3's OTT percentage was between ███ and ███.  ECF 167-12 (AT&T OSUMF Exhibit L), Burgess Depo., at 87:21-88:17.  Further, the parties historically agreed that Level 3's OTT percentage was 65%—and because the FCC's rules permit agreement between carriers on such matters, *e.g.*, 47 C.F.R. § 51.905(a); Order on Remand and Declaratory Ruling, *In the Matter of Connect America Fund*, 34 FCC Rcd 12692, n.62 (Dec. 17, 2019); In re Connect America Order, 26 FCC Rcd. 17663, ¶¶ 960-61, 963-64 & n.1996 (2011), the parties' historic agreements as to Level 3's OTT percentage are itself facts showing that the Level 3 OTT percentage *was* 65%. |

| 4. | AT&T and Level 3 entered into a Release and Settlement Agreement on April 27, 2015 (the "2015 Agreement"). *See* Ex. 4, ECF No. 15-1 (A true and correct copy of the 2015 Agreement was previously filed with the Court). | Admit. | |
|---|---|---|---|
| 5. | The Parties agreed in the 2015 Agreement that Level 3's percentage of OTT VoIP traffic was historically 65%. *See* Ex. 4 at § 1(a)(i)(B). | Disputed. The actual text of the Agreement states that 65 percent is "the amount of the switched access usage charges for traffic that is the subject of the Disputed billed by Level 3"—i.e., that AT&T had disputed 65 percent of Level 3's charges, not that 65 percent of Level 3's charges were OTT.<br><br>The provision at issue reads as follows:<br><br>No later than thirty (30) days after the receipt of Level 3's invoice for traffic exchanged from April 1 through May 31, 2015, seventy-five percent (75%) of the ***amount of the switched access usage charges for traffic that is the subject of the Dispute billed by Level 3, which has historically been approximately sixty-five percent (65%) of overall billing*** | AT&T conducted studies that demonstrated that Level 3's OTT percentage was between ▮▮▮ and ▮▮▮ ECF No. 167-12 (AT&T OSUMF Exhibit L), Burgess Depo., at 87:21-88:17. And AT&T estimated that Level 3's percentage of OTT was 65% as of 2012. *See id.* at 87:21-89:1. By signing the 2015 Agreement, Level 3 agreed that its OTT percentage was historically 65%. ECF No. 167-11 (AT&T OSUMF Exhibit K), Torres Depo., at 50:14-22; ECF No 15-1, 2015 Settlement Agreement, at 2. AT&T's intent in agreeing to the 65% number was to use it prospectively. ECF No. 167-2 (AT&T OSUMF Exhibit B), Meola Depo., at 204:13-18.<br><br>And the 65% figure referred to Level 3's percentage of OTT and was not constrained to April and May 2015 billings. *Id.* at 204:8-18. Level agreed |

| | | ***for end office switching*** ("April-May Supplemental Settlement Amount"). AT&T will transmit the April-May Supplemental Settlement Amount to the Level 3 account designated to receive switched access payments using the Parties' standard process for switched access payments.<br><br>(Emphasis added.)<br><br>Both Level 3 and AT&T designated a 30(b)(6) witness to discuss the intent of the 65 percent factor referenced in Section 1(a)(i)(B) of the Agreement: AT&T designated Mr. Ardell Burgess (*see* ECF No. 151-7 (Level 3 MSJ *Exhibit 11*) (A. Burgess Depo.) at 11:14–12:4), and Level 3 designated Ms. Jennifer Torres (*see* ECF No. 152-24 (Level 3 MSJ *Exhibit 23*) (J. Torres 8-28-19 Depo.) at 18:13–21:13).<br><br>In July 2013, AT&T and Level 3 entered into a separate written agreement, which was only in effect during calendar year 2013 and stated:<br>    Because the Parties had been<br>    unable to determine the volume of | that their OTT percentage had "historically been approximately sixty-five percent of overall billing for end office switching." ECF No. 167-11 (AT&T OSUMF Exhibit K), Torres 8-19-2019 Depo., at 50:14-22.<br><br>Further, because the parties historically agreed that Level 3's OTT percentage was 65%, and because the FCC's rules permit agreement between carriers on such matters, *e.g.*, 47 C.F.R. § 51.905(a); Order on Remand and Declaratory Ruling, *In the Matter of Connect America Fund*, 34 FCC Rcd 12692, n.62 (Dec. 17, 2019); In re Connect America Order, 26 FCC Rcd. 17663, ¶¶ 960-61, 963-64 & n.1996 (2011), the parties' historic agreements as to Level 3's OTT percentage are itself facts showing that the Level 3 OTT percentage *was* 65%.<br><br>The last paragraph of OSUMF No. 5 also contains characterizations and legal conclusions, not material assertions of fact.  It also misstates the 2015 Agreement.  The Agreement states that Level 3 must refund ███ ████████ of the "disputed OTT charges." ECF No. 15-1, 2015 |

| | | | |
|---|---|---|---|
| | | Level 3 traffic that was OTT prior to the Effective Date of this Settlement Agreement, Level 3 and AT&T agree that for the period January 2013 through December 2013, 65% of the end office traffic billed to AT&T CORP by Level 3 is OTT provider traffic.<br><br>*See* ECF No. 151-15 (Level 3 MSJ *Exhibit 24*) (K. Meola Depo. Ex. 6) § 2.16.<br><br>AT&T admits that at the time it entered into the 2013 agreement it did not know Level 3's OTT percentage. *See* ECF No. 151-7 (Level 3 MSJ *Exhibit 11*) (A. Burgess Depo.) at 99:22–100:25.<br><br>The 2015 Agreement stated that 75 percent of all end office billings through June 2015 would be paid; however, at the time the Agreement was executed, two months of billings still needed to be reconciled. *See* ECF No. 151-7 (Level 3 MSJ *Exhibit 11*) (A. Burgess Depo.) at 120:14–121:19; ECF No. 152-24 (Level 3 MSJ *Exhibit 23*) (J. Torres 8-28-19 | Settlement Agreement, at 3.  AT&T has disputed 65% of OTT charges. *See* ECF No. 167-12 (AT&T OSUMF Exhibit L)*,* Burgess Depo., at 133:21–134:12; ECF No. 167-3 (AT&T OSUMF Exhibit C), Torres 12-19-2019 Depo., at 318:25–319:16. |

|  |  | Depo.) at 37:24–38:20 & 70:24–73:23. The 65 percent provision only concerned what needed to be paid for April and May 2015 billings. *See id.; see also* ECF No. 152-6 (Level 3 MSJ *Exhibit 5*) (K. Meola Depo.) at 205:24–206:20.<br><br>By signing the Agreement, Level 3 was not claiming that, as of May 2015, 65 percent of its end office billings were for OTT traffic. ECF No. 151-7 (Level 3 MSJ *Exhibit 11*) (A. Burgess Depo.) at 122:5–16; ECF No. 152-24 (Level 3 MSJ *Exhibit 23*) (J. Torres 8-28-19 Depo.) at 48:11–49:6.<br><br>AT&T admits it has no facts to show that Level 3's OTT percentage was ever 65 percent. *See* ECF No. 151-7 (Level 3 MSJ *Exhibit 11*) (A. Burgess Depo.) at 124:3–11.<br><br>The purpose of the 65 percent in the Agreement was to establish that AT&T had historically disputed and withheld 65 percent of Level 3's end office switched access charges, and that the parties had used this percentage as a reference point in the |  |

| | | | |
|---|---|---|---|
| | | past. *See* ECF No. 151-7 (Level 3 MSJ *Exhibit 11*) (A. Burgess Depo.) at 130:9–24 & 154:16–155:12; ECF No. 152-24 (Level 3 MSJ *Exhibit 23*) (J. Torres 8-28-19 Depo.) at 50:23–54:9.<br><br>Under the Agreement, Section 1(a)(iv) requires Level 3 to refund ███ ███ of the actual OTT calling. *See* ECF No. 151-7 (Level 3 MSJ *Exhibit 11*) (A. Burgess Depo.) at 208:24–209:6; ECF No. 151-16 (Level 3 MSJ *Exhibit 25*) (A. McClure Response Disclosure) ¶ 2(a); ECF No. 152-6 (Level 3 MSJ *Exhibit 5*) (K. Meola Depo.) at 207:12–23 & 213:23–215:6; *see also* ECF No. 151-7 (Level 3 MSJ *Exhibit 11*) (A. Burgess Depo.) at 239:21–240:5 (acknowledging if Level 3's actual OTT percentage is less than 65%, that AT&T has over withheld). | |
| 6. | After Level 3 declined to provide AT&T's refund, AT&T began withholding approximately 65% of Level 3's end office access service charges relating to OTT-VoIP calls. Ex. 2 at 134:3-9. | Admit. | |

