# EXHIBIT A

Page 1

```
 1                UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF COLORADO
 3
 4   AT&T CORPORATION,            ) Civil Action File No.:
 5             Plaintiff,         ) 18-cv-00112-RM-MEH
 6          vs.                   )
 7   LEVEL 3 COMMUNICATIONS, LLC, )
 8             Defendant.         )
 9   _____)
10
11             NON-CONFIDENTIAL PORTION
12   CONFIDENTIAL ATTORNEYS' EYES ONLY BOUND SEPARATELY
13                       PAGE 148
14                     PAGES 206-214
15
16       DEPOSITION OF PENN L. PFAUTZ, PH.D.
17                    VIRTUAL ZOOM
18              TUESDAY, APRIL 28, 2020
19
20
21   Reported by:
22   ASHALA TYLOR, CSR #2436, CLR, CRR, RPR
23   JOB NO. 4083362
24
25   PAGES 1 - 236
```

Page 2

1              UNITED STATES DISTRICT COURT
2              FOR THE DISTRICT OF COLORADO
3
4   AT&T CORPORATION,              ) Civil Action File No.:
5              Plaintiff,          ) 18-cv-00112-RM-MEH
6         vs.                      )
7   LEVEL 3 COMMUNICATIONS, LLC,   )
8              Defendant.          )
9   _____)

16      Deposition of PENN L. PFAUTZ, PH.D., taken via
17   Zoom videoconference commencing at 8:08 a.m. (PST), and
18   ending at 3:05 p.m., on Tuesday, April 28, 2020, before
19   Ashala Tylor, CSR No. 2436, RPR, CRR, CLR.

Page 3

1   APPEARANCES OF COUNSEL:
2   On behalf of Plaintiff:
3       SIDLEY AUSTIN LLP
4       BY:  JUSTIN A. BENSON, ESQ.
5            MICHAEL J. HUNSEDER, ESQ.
6       1501 K Street, N.W.
7       Washington, D.C.  20005
8       202.736.8757
9       jbenson@sidley.com
10      mhunseder@sidley.com
11
12  On behalf of the Defendant:
13      ARMSTRONG TEASDALE LLP
14      BY:  CHUCK STEESE, ESQ.
15           DOUG N. MARSH, ESQ.
16      4643 South Ulster Street, Suite 800
17      Denver, Colorado  80237
18      720.200.0676
19      csteese@armstrongteasdale.com
20
21
22  Also Present:
23      Mark Hesse
24
25

Page 131

1    cases where that went on.  Not from this current
2    thing, but that's my recollection.
3        Q.   And so if AT&T has a practice of billing,
4    disputing, and not paying end office charges to a
5    carrier where it's not their TN, even if one of
6    these cable companies were to mistakenly bill for a
7    call where it's not their TN, the left -- the AT&T
8    process would be to dispute and not pay those
9    charges, correct?
10       A.   If they identified that's what's going on,
11   I believe that's what they would do.
12       Q.   So even if there was a mistake and double
13   billing occurred, AT&T's internal process should
14   catch it and prevent double pay, correct?
15       A.   I can't swear that that would be the case.
16   I would hope that that would be the case, but I
17   don't know the degree to which that was part of the
18   complete normal process or if that was only done
19   when there were some concerns.  That's just, again,
20   I don't know what the operational situation was.
21       Q.   You would expect that to be true.  You
22   just don't know if it is?
23       A.   That's correct.
24       Q.   Looking at paragraph 39, you raised
25   similar issues with respect to what I'll call

Page 132

1 traditional facilities-based carriers, and I'm
2 differentiating from cable companies, and you raised
3 One Communications, Inteliquent, Cincinnati Bell,
4 and others, correct?
5 (Reporter clarification.)
6 Q. -- One Communications, Inteliquent,
7 Cincinnati Bell, and others, correct?
8 A. That's correct.
9 Q. Same questions with respect to this
10 category of calling, your concern is not OTT,
11 correct?
12 A. That's correct.
13 Q. Your concern here is, is there double
14 billing going on, correct?
15 A. Correct.
16 Q. And do you have any evidence that double
17 billing is going on?
18 A. No, I do not.
19 Q. And if these are indeed Level 3 TNs, you
20 would expect the same thing. You would expect that
21 AT&T would be able to identify those and keep from
22 paying double charges if, for some reason, double
23 billing had occurred?
24 A. As before, I would expect they might but I
25 really don't have any information whether that's a

1        A.   Neither for or against.
2        Q.   What about Empirix?
3        A.   Same.
4        Q.   We already talked about Fuze, and you
5   thought Fuze should be -- should be something.  So
6   I'm going to put in 100, even though you
7   acknowledged it should be lower than 100.
8             MR. BENSON:  Objection.  Misstates
9   testimony.
10            But go ahead.
11  BY MR. STEESE:
12       Q.   What about Coredial, anything -- any
13  evidence?
14       A.   Neither for or against.
15       Q.   I think Cincinnati Bell you said was not
16  an OTT issue that gave you concern, correct?  Not
17  OTT?
18       A.   That is correct, but I don't have any, you
19  know, evidence for or against their OTT percentage.
20       Q.   What about Internal Enterprise, anything
21  other than -- any evidence that it should be
22  something other than zero?
23       A.   I don't know what that is.  Is that a
24  customer or is that Level 3?
25       Q.   I think that's Level 3.

Page 169

1      A.   I don't have any particular evidence as to
2  the value there.
3      Q.   What about Cyara?
4      A.   Likewise.
5      Q.   What about Evolve?
6      A.   Likewise.
7      Q.   Sorenson, I think you said you thought
8  this should be 100 percent, correct?
9      A.   That's correct.
10     Q.   Okay.  What about Alianza?
11     A.   Yeah, I don't -- again, I don't have
12  specific evidence there.
13     Q.   What about Blue Ridge?
14     A.   I have the other concern about Blue Ridge,
15  but with respect to percent OTT, I don't have any
16  evidence.
17     Q.   What about One Communications?
18     A.   The same issue there.
19     Q.   What about XO Communications?
20     A.   Likewise.
21     Q.   Global Crossing is basically itself; so no
22  concerns there, correct?
23     A.   It would be more the minutes of use rather
24  than the OTT.  But, again, I don't have any evidence
25  one way or another, and I don't purport to.

Veritext Legal Solutions
800-567-8658                                    973-410-4098