# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Raymond P. Moore

Civil Action No. 18-cv-00112-RM-MEH

AT&T CORP., a New York corporation,

    Plaintiff/Counterclaim Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC, a Delaware limited liability company,

    Defendant/Counterclaimant,

and

BROADWING COMMUNICATIONS, LLC,
GLOBAL CROSSING TELECOMMUNICATIONS, INC, and
WILTEL COMMUNICATIONS, LLC,

    Counterclaimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.,

    Counterclaim Defendant.

---

# ORDER

---

This intercarrier compensation dispute is before the Court on several motions: two cross-motions for summary judgment and partial summary judgment (ECF Nos. 152, 153), two motions to exclude expert testimony (ECF Nos. 139, 142), and a motion to amend the complaint by reinstating two counts (ECF No. 147). For the reasons below, Defendant's motion for summary judgment is granted in part on the issue of liability based on the settlement agreement

between Plaintiff and Defendant; otherwise, the motions are denied.

I.  **BACKGROUND**

For about a decade, the telecommunications industry has grappled with a tangled web of regulations known as intercarrier compensation. After this litigation began, the Federal Communications Commission ("FCC") issued a decision resolving one of the central issues that precipitated this case. *See Connect America Fund Developing a Unified Intercarrier Compensation Regime*, Order on Remand and Declaratory Ruling, WC Docket No. 10-90 et al., FCC 19-131 at ¶ 1 (rel. Dec. 17, 2019) ("2019 Declaratory Ruling"). As a result, it is now clear that a local exchange carrier ("LEC") such as Defendant or Counterclaim Defendant can assess end office switched access charges from long-distance carriers such as Plaintiff "*only if* the LEC or its [voice over internet provider] partner provides a physical connection to the last-mile facilities used to serve the end user." *Id.* at ¶ 4 (emphasis added). Had this pronouncement come sooner, this litigation might have ended sooner or perhaps been avoided.

Back in 2015, the FCC reached the opposite conclusion, ruling that end office switched access charges *do* apply to over-the-top ("OTT") voice over internet protocol ("VoIP") calls. *See Connect America Fund*, WC Docket No. 10-90 et al., CC Docket No. 01-92, Declaratory Ruling, 30 FCC Rcd 1587, 1588, ¶ 2 (2015) ("OTT Declaratory Order"). In light of a then pending appeal of the OTT Declaratory Order, Plaintiff and Defendant entered into a settlement agreement which allowed Defendant to continue assessing end office charges for certain OTT traffic, subject to a partial refund in the event the OTT Declaratory Order was "overturned, either in whole or in part." (ECF No. 15-1 at 3, ¶ (iv).) The provision at the heart of this case, in its entirety, provides as follows:

> Although the Parties agree that this Settlement Agreement is intended to be a full and final settlement of all disputes and balances associated with OTT traffic prior to June 1, 2015, the Parties also recognize the pendency of the OTT Appeal. Therefore, in the event the *OTT Declaratory Order* is overturned, either in whole or in part, and the applicable order on appeal becomes final and is no longer subject to further appeal or other judicial review ("Final Appellate Order"), Level 3 will refund, with 30 days, fifty percent (50%) of the disputed OTT charges beginning with June 2015 traffic through the date on which such Final Appellate Order becomes final and is no longer subject to further appeal or other judicial review; provided, however, that if the *OTT Declaratory Order* is overturned in part, and not in whole, then Level 3 will only be required to refund OTT charges to the extent they should not have been charged in accordance with the Final Appellate Order. Further, the Parties agree that any billing and payments for OTT traffic exchanged after such Final Appellate Order becomes final shall be in compliance with terms of that order.

(*Id.*)

In December 2016, the United States Court of Appeals for the District of Columbia Circuit vacated and remanded the OTT Declaratory Order. *AT&T Corp. v. FCC*, 841 F.3d 1047, 1058 (D.C. Cir. 2016). The mandate issued three months later, and ninety days after that the time to seek review by the United States Supreme Court expired. Plaintiff argues, therefore, that as of May 2017, it was entitled to a full refund of all end office charges for OTT traffic assessed by Defendant. Plaintiff began withholding 65 percent of Defendant's end office charges in mid-2017. (ECF No. 167 at ¶ 43.)

