# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00112-RM-MEH

AT&T CORPORATION,

      Plaintiff/Counterclaim Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC,

      Defendant/Counterclaimant,

and

BROADWING COMMUNICATIONS, LLC, GLOBAL CROSSING
TELECOMMUNICATIONS, INC., and WILTEL COMMUNICATIONS, LLC

      Counterclaimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.,

      Counterclaim Defendant.

---

## LEVEL 3'S MOTION IN LIMINE TO EXCLUDE
## UNDISCLOSED WITNESSES AND DAMAGES OPINIONS

---

      Defendant/Counterclaimant Level 3 Communications, LLC and Counterclaimants Broadwing Communications, LLC, Global Crossing Telecommunications, Inc., and WilTel Communications, LLC (collectively, "Level 3"), move to preclude AT&T Corporation and Teleport Communications Group, Inc. (collectively, "AT&T") from offering fact witnesses and damages theories that should have been raised long ago.

      Level 3 has long made clear that AT&T had withheld far more than 65% of Level 3's end

office charges for the OTT dispute. This view was premised on the understanding that, since January 2019, AT&T had withheld payment on Level 3's usage-based invoices due to two disputes—the OTT dispute at issue here, and another unrelated dispute. With less than two months before trial, AT&T disclosed for the first time expert opinions premised on the notion that (a) AT&T withheld exactly 65% of end office charges for the OTT dispute, and (b) AT&T withheld payment from Level 3 for other reasons it did not disclose until March 2021. The net effect of these new opinions is that AT&T is trying to inject new multimillion-dollar disputes into this lawsuit on the eve of trial, in a transparent attempt to salvage a case where the Court has already ruled against it on summary judgment. AT&T was legally obligated to disclose these witnesses and opinions long ago. AT&T's belated attempt to raise them now, at the eleventh hour, is hugely prejudicial. Therefore, AT&T should be precluded from offering these or any other previously undisclosed witnesses or opinions at trial.

Pursuant to Local Rule 7.1, counsel for Level 3 certifies that it has conferred with counsel for AT&T regarding the relief requested herein, including by multiple emails and telephone calls with opposing counsel, and was unable to resolve the disputed matter despite these efforts.

## I.    BACKGROUND

### AT&T's Initial Disclosures Violated its Obligations Under Rule 26(a)(1)

AT&T disclosed a list of persons likely to have discoverable information on April 2, 2018, identifying among others "Alison Miller, Lead Carrier Relations Manager, AT&T Global Connection Management." *See* Declaration of Charles W. Steese ("Dec.") Ex. A (Initial Disclosures). While the disclosure named Ms. Miller, it did not identify any subject for Ms. Miller's anticipated testimony, which violates Rule 26(a)(1)(A)(i). When fact discovery closed

on December 20, 2019 (*see* ECF No. 131), AT&T had never supplemented the list of persons

likely to have discoverable information or provided any detail about the scope of Ms. Miller's

testimony. Dec. ¶ 4.

*Level 3's Damages Calculations Addressed All of AT&T's Withholdings.*

On March 16, 2020 the parties exchanged opening expert disclosures. Level 3 disclosed

Level 3 employee Jennifer Torres as a non-retained expert to discuss Level 3's damages. Ms.

Torres presented a spreadsheet showing her damages analysis. Dec. Ex. B (3/16/2020 L3

26(a)(2) disclosure).[1] In this disclosure, both initially and as later supplemented, Ms. Torres

calculated Level 3's damages using the following method.

> ➤ First, she identified all usage-based charges that Level 3 assessed to AT&T through its
>
>   tariff on a month-by month basis for each month during the damages period. *See* Dec. Ex.
>
>   C, Column B of the spreadsheet's "AR Summary" tab.
>
> ➤ Next, she subtracted amounts associated with an unrelated "DEOT" dispute (listed in
>
>   Columns C and D). *Id.*
>
> ➤ Then she identified the payments AT&T made on the invoices (Column E).
>
> ➤ Because the DEOT dispute and the OTT dispute were the only usage-based disputes
>
>   AT&T had raised with Level 3, the difference between Level 3's charges and AT&T's
>
>   payments, minus amounts associated with the DEOT dispute, was understood to be the

