# EXHIBIT K

## To Declaration of Charles W. Steese

| | |
|---|---|
| **From:** | Hunseder, Michael <mhunseder@sidley.com> |
| **Sent:** | Wednesday, March 17, 2021 7:11 AM |
| **To:** | Chuck Steese; Douglas N. Marsh |
| **Cc:** | Warden, Mike; Benson, Justin |
| **Subject:** | RE: Privileged: AT&T OTT Data - Updates Through January 2021 Invoice |
| **Attachments:** | L3_NonOTTDisputesLetter_031221.pdf |

**CAUTION:** **EXTERNAL EMAIL**

Chuck,

Thank you for your email. AT&T is reviewing Level 3's updated damages analysis. We are also willing to discuss motions in limine at a mutually convenient time.

As to settlement and your comment that Level 3 finds AT&T's position "curious," you may be aware that AT&T's business representatives last week provided correspondence regarding the various other billing disputes between the parties that are not related to "OTT VoIP" calling. If you have not seen the letter, I am attaching it.

As indicated in Ms. Miller's attached letter, AT&T is always interested in resolving its ongoing disputes with Level 3, and is willing to discuss settlement consistent with the framework suggested in the letter.

Thanks, Mike


**MICHAEL HUNSEDER**

**SIDLEY AUSTIN LLP**
+1 202 736 8236
mhunseder@sidley.com



Alison Miller
Lead Carrier Relations Manager
AT&T Global Connection Management

AT&T Corp.
One AT&T Way
Room 4A123A
Bedminster, NJ 07921

T: (908) 234-4015
AM7149@att.com

March 12, 2021
*Via Email*

**FOR SETTLEMENT PURPOSES ONLY**
**SUBJECT TO FED. R. EVID. 408 AND STATE COUNTERPARTS**

Craig Davis
Level 3
Craig.davis@lumen.com

      RE: Outstanding Non-OTT Disputes Between AT&T Corp. and Level 3

Dear Mr. Davis:

      The purpose of this letter is to provide further and additional information as to billing disputes regarding switched access services that have been billed by Level 3, and for which AT&T has withheld payment. Recent discussions between AT&T and Level 3 indicate that Level 3 misunderstands the basis for AT&T's withholding. AT&T hopes that the information provided in this letter will promote more productive discussions directed toward resolving these disputes.

      AT&T prefers to minimize access billing disputes with Level 3. However, as AT&T has told Level 3 for years, Level 3's billing practices are in several respects inconsistent with the practices of other industry participants, as well as applicable legal requirements. Level 3's non-standard and often improper practices make its bills more difficult for AT&T to validate than bills rendered by other carriers and give rise to the billing disputes that continue to characterize the parties' relationship in the access charge context.

      In some cases, the nature of the parties' billing dispute has been well-recognized and has resulted from clear violations by Level 3 of applicable legal requirements. For example, as you know, AT&T and Level 3 have had a longstanding dispute over the appropriate access charges on over-the-top voice over internet protocol calls ("OTT-VoIP"). As the FCC has found in a ruling that Level 3 elected not to appeal, end office charges are not properly billable on OTT traffic. Nonetheless, Level 3 continues to bill end office charges for OTT traffic, necessitating a continued dispute. In recent years, AT&T has also identified improper, non-tariffed charges within its bills. Level 3's bills also include charges that are improper under the applicable access charge rules, including charges that violate step-down and rate parity rules.

March 12, 2021

Based on its negotiating position in the OTT-VoIP dispute, Level 3 apparently believes that *all* of the amounts that AT&T has withheld from Level 3 in billed access charges relate solely to that dispute. This understanding is not accurate. As to the OTT dispute, AT&T's position has been that, consistent with past statements made by Level 3, 65% of Level 3's end office charges relate to OTT-VoIP calling, and AT&T's withholding reflects that position. AT&T understands Level 3's current position to be that, its past statements notwithstanding, only about 20% of its end office charges relate to OTT-VoIP calling. Despite the position it has taken in court, Level 3 bills AT&T as if 0% of its traffic is OTT-VoIP. That billing dispute—and *only* that billing dispute—is pending and set for resolution in the federal court case between the parties in Colorado.

