# EXHIBIT L

## To Declaration of Charles W. Steese



Charles W. Steese

**T** 720.200.0676   **F** 314.612.2378

csteese@atllp.com

April 2, 2021

Michael Hunseder
Justin A. Benson
Sidley Austin LLP
1501 K Street, N.W.
Washington, D.C. 200005
mhunseder@sidley.com
jbenson@sidley.com

> Re:   **AT&T Corp. v. Level 3 Communications, LLC, No. 1:18-cv-00112-RM-MEH (D. Colo.)**

> **SETTLEMENT DISCUSSION PROTECTED BY RULE 408, FED. R. EVID.**

Mike and Justin:

As you know, Judge Moore just issued his decision and validated everything that we have been saying for years. Level 3 is now entitled to $8.6 million through January 2021. Now that two additional months have passed, we anticipate that this number is approximately $9 million. Level 3 will insist that any settlement between the parties reflect Judge Moore's decision.

On March 12, 2021, AT&T sent Level 3 a letter stating that any settlement between the parties needed to reflect a series of new disputes. Level 3 is unpersuaded. For many years, the only disputes AT&T levied against Level 3's tariffed usage-based rates were for DEOT and OTT. In a meeting on August 8, 2018, Kim Meola informed Level 3 personnel that AT&T had withheld $9.2 million for OTT and was continuing to withhold approximately $300,000 per month for OTT. An IM exchange between Ed Stocker and Melissa Kellow from the exact date of the meeting confirms these facts. *See* Exhibit 1. From January 2019 forward, excluding late payment charges, AT&T has averaged withholding of $292,000 per month—perfectly in line with Ms. Meola's admission during the August 8, 2018 meeting.

AT&T's March 12 letter is a transparent attempt to justify AT&T's massive over-withholding. Each item identified in the letter is easily refutable.

ARMSTRONG TEASDALE LLP   |   4643 SOUTH ULSTER STREET, SUITE 800, DENVER, CO 80237   **T**   720.200.0676   **F**   720.200.0679   **ArmstrongTeasdale.com**

April 2, 2021
Page 2

**SETTLEMENT DISCUSSION PROTECTED BY RULE 408, FED. R. EVID.**

➢ The first issue listed in the letter is that Level 3 submits invoices that AT&T has difficulty analyzing. This is not a dispute, per se, but a request to issue invoices using a different format. As you know, Level 3 uses Communications Data Group (CDG), a national billing company, to issue its industry standard invoices.

➢ The second issue listed in the letter concerns a subject that AT&T claims arose in 2017 and was resolved, but according to AT&T, Level 3 revived in March 2020; specifically, Level 3's billing of "local transit." As Level 3 explained to AT&T in the past, Level 3 wanted the ability to track Tandem Connect and Toll-Free Interexchange Delivery Services separately from other switched access services. To allow this capability, rate elements of TMOU (Transit Minutes of Use) and TMOUD (Transit Minutes of Use Direct) were used. The TMOU and TMOUD rate elements collectively equate to tandem switching for the Tandem Connect and Toll-Free Interexchange Delivery services. This is entirely appropriate. AT&T delivers calls to Level 3 on Feature Group D trunks, which are clearly compensable under Level 3's access tariffs. Level 3 bills these minutes under the moniker "local transit" for these reasons. Just as importantly, AT&T did not raise the renewed March 2020 concerns until March 2021, so it could not have been a basis for historical withholding.

➢ The third and final issue listed by AT&T in its letter is set forth in bullets on page 4. AT&T did not raise these points with Level 3 until on or after January 2021. Moreover, AT&T has not produced (and we believe cannot produce) any documents establishing that AT&T withheld money for any of these new reasons before March 2021.

There are additional problems with the bullets listed on page 4 of AT&T's letter. As to the fourth bullet, Level 3 recently responded and established that AT&T is taking a diametrically different position on the subject from AT&T's past position. *See* Exhibit 2. Indeed, AT&T is billing others these exact same charges. As to the second bullet, Level 3 believes it concerns Level 3's billing of carrier common line ("CCL") in Texas. Level 3's total billings on BAN 4938 for CCL to AT&T over the last two years is a few thousand dollars. Finally, as to each of the bullets on page 4, AT&T sent Level 3 a series of spreadsheets in March 2021 containing no detailed explanation. While these charges could not have been the basis of historic withholding because AT&T never raised them before, if AT&T has a concern, Level 3 asks AT&T to identify the issue with precision as required by Level 3's tariff, so Level 3 can address the issues, either by rejecting the dispute or acknowledging it and providing appropriate credits.

The concerns AT&T raised in its March 12 letter are also contrary to AT&T's obligations under the dispute resolution provisions of Level 3's tariff, which states:

> [T]he Customer may dispute a bill in good faith only by written notice to the Company. . . . *Such claim must identify in detail the basis for the dispute, and if*

ARMSTRONG TEASDALE LLP

April 2, 2021
Page 3

**SETTLEMENT DISCUSSION PROTECTED BY RULE 408, FED. R. EVID.**

> *the Customer withholds disputed amounts, it must identify the account number under which the bill has been rendered, the date of the bill, and the specific items on the bill being disputed to permit the Company to investigate the merits of the dispute.*

Level 3 FCC Tariff No. 4, § 4.9(1), Third-Revised Page 26 (Eff. Dec. 29, 2011) (emphasis added). AT&T never identified any of the items from its March 12 letter as a basis for disputing invoices before 2021; thus, these items could not have been the reasons AT&T withheld monies from Level 3 in the past.

That takes us back to my March 9, 2021 email, which stated that "We stand ready to discuss settlement, but please know that Level 3 will continue to prepare for trial." Given the Court's recent decision, there are two options: (1) go to trial on damages, or (2) settle the dispute. If AT&T proceeds forward with trial, the evidence will overwhelmingly establish that the materials contained in AT&T's March 12, 2021 letter were not the basis of AT&T's historic withholding. The evidence will make clear that AT&T has not been disputing or withholding against Level 3's invoices in good faith.

It is time for AT&T to recognize the inevitable: that it owes Level 3 approximately $9 million. In addition, as of May 2021, Level 3's invoices will contain a credit assuming that 21% of its traffic is OTT (i.e., Level 3 will reduce its end office charges by 21% and supplant tandem switching charges in lieu of end office charges as AT&T recognized Level 3's interstate tariff permits). This eliminates all prospective issues on OTT and only leaves AT&T with its historic monetary obligation to Level 3.

Let us know if AT&T is prepared to enter into meaningful settlement discussions. If AT&T continues to make demands such as those set forth in the March 12 letter, Level 3 will prepare for trial.

Respectfully,

*Charles W. Steese*

Charles W. Steese

cws:

ARMSTRONG TEASDALE LLP