**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-RM

AT&T CORP.,

    Plaintiff/Counter Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC,

    Defendant/Counterclaimant,

and

BROADWING COMMUNICATIONS, LLC, GLOBAL CROSSING TELECOMMUNICATIONS, INC., and WILTEL COMMUNICATIONS, LLC

    Counterclaimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.

    Counterclaim Defendant

**AT&T MOTION IN LIMINE TO EXCLUDE EVIDENCE OF
LEVEL 3'S CLAIMED LATE PAYMENT CHARGES, OR,
IN THE ALTERNATIVE, AT&T MOTION TO STRIKE**

Plaintiff/Counterclaim Defendant AT&T Corp. ("AT&T"), by and through undersigned counsel, respectively moves this Court to exclude evidence that Defendant/Counterclaimant Level 3 Communications, LLC ("Level 3") (AT&T and Level 3, collectively the "Parties") intends to introduce in support of a claim for damages that are not recoverable pursuant to the breach of

1

contract claim that it has asserted in this litigation. In the alternative, AT&T moves this Court to strike Level 3's damages for late payment charges allegedly owed under its Tariff.

Pursuant to D.C. Colo. LCivR 7.1(a), the undersigned certifies that he has conferred with counsel for Defendant and Defendant opposes the relief sought in this Motion.

## INTRODUCTION

In the wake of this Court's Order on cross-motions for summary judgment (ECF No. 204), the principal issue remaining for trial is how much Level 3 can collect from AT&T on Level 3's breach of contract counterclaim for amounts that Level 3 contends AT&T improperly withheld under the Parties' 2015 Release and Settlement Agreement ("2015 Agreement"). As the Court is aware, the Parties have historically disputed how much Level 3 can bill and how much AT&T owes for one specific type of switched access charge—"end office switching"—that Level 3 improperly billed on "over-the-top" Voice over Internet Protocol ("OTT VoIP") calls.

Count I of Level 3's Amended Counterclaims, ECF No. 124, ¶¶ 60–71, asserts a breach of contract claim against AT&T for end office switching access charges based on the Parties' 2015 Agreement. But Level 3 seeks to inflate its damages well beyond those available through its breach of contract claim. Specifically, Level 3 hopes to recover an exorbitant amount of late payment charges—compounded 18% per annum. ECF No. 124 ¶¶ 71, 113. But those late payment charges are nowhere to be found in the 2015 Agreement, and instead are drawn from Level 3's Tariff, attached as Exhibit 2 to the Declaration of Justin A. Benson. *See* Level 3 Tariff F.C.C. No. 4 (the "Tariff"), § 4. Those penalty provisions are simply inapplicable to Level 3's breach of contract claim.

2

The 2015 Agreement obligated AT&T to pay Level 3's "applicable switched access tariffed rate." ECF No. 15-1, 2015 Agreement, at § 1(a)(ii). And that specific phrase includes only the "applicable switched access tariffed *rate* for OTT traffic" set forth in Section 15 of Level 3's Tariff. *Id.* (emphasis added). The 2015 Agreement does not reference—much less incorporate—any other provision of Level 3's Tariff, including its late penalty provisions. Not only is Level 3 attempting impermissibly to re-write the 2015 Agreement, Level 3's new interpretation is inconsistent with the Tariff itself, which shows that "rates" are not synonymous with "Tariff."

Indeed, if the 2015 Agreement incorporated Level 3's Tariff in whole, then Level 3 could not have successfully relied on the 2015 Agreement to retain 50% of its end office switching overcharges through February, 2020. Absent the 2015 Agreement, and under its Tariff, Level 3 would have been obligated to make a full refund. *See* Order on Remand and Declaratory Ruling, *In the Matter of Connect America Fund*, 34 FCC Rcd. 12692 (Dec. 17, 2019). Level 3 cannot have it both ways: it cannot retain half of the overcharges based on its view that the 2015 Agreement trumps its Tariff, and then claim the Tariff trumps the 2015 Agreement when it comes to late payment penalties.