| 7. | Level 3 claimed that its OTT-VoIP percentage had dropped to ▉ of its total VoIP traffic. *See* Ex. 5, Nov. 18, 2019 Deposition of A. McClure at 91:5-12. | Admit that in 2016 through July 2017, Mr. Andrew McClure of Level 3 found that approximately ▉ percent of Level 3's originating calling was OTT, while ▉ percent of its terminating traffic (which is no longer at issue) was OTT. *See* Ex. B (August 29, 2019 A. McClure Depo.) at 52:18–23, and 80:25–81:18; *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 44. | Level 3's data was unreliable and therefore did not in fact show its OTT percentage was ▉ percent originating and ▉ percent terminating.  ECF No. 167-13 (AT&T OSUMF Exhibit M), Dr. Pfautz Expert Report, at ¶ 37–50; ECF No. 167-14 (AT&T OSUMF Exhibit N), McClure Depo., at 60:1-61:22.  Further, Level 3 did not provide the data underlying its claims, despite AT&T's request (and industry practice including Level 3's tariff). *See* ECF No. 167-2 (AT&T OSUMF Exhibit B), Meola Depo., at 266:8-21. |
| --- | --- | --- | --- |
| 8. | AT&T and Level 3 entered into a Confidential Release and Settlement Agreement on June 27, 2019 (the "2019 Agreement").  *See* Ex. 6 (A true and correct copy of relevant excerpts from the 2019 Agreement). | Admit. | |
| 9. | The 2019 Agreement provides that "all claims for amounts due or refunds due for traffic invoiced by Level 3 to AT&T through December 31, 2018 are settled and released with respect to the OTT-VoIP Compensation Dispute." *See* Ex. 6 at pp. 7-8. | Admit. | |
| 10. | The 2019 Agreement provides that the "OTT-VoIP Compensation Dispute shall continue to be an | Admit. | |

| | | | |
|---|---|---|---|
| | Ongoing Dispute," which means that the Dispute "will not be resolved for certain traffic and services . . . provided from January 1, 2019 forward." *See* Ex. 6 at pp. 4, 8. | | |
| 11. | Level 3 and its VoIP partners rely on third party public internet connections to carry calls from the calling party to AT&T and other long distance companies.  *See* Ex. 1 at 65:18-24 | Disputed.  The referenced testimony does not support the assertion.  The testimony states that it's a potential that customers use a third-party broadband provider for their broadband connection.  It states nothing about whether calls flow over this this third-party connection. | The testimony contained in Exhibit 1 specifically states Level 3 and its VoIP partners *always* rely on a third party provider for their broadband connection, necessitating that the calls must travel over this connection:<br><br>"Q. And did you make any inquiries to determine whether the Level 3 -- the **customers of Level 3's customers used a third-party provider for their broadband connection**?"<br><br>"A. I asked if that was a potential solution, and they said **yes. And that's always the case**." Ex. 1 at 65:18-24 (emphasis added).<br><br>Indeed, the FCC has made clear that when Local Exchange Carriers ("LECs") like Level 3 "and their VoIP provider partners merely transmit[] calls to unaffiliated [Internet Service Providers] for routing over the public Internet [they] are not performing" the physical interconnection which is an |

| | | |
|---|---|---|
| | | "essential function of end office switching." *In the Matter of Connect America Fund*, 34 FCC Rcd 12692 ¶ 17 (Dec. 17, 2019). |
| 12. | Level 3's tariff permits charges for local switching (or end office) services in certain circumstances. *See* Ex. 3 at §§ 15.1.1.1 - 15.1.1.2 | Admit, but the referenced section is incomplete. *See also* Section 1.1, page 1.3 (definition of "End Office Access Service"), page 1.4 (definition of "End User"), page 1.6 (definition of "Local Switch, Local Switching"), and Sections 14.1, 14.2.1, and 14.2.9.4.2. | |
| 13. | Level 3's tariff defines end office access service co-extensively with the FCC's rules. *See* Ex. 3 at § 1, First Revised page 6.1. | Disputed. Level 3's tariff defines end office access service more broadly than do the FCC Rules. Specifically, the tariff's definition contains each of the three forms of end office access service identified in 47 C.F.R. § 51.903(1) through (3). But it also includes a fourth form NOT listed in the FCC's definitions: "The origination and termination of interexchange telecommunications traffic to any end user, either directly or via contractual or other arrangements with an affiliated or unaffiliated provider of interconnected VoIP service, as defined in 47 U.S.C. § 153(25), or a | Level 3 has conceded that its tariff incorporates the entirety of the FCC's rule defining "End Office Access Service" (47 C.F.R. § 51.903(d))—one of the rules that FCC construed as prohibiting end office access charges on OTT VoIP calls. *See* Order on Remand and Declaratory Ruling, *In the Matter of Connect America Fund*, 34 FCC Rcd 12692 ¶ 8 & n.20 (Dec. 17, 2019) ("*2019 Declaratory Ruling*."). <br><br> The fourth part of Level 3's tariff does not define end office access service more broadly than do the FCC Rules for three reasons: |

| | | non-interconnected VoIP service, as defined in 47 U.S.C. § 153(36), that does not itself seek to collect reciprocal compensation charges prescribed by this subpart for that traffic, regardless of the specific functions provided or facilities used." ECF No. 148-5 at § 1, First Revised Page 6.1. This definition expressly includes OTT-VoIP traffic. | (1) The plain text of this additional sentence refers to "*the origination* and *termination* of interexchange telecommunications traffic *to any end user*." In its *2019 Declaratory Ruling*, however, the FCC explained that local carriers and their VoIP partners relying on over-the-top VoIP technology—*i.e.*, the public Internet and other third party connections—do *not* "originate" or "terminate" calls to "end users," but instead play a more limited, intermediate role. *2019 Declaratory Ruling*, ¶¶ 4, 14.<br><br>(2) This additional sentence in its tariff is was copied virtually word-for-word from language added by the FCC to another part of the FCC's rules, *see* 47 C.F.R. § 61.26(a)(3)(ii); *Transformation Order*, 26 FCC Rcd 17663, 18169, 18224-25. The FCC added this language to its rules in 2011—as part of the same *Transformation* |

| | | |
|---|---|---|
| | | *Order* that promulgated its VoIP rules (*see id.*; *see also, e.g.,* 47 C.F.R. § 51.913, 51.903(d)), which the FCC has now stated do *not* permit Level 3 to bill end office charges on OTT VoIP calls.<br><br>(3) Level 3 cannot lawfully file a tariff provision that allows it to violate the FCC's rules, by charging a higher end office rate when it only provides a lower-priced intermediate function. |
| 14. | The 2015 Agreement provides that Level 3 may bill, and AT&T shall pay, Level's "applicable switched access tariffed rate for OTT traffic, pursuant to the terms of the OTT Declaratory Order."   Ex. 4 at § 1(a)(ii). | Disputed as incomplete.  The section reads: "For switched access traffic exchanged by the Parties beginning on June 1, 2015, AT&T shall pay Level 3 its applicable switched access tariffed rate for OTT traffic, pursuant to the terms of the OTT Declaratory Order. For avoidance of doubt, this Settlement Agreement shall not prohibit AT&T from disputing Level 3's billing for switched access traffic for reasons unrelated to the requirements of the OTT Declaratory Order, including but not limited to disputes regarding volumes or | Level 3's OSUMF No. 14 is not proper for two reasons. First, Level 3 does not dispute or admit MSUMF No. 14.   Rather, Level 3 has chosen to dispute "as incomplete."   The 2015 Agreement provides for the exact language quoted by AT&T in MSUMF No. 14.   *See* Ex. 4. |