Defendant holds a different view, arguing that the 2019 Declaratory Ruling is the relevant order establishing the end of the partial refund period. No party appealed the 2019 Declaratory Ruling, which became final as a matter of law on February 19, 2020. Thus, Defendant argues that it owes Plaintiff only a partial refund for end office charges assessed up until then.

The parties further dispute—should Defendant's view prevail—the percentage of OTT traffic included in Defendant's charges for the applicable period, which would determine the

3

amount of Plaintiff's refund. Although Defendant has argued the OTT percentage was 16 percent, for present purposes it argues there is no evidence to support a conclusion that the OTT percentage was higher than 21 percent. Plaintiff argues that 65 percent is the appropriate measure, relying on a provision in the settlement agreement that expressly applies to traffic exchanged from April 1 through May 31, 2015. (*See* ECF No. 15-1 at 2; ECF No. 167 at ¶ 35.) That provision states:

> No later than thirty (30) days after the receipt of Level 3's invoice for traffic exchanged from April 1 through May 31, 2015, seventy-five percent (75%) of the amount of the switched access usage charges for traffic that is the subject of the OTT Dispute billed by Level 3, which has historically been approximately sixty-five percent (65%) of overall billing for end office switching ("April-May Supplemental Settlement Amount")[,] AT-T will transmit the April-May Supplemental Settlement Amount to the Level 3 account designated to receive switched access payments using the Parties' standard process for switched access payments.

(ECF No. 15-1 at 2, ¶ (B).) The parties have settled their dispute with respect to charges Defendant assessed through 2018, so the only charges that remain at issue pertain to the period of January 1, 2019 to February 19, 2020. (*See* ECF No. 167 at ¶ 7.)

## II.   MOTIONS FOR SUMMARY JUDGMENT

### A.   Legal Standard

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in its favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). Whether there is a genuine

dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

It is undisputed that the New York law governs the settlement agreement. (ECF No. 167 at ¶ 6.) To prevail on a breach of contract claim, a litigant must show (1) the existence of an agreement, (2) its own adequate performance, (3) breach of contract by the other party, and (4) damages. *See Harsco Corp. v. Segui*, 91 F.3d 337 348 (2d Cir. 1996). "Under New York law, a party's performance under a contract is excused where the other part has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007).

**B.      Defendant's Motion**

Defendant and Counterclaimants have moved for summary judgment on their counterclaims for breach of contract, declaratory relief, and violation of the Communications Act, 47 U.S.C. § 201(b), and on Plaintiff's remaining claims for breach of contract and

declaratory judgment. Defendant argues that Plaintiff failed to perform its obligations under the settlement agreement by withholding payment on the end office charges assessed during the applicable period. Plaintiff admits that it withheld payment but argues that it was entitled to do so once D.C. Circuit's decision vacating and remanding the OTT Declaratory Order became final. The Court is not persuaded by Plaintiff's argument.

1. Liability Under the Settlement Agreement

The Court finds initially that the OTT Declaratory Order was not "overturned . . . in whole" by the D.C. Circuit's decision as contemplated by the terms of the settlement agreement. (ECF No. 15-1 at 3, ¶ (iv).) The effect of the D.C. Circuit's decision was to tell the FCC it failed to provide adequate reasons for adopting the rule that end office switched access charges apply to certain OTT traffic. *See AT&T*, 841 F.3d at 1053-54. But the decision, which vacated and remanded the OTT Declaratory Order, did not declare that end office charges could *not* be assessed on OTT traffic or preclude assessing such charges while the FCC reassessed its rationale for adopting the rule. *Id.* at 1056. As a result, the Court concludes the D.C. Circuit's decision "overturned in part" the OTT Declaratory Order for purposes of construing the settlement agreement.