---

[1] The only expert witness AT&T disclosed at this time was Penn Pfautz, whose testimony
concerned the percentage of Level 3's traffic that was OTT-VoIP. The Court's March 25, 2021
Order on the Parties' Summary Judgment Motions determined that there was no genuine issue as
to whether the OTT percentage exceeded 21 percent. ECF No. 204 at 8. Though Level 3 believes
the actual percentage is even lower than that, the difference is so slight that Level 3 does not
intend to press the issue at trial. This will likely make unnecessary the intended testimony of
Level 3's other expert, Andrew McClure, as well as the intended testimony of Dr. Pfautz, who
was presented to rebut Mr. McClure's testimony.

amounts AT&T withheld "associated with the OTT dispute." Dec. Ex. D (Suppl. 26(a)(1) disc.) at 4 ¶ 4.

➢ Ms. Torres also calculated an OTT credit that assumed a 16-percent[2] OTT-VoIP factor and a 50-percent refund through the date that the FCC's December 2019 OTT Order became final, as well as an add-back for tandem charges the parties agreed could be assessed in lieu of the end office charges. Dec. Ex. C.

➢ This allowed Ms. Torres to calculate Level 3's total OTT damages, both with and without late payment charges mandated by the tariff. *Id.*

Upon receipt of Ms. Torres's Rule 26(a)(2)(C) disclosure, AT&T complained that the disclosure needed additional detail. *See* Dec. ¶ 8. This complaint was addressed in a discovery conference held before Magistrate Judge Hegarty on April 13, 2020, during which Level 3 agreed to clarify Ms. Torres's disclosure and provide additional information on how the damages in her spreadsheet were calculated. *See* ECF No. 133. Level 3 provided Ms. Torres's supplemental disclosure on April 22, 2020 to respond to the specific questions AT&T raised regarding these calculations. *See* Dec. Ex. E (4/22/2020 Suppl. 26(a)(2) disclosure).

*AT&T's Response to Level 3's Damages Disclosures Did Not Identify Any Unrelated Disputes.*

Rebuttal expert reports were exchanged on May 15, 2020. *See* ECF No. 134. Expert discovery was to be completed by June 5, 2020, prior to the filing of dispositive motions on or June 29, 2020. *See id.* On May 15, 2020, Ms. Torres supplemented her Rule 26(a)(2) disclosure to, among other things, address issues identified by AT&T and to add additional charges that

---

[2] As noted below, a new spreadsheet was submitted in mid-2020 that assumed a 21% OTT factor, which this Court affirmed in its Order on the parties' summary judgment motions was the largest amount of possible OTT calling. *See* ECF No. 204 at 12.

4

Level 3 had assessed in the interim. *See* Dec. Ex. F (5/15/2020 Suppl. Rule 26(a)(2) disclosure).

Also on May 15, 2020, AT&T sent Level 3 a letter reacting to Ms. Torres's damages calculations, stating that "the differences between the parties' positions reflect legal or factual issues" such that "AT&T is not providing rebuttal expert disclosure in response to Ms. Torres" but was instead "providing a supplemental disclosure that sets forth the areas of disagreement." Dec. Ex. G (5/15/2020 Letter from M. Hunseder to C. Steese). The document accompanying the letter, a "supplemental disclosure pursuant to Federal Rule of Civil Procedure 26(e)," is effectively a 26(a)(2)(C) disclosure, *with no witness identified.*[3] The disclosure identified "AT&T's disputes on the various figures relied upon by Ms. Torres"—nowhere suggesting that AT&T was withholding payment from Level 3 on any basis other than the DEOT and OTT disputes—the two disputes referenced in Ms. Torres' disclosure. Dec. Ex. H (5/15/2020 26(e) disclosure) at 4. AT&T identified the following points of purported disagreement with Ms. Torres's calculations:

➢ The figures in Column B—which describe Level 3's total usage charges—were purportedly too high because they (a) included late payment charges, and (b) otherwise did not match up with AT&T's records.

➢ Column C, on DEOT credit, was disputed because AT&T believed the total credit should have been approximately $300,000 higher.