As a result of the work performed last year in connection with the OTT litigation, the parties were able to make some progress in reconciling the numbers that are in dispute due to the OTT-VoIP billing issue. If the Court were to agree with AT&T's view on the issues addressed in the Litigation, then approximately $4.2 million of Level 3's end office access billing would have been found to be improper, along with any associated late fees. On the other hand, if Level 3 were to prevail in full, the amount of Level 3 access charge billing that would have been determined by the Court to have been improper would be reduced to $642,000.[1]

Last year, the parties were in general agreement that AT&T had, in total withheld about $8.1 million in access charges (exclusive of late payment charges) as of September, 2020. However, only a portion of that withholding related to OTT VoIP charges. The remainder relates to other billing disputes between the parties, and none of those other billing disputes are part of the Colorado case.

There are multiple reasons, aside from the OTT-VoIP issue being litigated, why AT&T's payments to Level 3 have differed from amounts billed. AT&T's Carrier Billing Organization ("CBO") and members of AT&T's National Access Management team have raised their concerns repeatedly with their counterparts at Level 3, but have not received the cooperation needed from Level 3 to resolve the problems created by Level 3's non-standard billing practices. AT&T hopes that, by further highlighting these issues, this correspondence and any discussions arising from it may be a step toward both resolving these longstanding billing issues. AT&T stands ready and willing to attempt to resolve all of these billing disputes.

Given that AT&T is billed access charges by over 1000 local exchange carriers, AT&T uses mechanized bill validation systems. These systems are designed to analyze carriers' bills and perform various checks to validate various aspects of the bill. The systems also contain information about the appropriate rate that should be billed, based on the carrier's operations, the tariffs, and the governing access charge rules (*e.g.*, benchmark rules applicable to competitive LECs like Level 3). AT&T's bill validation and payment systems are designed to address industry standard billing practices. Carrier bills like Level 3's that deviate from the industry standard format materially impede the payment systems' ability to validate the bills, which generates disputes and withholding.

---

[1] Level 3 has recently submitted new numbers covering the period through the January 2021 invoices. AT&T has not had the opportunity to review that submission thoroughly. Regardless of the outcome, AT&T continues to dispute 100% of late charges assessed by Level 3.

March 12, 2021

Perhaps the most vexing non-OTT issue contributing to AT&T's withholding is Level 3's inability or unwillingness to invoice AT&T for tandem switching in a manner that allows AT&T to use its industry standard practices to validate the billing and that appropriately distinguishes between Level 3 traffic originating from *its own end offices* versus traffic originating from *third-parties* A majority of carriers bill third party traffic separately from their end user traffic, which allows AT&T to validate and pay each category charges through a straightforward process. Unlike its peers, Level 3 bills third party tandem transport and end office/tandem transport charges under the same billing account numbers (BANs). This practice hampers AT&T's mechanized bill validation and payment procedures, due to frequent fluctuations in the amount of traffic attributable to third party tandem/transport traffic. As AT&T has pointed out for a number of years now, billing third party traffic on separate BANs from Level 3's end user traffic would address this issue. It would more easily allow AT&T's to identify the different types of traffic and validate that Level 3's billing is correct, thereby avoiding potentially unnecessary disputes and withholding. It would also allow the parties to identify more easily the source and nature of any remaining billing disputes.

Additionally, AT&T has over the past several months identified several different types of non-OTT billing disputes:

*First*, Level 3 has consistently charged AT&T for items not found in Level 3's tariff, which makes it difficult for AT&T to validate the bill. To provide some background, a particularly disruptive instance of this practice arose in 2017, when Level 3 began billing a rate element it called "tandem facility non-mileage sensitive." This charge was not in Level 3's tariff, nor did it conform with OBF billing guidelines' standard mechanized billing processes. Although AT&T could have withheld payment in full, it instead sought to accommodate Level 3 by attempting to manually reverse engineer Level 3's billing in order to decipher Level 3 non-tariffed and unexplained tandem charges. In so doing, AT&T also invested significant time and expense in having its outside vendor develop a modification to its invoice validation and payment system to recognize Level 3's non-standard practice. Even though Level 3's bill was inaccurate and improper, AT&T took these steps in an effort to reduce potential billing disputes.

The disputed charges on this issue pre-dating January 1, 2019 have been resolved due to the parties' partial settlement dated June 26, 2019. However, Level 3 chose to revive the problem by instituting a new non-standard billing practice in March, 2020, prompting a dispute and withholding action that remains ongoing. Specifically, beginning in March, 2020, Level 3 suddenly eliminated the rate element surrogate it had introduced in 2017 for which AT&T had implemented an expensive accommodation. In place of the original non-tariffed rate element, Level 3 introduced another new, non-tariffed rate element. Level 3's bills identified, without explanation, this charge as 'transit local.' Level 3's interstate tariff for access services contains no charge for a service called "transit local." Accordingly, AT&T has no obligation to pay this billed charge. *See* 47 U.S.C. § 203 (a carrier's tariffs must "show[] all charges for itself," and no carrier "shall engage or participate in such communication unless schedules have been filed and published").