## BACKGROUND

Count I of the Amended Counterclaims of Defendant Level 3 Communications ("Counterclaim") is a breach of contract claim for recovery of amounts over-withheld by AT&T for end office switching access charges based on the Parties' 2015 Agreement. ECF No. 124 ¶¶

3

60-71.[1]  Notably, that Counterclaim does *not* seek to collect all amounts that Level 3 claims are properly billed under its tariffs.[2]  Instead, it brought a breach of contract claim under the 2015 Agreement.

Nonetheless, Level 3 now seeks to introduce inadmissible evidence to establish that it is entitled to late payment penalties—which it claims are owed under its switched access Tariff— and not merely damages arising from the breach of the 2015 Agreement it pled in its Counterclaim. In its damages disclosure, attached as Exhibit 1 to the Declaration of Justin A. Benson, Level 3 claims that AT&T owes approximately ▮▮▮▮▮▮ in late payment penalties.  To calculate this amount, Level 3 applied a late payment penalty of 1.5% per month (18% per year) on moneys that AT&T allegedly withheld.  Level 3 appears to have applied this late payment penalty because its Tariff provides for such a penalty when a customer fails to pay properly billed tariffed charges. *See* Tariff, §§ 4.2.6; 4.9(4).  Because such damages are not available for breach of the 2015 Agreement, and to streamline the proceedings in this matter, AT&T requests that the Court exclude

---

[1] The Court entered summary judgment as to Level 3's Count II regarding the meaning of the 2015 Agreement.  ECF No. 204 at 7.  Counts III through VI allege that AT&T's affiliate (TCG) improperly billed end office charges to Level 3 and to its affiliated counter-plaintiffs.  ECF No. 124 ¶¶ 81–94.  Those counts are not related to the instant motion and, since they relate to amounts TCG allegedly improperly billed Level 3, cannot serve as a basis for Level 3 to collect late payment charges from AT&T.

[2] Collection actions for tariffed charges are common in the telecommunications industry, and Level 3 certainly is familiar with them.  *See, e.g.*, *Connect Insured Tel. v. Qwest Long Distance*, No. 3:10–CV–1897–D, 2012 WL 2995063, at *13 (N.D. Tex. July 23, 2012) ("a collection action . . . seeks damages in the total amount of tariffed charges [a carrier] is allegedly owed in accordance with its tariff."); *Iowa Network Services v. Level 3 Communications*, No. 15–cv–00698–REB– MJW, 2015 WL 9900239, at *2 (D. Colo. July 21, 2015) (Level 3 does not "dispute that an action can be brought to enforce the tariff").

4

all evidence and argument related to late payment penalties or strike the late payment penalties from Level 3's damages claim.

## LEGAL STANDARD

Motions in limine "enable the court 'to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Michael v. Rocky Mountain Festivals, Inc.*, No. 1:16-cv-02969-SKC, 2019 WL 10011881, at *1 (D. Colo. July 19, 2019) (quoting *United States v. Cline*, 188 F. Supp. 2d 1287, 1291 (D. Kan. 2002)). Such motions benefit both the court and the parties by "narrow[ing] the evidentiary issues for trial." *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 09–cv–00970–PAB–KMT, 2014 WL 348637, at *2 (D. Colo. Jan. 31, 2014) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)). Motions should be used "to eliminate from further consideration evidentiary submissions that clearly ought not be presented [at trial] because they clearly would be inadmissible for any purpose." *Dry Clean Super Ctr., Inc. v. Kwik Indus., Inc.*, No. 08–cv–00578–WJM–CBS, 2012 WL 503510, at *4 (D. Colo. Feb. 15, 2012) (quoting *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

AT&T acknowledges that this Court "discourage[s]" motions in limine "when the motion is evidence-driven and cannot be resolved until evidence is presented at trial, or when trial is to the Court." J. Moore L. Rule IV(L). Given the clear irrelevance of damages for late payment charges which are not recoverable under Level 3's breach of contract counterclaim, the inadmissibility of this evidence can be resolved now, either by excluding that evidence or striking the late payment charges from Level 3's damages claim, further narrowing the disputes between the Parties.