| | | applicable rates." | |
|---|---|---|---|
| 15. | The 2015 Agreement provides that "any billing and payments for OTT traffic exchanged after such Final Appellate order becomes final shall be in compliance with terms of that order." Ex. 4 at § 1(a)(iv). | Disputed as incomplete. AT&T tries to segregate Section 1(a)(iv) of the Agreement into three segments (MSUMF ¶¶ 15–16 and 18), and even then omits key language. The provision reads:<br><br>(iv) Although the Parties agree that this Settlement Agreement is intended to be a full and final settlement of all disputes and balances associated with OTT traffic prior to June 1, 2015, the Parties also recognize the pendency of the OTT Appeal. Therefore, in the event the OTT Declaratory Order is overturned, either in whole or in part, and the applicable order on appeal becomes final and is no longer subject to further appeal or other judicial review ("Final Appellate Order"), Level 3 will refund, within 30 days, ████████████ of the disputed OTT charges beginning with June 2015 traffic through the date on which such Final Appellate Order becomes final and is no longer subject to | Level 3's OSUMF No. 15 is not proper for two reasons. First, Level 3 does not dispute or admit MSUMF No. 15. Rather, Level 3 has chosen to dispute "as incomplete." Second, the second sentence in Level 3's OSUMF No. 15 is not a material statement of fact. Rather, Level 3 states its opinion as to what is "key language" from the Parties 2015 Agreement. In any event, the 2015 Agreement provides for the exact language quoted by AT&T in MSUMF No. 15. *See* Ex. 4. |

| | | further appeal or other judicial review; provided, however, that if the OTT Declaratory Order is overturned in part, and not in whole, then Level 3 will only be required to refund OTT charges to the extent they should not have been charged in accordance with the Final Appellate Order. Further, the Parties agree that any billing and payments for OTT traffic exchanged after such Final Appellate Order becomes final shall be in compliance with terms of that order. | |
|---|---|---|---|
| 16. | The 2015 Agreement provides that Level 3 should provide a ▮▮▮ refund "beginning with June 2015 traffic through the date on which such Final Appellate Order becomes final and is no longer subject to further appeal or other judicial review."   Ex. 4 at § 1(a)(iv). | Disputed as incomplete.  AT&T tries to segregate Section 1(a)(iv) of the Agreement  into three segments (MSUMF ¶¶ 15–16 & 18), and even then omits key language.  The provision reads: <br><br> (iv) Although the Parties agree that this Settlement Agreement is intended to be a full and final settlement of all disputes and balances associated with OTT traffic prior to June 1, 2015, the Parties also recognize the pendency of the OTT Appeal. | Level 3's OSUMF No. 16 is not proper for two reasons.  First, Level 3 does not dispute or admit MSUMF No. 16.   Rather, Level 3 has chosen to dispute "as incomplete."  Second, the second sentence in Level 3's OSUMF No. 16  is not a material statement of fact.  Rather, Level 3 states its opinion as to what is "key language" from the Parties 2015 Agreement.  In any event, the 2015 Agreement provides for the exact language quoted by AT&T in MSUMF No. 16.   *See* Ex. 4. |

|  |  | Therefore, in the event the OTT Declaratory Order is overturned, either in whole or in part, and the applicable order on appeal becomes final and is no longer subject to further appeal or other judicial review ("Final Appellate Order"), Level 3 will refund, within 30 days, ██████████ of the disputed OTT charges beginning with June 2015 traffic through the date on which such Final Appellate Order becomes final and is no longer subject to further appeal or other judicial review; provided, however, that if the OTT Declaratory Order is overturned in part, and not in whole, then Level 3 will only be required to refund OTT charges to the extent they should not have been charged in accordance with the Final Appellate Order. Further, the Parties agree that any billing and payments for OTT traffic exchanged after such Final Appellate Order becomes final shall be in compliance with terms of that order. |  |
|---|---|---|---|

| 17. | The 2015 Agreement provides that it shall be construed in accordance with and governed by the laws of the State of New York. Ex. 4 at § 5. | Admit. | |
|-----|------|------|------|
| 18. | The 2015 Agreement defines the term "Final Appellate Order" to mean the order that could "overturn[]" the "*OTT Declaratory Order*" either in whole or in part, once that "applicable order on appeal becomes final and is no longer subject to further appeal or other judicial review." Ex. 4 at § 1(a)(iv). | Disputed as incomplete.  AT&T tries to segregate Section 1(a)(iv) of the Agreement into three segments (MSUMF ¶¶ 15–16 and 18), and even then omits key language.  The provision reads:<br><br>(iv) Although the Parties agree that this Settlement Agreement is intended to be a full and final settlement of all disputes and balances associated with OTT traffic prior to June 1, 2015, the Parties also recognize the pendency of the OTT Appeal. Therefore, in the event the OTT Declaratory Order is overturned, either in whole or in part, and the applicable order on appeal becomes final and is no longer subject to further appeal or other judicial review ("Final Appellate Order"), Level 3 will refund, within 30 days, ▮▮▮▮▮ of the disputed OTT charges beginning with June 2015 traffic through the date on which such | Level 3's OSUMF No. 18 is not proper for two reasons.  First, Level 3 does not dispute or admit MSUMF No. 18.  Rather, Level 3 has chosen to dispute "as incomplete."  Second, the second sentence in Level 3's OSUMF No. 18 is not a material statement of fact.  Rather, Level 3 states its opinion as to what is "key language" from the Parties 2015 Agreement.  In any event, the 2015 Agreement defines the term "Final Appellate Order" exactly as AT&T notes in MSUMF No. 18.  *See* Ex. 4. |

| | | | |
|---|---|---|---|
| | | Final Appellate Order becomes final and is no longer subject to further appeal or other judicial review; provided, however, that if the OTT Declaratory Order is overturned in part, and not in whole, then Level 3 will only be required to refund OTT charges to the extent they should not have been charged in accordance with the Final Appellate Order. Further, the Parties agree that any billing and payments for OTT traffic exchanged after such Final Appellate Order becomes final shall be in compliance with terms of that order. | |
| 19. | The 2015 Agreement defines the term "OTT Declaratory Order" as "a Declaratory Ruling released on February 11, 2015, see Connect America Fund, WC Docket No. 10-90, et al. Declaratory Ruling FCC 15-14 (released Feb. 11, 2015)." Ex. 4 at p. 1. | Admit. | |
| 20. | The 2015 Agreement defines the term "OTT Appeal" to mean "the Petition for Review of the *OTT Declaratory Order* [filed by AT&T] with the | Disputed.   The Agreement states: "on March 21, 2015, AT&T filed **_a_** Petition for Review of the OTT Declaratory Order with the United | Undisputed. |

| | | | |
|---|---|---|---|
| | United States Court of Appeals for the District of Columbia Circuit." Ex. 4 at p.1. | States Court of Appeals for the District of Columbia Circuit (the "OTT Appeal") (emphasis added). | |
| 21. | The parties drafted a Term Sheet prior to executing the 2015 Agreement. *See* Ex. 7, ECF No. 15-2 (A true and correct copy of the Term Sheet was previously filed with the Court). | Disputed. AT&T drafted the term sheet—not Level 3. On May 8, 2015, George Sloan sent Mike Riederer an email captioned "Settlement Proposal – Confidential." With respect to the OTT dispute, the email stated:<br><br>Here is our attempt to capture our agreement construct. Two items you will notice: (a) The late fees are separated out. I know you guys don't want it recorded this way. If the math works out, Monday morning, I'll support the flat 75%. (b) The team added an additional item they believe is closed and can be formalized in this document. I look forward to discussing more Monday morning. I'll have Kim Meola with me from John Nolan's team. Thanks. George<br><br>***<br><br>Settlement Terms - OTT Dispute<br><br>(1) AT&T agrees to pay 75% of L3's retrospective claims on OTT for usage incurred through the end | AT&T acknowledges that AT&T drafted the term sheet. |