The settlement agreement provides that in the event the OTT Declaratory Order was "overturned in part, and not in whole," Defendant was obligated "to refund OTT charges *to the extent they should not have been charged* in accordance with the Final Appellate Order." (*Id.* (emphasis added).) But by vacating and remanding the OTT Declaratory Order, the D.C. Circuit's decision did not determine that any of Defendant's charges "should not have been charged." Rather, the D.C. Circuit took issue with the FCC's "muddled treatment of functional

6

equivalence," *AT&T Corp.*, 841 F.3d at 1054, while providing no basis or guidance for calculating a refund under the settlement agreement. It was not until the 2019 Declaratory Ruling that the FCC prohibited the OTT charges at issue in this case. Although the ruling applies retroactively, until it was issued, the parties were without any clear guidance as to which charges "should not have been charged." Accordingly, the Court finds that the D.C. Circuit's decision, standing alone, cannot operate as the "Final Appellate Order" contemplated by the settlement agreement. Instead, because the D.C. Circuit's decision remanded the OTT Declaratory Order, it did not "become final" for purposes of the settlement agreement, until the FCC issued the 2019 Declaratory Ruling and that ruling was "no longer subject to further appeal or other judicial review." (ECF No. 15-1 at 3, ¶ (iv).) There is no dispute that the 2019 Declaratory Ruling became "final" and "no longer subject to further appeal or other judicial review" on February 19, 2020.[1] Thus, under the terms of the settlement agreement, Plaintiff's refund was due within 30 days of that date, and Defendant is entitled to partial summary judgment as well as declaratory relief on the issue of its liability under the settlement agreement.

    2.    <u>Refund Amount</u>

As mentioned above, the amount of Plaintiff's refund depends on the OTT percentage during the applicable period. Although Defendant argues elsewhere that a lower percentage applies, for purposes of summary judgment, Defendant contends there is no evidence to support

---

[1] Plaintiff's reliance on an excerpt from the Court's September 18, 2018 Opinion and Order dismissing its statutory claims is misplaced. There, the Court found that "[t]he refund that plaintiff may or may not be entitled, has nothing to do with resolution of the 'OTT-VoIP billing issue' by the FCC," in the context of determining that Plaintiff's breach of contract claim was ripe. (ECF No. 67 at 10.) Accepting Plaintiff's allegations as true, the Court merely determined that it plausibly alleged that a breach of contract had occurred. (*Id.* at 12.) Nothing in that Order precludes the Court from granting partial summary judgment in Defendant's favor at this stage of the case. (*Id.* at 16 n.13.)

an OTT percentage higher than 21 percent. Plaintiff attacks the methodology of Defendant's expert on this issue, but points to no evidence that the OTT percentage was higher than 21 percent from January 1, 2019 to February 19, 2020. Plaintiff's own expert did not form an opinion on Defendant's OTT percentage. (ECF No. 184 at ¶ 48.) In the absence of a such evidence, the Court finds there is no genuine issue as to whether the OTT percentage exceeded 21 percent.[2] Therefore, Defendant is entitled to partial summary judgment and declaratory relief on this issue as well.

### 3. Communications Act Claim

Defendant also asserts that it is entitled to summary judgment on its § 201(b) claim. The basis for this claim is that Plaintiff and its affiliate, Counterclaim Defendant, improperly assessed against Defendant the same type of end office charges Plaintiff assessed. The parties appear to agree that in the absence of a negotiated agreement, the applicable rate for OTT traffic is the tandem rate, not the end office rate under the terms of the 2019 Declaratory Order. (*See* ECF No. 183 at 7.) However, the Court finds that on the current record disputed issues remain regarding the charges assessed against and credits issued to Defendant. (*See* ECF No. 167 at 35, ¶¶ 77-79.) Accordingly, Defendant is not entitled to summary judgment or declaratory relief on its § 201(b) claim.

**C.   Plaintiff's Motion**

Plaintiff seeks partial summary judgment on the grounds that (1) Defendant breached the settlement agreement by assessing end office charges that were improper under the 2019

---

[2] Although a factual dispute still exists with respect to the exact percentage, at this stage, Defendant has sought to establish only a 21 percent ceiling to "facilitate the parties' ongoing discussions and resolve a significant factual dispute that has thus far hindered these discussions." (ECF No. 151-2 at 22 n.8.)

Declaratory Ruling, (2) Plaintiff is entitled a full refund for the improper charges during the applicable period, and (3) Defendant has no admissible evidence to support its claimed OTT percentage.[3]

As discussed above, Defendant did not breach the settlement agreement by continuing to assess end office charges before the 2019 Declaratory Ruling became final. Accordingly, Plaintiff is not entitled to summary judgment on the first two grounds asserted. Plaintiff's third argument is premised on the Court's granting of Plaintiff's motion to exclude. As discussed below, however, the Court is denying that motion. Therefore, the Court finds there is at least some admissible evidence to support Defendant's position, and Plaintiff's motion is denied.