➢ Column E, on AT&T's "Total Payments," was disputed because AT&T's records

---

[3] In negotiating the pretrial order with AT&T, Level 3 counsel informed AT&T that it planned to move to strike the expert disclosure for lack of a witness. Steese Dec. at ¶ 13.

purportedly showed different figures in that time period.[4]

*Id.* at 2. AT&T claimed its disputes as to "these amounts" (i.e., those listed in Columns B, C, and E) were based on its business records; that the amounts billed and credited by Level 3 and paid by AT&T were factual issues; and that AT&T "intend[ed] to use a fact witness and business records to establish proof on *these topics*." *Id.* at 3 (emphasis added). The only other issues AT&T noted were the inclusion of prejudgment interest or late penalty charges, the method for calculating the OTT factor (a dispute later resolved by the Court on summary judgment), and the method for calculating a tandem add-back. *Id.* at 3–4. AT&T raised no issue with the assumption that, after accounting for the DEOT dispute, all remaining withholdings were attributable to the OTT dispute. Nor did AT&T suggest there was any other basis for its withholding millions of dollars from Level 3.

*AT&T Did Not Identify Any Unrelated Disputes on Summary Judgment.*

The parties filed *Daubert* motions on June 15, 2020, and summary judgment motions on June 29, 2020. In connection with Level 3's motion for summary judgment, Level 3 provided the declaration of Melissa Kellow, who had been disclosed as a fact witness to "identify invoices billed by Level 3 to AT&T and to identify amounts AT&T has withheld from payment." Dec. Ex. D at 3. An exhibit to her declaration updated the calculations Ms. Torres provided to: (1) include additional months of invoices, payments, and withholdings that had happened since Ms. Torres' last disclosure; (2) assume a 21-percent OTT-VoIP factor (which the Court later validated); and (3) adjust late payment charges to account for a specific concern raised by AT&T. *See* ECF No. 151-19. As noted in Ms. Kellow's declaration, AT&T "has not historically

---

[4] This issue was later rectified as AT&T had made payments not yet reflected in the Level 3 books.

told Level 3 what amounts it is withholding due to the OTT dispute," but "by excluding amounts that AT&T has identified for all other disputes"—i.e., the DEOT dispute—she was able to determine that the remaining balance "is due to the OTT dispute." *Id.* ¶ 8. This reaffirmed that Level 3 was attributing the withholdings solely to the only two disputes AT&T had ever raised to Level 3's charges.

Ms. Kellow's review of the damages also noted a key fact: AT&T's withholdings exceeded not only the 65 percent AT&T claimed was Level 3's OTT percentage, but in fact, the total amount of all of Level 3's end office charges. *Id.* ¶ 6. Level 3 noted this fact in its Statement of Facts in support of its motion for summary judgment—and while AT&T ostensibly disputed the fact, AT&T provided no evidence suggesting it actually withheld payments at the purportedly intended 65-percent rate, or that it had withheld millions of dollars for other reasons. *See* ECF No. 181-1 ¶ 46.

*AT&T Identified Previously Undisclosed Witnesses and Opinions After Discovery Closed.*

On August 27, 2020, as the parties were preparing their joint proposed pre-trial order, AT&T included Bob Hayes in its list of trial witnesses—an individual it had never before disclosed, making this yet another violation of Rule 26(a)(1). *See* Dec. ¶ 14. AT&T claims Mr. Hayes will "provide testimony regarding Level 3's bills and AT&T's payments." Dec. ¶ 15 Ex. I (J. Benson 8/31/2020 email).

On March 9, 2021, Level 3 updated its damages analysis to bring its damages current through January 2021; it used the exact same methodology as before, simply adding charges from the months that had passed since the last disclosure. Dec. Ex. J (C. Steese 3/9/21 email to M. Hunseder and spreadsheet attachment). Shortly thereafter, counsel for AT&T sent Level 3 a

copy of a letter from Ms. Miller, dated March 12, 2021, regarding "Outstanding Non-OTT Disputes Between AT&T Corp. and Level 3." Dec. Ex. K. In this letter, Ms. Miller claimed for the first time that it was "not accurate" to attribute the withholdings solely to the DEOT and OTT disputes; there were, she claimed, "multiple reasons, aside from the OTT-VoIP issue being litigated, why AT&T's payments to Level 3 have differed from amounts billed." *Id.* This was the first time Level 3 heard AT&T was withholding money for any of these claimed reasons. These "reasons" are farcical, for reasons Level 3 explained in a response letter sent on April 2, 2021. *See* Dec. Ex. L. But most important for purposes of this Motion, AT&T never identified any of these disputes—not to Level 3 personnel, or to Level 3's counsel here—as a basis for withholding money on Level 3's invoices prior to 2021. Dec. ¶ 17.[5]

On April 23, 2021, counsel for AT&T sent Level 3 a new Rule 26(e) disclosure and a Rule 26(a)(2) disclosure that named, for the first time, Allison Miller as the person that would support AT&T's damages analysis. Dec. Exs. N, O. In the Rule 26(a)(2) disclosure, AT&T stated that Ms. Miller would testify regarding the amounts AT&T was billed by Level 3 for end-office switching charges (including OTT calls), Level 3's end office OTT overcharges, and the amounts AT&T paid and withheld for the OTT dispute, as described in an attached spreadsheet.

---

[5] This is in spite of the fact that Level 3's tariff required AT&T to identify such bases: "[T]he Customer may dispute a bill in good faith only by written notice to the Company. . . . ***Such claim must identify in detail the basis for the dispute***, and ***if the Customer withholds disputed amounts***, it must identify the account number under which the bill has been rendered, the date of the bill, ***and the specific items on the bill being disputed to permit the Company to investigate the merits of the dispute***." Dec. Ex. M [Level 3 FCC Tariff No. 4] § 4.9(1), Third-Revised Page 26 (Eff. Dec. 29, 2011) (emphases added). Yet until March 2021, AT&T identified no basis for the withholdings other than the DEOT and OTT disputes. Dec. ¶ 17.

Dec. Ex. O at 2.[6] Notably, Ms. Miller's "analysis" accepts Level 3's numbers both as to Level 3's charges and AT&T's payments, and does not refer to the DEOT dispute at all. Instead, it utilizes the same spreadsheet Level 3 sent to AT&T on March 9, 2021 as its foundation, showing no disagreement as to minutes of use, the amount Level 3 billed, or the OTT credit Level 3 calculated (in fact columns A through G are identical in both Level 3's and AT&T's spreadsheets). *Compare* Dec. Ex. P (AT&T's Ex. 1 spreadsheet) to Dec. Ex. J (Level 3's March 9th analysis). Thus, this claimed "analysis" does not speak to a single one of the "points of disagreement" AT&T identified in its May 2020 Rule 26(e) disclosure. Rather, it adds an entirely new analysis, calculating Level 3's damages by simply assuming AT&T had paid exactly 35% of Level 3's end office charges. *See* Dec. Ex. P. This "analysis" necessarily assumes that AT&T withheld millions of dollars in payments from Level 3 for reasons AT&T never disclosed to Level 3, and thus necessarily also means AT&T is just now raising disagreements with Ms. Torres' expert disclosures that is never raised before. These assumptions affect the damages calculations dramatically: instead of the $8.69 million Level 3 calculated, AT&T would cut Level 3's damages by more than half, to $3.80 million. *Compare* Dec Exs. P, J. It is plainly improper for AT&T to spring such impactful issues on Level 3 on the eve of trial.

## II.   ARGUMENT

It is obvious what AT&T is trying to do. With the Court's Summary Judgment Order resolving the primary legal and factual disputes in Level 3's favor (ECF No. 204), the main task remaining is to determine damages. Even AT&T now recognizes that it owes Level 3 millions of

---

[6] The Rule 26(a)(2) disclosure claimed that AT&T had previously designated Ms. Miller as a witness that would offer testimony on these topics. *See* Dec. Ex. O at 1. As noted above, however, AT&T had never identified the subjects of Ms. Miller's testimony. *See* Dec. Ex. A.

dollars. In an effort to mitigate its losses, AT&T claims the dollars that Level 3 has all along identified as part of the OTT issue were actually part of some unrelated, undisclosed disputes. It is far too late in the day for AT&T to insert these issues into this lawsuit now.

AT&T's misconduct has real-world implications. All of these charges were billed to AT&T out of Level 3's interstate access tariff. Section 415 of the Communications Act contains a two year statute of limitations (47 U.S.C. § 415), which means that AT&T's concealing the purported reasons for its withholding would—according to AT&T—leave Level 3 with no ability to recover damages more than two years old. For example, Level 3 shows damages from February 2019 of $523,692, while AT&T shows $216,042.89. Level 3 brought this lawsuit to recover these amounts—which, until March 2021, no one suggested was attributable to any dispute other than the OTT dispute at issue here. AT&T now claims it actually withheld the delta for previously undisclosed reasons, notifying Level 3 of that assertion only after the statute of limitations on a portion of Level 3's claims had run. AT&T's subterfuge is obvious on its face, as is the prejudice to Level 3.

The Court should therefore preclude AT&T from introducing these undisclosed witnesses and damages opinions.

## A.  Legal Standards

Fed. R. Civ. P. 26(a)(1)(A) requires all parties to disclose "the name . . . of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Rule 26(a)(2) similarly requires parties to disclose any witness it may use at trial to present expert opinion evidence under Fed. R. Evid. 702, 703, or 705. In the case of non-retained experts, the

disclosures must provide "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). A party's Rule 26(a) disclosures must be supplemented "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process in writing." Fed. R. 26(e)(1)(A).

"A party violates Rule 26 by failing to disclose witnesses prior to the close of discovery, which effectively forecloses the opposing party from conducting discovery on the supplemental disclosures." *White v. Deere & Co.*, No. 13-CV-02173-PAB-NYW, 2016 WL 525911, at *1 (D. Colo. Feb. 10, 2016); *see also Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, No. 05-CV-02084-PSFCBS, 2007 WL 1613352, at *1 (D. Colo. June 1, 2007) ("The failure to disclose witnesses prior to the close of discovery, which effectively forecloses the opposing party from conducting discovery on the supplemental disclosures, constitutes a violation of Rule 26."). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party *is not allowed to use that information or witness* to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added).

In addition, Fed. R. Civ. P. 16 "requires that the court set a time for completion of discovery and authorizes various other orders affecting the scope, timing and extent of discovery and disclosures." *Anderson v. Seven Falls Co.*, No. 12-CV-01490-RM-CBS, 2013 WL 3771300, at *6 (D. Colo. July 18, 2013) (quoting Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(f)). "Rule 16(b) provides that a scheduling order 'may be modified only for good cause and with the judge's consent.'" *Id.* at *7 (citing *Cassirer v. San Miguel County Board of*

*County Commissioners*, 2009 WL 1844326, *5–6 (D. Colo. June 23, 2009)). This "good cause" standard "does not focus on the bad faith of the movant or the prejudice to the opposing party," but "focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." *Ingle v. Dryer*, Civ. No. 07-cv-00428-LTB-CBS, 2008 WL 1744337, at *1 (D. Colo. Apr. 11, 2008). Finally, Rule 37(b)(2) gives the Court express authority to prohibit a party from "introducing designated matters in evidence" for failing to comply with a court order, such as the Court's order mandating expert disclosures by a date certain. *See, e.g.*, *Benson v. State Farm Mut. Auto. Ins. Co.*, No. 19-CV-2502-RM-NYW, 2021 WL 1229709, at *3 (D. Colo. Mar. 15, 2021) (precluding expert testimony under Rule 37(c)(1) where expert disclosure "was made . . . well after the deadline for disclosure of experts . . . the deadline for the close of discovery of June 29, 2020 . . . and the deadline for Daubert motions pursuant to Rule 702 of June 29, 2020").

### B. AT&T Violated Rule 26(a) by Failing to Disclose Mr. Hayes or Ms. Miller's Expert Opinions, or to Supplement its Rule 26(e) Disclosure.

AT&T did not disclose Mr. Hayes as a witness it might use to support its claims or defenses in its initial Rule 26(a)(1) disclosures. Rather, it identified Mr. Hayes for the first time on August 27, 2020, as the Parties were preparing their joint proposed Final Pretrial Order. This untimely disclosure thus came months after fact discovery closed on December 20, 2019, *see* ECF No. 131 at 1. Thus, it is indisputable that AT&T "violate[d] Rule 26 by failing to disclose witnesses prior to the close of discovery." *White*, 2016 WL 525911, at *1.

AT&T also violated Rule 26 by failing to disclose Ms. Miller's anticipated expert opinions until April 23, 2021—well after expert discovery closed on June 5, 2020, *see* ECF No. 136 at 1, and less than two months before trial was set to begin. AT&T's attempt to avoid the

requirements of Rule 26 by claiming that this is actually fact testimony is unavailing for at least two reasons. First, the assumption that the charges AT&T withheld could be attributed to some telecommunications dispute distinct from the OTT dispute must inevitably draw upon industry-specific expertise that would place such opinions beyond the typical experience of a lay witness, and so would plainly be expert testimony. Indeed, AT&T cannot credibly suggest that Ms. Miller's opinions are actually fact testimony after arguing in April 2020 that Ms. Torres's own damages calculations were subject to Rule 26(a)(2), and successfully moving to compel Level 3 to supplement the disclosure to comply with that Rule.

Second, even if Ms. Miller was providing fact testimony (and she is not), AT&T failed to provide a description of the subject matter of Ms. Miller's testimony, as required by Rule 26(a)(1) for all fact witnesses. Because of that violation, Level 3 had no idea that it should question Ms. Miller about other purported reasons AT&T was withholding money from Level 3. Thus, it does not matter whether Ms. Miller is a fact or expert witness; either way, AT&T's disclosures were insufficient and violated Rule 26.

In addition, AT&T's belated assertion that its withholdings are attributable to disputes other than the DEOT and OTT disputes render AT&T's Rule 26 disclosures materially incomplete and misleading. In particular, its May 15, 2020 Rule 26(e) disclosure suggested that the only damages issues on which it might call a fact witness had to do with the specific figures Level 3 was using for what it has charged, what AT&T has paid, and the amount of the DEOT dispute. *See* Dec. Ex. H. Not one of these figures remains in in dispute in AT&T's April 2021 disclosures; instead, AT&T accepted Level 3's numbers on charges and payments and made no mention of DEOT at all. Thus, AT&T has substantially changed its damages disclosures. If

AT&T had that card up its sleeve this whole time, Rule 26(e) required it to say so. Its failure to do so until well after the close of discovery violated Rule 26.

**C.  AT&T's Violations are Neither Substantially Justified nor Harmless.**

"The non-moving party has the burden of showing that it was substantially justified in failing to comply with Rule 26(a) or that such failure was harmless." *White*, 2016 WL 525911, at *1 (citing *Sender v. Mann*, 225 F.R.D. 645, 655 (D. Colo. 2004)). The Tenth Circuit has identified four factors the Court should consider to guide its discretion in determining whether a Rule 26(a) violation is substantially justified or harmless: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). AT&T will be unable to show that any of these factors weigh in favor of finding the violations to be substantially justified or harmless.

On the first factor, these untimely disclosures are both surprising and prejudicial. Level 3 has made clear for more than a year that its damages calculations were premised on AT&T having identified only two bases for its withholdings: the DEOT and OTT disputes. Until now, AT&T's disclosures made no suggestion otherwise. Instead, it specifically identified "the areas of disagreement" on which it might present rebuttal fact testimony, none of which had to do with the fundamental assumption that the only two disputes were DEOT and OTT. Dec. Ex. G at 4. AT&T never identified any basis for the withholdings other than the DEOT and OTT disputes, even though Level 3's tariff requires it to do so. AT&T had given no hint of such a notion until March 2021, the same month the Court entered its Summary Judgment Order.

Nor are AT&T's violations minor peccadillos. AT&T's attempt to attribute its withholdings beyond 65 percent of the end office charges to other previously unidentified disputes impacts millions of dollars of damages, and Level 3's ability to recover the withholdings at all. Given the enormity of these issues, if AT&T had brought them up earlier, when Level 3 still could have done something about them, Level 3 would have devoted significant attention to refuting them. Among other things, Level 3 would have asked for documents showing how AT&T determined that it was withholding exactly 65 percent of end office charges for the OTT dispute; required AT&T to identify the other disputes for which it claimed to be withholding payment, and provide documentary evidence to support those disputes; and show any adjustments AT&T made, or considered making, when Level 3's terminating end office rates reduced to zero. Level 3 also could have amended its counterclaims to seek recovery of the amounts withheld for purportedly other reasons. Level 3 also could have prepared additional expert discovery to show why these other disputes are baseless. And Level 3 could have taken additional depositions of AT&T's witnesses, including Ms. Miller about these other disputes or how AT&T attributed withholdings to one dispute versus another. In short, had AT&T timely disclosed this information, Level 3 would have devoted the very kind of resources and attention one would expect multimillion-dollar issues like these to receive. But both fact and expert discovery have long since closed, and even if discovery were reopened, there simply is not time to complete those tasks before trial begins in June. The late disclosures are thus inherently prejudicial.

The prejudice is especially striking due to the two-year limitations period in the Communications Act. AT&T knew since no later than March 2020 that Level 3 considered all of

AT&T's withholdings to be attributable to the OTT and DEOT disputes. Had AT&T detailed the reasons for the purported withholdings as it did in in March 2021 letter, Level 3 could have addressed those issues, including if necessary by filing amended claims before the end of 2020 that could have addressed all damages that accrued in 2019 and thereafter. Instead, AT&T waited until March 2021, when it finally sprung its contention that the withholdings were for other disputes all along—thus placing hundreds of thousands of dollars withheld through March 2019 beyond the reach of the two-year limitations period. This demonstrates perfectly why Level 3's tariff requires the customer to state in detail why it is withholding payment: this allows Level 3 to work to resolve the dispute as quickly as possible, including bringing any necessary suit within the two-year limitations period. AT&T's disregard of that obligation, and its obligations under the discovery rules, threatens Level 3's ability to recover these withheld amounts.

On the second and third factors, AT&T cannot cure the prejudice by offering Ms. Miller or Mr. Hayes for depositions, even after discovery has been closed for almost a year, without enormous disruption to the trial schedule (if at all). Trial is set to begin in a matter of weeks. Rather than spend its efforts preparing for the trial, Level 3 would have to focus on these new multimillion-dollar issues. Case after case in this District and Circuit recognize the substantial prejudice and disruption this would cause. *See*, *e.g.*, *United States v. Heller*, No. 19-CR-00224-PAB, 2019 WL 4464071, at *1, *2 (D. Colo. Sept. 18, 2019) (excluding expert who was disclosed "a month before trial," as litigating a Rule 702 challenge "would compromise the defendant's ability to otherwise prepare for trial"); *Bush v. Fedex Freight, Inc.*, No. 12-CV-00230-WYD-KLM, 2013 WL 4496391, at *5 (D. Colo. Aug. 22, 2013) ("even if, as Plaintiffs argue, the extended discovery deadline allowed Defendant to properly react to the disclosures

and to collect the evidence necessary for its defense, Defendant would be further prejudiced to the extent the delayed disclosures disrupted the case management schedule and required previously unnecessary expenditures"); *RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, No. 16-CV-01301-PAB-GPG, 2019 WL 2135816, at *4 (D. Colo. May 16, 2019) ("although a trial date is not yet set, allowing plaintiffs to add an additional expert at this time would likely cause some prejudice"); *Andalam v. Trizetto Grp.*, No. 12-CV-01679-WYD-MJW, 2014 WL 12741123, at *2 (D. Colo. May 27, 2014) ("the ability to cure at this late date is not practical noting that both the trial preparation conference and jury trial as set less than one month away"); *Fresquez v. Baldwin*, No. 08-CV-01233-CMA-CBS, 2010 WL 5934891, at *29 (D. Colo. Dec. 15, 2010) ("Both the court and Defendants are entitled to expect that by a date certain, Plaintiff's list of testifying experts will be fixed and the case will proceed on that basis."). And to the extent Level 3 could be forever barred by the statute of limitations from seeking collection of damages from the first portion of 2019 on dollars it believed were covered by this litigation, there can be no cure for the prejudice.

On the fourth factor, there is no good faith basis for these untimely disclosures. AT&T suggests that it did not make the necessary disclosures when the schedule required because, until recently, the parties had been attempting to agree on their damages figures. *See* Dec. Ex. Q (M. Warden 4/22/21 email). This is no justification at all. For one, Level 3 was able to provide its damages calculations notwithstanding its own involvement in the parties' efforts to reach agreement on the underlying figures. For another, Ms. Miller's disclosure confirms that the parties did, in fact, reach agreement on the underlying figures; Ms. Miller's spreadsheet uses the same numbers as the calculations Level 3 provided in March 2021 on what Level 3 charged and

what AT&T paid. Ms. Miller's new analysis has nothing to do with any issues the parties had been discussing up until March 2021, when AT&T injected its new analysis and attempted to attribute its withholdings to previously undisclosed disputes.

Even taking AT&T at its word, pretending for argument's sake that this is not an *ex post facto* excuse for its failure to take this case seriously, AT&T's conduct is unjustified. It has long known the "nature and scope" of Level 3's witnesses and damages theory, and therefore "was capable of making an informed decision regarding a rebuttal expert," but instead made a "tactical decision" not to address damages in a timely manner; such "an ill-advised decision 'hardly constitutes good cause' under Rule 16(b)." *Anderson*, 2013 WL 3771300, at \*9 (quoting *Harris v. Chicago Title Ins. Co.*, 694 F.3d 935, 949 (8th Cir. 2012)). Calling the disclosure a "supplement" as AT&T does is no remedy; the methodology is entirely new, and so is no "supplement" as Rule 26(e) contemplates. *See Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv. II, LLC*, No. 14-CV-00134-PAB-KMT, 2016 WL 9735144, at \*2 (D. Colo. June 8, 2016) (noting that "Permissible supplementation" is limited to "correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure" and striking "supplemental" expert report which exceeded these limits). In addition, AT&T expressly told Level 3 that "AT&T is not providing rebuttal expert disclosure in response to Ms. Torres," and so there is no expert opinion to supplement. Dec. Ex. G. AT&T is backfilling now what it failed to do when the rules required it. AT&T's lack of diligence or good faith shows no good cause for allowing AT&T to introduce the new evidence following the close of discovery, which is reason enough on its own to preclude the damages analysis independent of its significant prejudice. *See id.* ("a court will not consider prejudice if the movant has not been

diligent in meeting the scheduling order's deadlines") (quoting *Soo Line R.R. Co. v. Werner Enterprises*, Civ. No. 12-1089 (DSD/JSM), 2013 WL 2434880, at *7 (D. Minn. June 4, 2013)).

In sum, AT&T's violations of Rule 26 are unjustified, and would cause substantial prejudice to Level 3 if AT&T were permitted to present the newly disclosed facts, opinions and damages theories. Given the limited time before trial, the only way to avoid prejudice to Level 3 is for these untimely disclosed witnesses, facts and opinions to be excluded.

## III.   CONCLUSION

For the foregoing reasons, Level 3 requests that the Court strike Ms. Miller's expert disclosure, strike Bob Hayes from the list of fact witnesses identified in the pretrial order, and preclude AT&T from asserting that any of its withholdings are attributable to any dispute other than the DEOT and OTT disputes.

Respectfully submitted this 7th day of May, 2021.

By: /s/ *Charles W. Steese*
Charles W. Steese, #26924
Douglas N. Marsh, #45964
Armstrong Teasdale LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
csteese@armstrongteasdale.com
dmarsh@armstrongteasdale.com

*Attorneys for Defendant/Counterclaimants Level 3 Communications, LLC, Broadwing Communications, LLC, Global Crossing Telecommunications, Inc., and WilTel Communications, LLC*

19

## CERTIFICATE OF SERVICE

I, Charles W. Steese, hereby certify that on May 7, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Rebecca B. DeCook
Andrew T. Flynn
Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1027
becky.decook@moyewhite.com
andrew.flynn@moyewhite.com

Michael D. Warden
Michael J. Hunseder
Justin A. Benson
Joshua W. Moore
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
mwarden@sidley.com
mhunseder@sidley.com
jbenson@sidley.com
joshua.moore@sidley.com

*Attorneys for Plaintiff AT&T Corp.*

/s/ *Charles W. Steese*
Charles W. Steese