Although representatives of AT&T's CBO have repeatedly made requests to their counterparts at Level 3 for an explanation of the billing change and have requested that Level 3 reinstate the prior designation that AT&T had addressed, Level 3 has failed to respond to those

3

March 12, 2021

requests. Despite Level 3's failure to respond, AT&T has continued to make good faith partial payments where it could reasonably estimate the compensable element of the charge.

The amounts in dispute because of this non-tariffed charge since March, 2020 are significant. This change, coupled with the substantial traffic volume changes that accompanied the implementation of 'stay at home' and other measures related to the onset of the COVID-19 in March 2020, appears to account for approximately $8M of improper billing through the September 2020 invoice, an amount far in excess of the amount Level 3 has characterized as OTT over-withholding.

*Second*, AT&T's review has thus far uncovered several other categories of inappropriate charges in Level 3's bills. On these issues, Level 3's bills are inaccurate and do not comply with the applicable access charge rules, including the FCC's benchmark rules applicable to competitive local carriers. Because the charges that Level 3 seeks to impose are above the appropriate benchmark rates, Level 3 cannot validly bill for those charges pursuant to its tariffs –indeed, any rates above the benchmark are subject to mandatory detariffing.

Nevertheless, consistent with the practices described above, rather than withhold payment in full of these improper charges, AT&T has attempted to pay what it estimates is the appropriate amounts owed under the applicable rules, while also withholding relatively substantial amounts due to Level 3's inaccurate and unlawful charges. The areas in which Level 3's charges do not comply with the FCC's rules include, but are not limited to, the following:

- Level 3 has improperly billed intrastate tandem switching at an end office/tandem/transport composite rate.

- Level 3 has improperly billed intrastate switched access rates for interstate traffic or traffic that should be rated at interstate levels, resulting in overbilling.

- Level 3 has improperly billed end office termination charges despite those charges no longer applying pursuant to the FCC's regulations.

- Level 3 has improperly billed terminating tandem switching and transport charges for traffic terminating at its own and affiliate end offices.

- Level 3 has improperly billed mileage in excess of the mileage charges supported by its tariff.

For some of the outstanding disputes listed above, Level 3 appears to have identified and taken action to correct the billing prospectively, acknowledging its error. However, AT&T has not received any credits for the period in dispute.

In addition, comprehensive billing reconciliations undertaken in the recent past have consistently identified billing errors by Level 3 and have resulted in adjustments in AT&T's favor. This past experience suggests that, if the parties devoted the effort to a thorough reconciliation, additional errors would be found.

4

March 12, 2021

      Thus, the amounts that AT&T has withheld from Level 3 since January, 2020, include not merely the amounts related to the parties' OTT-VoIP dispute, but the disputes set forth herein (and in other prior correspondence between the parties). It is not accurate to say that all of the withheld amounts relate strictly to OTT-VoIP.

      As has been our practice in the past, AT&T is always interested in resolving ongoing disputes with Level 3, including the issues discussed above. In that respect, AT&T is willing to consider a settlement that encompasses both the OTT-VoIP dispute included in the litigation, as well as all other outstanding switched access disputes between our firms.[2] Alternatively, AT&T is willing to begin separate negotiations on these disputes, which are unrelated to the litigation. AT&T does not, however, accept either Level 3's attempt to inject these issues into the OTT-VoIP litigation or Level 3's assertions that any withholding not explicitly linked to the OTT issue is invalid.

      I would appreciate if you, or someone from your team, could contact me as soon as possible so that we can discuss the best way for our firms to move forward on these issues.

Sincerely,

*Alison Miller*

Alison Miller

cc:    Doug Widdoes
        Dan Umiker
        Kim Meola
        Ardell Burgess

---

[2] For clarification, AT&T and Level 3 have recently resolved two additional, non-related switched access disputes with Level 3 and CenturyLink, which were previously identified as the "Tandem Facility Dispute" and the "TX Mileage Dispute" included in the most recent 'global' settlement. Another dispute—known as the "Iowa Trunk Port" dispute— remains open and is being addressed in separate negotiations.