5

# ARGUMENT

**I.  LEVEL 3 CANNOT SEEK TARIFF-BASED LATE PAYMENT CHARGES PURSUANT TO ITS BREACH OF CONTRACT CLAIM**

Level 3 should be precluded from presenting any evidence or argument related to late payment charges at trial because such amounts are not recoverable as damages for breach of the 2015 Agreement. The 2015 Agreement does not incorporate the entirety of the Tariff or otherwise entitle Level 3 to late payment charges.

**A.  The 2015 Agreement Only Required AT&T To Pay Level 3's "Applicable Switched Access Tariffed Rate," Not Tariffed Late Payment Charges.**

In the 2015 Agreement, the Parties agreed that AT&T would pay Level 3's "applicable switched access tariffed rate." That "rate" does not include late payment charges.

Fundamental principles of contract interpretation require courts to look to "the intent of the parties" to discern a contract's meaning. *Slatt v. Slatt*, 477 N.E.2d 1099, 1100 (N.Y. 1985).[3] "Where the intention of the parties is clearly and unambiguously set forth, effect must be given to the intent as indicated by the language used." *Id.* In other words, "[t]he best evidence of what parties to a written agreement intend is what they say in their writing." *Slamow v. Del Col*, 594 N.E.2d 918, 919 (N.Y. 1992). Further, under New York contract law, "if parties to a contract omit terms—particularly, terms that are readily found in other, similar contracts—the inescapable conclusion is that the parties intended the omission." *Quadrant Structured Prod. Co. v. Vertin*, 16

---

[3] Per the terms of the 2015 Agreement, Level 3's breach of contract claim is governed by New York law. *See* 2015 Agreement, § 5 ("This Agreement shall be construed in accordance with and be governed by the laws of the State of New York, not including its choice of law principles.").

N.E.3d 1165, 1172 (N.Y. 2014). And as directly applicable here, "[u]nder accepted canons of contract construction, when certain language is omitted from a provision but placed in other provisions, it must be assumed that the omission was intentional." *Sterling Inv. Servs., Inc. v. 1155 Nobo Assocs., LLC*, 818 N.Y.S.2d 513, 516 (N.Y. Sup. Ct. 2006); *see also U.S. Fid. & Guar. Co. v. Annunziata*, 492 N.E.2d 1206, 1208 (N.Y. 1986); *Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Cap., Inc.*, 821 F.3d 297, 310 (2d Cir. 2016).

Here, what the Parties said in their writing is clear. That is, the Parties agreed that AT&T would pay Level 3 its "applicable switched access tariffed *rate* for OTT traffic." 2015 Agreement, § 1(a)(ii) ("For switched access traffic exchanged by the Parties beginning on June 1, 2015, AT&T shall pay Level 3 its applicable switched access tariffed rate for OTT traffic, pursuant to the terms of the OTT Declaratory Order.") (emphasis added and deleted). The phrase "applicable switched access tariffed rate" does not include late payment charges. That is evident from the fact that the 2015 Agreement specifically mentions "late payment charges" in other clauses not applicable to this suit. For example, in one provision which is inapplicable to what AT&T agreed to pay in regards to the issues in this litigation, the 2015 Agreement states that "[i]n settlement of the OTT Dispute AT&T agrees to pay Level 3 . . . [approximately ███████] which is ████████ ███ of the usage and *late payment charges* billed by Level 3 for the traffic exchanged by the Parties through March 2015 that is the subject of the OTT Dispute." *Id.* at § 1(a)(i)-(i)(A) (emphasis added). The same provision continues: "The Parties recognize that . . . the calculation of usage and *late payment charges* included in the total amount of charges identified in this Section 1(a)(i)(A) may vary from the actual amount owed once all billing is complete." *Id.* (emphasis added).

7

Conversely, the provision under which Level 3 now seeks damages does not mention late payment charges; it refers only to "rates." That provision says, in relevant part, that "[f]or switched access traffic exchanged by the Parties beginning on June 1, 2015, AT&T shall pay Level 3 its applicable switched access tariffed rate for OTT traffic, pursuant to the terms of the OTT Declaratory Order." *Id.* at § 1(a)(ii). In other words, AT&T and Level 3 omitted the term "late payment charges" from the contract provision relating to future payments for OTT traffic but placed the same phrase in another provision only three paragraphs earlier. "[I]t must be assumed that the omission was intentional," and that, therefore, the Parties sought to exclude Level 3's tariffed late payment penalties from the post-June 2015 aspects of their agreement. *See Sterling Inv. Servs.*, 818 N.Y.S.2d at 516 (finding that language used in one section of a contract could not be used to interpret another section of the contract that used different phrasing). The Parties' omission of late payment charges from the relevant provision of the 2015 Agreement shows that they did not intend to include such amounts in what AT&T was to pay in regards to the issues in this litigation. Accordingly, evidence or argument relating to late payment charges allegedly owed by AT&T pursuant to the Tariff are irrelevant, and should be excluded from the trial, or struck from Level 3's damages claims, to streamline these proceedings.

That should be the end of the matter.

**B.     To The Extent Level 3 Argues Tariffed Late Payment Charges Should Be Read Into The 2015 Agreement, Its Argument Is Inconsistent With The Tariff Itself.**

The Parties did not incorporate late payment charges into the phrase "applicable switched access tariffed rate," and any contrary argument that it does is inconsistent with Level 3's own Tariff. The Tariff separates "rates," on one hand, and "late payment charges," on another; and it

8

maintains this distinction by referring to the two distinct concepts in completely different sections of the Tariff.

First, the Tariff makes clear that the term "applicable switched access tariffed *rate*" refers to a specific monetary amount attached to a discrete switched access service, as set forth in Section 15—"Rates and Charges"—of Level 3's Tariff. *See* Tariff, § 15. Then, Section 15.1—"Rates for Switched Access Service"—specifically sets the rates for all switched access services that Level 3 provides, and it clarifies that there are only "three types of rates and charges that apply to Switched Access Service." *Id.* at § 15.1 (late payment penalties are not listed). Having defined the applicable rate categories, Section 15 of the Tariff further describes the different "rates and charges" applicable to individual switched access services. *Id.* at § 15.1.3. These include, among others, "Local End Office Switching Rates." *Id.* at § 15.1.3.4.2. Despite all the detail included in Section 15, that portion of the Tariff is completely silent as to penalties for late payment.

Instead, late payment charges are found in a wholly separate section of Level 3's Tariff. That section is Section 4, entitled "Payment Arrangements." *See id.* at §§ 4.2.6; 4.9(4). There is no basis to incorporate this provision into the 2015 Agreement.

The Tariff provides further support for reading the term "rates" narrowly. In its first sentence, the Tariff states that "[t]his Tariff *contains* the regulations *and rates applicable to interstate switched access services*." Tariff at 5 (emphases added); *see also id.* ("The rates and regulations *contained in* this Tariff") (emphasis added). In addition to regulations and rates, the Tariff includes "terms and conditions." *Id.* The most natural reading of these phrases, therefore, is that the Tariff encompasses, but is not co-extensive with, the less inclusive category of "rates." *See id.* at 6 ("When terms used in this tariff are not specifically defined, they are intended to be

9

understood as conveying the meaning they are normally given within the United States telecommunications industry (including with reference to the Commission's rules), or, if no such specific meaning exists, their normal English meaning."). Were it otherwise, it would be more natural to say the "Tariff *is* the rates applicable to interstate switched access services." The Tariff does not say that. Further, the Tariff maintains the distinction between "rates" and other concepts—including the Tariff as a whole—throughout the document. In doing so, it repeatedly refers to Section 15 for the applicable "rates" for various switched access services.[4]

Finally, had the Parties wanted to incorporate Level 3's entire Tariff into the 2015 Agreement—including Section 4's late payment penalties—they could have done so. But that was not their intent, and if it had been, they would have specified that "AT&T will pay pursuant to the terms and conditions of Level 3's entire Tariff." They did not. That being so, and because "[t]he best evidence of what parties to a written agreement intend is what they say in their writing," *Slamow*, 594 N.E.2d at 919, late payment penalties, while part of Level 3's Tariff, are *not* part of the "applicable switched access tariffed *rate[s]*," that AT&T agreed to pay in the 2015 Agreement. *See* 2015 Agreement, § 1(a)(ii) (emphasis added). They are, therefore, not recoverable pursuant

---

[4] *See* Tariff, § 3.4.6 ("VoIP-PSTN Traffic identified in accordance with this tariff section will be *billed at rates* equal to the Company's applicable *tariffed interstate switched access rates as set forth in Section 15*") (emphases added); § 14.1 (specifying that "[r]ates and charges [for switched access service] are *set forth in Section 15*. The application of *rates* for Switched Access Service is *described in Section 15.1.3.4*.") (emphases added); § 14.2.3.1 (specifying that "charges [for local connect switched access service] are set out in Section 15.1.3.4.11 of this Tariff"); § 14.2.3.3 ("Customer will pay Company for End Office switching and port charges, and carrier common line charges, as set forth in Section 15.1.3.4.1 and Section 15.1.3.4.2"); § 10 ("Application of Rates"); § 13.3.1 ("rates and charges as set forth in 15.1.3 following."); § 13.3.2 ("rates and charges as set forth in 15.1.3.4 following apply to interstate Switched Access Service access minutes."); § 13.9.1 ("charges will be billed to each Switched Access Service provided further under this Tariff, in accordance with the rates as set forth in Section 15.1.3.4 following.").

to Level 3's breach of contract claim. As such, evidence or argument related to late payment penalties under Section 4 of the Tariff are irrelevant to Level 3's breach of contract claim, and should, therefore, be excluded from trial or struck from Level 3's damages claim. *See Godfrey v. CSAA Fire & Cas. Ins. Co.*, No. CIV-19-00329-JD, 2020 WL 1056306, at *1–5 (W.D. Okla. Mar. 4, 2020) (granting defendants' motions in limine to exclude irrelevant evidence).

## CONCLUSION

For the foregoing reasons, the Court should grant AT&T's motion in limine to exclude all evidence and argument of late payment penalties, or in the alternative, its motion to strike. Respectfully submitted this 7th day of May, 2021.

By: /s/ Justin A. Benson

Rebecca B. DeCook
Andrew T. Flynn
Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1027
becky.decook@moyewhite.com
andrew.flynn@moyewhite.com

Michael J. Hunseder
Michael D. Warden
Justin A. Benson
Joshua W. Moore
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
mhunseder@sidley.com
mwarden@sidley.com
jbenson@sidley.com
joshua.moore@sidley.com

*Attorneys for Plaintiff AT&T Corp. and Counterclaim Defendant Teleport Communications Group*

## CERTIFICATE OF SERVICE

I, Justin A. Benson, hereby certify that on May 7, 2021 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Charles W. Steese, #26924
Douglas N. Marsh, #45964
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
Email: csteese@armstrongteasdale.com
Email: dmarsh@armstrongteasdale.com

*Attorneys for Defendant Level 3 Communications, LLC*

/s/ Justin A. Benson
Justin A. Benson
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
E-mail: jbenson@sidley.com

*Attorney for Plaintiff AT&T Corp. and Counterclaim Defendant Teleport Communications Group*