|  |  | of May 2015. Note: Billed usage does not include LPCs. |  |
|  |  | (2) AT&T agrees to pay 25% of the LPCs associated with OTT usage billed through end of May 2015. |  |
|  |  | (3) AT&T agrees to pay L3 full switched access per the Level3 tariffs for both originating and terminating OTT traffic on a prospective basis for June 2015 usage forward. |  |
|  |  | (4) On a prospective basis, beginning with June 2015, Level 3 will not bill any EO elements associated with domestic originated OTT 8YY traffic not reflecting a Level 3 owned CPN or CPNLess traffic that is not served by a Level 3 end office. Level 3 will continue to bill full switched access on Level 3 owned TNs. |  |
|  |  | (5) For any usage prior to June 2015, the settlement is a full and final settlement of all disputes and balances regardless of whether AT&T wins or loses its FCC appeal. |  |
|  |  | (6) **If AT&T wins its FCC appeal,** |  |

| | | | |
|---|---|---|---|
| | | ***L3 will refund*** █ ***of the disputed charges beginning with June 2015 through the date of a final ruling, either from the Court of Appeals or, if remanded, by the FCC ruling.***<br><br>*See* ECF No. 151-9 (Level 3 MSJ *Exhibit 13*) (K. Meola Depo. Ex. 19) at CTL 11324–26 (emphasis added). | |
| 22. | The Parties agreed that historically 65% of Level 3's end office charges to AT&T were for OTT VoIP calls. *See* Ex. 4 at § 1(a)(i)(B); Ex. 8, Aug 28, 2019 Deposition of J. Torres at 50:14-22. | Disputed.   This assertion is also contained in MSUMF ¶ 5.  Disputed for the same reasons as set forth in OSUMF ¶ 5. | AT&T incorporates by reference its response as set forth in RSUMF No. 5. |
| 23. | Andrew McClure's estimates of the OTT VoIP percentages of Level 3's customers are not verifiable by anyone at Level 3.  *See* Ex. 9, June 11, 2020 Deposition of A. McClure at 207:12-21. | Disputed as contrary to the record evidence. Mr. McClure testified that his percentages were created in 2017, and there would be no way to verify the percentages in 2020 unless you used 2017 data and contacted the same people as he contacted in 2017. *See* Ex. A (June 11, 2020 Deposition of Andrew McClure) at 202:17– 207:21. | Level 3's characterization in OSUMF No. 23 of the testimony cited by AT&T in MSUMF No. 23 is incorrect. The testimony is as follows:<br><br>"Q: Well, let me ask the question this way: Suppose, Mr. McClure, you accept your dream job and go off to work for whoever in whatever country and you are no longer able to testify on behalf of Level 3.  Is there anyone at Level 3 that can replicate what you do to determine the percent of OTT in column E?" |

| | | | "A: Not unless they went back to 2017 and contacted the same people, no."<br><br>*See* Ex. 9, June 11, 2020 Deposition of A. McClure at 207:12-21.<br><br>Level 3 personnel are obviously unable to go "back to 2017 and contact[] the same people." For this reason, it is impossible for anyone at Level 3 to verify his estimates of Level 3's customers' OTT VoIP percentages. |
| 24. | | | On April 15, 2015, Level 3 sent an email to AT&T expressing disagreement on the parties' respective positions on the impact of an appeal on the finality of the settlement the parties were negotiating, stating as follows:<br><br>I think the biggest business item worth covering today is the proposed concept of settlement of OTT, with the condition that the appeal would over -ride whatever we agree. Initially, we | Undisputed.[1] |

---

[1] Level 3's OSUMF Nos. 24-56 are almost verbatim copied from its *own* MSUMF (ECF No. 152-1) in an attempt to improperly reargue the merits of its *own* Motion for Summary Judgment.

| | | | |
|---|---|---|---|
| | | see that as simply a transfer of retro and prospective reserved /unrecognized monies from AT &T to Level 3, and held in escrow (conceptually at least) until the appeal is concluded. We're not clear that this approach will really solve much for either party at this stage given the subsequent uncertainty? Our preference therefore, would be full and final settlement - we should discuss whether that is an option here and/or whether we're missing any potential benefit from your original proposal.<br><br>*See* ECF No. 152-8 (Level 3 MSJ *Exhibit 7*) (K. Meola Depo. Ex. 14) at ATT_PROD_0011781; ECF No. 152-6 (Level 3 MSJ *Exhibit 5*) (K. Meola Depo.) at 136:5–137:12; *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 10. | |
| 25. | | On May 7, 2015, Mr. Sloan sent an email to Kim Meola—the person at AT&T responsible for the OTT dispute—which stated the following | Undisputed |

with respect to the OTT dispute:

Kim:

Thanks for stepping out of LWD today to help. Below ***I've captured the construct of the OTT/ Tandem deal we agreed to with L3 today. I'd appreciate you doing two things: (a) Double check that this deal works for you, and (b) please have the appropriate attorney review/enhance the language. I want to send this construct language over to Mike Riederer Friday AM***.

(1) AT&T agrees to pay 75% of L3's retrospective claims on OTT and Tandem through the end of May 2015. ACTION: I'll set up some time with us and Mike Riederer tomorrow to run through the math on the late payments together. Our intent is to pay in the 25% range as discussed.

(2) Regardless of whether AT&T wins or loses its FCC appeal, neither AT&T or L3 can clawback additional amounts for OTT/Tandem

| | | | |
|---|---|---|---|
| | | claims for any period prior to June 2015.<br><br>(3) If AT&T wins its FCC appeal, AT&T can only clawback ▮ of the disputed amount starting June 2015 ***through the date of the FCC ruling.***<br><br>(4) AT&T and L3 agree to pricing that is 75% of L3's asking price (need help with this language) for Tandem moving forward.<br><br>*See* ECF No. 151-8 (Level 3 MSJ *Exhibit 12*) (G. Sloan Depo. Ex. 20) at AT&T 0011854 (emphasis added); *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 12. | |
| 26. | | On May 8, 2015, George Sloan sent Mike Riederer an email captioned "Settlement Proposal – Confidential." With respect to the OTT dispute, the email stated:<br><br>Here is our attempt to capture our agreement construct. Two items you will notice: (a) The late fees are separated out. I know you guys don't want it recorded this way. If | Undisputed. |

the math works out, Monday morning, I'll support the flat 75%. (b) The team added an additional item they believe is closed and can be formalized in this document. I look forward to discussing more Monday morning. I'll have Kim Meola with me from John Nolan's team. Thanks. George

***

Settlement Terms - OTT Dispute

(1) AT&T agrees to pay 75% of L3's retrospective claims on OTT for usage incurred through the end of May 2015. Note: Billed usage does not include LPCs.

(2) AT&T agrees to pay 25% of the LPCs associated with OTT usage billed through end of May 2015.

(3) AT&T agrees to pay L3 full switched access per the Level3 tariffs for both originating and terminating OTT traffic on a prospective basis for June 2015 usage forward.

(4) On a prospective basis, beginning with June 2015, Level 3

<table>
<tr><td></td><td></td><td>

will not bill any EO elements associated with domestic originated OTT 8YY traffic not reflecting a Level 3 owned CPN or CPNLess traffic that is not served by a Level 3 end office. Level 3 will continue to bill full switched access on Level 3 owned TNs.

(5) For any usage prior to June 2015, the settlement is a full and final settlement of all disputes and balances regardless of whether AT&T wins or loses its FCC appeal.

(6) ***If AT&T wins its FCC appeal, L3 will refund ▮▮▮ of the disputed charges beginning with June 2015 through the date of a final ruling, either from the Court of Appeals or, if remanded, by the FCC ruling.***

*See* ECF No. 151-9 (Level 3 MSJ *Exhibit 13*) (K. Meola Depo. Ex. 19) at CTL 11324–26 (emphasis added); *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 14.

</td><td></td></tr>
<tr><td>27.</td><td></td><td>Points one through five in the May 8, 2015 term sheet are all encapsulated</td><td>Disputed, except to the extent that AT&T agrees that point six in the May</td></tr>
</table>

| | | | |
|---|---|---|---|
| | | in concept in the Agreement. *See* ECF No. 152-6 (Level 3 MSJ *Exhibit 5*) (K. Meola Depo.) at 162:23–165:6; *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 17. | 8, 2015 term sheet is not included in the final 2015 Agreement.  ECF No. 167-2 (AT&T OSUMF Exhibit B), Meola Depo., at 165:13-166:15; ECF No. 167-4 (AT&T OSUMF Exhibit D), Sloan Depo., at 76:1-77:4.  The 2015 Settlement Agreement, not the term sheet, represented the final agreement between the parties and contained the entire agreement regarding the OTT dispute.  ECF 15-1, 2015 Settlement Agreement, at 6 ("This Agreement is the entire and complete agreement of the Parties regarding the subject matter hereof…. All prior discussions and negotiations regarding the Disputes have been, and are, merged and integrated into, and are superseded by, this Agreement."); ECF No. 167-3 (AT&T OSUMF Exhibit C), Torres Depo., at 254:24-255:22;   ECF No. 167-4 (AT&T OSUMF Exhibit D), Sloan Depo., at 76:1-77:4. |
| 28. | | In deposition, Mike Riederer testified that point number six in the May 8, 2015 term sheet reflected the parties' agreement that if the FCC changed the way that companies could bill for OTT traffic, then that would impact the forward looking aspect of the | Disputed.  Mr. Riederer did not "have a recollection" and answered "I don't know" when asked whether point six in the May 8, 2015 term sheet reflected the parties agreement that if the FCC changed the way that companies could bill for OTT traffic |

| | | | |
|---|---|---|---|
| | | settlement agreement. *See* ECF No. 152-9 (Level 3 MSJ *Exhibit 8*) (M. Riederer Depo.) at 46:21–49:23; *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 18. | going forward. *See* ECF No. 167-5 (AT&T OSUMF Exhibit E), Riederer Depo., at 46:21–50:23. In any event, point number six from the term sheet is not reflected in the 2015 Agreement, which was actually executed by the Parties. ECF No. 167-6 (AT&T OSUMF Exhibit F), John Depo., at 143:8-146:25; ECF 15-1, 2015 Agreement, at 6. |
| 29. | | No one at AT&T had any discussions with anyone at Level 3 indicating that AT&T's intent for the Settlement Agreement was different or changed from that reflected in item number six in the May 8, 2015 term sheet. *See* ECF No. 152-6 (Level 3 MSJ *Exhibit 5*) (K. Meola Depo.) at 167:14–168:3; *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 18. | Disputed. AT&T and Level 3 exchanged redlined versions of the 2015 Settlement Agreement. ECF No. 167-8 (AT&T OSUMF Exhibit H), Meola Depo. Ex. 23; ECF No. 167-9 (AT&T OSUMF Exhibit I), Meola Depo. Ex. 24; ECF No. 167-2 (AT&T OSUMF Exhibit B), Meola Depo., at 198:19-199:14. The initial draft of the Agreement, which was drafted by Level 3, did not contain language that was similar to point 6 of the term sheet. *See* ECF No. 167-10 (AT&T OSUMF Exhibit J), Meola Depo. Ex. 22, at CTL0012908. Nor did later drafts exchanged between the parties include the language contained in point number six of the term sheet. *See* ECF No. 167-8 (AT&T OSUMF Exhibit H), Meola Depo. Ex. 23, at CTL_0012895; ECF No. 167-9 |

| | | | |
|---|---|---|---|
| | | | (AT&T OSUMF Exhibit I), Meola Depo. Ex. 24, at CTL_0004212; *compare* ECF No. 167-7 (AT&T OSUMF Exhibit G), John Depo. Exs. 90, 91 (internal AT&T draft not sent to Level 3), at AT&T_PROD_0014104. The Parties' did not intend to implement point number six in the term sheet and the Parties' intent was thus reflected in the words of the 2015 Agreement, which both parties accepted  *See* ECF No. 167-2 (AT&T OSUMF Exhibit B), Meola Depo., at 205:9-23;  ECF No. 167-11 (AT&T OSUMF Exhibit K), Torres 8-19-2019 Depo., at 50:14-22; ECF 15-1, 2015 Agreement, at 6. |
| 30. | | On May 15, 2015, AT&T sent Level 3 a heavily redlined settlement agreement. Section 1(a)(iv) was relined to read as follows (with italicized and bolded language added by AT&T): | Disputed in part.   Section 1(a)(iv) of the redlined draft agreement AT&T sent to Level 3 on May 15, 2015, read as follows (strikethrough language deleted by AT&T, underlined language added by AT&T): |
| | | (iv)  For any OTT usage prior to June 2015, Although the Parties agree that this settlement Agreement is intended to be a full and final settlement of all disputes and balances associated with OTT traffic prior to June 1, 2015, the | iv.   ~~For any OTT usage prior to June 2015,~~ Although the Parties agree that this Ssettlement Agreement is intended to be a full and final settlement of all disputes and balances associated with OTT |

| | | |
|---|---|---|
| | | Parties also recognize the pendency of the OTT Appeal. ***Therefore, in the event the OTT Declaratory Order is overturned, either in whole or in part***, the applicable order on appeal becomes final and is no longer subject to further appeal or other judicial review, <u>Level 3 will refund within 30 days,</u> ███████████ of the disputed OTT charges beginning with June 2015 usage-traffic through the date on which such order becomes final and is no longer subject to further appeal or other judicial review. ***Further, the Parties agree that any billing and payments for OTT traffic exchanged after such order becomes final shall be in compliance with terms of that order.***<br><br>ECF No. 151-13 (Level 3 MSJ *Exhibit 17*) (K. Meola Depo. Ex. 23) at CTL_0012895; ECF No. 152-6 (Level 3 MSJ *Exhibit 5*) (K. Meola Depo.) at 198:19–199:14; *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 24. | <u>traffic prior to June 1, 2015, the Parties also recognize the pendency of the OTT Appeal.</u> ~~regardless of whether AT&T wins or loses its OTT Appeal.~~ <u>Therefore, in the event the OTT Declaratory Order is overturned, either in whole or in part,</u> ~~If AT&T wins its OTT Appeal and~~ <u>and</u> the applicable order on appeal becomes final and is no longer subject to further appeal or other judicial review, Level 3 <u>will refund within 30 days,</u> ███████████ of the disputed OTT charges beginning with June 2015 ~~usage~~ <u>traffic</u> through the date on which such order becomes final and is no longer subject to further appeal or other judicial review. <u>Further, the Parties agree that any billing and payments for OTT traffic exchanged after such order becomes final shall be in compliance with terms of that order.</u><br><br>ECF No. 167-8 (AT&T OSUMF |

| | | | Exhibit H), Meola Depo. Ex. 23, at CTL_0012895. |
|---|---|---|---|
| 31. | | On May 21, 2015, Level 3 sent AT&T its redlines, which modified section 1(a)(iv) to read as follows (with italicized and bolded language added by Level 3): | Disputed in part.  Level 3 sent AT&T its redlines, which modified section 1(a)(iv) to read as follows (with italicized and bolded language added by Level 3): |
| | | (iv) Although the Parties agree that this Settlement Agreement is intended to be a full and final settlement of all disputes and balances associated with OTT traffic prior to June 1, 2015, the Parties also recognize the pendency of the OTT Appeal. Therefore, in the event the OTT Declaratory Order is overturned, either in whole or in part, and the applicable order on appeal becomes final and is no longer subject to further appeal or other judicial review <u>Level 3 will refund, within 30 days,</u> ▮ <u>of the disputed OTT charges beginning with June 2015 traffic through the date on which such Final Appellate Order becomes final and is no longer subject to further appeal or other judicial review;</u> ***provided, however, that if*** | (iv) Although the Parties agree that this Settlement Agreement is intended to be a full and final settlement of all disputes and balances associated with OTT traffic prior to June 1, 2015, the Parties also recognize the pendency of the OTT Appeal. Therefore, in the event the OTT Declaratory Order is overturned, either in whole or in part, and the applicable order on appeal becomes final and is no longer subject to further appeal or other judicial review ***("Final Appellate Order")*** <u>Level 3 will refund, within 30 days,</u> ▮ <u>of the disputed OTT charges beginning with June 2015 traffic through the date on which such</u> ***Final Appellate O***<u>rder becomes final and is no longer subject to further appeal or other judicial review;</u> ***provided, however, that if*** |

| | | | |
|---|---|---|---|
| | | *the OTT Declaratory Order is overturned in part, and not in whole, then Level 3 will only be required to refund OTT charges to the extent they should not have been charged in accordance with the Final Appellate Order*. Further, the Parties agree that any billing and payments for OTT traffic exchanged after such Final Appellate Order becomes final shall be in compliance with terms of that order. | *the OTT Declaratory Order is overturned in part, and not in whole, then Level 3 will only be required to refund OTT charges to the extent they should not have been charged in accordance with the Final Appellate Order*. Further, the Parties agree that any billing and payments for OTT traffic exchanged after such *Final Appellate O*rder becomes final shall be in compliance with terms of that order. |
| | | *See* ECF No. 151-14 (Level 3 MSJ *Exhibit 18*) (K. Meola Depo. Ex. 24) at CTL_004212; *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 25. | *See* ECF No. 167-9 (AT&T OSUMF Exhibit I), Meola Depo. Ex. 24, at CTL_004212. |
| 32. | | The 2015 Settlement Agreement permits Level 3 to bill end office switched access charges on all non-OTT calls with a Level 3 telephone number. *See* ECF No. 152-6 (Level 3 MSJ *Exhibit 5*) (K. Meola Depo.) at 211:4–24; ECF No. 151-16 (Level 3 MSJ *Exhibit 25*) (A. McClure Response Disclosure) ¶ 10; *see also* ECF No. 151-3 (Level 3 Statement of Undisputed Material Fact) ¶ 42. | Disputed. This paragraph contains characterizations and legal conclusions, not material assertions of fact. It also misstates the 2015 Agreement, which only permits Level 3 to bill "full switched access charges on domestic traffic that originates with or terminates to Level 3 assigned CPN." ECF No. 15-1, 2015 Settlement Agreement, at 3. |

| | | | |
|---|---|---|---|
| 33. | | Level 3 employee Andrew McClure calculated Level 3's percent OTT to be ▮ percent since January 1, 2019. ECF No. 151-16 (Level 3 MSJ *Exhibit 25*) (A. McClure Responsive Disclosure) ¶ 16; *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 50. | Disputed.  Mr. McClure used the same flawed analysis to conduct his 2019 analysis as he did in 2017.  ECF No. 167-16 (AT&T OSUMF Exhibit P), Level 3 Suppl. Discl., at 5 ¶ 1; ECF No. 167-17 (AT&T OSUMF Exhibit Q), McClure 6-11-2020 Depo., at 59:22-60:18; ECF No. 167-18 (AT&T OSUMF Exhibit R), Dr. Pfautz Rebuttal Report, at ¶ 27.  He did not re-contact any customers to determine if their OTT percentage had changed since 2017.  ECF No. 167-17 (AT&T OSUMF Exhibit Q), McClure Depo., at 154:7-18, 204:10-25, 207:17-21. His OTT calculation is therefore flawed.  *See* ECF No. 167-18 (AT&T OSUMF Exhibit R), Dr. Pfautz Rebuttal Report, at ¶¶ 10, 19, 27. |
| 34. | | AT&T's expert, Dr. Penn Pfautz, did not calculate a percent OTT for Level 3. ECF No. 152-5 (Level 3 MSJ *Exhibit 4*) (P. Pfautz. Depo.) at 29:22–25; *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 51. | Undisputed. |
| 35. | | AT&T has a few documents that comment upon Level 3's percent OTT, but none of AT&T's documents calculate a percent OTT or utilize an appropriate methodology | Disputed.  This statement of material fact is vague and the materials cited by Level 3 do not support OSUMF No. 35.   AT&T has conducted several studies that show Level 3's OTT |

| | | | |
|---|---|---|---|
| | | to calculate percent OTT. ECF No. 151-16 (Level 3 MSJ *Exhibit 25*) (A. McClure Responsive Disclosure) ¶ 4; *Exhibit 4* (P. Pfautz Depo.) at 181:25–192:14; *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 52. | percentage.   *See* ECF No. 167-12 (AT&T OSUMF Exhibit L), Burgess Depo., at 87:21 -88:17; ECF No. 167-6 (AT&T OSUMF Exhibit F), John Depo., at 90:15-21.   By signing the 2015 Agreement, Level 3 agreed that its OTT percentage was historically 65%.   ECF No. 167-11 (AT&T OSUMF Exhibit K), Torres Depo., at 50:14-22. |
| 36. | | Level 3's OTT analysis is based on calling originated using Level 3 telephone numbers, and destined for AT&T. ECF No. 151-16 (Level 3 MSJ *Exhibit 25*) (A. McClure Responsive Disclosure) ¶ 10; ECF No. 152-5 (Level 3 MSJ *Exhibit 4*) (P. Pfautz Depo.) at 129:9–130:5 (AT&T has no contrary evidence); *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 54. | Undisputed. |
| 37. | | Dr. Pfautz testified that his "biggest concern" about Level 3's OTT analysis is the method that Level 3's expert (Andrew McClure) used to gather percent OTT from individual Level 3 customers. ECF No. 152-5 (Level 3 MSJ *Exhibit 4*) (P. Pfautz Depo.) at 141:12–15; *see also* ECF No. 151-3 (Level 3's Statement of | Undisputed. |

| | | | |
|---|---|---|---|
| | | Undisputed Material Facts) ¶ 55. | |
| 38. | | The percentages that Mr. McClure obtained from customers had very little impact on Level 3's percent OTT; if Mr. McClure assumed that 100 percent of the calling associated with customers Mr. McClure believed to have some OTT calling is OTT, Level 3's OTT percentage would rise from █ percent to █ percent. ECF No. 151-16 (Level 3 MSJ *Exhibit 25*) (A. McClure Responsive Disclosure) ¶ 12; *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 56. | Disputed. This is not a material fact, but rather a conditional opinion. In any event, McClure's methodology and opinions are unreliable. ECF No. 167-13 (AT&T OSUMF Exhibit M), Dr. Pfautz Expert Report, at ¶¶ 37-50; ECF No. 167-18 (AT&T OSUMF Exhibit R), Dr. Pfautz Rebuttal Report, at ¶¶ 10, 19, 27. Among other issues, Mr. McClure's opinion as to which Level 3 customers "have some OTT calling" is unreliable because, during the period at issue, he only sought that information from one Level 3 customer, and sought no information as to several hundred other customers. ECF No. 167-13 (AT&T OSUMF Exhibit M), Dr. Pfautz Expert Report, at ¶¶ 37-50; ECF No. 167-17 (AT&T OSUMF Exhibit Q), McClure 6-11-2020 Depo., at 193:8-19. |
| 39. | | Dr. Pfautz took issue with three entities that Mr. McClure reported in 2017 as having 0 percent OTT: ███████████████. ECF No. 151-16 (Level 3 MSJ *Exhibit 25*) (A. McClure Responsive Disclosure) ¶ 13; *see also* ECF No. 151-3 (Level 3's Statement of | Disputed. Dr. Pfautz only used ████████████████████ as "examples" to demonstrate how Mr. McClure's analysis was flawed. ECF No. 167-13 (AT&T OSUMF Exhibit M), Dr. Pfautz Expert Report, at ¶ 42-46. On Mr. McClure's disclosure, there were numerous entities and the |

| | | | |
|---|---|---|---|
| | | Undisputed Material Facts) ¶ 57. | vast majority of those entities are listed as having no OTT VoIP traffic, even though Level 3 had procured no information about those entities' OTT traffic during the period disclosed in Mr. McClure's disclosure. *Id.* ¶¶ 37-50; ECF No. 167-17 (AT&T OSUMF Exhibit Q), McClure Depo., at 193:8-19. |
| 40. | | Level 3 no longer has a relationship with ███████; as such, the concern about ██████████ has no bearing on data from 2019 forward. ECF No. 151-16 (Level 3 MSJ *Exhibit 25*) (A. McClure Responsive Disclosure) ¶ 13(b) *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 58. | Disputed.   The concern regarding ██████ is an example of what is wrong with Level 3's analysis and therefore the concern has a bearing on the data from 2019 forward. ECF No. 167-13 (AT&T OSUMF Exhibit M), Dr. Pfautz Expert Report, at ¶ 44. Indeed, to the extent Level 3 concedes that material it gathered in 2017 "has no bearing on data from 2019 forward," then Level 3 is implicitly conceding that Mr. McClure's analysis of 2017 data is stale and no longer reliable. |
| 41. | | Both Level 3 and AT&T recognize that ████ is not a pure OTT provider. ECF No. 151-16 (Level 3 MSJ *Exhibit 25*) (A. McClure Responsive Disclosure) ¶ 13(d); 152-5 (Level 3 MSJ *Exhibit 4*) (P. Pfautz Depo.) at 151:15–154:20.   Nonetheless,   for summary judgment, Level 3 will | Disputed. AT&T does not know if ████ is a pure OTT provider or not. ECF No. 167-19 (AT&T OSUMF Exhibit S), Dr. Pfautz Depo., at 151:15–154:20 ("Q. So Dr. Pfautz, what percentage of ████ calls are over WAN versus over OTT, do you know?" "A. I do not pretend to know |

| | | | |
|---|---|---|---|
| | | assume that 100 percent of ▇ calls are OTT. *See also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 59 | that."). |
| 42. | | AT&T acknowledges that when calls flow over facilities Level 3 provisioned at the customer's premises to Level 3's end office, even if people connect to those hub facilities via a third-party internet connection from remote locations, end office charges apply. *See* ECF No. 152-5 (Level 3 MSJ *Exhibit 4*) (P. Pfautz Depo.) at 101:14–23; 104:17–105:9; *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 60. | Undisputed. |
| 43. | | <u>Andrew</u> McClure determined that ▇ is not an OTT provider because Level 3 provides ▇ with facilities at ▇ premises, and all calls flow over the facilities <u>Level 3 provisioned and provided to ▇</u>. ECF No. 151-24 (Level 3 MSJ *Exhibit 31*) (A. McClure 6-11-2020 Depo.) at 127:12–137:8; 151-16 (Level 3 MSJ *Exhibit 25*) (A. McClure Responsive Disclosure) ¶ 13(c); *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 61. | Disputed. ▇ is an OTT provider because the connection to ▇ end users is over-the-top. ECF No. 167-13 (AT&T OSUMF Exhibit M), Dr. Pfautz Expert Report, at ¶ 45; ECF No. 167-19 (AT&T OSUMF Exhibit S), Dr. Pfautz Depo., at 106:3-11; ECF No. 167-21 (AT&T OSUMF Exhibit U), McClure Depo. Exhibit 66 (▇ Website Printout), at 2. |

| 44. | | Forty-seven percent of Level 3's traffic falls into three clear categories: (a) Level 3's own traffic; (b) a Level 3 network incapable of supporting OTT calling; and (c) ████████. *See* ECF No. 151-25 (Level 3 MSJ *Exhibit 32*) (Exhibit 2 to Level 3's Rule 26(a)(2)(C) Disclosure; ECF No. 151-21 (Level 3 MSJ *Exhibit 29*) (Declaration of Andrew McClure) ¶ 6); *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 62. | Disputed as to (b).  Mr. McClure did not investigate whether Level 3's own traffic could support OTT, but rather made an "assumption" that the OTT percentage was ████.  ECF No. 167-17 (AT&T OSUMF Exhibit Q), A. McClure 6-11-2020 Depo., at 91:18–92:21.  McClure has no documentation that Level 3's network is incapable of supporting OTT traffic.  *Id.* |
| --- | --- | --- | --- |
| 45. | | In deposition, AT&T asked Mr. McClure about four additional customers: ████████████, and ████████  *See* ECF No. 151-24 (Level 3 MSJ *Exhibit 31*) (A. McClure 6/11/2020 Depo.) 125:13–126:18; ECF No. 151-21 (Level 3 MSJ *Exhibit 29*) (A. McClure Dec.) ¶ 9; *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 63. | Undisputed; however, questions as to these four entities were examples—of the hundreds of entities on Mr. McClure's disclosure, there are many entities that Mr. McClure listed as having ████ OTT VoIP traffic, yet Mr. McClure did not conduct any analysis for the period in question as to whether these entities in fact carried over-the-top traffic.  ECF No. 167-13 (AT&T OSUMF Exhibit M), Dr. Pfautz Expert Report, at ¶¶ 37-50; ECF No. 167-17 (AT&T OSUMF Exhibit Q), McClure 6-11-2020 Depo., at 193:8-19.  The materials on the websites of these four entities were examples in which the entities stated they were providing over-the-top services. *See id.* 121:15– |

| | | | |
|---|---|---|---|
| | | | 126:18. |
| 46. | | While Mr. McClure could not recall the specifics of █████████████, ████████████ during his expert deposition, Mr. McClure has since familiarized himself with those customers, and determined that while ████████████████████ are appropriately categorized at zero percent OTT, ████████ may have the ability to provide some OTT functions. As a result, for purposes of this summary judgment motion, Level 3 will assume ████████ is 100% OTT. *See* ECF No. 151-24 (Level 3 MSJ *Exhibit 31*) (A. McClure 6/11/2020 Depo.) at 108:14–21, 114:8–12, 121:15–23; ECF No. 151-21 (Level 3 MSJ *Exhibit 29*) (A. McClure Dec.) ¶¶ 10–15; *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 64. | Disputed in part.  AT&T is unable to verify or respond to what Level 3 did after Mr. McClure's deposition. AT&T continues to dispute that ████████████████████, and other entities on the spreadsheet, are appropriately categorized as having █ OTT.  ECF No. 167-17 (AT&T OSUMF Exhibit Q), McClure Depo., at 121:15–126:18; ECF No. 167-22 (AT&T OSUMF Exhibit V), McClure 6-11-2020 Depo. Exhibit 64 (Evolve Website Printout). |
| 47. | | Using the percentages referenced in the paragraphs above, and making the following assumptions after reevaluating all of Level 3's customers through Row 125 to Exhibit 2 to his disclosure, including all customers with up to or over 2.4 million minutes of traffic: | Disputed.  This is not a material statement of fact, but a conditional opinion.  In any event, Level 3's OTT percentage is not █ percent given that Mr. McClure's analysis is unreliable and unverifiable.  *See* ECF No. 167-13 (AT&T OSUMF Exhibit M), Dr. Pfautz Expert Report, at ¶¶ 37-50; |

| | | | |
|---|---|---|---|
| | | <ul><li>Every customer previously assumed to have at least some OTT had 100 percent OTT traffic.</li><li>AT&T's expert identified three customers who he believed might have OTT traffic. Mr. McClure analyzed each, and if there was a possibility of any OTT traffic, he assumed they had 100 percent OTT traffic.</li><li>In deposition, AT&T identified a few additional customers and asked about them. Mr. McClure analyzed each as well as (of his own volition) scores of additional customers. If there was a possibility of OTT traffic for any of these customers, Mr. McClure assumed they had 100 percent OTT traffic.</li><li>In his review of Level 3's top customers (i.e., those with up to or over ▆▆▆▆ minutes of traffic), Mr. McClure identified one customer that is an OTT provider, and assumed that 100 percent of its traffic is OTT.</li></ul>Even under these assumptions, Level 3's OTT percentage would increase to ▆ percent. *See* ECF No. 151-21 | ECF No. 167-18 (AT&T OSUMF Exhibit R), Dr. Pfautz Rebuttal Report, at ¶¶ 10, 19, 27.<br><br>Among other issues, Mr. McClure's opinion as to which Level 3 customers have some OTT calling (and which do not) is unreliable because, during the period at issue, he only sought that information from one Level 3 customer, and sought no information as to several hundred other customers. ECF No. 167-13 (AT&T OSUMF Exhibit M), Dr. Pfautz Expert Report, at ¶¶ 37-50; ECF No. 167-17 (AT&T OSUMF Exhibit Q) McClure Depo., at 193:8-19.<br><br>In fact, Mr. McClure had <u>no</u> documentation to support any of the individual percentages for Level 3 customers, including for the many customers listed as ▆ OTT VoIP. *Id.*, McClure Depo., at 107:5-9; 108:22-109:4; 114:13-21; 115:3-7; 140:19-141:2; ECF No. 167-18 (AT&T OSUMF Exhibit R), Dr. Pfautz Expert Rebuttal Report, at ¶ 27.<br><br>And Mr. McClure's conceded that it was "completely fair" that since his |

| | | | |
|---|---|---|---|
| | | (Level 3 MSJ *Exhibit 29*) (A. McClure Dec.) ¶¶ 17–21; *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 65. | 2017 analysis (the only analysis he did), the percentage of OTT VoIP traffic for "all" of the customers could have increased, even dramatically. ECF No. 167-17 (AT&T OSUMF Exhibit Q), McClure Depo., at 143:22-145:4; ECF No. 167-14 (AT&T OSUMF Exhibit N), McClure Depo., at 99:14-100:16. |
| 48. | | Dr. Pfautz admitted in deposition that he did not have any evidence that Level 3's percent OTT is greater than ▆. *See* ECF No. 152-5 (Level 3 MSJ *Exhibit 4*) (P. Pfautz Depo.) at 173:10–175:10; 176:7–16; *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 66. | Disputed. Dr. Pfautz did not form an opinion on Level 3's OTT percentage because Level 3 had failed to provide verifiable data to be able to form any opinion. ECF No. 167-19 (AT&T OSUMF Exhibit S), Dr. Pfautz Depo., at 175:5-25. Further, given the serious flaws in Level 3's methodology, Level 3 "almost certainly understated the proportion of [OTT] traffic billed." ECF No. 167-13 (AT&T OSUMF Exhibit M), Dr. Pfautz Expert Report, at ¶ 6. |
| 49. | | Dr. Pfautz assumed that 100 percent of AT&T's enterprise class customers had no OTT calling based on representations from AT&T, without obtaining the names of AT&T's customers, evaluating those customers, or performing any independent research. *See* ECF No. 152-5 (Level 3 MSJ *Exhibit 4*) (P. | Disputed. Dr. Pfautz did not assume 100 percent of AT&T's enterprise class customers had no OTT calling, but rather he looked at products that have the potential of having nomadic TN and found it was reasonable for AT&T to not bill end office on that category of calling. ECF No. 167-19 (AT&T OSUMF Exhibit S), Dr. Pfautz |

| | | | |
|---|---|---|---|
| | | Pfautz Depo.) at 215:3–229:23; *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 67. | Depo., at 216:8-22 |
| 50. | | To calculate its percent OTT, AT&T only evaluated whether the customer had the ability to utilize "nomadic" telephone numbers, meaning make calls from various locations over a third-party internet connection. *See* ECF No. 151-16 (Level 3 MSJ *Exhibit 25*) (A. McClure Responsive Disclosure) ¶¶ 3, 8; ECF No. 152-5 (Level 3 MSJ *Exhibit 4*) (P. Pfautz Depo.) at 106:14–115:22, 118:5–120:10, 222:8–229:23; *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 68. | Disputed.  Dr. Pfautz did not assume 100 percent of AT&T's enterprise class customers had no OTT calling, but rather he determined that the way in which AT&T decided not to bill for services that could include nomadic TNs was a reasonable and conservative approach.  ECF No. 167-19 (AT&T OSUMF Exhibit S), Dr. Pfautz Depo., at 216:8-22 |
| 51. | | AT&T determined that only calls flowing over its BVoIP network could support nomadic telephone calling; as a result, it presumed calling over its traditional network was zero percent OTT. *See* ECF No. 152-34 (Level 3 MSJ *Exhibit 33*) (J. Gallagher Depo. Vol. I) at 78:18–79:10; *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 69. | Undisputed. |
| 52. | | AT&T did not consider the business plan of any of its enterprise class | Disputed.  The cited material does not support OSUMF No. 52.  Dr. Pfautz |

| | | | |
|---|---|---|---|
| | | customers, and whether they created the potential for OTT calling. *See* ECF No. 151-16 (Level 3 MSJ *Exhibit 25*) (A. McClure Responsive Disclosure) ¶ 3; ECF No. 152-5 *Exhibit 4* (Pfautz Depo.) at 106:14–109:6; *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 70. | did not know whether AT&T considered the business plan of any of its enterprise class customers. ECF No. 167-19 (AT&T OSUMF Exhibit S), Dr. Pfautz Depo., at 106:14–107:17; ECF No. 167-20 (AT&T OSUMF Exhibit T), McClure Resp. Discl., at ¶ 3 (relying on Dr. Pfautz's deposition testimony). |
| 53. | | Dr. Pfautz—AT&T's expert—concluded that AT&T's method for determining percent OTT was reasonable. ECF No. 151-23 (Level 3 MSJ *Exhibit 30*) (P. Pfautz Opening Report) ¶ 8; *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 71. | Undisputed |
| 54. | | Under Level 3's calculations, which are premised upon a ▉-percent OTT factor, not the ▉-percent factor, and replacing these refunded OTT minutes with a ▉▉▉▉▉▉▉▉ element instead of end office rate elements (which AT&T agrees is correct): (a) AT&T is entitled to a credit for end office charges of $▉▉▉▉ through April 2020, and (b) AT&T has withheld over ▉▉▉▉▉ from Level 3 for the OTT dispute. *See* ECF No. 151-19 (Level 3 MSJ *Exhibit 28*) (M. Kellow Dec.) ¶¶ 7–8; | Disputed. AT&T and Level 3 are currently in dispute over the total number of Level 3's end office billings to AT&T. *See* ECF No. 167-15 (AT&T OSUMF Exhibit O), AT&T Rule 26(e) Discl., at 2-3. Level 3 itself acknowledges that the damages calculation are in dispute. ECF 151-2, Level 3 Mot. For Sum. Jud. at 23 n.9 ("The parties are working on trying to resolve their differences in damages calculations."). Moreover, AT&T disputes the assumptions as to legal and factual issues that underlie Level |

| | | | |
|---|---|---|---|
| | | *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 72. | 3's calculations. |
| 55. | | Throughout 2019 and 2020, AT&T withheld more than Level 3's total end office billings each month. *See* ECF No. 151-19 (Level 3 MSJ *Exhibit 28*) (Declaration of M. Kellow) ¶ 6; *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 46. | Disputed.  AT&T disputes Level 3's total end office billings number, which AT&T believes is too high.  *See* ECF No. 167-15 (AT&T OSUMF Exhibit O), AT&T Rule 26(e) Disclosure, at 2-3.  Furthermore, the parties have other unrelated disputes as to end office charges billed by Level 3, which has affected AT&T's total withholdings, and Level 3's analysis does not take account of all payments made by AT&T. Id.  AT&T's intention was to withhold 65% of end office billings for the OTT dispute. ECF No. 167-12 (AT&T OSUMF Exhibit L), Burgess Depo., at 134:3-12. |
| 56 | | Ms. Meola, who was AT&T's 30(b)(6) witness on the intent of the 2015 Agreement, testified that if, on remand, the FCC affirmed that end office charges applied to OTT calls, then AT&T believed that Level 3 must still rebate ▇▇▇▇▇ of the charges associated with OTT calls pursuant to section 1(a)(iv). ECF No. 152-6 (Level 3 MSJ *Exhibit 5*) (K. Meola Depo.) at 13:19–15:7 (identifying subjects on which Ms. | Undisputed. |

|  |  | Meola is corporate representative); 194:24–195:23; *see also* ECF No. 151-3 (Level 3's Statement of Undisputed Material Facts) ¶ 33. |  |

Respectfully submitted this 3rd day of August, 2020.

By:    <u>/s/ Justin A. Benson</u>

Rebecca B. DeCook
Andrew T. Flynn
Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1027
becky.decook@moyewhite.com
andrew.flynn@moyewhite.com

Michael D. Warden
Michael J. Hunseder
Justin A. Benson
Joshua W. Moore
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
E-mail: mwarden@sidley.com
E-mail: mhunseder@sidley.com
E-mail: jbenson@sidley.com
E-mail: joshua.moore@sidley.com

*Attorneys for Plaintiff AT&T Corp.*
*and Counterclaim Defendant*
*Teleport Communications Group*

## <u>CERTIFICATE OF SERVICE</u>

I, Justin A. Benson, hereby certify that on August 3, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Charles W. Steese, #26924
Douglas N. Marsh, #45964
Armstrong Teasdale LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
csteese@armstrongteasdale.com
dmarsh@armstrongteasdale.com

*Attorneys for Level 3 Communications, LLC*

<u>/s/ Justin A. Benson</u>
Justin A. Benson