### III.   MOTIONS TO EXCLUDE

#### A.   Legal Standard

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The Court has the duty to act as a gatekeeper by ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand. *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019). The Court first determines whether the proffered expert is

---

[3] With its motion for partial summary judgment, Plaintiff also filed a motion to amend its complaint to reinstate its statutory claims, which were previously dismissed without prejudice as unripe. (ECF No. 67.) As explained below, the Court is denying the motion to amend. Accordingly, the Court addresses Plaintiff's summary judgment motion only with respect to its contractual claims.

9

qualified to render an opinion, then whether the expert's opinion is reliable. *Id.*

**B.     Defendant's Motion**

Defendant and Counterclaimants have filed a Motion to Preclude Expert Testimony Regarding Charges on Calls Originating from or Terminating to Level 3 Telephone Numbers, seeking "to preclude expert testimony by AT&T's expert Dr. Penn Pfautz questioning the propriety of switched access charges for non-OTT-VoIP calls originating from or terminating to telephone numbers assigned to Level 3." (ECF No. 139 at 1.)  Defendant requests that three paragraphs of Dr. Pfautz's original report and three paragraphs of his rebuttal report be stricken, as well as an order precluding him or any other expert for Plaintiff from testifying about the propriety of charges for non-OTT-VoIP calls.  In response, Plaintiff argues that Dr. Pfautz's testimony is relevant to the issue of whether Defendant reasonably calculated the percentage of its OTT traffic.

This Court has broad discretion in assessing an expert's reliability and making its ultimate determination of reliability.  *Atty' Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009).  "Furthermore, while *Daubert*'s standards must still be met, the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise when a district court is conducting a bench trial."  *Id.*  The Court sees no reason why, at this stage, Dr. Pfautz's testimony should be stricken or precluded.  Should this case proceed to a bench trial, Defendant will have the opportunity to make objections to Dr. Pfautz's direct examination and to cross-examine him.  Of course, the Court will disregard testimony that is not relevant or inadmissible for other reasons.

### C. Plaintiff's Motion

Plaintiff and Counterclaim Defendant have filed a *Daubert* Motion to Exclude Certain Testimony of Andrew McClure, seeking an order precluding Mr. McClure "from providing testimony regarding Level 3's OTT-VoIP percentage." (ECF No. 142 at 4.) The same rationale for denying Defendant's motion applies to Plaintiff's. The Court declines to limit Mr. McClure's testimony at this stage.

## IV. MOTION TO AMEND

### A. Legal Standard

A motion for leave to amend the complaint should be granted when justice so requires. Fed. R. Civ. P. 15(a)(2). But after a scheduling order deadline, a party seeking leave to amend must demonstrate good cause. *See* Fed. R. Civ. P. 16(b)(4). Courts "generally refuse leave to amend only on a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999).

### B. Plaintiff's Motion

Relying on the 2019 Declaratory Ruling, Plaintiff seeks leave to amend the complaint by reinstating the statutory claims the Court previously dismissed without prejudice as unripe. (*See* ECF No. 76.) However, in light of the Court's other rulings in this Order, amendment as proposed would be futile. The proposed amended complaint contains no allegations that Defendant continued to assess end office charges after the 2019 Declaratory Ruling became final

on February 19, 2020. Further, in response to Plaintiff's motion, Defendant has adduced evidence that its "damages analysis in this case shows a 100 percent refund of all of the end office charges associated with OTT traffic since February 19, 2020." (ECF No. 162 at 13.) Because the proposed amendment would be futile, Plaintiff's motion is denied.

V. CONCLUSION

Accordingly, the Court GRANTS IN PART Defendant's motion for summary judgment (ECF No. 152) and rules that, pursuant to the settlement agreement, Plaintiff is entitled to a fifty percent refund for end office switching charges assessed during the relevant period (January 1, 2019 to February 19, 2020), during which time the OTT percentage did not exceed 21 percent. The Court DENIES Defendant's motion to the extent it seeks further relief. The Court also DENIES Plaintiff's motion for partial summary judgment (ECF No. 153), the motions to exclude (ECF Nos. 139, 142), and the motion to amend (ECF No. 147).

DATED this 25th day of March, 2021.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge