# EXHIBIT 2

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Title Page
Replaces Original Title Page

REGULATIONS AND SCHEDULE OF

CHARGES APPLICABLE TO INTERSTATE AND INTERNATIONAL

SWITCHED ACCESS SERVICES

FURNISHED BY LEVEL 3 COMMUNICATIONS, LLC

AND ITS CONCURRING CARRIERS BETWEEN

POINTS IN THE UNITED STATES AND

BETWEEN POINTS IN THE UNITED STATES AS SPECIFIED HEREIN

Issued:  May 7, 2002                                           Effective:  May 8, 2002

Issued by:        Thomas C. Stortz, Group Vice President and General Counsel
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Twenty-Seventh Revised Page 1
Replaces Twenty-Sixth Revised Page 1

## CHECK SHEET

Current pages in this tariff are as follows:

| PAGE | REVISION | PAGE | REVISION | PAGE | REVISION |
|------|----------|------|----------|------|----------|
| Title | 1st Revised | 20 | 2nd Revised | 45 | 3rd Revised |
| 1 | 27th Revised * | 21 | 4th Revised * | 46 | 2nd Revised |
| 1.1 | Original * | 21.1 | Original | 47 | 2nd Revised * |
| 2 | 4th Revised * | 21.2 | 1st Revised | 48 | 2nd Revised * |
| 2.1 | Original * | 21.3 | Original | 49 | 3rd Revised |
| 3 | 4th Revised * | 21.4 | 1st Revised | 50 | 4th Revised * |
| 3.1 | Original * | 22 | 3rd Revised | 50.1 | 3rd Revised * |
| 4 | 1st Revised | 23 | 2nd Revised | 50.2 | 3rd Revised * |
| 5 | 1st Revised | 24 | 2nd Revised | 50.3 | 1st Revised * |
| 6 | 3rd Revised | 25 | 2nd Revised | 50.4 | Original * |
| 6.1 | 1st Revised | 26 | 3rd Revised | 50.5 | Original * |
| 6.2 | 1st Revised * | 26.1 | Original | 50.6 | Original * |
| 7 | 5th Revised * | 27 | 2nd Revised | 51 | 3rd Revised |
| 7.1 | Original | 28 | 3rd Revised | 52 | 6th Revised * |
| 8 | 3rd Revised * | 29 | 1st Revised | 52.1 | 3rd Revised |
| 9 | 3rd Revised | 30 | 3rd Revised | 52.2 | 1st Revised |
| 10 | 1st Revised | 31 | 1st Revised | 52.3 | 1st Revised |
| 11 | 1st Revised | 32 | 1st Revised | 53 | 4th Revised |
| 12 | 1st Revised | 33 | 1st Revised | 54 | 4th Revised * |
| 13 | 1st Revised | 34 | 1st Revised | 55 | 7th Revised * |
| 14 | 1st Revised | 35 | 2nd Revised | 55.1 | Original * |
| 15 | 1st Revised | 36 | 2nd Revised | 56 | 3rd Revised * |
| 16 | 1st Revised | 37 | 2nd Revised | 57 | 6th Revised |
| 17 | 1st Revised | 38 | 2nd Revised | 58 | 10th Revised * |
| 18 | 2nd Revised * | 39 | 2nd Revised | 59 | 14th Revised * |
| 19 | 3rd Revised * | 40 | 2nd Revised | 60 | 16th Revised * |
| 19.1 | 1st Revised * | 41 | 2nd Revised | 61 | 14th Revised |
| 19.2 | 1st Revised * | 42 | 1st Revised | 62 | 14th Revised * |
| 19.3 | Original * | 43 | 1st Revised | 63 | 12th Revised |
| 19.4 | Original * | 44 | 2nd Revised | 64 | 12th Revised |

* - indicates those pages included with this filing

Issued:  July 17, 2018                                                      Effective:  July 18, 2018

Issued by:       General Counsel – Regulatory Policy
                 Level 3 Communications, LLC
                 1025 Eldorado Boulevard
                 Broomfield, CO 80021                          Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Original Page 1.1

---

## CHECK SHEET

Current pages in this tariff are as follows:

| PAGE | REVISION | PAGE | REVISION | PAGE | REVISION |
|------|----------|------|----------|------|----------|
| 64.1 | Original | 69 | 10th Revised | 80 | 11th Revised |
| 64.2 | Original | 70 | 10th Revised * | 80.1 | 3rd Revised * |
| 64.3 | 1st Revised * | 71 | 10th Revised * | 81 | 9th Revised * |
| 64.4 | Original | 72 | 10th Revised * | 81.1 | Original * |
| 65 | 8th Revised | 73 | 11th Revised * | 82 | 9th Revised * |
| 66 | 9th Revised * | 74 | 12th Revised * | 82.1 | Original * |
| 67 | 9th Revised | 75 | 14th Revised * | 83 | 8th Revised * |
| 68 | 12th Revised | 76 | 9th Revised | 84 | 1st Revised * |
| 68.1 | Original | 77 | 10th Revised | 85 | Original |
| 68.2 | Original | 78 | 10th Revised | 86 | 2nd Revised |
| 68.3 | 1st Revised * | 79 | 10th Revised * | 87 | Original |
| 68.4 | 1st Revised * | | | | |

\* - indicates those pages included with this filing

---

Issued:  July 17, 2018

Effective:  July 18, 2018

Issued by:        General Counsel – Regulatory Policy
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021               Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Fourth Revised Page 2
Replaces Third Revised Page 2

**TABLE OF CONTENTS**

<u>**Description**</u>                                                                          <u>**Page Number**</u>

Title Page        Title Page
Check Sheet    1
Table of Contents     2
Explanation of Symbols        4
Application of Tariff   5

**SECTION**

SECTION 1 – DEFINITION OF TERMS     6

SECTION 2 – UNDERTAKING OF THE COMPANY        8

    2.1 General 8
    2.2 Description of Service   8
    2.3 Application for Service  8
    2.4 Shortage of Equipment or Facilities        8
    2.5 Terms of Conditions       9
    2.6 Liability of the Company        9
    2.7 Notification of Service – Affecting Activities       11
    2.8 Provision of Equipment and Facilities       11
    2.9 Nonroutine Installation  13
    2.10        Ownership of Facilities  13
    2.11        Optional Rates and Information Provided to the Public    13
    2.12        Continuity of Service      13
    2.13        Governmental Authorizations      13

SECTION 3 – OBLIGATIONS OF THE CUSTOMER   15

    3.1 General 15
    3.2 Prohibited Uses 16
    3.3 Claims  17
    3.4 Jurisdictional Reporting 17

(M)
|
(M)

(M)        Material moved to Page 2.1.

Issued:  July 17, 2018                                                                 Effective:  July 18, 2018

Issued by:        General Counsel – Regulatory Policy
               Level 3 Communications, LLC
               1025 Eldorado Boulevard
               Broomfield, CO 80021                                     Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Original Page 2.1

---

## TABLE OF CONTENTS (CONT'D)

**DESCRIPTION**                                                        **PAGE NUMBER**

SECTION 4 – PAYMENT ARRANGEMENTS       20                                                    (M)

    4.1 Payment of Service        20
    4.2 Billing and Collection of Charges         20
    4.3 Advance Payments        22
    4.4 Deposits        22
    4.5 Discontinuance of Service        24
    4.6 Cancellation of Application of Service    25
    4.7 Changes in Service Requested    26
    4.8 Taxes    26
    4.9 Disputed Bills    26

SECTION 5 – USE OF CUSTOMER'S SERVICE BY OTHERS 27

    5.1 Resale and Sharing        27
    5.2 Joint Use Arrangements 27
    5.3 Transfers and Assignments        27                                            (M)

(M)      Material moved from Page 2.

---

Issued:  July 17, 2018                                                  Effective:  July 18, 2018

Issued by:        General Counsel – Regulatory Policy
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021                          Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Fourth Revised Page 3
Replaces Third Revised Page 3

## TABLE OF CONTENTS (CONT'D)

<u>**DESCRIPTION**</u>                                                                 <u>**PAGE NUMBER**</u>

SECTION 6 – CANCELLATION OF SERVICE     28

SECTION 7 – NOTICES AND COMMUNICATIONS     29

SECTION 8 – CUSTOMER EQUIPMENT AND CHANNELS     30

    8.1 General 30
    8.2 Station Equipment     30
    8.3 Interconnection of Facilities     30
    8.4 Tests and Adjustments     31
    8.5 Inspections     31

SECTION 9 – ALLOWANCES FOR INTERRUPTIONS IN SERVICE  32

    9.1 General 32
    9.2 No credit allowance will be made for:     33

SECTION 10 – APPLICATION OF RATES     34

    10.1     Distance-Based Charges 34

SECTION 11 – SPECIAL CONSTRUCTION AND SPECIAL ARRANGEMENTS     35

    11.1     Special Construction     35
    11.2     Basis for Charges     35
    11.3     Basis for Cost Computation     35
    11.4     Termination Liability     36

SECTION 12 – ORDERING OPTIONS FOR SWITCHED ACCESS SERVICE  38

    12.1     General 38
    12.2     Access Order     39

(M)

(M)     Material moved to Page 3.1.

---

Issued:  July 17, 2018                                                 Effective:  July 18, 2018

Issued by:     General Counsel – Regulatory Policy
             Level 3 Communications, LLC
             1025 Eldorado Boulevard
             Broomfield, CO 80021                              Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Original Page 3.1

## TABLE OF CONTENTS (CONT'D)

**DESCRIPTION**                                                                 **PAGE NUMBER**

SECTION 13 – CARRIER COMMON LINE SERVICE      45                                  (M)

    13.1       General Description       45
    13.2       Limitations       45
    13.3       Undertaking of the Company       45
    13.4       Obligation of the Customer       46
    13.5       Determination of Usage Subject to Carrier Common Line Access Charges
               46
    13.6       Measuring and Recording of Call Detail 46                          (N)
    13.7       Supervision       46                                               (T)
    13.8       Billing of Charges       47                                        (T)
    13.9       Determination of Charges       47

SECTION 14 – SWITCHED ACCESS SERVICE      49

    14.1       General 49
    14.2       Provision and Description of Switched Access Service Agreements       49
    14.3       Obligations of Company       53
    14.4       Obligations of the Customer       54

SECTION 15 – RATES AND CHARGES      55

    15.1       Rates for Switched Access Services       55
    15.2       Non-routine Installation/Maintenance Charges       86             (M)
    15.3       Individual Case Basis Arrangements       86                       (N)
    15.4       Federal Universal Service Fee       86                            (N)
    15.5       Promotional and Temporary Rates       86

*Effective December 24, 2010, "National Feature Group D Access" service, offered under Section 14.2 of this Tariff, is no longer available to any customer who is not a customer of that service as of December 24, 2010.  Effective December 24, 2010, existing customesr of "National Feature Group D Access" service may not make additions, moves or changes this service or submit any new orders for this service.

(M)    Material moved from Page 3.

Issued:  July 17, 2018                                         Effective:  July 18, 2018

Issued by:      General Counsel – Regulatory Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021                      Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 4
Replaces Original Page 4

EXPLANATION OF SYMBOLS

The following symbols shall be used in this tariff for the purposes indicated below.

C -       To signify a changed regulation

D -       To signify a discontinued rate or regulation

I  -       To signify a rate increase

M -       To signify a matter moved or relocated without change

N -       To signify a new rate or regulation

R -       To signify a rate reduction

S -       To signify a reissued matter

T -       To signify a change in text but no change in rate, regulation or charge

Z -       To signify a correction

Issued:  May 7, 2002                                    Effective:  May 8, 2002

Issued by:       Thomas C. Stortz, Group Vice President and General Counsel
                 Level 3 Communications, LLC
                 1025 Eldorado Boulevard
                 Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 5
Replaces Original Page 5

## APPLICATION OF TARIFF

This Tariff contains the regulations and rates applicable to interstate switched access services provided by Company within the contiguous United States and between points within the contiguous United States and international points.  Company's services are furnished subject to the availability of facilities and subject to the terms and conditions of this Tariff.

The rates and regulations contained in this Tariff apply only to the services furnished by Company and do not apply, unless otherwise specified, to the lines, facilities, or services provided by a local exchange telephone company or other common carrier for use in accessing the services of Company.

The Customer is entitled to limit the use of Company's services by end users at the Customer's facilities, and may use other common carriers in addition to or in lieu of Company.

Issued:  May 7, 2002                                                        Effective:  May 8, 2002

Issued by:       Thomas C. Stortz, Group Vice President and General Counsel
                 Level 3 Communications, LLC
                 1025 Eldorado Boulevard
                 Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Third Revised Page 6
Replaces Second Revised Page 6

## SECTION 1 - DEFINITION OF TERMS

Certain terms used generally throughout this tariff for Communications Service of the Company are defined below.  The definitions below apply whether or not the defined term is capitalized in this tariff, although for the convenience of the Customer the Company has endeavored to identify the use of defined terms by capitalizing them where they occur.  Where a term defined in this tariff is also defined in the Commission's rules (including without limitation Section 69.2 of those rules), the term in this tariff is to be construed in a manner that is consistent with the definition in the Commission's rules, subject to Section 61.26(a) of those rules, under which access services provided by a competitive local exchange carrier (such as the Company) are construed to include services and functions that are the functional equivalent of access services provided by an incumbent local exchange carrier.  When terms used in this tariff are not specifically defined, they are intended to be understood as conveying the meaning they are normally given within the United States telecommunications industry (including with reference to the Commission's rules), or, if no such specific meaning exists, their normal English meaning.

(T)
(N)

(N)

   Advance Payment:  Part or all of a payment required before the start of service.

   Authorized User: A person, firm or corporation which is authorized by the Customer or Joint User to be connected to the service of the Customer or Joint User, respectively.

   Bit:  The smallest unit of information in the binary system of notation.

   Commission:  Federal Communications Commission.

   Company:  Level 3 Communications, LLC, the issuer of this tariff.

   Connection to the PSTN: Any service or facility provided by a carrier that provides the purchaser of the service or facility with the ability to send calls to the PSTN, and to receive calls from the PSTN, based on one or more standard telephone numbers which are assigned by that carrier to the service or facility and which are listed in the database of the Number Portability Administration Center as assigned to that carrier.

(N)

(N)

   Customer:  The person, firm or corporation which purchases service and is responsible for the payment of charges and compliance with the Company's regulations.

   Direct Trunked Transport:  The term "Direct Trunked Transport" refers to any service or arrangement provided by the Company that, in the context of the Company's network configuration, is functionally equivalent to the facilities and/or services normally referred to as "direct trunked transport" when purchased in connection with switched access services provided by an incumbent local exchange carrier.  The term generally refers to transport dedicated to the use of a single Customer without switching at a tandem Switch, between the Serving Wire Center and an End Office, or between two Customer-designated End Offices.  Depending on the specific arrangements provided to a customer, Direct Trunked Transport may consist of a connection between the Customer's location and/or the Serving Wire Center, and a Company tandem switch.

(N)

(N)

   Certain material previously appearing on this page now appears on Original Page 6.1.

Issued:  October 13, 2011

Effective:  October 14, 2011

Issued by:   Vice President of Public Policy
         Level 3 Communications, LLC
         1025 Eldorado Boulevard
         Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 6.1
Replaces Original Page 6.1

**SECTION 1 - DEFINITION OF TERMS (CONT'D)**

End Office:  The term "End Office" denotes the switching system office or serving wire center (or functionally equivalent or analogous facilities) from which End Users receive exchange service.  By way of example, system(s) or facility (ies) in a carrier's network which host telephone numbers listed in the database of the Number Portability Administration Center as assigned to the carrier, constitute an "End Office."

End Office Access Service:  For the purpose of this tariff, End Office Access Service shall                (N)
mean: (1) The switching of access traffic at the carrier's end office switch and the delivery of such traffic to or from the called party's premises; (2) The routing of interexchange telecommunications traffic to or from the called party's premises, either directly or via contractual or other arrangements with an affiliated or unaffiliated entity, regardless of the specific functions provided or facilities used; or (3) Any  functional equivalent of the incumbent local exchange carrier access service provided by Company including local switching, the carrier common line rate elements, and intrastate access services.  End Office Access Service rate elements for Company includes any functionally equivalent access service. (4)  The origination and termination of interexchange telecommunications traffic to any end user, either directly or via contractual or other arrangements with an affiliated or unaffiliated provider of interconnected VoIP service, as defined in 47 U.S.C. § 153(25), or a non-interconnected VoIP service, as defined in 47 U.S.C. § 153(36), that does not itself seek to collect reciprocal compensation charges prescribed by this subpart for that traffic, regardless of the specific functions provided or facilities used.                                (N)

End User: For purposes of this Tariff, the term "End User" means any person, corporation, partnership, or any other entity that purchases a service or facility from a Local Exchange Carrier (including the Company) that has one or more North American Numbering Plan numbers associated with the service, which numbers are listed in the database of the Number Portability Administration Center as assigned to the Local Exchange Carrier, and which are used to switch traffic to and/or from the service.  By way of example and not limitation, an End User may include an individual, a small or medium-sized business, a business that purchases connection(s) for a PBX or functionally equivalent or analogous equipment, a dial-up Internet Service Provider, and/or a provider of interconnected VoIP service (as that term is defined in the Commission's rules) that obtains its Connection to the PSTN from the Local Exchange Carrier.

Entrance Facility:  The term "Entrance Facility" refers to any service or arrangement provided by the Company that, in the context of the Company's network configuration, is functionally equivalent to facilities and/or services normally referred to as "entrance facilities" when purchased in connection with switched access services provided by an incumbent local exchange carrier.  The term generally refers to transport from the Customer's point of demarcation to the Serving Wire Center (or functionally equivalent facility/location on the Company's network).   Depending on the specific arrangements provided to a customer, an Entrance Facility may consist of a connection between the Customer's location and a Company tandem switch.  Under this Tariff an Entrance Facility will normally be purchased in connection with Direct Trunked Transport.

Certain material previously appearing on this page now appears on Original Page 6.2.

Issued:  December 28, 2011                                          Effective:  December 29, 2011

Issued by:        Vice President of Public Policy
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021                              Filed under Transmittal No. 1

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 6.2
Replaces Original Page 6.2

**SECTION 1 - DEFINITION OF TERMS (CONT'D)**

Individual Case Basis (ICB):  A service arrangement in which the regulations, rates and charges are developed based on the specific circumstances of the case.

Interconnect Carrier:   Any carrier that connects to Company's network for exchange of communications traffic.

Joint User:  A person, firm or corporation which is designated by the Customer as a user of services furnished to the Customer by the Company and to whom a portion of the charges for the service will be billed under a Joint User arrangement as specified in the Company's tariff.

LATA:   A Local Access and Transport Area established pursuant to the Modification of Final Judgment entered by the United States District Court for the District of Columbia in Civil Action No. 82-0192; or any other geographic area designated as a LATA in the National Exchange Carrier Association, Inc. Tariff F.C.C. No. 4.

Line or Trunk: a transmission medium for communications, including but not limited to radio, satellite, wire, cable and optical fiber, including associated electronic or other equipment used to permit such medium to function.

Local Switch, Local Switching: "Local Switching" refers to any service or arrangement provided by the Company that is functionally equivalent to facilities and/or services normally referred to as "local switching" when purchased in connection with switched access services provided by an incumbent local exchange carrier.  By way of illustration and not limitation, the term typically refers to Switching performed by a Local Exchange Carrier (including, without limitation, the Company) that routes traffic between an End User's Connection to the PSTN and either (a) a Customer's network (including by means of Company-provided connections between a Company Switch and the Customer's network) or (b) a Tandem Switch provided by the Company or a third party.     (M)

Loop: Lines, trunks, or other facilities connected to an End Office Switch that are used to provide a Connection to the PSTN.     (M)

(M)      Material moved from Page 7.

Issued:  July 17, 2018

Effective:  July 18, 2018

Issued by:      General Counsel – Regulatory Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021                Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Fifth Revised Page 7
Replaces Fourth Revised Page 7

## SECTION 1 - DEFINITION OF TERMS (CONT'D)

(M)

Major Service Interruption:  An interruption of Customer service due to the Company's negligence or due to its noncompliance with the provisions of this tariff.

PIU:  Percent Interstate Usage

Premises:  The space occupied by a Customer, Authorized User or Joint User in a building or buildings or contiguous property (except railroad rights-of-way, etc.) not separated by a highway.

PSTN:  The public switched telephone network, sometimes referred to as the public switched network, consisting of the networks of all carriers that are interconnected with each other, directly or indirectly, and that route telephone calls to and from their entry and exit points on the network on the basis of 10-digit telephone numbers of the form NPA-NXX-XXXX.

(T)

Recurring Charges:  The monthly charges to the Customer for services, facilities and equipment, which continue for the duration of the service.

Service Commencement Date:  The first day following the date on which the Company notifies the Customer that the requested service or facility is available for use, unless extended by the Customer's refusal to accept service which does not conform to standards set forth in the Service Order or the tariffs of the Company, in which case the Service Commencement Date is the date of the Customer's acceptance. The Company and Customer may mutually agree on a substitute Service Commencement Date.  In the case of Third-Party Tandem Connect service ordered under option (2) of Section 12.1.1.2, the Service Commencement Date is the date on which the Customer first sends Switched Access Service traffic to the Company or accepts Switched Access Service traffic from the Company.

Service Order:  A written request for Company Services that may be submitted by the Customer in the format devised by the Company. The signing of a Service Order by the Customer and acceptance by the Company will initiate the respective obligations of the parties as set forth herein, but the duration of the service is calculated from the Service Commencement Date.

(M)      Material moved to Page 6.2.

Issued:  July 17, 2018

Effective:  July 18, 2018

Issued by:      General Counsel – Regulatory Policy
Level 3 Communications, LLC
1025 Eldorado Boulevard
Broomfield, CO 80021

Filed Under Transmittal No. 6

Level 3 Communications, LLC                                    Tariff F.C.C. No. 4
                                                              Original Page 7.1

---

**SECTION 1 - DEFINITION OF TERMS (CONT'D)**

Serving Wire Center:  A facility or location on the Company's network that is capable of providing service to Customers in the geographic area in which a Customer's point of demarcation is located.  The term is intended to include all locations on the Company's network that perform the functional equivalent of the functions performed by an incumbent local exchange carrier's serving wire center.

Shared:  A facility or equipment system or subsystem that can be used simultaneously by several Customers.

Switch, Switching, Switched:  The term "switching" refers to any technical means by which a communication is directed from an origination point or input source onwards towards a destination or output location.  Switching may include (without limitation) either circuit or packet switching, and switching of communications individually (including, if applicable, individual packets) or in groups, depending on the technology deployed.  A "switch" is a device, software, or any technical arrangement that performs or accomplishes switching.  A communication is "switched" when it passes through a switch.  By way of example but not limitation, any device which determines how to route calls based on the digits of a telephone number within the North American Numbering Plan is a "switch."

Switched Access Service:  Access to the switched network of an Exchange Carrier for the purpose of originating or terminating communications.

Tandem Switching:  The term "Tandem Switching" refers to any service or arrangement provided by the Company that, in the context of the Company's network configuration, is functionally equivalent to facilities and/or services normally referred to as "tandem switching" when purchased in connection with switched access services provided by an incumbent local exchange carrier.  By way of illustration and not limitation, the term typically refers to Switching performed by a Local Exchange Carrier (including, without limitation, the Company) that routes traffic between an End Office and a Customer, or between two End Offices.

Tandem Switched Transport:  The term "Tandem Switched Transport" refers to any service or arrangement provided by the Company that, in the context of the Company's network configuration, is functionally equivalent to facilities and/or services normally referred to as "tandem switched transport" when purchased in connection with switched access services provided by an incumbent local exchange carrier.  By way of illustration and not limitation, the term typically refers to the service involved in transmitting traffic to or from a Customer between the Serving Wire Center an End Office Switch or between the End Office Switch and a Tandem Switch.

Toll VoIP-PSTN Traffic:  The term Toll VoIP-PSTN Traffic denotes a customer's interexchange voice traffic exchanged with the Telephone Company in Time Division Multiplexing format over PSTN facilities, which originates and/or terminates in Internet Protocol (IP) format. Toll VoIP-PSTN Traffic originates and /or terminates in IP format when it originates from and/or terminates to an end user customer of a service that requires IP-compatible customer premises equipment.    (N)

Transmission:  The sending of electrical or optical signals over a line to a destination.    (N)

Trunk: See Line.

User:  A Customer, Joint User, or any other person authorized by a Customer to use service provided to the Customer under a Level 3 Communications, LLC tariff.

Certain material previously appearing on this page now appears on Fourth Revised Page 7.

---

Issued:  December 28, 2011                          Effective:  December 29, 2011

Issued by:       Vice President of Public Policy
                 Level 3 Communications, LLC
                 1025 Eldorado Boulevard
                 Broomfield, CO 80021                      Filed under Transmittal No. 1

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Third Revised Page 8
Replaces Second Revised Page 8

## SECTION 2 - UNDERTAKING OF THE COMPANY

2.1    General

2.1.1    The Company does not undertake to transmit messages but offers the use of its facilities for the transmission of communications.

2.1.2    Customers and Users may use services and facilities provided under the tariffs of the Company to obtain access to services offered by other companies. The Company is responsible for the services and facilities provided under its tariffs, and for its unregulated services provided pursuant to contract, and it assumes no responsibility for any service (whether regulated or not) provided by any other entity that purchases access to the Company network in order to originate or terminate such entity's own services, or to communicate with such entity's own customers.

2.1.3    The Company shall have no responsibility with respect to billings, charges or disputes related to services used by the Customer which are not included in the services herein including, without limitation, any local, regional or long-distance   (T) services not offered by the Company. The Customer shall be fully responsible for the payment of any bills for such services and for the resolution of any disputes or discrepancies with the service provider.

2.2    Description of Service
Level 3 Communications, LLC Service consists of any of the business services offered pursuant to this tariff, either individually or in combination. Each business service is offered independent of the others, unless otherwise noted. Service is offered via the Company's facilities or in combination with transmission facilities provided by other certificated carriers.

2.3    Application for Service
Unless otherwise specified herein, Customers desiring to obtain Level 3 Communications, LLC Service must complete the Company's standard service order form(s).

2.4    Shortage of Equipment or Facilities

2.4.1    The Company reserves the right to limit or to allocate the use of existing facilities, or of additional facilities offered by the Company, when necessary because of lack of facilities, or due to some other cause beyond the Company's control, on a nondiscriminatory basis.

2.4.2    The furnishing of service under the tariffs of the Company is subject to the availability on a continuing basis of all the necessary facilities and is limited to the reasonable capacity of the Company's facilities as well as facilities the Company may obtain from other carriers to furnish service from time to time as required at the sole discretion of the Company.

2.4.3    If the Company receives a request for a service offered under this Tariff that cannot be fulfilled due to a lack or shortage of facilities, the Company may agree with the entity requesting the service to undertake to construct or obtain the necessary facilities, in accordance with the terms of Section 11 of this Tariff.

Issued:  July 17, 2018                                                 Effective:  July 18, 2018

Issued by:        General Counsel – Regulatory Policy
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021                          Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Second Revised Page 9
Replaces First Revised Page 9

## SECTION 2 - UNDERTAKING OF THE COMPANY (CONT'D)

2.5     Terms and Conditions

2.5.1   Except for Third-Party Tandem Connect service, as defined in Section 14.2.3.3,     (C)
        Service shall be provided on the basis of a minimum period of at least one (1) year.

2.5.2   Customers may be required to enter into written Service Orders which shall contain or
        reference a specific description of the service ordered, the rates to be charged, the
        duration of the services, and the terms and conditions in the tariffs of the Company.
        Customer will also be required to execute any other documents as may be reasonably
        requested by the Company.

2.5.3   At the expiration of the initial term specified in each Service Order, or in any extension
        thereof, service shall continue on a month to month basis at the then current rates
        unless terminated by either party. Any termination shall not relieve Customer of its
        obligation to
        pay any charges incurred under the Service Order and the tariffs of the Company prior
        to termination. The rights and obligations which by their nature extend beyond the
        termination of the term of the service order shall survive such termination.

2.5.4   In any action between the parties to enforce any provision of the tariffs of the
        Company, the prevailing party shall be entitled to recover its legal fees and court costs
        from the non-prevailing party in addition to other relief a court may award.

2.5.5   The tariffs of the Company shall be interpreted and governed by the laws of the United
        States without regard for its choice of laws provision.

2.6     Liability of the Company

2.6.1   The liability of the Company for damages arising out of the furnishing of its Services,
        including but not limited to mistakes, omissions, interruptions, delays, or errors, or
        other defects, representations, or use of these services or arising out of the failure to
        furnish the service, whether caused by acts or omissions, shall be limited to the
        extension of allowances for interruption as set forth in Section 9.0, following. The
        extension of such allowances for interruption shall be the sole remedy of the Customer
        and the sole liability of the Company. The Company will not be liable for any direct,
        indirect, incidental, special, consequential, exemplary or punitive damages to
        Customer or User as a result of any Company service, equipment or facilities, or the
        acts or omissions or negligence of the Company, Company's employees or agents.

2.6.2   The Company shall not be liable for any delay or failure of performance or equipment
        due to causes beyond its control, including but not limited to: acts of God, fire, flood,
        explosion or other catastrophes; any law, order, regulation, direction, action, or request
        of the United States Government, or of any other government, including state and local
        governments having or claiming jurisdiction over the Company, or of any department,

Issued:  December 23, 2010                                  Effective:  December 24, 2010

Issued by:      Vice President of Public Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 10
Replaces Original Page 10

## SECTION 2 - UNDERTAKING OF THE COMPANY (CONT'D)

agency, commission, bureau, corporation, or other instrumentality of any one or more of these federal, state, or local governments, or of any civil or military authority, national emergencies, insurrections, riots, wars, unavailability of rights-of-way or materials, or strikes, lockouts, work stoppages, or other labor difficulties.

2.6.3   The Company shall not be liable for any act or omission of any entity furnishing to the Company or to the Company's Customers or Users facilities or equipment used for or with the services the Company offers.

2.6.4   The Company shall not be liable for any damages or losses due to the fault or negligence of the Customer or User or due to the failure or malfunction of Customer or User-provided equipment or facilities.

2.6.5   The Company does not guarantee nor make any warranty with respect to installations it provides for use in an explosive atmosphere. The Customer shall indemnify and hold the Company harmless from any and all loss, claims, demands, suits, or other action, or any liability whatsoever, whether suffered, made, instituted, or asserted by any other party or
person(s), and for any loss, damage, or destruction of any property, whether owned by the Customer or others, caused or claimed to have been caused directly or indirectly by the installation, operation, failure to operate, maintenance, removal presence, condition, location, or use of any installation so provided.

2.6.6   The Company reserves the right to require each Customer to sign an agreement acknowledging acceptance of the provisions of this paragraph as a condition precedent to such installations.

2.6.7   The Company is not liable for any defacement of or damage to Customer or User premises resulting from the furnishing of services or equipment on such premises or the installation or removal thereof, unless such defacement or damage is caused by negligence or willful misconduct of the Company's agents or employees.

2.6.8   The entire liability for any claim, loss, damage or expense from any cause whatsoever shall in no event exceed sums actually paid the Company by Customer for the specific services giving rise to the claim. No action or proceeding against the Company shall be commenced more than one year after the service is rendered, or as required by United States Federal Law.

2.6.9   The Company shall not be liable for any damages or losses due to the fault or negligence of the Customer or due to the failure or malfunction of Customer provided equipment or facilities.

2.6.10   The Company shall not be liable for any damages resulting from delays in meeting any service dates due to delays resulting from normal construction procedures. Such delays.

Issued:  May 7, 2002

Effective:  May 8, 2002

Issued by:     Thomas C. Stortz, Group Vice President and General Counsel
Level 3 Communications, LLC
1025 Eldorado Boulevard
Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 11
Replaces Original Page 11

**SECTION 2 - UNDERTAKING OF THE COMPANY (CONT'D)**

shall include, but not be limited to, delays in obtaining necessary regulatory approvals for construction, delays in obtaining right-of-way approvals and delays in actual construction work.

2.6.11   The Company shall not be liable for any damages whatsoever to property resulting from the installation, maintenance, repair or removal of equipment and associated wiring unless the damage is caused by the Company's willful misconduct or negligence.

2.6.12   **THE COMPANY MAKES NO WARRANTIES OR REPRESENTATIONS, EXPRESS OR IMPLIED EITHER IN FACT OR BY OPERATION OF LAW, STATUTORY OR OTHERWISE, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE, EXCEPT THOSE EXPRESSLY SET FORTH IN ITS TARIFFS.**

2.6.13   The Company shall not be liable for any damages whatsoever associated with service, facilities, or equipment which the Company does not furnish or for any act or omission of
Customer or any other entity furnishing services, facilities or equipment used for or in conjunction with Level 3 Communications, LLC.

2.7      Notification of Service-Affecting Activities

To the extent possible, the Company will provide the Customer reasonable notification of service-affecting activities that may occur in normal operation of its business. Such activities may include, but are not limited to, equipment or facilities additions, removals or rearrangements and routine preventative maintenance. Generally, such activities are not specific to an individual Customer but affect many Customers' services. No specific advance notification period is applicable to all service activities. The Company will work cooperatively with the Customer to determine the reasonable notification requirements. With some emergency or unplanned service-affecting conditions, such as an outage resulting from cable damage, notification to the Customer may not be possible.

2.8      Provision of Equipment and Facilities

2.8.1    All services along the facilities between the point identified as the Company's origination point and the point identified as the Company's termination point will be furnished by the Company, its agents or contractors.

2.8.2    The Company may undertake to use reasonable efforts to make available services to a Customer on or before a particular date, subject to the provisions of and compliance by the Customer with, the regulations contained in this tariff.

2.8.3    The Company undertakes to use reasonable efforts to maintain only the facilities and equipment that it furnishes to the Customer. The Customer, Joint User, or Authorized

Issued:  May 7, 2002                                          Effective:  May 8, 2002

Issued by:        Thomas C. Stortz, Group Vice President and General Counsel
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 12
Replaces Original Page 12

## SECTION 2 - UNDERTAKING OF THE COMPANY (CONT'D)

User may not, nor may they permit others to, rearrange, disconnect, remove, attempt to repair, or otherwise tamper with any of the facilities or equipment installed by the Company, except upon the written consent of the Company.

2.8.4   Equipment the Company provides or installs at the Customer's premises for use in connection with the services the Company offers shall not be used for any purpose other than that for which the Company provided the equipment.

2.8.5   The Customer shall be responsible for the payment of service charges as set forth herein for visits by the Company's agents or employees to the premises of the Customer, Joint User, or Authorized User when the service difficulty or trouble report results from the use of equipment or facilities the Customer, Joint User, or Authorized User provided.

2.8.6   The Company shall not be responsible for the installation, operation, or maintenance of any Customer provided communications equipment. Where such equipment is connected to the facilities furnished pursuant to this tariff, the responsibility of the Company shall be limited to the furnishing of facilities offered under this tariff and to the maintenance and operation of such facilities; subject to this responsibility the Company shall not be responsible for:

2.8.6.1   The transmission of signals by Customer provided equipment or for the quality of, or defects in, such transmission; or

2.8.6.2   The reception of signals by Customer provided equipment. The Customer, Authorized User, or Joint User is responsible for ensuring that Customer provided equipment connected to Company equipment and facilities is compatible with such Company equipment and facilities. The magnitude and character of the voltages and currents impressed on Company provided equipment and wiring by the connection, operation, or maintenance of such equipment and wiring shall be such as not to cause damage to the Company provided equipment and wiring or injury to the Company's employees or to other persons. Customer will submit to Company a complete manufacturer's specification sheet for each item of equipment that is not provided by the Company and which shall be attached to the Company's facilities. The Company shall approve the use of such item(s) of equipment unless such item is technically incompatible with Company's facilities. Any additional protective, equipment required to prevent such damage or injury shall be provided by the Company at the Customer's expense.

2.8.7   Any special interface equipment necessary to achieve compatibility between the facilities and equipment of the Company used for furnishing Level 3 Communications, LLC services and the channels, facilities, or equipment of others shall be provided at the Customer's expense.

Issued: May 7, 2002                                            Effective: May 8, 2002

Issued by:      Thomas C. Stortz, Group Vice President and General Counsel
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 13
Replaces Original Page 13

## SECTION 2 - UNDERTAKING OF THE COMPANY (CONT'D)

2.8.8    Level 3 Communications, LLC may be connected to the services or facilities of other communications carriers only when authorized by, and in accordance with, the terms and conditions of the tariffs of the other communications carrier which are applicable to such connections.

2.9    Nonroutine Installation

At the Customer's request, installation and/or maintenance may be performed outside the Company's regular business hours and/or in hazardous locations. In such cases, charges based on cost of the actual labor, material, or other costs incurred by or charged to the Company will apply.
If installation is started during regular business hours but, at the Customer's request, extends beyond regular business hours into time periods including, but not limited to, weekends, holidays, and/or night hours, additional charges may apply.

2.10    Ownership of Facilities

Title to all facilities provided in accordance with the tariffs of the Company remains with the Company, its agents or contractors. The Customer shall not have, nor shall it assert, any right, title or interest in all the fiber optic or other facilities and associated equipment provided by the Company hereunder.

2.11    Optional Rates and Information Provided to the Public

The Company will promptly advise Customers who may be affected of new, revised or optional rates applicable to their service. Pertinent information regarding the Company's services, rates and charges shall be provided directly to Customers, or shall be available for inspection at the Company's local business address.  If required by the Commission, the Company will cause to have published a notice of its intention to charge its rates, tolls, charges, rules and regulations in one or more newspapers in circulation in the affected area.

2.12    Continuity of Service

In the event of prior knowledge of an interruption of service for a period exceeding one day, the Customers will, if feasible, be notified in writing, by mail, at least one week in advance.

2.13    Governmental Authorizations

The provision of services is subject to and contingent upon the Company obtaining and retaining such approvals, consents, governmental authorizations, licenses and permits, as may be required or be deemed necessary by the Company. The Company shall use reasonable efforts to obtain and keep in effect all such approvals, consents, authorizations, licenses and permits that may be

---

Issued:  May 7, 2002

Effective:  May 8, 2002

Issued by:        Thomas C. Stortz, Group Vice President and General Counsel
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 14
Replaces Original Page 14

## SECTION 2 - UNDERTAKING OF THE COMPANY (CONT'D)

required to be obtained by it. The Company shall be entitled to take, and shall have no liability whatsoever for, any action necessary to bring the Services into conformance with any rules, regulations, orders, decisions, or directives imposed by the Federal Communications Commission or other applicable agency, and the Customer shall fully cooperate in and take such action as may be requested by the Company to comply with any such rules, regulations, orders, decisions, or directives.

Issued:  May 7, 2002                                                    Effective:  May 8, 2002

Issued by:       Thomas C. Stortz, Group Vice President and General Counsel
                 Level 3 Communications, LLC
                 1025 Eldorado Boulevard
                 Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 15
Replaces Original Page 15

## SECTION 3 - OBLIGATIONS OF THE CUSTOMER

3.1     General

The Customer shall be responsible for:

3.1.1   the payment of all applicable charges pursuant to the tariffs of the Company;

3.1.2   damage to or loss of the Company's facilities or equipment caused by the acts or omissions of the Customer or of any User; or by the noncompliance by the Customer or any User with these regulations; or by fire or theft or other casualty on the Customer's or any User's Premises, unless caused by the negligence or willful misconduct of the employees or agents of the Company;

3.1.3   providing at no charge, as specified from time to time by the Company, any needed personnel, equipment space and power to operate the Company facilities and equipment installed on the premises of the Customer or any User; and the level of heating and air conditioning necessary to maintain the proper operating environment on such premises;

3.1.4   any and all costs associated with obtaining and maintaining of the rights-of-way from the point of entry at the Customer's location to the termination point where service is finally delivered to the Customer, including, but not limited to, the costs of installing conduit or of altering the structure to permit installation of Company provided facilities. The Customer's use of such rights-of-way shall in all respects be subject to the terms, conditions and restrictions of such rights-of-way and of agreements between the Company and such third parties relating thereto, including without limitation, the duration applicable to and the condemnation of such rights-of-way, and shall not be in violation of any applicable governmental ordinance, law, rule, regulation or restriction. Where applicable, the Customer agrees that it shall assist the Company in the procurement and maintenance of such right-of-way.  The Company may require the Customer to demonstrate its compliance with this section prior to accepting an order for service;

3.1.5   providing a safe place to work and complying with all laws and regulations regarding the working conditions on the premises at which the Company's employees and agents shall be installing or maintaining the Company's facilities and equipment. The Customer may be required to install and maintain the Company's facilities and equipment within a hazardous area if, in the Company's opinion, injury or damage to the Company's employees or property might result from installation or maintenance by the Company;

3.1.6   the Customer shall be responsible for identifying, monitoring, removing and disposing of any hazardous material (e.g. friable asbestos) prior to any construction or installation work;

Issued:  May 7, 2002                                                    Effective:  May 8, 2002

Issued by:      Thomas C. Stortz, Group Vice President and General Counsel
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 16
Replaces Original Page 16

## SECTION 3 - OBLIGATIONS OF THE CUSTOMER (CONT'D)

3.1.7   complying with all laws and regulations applicable to, and obtaining all consents, approvals, licenses and permits as may be required with respect to, the location of the Company's facilities and equipment in any Customer or User premises or the rights-of-way for which Customer is responsible under section 3.1.4; and granting or obtaining permission for the Company's agents or employees to enter the premises of the Customer or any User at any time for the purpose of installing, inspecting, maintaining, repairing,
or upon termination of service as stated herein, removing the facilities or equipment of the Company;

3.1.8   not creating or allowing to be placed any liens or other encumbrances on the Company's equipment or facilities; and

3.1.9   making the Company's facilities and equipment available periodically for maintenance purposes at a time agreeable to both the Company and the Customer. No allowance will be made for the period during which service is interrupted for such purposes.

3.2   Prohibited Uses

3.2.1   The services the Company offers shall not be used for any unlawful purpose or for any use as to which the Customer has not obtained all governmental approvals, authorizations, licenses, consents and permits required to be obtained by the Customer with respect thereto.

3.2.2   The Company may require applicants for service who intend to use the Company's offerings for resale and/or for shared use to file a letter with the Company confirming that their use of the Company's offerings complies with relevant laws and Commission regulations, policies, orders, and decisions.

3.2.3   The Company may, without obtaining any further consent from the Customer, assign any rights, privileges, or obligations under this tariff. The Customer shall not, without prior written consent of the Company, assign, transfer, or in any other manner dispose of, any of its rights, privileges, or obligations under this tariff, and any attempt to make such an assignment, transfer, disposition without such consent shall be null and void.

3.2.4   The Company may require a Customer to immediately shut down its transmission of signals if said transmission is causing interference to others.

3.2.5   A Customer may not use the services so as to interfere with or impair service over any facilities and associated equipment, or so as to impair the privacy of any communications over such facilities and associated equipment.

Issued: May 7, 2002

Effective: May 8, 2002

Issued by:      Vice President of Public Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 17
Replaces Original Page 17

## SECTION 3 - OBLIGATIONS OF THE CUSTOMER (CONT'D)

3.2.6    Customer use of any resold service obtained from other service providers shall also be subject to any applicable restrictions imposed by the underlying providers.

3.2.7    A Customer, Joint User, or Authorized User shall not represent that its services are provided by the Company, or otherwise indicate to its customers that its provision of services is jointly with the Company, without the written consent of the Company. The relationship between the Company and Customer shall not be that of partners or agents for one or the other, and shall not be deemed to constitute a partnership or agency agreement.

3.3    <u>Claims</u>

With respect to any service or facility provided by the Company, Customer shall indemnify, defend and hold harmless the Company from and against all claims, actions, damages, liabilities, costs and expenses, including reasonable attorneys' fees for:

3.3.1    any loss, destruction or damage to property of the Company or any third party, or the death or injury to persons, including, but not limited to, employees or invitees of either party, to the extent caused by or resulting from the negligent or intentional act or omission of the Customer or User or their employees, agents, representatives or invitees;

3.3.2    any claim, loss, damage, expense or liability for infringement of any copyright, patent, trade secret, or any proprietary or intellectual property right of any third party, arising from any act or omission by the Customer or User, including, without limitation, use of the Company's services and facilities in a manner not contemplated by the agreement between Customer and the Company; or

3.3.3    any claim of any nature whatsoever brought by a User with respect to any matter for which the Company would not be directly liable to the Customer under the terms of the applicable Company tariff.

3.4    <u>Jurisdictional Reporting</u>

The jurisdictional reporting requirements will be as specified below.  When a Customer orders Switched Access Service, its projected Percent Interstate Usage (PIU) must be provided in whole numbers to the Company.  These whole number percentages will be used by the Company to apportion the use and/or charges between interstate and intrastate until a revised report is received as set forth herein.

---

Issued:  May 7, 2002

Effective:  May 8, 2002

Issued by:      Thomas C. Stortz, Group Vice President and General Counsel
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Second Revised Page 18
Replaces First Revised Page 18

## SECTION 3 – OBLIGATIONS OF THE CUSTOMER (CONT'D)

3.4.1   Originating Access:   Originating access minutes may be based on traffic originating at the State, LATA or local Switching Center level, provided that the traffic being measured is only traffic originating from the Company Local Switching Center(s).  The Customer must provide the Company with a projected PIU factor on a quarterly basis as specified below.  Originating access minutes will be measured as follows, based on type of access:

    3.4.1.1  For Feature Group D Switched Access Services, as defined in Section 14.2.1, where the Company can determine jurisdiction by its call detail, the projected PIU will be developed by the Company on a quarterly basis by dividing the measured interstate originating minutes by the total originating access minutes.   (T)

    3.4.1.2  For Feature Group D with 950 Access as defined in Section 14.2.1, the Customer must provide the Company with a projected PIU factor by supplying the Company with an interstate percentage of originating access minutes.

    3.4.1.3  For 500, 700, 8XX, calling card and operator service access, the Customer must provide the Company with a projected PIU factor for each type of access.  The Customer who provides a PIU factor shall supply the Company with an interstate percentage of originating access minutes.   (C)

    3.4.1.4  If no PIU for originating minutes is submitted as specified herein, then the projected PIU will be set on a default basis of 50 percent interstate traffic and 50 percent intrastate traffic.

3.4.2   Terminating Access:   For Feature Group D Switched Access Services, the Customer must provide the Company with a projected PIU factor by supplying the Company with an interstate percentage of terminating access minutes on a quarterly basis, as described in Section 3.4.4 below.  If no projected PIU factor is submitted by the Customer, then the projected PIU will be set on a default basis at the same percentage as the originating PIU.

3.4.3   Except where the Company measured access minutes are used as set forth in 3.4.1 above, the Customer reported projected PIU factor as set forth above will be used until the Customer reports a different projected PIU factor, as set forth below.  The revised report will serve as the basis for future billing and will be effective on the next bill date.

Issued:  July 17, 2018

Effective:  July 18, 2018

Issued by:        General Counsel – Regulatory Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021

Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Third Revised Page 19
Replaces Second Revised Page 19

## SECTION 3 – OBLIGATIONS OF THE CUSTOMER (CONT'D)

3.4.4    Effective on the first day of January, April, July and October of each year the Customer shall update its interstate and intrastate jurisdictional report.  The Customer shall forward to the Company, to be received no later than 15 days after the first day of such month, a revised report showing the interstate and intrastate percentage of use for the past three months ending the last day of December, March, June and September, respectively, for each service arranged for interstate use, based solely on the traffic originating from or terminating to the Company Local Switching Center.  The revised report will serve as the basis for the next three months billing and will be effective on the bill date for that service.  If the Customer does not supply the reports for those services where reports are needed, the Company will assume the percentage to be the same as that provided previously.  For those cases in which a quarterly report has never been received from the Customer, the Company will assume the percentages to be the same as those provided in the Access Service Request or, in the absence of an Access Service Request PIU, the Company will set the projected PIU on a default basis of 50 percent interstate traffic and 50 percent intrastate traffic.

3.4.5    Jurisdictional Reports Verification:  For Switched Access Service, if a billing dispute arises or a regulatory commission questions the projected PIU factor, the Customer will provide the data used to determine the projected PIU factor.  The Customer will supply the data within 30 days of the Company request.

The Customer shall keep records of call detail from which the percentage of                    (T)
interstate and intrastate use can be ascertained and, upon request of the Company, shall make the records available for inspection as reasonably necessary for purposes of verification of the percentages.  The Company reserves the right to conduct an audit at any time during the year.  The Customer, at its own expense, has the right to retain an independent auditing firm.

(M)
|
(M)

(M)       Material moved to Page 19.1.

Issued:  July 17, 2018                                          Effective:  July 18, 2018

Issued by:        General Counsel – Regulatory Policy
                        Level 3 Communications, LLC
                        1025 Eldorado Boulevard
                        Broomfield, CO 80021                          Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 19.1
Replaces Original Page 19.1

## SECTION 3 – OBLIGATIONS OF THE CUSTOMER (CONT'D)

### 3.4.6   Identification and Rating of VoIP-PSTN Traffic

This section governs the identification of VoIP-PSTN Traffic that is required to be compensated at interstate access rates unless the parties have agreed otherwise by the F.C.C. in its Report and Order in WC Dockets Nos. 10-90, etc., F.C.C. Release No. 11-161 (November 18, 2011) (F.C.C. Order). Specifically, this section establishes the method of separating VoIP-PSTN Traffic from the Customer's traditional intrastate access traffic, so that VoIP-PSTN Traffic can be billed in accordance with the F.C.C. Order.  VoIP-PSTN Traffic identified in accordance with this tariff section will be billed at rates equal to the Company's applicable tariffed interstate switched access rates as set forth in Section 15, following.   (M)

Calculation and Application of Percent-VoIP- Usage Factors

a.   The Company will determine the number of VoIP-PSTN Traffic minutes of use (MOU) to which interstate rates will be assessed by applying an originating Percent VoIP Usage (PVU) factor to the total intrastate access MOU originated by a Company end user and delivered to the Customer and by applying a terminating PVU factor to the total intrastate access MOU terminated by a Customer to the Company's end user.   (M)

b.   The Customer will calculate and furnish to the Company an originating PVU factor representing the whole number percentage of the Customer's total originating intrastate access MOU that the Customer exchanges with the Company in the LATA that is received from the Company and that is terminated in IP format and that would be billed by the Company as intrastate access MOU.

c.   The Customer will calculate and furnish to the Company a terminating PVU factor representing the whole number percentage of the Customer's total terminating intrastate access MOU that the Customer exchanges with the Company in the LATA that is sent to Company and which originated in IP format and that would be billed by the Company as intrastate access MOU.

d.   The Customer shall not modify their reported PIU factor to account for VoIP-PSTN Traffic.

e.   Both the Customer provided originating PVU and the terminating PVU shall be based on information such as the number of the Customer's retail VoIP subscriptions in the state (e.g. as reported on F.C.C. Form 477), traffic studies, actual call detail or other relevant and verifiable information which will be provided to the Company upon request.

(M1)

(M)      Material moved from Page 19.
(M1)    Material moved to Page 19.2.

Issued:  July 17, 2018

Effective:  July 18, 2018

Issued by:      General Counsel – Regulatory Policy
Level 3 Communications, LLC
1025 Eldorado Boulevard
Broomfield, CO 80021

Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 19.2
Replaces Original Page 19.2

## SECTION 3 – OBLIGATIONS OF THE CUSTOMER (CONT'D)
### Calculation and Application of Percent-VoIP- Usage Factors (Cont'd)

f.  The Customer shall retain the call detail, work papers, and information used to develop the PVU factors for a minimum of one year.                    (M)

g. The Company shall use default factors until such time as Customer supplies such factors.  For this purpose, Company will utilize a PVU equal to the percentage of VoIP subscribers in the state based on the Local Competition Report, as released periodically and/or such other reports as the Company deems appropriate and reasonable.  Under the Local Competition report methodology, the PVU will be the total number of incumbent LEC and non-incumbent LEC VoIP subscriptions in a state divided by the sum of those reported VoIP subscriptions plus incumbent LEC and non-incumbent LEC switched access lines.

3.4.7   The preceding section 3.4.6 will be applied to the billing of switched access charges to a Customer that is a local exchange carrier only to the extent that the Customer has also implemented billing of interstate access charges for VoIP-PSTN Traffic in accordance with FCC orders, rules and regulations.

3.4.8   Initial Implementation of PVU Factors
a. If the PVU factors cannot be implemented in the Company's billing systems by December 29, 2011, once the factors can be implemented the Company will adjust the Customer's bills to reflect the PVU factors prospectively in the next bill period if the PVU factors are provided by the Customer to the Company prior to April 15, 2012.
b. The Company may choose to provide credits based on the reported PVU factors on a quarterly basis until such time as the billing system modifications can be implemented.

3.4.9   PVU Factor Update
The Customer may update the PVU factors quarterly using the method set forth in 3.4.6.1.c, preceding. If the Customer chooses to submit such updates, it shall forward to the Company, no later than 15 days after the first day of January, April, July and/or October of each year, revised PVU factors based on data for the prior three months, ending the last day of December, March, June and September, respectively. The revised PVU factors will serve as the basis for    (M))
future billing and will be effective on the bill date of each such month and shall serve as the basis for subsequent monthly billing until superseded by new PVU factors. No prorating or back billing will be done based on the updated PVU factors.                    (M1)

(M)     Material moved from Page 19.1.
(M1)    Material moved from Pages 19.3. and 19.4.

---

Issued:  July 17, 2018                                    Effective:  July 18, 2018

Issued by:      Vice President of Public Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021                      Filed under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Original Page 19.3

---

<u>**SECTION 3 – OBLIGATIONS OF THE CUSTOMER (CONT'D)**</u>

    3.4.10. PVU Factor Verification                                                           (M)

        a. Not more than twice in any year, the Company may request from the Customer an overview of the process used to determine the PVU factors, the call detail records, description of the method for determining how the end user originates and terminates calls in IP format, and other information used to determine the Customer's PVU factors furnished to the Company in order to validate the PVU factors supplied. The Customer shall comply, and shall reasonably supply the requested data and information within 15 days of the Company's request.

        b. The Company may dispute the Customer's PVU factor based upon:

            • A review of the requested data and information provided by the Customer,

            • The Company's reasonable review of other market information, F.C.C. reports on VoIP lines, such as F.C.C. Form 477 or state level results based on the F.C.C. Local Competition Report or other relevant data.

            • A change in the reported PVU factor by more than five percentage points from the preceding quarter.

        c. If after review of the data and information, the Customer and the Company establishes revised PVU factors, the Company will begin using those revised PVU factors with the next bill period.                 (M)

(M)      Material moved from Page 19.2.

---

Issued:  July 17, 2018                                     Effective:  July 18, 2018

Issued by:    Vice President of Public Policy
              Level 3 Communications, LLC
              1025 Eldorado Boulevard
              Broomfield, CO 80021                          Filed under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Original Page 19.4

---

**SECTION 3 – OBLIGATIONS OF THE CUSTOMER (CONT'D)**

    3.4.10. PVU Factor Verification (Cont'd)

        d. If the dispute is unresolved, the Company may initiate an audit. The Company shall limit audits of the Customer's PVU factor to no more than twice per year. The Customer may request that the audit be conducted by an independent auditor. In such cases the associated auditing expenses will be paid by the Customer.   (M)

           • In the event that the Customer fails to provide adequate records to enable the Company or an independent auditor to conduct an audit verifying the Customer's PVU factors, the Company will bill the usage for all contested periods using the most recent undisputed PVU factors reported by the Customer. These PVU factors will remain in effect until the audit can be completed.

           • During the audit, the most recent undisputed PVU factors from the previous reporting period will be used by the Company.

           • The Company will adjust the Customer's PVU factors based on the results of the audit and implement the revised PVU in the next billing period or quarterly report date, whichever is first. The revised PVU factors will apply for the next two quarters before new factors can be submitted by the Customer.

           • If the audit supports the Customer's PVU factors, the usage for the contested periods will be adjusted to reflect the Customer's audited PVU factors.   (M)

(M)     Material moved from Page 19.2.

---

Issued:  July 17, 2018

Effective:  July 18, 2018

Issued by:     Vice President of Public Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021                  Filed under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Second Revised Page 20
Replaces First Revised Page 20

**SECTION 4 - PAYMENT ARRANGEMENTS**

4.1     Payment for Service

The Customer is responsible for the payment of all charges for facilities and services furnished by
the Company to the Customer and to all Users authorized by the Customer, regardless of whether
those services are used by the Customer itself or are resold or shared with other persons.

4.2     Billing and Collection of Charges

    4.2.1   Nonrecurring charges are due and payable within 30 days after the date an invoice is mailed
to the Customer by the Company.

    4.2.2   The Company shall present invoices for Recurring Charges monthly to the Customer, in
advance of the month in which service is provided, and Recurring Charges shall be due
and payable within 30 days after the invoice is mailed.

    4.2.3   Charges based on measured usage will be included on the next invoice rendered following
the end of the month in which the usage occurs, and will be due and payable within 30
days after the invoice is mailed.

    4.2.4   When service does not begin on the first day of the month, or end on the last day of the
month, the charge for the fraction of the month in which service was furnished will be
calculated on a pro rata basis. For this purpose, every month is considered to have 30 days.

    4.2.5   Billing of the Customer by the Company will begin on the Service Commencement Date,
billing accrues through and includes the day that the service, circuit, arrangement or
component is discontinued.

    4.2.6   With respect to Business Customers only, if any portion of the payment is received by the
Company after the date due, or if any portion of the payment is received by the Company
in funds which are not immediately available, then a late payment penalty shall be due to
the Company. The late payment penalty shall be the portion of the payment not received
by the date due, net of taxes, not compounded, multiplied by a monthly late factor of 1.5%.

    4.2.7   For any check returned to the Company due to insufficient funds, uncollected funds, or
closed account, a $25.00 fee will be assessed per check returned.

    4.2.8   Although it is the intent of the Company to submit timely statements of charges, failure by    (D)(N)
the Company to do so in a timely manner shall not constitute a breach of the Company's
obligations under this tariff or a waiver of the Company's right to payment of the incurred
charges, and, except for the assertion by the Customer that the Company's right to payment
is barred by an applicable statute of limitations, the Customer shall not be entitled to
dispute the Company's bill(s) based on the Company's failure to submit them in a timely
fashion.                                                                                         (D)(N)

Certain material now appearing on this page previously appeared on 1st Revised Page 21.

Issued:  December 23, 2010                                    Effective:  December 24, 2010

Issued by:       Vice President of Public Policy
                 Level 3 Communications, LLC
                 1025 Eldorado Boulevard
                 Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Fourth Revised Page 21
Replaces Third Revised Page 21

**SECTION 4 – PAYMENT ARRANGEMENTS (CONT'D)**

4.2.6    Switched Access Services Provided By More Than One Local Exchange Carrier

4.2.9.1   General.

When Switched Transport service is provided by more than one Local Exchange Carrier, the carriers involved will mutually agree upon one of the billing methods below.  The Multiple Bill Option will be used unless the Company specifies otherwise in writing. The Customer will place the ASR as specified in Section 12 of this Tariff.

4.2.9.2   Meet Point Billing.

Meet Point Billing is required when an access service is provided by multiple Local Exchange Carriers for FGB or FGD Switched Access services.

There are two Meet Point Billing Options – Single Bill and Multiple Bill. The Company shall notify the Customer of: (a) the Meet Point Billing Option that will be used; (b) the Local Exchange Carrier(s) that will render the bill(s); (c) the Local Exchange Carrier(s) to whom payment(s) should be remitted, and (d) the Local Exchange Carrier(s) that will provide the bill inquiry function.

The Company shall provide such notification at the time that an ASR is placed requesting access service. Additionally, the Company shall provide this notice in writing 30 days in advance of any change

4.2.9.2.1  Single Bill Option.

The Single Bill Option allows the Customer to receive one bill from one Local Exchange Carrier or its billing agent for access services.

The Local Exchange Carrier(s) that renders the bill to the Customer may provide to the Customer, cross references to the other Local Exchange Carrier(s) service and/or the common circuit identifiers based upon industry standards as contained in the Multiple Exchange Carrier Access Billing (MECAB) Guidelines. Should a billing dispute arise, the terms and conditions of the Billing Company(s) will apply.

For usage rated access services, the access minutes of use will be compiled by the Initial Billing Company and used by the Initial Billing Company and any subsequent Billing Company(s) for the development of access charges.                    (T)

(x)  The Initial Billing Company for FGB and FGD Switched Access services is normally the Local Exchange Carrier providing the End User's serving office and for WATS usage the Initial Billing Company is normally the WATS serving office. When the Initial Billing Company is other than the normally designated Local Exchange Carrier, the Local Exchange Carrier will notify the Customer.

---

Issued:  July 17, 2018                                                    Effective:  July 18, 2018

Issued by:        General Counsel – Regulatory Policy
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021                         Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Original Page 21.1

## SECTION 4 – PAYMENT ARRANGEMENTS (CONT'D)

(y)  The Subsequent Billing Company(s) is any Local Exchange Carrier(s) in whose territory a segment of the Switched Transport Facility is provided and/or where the customer designated location is located.                                                                (N)

The Single Bill option provides three billing alternatives, Single Bill/Single Tariff, Single Bill/Pass-Through Billing and Single Bill/Multiple Tariff which are described following:

### 4.2.9.2.1.1     Single Bill/Single Tariff.

Each Local Exchange Carrier will receive an ASR or a copy of the ASR from the Customer as specified in Section 12 of this Tariff and arrange to provide the service. The Initial Billing Company will: (a) determine the applicable charges and bill in accordance with its tariff; (b) include all recurring and nonrecurring rates and charges of its tariff; and (c) forward the bill to the Customer.

The Customer will remit the payment to the Initial Billing Company.

### 4.2.9.2.1.2     Single Bill/Pass-Through Billing.

Each Local Exchange Carrier will receive an ASR or a copy of the ASR from the Customer as specified in Section 12 of this Tariff and arrange to provide the service. Each Local Exchange Carrier will: (a) determine its portion of Switched Transport as in Section 4.2.9.2.3; (b) determine the applicable charges and bill in accordance with its tariff; (c) include all recurring and nonrecurring rates and charges of its tariff; and (d) forward the bill to the Initial Billing Company for meet point billed access services.

The Initial Billing Company will: (w) apply usage data, when needed, to the bill and calculate the charges; (x) identify each involved Local Exchange Carrier's charges separately on the bill; (y) combine all the bills of the involved Local Exchange Carriers of a meet point billed access service into one access bill; (z) forward the bill to the Customer; and (q) advise the Customer how to remit the payment, either directly to each Local Exchange Carrier involved in the provision of this meet point billed service; or, as a single payment made to the Initial Billing Company. If payments are to be sent directly to the Initial Billing Company, the Subsequent Billing Company(s) will provide the Customer with written authorization for the payment arrangement.

### 4.2.9.2.1.3     Single Bill/Multiple Tariff.

Each Local Exchange Carrier will receive an ASR or a copy of the ASR from the Customer as specified in Section 12 of this Tariff and arrange to provide the service. The Initial Billing Company will: (a) determine each Local Exchange Carrier's portion of switched transport as set forth in Section 4.2.9.2.3; (b) determine the applicable charges and bill in accordance with each Local Exchange Carrier's tariff; (c) include all recurring and nonrecurring charges for each involved Local Exchange Carrier; (d) identify each involved Local Exchange Carrier's charges separately on the bill; (e) forward the bill to the Customer; and (f) advise the Customer how to remit the payment, either directly to each Local Exchange Carrier involved in the provision of this meet point billed service; or, as a single payment made to the Initial Billing Company. If payments are to be sent directly to the Initial Billing Company, the Subsequent Billing Company(s) will provide the Customer with written authorization for the payment arrangement                                                       (N)

Issued:  December 23, 2010

Effective:  December 24, 2010

Issued by:        Vice President of Public Policy
                         Level 3 Communications, LLC
                         1025 Eldorado Boulevard
                         Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 21.2
Replaces Original Page 21.2

**SECTION 4 – PAYMENT ARRANGEMENTS (CONT'D)**

4.2.9.2.2    **Multiple Bill Option.**

The Multiple Bill option allows all Local Exchange Carriers providing service to bill the Customer for their portion of a jointly provided access service. Each Local Exchange Carrier will: (a) determine its portion of the Switched Transport as set forth in Section 4.2.9.2.3; (b) determine the applicable charges and bill in accordance with its tariff; (c) include all recurring and nonrecurring rates and charges of its tariff; and (d) forward the bill to the Customer.  In cases where the Company provides Tandem Switching and transport functions, the Local Exchange Carrier that provides end office and related functions may choose to bear the Company's charges in connection with switched access services provided jointly by the Company and such other Local Exchange Carrier.  Where the other Local Exchange Carrier so chooses, the Company will bill such other Local Exchange Carrier for its services, and the other Local Exchange Carrier shall render appropriate bills for its services to the Customer in accordance with its own tariffs.

(N)

(N)

The Customer will remit the payments directly to each Local Exchange Carrier.

4.2.9.2.3  **Meet Point Billing Mileage Calculation.**

Each Local Exchange Carrier's portion of the Switched Transport mileage will be determined as follows:

4.2.9.2.3.1     . For Switched Access Tandem-Switched Transport Services, determine the appropriate Tandem-Switched Transport - Facility total miles by computing the number of miles from the access tandem to the relevant serving wire center (i.e., End User serving wire center, or WATS Serving Office), using the V&H method as set forth in the NECA Tariff FCC No. 4. For Switched Access Direct-Trunked Transport determine the appropriate Direct-Trunked Transport total miles by computing the number of miles between the relevant serving wire centers involved (i.e., Customer designated location serving wire center, Hub Wire Center, WATS Serving Office, end office, or access tandem) using the V&H method as set forth in the NECA Tariff FCC No. 4. Where the calculated miles include a fraction, the value is rounded up to the next full mile.  Notwithstanding the foregoing, the total mileage from a Company tandem to a subtending end office shall be capped at ten (10) miles irrespective of actual airline miles.

4.2.9.2.3.2     Determine the billing percentage (BP), as set forth in the NECA Tariff FCC No. 4. This represents the portion of the Service provided by each Local Exchange Carrier.

4.2.9.2.3.3     For Switched Access Tandem-Switched Transport; (a) multiply the number of access minutes of use times the number of airline miles as set forth in [1.2.3.1], times the BP of each Local Exchange Carrier as set forth in [1.2.3.2], times the Tandem-Switched Transport - Facility rate; (b) multiply the Tandem-Switched Transport - Termination rate times the number of access minutes times the quantity of terminations.

Example of Billing Percentage (BP) Method Using the Multiple Bill Option:
The Tandem-Switched Transport - Facility between Office X and Office Y is jointly provided by telephone companies A and B. The following example reflects the rate for Local Exchange Carrier A. Rates for Local Exchange Carrier B would appear in its appropriate Access Tariff

Issued:  January 26, 2011                                          Effective:  January 27, 2011

Issued by:        Vice President of Public Policy
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Original Page 21.3

**SECTION 4 – PAYMENT ARRANGEMENTS (CONT'D)**

4.2.9.2.3.4    . Airline miles from Local Exchange Carrier A (office X) to Local Exchange Carrier B (office Y) = 10 airline miles as set forth in NECA Tariff FCC No. 4.     (N)

4.2.9.2.3.5    Billing Percentage for each Local Exchange Carrier (from NECA Tariff FCC No. 4).

Local Exchange Carrier A = 40%

Local Exchange Carrier B = 60%

4.2.9.2.4       Access Minutes for Local Exchange Carrier A = 9000.

4.2.9.2.5       Tandem-Switched Transport - Facility rate for Local Exchange Carrier A = SWT FAC

4.2.9.2.6       Tandem-Switched Transport - Termination Rate = SWT TERM

NOTE: The Tandem-Switched Transport - Termination rate does not apply in situations where there is an intermediate, non-terminating Local Exchange Carrier involved in the provision of the Switched Transport Facility.

Formula:

Access Minutes (AM) x Airline Miles (ALM) x Billing Percentage (BP) x Tandem-Switched Transport Facility Rate (SWT FAC) + [Tandem-Switched Transport - Termination Rate (SWT TERM) x Access Minutes (AM) x Quantity of Terminations (TERMS)] = Total

Calculation:

Local Exchange Carrier A

AM     ALM  BP  SWT FAC     SWT TERM     AM     TERMS

9,000 x 10 x .40 x SWT FAC + [SWT TERM x 9,000 x TERMS]=TOTAL

4.2.9.2.7       For Switched Access Direct-Trunked Transport, multiply the number of airline miles as in (1), times the BP for each Local Exchange Carrier as in (2), times the Direct-Trunked Transport Facility rate elements. For DS1 and DS3 Direct-Trunked Transport, multiply the Direct-Trunked Transport Termination rate times the number of terminations provided by the Local Exchange Carrier.     (N)

Issued: December 23, 2010

Effective: December 24, 2010

Issued by:     Vice President of Public Policy
Level 3 Communications, LLC
1025 Eldorado Boulevard
Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 21.4
Replaces Original Page 21.4

---

**SECTION 4 – PAYMENT ARRANGEMENTS (CONT'D)**

4.2.9.3   All other appropriate recurring and nonrecurring charges in each Local Exchange Carrier's Access tariff are applicable.

4.2.9.4   Where the Tandem-Switched Transport - Facility is provided by more than one Local Exchange Carrier, the Tandem-Switched Transport - Termination rate applies for the termination at the Local Exchange Carrier end of the Tandem-Switched Transport (i.e., the first point of Local Exchange Carrier switching or the End Office serving the End User). The Tandem-Switched Transport - Termination rate will not apply when the Local Exchange Carrier is the intermediate provider of the Switched Transport Facility.   (N)

4.2.9.5   The Interconnection Charge for Switched Transport, if any, shall be billed by the Local Exchange Carrier in whose territory the end office is located.

4.2.9.6   The Shared Trunk Port for Tandem-Switched Transport shall be billed by the Local Exchange Carrier in whose territory the end office is located.

4.2.9.7   For tandem routed trunks, the dedicated trunk port shall be billed by the Local Exchange Carrier owning the tandem. For end office direct routed trunks, the dedicated trunk port shall be billed by the Local Exchange Carrier owning the end office on a single bill, single tariff or multiple bill, multiple tariff meet point billing arrangement.

4.2.9.8   The shared multiplexing charge will be assessed to the Interexchange Carrier/Customer by the Local Exchange Carrier owning the access tandem under the multiple bill, multiple tariff meet point billing option, and to the initial billing company, by the Local Exchange Carrier owning the access tandem, under the single bill, single tariff meet point billing option.

---

Issued: December 28, 2011                                 Effective: December 29, 2011

Issued by:        Vice President of Public Policy
                 Level 3 Communications, LLC
                 1025 Eldorado Boulevard
                 Broomfield, CO 80021                      Filed under Transmittal No. 1

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Third Revised Page 22
Replaces Second Revised Page 22

## SECTION 4 - PAYMENT ARRANGEMENTS (CONT'D)

4.3     Advance Payments

    4.3.1     To safeguard its interests, the Company may require a Customer to make an advance payment before services and facilities are furnished. The advance payment will not exceed an amount equal to the nonrecurring charge(s) and the first month's estimated recurring charges for the service or facility. In addition, where special construction is involved, the advance payment may also include an amount equal to the estimated nonrecurring charges for the special construction and recurring charges (if any) for a period to be set between the Company and the Customer. The advance payment will be credited to the Customer's initial bill and may be required in addition to a deposit.     (D)

    4.3.2     A customer whose service has been discontinued for nonpayment of bills will be required to pay the unpaid balance due carrier and may be required to pay reconnect charges.

4.4     Deposits

    4.4.1     The Company may, in order to safeguard its interests, require an applicant to make a suitable deposit to be held by the Company as a guarantee of the payment of charges.

    4.4.2     A deposit will be required under the following conditions:

        4.4.2.1     Applicant does not have verifiable credit with any Level 3 Communications, LLC affiliate anywhere within the region in the same or similar business; or

        4.4.2.2     Applicant has had previous verifiable Service with any Level 3 Communications, LLC affiliate anywhere within the region but has an outstanding and unpaid bill for Service; or has not established satisfactory credit.  Satisfactory credit for a Customer is defined as twelve consecutive months of service without a suspension of service for nonpayment or with no more than one notification of intent to suspend service for nonpayment.     (D)

Issued:  October 13, 2011

Effective:  October 14, 2011

Issued by:     Vice President of Public Policy
               Level 3 Communications, LLC
               1025 Eldorado Boulevard
               Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Second Revised Page 23
Replaces First Revised Page 23

## SECTION 4 - PAYMENT ARRANGEMENTS (CONT'D)

4.4.2.3   Applicant for nonresidential service will be given credit for previous nonresidential service only if the applicant is same business entity to which such service was previously provided.

4.4.3   An initial deposit or an additional deposit will be required of an existing Customer when high risk is indicated and existing security is insufficient. Such requirement will be imposed when a payment history includes a suspension of service for nonpayment during the previous twelve month period.

4.4.4   The Company reserves the right to provide for installment payment of the deposit if the circumstances warrant.

4.4.5   Any deposit required of an existing Customer is due and payable within ten days after the requirement is imposed. This requirement shall be in writing and the payment date shall be on or after the due and payable date for the current bill. If said deposit or installment thereof, as appropriate, is not paid within the aforementioned time frame, the Company may suspend service of the Customer without further notice. The following are exceptions to this provision:

4.4.5.1   In the event service is suspended for a Customer for nonpayment, an initial or additional deposit shall be required prior to the restoration of service if existing security is insufficient.

4.4.5.2   In the event prior indebtedness or prior unsatisfactory credit has been determined subsequent to the initial establishment of service due to misrepresentation of the facts by the Customer, a deposit shall be due and payable within five days upon verbal notification and written confirmation or within ten days when notification can only be provided in writing. The ten day period shall be measured from the mailed date of the written notice. If said deposit is not paid within the aforementioned time frame, the Company may suspend service to the Customer without further notice.

4.4.6   The amount of the deposit shall be the estimated charges for the Service which will accrue for a 2 and one half-month period. All applicants and existing Customers shall be treated uniformly for the determination and application of deposits.

4.4.7   When it is determined that a deposit is required under the conditions specified above, the applicant or Customer may, in lieu of or in addition to making the deposit, arrange for an acceptable third party to guarantee payment of his charges by executing on his behalf a Guarantee of Payment Agreement with the Company. An acceptable third party guarantor for Service is a current IXC Customer with at least two years continuous service, whose payment history for the most recent twelve month period is satisfactory.                                                                                           (C)

Issued:  October 13, 2011                                    Effective:  October 14, 2011

Issued by:      Vice President of Public Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021

## SECTION 4 - PAYMENT ARRANGEMENTS (CONT'D)

4.4.8   The fact that a deposit has been made in no way relieves the Customer from complying with the Company's regulations as to advance payments, or the prompt payment of bills on presentation.

4.4.9   The deposit will bear simple interest computed from the date of its receipt by the Company to the date the deposit is refunded, or service is terminated, or annually upon request of the Customer. In the event that a deposit is retained during time periods having different rates of interest, the interest accrued on the deposit will be calculated using the interest rate applicable to each time period.

4.4.10   If the Customer is a natural person who is a candidate for political office or is a person or organization acting on behalf of a candidate for political office the deposit requirement will be adjusted monthly to reflect twice the current month's actual billing. Under these circumstances, a security, i.e., surety bond or bank letter of credit equal to the Company's deposit requirement will be the only acceptable substitutes for a cash deposit.   (C)

4.4.11   The rate of interest to be paid on Customer deposits will be the lesser of 6% or an amount determined by the Commission.

4.4.12   When service is terminated, the amount of the initial or additional deposit, with any interest due, will be credited to the Customer's account and any credit balance which may remain will be refunded. After an existing customer has established satisfactory credit, the amount of the deposit, with any interest due, will be either credited to the account or at the option of the Customer, refunded. Satisfactory credit for a Customer is defined as twelve consecutive months of Service without suspension for nonpayment and with no more than one notification of intent to suspend service for nonpayment.

4.5   Discontinuance of Service

4.5.1   Upon nonpayment of any amounts owing to the Company, the Company may, by giving ten days prior written notice to the Customer, discontinue or suspend service without incurring any liability.

4.5.2   Upon violation of any of the other material terms or conditions for furnishing service the Company may, by giving 30 days prior notice in writing to the Customer, discontinue or suspend service without incurring any liability if such violation continues during that period.

Issued:  October 13, 2011

Effective:  October 14, 2011

Issued by:      Vice President of Public Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Second Revised Page 25
Replaces First Revised Page 25

**SECTION 4 - PAYMENT ARRANGEMENTS (CONT'D)**

4.5.3   Upon condemnation of any material portion of the facilities used by the Company to provide service to a Customer, or if a condition immediately dangerous or hazardous to life, physical safety or property exists, or if a casualty renders all or any material portion of such facilities inoperable beyond feasible repair, the Company, by notice to the Customer, may discontinue or suspend service without incurring any liability.  The Company will provide a written notice of the disconnection at least five (5) days before the date of disconnection.

4.5.4   Upon the Customer's insolvency, assignment for the benefit of creditors, filing for bankruptcy or reorganization, or failing to discharge an involuntary petition within the time permitted by law, the Company may immediately require a deposit without incurring any liability.

4.5.5   Upon any governmental prohibition or required alteration of the services to be provided or any violation of an applicable law or regulation, the Company may immediately discontinue service without incurring any liability.

4.5.6   Upon the Company's discontinuance of service to the Customer under paragraphs 4.5.1 or 4.5.2 above, the Company, in addition to all other remedies that may be available to the Company at law or in equity or under any other provision of the tariffs of the Company, may declare all future monthly and other charges which would have been payable by the Customer during, the remainder of the minimum term for which such services would have otherwise been provided to the Customer to be immediately due and payable (discounted to present value at six percent (6%)).

4.5.7   Any Customer or Applicant for Service requesting the opportunity to dispute any action or determination of company under applicable Commission rules shall be given an opportunity for a supervisory review by the Company immediately following Customer's request for such review.  Service will not be disconnected pending completion of the review.                                                                                                          (C)

4.6   Cancellation of Application for Service

4.6.1   Applications for service are noncancellable unless the Company otherwise agrees. Where the Company permits the Customer to cancel an application for service prior to the start of service or prior to any special construction, no charges will be imposed except for those specified below.

**4.6.2**   Where, prior to cancellation by the Customer, the Company incurs any expenses in installing the service or in preparing to install the service that it otherwise would not have incurred, a charge equal to the costs the Company incurred, less net salvage, shall apply, but in no case shall this charge exceed the sum of the charge for the minimum period of services ordered, including installation charges, and all charges others levy against the Company that would have been chargeable to the Customer had service begun (all discounted to present value at six percent (6%)).

Issued:  October 13, 2011                                                                         Effective:  October 14, 2011

Issued by:         Vice President of Public Policy
                        Level 3 Communications, LLC
                        1025 Eldorado Boulevard
                        Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Third Revised Page 26
Replaces Second Revised Page 26

## SECTION 4 - PAYMENT ARRANGEMENTS (CONT'D)

4.6.3    Where the Company incurs any expense in connection with special construction, or where special arrangements of facilities or equipment have begun, before the Company receives a cancellation notice, a charge equal to the costs incurred, less net salvage, applies. In such cases, the charge will be based on such elements as the cost of the equipment, facilities, and material, the cost of installation, engineering, labor, and supervision, general and administrative expense, other disbursements, depreciation, maintenance, taxes, provision for return on investment, and any other costs associated with the special construction or arrangements.

4.6.4    The special charges described in paragraphs 4.6.1 through 4.6.3, above, will be calculated and applied on a case-by-case basis.

4.7    Changes in Service Requested

If the Customer makes or requests material changes in circuit engineering, equipment specifications, service parameters, premises locations, or otherwise materially modifies any provision of the application for service, the Customer's installation fee shall be adjusted accordingly.

4.8    Taxes

The Customer is responsible for the payment of Federal excise taxes, gross receipts, access, state and local sales and use taxes and all taxes, fees, surcharges (however designated) and other exactions imposed on the Company or its services by governmental jurisdictions, other than taxes imposed generally on corporations. Any taxes imposed by a local jurisdiction (e.g. county and municipal taxes) will only be recovered from Customers in accordance with applicable tax laws.  All such taxes, fees, and charges shall be separately designated on the Company's invoices, and are not included in the tariffed rates.  It should be the responsibility of the Customer to pay any such taxes that subsequently become applicable retroactively.

4.9    Disputed Bills

(1)    The Customer may dispute a bill in good faith only by written notice to the Company.    (T)
Unless such notice is received within 90 days (commencing 5 days after such bills have
been mailed or otherwise rendered per the Company's normal course of business), the    (T)
bill statement shall be deemed to be correct and payable in full by Customer. Any
Customer who has a dispute shall be advised by the Company that the Customer may
file a formal or informal complaint with the Commission.  Such claim must identify in    (N)
detail the basis for the dispute, and if the Customer withholds disputed amounts, it must
identify the account number under which the bill has been rendered, the date of the bill,
and the specific items on the bill being disputed to permit the Company to investigate
the merits of the dispute.    (N)

Issued:  December 28, 2011

Effective:  December 29, 2011

Issued by:    Vice President of Public Policy
Level 3 Communications, LLC
1025 Eldorado Boulevard
Broomfield, CO 80021

Filed under Transmittal No. 1

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Original Page 26.1

---

## SECTION 4 - PAYMENT ARRANGEMENTS (CONT'D)

4.9    <u>Disputed Bills</u> (Cont'd)                                                                      (N)

(2)    The date of the dispute shall be the date on which the Customer furnishes the Company the following account information:
·  A clear explanation of the basis of the dispute, including what the Customer believes is incorrect (e.g., nonrecurring charge; mileage; circuit identification) and the reason why the Customer believes the bill is incorrect (e.g., monthly rate billed not same as in tariff; facility not ordered; service not received);
·  The account number under which the bill was rendered;
·  The date of the bill;
·  The invoice number;
·  The exact dollar amount in dispute;
·  The universal service order code(s)(USOCs) and/or rate element associated with the service;
·   Details sufficient to identify the specific amount(s) and item(s) in dispute;
·  The name of the person initiating the Customer's dispute;
·  Additional data as the Company reasonably requests from the Customer to resolve the dispute. The request for such additional information shall not affect the Customer's dispute date as set forth preceding.

(3)    The date of resolution is the date the Company completes the investigation and credits the Customer account or confirms the billing as accurate and denies the dispute.

(4)    In the event that a billing dispute concerning any charges billed to the Customer by the Company is resolved in favor of the Company, any payments withheld pending settlement of the dispute shall be subject to the late payment penalty set forth in 4.2.6 preceding.                                                                                  (N)

---

Issued:  December 28, 2011                                          Effective:  December 29, 2011

Issued by:        Vice President of Public Policy
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021                              Filed under Transmittal No. 1

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Second Revised Page 27
Replaces First Revised Page 27

**SECTION 5 - USE OF CUSTOMER'S SERVICE BY OTHERS**

5.1     <u>Resale and Sharing</u>

Any service provided under the Company tariffs may be resold to or shared with other persons at the option of Customer, except as provided in 5.3, following. Customer remains solely responsible for all use of services ordered by it or billed to its telephone number(s) pursuant to the tariffs of the Company, for determining who is authorized to use its services, and for notifying the Company of any unauthorized use. Business rates apply to all service that is resold or shared.

5.2     <u>Joint Use Arrangements</u>

Joint use arrangements will be permitted for all services available for resale and sharing pursuant to the Company tariffs. From each joint use arrangement, one member will be designated as the Customer responsible for the manner in which the joint use of the service will be allocated. Level 3 Communications, LLC will accept orders to start, rearrange, relocate, or discontinue service only from the Customer. Without affecting the Customer's ultimate responsibility for payment of all charges for the service, each Joint User shall be responsible for the payment of the charges billed to it.

5.3     <u>Transfers and Assignments</u>                                                    (D)(N)

5.3.1   The Customer shall not, without prior written consent of the Company, assign, transfer, or in any other manner dispose of, any of its rights, privileges, or obligations under this tariff, and any attempt to make such an assignment, transfer, disposition without such consent shall be null and void.                     (D)(N)

Issued:  December 23, 2010                                Effective:  December 24, 2010

Issued by:      Vice President of Public Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Third Revised Page 28
Replaces Second Revised Page 28

**SECTION 6 - CANCELLATION OF SERVICE**

6.1     If a Customer cancels a Service Order or terminates services before the completion of the          (T)
        term for any reason whatsoever other than a Major Service Interruption, Customer agrees
        to pay to the Company the following sums, within 21 days of the effective date of the
        cancellation or termination and be payable under the terms set forth in Section 4.0,
        preceding: all costs, fees and expenses reasonably incurred in connection with                      (T)

        6.1.1  All Nonrecurring charges as specified in the Company's tariffs, plus                          (T)

        6.1.2  Any disconnection, early cancellation or termination charges reasonably incurred             (T)
               and paid to third parties by the Company on behalf of Customer, plus

        6.1.2  All Recurring Charges specified in the applicable Company tariff for the balance of           (T)
               the then current term.

6.2     Customers seeking to cancel service have an affirmative obligation to provide for alternate         (N)
        routing of traffic originating from or terminating to the Company's network.   By
        originating traffic from or terminating traffic to the Company's network, the Customer will
        have constructively ordered the company's switched access service.                                  (N)

---

Issued:  July 15, 2016                                              Effective:  July 30, 2016

Issued by:       General Counsel - Regulatory Policy
                 Level 3 Communications, LLC
                 1025 Eldorado Boulevard
                 Broomfield, CO 80021                                       Transmittal No. 4

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 29
Replaces Original Page 29

## SECTION 7 - NOTICES AND COMMUNICATIONS

7.1     The Customer shall designate on the Service Order an address to which the Company shall mail or deliver all notices and other communications, except that Customer may also designate a separate address to which the Company's bills for service shall be mailed.

7.2     The Company shall designate on the Service Order an address to which the Customer shall mail or deliver all notices and other communications, except that the Company may designate a separate address on each bill for service to which the Customer shall mail payment on that bill.

7.3     All notices or other communications required to be given pursuant to the tariffs of the Company will be in writing. Notices and other communications of either party, and all bills mailed by the Company, shall be presumed to have been delivered to the other party on the third business day following placement of the notice, communication or bill with the U.S. Mail or a private delivery service, prepaid and properly addressed, or when actually received or refused by the addressee, whichever occurs first.

7.4     The Company or the Customer shall advise the other party of any changes to the addresses designated for notices, other communications or billing, by following the procedures for giving notice set forth herein.

Issued:  May 7, 2002                                                          Effective:  May 8, 2002

Issued by:        Thomas C. Stortz, Group Vice President and General Counsel
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Third Revised Page 30
Replaces Second Revised Page 30

## SECTION 8 - CUSTOMER EQUIPMENT AND CHANNELS

8.1    General

A User may transmit any form of signal that is compatible with the Company's equipment, but except as otherwise specifically stated in its tariffs, the Company does not guarantee that its services will be suitable for any particular purpose.

8.2    Station Equipment

8.2.1    Terminal equipment on the User's Premises and the electric power consumed by such equipment shall be provided by and maintained at the expense of the User. The User is responsible for the provision of wiring or cable to connect its terminal equipment to the Company's Point of Connection.

8.2.2    The Customer is responsible for ensuring that Customer-provided equipment connected to the Company equipment and facilities is compatible with such equipment and facilities. The magnitude and character of the voltages and currents impressed on Company-provided equipment and wiring by the connection, operation, or maintenance of such equipment and wiring shall be such as not to cause damage to Company-provided equipment and wiring or injury to the Company's employees or to other persons. Any additional protective equipment required to prevent such damage or injury shall be provided by the Company at the Customer's expense.

8.2.3    Customer provided station equipment may be attached to services provided under the tariffs of the Company subject to Part 68 of the FCC Rules and to any applicable provisions of the tariffs of the Company and is the sole responsibility of the Customer.

8.2.4    The Company is not responsible for malfunctions of any Customer-provided equipment, or for misdirected calls, disconnects or other service problems caused by the use of Customer-owned equipment.                                                                (D)

8.3    Interconnection of Facilities

8.3.1    Any special interface equipment necessary to achieve compatibility between the facilities and equipment of the Company used for furnishing Communications Services and the channels, facilities, or equipment of others shall be provided at the Customer's expense.

8.3.2    Communications Services may be connected to the services or facilities of other communications carriers only when authorized by, and in accordance with, the terms and

Issued:  October 13, 2011                                    Effective:  October 14, 2011

Issued by:       Vice President of Public Policy
                 Level 3 Communications, LLC
                 1025 Eldorado Boulevard
                 Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 31
Replaces Original Page 31

## SECTION 8 – CUSTOMER EQUIPMENT AND CHANNELS (CONT'D)

conditions of the tariffs of the other communications carriers which are applicable to such connections.

8.3.3  Facilities furnished under the tariffs of the Company may be connected to customer provided terminal equipment in accordance with the provisions of the tariffs of the Company. All such terminal equipment shall be registered by the Federal Communications Commission pursuant to Part 68 of Title 47, Code of Federal Regulations; and all User provided wiring shall be installed and maintained in compliance with those regulations.

8.4  Tests and Adjustments

Upon suitable notice, the Company may make such tests, adjustments, and inspections as may be necessary to maintain the Company's facilities in satisfactory operating condition. No interruption allowance will be credited to the Customer for the period during which the Company makes such tests, adjustments, or inspections.

8.5  Inspections

8.5.1  Upon suitable notification to the Customer, and at a reasonable time, the Company may make such tests and inspections as may be necessary to determine that the User is complying with the requirements set forth in Section 2.8 for the installation, operation, and maintenance of Customer-provided facilities, equipment, and wiring in the connection of Customer-provided facilities and equipment to Company-owned facilities and equipment.

8.5.2  If the protective requirements for Customer-provided equipment are not being complied with, the Company may take such action as it deems necessary to protect its facilities, equipment, and personnel.  The Company will notify the Customer promptly if there is any need for further corrective action.  Within ten days of receiving this notice, the Customer must take this corrective action and notify the Company of the action taken.  If the Customer fails to do this, the Company may take whatever additional action is deemed necessary, including the suspension of service, to protect its facilities, equipment and personnel from harm.

Issued:  May 7, 2002

Effective:  May 8, 2002

Issued by:   Thomas C. Stortz, Group Vice President and General Counsel
Level 3 Communications, LLC
1025 Eldorado Boulevard
Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 32
Replaces Original Page 32

**SECTION 9 - ALLOWANCES FOR INTERRUPTIONS IN SERVICE**

9.1   <u>General</u>

9.1.1   Interruptions in service, which are not due to the negligence of, or noncompliance with the provisions of the tariffs of the Company by, the Customer or of an authorized or Joint User, or the operation or malfunction of the facilities, power or equipment provided by the Customer, will be credited to the Customer as set forth below for the part of the service that the interruption affects.

9.1.2   A credit allowance will be made when an interruption occurs because of a failure of any component furnished by the Company under its tariffs. An interruption period begins when the Customer reports a service, facility or circuit is interrupted and releases it for testing and repair. An interruption period ends when the service, facility or circuit is operative. If the Customer reports a service, facility or circuit to be inoperative but declines to release it for testing and repair, it is considered to be impaired, but not interrupted.

9.1.3   For calculating credit allowances, every month is considered to have 30 days. A credit allowance is applied on a pro rata basis against the rates specified hereunder and is dependent upon the length of the interruption. Only those facilities on the interrupted portion of the circuit will receive a credit.

9.1.4   For Switched Access Service, no credit will be allowed for an interruption of less than 24 hours.  After the first 24 hour period, a credit equal to 1/30 of the applicable recurring transport charges will be applied to each interruption which is in excess of 12 hours and Up to 24 hours.

Interruptions Over 24 Hours and Less than 72 Hours will be credited 1/5 day for each 3-hour period or fraction thereof.  No more than one full day's credit will be allowed for any period of 24 hours.

Interruptions Over 72 Hours will be credited 2 days for each full 24-Hour period. No more than 30 days credited will be allowed for any one month period.

Issued:  May 7, 2002

Effective:  May 8, 2002

Issued by:      Thomas C. Stortz, Group Vice President and General Counsel
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 33
Replaces Original Page 33

## SECTION 9 - ALLOWANCES FOR INTERRUPTIONS IN SERVICE (CONT'D)

9.2     No credit allowance will be made for:

9.2.1   interruptions due to the negligence of, or noncompliance with the provisions of the tariffs of the Company by, the Customer, User, or other common carrier providing service connected to the service of the Company;

9.2.2   interruptions due to the negligence of any person other than the Company, including but not limited to the Customer or other common carriers connected to the Company's facilities;

9.2.3   interruptions of service due to the failure or malfunction of facilities, power or equipment provided by the Customer, Authorized User, Joint User, or other common carrier providing service connected to the services or facilities of the Company;

9.2.4   interruptions of service during any period in which the Company is not given full and free access to its facilities and equipment for the purpose of investigating and correcting interruptions;

9.2.5   interruptions of service during a period in which the Customer continues to use the service on an impaired basis;

9.2.6   interruptions of service during any period when the Customer has released service to the Company for maintenance purposes or for implementation of a Customer order for a change in service arrangements;

9.2.7   interruption of service due to circumstances or causes beyond the control of the Company; and

9.2.8   interruptions of service that occur or continue due to the Customer's failure to authorize replacement of any element of special construction.

Issued:  May 7, 2002                                                      Effective:  May 8, 2002

Issued by:     Thomas C. Stortz, Group Vice President and General Counsel
               Level 3 Communications, LLC
               1025 Eldorado Boulevard
               Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 34
Replaces Original Page 34

## SECTION 10 - APPLICATION OF RATES

10.1     Distance-Based Charges

    10.1.1   Distance between two points is measured as airline distance between two Points of Service.

    10.1.2   The airline distance between any two Points of Service is determined as follows:

        A.    Obtain the vertical and horizontal coordinates for each Point of Service location.

        B.    Compute the difference between the vertical coordinates of the two Points of Service; and compute the difference between the two horizontal coordinates.

        C.    Square each difference between the vertical coordinates and the horizontal coordinates.

        D.    Add the square of the vertical coordinates difference and the square of the horizontal coordinates difference.

        E.    Divide the sum of the squares by 10. Round to the next higher whole number if any fraction is obtained.  For example: $\dfrac{(V2 - V1)^2 + (H2 - H1)^2}{10}$

        F.    Take the square root of the result.

Issued:  May 7, 2002

Effective:  May 8, 2002

Issued by:    Thomas C. Stortz, Group Vice President and General Counsel
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Second Revised Page 35
Replaces First Revised Page 35

## SECTION 11 - SPECIAL CONSTRUCTION AND SPECIAL ARRANGEMENTS

11.1   Special Construction

Subject to the agreement of the Company and to all of the regulations contained in the tariffs of the Company, special construction and special arrangements may be undertaken on a reasonable efforts basis at the request of the Customer. Special arrangements include any service or facility relating to a telecommunications service not otherwise specified under tariff, or for the provision of service on an expedited basis or in some manner different from the normal tariff conditions. Special construction is that construction undertaken:                                                                                              (C)

11.1.1   where facilities are not presently available, and there is no other requirement for the facilities so constructed;

11.1.2   of a type other than that which the Company would normally utilize in the furnishing of its services;

11.1.3   over a route other than that which the Company would normally utilize in the furnishing of its services;

11.1.4   in a quantity greater than that which the Company would normally construct;

11.1.5   on an expedited basis;

11.1.6   on a temporary basis until permanent facilities are available;

11.1.7   involving abnormal costs; or

11.1.8   in advance of its normal construction.

11.2   Basis for Charges

Where the Company furnishes a facility or service on a special construction basis, or any service for which a rate or charge is not specified in the Company's tariffs, charges will be based on the costs incurred by the Company and may include, (1) nonrecurring type charges; (2) recurring type charges,  (3) termination liabilities; or (4) combinations thereof. The agreement for special construction will ordinarily include a minimum service commitment based upon the estimated service life of the facilities provided.

11.3   Basis for Cost Computation

The costs referred to in Section 11.2 preceding may include one or more of the following items to the extent they are applicable:

Issued:  December 23, 2010

Effective:  December 24, 2010

Issued by:        Vice President of Public Policy
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Second Revised Page 36
Replaces First Revised Page 36

## SECTION 11 - SPECIAL CONSTRUCTION AND SPECIAL ARRANGEMENTS (CONT'D)

11.3.1    installed costs of the facilities to be provided including estimated costs for the rearrangements of existing facilities. Installed costs include the cost of:

    11.3.1.1        equipment and materials provided or used,

    11.3.1.2        engineering, labor and supervision,

    11.3.1.3        transportation,

    11.3.1.4        rights of way, and

    11.3.1.5        any other item chargeable to the capital account;

11.3.2    annual or monthly charges including the following:                                    (C)

    11.3.2.1        cost of maintenance;

    11.3.2.2        depreciation on the estimated installed cost of any facilities provided, based on the anticipated useful service life of the facilities with an appropriate allowance for the estimated net salvage;

    11.3.2.3        administration, taxes and uncollectible revenue on the basis of reasonable average costs for these items;

    11.3.2.4        any other identifiable costs related to the facilities provided; and

    11.3.2.5        an amount for return and contingencies.

11.4    **Termination Liability**

To the extent that there is no other requirement for use by the Company, the Customer may have a termination liability for facilities specially constructed at the request of the Customer, if and only if such liability is clearly stated in a written agreement between the Company and the Customer.

11.4.1    The maximum termination liability is equal to the total cost of the special facility as determined under 11.3, preceding, adjusted to reflect the redetermined estimate net salvage, including any reuse of the facilities provided.

11.4.2    The maximum termination liability as determined in paragraph (1) shall be divided by the original term of service contracted for by the Customer (rounded up to the next whole number of months) to determine the monthly liability. The Customer's termination liability shall be equal to this monthly amount multiplied by the remaining unexpired term of service (rounded up to the next whole number of months), discounted to present value at six percent (6%), plus applicable taxes.

Certain material now appearing on this page previously appeared on 1st Revised Page 37.

Issued:  December 23, 2010                                    Effective:  December 24, 2010

Issued by:        Vice President of Public Policy
                 Level 3 Communications, LLC
                 1025 Eldorado Boulevard
                 Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Second Revised Page 37
Replaces First Revised Page 37

RESERVED FOR FUTURE USE.

Material previously appearing on this page now appears on 2nd Revised Page 36.

Issued:  December 23, 2010                                         Effective:  December 24, 2010

Issued by:        Vice President of Public Policy
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Second Revised Page 38
Replaces First Revised Page 38

**SECTION 12 – ORDERING OPTIONS FOR SWITCHED ACCESS SERVICE**

12.1    <u>General</u>

This section sets forth the regulations and related charges for ordering Switched Access Service, as defined in this tariff.  These charges are in addition to other applicable charges set forth in other sections of this tariff.

12.1.1    Ordering Conditions:

Except for Third-Party Tandem Connect Service (as defined in Section 14.2.3.3), all services offered under this tariff will be ordered using an ASR.    (C)

12.1.1.1    <u>ASR Orders</u>. The format of the ASR will be as specified in the industry Access Service Order Guidelines, unless otherwise specified herein.  A Customer may order any number of Services of the same type and between the same Premises on a single ASR.  All details for services for a particular order must be identical.

The Customer shall provide all information necessary for the Company to provide and bill for the requesting service.  When placing an order for Switched Access Service, the Customer shall provide the following minimum information:

a.    Customer name and Premise(s) address(es);
b.    Billing name and address (when different from Customer name and address);
c.    Customer contact name(s) and telephone numbers for the following provisioning activities; order negotiating, order confirmation, interactive design, installation and billing.

The order date (Application Date) is the date on which the Company receives a firm commitment and sufficient information from the Customer to allow processing of the ASR.  The Customer is advised of the critical events in the provisioning process, the Application Date, the Plant Test Date and the Service Commencement Date, at the time the Company gives the Customer a Firm Order Confirmation (FOC).  The FOC is forwarded to the Customer within 2 business days after the date on which all information needed to process the ASR has been received by the Company.

12.1.1.2    <u>Third-Party Tandem Connect Service Orders</u>.  A Customer may order Third-Party Tandem Connect service (as defined in Section 14.2.3.3)    (C)
either by (1) submitting an ASR as defined in Section 12.1.1.1 or (2) routing Switched Access Service traffic to the Company, or accepting such traffic from the Company, through the switch of another entity to which the Customer is connected (the "third-party tandem provider").  Where the Customer orders Third-Party Tandem Connect service via option (2), the Company may use information provided to the Company by the third-party tandem provider or information obtained from other sources to bill the Customer for the services provided.    (C)

Issued:  December 23, 2010                                    Effective:  December 24, 2010

Issued by:        Vice President of Public Policy
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Second Revised Page 39
Replaces First Revised Page 39

**SECTION 12 - ORDERING OPTIONS FOR SWITCHED ACCESS SERVICE (CONT'D)**

12.1.2   Provision of Other Services

Unless otherwise specified herein, all services offered under this tariff shall be ordered with an ASR.

With the agreement of the Company, other services may subsequently be added to the ASR at any time, up to and including the service date for the Access Service. When added subsequently, charges for a Design Change as set forth in Section 14.1.3.2 will apply when an engineering review is required.

Additional Engineering is not an ordering option, but will be applied to an ASR when the Company determines that Additional Engineering is necessary to accommodate a Customer request, Additional Engineering will be provided by the Company at the request of the Customer only when a Customer requests additional technical information after the Company has already provided the technical information included on the Design Layout Report as set forth herein.   The Customer will be notified when Additional Engineering is required, and will be furnished with a written statement setting forth the justification for the Additional Engineering as well as an estimate of the charges.  If the Customer does not want the service or facilities after being notified by the Company that Additional Engineering is required, the customer may cancel the order and no charges will apply.

12.2   Access Order

Unless otherwise specified herein, an ASR is required by the Company to provide a Customer Switched Access Service, as described herein.  An ASR will be required for each new similar service arrangement or group of common circuits.

When a customer requests new or additional Switched Access Service, one or more ASR's may be required.  The number of orders required is dependent on the type of services and/or facilities being requested.

When placing an order for either Local Connect Service, Tandem Connect Service, or Third-Party Tandem Connect Service (in those cases where such service is ordered via an ASR), as described in Sections 14.2.3.2 and 14.2.3.3, respectively, the Customer shall provide all standard ASR ordering information as specified in industry guidelines.  The Customer will also be required to provide this information to order additional service for an existing service type.  For new Customers ordering Third-Party Connect Service by means of an ASR, the Customer will only be required to complete an ASR for installation of new service.   (C)

(C)

Issued:  December 23, 2010                                          Effective:  December 24, 2010

Issued by:       Vice President of Public Policy
                 Level 3 Communications, LLC
                 1025 Eldorado Boulevard
                 Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Second Revised Page 40
Replaces First Revised Page 40

**SECTION 12 - ORDERING OPTIONS FOR SWITCHED ACCESS SERVICE (CONT'D)**

12.2.1   Access Service Date Intervals. Access Service is provided with one of the following Service Date intervals:

- Standard Interval
- Negotiated Interval

The Company will specify a FOC and the Service Commencement Date contingent on the ASR being complete as received. To the extent the Access Service can be made available with reasonable effort, the Company will provide the Access Service in accordance with the Customer's required interval, subject to the following conditions:

12.2.1.1   Standard Interval:  Except for Third-Party Connect Service ordered under option (2) of Section 12.1.1.2, the Standard Interval for Switched and Special Access Service will be 10 business days from the date the ASR is submitted to the Company. This interval only applies to standard service offerings for a Customer which is On-Net and at locations where there are pre-existing facilities to the Customer premises.   Access Services provided under the Standard Interval will be installed during Company business hours.  For Third-Party Tandem Connect Service ordered under option (2) of Section 12.1.1.2, the Standard Interval will be the same day as the service is ordered.

(C)

(C)

12.2.1.2   Negotiated Interval:   The Company will negotiate a Service Date Interval with the Customer when:

1)   The Customer requests a Service Date before or beyond the applicable Standard Interval Service Date; or

2)   There is no existing facility connecting the Customer Premises with the Company or

3)   The Customer requests a service that is not considered by the Company to be a standard service offering (for example, if Additional Engineering is required to complete the order; or

4)   The Company determines that Access Service cannot be installed within the Standard Interval.

The Company will offer a Service Date based on the type and quantity of Access Services the Customer has required. The Negotiated Interval may not exceed by more than six months the Standard Interval Service Date, or, when there is no Standard Interval, the Company offered Service Date. All services for which rates are applied on an Individual Case Basis are provided with a Negotiated Interval.

Issued:  December 23, 2010

Effective:  December 24, 2010

Issued by:       Vice President of Public Policy
Level 3 Communications, LLC
1025 Eldorado Boulevard
Broomfield, CO 80021

**SECTION 12 - ORDERING OPTIONS FOR SWITCHED ACCESS SERVICE (CONT'D)**

12.2.2    Access Service Request Modifications: The Customer may request a modification of its ASR prior to the Service Commencement Date.  All modifications must be in writing using the industry ASR process.  The Company, in its sole discretion may accept a verbal modification from the Customer.  The Company will make every effort to accommodate a requested modification when it is able to do so with the normal work force assigned to complete such an order within normal business hours.  Charges for access service order modification will apply as set forth below, on a per occurrence basis.

Any increase in the number of Special Channels, Switched Access Service lines, trunks, transport facilities, Out of Band Signaling connections or any change in engineering or functionality of a service will be treated as a new ASR with a new Service Date Interval.

12.2.2.1          Service Commencement Date Charges:

ASR service dates for the installation of new services or rearrangement of existing services may be changed, but the new service date may not exceed the original Service Commencement Date by more than 30 calendar days.  Then, if for any reason, the Customer indicates that service cannot be accepted for a period not to exceed 30 calendar days, and the Company accordingly delays the start of service, a Service Change Charge will apply.  In addition, when the Customer submits a request for a Service Date Change that is less than five business days from the date of notification by the Customer, a Service Date Charge and an Expedite Charge will apply.  No Expedite Charge will apply if the Customer requests a Service Date Change that is more than 5 business days from the date of request by the Customer but earlier than the original requested Service Commencement Date.          (T)

If the Customer requested service date is more than 30 calendar days after the original service date, the order will be canceled by the Company on the 31st day.  Appropriate cancellation charges will be applied.  If the Customer still requires the service, the Customer must place a new ASR with the Company.  The Service Date Change charge will apply on a per order, per occurrence basis for each service date changed.  The applicable charges are set forth in Section 15.1.3.2.

12.2.2.2          Design Change Charge:

The Customer may request a Design Change to the service ordered.  A Design Change is any change to an ASR which requires Engineering Review.  An Engineering Review is a review by Company personnel of the service ordered and requested changes to determine what change(s)

Issued:  December 23, 2010                                                    Effective:  December 24, 2010

Issued by:        Vice President of Public Policy
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 42
Replaces Original Page 42

## SECTION 12 – ORDERING OPTIONS FOR SWITCHED ACCESS SERVICE (CONT'D)

in design, if any, are necessary to meet the Customer's request. Design Changes include such changes as the addition or deletion of optional features or functions, a change in the type of Transport Termination or type of Channel interface. Any other changes are not considered Design Changes for purposes of this subsection and will require issuance of a new ASR and the cancellation of the original ASR with appropriate cancellation charges applied.

The Design Change Charge will apply on a per order, per occurrence basis for each order requiring a Design Change. The applicable charges, as set forth in Section 15.1.3.2 are in addition to any Service Date Change Charges that may apply.

12.2.2.3        Expedited Order Charge:

When placing an Access Order for service(s) for which a Standard Interval exists, a Customer may request a Service Commencement date that is earlier than the Standard Interval Service Date, in which case an Expedite Charge will apply. The Expedite Charge will not apply if the new Service Commencement Date is more than five days from the date of the request to the Company of the Expedited Order request. However, if upon reviewing availability of equipment and scheduled work load, Company agrees to provide service on an expedited basis and Customer accepts Company's proposal, an Expedite Charge will apply. If the Company is subsequently unable to meet an agreed upon expedited service date, then the Expedited Charge will not apply.

In the event the Company provides service on a expedited basis on the Customer's request, and the Customer delays service or is not ready for delivery of service at the time of installation, a Service Date Change Charge will apply in addition to the Expedite Charge

In the event that the Customer cancels an expedite request, the Expedite Charge will be added to any applicable Cancellation Charge specified herein

In the event that the Customer requests a Service Date Change after the Company has received the original expedite request, the Expedite Charge will still apply.

An Expedite Charge will not be applied to orders expedited for Company reasons.

Issued: May 7, 2002                                                    Effective: May 8, 2002

Issued by:        Thomas C. Stortz, Group Vice President and General Counsel
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 43
Replaces Original Page 43

## SECTION 12 - ORDERING OPTIONS FOR SWITCHED ACCESS SERVICE (CONT'D)

If costs other than additional administrative expenses are to be incurred when the Access Order is expedited, the regulations and charges for Special Construction as set forth in this tariff will apply.

The Expedited Order Charge will apply on a per order, per occurrence basis, as specified in Section 15.1.3.2.

12.2.3   Cancellation of an Access Service Request:

A Customer may cancel an ASR for the installation of Switching Access Service at any time prior to notification by the Company that service is available for the Customer's use. The cancellation date is the date the Company receives written or verbal notice from the Customer that the order is to be canceled. The verbal notice must be followed by written confirmation within 10 days. A customer may negotiate an extension of the service date of an ASR for installation of new service or rearrangement of existing service, in which case a Service Date Change Charge will apply. However, the new service date cannot exceed the originally established service date by more than 30 calendar days. On the 31st day beyond the original service date, the ASR will be canceled and the appropriate Cancellation Charge will be applied

Except as stated herein, Cancellation Charges will apply as specified in Section 15.1.3.3.

If the cancellation occurs prior to the Company's receiving the ASR, no charges shall apply.

Cancellation Charges for Expedited Orders will be applied for any order canceled from the Application Date forward.

If the Company misses a service date for a Standard or Negotiated Interval Access Order by more than 30 days due to circumstances such as acts of God, governmental requirements, work stoppages and civil disturbances, the Company shall not be liable for such delay and the Customer may cancel the ASR without incurring cancellation charges.

Issued:  May 7, 2002

Effective:  May 8, 2002

Issued by:     Thomas C. Stortz, Group Vice President and General Counsel
Level 3 Communications, LLC
1025 Eldorado Boulevard
Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Second Revised Page 44
Replaces First Revised Page 44

**SECTION 12 – ORDERING OPTIONS FOR SWITCHED ACCESS SERVICE (CONT'D)**

12.2.4   Minimum Period of Service.

The minimum period for which Third-Party Tandem Connect Service is provided     (C)
and for which charges are applicable is one month.

12.2.4.1 The following changes will be treated as a discontinuance of the existing
service and a request for installation of a new service. All associated Non-
Recurring Charges will apply for the new service, and a new minimum
period will be established:

(1)      A change in the identity of the Customer of record;
(2)      A move by the Customer to a different building;
(3)      A change in type of service;
(4)      A change in Switched Access Service Interface (i.e., DSL or
DS3);
(5)      A change in Switched Access Service Traffic Type;

12.2.4.2 When Access Service is disconnected prior to the expiration of the
minimum period, charges are applicable for the balance of the minimum
period. The Minimum Period Charge for monthly billed services will be
determined as follows:

For Switched Access Service, the charge for a month or fraction thereof is
the applicable minimum monthly charge for the capacity made available
to the Customer.

All applicable Non-Recurring Charges for the service will be billed in
addition to the Minimum Period Charge.

Issued:  December 23, 2010                                    Effective:  December 24, 2010

Issued by:        Vice President of Public Policy
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Third Revised Page 45
Replaces Second Revised Page 45

## SECTION 13 – CARRIER COMMON LINE SERVICE

The Company will provide Carrier Common Line Access Service (Carrier Common Line Access) to customers in conjunction with Switched Access Service provided in Section 14 of this Tariff.

13.1   General Description

Carrier Common Line Access provides for the use of Company provided common lines by Customers for access to End Users to furnish Communications Services.            (D)
                                                                        (T)

13.2   Limitations

13.2.1   Exclusions

Neither a telephone number nor detail billing are provided with Carrier Common Line Access.  Additionally, directory listings and intercept arrangements are not included in the rates and charges for Carrier Common Line Access.

13.2.2   Access Groups

All trunk side connections provided in the same access group will be limited to the same features and operating characteristics.

13.3   Undertaking of the Company

13.3.1   Provision of Service

Where the customer is provided Switched Access Service under other sections of this Tariff, the Company will provide the use of Company common lines by a Customer for access to the Company's End Users at rates and charges as set forth in 15.1.3 following.            (T)

13.3.2   Interstate and Intrastate Use

The Switched Access Service provided by the Company includes the Switched Access Service provided for both interstate and intrastate communications. The Carrier Common Line Access rates and charges as set forth in 15.1.3.4 following apply to interstate Switched Access Service access minutes.

Issued:  October 13, 2011                            Effective:  October 14, 2011

Issued by:      Vice President of Public Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Second Revised Page 46
Replaces First Revised Page 46

**SECTION 13 – CARRIER COMMON LINE SERVICE (CONT'D)**

13.4     Obligations of the Customer

     13.4.1   Switched Access Service Requirements

        The Switched Access Service associated with Carrier Common Line Access shall be ordered by the customer under other sections of this Tariff.

                                                    (D)
                                                    (D)

13.5     Determination of Usage Subject to Carrier Common Line Access Charges

     Except as set forth herein, all Switched Access Service provided to the customer will be subject to Carrier Common Line Access service.

     13.5.1   Determination of Jurisdiction

        When the customer reports interstate and intrastate use of Switched Access Service, the associated Carrier Common Line Access used by the customer for interstate will be determined as set forth in 3.4.1 (Percent Interstate Use – PIU).

13.6     Measuring and Recording of Call Detail

     When access minutes are used to determine Carrier Common Line charges, they will be accumulated using call detail recorded by Company equipment.  The Company measuring and recording equipment will be associated with end office or tandem switching equipment and will record each originating and terminating access minute.  The accumulated access minutes will be summed on a line by line basis, by line group or by end office, whichever type of account is used by the Company, for each Customer and then rounded to the nearest minute.

                                                      (C)
                                                      (C)

13.7     Supervision

                                                      (N)

     The Company shall provide the necessary on-hook and off-hook supervision.
                                                      (N)

Issued:  December 23, 2010

Effective:  December 24, 2010

Issued by:     Vice President of Public Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Second Revised Page 47
Replaces First Revised Page 47

**SECTION 13 – CARRIER COMMON LINE SERVICE (CONT'D)**

13.8    Billing of Charges                                                                    (T)

    13.8.1   Access minutes for all Switched Access Service subject to Carrier Common Line     (T)
        charges will be multiplied by the Access per minute rate as set forth in Section
        15.1.3.4 following.

13.9    Determination of Charges                                                             (T)

    13.9.1   Carrier Common Line charges will be billed to each Switched Access Service      (T)
        provided further under this Tariff, in accordance with the rates as set forth in
        Section 15.1.3.4 following.

    13.9.2   Carrier Common Line Access per minute charge (s) apply to:                      (T)

        A.    all terminating access minutes of use.

        B.    less those terminating access minutes of use associated with Mobile
            Telephone Switching Offices (MTSOs).

        C.    All originating access minutes of use associated with calls placed to 700,     (C)
            8XX and 900 numbers, less those originating access minutes of use       (C)
            associated with calls placed to 700, 8XX and 900 numbers for which the
            Customer furnishes for each month a report of either the number of calls
            or minutes or a report of the percent of calls or minutes that terminate in a
            Switched Access Service that is assessed Carrier Common Line charges.

            When the Customer makes this report available to the Company in
            advance of billing, these minutes of use will be charged on the current bill
            as originating minutes of use as set forth in (D) following.  If a billing
            dispute arises concerning the Customer provided report, the Company will
            request the Customer to provide the data the Customer used to develop the
            report.  The Company will not request such data more than once a year.
            The Customer shall supply the data within 30 days of the Telephone
            Company request.

            When this report is not available to the Company until after billing, it shall
            be used by the Company to calculate and post a credit to the Customer's
            account.  The credit shall be posted to the Customer's account within 30
            days of receipt of the report.  The credit shall be calculated by multiplying
            the number of access minutes of use, for which a credit is determined to
            be applicable, times the difference between the terminating and
            originating Carrier Common Line charges in effect when the calls were
            completed.

Issued:  July 17, 2018                                            Effective:  July 18, 2018

Issued by:    General Counsel – Regulatory Policy
           Level 3 Communications, LLC
           1025 Eldorado Boulevard
           Broomfield, CO 80021                         Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Second Revised Page 48
Replaces First Revised Page 48

## SECTION 13 – CARRIER COMMON LINE SERVICE (CONT'D)

    D.    The originating Access, per minute charge(s) apply to:

--    all originating access minutes of use,

--    all originating access minutes of use where the off-hook supervisory signaling is forwarded by the customer's equipment when the called party answers,

--    less all originating access minutes of use associated with calls placed to 700, 8XX and 900 numbers,    (C)

--    less those originating access minutes of use associated with Mobile Telephone Switching Offices (MTSOs),

--    plus all originating access minutes of use associated with calls placed to 700, 8XX and 900 numbers for which the Customer furnishes for each month a report of either the number of calls or minutes or a report of the percent of calls or minutes that term mate in a Switched Access Service that is assessed Carrier Common Line charges, and for which a corresponding reduction in the number of terminating access minutes of use has been made as set forth in (C) preceding.    (C)

---

Issued:  July 17, 2018

Effective:  July 18, 2018

Issued by:    General Counsel – Regulatory Policy
    Level 3 Communications, LLC
    1025 Eldorado Boulevard
    Broomfield, CO 80021    Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Third Revised Page 49
Replaces Second Revised Page 49

## SECTION 14 - SWITCHED ACCESS SERVICE

14.1    General

Switched Access Service, which is available to Customers for their use in furnishing their services to End Users, provides a communications path between a Customer's Premises and an End User whose Connection to the PSTN is provided by the Company or (if the Switched Access Service is provided by more than one local exchange carrier as provided in Section 4.2.9 of this Tariff) from another carrier whose network subtends the Company's facilities. It provides for the use of common terminating, switching and transport facilities. Switched Access Service provides the ability to originate calls from an End User's Connection to the PSTN to a Customer's Premises, and to terminate calls from a Customer's Premises to an End User's Connection to the PSTN.                    (C)

Rates and charges are set forth in Section 15. The application of rates for Switched Access Service is described in Section 15.1.3.4.

14.2    Provision and Description of Switched Access Service Agreements

Switched Access Service is provided in the following service type:

14.2.1    Feature Group D (FGD) Access

FGD Access, which is available to all customers, is provisioned at the DS1 level and provides trunk-side access to Company switches with an associated uniform 101-XXXX Access Code for Customer's use in originating and terminating communications. FGD service will be provided with SS7 signaling. (Multi-Frequency In-Band signaling may also be available, for a separate charge established under Section 11 of this Tariff.) End Users that obtain a Connection to the PSTN from the Company may also originate calls to certain FGD Access Customers without dialing the 101-XXXX Access Code if the End User is presubscribed, as described herein.                    (C)

The Access Code for FGD switching is a uniform Access Code of the form 101-XXXX. A single Access Code will be the assigned number of all FGD access provided to the Customer by the Company. No Access Code is required for calls to a Customer over FGD Switched Access Service if the End User's service is arranged for Presubscription to that Customer, as set forth herein                    (D)

Where no Access Code is required, the number dialed by the Customer's End User shall be a seven or ten digit number for calls in the North American Numbering Plan (NANP), except for 00- dialed calls which are routed to the predesignated Customer. For international calls outside the NANP, a seven to twelve digit number maybe dialed. The form of the numbers dialed by the End User is NXX-XXXX, 0 or 1 + NXX-XXXX, NPA + NXX-XXXX, 0 or 1 + NPA + NXX-XXXX, and when the Company's switch is equipped for International Direct Distance Dialing (IDDD), O+ CC + NN or 011 + CC + NN.                    (D) (C)

Issued:  October 13, 2011

Effective:  October 14, 2011

Issued by:        Vice President of Public Policy
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Fourth Revised Page 50
Replaces Third Revised Page 50

**SECTION 14 - SWITCHED ACCESS SERVICE (CONT'D)**

When the 101-XXXX Access Code is used, FGD switching also provides for dialing the digit 0 for access to the Customer's operator, 911 for access to the Company's emergency service, or the end-of-dialing digit (#) for cut-through access to the Customer's Premises.

In addition, End Users may originate calls by dialing the 950-XXXX Access Code specific to a particular Interexchange Carrier, provided that the Interexchange Carrier has subscribed to the Company's Feature Group D with 950 Access Common Switching Optional Feature. If the End User is presubscribed to that Interexchange Carrier, no Access Code is necessary.

14.2.2   Manner of Provision

Trunks used for Switched Access Service may be configured for one-way (either originating only or terminating only) or for two-way directionality. It is the Customer's responsibility to order a sufficient number of trunks of each type in order to meet its desired grade of service objective. At the Customer's request, the Company will assist the Customer in sizing Switched Access Trunk groups.

14.2.3   Serving Arrangements

The following serving arrangements may apply to Switched Access Service, depending on which the Customer uses:

A.   Local Connect
B.   Tandem Connect
C.   Third-Party Tandem Connect

(M)

(M)

(M)      Material moved to Page 50.1.

Issued:  July 17, 2018

Effective:  July 18, 2018

Issued by:       General Counsel – Regulatory Policy
                 Level 3 Communications, LLC
                 1025 Eldorado Boulevard
                 Broomfield, CO 80021                    Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Third Revised Page 50.1
Replaces Second Revised Page 50.1

## SECTION 14 - SWITCHED ACCESS SERVICE

14.2.3  Serving Arrangements (Cont'd)

14.2.3.1   **Local Connect Switched Access Service.**

Local Connect Switched Access Service is a service in which the End User obtains a Connection to the PSTN from the Company, and the Customer connects with the Company at a point of interconnection at the end office where the End User has obtained a Connection to the PSTN.  Unless the Customer chooses to provide its own facilities for connection, the Company will provide a connection (subject to the availability of facilities, as specified in Application of Tariff, Section 2.4.2, and Special Construction Section 11, above) between the Customer's Premises and the relevant Company switch.  This transmission path will be dedicated to the use of a single Customer.  Customer may specify a DS3 or DS1 connection.  Higher or lower data rates may be available on a Special Construction basis as provided in Section 11 of this Tariff.

(T-M)

(C)
(C)

(C)

Local Connect Switched Access Service is comprised of: (i) charges for Entrance Facilities/Direct Trunked Transport and DS1 Switch Ports (at the customer side of the end office switch); (ii) if applicable, a charge for multiplexing traffic from one data rate to another; (iii) a per-minute local switching charge; (iv) a per-minute carrier common line charge; (v) if applicable due to overflow a charge for tandem switching and transport; and (vi) where applicable, a toll-free database query charge (for outbound toll-free calls where Level 3 provides the query function).  These charges are set out in Section 15.1.3.4.11 of this Tariff.

(C)
(C)

(M)

(M1)

(M)    Material moved from Page 50.

(M1)   Material moved to Page 50.2

Issued:  July 17, 2018                                                      Effective:  July 18, 2018

Issued by:       General Counsel – Regulatory Policy
                 Level 3 Communications, LLC
                 1025 Eldorado Boulevard
                 Broomfield, CO 80021                              Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Third Revised Page 50.2
Replaces Second Revised Page 50.2

## SECTION 14 - SWITCHED ACCESS SERVICE (CONT'D)

14.2.3.2    **Tandem Connect Switched Access Service**                    (M)

Tandem Connect Switched Access Service is service in                    (C)
which either (a) the End User obtains a Connection to the
PSTN from the Company, or (b) the End-User obtains a
connection to the PSTN from a third party whose network
subtends the Company's network; and the Customer
physically connects with the Company at a point of
interconnection at one or more of the tandem switches
serving the end offices for which the Customer desires to
send or receive traffic. Unless the Customer chooses to                 (C)
provide its own facilities for connection, the Company will
provide a connection (subject to the availability of facilities,
as specified in Application of Tariff, 2.4.2, and 11.1.1,
above) between the Customer's Premises and a Company
point of interconnection in the same local access and
transport area.  This transmission path will be dedicated to
the use of a single Customer.  Customer may specify a DS3
or DS1 connection.  Higher or lower data rates may be
available on a Special Construction basis as provided in
Section 11 of this Tariff.

A connection from a Customer's network to the Company                    (C)
tandem will provide connectivity to all Company end offices
subtending that tandem and all third-party End Offices that
subtend the specific Company tandem. The Company will                    (C)
provide Customers a list of its Tandem locations upon
request, including a list of the Company and third-party End
Offices that subtend each tandem.                                        (M)

                                                                         (M1)

(M)     Material moved from Page 50.1

(M1)    Material moved to Page 50.4.

---

Issued:  July 17, 2018                          Effective:  July 18, 2018

Issued by:      General Counsel – Regulatory Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021                    Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 50.3
Replaces Original Revised Page 50.3

## SECTION 14 - SWITCHED ACCESS SERVICE (CONT'D)

14.2.3.2 **Tandem Connect Switched Access Service (Cont'd)**                    (M)

Tandem Connect Switched Access Service is comprised of:
(i) charges for Entrance Facilities/Direct Trunked Transport
and DS1 Switch Ports (at the Customer side of the tandem
switch); (ii) if applicable, a charge for multiplexing traffic
from one data rate to another; (iii) a per-minute Tandem
Switching charge; and (iv) a per-minute Tandem Switched
transport charge (capped at 10 miles of transport between
the Tandem Switch and the end office switch); (v) as          (C)
applicable a per minute local switching charge; (vi) an end
office common trunk port charge; (vii) as applicable a per
minute carrier common line charge; and (viii) as applicable,
a toll free database query charge (for the outbound toll free
calls where the Company provides the query function).         (C)
These charges are set out in Section 15.1.3.4.12 of this
Tariff.   These charges are in addition to any applicable end
office charges from the Company, as set out in Section
14.2.3.1, or the third-party network whose end office
subtends the Company's tandem, as the case may be.   If a
third party that subtends the Company's network provides
the End User's Connection to the PSTN, then billing by the
Company and the third party shall be as specified in 4.2.9
above.                                                        (M)

                                                              (D-M)

                                                              (D-M)


                                                              (M1)

                                                              (M1)




(M)     Material moved from Page 50.1.

(M1)    Material moved to Page 50.5 & 50.6.

Issued:  July 17, 2018                          Effective:  July 18, 2018

Issued by:      General Counsel – Regulatory Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021                     Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Original Page 50.4

---

## SECTION 14 - SWITCHED ACCESS SERVICE (CONT'D)

14.2.3.3    Third-Party Tandem Connect Switched Access* Service is provided in conjunction with a third-party provider of Tandem Switching in cases where the Company's Switch providing the End User's Connection to the PSTN subtends such third-party Tandem Switch.  Third Party Connect Switched Access Service consists of circuits from the point of interconnection with the third-party tandem provider to the Company's End Office Switch. This Third Party Tandem Connect rate category is comprised of a Minutes of Use (MOU) based End-Office switching and Tandem Switched transport charges.  Charges are computed in accordance with Section 4.2.9 preceding (Ordering, Rating, and Billing of Access Services Where More Than One Local Exchange Carrier is Involved).  Subject to and as specified there, with Third Party Tandem Connect Switched Access Service, Customer will pay Company for End Office switching and port charges, and carrier common line charges, as set forth in Section 15.1.3.4.1 and Section 15.1.3.4.2, and, typically, an appropriate portion of transport mileage as set out in Section 15.1.3.4.3.  Third-Party Tandem Connect Switched Access Service is available only with respect to (a) Company End Office switches that subtend a third party's tandem switch, and (b) on an incidental and transitional basis, Company End Offices that subtend a Company tandem, but where physical connections exist that permit the delivery of incidental traffic to the Company's End Office switch via the third party Tandem Switch.

(M)

(C)

The Company will provide, upon request, an identification of the Tandem Switch (Company or third party) that each of its End Offices subtends.  The Company will also reflect the tandems that each of its End Offices subtends in the Local Exchange Routing Guide or successor industry document.

\*  This service was previously known as "Tandem Connect" Service.

(M)

(M)    Material moved from Page 50.2.

---

Issued:  July 17, 2018

Effective:  July 18, 2018

Issued by:        General Counsel – Regulatory Policy
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021

Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Original Page 50.5

---

## SECTION 14 – SWITCHED ACCESS SERVICE (CONT'D)

14.2.4        **Entrance Facility/Direct Trunked Transport.**                                    (M)

Local Connect and Tandem Connect arrangements require the establishment of a connection between the Customer's premises and the relevant Company switch(es).  Such connection is established using an Entrance Facility/Direct Trunked Transport arrangement as described in this section.

14.2.4.1        **Entrance Facility/Direct Trunked Transport**.  An Entrance Facility/Direct Trunked Transport element provides the communication path between a Customer's Premises and a Telephone  (C) Company switch for the sole use of the customer.  As described in Section  (C) 15 of this Tariff, the Entrance Facility/Direct Trunked Transport element consists of a fixed monthly charge and a charge per mile per month, with mileage measured from the Customer's Premises to the relevant Telephone Company switch.  This arrangement is required whether the Customer's Premises and relevant Telephone Company switch are located in the same or different buildings (although where they are in the same building a zero mileage rate would apply).  Where facilities are available at the time of a Customer order, the Company will provide the Entrance Facility/Direct Trunked Transport at the rates specified in Sections 15.1.3.4.6 and 15.1.3.4.9, following.  Where facilities are not available at the time of a Customer order, the Customer may self-provision a connection from its Premises to the applicable Company point of interconnection, or the Company may provide the Entrance Facility on a Special Construction basis as specified in Section 11, preceding.

If a Customer has no Premises or facilities where a Company switch is  (C) located to which the Customer seeks to connect, the Company will arrange for transport from a mutually agreeable location where the Customer has  (C) Premises or facilities to where the relevant Company switch is located.  (C) Due to the variability of possible arrangements affected by this provision, the rate(s) applicable to any such arrangement will be developed on an individual basis in accordance with the provisions of Section 11 of this Tariff.                                                                                       (M)

---

(M)        Material moved from Page 50.3.

---

Issued:  July 17, 2018                                              Effective:  July 18, 2018

Issued by:        General Counsel – Regulatory Policy
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021                        Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Original Page 50.6

---

**SECTION 14 – SWITCHED ACCESS SERVICE (CONT'D)**

    14.2.4        **Entrance Facility/Direct Trunked Transport. (Cont'd)**    (M)

                14.2.4.2    **Multiplexing.**  The Company's switches use DS1 ports. A Customer may choose to deliver traffic to or receive traffic from the Company at the DS3 level, in which case multiplexing charges will apply as set forth in Section 15.1.3.4.5 following.

                14.2.4.3    **Switch Port.**  An Entrance Facility/Direct Trunked Transport arrangement will terminate in one or more DS1 ports on the relevant Company switch.  Charges for these ports will apply as set forth in Section 15.1.3.4.10 following.    (M)

(M)    Material moved from Page 50.3.

---

Issued:  July 17, 2018                Effective:  July 18, 2018

Issued by:    General Counsel – Regulatory Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021            Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Third Revised Page 51
Replaces Second Revised Page 51

**SECTION 14 – SWITCHED ACCESS SERVICE (CONT'D)**

(M)

|
|
|

(M)

14.2.5   Design Layout Report:                                                                (T)

At the request of the Customer, the Company will provide to the Customer the makeup of the facilities and services provided from the Customer's Premises to the first point of switching. This information will be provided in the form of a Design Layout Report. The Design Layout Report will be provided to the Customer at no charge.

14.2.6   Acceptance Testing:                                                                   (T)

At no additional charge, the Company will, at the Customer's request, cooperatively test, at the time of installation, the following parameters: loss, C-notched noise, C-message noise, 3-tons slope, d.c. continuity and operational signaling.

14.2.7   Ordering Options and Conditions:                                                      (T)

Switched Access Service is ordered under the Access Order provisions set forth in Section 12. Also included in that section are other charges which may be associated with ordering Switched Access Service.

Certain material previously appearing on this page now appears on Original Pages 50.1, 50.2, and 50.3

Issued:  December 23, 2010                                    Effective:  December 24, 2010

Issued by:        Vice President of Public Policy
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Sixth Revised Page 52
Replaces Fifth Revised Page 52

## SECTION 14 – SWITCHED ACCESS SERVICE (CONT'D)

14.2.8   Competitive Pricing Arrangements:

Competitive pricing arrangements for Local Transport - Entrance Facilities and Local Transport-Direct Trunked Transport can be furnished to meet the communications needs of specific Customers on a case by case basis under individual contracts. The competitive pricing arrangement contracts, once executed, will be filed with the appropriate state utilities commission under proprietary agreement.

14.2.9   Other Rate Categories

14.2.9.1   **Toll Free Data Base Access Service**                                    (C)

Toll Free Data Base Access Service is a service utilizing originating         (C)
Switched Access Service. When an 8XX + NXX + XXXX call is originated by an End User that obtains its Connection to the PSTN from the company, the Company will perform Customer identification based on screening of the full ten-digits of the 8XX number to determine the Customer location to which the call is to be routed. The Toll Free Data Base charge, which consists of a single, fixed rate         (C)
element, applies on a per query basis.

Chargeable Optional Feature
(a)   8XX Data Base Access Service: The Customer will be                    (C)
charged a per query charge based on a query of the 8XX-NXX-XXXX dialed and/or delivered to the Customer in conjunction with 8XX Data Base Access Service.                          (C)

14.2.9.2   **Toll Free Inter-Exchange Delivery Service**                              (C)

Toll Free Inter-Exchange Delivery Service is an access service in which the Company transports toll free traffic originated by a third party who is not an end user or other user of the Company's local exchange or exchange access service through its wire center to an Interexchange Carrier Customer. It provides for the use of the Tandem Switching, Tandem Termination, and Tandem Transport facilities of the Company.  In a Toll Free Inter-Exchange Delivery Service call, the Company will not charge Carrier Common Line, Local End Office Switching, or End Office Port charges.  The rates for Toll Free Inter-Exchange Delivery Service set forth in Section 15.1.3.4.8 is usage         (T)
sensitive.  Records exchange, rating, and billing for Toll Free Inter-Exchange Delivery Service is subject to the provisions of the Multiple Exchange Carrier Access Billing Guidelines (MECAB).

Issued:  July 17, 2018                                         Effective:  July 18, 2018

Issued by:        General Counsel – Regulatory Policy
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021                    Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Third Revised Page 52.1
Replaces Second Revised Page 52.1

**SECTION 14 – SWITCHED ACCESS SERVICE (CONT'D)**

14.2.9.3      **Pay Telephone Compensation**                                    (T)

When a toll-free number is dialed from a payphone and carried over the Company's facilities to an Interexchange Carrier Customer, the Interexchange Carrier Customer, or a successive carrier, may be responsible for compensating the Payphone Service Provider ("PSP") in accordance with the rules prescribed by the Federal Communications Commission ("FCC"). If the Interexchange Carrier Customer is not capable of reporting and/or remitting payphone compensation as prescribed by the FCC, it may contract with the Company to provide that service for an additional fee, to be determined in accordance with Section 11 of    (C)
this Tariff.   Unless the Interexchange Carrier requests such    (C)
service, no payphone compensation charge will be assessed by the Company to the Interexchange Carrier.

14.2.9.4      <u>National Feature Group D Access*</u>                          (T)

*Effective December 24, 2010, "National Feature Group D    (N)
Access" service as described in this section is no longer available to any customer who is not a customer of that service as of December 24, 2010.   Effective December 24, 2010, existing customesr of "National Feature Group D Access" service may not make additions, moves or changes this service or submit any new orders for this service.                                                          (N)

National Feature Group D (NFGD) Access is available to all Customers with a minimum of 20 million minutes of use on a monthly basis destined to or originating from Company's or Company's affiliated carriers' end offices.   NFGD provides centralized trunk side access through one or more network locations to Company's end office switches for the Customer's use in originating and terminating communications.   Out of band signaling is provided through Company's designated Signaling Transfer Points (STPs).

When necessary, a separate trunk group will be established for each type of FGD switching arrangement provided.   Different types of FGD or other switching arrangements may be combined in a single trunk group at the option of the Company.

Issued:  December 23, 2010                          Effective:  December 24, 2010

Issued by:      Vice President of Public Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 52.2
Replaces Original Page 52.2

**SECTION 14 – SWITCHED ACCESS SERVICE (CONT'D)**

14.2.9.4      <u>National Feature Group D Access</u> (Cont'd)*      (T)

NFGD is provided at Company's following locations:

| CITY | STATE | SITE CLLI |
|---|---|---|
| ATLANTA | GA | ATLNGAHP |
| CHICAGO | IL | CHCGILGM |
| CAMBRIDGE | MA | CMBRMAOR |
| CINCINNATI | OH | CNCNOHBV |
| DALLAS | TX | DLLATX37 |
| DENVER | CO | DNVTCO56 |
| HOUSTON | TX | HSTQTX02 |
| LOS ANGELES | CA | LSANCA54 |
| MCLEAN | VA | MCLNVA23 |
| MIAMI | FL | MIATFLAD |
| NEW YORK | NY | NYCMNY83 |
| PHILADELPHIA | PA | PHLAPAFG |
| PHOENIX | AZ | PHNDAZ91 |
| SOUTHFIELD | MI | SFLDMIDN |
| SAN DIEGO | CA | SNDACAGL |
| ST LOUIS | MO | STLSMOPL |
| SEATTLE | WA | STTNWAHO |
| TAMPA | FL | TAMRFLWS |
| SUNNYVALE | CA | SNVACAID |

14.2.9.4.1      Fixed Rate Elements      (T)

The following facility elements will be charged regardless of how NFGD access is provided at the rates for the state in which NFGD is established with a 100% Facility PIU irrespective of the actual current traffic mix:

- DS3 Entrance Facility (Section 15.1.3.4.9)
- DS3 Direct Trunk Transport for no more than or no less than 10 miles (Section 15.1.3.4.6)
- Multiplexing (Section 15.1.3.4.5)
- Port Charge(s) (Section 15.1.3.4.10)

Customers terminating traffic through the Company's NFGD service will not incur any intermediate carrier charges from the Company, such as Tandem Charges, to reach the Company's affiliates.

*Effective December 24, 2010, "National Feature Group D Access" service is no longer available to any customer who is not a customer of that service as of December 24, 2010. Effective December 24, 2010, existing customers of "National Feature Group D Access" service may not make additions, moves or changes this service or submit any new orders for this service.

Issued:  December 23, 2010          Effective:  December 24, 2010

Issued by:      Vice President of Public Policy
            Level 3 Communications, LLC
            1025 Eldorado Boulevard
            Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 52.3
Replaces Original Page 52.3

**SECTION 14 – SWITCHED ACCESS SERVICE (CONT'D)**

14.2.9.4     National Feature Group D Access (Cont'd)*                    (T)

14.2.9.4.2     Usage Rate Elements                    (T)

All Usage Rate Elements for traffic Originated or Terminated via NFGD, to or from Company or its affiliates, will be rated and charged by the Company as if it were transmitted directly to the Company or its affiliates in or from the LATA where the Company or its affiliate operates. The jurisdiction of the traffic will be determined by Company's switch recording systems or a Usage PIU as applicable.

The Usage Rate Elements that will apply to traffic delivered by Customer using NFGD are:
- Query Charges (Section 15.1.3.4.7)
- End Office Switching or Local Switching (Section 15.1.3.4.2)
- Carrier Common Line (Section 15.1.3.4.1)

For traffic originated by third parties other than the Customer and delivered by Company to the Customer over NFGD, the Company's Toll Free Interexchange Delivery Service (Section 15.1.3.4.8) will apply.

*Effective December 24, 2010, "National Feature Group D Access" service is no longer available to any customer who is not a customer of that service as of December 24, 2010. Effective December 24, 2010, existing customesr of "National Feature Group D Access" service may not make additions, moves or changes this service or submit any new orders for this service.

Issued:  December 23, 2010                    Effective:  December 24, 2010

Issued by:     Vice President of Public Policy
               Level 3 Communications, LLC
               1025 Eldorado Boulevard
               Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Fourth Revised Page 53
Replaces Third Revised Page 53

## SECTION 14 – SWITCHED ACCESS SERVICE (CONT'D)

14.3    Obligations of Company

In addition to the obligations of the Company set forth in other sections of this tariff. The Company has certain other obligations concerning the provision of Switched Access Service. These obligations are as follows:

14.3.1  **Network Management**

The Company will administer its Network to ensure the provision of acceptable service levels to all telecommunications users of the Company's Network Services.

Service levels are considered acceptable only when both End Users and Customers          (C)
are able to establish connections with little or no delay encountered within the          (C)
Company Network. Company reserves the right to apply protective controls, (i.e., those actions, such as call gapping, which selectively cancel the completion of traffic), over any traffic carried over its Network, including that associated with a Customer's Switched Access Service. Generally, such protective measures would only be taken as a result of occurrences such as failure or overload of Company or Customer facilities, natural disasters, mass calling or national security demands. Customer will notify Company of anticipated peaked services as stated below. Based on the information provided Company will work cooperatively with Customer to determine the appropriate level of control. In the event that the protective controls applied by Company result in the complete loss of service by Customer, Customer will be granted a credit allowance for service interruption as set forth in Section 9.

14.3.2  **Supervisory Signaling.**

The company's equipment shall provide the necessary On-Hook, Off-Hook answer and disconnect supervision.

Issued:  October 13, 2011                                    Effective:  October 14, 2011

Issued by:        Vice President of Public Policy
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021

## SECTION 14 – SWITCHED ACCESS SERVICE (CONT'D)

When a Customer uses the Company's facilities to offer services for which a substantial call volume or peaked service is expected during a short period of time, the Customer must notify the Company at least 24 hours in advance of each peak period. For events scheduled during weekends or holidays, the Company must be notified no later than 5:00 p.m. local time the prior business day. Notification should include the nature, time, duration, and frequency of the event, an estimated call volume, and the NPA NXX and line number(s) to be used.  On the basis of the information provided, the Company may invoke network management controls if required to reduce the probability of excessive Network congestion. The Company will work cooperatively with the Customer to determine the appropriate level of such control. Failure to provide prescribed notification may result in Customer caused Network congestion which could result in discontinuance of service under Section 4.5.2.

14.4     Obligations of the Customer                                                            (T)

In addition to obligations specified elsewhere in this tariff, the Customer has certain specific obligations pertaining to the use of Switched Access Service, as follows:

14.4.1   Report Requirements:

When a Customer orders Switched Access Service for both interstate and intrastate use, the Customer is responsible for providing Jurisdictional Reports as set forth in Section 3.4 preceding.  Charges will be apportioned in accordance with those reports.  The method for determining the intrastate charges is set forth therein (Section 3.4).

14.4.2   [reserved]

14.4.3   Design of Switched Access Services:

It is the Customer's responsibility to assure that sufficient Access Services have been ordered to handle its traffic.

Issued:  July 17, 2018                                                    Effective:  July 18, 2018

Issued by:        General Counsel – Regulatory Policy
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021                          Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Seventh Revised Page 55
Replaces Sixth Revised Page 55

## SECTION 15 – RATES AND CHARGES

15.1   Rates for Switched Access Services

There are three types of rates and charges that apply to Switched Access Service. These are Monthly Recurring Charges, usage rates and Non-Recurring Charges.

Monthly Recurring Charges: Monthly Recurring Charges are flat rates for facilities that apply each month or fraction thereof that a specific rate element is provided.

Usage Rates: Usage rates are rates that are applied on a per access minute or per query basis. Usage rates are accumulated over a monthly period.

Non-Recurring Charges: Non-Recurring charges are one time charges that apply for a specific work activity (i.e., installation of new service or change to an existing service).

(a)  Installation of Service: Non-Recurring charges apply to each Switched Access Service installed. The charge is applied per line or trunk.

15.1.1   Application of Rates

15.1.1.1      Local Connect:

The rates that apply for Local Connect Switched Access Service are: (i) charges for Entrance Facilities/Direct Trunked Transport and DS1 Switch Ports (at the customer side of the end office switch); (ii) if applicable, a charge for multiplexing traffic from one data rate to another; (iii) a per-minute local switching charge; (iv) a per-minute carrier common line charge; and (v) where applicable, a toll-free database query charge (for outbound toll-free calls where Level 3 provides the query function): and (vi) if applicable due to overflow, tandem switching and transport charges  These charges are set out in Section 15.1.3.4.11 of this Tariff.

(C)
|
(C)

(M)
|
(M)

(M)      Material moved to Page 55.1

Issued:  July 17, 2018

Effective:  July 18, 2018

Issued by:      General Counsel – Regulatory Policy
Level 3 Communications, LLC
1025 Eldorado Boulevard
Broomfield, CO 80021                    Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Original Page 55.1

---

**SECTION 15 – RATES AND CHARGES**

15.2     Rates for Switched Access Services (Cont'd)

15.1.1.2      Tandem Connect:                                           (M)

The rates that apply for Tandem Connect Switched Access
Service are: (i) charges for Entrance Facilities/Direct Trunked
Transport and DS1 Switch Ports (at the customer side of the
tandem switch); (ii) if applicable, a charge for multiplexing traffic
from one data rate to another; (iii) a per-minute Tandem
Switching charge; and (iv) a per-minute Tandem Switched
transport charge (capped at 10 miles of transport between the
Tandem Switch and the end office switch); (v) if applicable, a toll      (C)
free database query charge (for the outbound toll free calls where
Level 3 provides the query function); and (vi) if applicable end
office rate elements.   These charges are set out in Section          (C)
15.1.3.4.12 of this Tariff.   These charges are in addition to any
applicable end office charges from the Company, as set out in
Section 14.2.3.1, or the third-party network whose end office
subtends the Company's tandem, as the case may be.   If a third
party that subtends the Company's network provides the End User
with Connection to the PSTN, then billing by the Company and
the third party shall be as specified in 4.2.9 above.                    (M)

(M)      Material moved from Page 55.

---

Issued:  July 17, 2018                                    Effective:  July 18, 2018

Issued by:      General Counsel – Regulatory Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021                      Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Third Revised Page 56
Replaces Second Revised Page 56

---

**SECTION 15 – RATES AND CHARGES (Cont'd)**

15.1.1.2    Third-Party Tandem Connect:

The rates that apply for Third-Party Tandem Connect service are: (i) a tandem switched transport rate, as set out in section 15.1.3.4.5, determined in accordance with Section 4.2.9 of this tariff; and (ii) all applicable end office rates, as specified in Section 15.1.1.1 above (but not including entrance facility, direct trunk transport, or multiplexing charges where Company is not (C) providing these functions). (C)

15.1.2   Billing of Access Minutes:

When recording originating calls over FGD with SS7 signaling, usage measurement begins with the transmission of the initial address message by the switch for Trunk groups associated with Local Connect Switched Access Service and with the receipt of an exit message by the switch for Trunk groups associated with Tandem Connect Switched Access Service or Third Party Tandem Connect Switched Access Service. The measurement of originating FGD usage ends when the entry switch receives or sends a release message, whichever occurs first.

For terminating calls over FGD with SS7 signaling, the measurement of access minutes begins when the terminating recording switch receives the initial address message from the Customer's network.  The Company switch receives the initial address message and sends the indication to the Customer in the form of an answer message. The measurement of termination FGD call usage ends when the entry switch receives or sends a release message, whichever occurs first.

15.1.3   Rates and Charges

15.1.3.1    Service Implementation

A.    Installation Charge – Per Trunk

|  | Non-recurring Charge |
|---|---|
| DS0-Voice Grade | $99.00 |
| DS1 | $482.00 |
| DS3 | $528.00 |

15.1.3.2    Change Charges (Per Order)

|  |  | Per Occurrence |
|---|---|---|
| A. | Service Date | $10.00 |
| B. | Design Changes | $25.00 |
| C. | Expedite Charge | $60.00 |

15.1.3.3    Cancellation Charges (Per Order)          $25.00

---

Issued:  July 17, 2018

Effective:  July 18, 2018

Issued by:    General Counsel – Regulatory Policy
Level 3 Communications, LLC
1025 Eldorado Boulevard
Broomfield, CO 80021                                    Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Sixth Revised Page 57
Replaces Fifth Revised Page 57

**SECTION 15 – RATES AND CHARGES (CONT'D)**

15.1.3.4        Switched Access Rates By State                                    (M-T)

15.1.3.4.1   Carrier Common Line Rates

RATES PER ACCESS MINUTE

| | |
|---|---|
| Alabama | $0.0000 |
| Alaska | $0.0000 |
| Arizona | $0.0000 |
| Arkansas | $0.0000 |
| California | $0.0000 |
| Colorado | $0.0000 |
| Connecticut | $0.0000 |
| Delaware | $0.0000 |
| District of Columbia | $0.0000 |
| Florida | $0.0000 |
| Georgia | $0.0000 |
| Hawaii | $0.0000 |
| Idaho | $0.0000 |
| Illinois | $0.0000 |
| Indiana | $0.0000 |
| Iowa | $0.0000 |
| Kansas | $0.0000 |
| Kentucky | $0.0000 |
| Louisiana | $0.0000 |
| Maine | $0.0000 |
| Maryland | $0.0000 |
| Massachusetts | $0.0000 |
| Michigan | $0.0000 |
| Minnesota | $0.0000 |
| Mississippi | $0.0000 |
| Missouri | $0.0000 |
| Montana | $0.0000 |

(M-T)

Rates have been restructured to consolidate all Carrier Common Rates from pages 57-85.  The material previously on this page has been moved to the appropriate section on Pages 57-73.

Issued:  March 22, 2006                                              Effective:  April 1, 2005

Issued by:        Thomas C. Stortz, Senior Vice President and General Counsel
                         Level 3 Communications, LLC
                         1025 Eldorado Boulevard
                         Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Tenth Revised Page 58
Replaces Ninth Revised Page 58

## SECTION 15 – RATES AND CHARGES (CONT'D)

15.1.3.4     Switched Access Rates By State                          (N)

15.1.3.4.1   Carrier Common Line Rates (cont'd)            (T)

RATES PER ACCESS MINUTE

| | |
|---|---|
| Nebraska | $0.0000 |
| Nevada | $0.0000 |
| New Hampshire | $0.0000 |
| New Jersey | $0.0000 |
| New Mexico | $0.0000 |
| New York | $0.0000 |
| North Carolina | $0.0000 |
| North Dakota | $0.0000 |
| Ohio | $0.0000 |
| Oklahoma | $0.0000 |
| Oregon | $0.0000 |
| Pennsylvania | $0.0000 |
| Rhode Island | $0.0000 |
| South Carolina | $0.0000 |
| South Dakota | $0.0000 |
| Tennessee | $0.0000 |
| Texas | $0.0000 |
| Utah | $0.0000 |
| Vermont | $0.0000 |
| Virginia | $0.0000 |
| Washington | $0.0000 |
| West Virginia | $0.0000 |
| Wisconsin | $0.0000 |
| Wyoming | $0.0000 |

Issued:  July 17, 2018                                    Effective:  July 18, 2018

Issued by:     General Counsel – Regulatory Policy
               Level 3 Communications, LLC
               1025 Eldorado Boulevard
               Broomfield, CO 80021                  Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Fourteenth Revised Page 59
Replaces Thirteenth Revised Page 59

## SECTION 15 – RATES AND CHARGES (CONT'D)

15.1.3.4.2   Local End Office Switching Rates

RATES PER ACCESS MINUTE

| | Originating | Terminating |
|---|---|---|
| Alabama | $0.002126 (R) | $0.000000 |
| Alaska | $0.0174 | $0.000000 (R) |
| Arizona | $0.001974 | $0.000000 |
| Arkansas | $0.002563 | $0.000000 |
| California | $0.002620 | $0.000000 |
| Colorado | $0.001974 | $0.000000 |
| Connecticut | $0.003133 | $0.000000 |
| Delaware | $0.002406 | $0.000000 |
| District of Columbia | $0.002406 | $0.000000 |
| Florida | $0.002126 (R) | $0.000000 |
| Georgia | $0.002126 (R) | $0.000000 |
| Hawaii | $0.008820 | $0.000000 |
| Idaho | $0.001974 | $0.000000 |
| Illinois | $0.003116 | $0.000000 |
| Indiana | $0.003116 | $0.000000 |
| Iowa | $0.001974 | $0.000000 |
| Kansas | $0.002563 | $0.000000 |
| Kentucky | $0.002126 (R) | $0.000000 |
| Louisiana | $0.002126 (R) | $0.000000 |
| Maine | $0.002264 | $0.000000 |
| Maryland | $0.002406 | $0.000000 |
| Massachusetts | $0.002406 | $0.000000 |
| Michigan | $0.003116 | $0.000000 |
| Minnesota | $0.001974 | $0.000000 |
| Mississippi | $0.002126 (R) | $0.000000 |
| Missouri | $0.002563 | $0.000000 |
| Montana | $0.001974 | $0.000000 |

Issued:  July 17, 2018

Effective:  July 18, 2018

Issued by:      General Counsel - Regulatory Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021                    Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Sixteenth Revised Page 60
Replaces Fifteenth Revised Page 60

**SECTION 15 – RATES AND CHARGES (CONT'D)**

15.1.3.4.2    Local End Office Switching Rates (Cont'd)                    (T)

RATES PER ACCESS MINUTE

|  | Originating | Terminating |
|---|---|---|
| Nebraska | $0.001974 | $0.000000 |
| Nevada | $0.001342 | $0.000000 |
| New Hampshire | $0.002264 | $0.000000 |
| New Jersey | $0.002406 | $0.000000 |
| New Mexico | $0.001974 | $0.000000 |
| New York | $0.002406 | $0.000000 |
| North Carolina | $0.002126 (R) | $0.000000 |
| North Dakota | $0.001974 | $0.000000 |
| Ohio – CBT | $0.0038625 | $0.000000 |
| Ohio – Ameritech | $0.003116 | $0.000000 |
| Oklahoma | $0.002563 | $0.000000 |
| Oregon | $0.001974 | $0.000000 |
| Pennsylvania | $0.002406 | $0.000000 |
| Puerto Rico | $0.001385 | $0.000000 |
| Rhode Island | $0.002406 | $0.000000 |
| South Carolina | $0.002126 (R) | $0.000000 |
| South Dakota | $0.001974 | $0.000000 |
| Tennessee | $0.002126 (R) | $0.000000 |
| Texas | $0.002563 | $0.000000 |
| U.S. Virgin Islands | $0.001892 | $0.000000 |
| Utah | $0.001974 | $0.000000 |
| Vermont | $0.002264 | $0.000000 |
| Virginia | $0.002406 | $0.000000 |
| Washington | $0.001974 | $0.000000 |
| West Virginia | $0.002406 | $0.000000 |
| Wisconsin | $0.003116 | $0.000000 |
| Wyoming | $0.001974 | $0.000000 |

Issued:  July 17, 2018                                        Effective:  July 18, 2018

Issued by:       General Counsel – Regulatory Policy
                 Level 3 Communications, LLC
                 1025 Eldorado Boulevard
                 Broomfield, CO 80021                    Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Fourteenth Revised Page 61
Replaces Thirteenth Revised Page 61

**SECTION 15 – RATES AND CHARGES (CONT'D)**

15.1.3.4.2   Local End Office Switching Rates – Port Charge

RATES PER ACCESS MINUTE

| | Originating | Terminating | |
|---|---|---|---|
| Alabama | $0.0008 | $0.0000 | |
| Alaska | $0.0000 | $0.0000 | [R] |
| Arizona | $0.000747 | $0.0000 | |
| Arkansas | $0.0009 | $0.0000 | |
| California | $0.004696 | $0.0000 | |
| Colorado | $0.000747 | $0.0000 | |
| Connecticut | $0.0014 | $0.0000 | |
| Delaware | $0.001688 | | |
| District of Columbia | $0.001688 | | |
| Florida | $0.0008 | $0.0000 | |
| Georgia | $0.0008 | $0.0000 | |
| Hawaii | $0.0000 | $0.0000 | |
| Idaho | $0.000747 | $0.0000 | |
| Illinois | $0.000371 | $0.0000 | |
| Indiana | $0.000371 | $0.0000 | |
| Iowa | $0.000747 | $0.0000 | |
| Kansas | $0.0009 | $0.0000 | |
| Kentucky | $0.0008 | $0.0000 | |
| Louisiana | $0.0008 | $0.0000 | |
| Maine | $0.001595 | $0.0000 | |
| Maryland | $0.001688 | | |
| Massachusetts | $0.001688 | | |
| Michigan | $0.000371 | $0.0000 | |
| Minnesota | $0.000747 | $0.0000 | |
| Mississippi | $0.0008 | $0.0000 | |
| Missouri | $0.0009 | $0.0000 | |
| Montana | $0.000747 | $0.0000 | |

Issued:  July 14, 2017

Effective:  July 29, 2017

Issued by:   General Counsel - Regulatory Policy
Level 3 Communications, LLC
1025 Eldorado Boulevard
Broomfield, CO 80021

Transmittal No. 5

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Fourteenth Revised Page 62
Replaces Thirteenth Revised Page 62

---

**SECTION 15 – RATES AND CHARGES (CONT'D)**

15.1.3.4.2   Local End Office Switching Rates – Port Charge (Cont'd)          (T)

RATES PER ACCESS MINUTE

| | Originating | Terminating |
|---|---|---|
| Nebraska | $0.000747 | $0.0000 |
| Nevada | $0.001663 | $0.0000 |
| New Hampshire | $0.001595 | $0.0000 |
| New Jersey | $0.001688 | |
| New Mexico | $0.000747 | $0.0000 |
| New York | $0.001688 | |
| North Carolina | $0.0008 | $0.0000 |
| North Dakota | $0.000747 | $0.0000 |
| Ohio – CBT | $0.000968 | $0.0000 |
| Ohio – Ameritech | $0.000371 | $0.0000 |
| Oklahoma | $0.0009 | $0.0000 |
| Oregon | $0.000747 | $0.0000 |
| Pennsylvania | $0.001688 | |
| Puerto Rico | $0.000073 | $0.0000 (R) |
| Rhode Island | $0.001688 | |
| South Carolina | $0.0008 | $0.0000 |
| South Dakota | $0.000747 | $0.0000 |
| Tennessee | $0.0008 | $0.0000 |
| Texas | $0.0009 | $0.0000 |
| U.S. Virgin Islands | $0.000137 | $0.0000 |
| Utah | $0.000747 | $0.0000 |
| Vermont | $0.001595 | $0.0000 |
| Virginia | $0.001688 | |
| Washington | $0.000747 | $0.0000 |
| West Virginia | $0.001688 | $0.0000 |
| Wisconsin | $0.000371 | $0.0000 |
| Wyoming | $0.000747 | $0.0000 |

---

Issued:  July 17, 2018                                    Effective:  July 18, 2018

Issued by:      General Counsel – Regulatory Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021                      Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Twelfth Revised Page 63
Replaces Eleventh Revised Page 63

## SECTION 15 – RATES AND CHARGES (CONT'D)

15.1.3.4.3     Switched Transport Usage Rates – Switched Transport

       15.1.3.4.3.1    Originating                                  (T)

|  | Rates Per Access Minute | Rates Per Access Minute Per Mile | (M) |
|---|---|---|---|
| Alabama | $0.000168 | $0.000020 | |
| Alaska | $0.0000 | $0.000000 | |
| Arizona | $0.00024 | $0.000030 | |
| Arkansas | $0.000053 | $0.000003 | |
| California | $0.000075 | $0.000015 | |
| Colorado | $0.00024 | $0.000030 | |
| Connecticut | $0.000063 | $0.000003 | |
| Delaware | $0.0000 | $0.000002 | |
| District of Columbia | $0.0000 | $0.000002 | |
| Florida | $0.000168 | $0.000020 | |
| Georgia | $0.000168 | $0.000020 | |
| Hawaii | $0.0000 | $0.000000 | |
| Idaho | $0.00024 | $0.000030 | |
| Illinois | $0.000103 | $0.000013 | |
| Indiana | $0.000103 | $0.000013 | |
| Iowa | $0.00024 | $0.000030 | |
| Kansas | $0.000053 | $0.000003 | |
| Kentucky | $0.000168 | $0.000020 | |
| Louisiana | $0.000168 | $0.000020 | |
| Maine | $0.0000 | $0.000003 | |
| Maryland | $0.0000 | $0.000002 | |
| Massachusetts | $0.0000 | $0.000002 | |
| Michigan | $0.000103 | $0.000013 | |
| Minnesota | $0.00024 | $0.000030 | |
| Mississippi | $0.000168 | $0.000020 | |
| Missouri | $0.000053 | $0.000003 | |
| Montana | $0.00024 | $0.000030 | (M) |

[M] – Certain material previously found on this page is now located on Page 64.1 and 64.3.

Issued:  July 14, 2017                                      Effective:  July 29, 2017

Issued by:      General Counsel - Regulatory Policy
Level 3 Communications, LLC
1025 Eldorado Boulevard
Broomfield, CO 80021                         Transmittal No. 5

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Twelfth Revised Page 64
Replaces Eleventh Revised Page 64

**SECTION 15 – RATES AND CHARGES (CONT'D)**

15.1.3.4.3     Switched Transport Usage Rates – Switched Transport (cont'd.)     (T)

          15.1.3.4.3.1     Originating, (cont'd.)     (T)

|  | Rates Per Access Minute | Rates Per Access Minute Per Mile | (M) |
|---|---|---|---|
| Nebraska | $0.00024 | $0.000030 | |
| Nevada | $0.000120 | $0.000008 | |
| New Hampshire | $0.0000 | $0.000003 | |
| New Jersey | $0.0000 | $0.000002 | |
| New Mexico | $0.00024 | $0.000030 | |
| New York | $0.0000 | $0.000002 | |
| North Carolina | $0.000168 | $0.000020 | |
| North Dakota | $0.00024 | $0.000030 | |
| Ohio | $0.000600 | $0.000117 | |
| Oklahoma | $0.000053 | $0.000003 | |
| Oregon | $0.00024 | $0.000030 | |
| Pennsylvania | $0.0000 | $0.000002 | |
| Puerto Rico | $0.000225 | $0.000060 | |
| Rhode Island | $0.0000 | $0.000002 | |
| South Carolina | $0.000168 | $0.000020 | |
| South Dakota | $0.00024 | $0.000030 | |
| Tennessee | $0.000168 | $0.000020 | |
| Texas | $0.000053 | $0.000003 | |
| U.S. Virgin Islands | $0.000569 | $0.000016 | (M) |
| Utah | $0.00024 | $0.000030 | (N) |
| Vermont | $0.0000 | $0.000003 | (M) |
| Virginia | $0.0000 | $0.000002 | |
| Washington | $0.00024 | $0.000030 | |
| West Virginia | $0.0000 | $0.000002 | |
| Wisconsin | $0.000103 | $0.000013 | |
| Wyoming | $0.00024 | $0.000030 | (M) |

[M] – Certain material previously found on this page is now located on Page 64.2 and 64.4.

Issued:  July 14, 2017                                                        Effective:  July 29, 2017

Issued by:     General Counsel - Regulatory Policy
               Level 3 Communications, LLC
               1025 Eldorado Boulevard
               Broomfield, CO 80021                                    Transmittal No. 5

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Original Page 64.1

---

**SECTION 15 – RATES AND CHARGES (CONT'D)**

15.1.3.4.3      Switched Transport Usage Rates – Switched Transport (cont'd.)      (T)

        15.1.3.4.3.2      Terminating – To 3ʳᵈ Party      (T)

| | Rates Per Access Minute | Rates Per Access Minute Per Mile | |
|---|---|---|---|
| Alabama | $0.000168 | $0.000020 | (M) |
| Alaska | $0.0000 | $0.000000 | |
| Arizona | $0.00024 | $0.000030 | |
| Arkansas | $0.000053 | $0.000003 | |
| California | $0.000075 | $0.000015 | |
| Colorado | $0.00024 | $0.000030 | |
| Connecticut | $0.000063 | $0.000003 | |
| Delaware | $0.0000 | $0.000002 | |
| District of Columbia | $0.0000 | $0.000002 | |
| Florida | $0.000168 | $0.000020 | |
| Georgia | $0.000168 | $0.000020 | |
| Hawaii | $0.0000 | $0.000000 | |
| Idaho | $0.00024 | $0.000030 | |
| Illinois | $0.000103 | $0.000013 | |
| Indiana | $0.000103 | $0.000013 | |
| Iowa | $0.00024 | $0.000030 | |
| Kansas | $0.000053 | $0.000003 | |
| Kentucky | $0.000168 | $0.000020 | |
| Louisiana | $0.000168 | $0.000020 | |
| Maine | $0.0000 | $0.000003 | |
| Maryland | $0.0000 | $0.000002 | |
| Massachusetts | $0.0000 | $0.000002 | |
| Michigan | $0.000103 | $0.000013 | |
| Minnesota | $0.00024 | $0.000030 | |
| Mississippi | $0.000168 | $0.000020 | |
| Missouri | $0.000053 | $0.000003 | |
| Montana | $0.00024 | $0.000030 | (M) |

[M] – Certain material found on this page was previously located on Page 63

---

Issued:  July 14, 2017

Effective:  July 29, 2017

Issued by:      General Counsel - Regulatory Policy
        Level 3 Communications, LLC
        1025 Eldorado Boulevard
        Broomfield, CO 80021

Transmittal No. 5

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Original Page 64.2

---

**SECTION 15 – RATES AND CHARGES (CONT'D)**

15.1.3.4.3    Switched Transport Usage Rates – Switched Transport (cont'd.)    (T)

15.1.3.4.3.2    Terminating - To 3rd Party (cont'd.)    (T)

| | Rates Per Access Minute | Rates Per Access Minute Per Mile | |
|---|---|---|---|
| | | | (M) |
| Nebraska | $0.00024 | $0.000030 | |
| Nevada | $0.000120 | $0.000008 | |
| New Hampshire | $0.0000 | $0.000003 | |
| New Jersey | $0.0000 | $0.000002 | |
| New Mexico | $0.00024 | $0.000030 | |
| New York | $0.0000 | $0.000002 | |
| North Carolina | $0.000168 | $0.000020 | |
| North Dakota | $0.00024 | $0.000030 | |
| Ohio | $0.000600 | $0.000117 | |
| Oklahoma | $0.000053 | $0.000003 | |
| Oregon | $0.00024 | $0.000030 | |
| Pennsylvania | $0.0000 | $0.000002 | |
| Puerto Rico | $0.000225 | $0.000060 | |
| Rhode Island | $0.0000 | $0.000002 | |
| South Carolina | $0.000168 | $0.000020 | |
| South Dakota | $0.00024 | $0.000030 | |
| Tennessee | $0.000168 | $0.000020 | |
| Texas | $0.000053 | $0.000003 | (M) |
| U.S. Virgin Islands | $0.000569 | $0.000016 | (N) |
| Utah | $0.00024 | $0.000030 | (M) |
| Vermont | $0.0000 | $0.000003 | |
| Virginia | $0.0000 | $0.000002 | |
| Washington | $0.00024 | $0.000030 | |
| West Virginia | $0.0000 | $0.000002 | |
| Wisconsin | $0.000103 | $0.000013 | |
| Wyoming | $0.00024 | $0.000030 | (M) |

[M] – Certain material found on this page was previously located on Page 64.

---

Issued:  July 14, 2017                    Effective:  July 29, 2017

Issued by:    General Counsel - Regulatory Policy
              Level 3 Communications, LLC
              1025 Eldorado Boulevard
              Broomfield, CO 80021                    Transmittal No. 5

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 64.3
Replaces Original Page 64.3

**SECTION 15 – RATES AND CHARGES (CONT'D)**

15.1.3.4.3        Switched Transport Usage Rates – Switched Transport (cont'd.)

15.1.3.4.3.3        Terminating – To Company End Office

| | Rates Per Access Minute | Rates Per Access Minute Per Mile |
|---|---|---|
| Alabama | $0.000000 | $0.000000 |
| Alaska | $0.000000 | $0.000000 |
| Arizona | $0.000000 | $0.000000 |
| Arkansas | $0.000000 | $0.000000 |
| California | $0.000000 | $0.000000 |
| Colorado | $0.000000 | $0.000000 |
| Connecticut | $0.000000 | $0.000000 |
| Delaware | $0.000000 | $0.000000 (R) |
| District of Columbia | $0.000000 | $0.000000 (R) |
| Florida | $0.000000 | $0.000000 |
| Georgia | $0.000000 | $0.000000 |
| Hawaii | $0.000000 | $0.000000 |
| Idaho | $0.000000 | $0.000000 |
| Illinois | $0.000000 | $0.000000 |
| Indiana | $0.000000 | $0.000000 |
| Iowa | $0.000000 | $0.000000 |
| Kansas | $0.000000 | $0.000000 |
| Kentucky | $0.000000 | $0.000000 |
| Louisiana | $0.000000 | $0.000000 |
| Maine | $0.000000 | $0.000000 |
| Maryland | $0.000000 | $0.000000 |
| Massachusetts | $0.000000 | $0.000000 |
| Michigan | $0.000000 | $0.000000 |
| Minnesota | $0.000000 | $0.000000 |
| Mississippi | $0.000000 | $0.000000 |
| Missouri | $0.000000 | $0.000000 |
| Montana | $0.000000 | $0.000000 |

Issued:  July 17, 2018

Effective:  July 18, 2018

Issued by:        General Counsel – Regulatory Policy
                        Level 3 Communications, LLC
                        1025 Eldorado Boulevard
                        Broomfield, CO 80021                        Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Original Page 64.4

---

**SECTION 15 – RATES AND CHARGES (CONT'D)**

15.1.3.4.3      Switched Transport Usage Rates – Switched Transport (cont'd.)      (T)

        15.1.3.4.3.3      Terminating – To Company End Office, (cont'd.)      (T)

| | Rates Per Access Minute | | Rates Per Access Minute Per Mile | | (M) |
|---|---|---|---|---|---|
| Nebraska | $0.000000 | [R] | $0.000000 | [R] | |
| Nevada | $0.000000 | [R] | $0.000000 | [R] | |
| New Hampshire | $0.000000 | | $0.000000 | [R] | |
| New Jersey | $0.000000 | | $0.000000 | [R] | |
| New Mexico | $0.000000 | [R] | $0.000000 | [R] | |
| New York | $0.000000 | | $0.000000 | [R] | |
| North Carolina | $0.000000 | [R] | $0.000000 | [R] | |
| North Dakota | $0.000000 | [R] | $0.000000 | [R] | |
| Ohio | $0.000000 | [R] | $0.000000 | [R] | |
| Oklahoma | $0.000000 | [R] | $0.000000 | [R] | |
| Oregon | $0.000000 | [R] | $0.000000 | [R] | |
| Pennsylvania | $0.000000 | | $0.000000 | [R] | |
| Puerto Rico | $0.000000 | [R] | $0.000000 | [R] | |
| Rhode Island | $0.000000 | | $0.000000 | [R] | |
| South Carolina | $0.000000 | [R] | $0.000000 | [R] | |
| South Dakota | $0.000000 | [R] | $0.000000 | [R] | |
| Tennessee | $0.000000 | [R] | $0.000000 | [R] | |
| Texas | $0.000000 | [R] | $0.000000 | [R] | (M) |
| U.S. Virgin Islands | $0.000000 | | $0.000000 | [R] | (N) |
| Utah | $0.000000 | [R] | $0.000000 | [R] | (M) |
| Vermont | $0.000000 | | $0.000000 | [R] | |
| Virginia | $0.000000 | | $0.000000 | [R] | |
| Washington | $0.000000 | [R] | $0.000000 | [R] | |
| West Virginia | $0.000000 | | $0.000002 | | |
| Wisconsin | $0.000000 | [R] | $0.000000 | [R] | |
| Wyoming | $0.000000 | [R] | $0.000000 | [R] | (M) |

[M] – Certain material found on this page was previously located on Page 64.

---

Issued:  July 14, 2017                       Effective:  July 29, 2017

Issued by:      General Counsel - Regulatory Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021                Transmittal No. 5

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Eighth Revised Page 65
Replaces Seventh Revised Page 65

**SECTION 15 – RATES AND CHARGES (CONT'D)**

15.1.3.4.4        Switched Transport Usage Rates – Transport Interconnection

RATES PER ACCESS MINUTE                                    (T-M)

| | |
|---|---|
| Alabama | $0.0000 |
| Alaska | $0.0000 |
| Arizona | $0.0000 |
| Arkansas | $0.0000 |
| California | $0.0000 |
| Colorado | $0.0000 |
| Connecticut | $0.0000 |
| Delaware | $0.0000 |
| District of Columbia | $0.0000 |
| Florida | $0.0000 |
| Georgia | $0.0000 |
| Hawaii | $0.0000 |
| Idaho | $0.0000 |
| Illinois | $0.0000 |
| Indiana | $0.0000 |
| Iowa | $0.0000 |
| Kansas | $0.0000 |
| Kentucky | $0.0000 |
| Louisiana | $0.0000 |
| Maine | $0.0000 |
| Maryland | $0.0000 |
| Massachusetts | $0.0000 |
| Michigan | $0.0000 |
| Minnesota | $0.0000 |
| Mississippi | $0.0000 |
| Missouri | $0.0000 |
| Montana | $0.0000 |

(T-M)

Rates have been restructured to consolidate all Transport Interconnection rates from pages 57-85.
The material previously on this page has been moved to the appropriate section on Pages 57-73.

Issued:  March 22, 2006                                    Effective:  April 1, 2006

Issued by:        Thomas C. Stortz, Group Vice President and General Counsel
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Ninth Revised Page 66
Replaces Eighth Revised Page 66

---

**SECTION 15 – RATES AND CHARGES (CONT'D)**

      15.1.3.4.4    Switched Transport Usage Rates – Transport Interconnection    (T)
                        (Cont'd)

| | RATES PER ACCESS MINUTE |
|---|---|
| Nebraska | $0.0000 |
| Nevada | $0.0000 |
| New Hampshire | $0.0000 |
| New Jersey | $0.0000 |
| New Mexico | $0.0000 |
| New York | $0.0000 |
| North Carolina | $0.0000 |
| North Dakota | $0.0000 |
| Ohio | $0.0000 |
| Oklahoma | $0.0000 |
| Oregon | $0.0000 |
| Pennsylvania | $0.0000 |
| Rhode Island | $0.0000 |
| South Carolina | $0.0000 |
| South Dakota | $0.0000 |
| Tennessee | $0.0000 |
| Texas | $0.0000 |
| Utah | $0.0000 |
| Vermont | $0.0000 |
| Virginia | $0.0000 |
| Washington | $0.0000 |
| West Virginia | $0.0000 |
| Wisconsin | $0.0000 |
| Wyoming | $0.0000 |

---

Issued:  July 17, 2018

Effective:  July 18, 2018

Issued by:    General Counsel – Regulatory Policy
              Level 3 Communications, LLC
              1025 Eldorado Boulevard
              Broomfield, CO 80021              Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Ninth Revised Page 67
Replaces Eighth Revised Page 67

**SECTION 15 – RATES AND CHARGES (CONT'D)**

15.1.3.4.5        Switched Transport Usage Rates – Tandem Switching & Multiplexing

        15.1.3.4.5.1     Originating                                                                 (T)

RATES PER ACCESS MINUTE

| | Tandem Switching | Multiplexing DS3 to DS1 | |
|---|---|---|---|
| Alabama | $0.001145 | N/A | (M) |
| Alaska | $0.0000 | N/A | |
| Arizona | $0.002252 | $0.000036 | |
| Arkansas | $0.000288 | N/A | |
| California | $0.000440 | $0.000098 | |
| Colorado | $0.002252 | $0.000036 | |
| Connecticut | $0.000634 | N/A | |
| Delaware | $0.001574 | N/A | |
| District of Columbia | $0.001574 | N/A | |
| Florida | $0.001145 | $0.000380 | |
| Georgia | $0.001145 | $0.000380 | |
| Hawaii | $0.0000 | N/A | |
| Idaho | $0.002252 | N/A | |
| Illinois | $0.001084 | $0.000015 | |
| Indiana | $0.001084 | N/A | |
| Iowa | $0.002252 | N/A | |
| Kansas | $0.000288 | N/A | |
| Kentucky | $0.001145 | N/A | |
| Louisiana | $0.001145 | N/A | |
| Maine | $0.001600 | N/A | |
| Maryland | $0.001574 | N/A | |
| Massachusetts | $0.001574 | $0.0000 | |
| Michigan | $0.001084 | $0.000015 | |
| Minnesota | $0.002252 | N/A | |
| Mississippi | $0.001145 | N/A | |
| Missouri | $0.000288 | $0.000047 | |
| Montana | $0.002252 | N/A | (M) |

[M] – Certain material previously found on this page is now located on Page 68.1 and 68.3.

Issued:  July 14, 2017                                                     Effective:  July 29, 2017

Issued by:        General Counsel - Regulatory Policy
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021                                       Transmittal No. 5

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Twelfth Revised Page 68
Replaces Eleventh Revised Page 68

**SECTION 15 – RATES AND CHARGES (CONT'D**

15.1.3.4.5      Switched Transport Usage Rates – Tandem Switching & Multiplexing, (cont'd.)      (T)

15.1.3.4.5.1    Originating, (cont'd.)      (T)

RATES PER ACCESS MINUTE

| | Tandem Switching | Multiplexing DS3 to DS1 | |
|---|---|---|---|
| Nebraska | $0.002252 | N/A | (M) |
| Nevada | $0.001062 | N/A | |
| New Hampshire | $0.001600 | N/A | |
| New Jersey | $0.001574 | N/A | |
| New Mexico | $0.002252 | N/A | |
| New York | $0.001574 | $0.0000 | |
| North Carolina | $0.001145 | N/A | |
| North Dakota | $0.002252 | N/A | |
| Ohio | $0.002001 | $0.000240 | |
| Oklahoma | $0.000288 | N/A | |
| Oregon | $0.002252 | N/A | |
| Pennsylvania | $0.001574 | $0.0000 | |
| Puerto Rico | $0.003236 | $0.000052 | |
| Rhode Island | $0.001574 | N/A | |
| South Carolina | $0.001145 | N/A | |
| South Dakota | $0.002252 | N/A | |
| Tennessee | $0.001145 | N/A | |
| Texas | $0.000288 | $0.000047 | (M) |
| U.S. Virgin Islands | $0.002821 | $0.000143 | (N) |
| Utah | $0.002252 | N/A | (M) |
| Vermont | $0.001600 | N/A | |
| Virginia | $0.001574 | $0.0000 | |
| Washington | $0.002252 | $0.000036 | |
| West Virginia | $0.001574 | N/A | |
| Wisconsin | $0.001084 | N/A | |
| Wyoming | $0.002252 | N/A | (M) |

[M] – Certain material previously found on this page is now located on Page 68.2 and 68.4.

Issued:  July 14, 2017

Effective:  July 29, 2017

Issued by:      General Counsel - Regulatory Policy
Level 3 Communications, LLC
1025 Eldorado Boulevard
Broomfield, CO 80021                                    Transmittal No. 5

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Original Page 68.1

---

**SECTION 15 – RATES AND CHARGES (CONT'D**

15.1.3.4.5      Switched Transport Usage Rates – Tandem Switching & Multiplexing, (cont'd.)    (T)

      15.1.3.4.5.2    Terminating – To 3rd Party    (T)

RATES PER ACCESS MINUTE

| | Tandem Switching | Multiplexing DS3 to DS1 | |
|---|---|---|---|
| Alabama | $0.001145 | N/A | (M) |
| Alaska | $0.000000 | N/A | |
| Arizona | $0.002252 | $0.000036 | |
| Arkansas | $0.000288 | N/A | |
| California | $0.000440 | $0.000098 | |
| Colorado | $0.002252 | $0.000036 | |
| Connecticut | $0.000634 | N/A | |
| Delaware | $0.001574 | N/A | |
| District of Columbia | $0.001574 | N/A | |
| Florida | $0.001145 | $0.000380 | |
| Georgia | $0.001145 | $0.000380 | |
| Hawaii | $0.000000 | N/A | |
| Idaho | $0.002252 | N/A | |
| Illinois | $0.001084 | $0.000015 | |
| Indiana | $0.001084 | N/A | |
| Iowa | $0.002252 | N/A | |
| Kansas | $0.000288 | N/A | |
| Kentucky | $0.001145 | N/A | |
| Louisiana | $0.001145 | N/A | |
| Maine | $0.001600 | N/A | |
| Maryland | $0.001574 | N/A | |
| Massachusetts | $0.001574 | $0.0000 | |
| Michigan | $0.001084 | $0.000015 | |
| Minnesota | $0.002252 | N/A | |
| Mississippi | $0.001145 | N/A | |
| Missouri | $0.000288 | $0.000047 | |
| Montana | $0.002252 | N/A | (M) |

[M] – Certain material found on this page was previously located on Page 67.

---

Issued:  July 14, 2017

Effective:  July 29, 2017

Issued by:    General Counsel - Regulatory Policy
Level 3 Communications, LLC
1025 Eldorado Boulevard
Broomfield, CO 80021    Transmittal No. 5

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Original Page 68.2

---

**SECTION 15 – RATES AND CHARGES (CONT'D**

15.1.3.4.5      Switched Transport Usage Rates – Tandem Switching & Multiplexing, (cont'd.)          (T)

      15.1.3.4.5.2      Terminating – To 3rd Party, (cont'd.)          (T)

RATES PER ACCESS MINUTE

| | Tandem Switching | Multiplexing DS3 to DS1 | |
|---|---|---|---|
| Nebraska | $0.002252 | N/A | (M) |
| Nevada | $0.001062 | N/A | |
| New Hampshire | $0.001600 | N/A | |
| New Jersey | $0.001574 | N/A | |
| New Mexico | $0.002252 | N/A | |
| New York | $0.001574 | $0.0000 | |
| North Carolina | $0.001145 | N/A | |
| North Dakota | $0.002252 | N/A | |
| Ohio | $0.002001 | $0.000240 | |
| Oklahoma | $0.000288 | N/A | |
| Oregon | $0.002252 | N/A | |
| Pennsylvania | $0.001574 | $0.0000 | |
| Puerto Rico | $0.003236 | $0.000052 | |
| Rhode Island | $0.001574 | N/A | |
| South Carolina | $0.001145 | N/A | |
| South Dakota | $0.002252 | N/A | |
| Tennessee | $0.001145 | N/A | |
| Texas | $0.000288 | $0.000047 | (M) |
| U.S. Virgin Islands | $0.002821 | $0.000143 | (N) |
| Utah | $0.002252 | N/A | (M) |
| Vermont | $0.001600 | N/A | |
| Virginia | $0.001574 | $0.0000 | |
| Washington | $0.002252 | $0.000036 | |
| West Virginia | $0.001574 | N/A | |
| Wisconsin | $0.001084 | N/A | |
| Wyoming | $0.002252 | N/A | (M) |

[M] – Certain material found on this page was previously located on Page 68.

---

Issued:  July 14, 2017

Effective:  July 29, 2017

Issued by:      General Counsel - Regulatory Policy
Level 3 Communications, LLC
1025 Eldorado Boulevard
Broomfield, CO 80021                                        Transmittal No. 5

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 68.3
Replaces Original Page 68.3

**SECTION 15 – RATES AND CHARGES (CONT'D**

15.1.3.4.5     Switched Transport Usage Rates – Tandem Switching & Multiplexing, (cont'd.)

15.1.3.4.5.3     Terminating – To Company End Office

RATES PER ACCESS MINUTE

| | Tandem Switching | Multiplexing DS3 to DS1 |
|---|---|---|
| Alabama | $0.000000 (R) | N/A |
| Alaska | N/A | N/A |
| Arizona | $0.000000 (R) | $0.000000 (R) |
| Arkansas | $0.000000 | N/A |
| California | $0.000000 | $0.000000 (R) |
| Colorado | $0.000000 | $0.000000 |
| Connecticut | $0.000000 | N/A |
| Delaware | $0.000000 | N/A |
| District of Columbia | $0.000000 | N/A |
| Florida | $0.000000 | $0.000000 |
| Georgia | $0.000000 (R) | $0.000000 |
| Hawaii | $0.000000 | N/A |
| Idaho | $0.000000 (R) | N/A |
| Illinois | $0.000000 | $0.000000 |
| Indiana | $0.000000 | N/A |
| Iowa | $0.000000 | N/A |
| Kansas | $0.000000 | N/A |
| Kentucky | $0.000000 | N/A |
| Louisiana | $0.000000 | N/A |
| Maine | $0.000000 | N/A |
| Maryland | $0.000000 | N/A |
| Massachusetts | $0.000000 | $0.000000 |
| Michigan | $0.000000 | $0.000000 |
| Minnesota | $0.000000 | N/A |
| Mississippi | $0.000000 | N/A |
| Missouri | $0.000000 | $0.000000 |
| Montana | $0.000000 (R) | N/A |

Issued:  July 17, 2018                                                                 Effective:  July 18, 2018

Issued by:     General Counsel - Regulatory Policy
                    Level 3 Communications, LLC
                    1025 Eldorado Boulevard
                    Broomfield, CO 80021                                    Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 68.4
Replaces Original Page 68.4

**SECTION 15 – RATES AND CHARGES (CONT'D**

15.1.3.4.5      Switched Transport Usage Rates – Tandem Switching & Multiplexing, (cont'd.)

        15.1.3.4.5.3      Terminating – To Company End Office, (cont'd.)

RATES PER ACCESS MINUTE

| | Tandem Switching | Multiplexing DS3 to DS1 |
|---|---|---|
| Nebraska | $0.000000 (R) | N/A |
| Nevada | $0.000000 (R) | N/A |
| New Hampshire | $0.000000 | N/A |
| New Jersey | $0.000000 | N/A |
| New Mexico | $0.000000 | N/A |
| New York | $0.000000 | $0.0000 |
| North Carolina | $0.000000 | N/A |
| North Dakota | $0.000000 | N/A |
| Ohio | $0.000000 | $0.00000 |
| Oklahoma | $0.000000 | N/A |
| Oregon | $0.000000 | N/A |
| Pennsylvania | $0.000000 | $0.0000 |
| Puerto Rico | $0.000000 | $0.0000 |
| Rhode Island | $0.000000 | N/A |
| South Carolina | $0.000000 | N/A |
| South Dakota | $0.000000 | N/A |
| Tennessee | $0.000000 | N/A |
| Texas | $0.000000 | $0.0000 |
| U.S. Virgin Islands | $0.000000 | N/A |
| Utah | $0.000000 | N/A |
| Vermont | $0.000000 | N/A |
| Virginia | $0.000000 | $0.0000 |
| Washington | $0.000000 | $0.0000 |
| West Virginia | $0.000000 | N/A |
| Wisconsin | $0.000000 | N/A |
| Wyoming | $0.000000 (R) | N/A |

Issued:  July 17, 2018                                                     Effective:  July 18, 2018

Issued by:      General Counsel - Regulatory Policy
               Level 3 Communications, LLC
               1025 Eldorado Boulevard
               Broomfield, CO 80021                                    Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Tenth Revised Page 69
Replaces Ninth Revised Page 69

## SECTION 15 – RATES AND CHARGES (CONT'D)
### 15.1.3.4.1   Direct Trunked Transport

| Monthly Recurring Charges | | Fixed | Per Mile | |
|---|---|---|---|---|
| | | | | (D) |
| | | | | (D) |
| Arizona | DS1 | $45.27 | $6.85 | |
| | DS3 | $412.09 | $45.79 | |
| | | | | (D) |
| | | | | (D) |
| California | DS1 | $25.00 | $3.50 | |
| | DS3 | $188.98 | $10.57 | |
| Colorado | DS1 | $45.27 | $6.85 | |
| | DS3 | $412.09 | $45.79 | |
| | | | | (D) |
| | | | | |
| | | | | (D) |
| Florida | DS1 | $60.78 | $15.20 | |
| | DS3 | $972.54 | $97.25 | |
| Georgia | DS1 | $60.78 | $15.20 | |
| | DS3 | $972.54 | $97.25 | |
| | | | | (D) |
| | | | | (D) |

Issued:  August 26, 2009

Effective:  August 27, 2009

Issued by:     William P. Hunt, III, Vice President of Public Policy
Level 3 Communications, LLC
1025 Eldorado Boulevard
Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Tenth Revised Page 70
Replaces Ninth Revised Page 70

**SECTION 15 – RATES AND CHARGES**

15.1.3.4.2   Direct Trunked Transport (Cont'd)                          (T)

| | **Monthly** | **12 Mo.** | **36 Mo.** | **60 Mo.** |
|---|---|---|---|---|
| Illinois | | | | |
| Direct Trunked Transport | | | | |
| DS1 | $32.00 | $14.00 | $12.84 | $11.80 |
| DS3 | $351.00 | $132.84 | $121.77 | $110.70 |
| Direct Transport Channel Mileage (per mile) | | | | |
| DS1 | $13.55 | $5.90 | $5.45 | $4.80 |
| DS3 | $57.30 | $21.60 | $19.80 | $18.00 |

| Monthly Recurring Charges | | Fixed | Per Mile |
|---|---|---|---|
| Massachusetts | DS1 | $50.00 | $16.80 |
| | DS3 | $825.00 | $155.03 |

---

Issued:  July 17, 2018                                    Effective:  July 18, 2018


Issued by:        General Counsel – Regulatory Policy
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021                    Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Tenth Revised Page 71
Replaces Ninth Revised Page 71

## SECTION 15 – RATES AND CHARGES (CONT'D)

15.1.3.4.1   Direct Trunked Transport (Cont'd)                    (T)

| Monthly Recurring Charges | | Fixed | Per Mile |
|---|---|---|---|
| Michigan | DS1 | $31.85 | $13.55 |
| | DS3 | $294.00 | $54.18 |
| Missouri | DS1 | $27.40 | $4.34 |
| | DS3 | $556.00 | $36.80 |

Issued:  July 17, 2018                                   Effective:  July 18, 2018

Issued by:      General Counsel – Regulatory Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021                     Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Tenth Revised Page 72
Replaces Ninth Revised Page 72

## SECTION 15 – RATES AND CHARGES (CONT'D)

15.1.3.4.1   Direct Trunked Transport (Cont'd)                                  (T)

| Monthly Recurring Charges | | Fixed | Per Mile |
|---|---|---|---|
| New York | DS1 | $50.00 | $16.80 |
| | DS3 | $825.00 | $155.03 |
| | | | |
| Ohio | DS1 | $31.85 | $13.55 |
| | DS3 | $294.00 | $54.18 |
| | | | |
| Pennsylvania | DS1 | $46.66 | $14.25 |
| | DS3 | $825.00 | $155.03 |
| | | | |
| Puerto Rico | DS1 | $12.77 | $ 3.89 |
| | DS3 | $110.34 | $31.66 |

Issued:  July 17, 2018                                              Effective:  July 18, 2018

Issued by:        General Counsel – Regulatory Policy
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021                    Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Eleventh Revised Page 73
Replaces Tenth Revised Page 73

## SECTION 15 – RATES AND CHARGES (CONT'D)

15.1.3.4.1   Direct Trunked Transport (Cont'd)                    (T)

| Monthly Recurring Charges | | Fixed | Per Mile |
|---|---|---|---|
| Texas | DS1 | $27.40 | $4.34 |
| | DS3 | $556.00 | $36.80 |
| U.S. Virgin Islands | DS1 | $78.44 | $   1.40 |
| | DS3 | $595.61 | $149.65 |
| Virginia | DS1 | $46.66 | $14.25 |
| | DS3 | $825.00 | $155.03 |
| Washington | DS1 | $45.27 | $6.85 |
| | DS3 | $412.09 | $45.79 |

Issued:  July 17, 2018                                    Effective:  July 18, 2018

Issued by:      General Counsel – Regulatory Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021                    Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Twelfth Revised Page 74
Replaces Eleventh Revised Page 74

**SECTION 15 – RATES AND CHARGES (CONT'D)**

15.1.3.4.7   Toll Free Data Base Access Service – Basic Query   (C)

| | Per Query |
|---|---|
| Alabama | $0.004210 |
| Alaska | $0.003700 |
| Arkansas | $0.002531 |
| Arizona | $0.004053 |
| California | $0.004777 |
| Colorado | $0.004053 |
| Connecticut | $0.003393 |
| District of Columbia | $0.004356 |
| Delaware | $0.004356 |
| Florida | $0.004210 |
| Georgia | $0.004210 |
| Hawaii | $0.008160 |
| Idaho | $0.004053 |
| Illinois | $0.002304 |
| Indiana | $0.002304 |
| Iowa | $0.004053 |
| Kansas | $0.002531 |
| Kentucky | $0.004210 |
| Louisiana | $0.004210 |
| Maine | $0.003702 |
| Maryland | $0.004356 |
| Massachusetts | $0.004356 |
| Michigan | $0.002304 |
| Minnesota | $0.004053 |
| Mississippi | $0.004210 |
| Missouri | $0.002531 |
| Montana | $0.004053 |
| Nebraska | $0.004053 |
| Nevada | $0.005177 |
| New Hampshire | $0.003702 |
| New Jersey | $0.004356 |
| New Mexico | $0.004053 |
| New York | $0.004356 |
| North Carolina | $0.004210 |
| North Dakota | $0.004053 |
| Ohio | $0.002391 |
| Oklahoma | $0.002531 |
| Oregon | $0.004053 |
| Pennsylvania | $0.004356 |

Issued:  July 17, 2018

Effective:  July 18, 2018

Issued by:   General Counsel – Regulatory Policy
Level 3 Communications, LLC
1025 Eldorado Boulevard
Broomfield, CO 80021

Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Fourteenth Revised Page 75
Replaces Thirteenth Revised Page 75

## SECTION 15 – RATES AND CHARGES (CONT'D)

15.1.3.4.7    Toll Free Data Base Access Service – Basic Query    (C)
(Cont'd)

                        Per Query

Puerto Rico              $0.004141
Rhode Island             $0.004356
South Carolina           $0.004210
South Dakota             $0.004053
Tennessee                $0.004210
Texas                    $0.002531
Utah                     $0.004053
U. S. Virgin Islands     $0.007744              (N)
Vermont                  $0.003702
Virginia                 $0.004356
Washington               $0.004053
West Virginia            $0.004356
Wisconsin                $0.002304
Wyoming                  $0.004053

Issued:  July 17, 2018                              Effective:  July 18, 2018

Issued by:       General Counsel – Regulatory Policy
                 Level 3 Communications, LLC
                 1025 Eldorado Boulevard
                 Broomfield, CO 80021                Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Ninth Revised Page 76
Replaces Eighth Revised Page 76

---

**SECTION 15 – RATES AND CHARGES (CONT'D)**

15.1.3.4.8    Toll Free Inter-Exchange Delivery Service

Interstate

| State | Miles | Tandem Switching | Tandem Termination | Tandem Transport |
|-------|-------|------------------|--------------------|--------------------|
| | 0 to 8 | $0.002252[R] | $0.000240[I] | $0.000030[R] |
| | 8 to 25 | | $0.000240[I] | $0.000030[I] |
| | 25 to 50 | | $0.000240[I] | $0.000030[I] |
| AZ | 50+ | | $0.000240 | $0.000030[I] |
| AL | | $0.001145[R] | $0.000168 | $0.000020 |
| AR | | $0.000288[R] | $0.000053 | $0.000003 |
| CA | | $0.000440[R] | $0.000075 | $0.000015 |
| | 0 to 8 | $0.002252[R] | $0.000240[I] | $0.000030[R] |
| | 8 to 25 | | $0.000240[I] | $0.000030[I] |
| | 25 to 50 | | $0.000240[I] | $0.000030[I] |
| CO | 50+ | | $0.000240 | $0.000030[I] |
| CT | | $0.000634 | $0.000063 | $0.000003 |
| DC | | $0.001574[R] | $0.000000 | $0.000002 |
| DE | | $0.001574[R] | $0.000000 | $0.000002 |
| FL | | $0.001145[R] | $0.000168 | $0.000020 |
| GA | | $0.001145[R] | $0.000168 | $0.000020 |
| IA | 0 to 8 | $0.002252[R] | $0.000240[I] | $0.000030[R] |
| | 8 to 25 | | $0.000240[I] | $0.000030[I] |
| | 25 to 50 | | $0.000240[I] | $0.000030[I] |
| | 50+ | | $0.000240 | $0.000030[I] |
| ID | 0 to 8 | $0.002252[R] | $0.000240[I] | $0.000030[R] |
| | 8 to 25 | | $0.000240[I] | $0.000030[I] |
| | 25 to 50 | | $0.000240[I] | $0.000030[I] |
| | 50+ | | $0.000240 | $0.000030[I] |
| IL | | $0.001084[R] | $0.000103 | $0.000013 |
| IN | | $0.001084[R] | $0.000103 | $0.000013 |
| KS | | $0.000288[R] | $0.000053 | $0.000003 |
| KY | | $0.001145[R] | $0.000168 | $0.000020 |

---

Issued:  August 12, 2011

Effective:  August 15, 2011

Issued by:    Vice President of Public Policy
Level 3 Communications, LLC
1025 Eldorado Boulevard
Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Tenth Revised Page 77
Replaces Ninth Revised Page 77

## SECTION 15 – RATES AND CHARGES (CONT'D)

15.1.3.4.8    Toll Free Inter-Exchange Delivery Service (Cont'd)

Interstate

| State | Miles | Tandem Switching | Tandem Termination | Tandem Transport |
|-------|-------|------------------|--------------------|------------------|
| LA | | $0.001145[R] | $0.000168 | $0.000020 |
| MA | | $0.001574[R] | $0.000000 | $0.000002 |
| MD | | $0.001574[R] | $0.000000 | $0.000002 |
| ME | | $0.001600[R] | $0.000000 | $0.000003 |
| MI | | $0.001084[R] | $0.000103 | $0.000013 |
| MN | 0 to 8 | $0.002252[R] | $0.000240[I] | $0.000030[R] |
| | 8 to 25 | | $0.000240[I] | $0.000030[I] |
| | 25 to 50 | | $0.000240[I] | $0.000030[I] |
| | 50+ | | $0.000240 | $0.000030[I] |
| MO | | $0.000288[R] | $0.000053 | $0.000003 |
| MS | | $0.001145[R] | $0.000168 | $0.000020 |
| MT | 0 to 8 | $0.002252[R] | $0.000240[I] | $0.000030[R] |
| | 8 to 25 | | $0.000240[I] | $0.000030[I] |
| | 25 to 50 | | $0.000240[I] | $0.000030[I] |
| | 50+ | | $0.000240 | $0.000030[I] |
| NC | | $0.001145[R] | $0.000168 | $0.000020 |
| ND | 0 to 8 | $0.002252[R] | $0.000240[I] | $0.000030[R] |
| | 8 to 25 | | $0.000240[I] | $0.000030[I] |
| | 25 to 50 | | $0.000240[I] | $0.000030[I] |
| | 50+ | | $0.000240 | $0.000030[I] |
| NE | 0 to 8 | $0.002252[R] | $0.000240[I] | $0.000030[R] |
| | 8 to 25 | | $0.000240[I] | $0.000030[I] |
| | 25 to 50 | | $0.000240[I] | $0.000030[I] |
| | 50+ | | $0.000240 | $0.000030[I] |
| NH | | $0.001600[R] | $0.000000 | $0.000003 |
| NJ | | $0.001574[R] | $0.000000 | $0.000002 |
| NM | 0 to 8 | $0.002252[R] | $0.000240[I] | $0.000030[R] |
| | 8 to 25 | | $0.000240[I] | $0.000030[I] |
| | 25 to 50 | | $0.000240[I] | $0.000030[I] |
| | 50+ | | $0.000240 | $0.000030[I] |

Issued:  August 12, 2011                                    Effective:  August 15, 2011

Issued by:    Vice President of Public Policy
              Level 3 Communications, LLC
              1025 Eldorado Boulevard
              Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Tenth Revised Page 78
Replaces Ninth Revised Page 78

## SECTION 15 – RATES AND CHARGES (CONT'D)

15.1.3.4.8    Toll Free Inter-Exchange Delivery Service (Cont'd)

Interstate

| State | Miles | Tandem Switching | Tandem Termination | Tandem Transport |
|-------|-------|------------------|--------------------|--------------------|
| NV | | $0.001062 | $0.000120 | $0.000008 |
| NY | | $0.001574 | $0.000000 | $0.000002 |
| OH | | $0.002001 | $0.000600 | $0.000117 |
| OK | | $0.000288 | $0.000053 | $0.000003 |
| OR | 0 to8 | $0.002252 | $0.000240 | $0.000030 |
| | 8 to 25 | | $0.000240 | $0.000030 |
| | 25 to 50 | | $0.000240 | $0.000030 |
| | 50+ | | $0.000240 | $0.000030 |
| PA | | $0.001574 | $0.000000 | $0.000002 |
| PR  [T] | | $0.003236[N] | $0.000225[N] | $0.000060[N] |
| RI | | $0.001574 | $0.000000 | $0.000002 |
| SC | | $0.001145 | $0.000168 | $0.000020 |
| SD | 0 to8 | $0.002252 | $0.000240 | $0.000030 |
| | 8 to 25 | | $0.000240 | $0.000030 |
| | 25 to 50 | | $0.000240 | $0.000030 |
| | 50+ | | $0.000240 | $0.000030 |
| TN | | $0.001145 | $0.000168 | $0.000020 |
| TX | | $0.000288 | $0.000053 | $0.000003 |
| UT | 0 to8 | $0.002252 | $0.000240 | $0.000030 |
| | 8 to 25 | | $0.000240 | $0.000030 |
| | 25 to 50 | | $0.000240 | $0.000030 |
| | 50+ | | $0.000240 | $0.000030 |
| VA | | $0.001574 | $0.000000 | $0.000002 |
| VT | | $0.001600 | $0.000000 | $0.000003 |
| WA | 0 to8 | $0.002252 | $0.000240 | $0.000030 |
| | 8 to 25 | | $0.000240 | $0.000030 |
| | 25 to 50 | | $0.000240 | $0.000030 |
| | 50+ | | $0.000240 | $0.000030 |
| WI | | $0.001084 | $0.000103 | $0.000013 |
| WV | | $0.001574 | $0.000000 | $0.000002 |
| WY | 0 to8 | $0.002252 | $0.000240 | $0.000030 |
| | 8 to 25 | | $0.000240 | $0.000030 |
| | 25 to 50 | | $0.000240 | $0.000030 |
| | 50+ | | $0.000240 | $0.000030 |

Issued:  July 15, 2016

Effective:  July 30, 2016

Issued by:      General Counsel - Regulatory Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021

Transmittal No. 4

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Tenth Revised Page 79
Replaces Ninth Revised Page 79

**SECTION 15 – RATES AND CHARGES (CONT'D)**

15.1.3.4.9        Entrance Facilities [Note 1]

| State | DS1 | DS3 | OC3 |
|---|---|---|---|
| AZ | $92.18 | $1083.53 | $619.68 |
| CA | $52.00 | $720.00 | N/A |
| CO | $92.18 | $1083.53 | $619.68 |
| FL | $168.00 | $1515.55 | N/A |
| GA | $168.00 | $1515.55 | N/A |
| IL * see below | | | |
| MA | $190.00 | $2310.00 | $2310.00 |
| MI | $158.00 | $702.00 | $15750.00 |
| MO | $98.64 | $1135.00 | $1135.00 |
| NY | $190.00 | $2310.00 | $2310.00 |
| OH | $135.79 | $1500.00 | N/A |
| PA | $190.00 | $2310.00 | $2310.00 |
| PR  [T] | $18.73[N] | $334.89[N] | N/A |
| TX | $98.64 | $1135.00 | $1135.00 |
| VA | $190.00 | $2310.00 | $2310.00 |
| VI | $63.71 | $1,349.22 | N/A |
| WA | $92.18 | $1083.53 | $619.68 |
| | | | |

(N)

IL

| | Monthly | 12 Mo. | 36 Mo. | 60 Mo. | Monthly Extension Rate |
|---|---|---|---|---|---|
| DS1 | $158.00 | $125.00 | $60.00 | $58.00 | |
| DS3 | | $702.00 | $643.50 | $585.00 | $1260.00 |
| DS3 012 Optical Pkg | | $15750.00 | $6125.00 | $3750.0 | $17325.00 |
| DS3 024 Optical Pkg | | $23625.00 | $8750.00 | $5000.00 | $26000.00 |
| DS3 Optical Channel | $375.00 | | | | |

Note 1:  Entrance Facilities are available at the rates stated in this section only in those cases where the Company has facilities available at the time the Customer orders the Entrance Facilities.  In those cases where the Company does not have facilities available to provide the requested Entrance Facilities to a Customer, Entrance Facility rates will be established on a Special Construction basis as specified in Section 11 preceding.

Issued:  July 17, 2018

Effective:  July 18, 2018

Issued by:        General Counsel – Regulatory Policy
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021                    Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Eleventh Revised Page 80
Replaces Tenth Revised Page 80

**SECTION 15 – RATES AND CHARGES (CONT'D)**

15.1.3.4.10    Dedicated Switch Port (per month)*

| **State** **Terminating** | **DS0** **Originating** | | **Terminating** | | **DS1** **Originating** | |
|---|---|---|---|---|---|---|
| AL | $9.47 | | $0.00 | | $146.93 | $0.00 |
| AR | $18.96 | | $0.00 | | | |
| AK | $4.65 | | $4.65 | | | |
| AZ | $3.00 | [R] | $3.00 | [R] | | |
| CA | $11.08 | | $0.00 | | | |
| CO | $3.00 | [R] | $3.00 | [R] | | |
| CT | | | | | $140.00 | $0.00 |
| DC | $11.25 | | $0.00 | | | |
| DE | $11.25 | | $0.00 | | | |
| FL | $9.47 | | $0.00 | | $146.93 | $0.00 |
| GA | $9.47 | | $0.00 | | $146.93 | $0.00 |
| HI | $5.24 | [R] | $5.24 | [R] | | |
| IA | $3.00 | [R] | $3.00 | [R] | | |
| ID | $3.00 | [R] | $3.00 | [R] | | |
| IL | $4.92 | | $0.00 | | $118.09 | $0.00 |
| IN | $4.92 | | $0.00 | | $118.09 | $0.00 |
| KY | $9.47 | | $0.00 | | $146.93 | $0.00 |
| KS | $18.96 | | $0.00 | | | |
| LA | $9.47 | | $0.00 | | $146.93 | $0.00 |
| MA | $11.25 | | $0.00 | | | |
| MD | $11.25 | | $0.00 | | | |
| ME | $6.83 | [R] | $6.83 | [R] | | |
| MI | $4.92 | | $0.00 | | $118.09 | $0.00 |
| MN | $3.00 | [R] | $3.00 | [R] | | |
| MO | $18.96 | | $0.00 | | | |
| MS | $9.47 | | $0.00 | | $146.93 | $0.00 |
| MT | $3.00 | [R] | $3.00 | [R] | | |
| NC | $9.47 | | $0.00 | | $146.93 | $0.00 |
| ND | $3.00 | [R] | $3.00 | [R] | | |
| NE | $3.00 | [R] | $3.00 | [R] | | |
| NH | $6.83 | [R] | $6.83 | [R] | | |
| NJ | $11.25 | | $0.00 | | | |
| NM | $3.00 | [R] | $3.00 | [R] | | |
| NV | $13.76 | | $0.00 | | | |
| NY | $11.25 | | $0.00 | | | |
| OH – CBT | $3.25 | $1.38 | [R] | | | |
| OH – AIT | $4.92 | | $0.00 | | $118.09 | $0.00 |
| OK | $18.96 | | $0.00 | | | |
| OR | $3.00 | [R] | $3.00 | [R] | | |
| PA | $11.25 | | $0.00 | | | |

* The Dedicated Switch Port is billed as originating and terminating based on a Percent Originating Use (POU) factor of 50%.

Issued:  July 15, 2016                                                    Effective:  July 30, 2016

Issued by:      General Counsel - Regulatory Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021                          Transmittal No. 4

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Third Revised Page 80.1
Replaces Second Revised Page 80.1

## SECTION 15 – RATES AND CHARGES (CONT'D)

15.1.3.4.10     Dedicated Switch Port (per month)* (cont'd)

| State | DS0 Originating | Terminating | DS1 Originating | Terminating | |
|-------|------------|-------------|------------|-------------|---|
| PR | | | $5.48 | $5.48 | |
| RI | $11.25 | $0.00 | | | |
| SC | $9.47 | $0.00 | $146.93 | $0.00 | |
| SD | $3.00 | $3.00 | | | |
| TN | $9.47 | $0.00 | $146.93 | $0.00 | |
| TX | $18.96 | $0.00 | | | |
| UT | $3.00 | $3.00 | | | |
| VA | $11.25 | $0.00 | | | |
| VI | $3.53 | $3.53 | | | (N) |
| VT | $6.83 | $6.83 | | | |
| WA | $3.00 | $3.00 | | | |
| WI | $4.92 | $0.00 | $118.09 | $0.00 | |
| WV | $12.50 | $0.00 | | | |
| WY | $3.00 | $3.00 | | | |

Dedicated Tandem Port (per month)

| State | DS0 | DS1 | |
|-------|-----|-----|---|
| CA | $3.41 | $81.84 | |
| CO | $6.00 | $144.00 | |
| GA | $10.79 | $153.98 | |
| IL | $2.55 | $61.14 | |
| PR | $ 2.04 | | |
| VA | $12.50 | $300.00 | |
| VI | $7.02 | | (N) |

\* The Dedicated Switch Port is billed as originating and terminating based on a Percent Originating Use (POU) factor of 50%.

Issued:  July 17, 2018                                                     Effective:  July 18, 2018

Issued by:     General Counsel – Regulatory Policy
               Level 3 Communications, LLC
               1025 Eldorado Boulevard
               Broomfield, CO 80021                    Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Ninth Revised Page 81
Replaces Eighth Revised Page 81

## SECTION 15 – RATES AND CHARGES (CONT'D)

15.1.3.4.11 – Rates Applicable To Local Connect Service

### 15.1.3.4.11.1 Entrance Facility/Direct Trunked Transport

To obtain Local Connect Service, the Customer must obtain a connection from its Premises to the Company local switch to which the Customer seeks to connect. To obtain that connection the Customer must purchase a combination of Entrance Facilities, Direct Trunked Transport, and DS1 switch ports, as well as multiplexing, if applicable. (C)

The Entrance Facility rate shall be the rate specified in Section 15.1.3.4.9 of this tariff for the state in which the Customer's connection to the Company switch shall be made at the data rate chosen by the Customer (in states where multiple data rates are available). (C)

The Direct Trunked Transport rate shall be applied per DS1-level, DS-3 level, or higher-level connection (for states in which multiple data rate options are available), at the appropriate per-month and per-mile rate(s) specified in Section 15.1.3.6 of this tariff for the state in which the Customer's connection to the Company switch shall be made. The Per Mile amounts shall be charged monthly and shall be calculated based on the distance between the Customer's premises and the Company local switch to which the Customer seeks to connect, calculated in accordance with Section 10 of this Tariff. (C)

### 15.1.3.4.11.2 Multiplexing

The Company's network normally requires traffic delivered to its switches at the DS1 level. If a Customer chooses to obtain mutliplexing/demultiplexing services to convert DS3 to DS1 level signaling, the Customer may obtain that service from the Company at the rates stated in Section 15.1.3.4.5 for the state in which is located the Company switch to which the Customer seeks to connect. These rates apply per minute of traffic multiplexed or demultipled. If no rate is provided for the location where the Customer desires to obtain service, or if the Customer requires multiplexing or demultiplexing of data rates other than DS3-DS1, the Company may provide such services in accordance with the terms of Section 11, Special Cosntruction.

(M)
|
(M)

(M)    Material moved to Page 81.1.

Issued: July 17, 2018                                    Effective: July 18, 2018

Issued by:      General Counsel – Regulatory Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021                     Filed Under Transmittal No. 6

Level 3 Communications, LLC                                    Tariff F.C.C. No. 4
                                                               Original Page 81.1

---

**SECTION 15 – RATES AND CHARGES (CONT'D)**

15.1.3.4.11 – Rates Applicable To Local Connect Service (Cont'd)

    15.1.3.4.11.3    Switch Ports    (M)

    For each DS1 port terminating at the relevant Company local swtich, a DS1 switch port charge shall apply as follows: (a) For Company switches located in Florida, Georgia, Illinois or Michigan, the rate specified for a DS1 Dedicated Switch Port in Section 15.1.3.4.10 shall apply; (b) For Company switches located in Arizona, California, Colorado, Massachusetts, Missouri, New York, Ohio, Pennsylvania, Texas, Virginia, or Washington (state), the rate shall be the rate specified for a DS0 Dedicated Switch Port in Section 15.1.3.4.10, multipled by twenty-four (24); (c) For Company switches located in any other state, a per-minute-of-use port charge, as specfied in Section 15.1.3.4.2 shall apply.

    15.1.3.4.11.4    Per-Minute End Office Rates

    For each minute of use (originating or terminating) a Customer transmits to or receives from a Company switch, the per-minute-of-use charges stated in Sections 15.1.3.4.1 and 15.1.3.4.2 shall apply (based on the state in which the Company switch is located), except that the per-minute-of-use port charges as specified there shall only apply to the extent stated in Section 15.1.3.4.11.3, above.    (M)

    (M)    Material moved from Page 81.

---

Issued:  July 17, 2018                                    Effective:  July 18, 2018

Issued by:    General Counsel – Regulatory Policy
        Level 3 Communications, LLC
        1025 Eldorado Boulevard
        Broomfield, CO 80021    Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Ninth Revised Page 82
Replaces Eighth Revised Page 82

## SECTION 15 – RATES AND CHARGES (CONT'D)

15.1.3.4.11 – Rates Applicable To Local Connect Service (con't)

    15.1.3.4.11.5    Tandem Switched and Transport Rates    (N)

    For each minute of use (originating and terminating) a Customer transmits to or receives from a Company switch, the per minute-of-use charges stated in Sections 15.1.3.4.3 and 15.1.3.4.5 shall apply, as applicable (based on the state in which the Company tandem switch is located),    (N)

    15.1.3.4.11.6    Database Query Rates    (T)

    To the extent that End Users originate toll free calls that are routed via Local Connect Service, the Company shall charge for database queries it conducts for a Customer at the rates set forth in Section 15.1.3.4.7.

15.1.3.4.12 – Rates Applicable To Tandem Connect Service

    15.1.3.4.12.1    Entrance Facility/Direct Trunked Transport

    To obtain Tandem Connect Service, the Customer must obtain a connection from its Premises in a local access and transport area in which a Company Tandem Switch is located, to that tandem switch.  To obtain that connection the Customer must purchase a combination of Entrance Facilities, Direct Trunked Transport, and DS1 switch ports, as well as multiplexing, if applicable.  The Company will provide a Customer with a list of its Tandem Switch locations upon request, including a list of the Company and third-party End Offices that subtend each tandem.

    The Entrance Facility rate shall be the rate specified in Section 15.1.3.4.9 of this tariff for the state in which the Company Tandem Switch to which the connection shall be made is located, at the data rate chosen by the Customer (in states where multiple data rates are available)..

    The Direct Trunked Transport rate shall be applied per DS1-level DS-3 level, or higher-level connection (for states in which multiple data rate options are available), at the appropriate per-month and per-mile rate(s) specified in Section 15.1.3.6 of this tariff for the state in which the Company Tandem Switch to which the connection shall be made is located. The Per Mile amounts shall be charged monthly and shall be calculated based on the distance between the Customer's premises in the local access and transport area in which the Company Tandem Switch is located, and that switch, calculated in accordance with Section 10 of this Tariff.    (M)

(M)    Material moved to Page 82.1

---

Issued:  July 17, 2018

Effective:  July 18, 2018

Issued by:    General Counsel – Regulatory Policy
                    Level 3 Communications, LLC
                    1025 Eldorado Boulevard
                    Broomfield, CO 80021                  Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Original Page 82.1

## SECTION 15 – RATES AND CHARGES (CONT'D)

15.1.3.4.12 – Rates Applicable To Tandem Connect Service (Cont'd)

15.1.3.4.12.2    Multiplexing    (M)

The Company's network normally requires traffic delivered to its switches at the DS1 level.  If a Customer chooses to obtain mutliplexing/demultiplexing services to convert DS3 to DS1 level signaling, the Customer may obtain that service from the Company at the rates stated in Section 15.1.3.4.5 for the state in which is located the Company tandem switch to which the Customer seeks to connect.  These rates apply per minute of traffic multiplexed or demultiplexed.  If no rate is provided for the location where the Customer desires to obtain multiplexing service, or if the Customer requires multiplexing or demultiplexing of data rates other than DS3-DS1, the Company may provide such services in accordance with the terms of Section 11, Special Cosntruction.    (M)

(M)    Material moved from Page 82.

Issued:  July 17, 2018

Effective:  July 18, 2018

Issued by:    General Counsel – Regulatory Policy
Level 3 Communications, LLC
1025 Eldorado Boulevard
Broomfield, CO 80021    Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Eighth Revised Page 83
Replaces Seventh Revised Page 83

## SECTION 15 – RATES AND CHARGES (CONT'D)

15.1.3.4.12 – Rates Applicable To Tandem Connect Service (con't)

15.1.3.4.12.3   Switch Ports

For each DS1 port terminating at a Company tandem, a DS1 switch port charge shall apply as follows: (a) For Company Tandem Switches located in Florida, Georgia, Illinois or Michigan, the rate specified for a DS1 Dedicated Switch Port in Section 15.1.3.4.10 shall apply; (b) For Company switches located in Arizona, California, Colorado, Massachusetts, Missouri, New York, Ohio, Pennsylvania, Texas, Virginia, or Washington (state), the rate shall be the rate specified for a DS0 Dedicated Switch Port specified in Section 15.1.3.4.10, multiplied by twenty-four (24); (c) For Company switches located in any other state, a per-minute-of-use port charge, as specfied in Section 15.1.3.4.2 shall apply.  Please note that the Company does not maintain Tandem Switches in all states. The Company will provide a Customer with a list of its Tandem Switch locations upon request, including a list of the Company and third-party End Offices that subtend each tandem.

15.1.3.4.12.4   Per-Minute Tandem Switched Transport Rates

For each minute of use (origianting or terminating) a Customer transmits to or receives from a Company tandem switch, the per-minute-of-use (including per-minute-per-mile) rates specified in Section 15.1.3.4.3 shall apply, except as specified below:

(D)

- The specific state rate(s) in Section 15.1.3.4.3  that shall apply to any specific minute of traffic shall be the rates applicable to the state in which the applicable Company or third party end office switch is located.  For example, if a Customer delivers traffic to a Company tandem switch in Illinois for delivery to an End User that obtains a Connection to the PSTN via a Company End Office switch located in Ohio, the rates for Ohio specified in Section 15.1.3.4.3 shall apply to that traffic.
- For Company or third party end office switches located in a local access and transport area different from the one where the Company Tandem Switch is located, the "rates per access minute per mile" shall be calculated using mileage calculated in accordance with Section 10, but with mileage capped at ten (10) miles of transport.

(M)
|
(M)

(M)   Material moved to Page 84.

---

Issued:  July 17, 2018                                                    Effective:  July 18, 2018

Issued by:      General Counsel – Regulatory Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021                          Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
First Revised Page 84
Replaces Original Page 84

## SECTION 15 – RATES AND CHARGES (CONT'D)

15.1.3.4.12 – Rates Applicable To Tandem Connect Service (con't)                    (M)

15.1.3.4.12.5     Per-Minute End Office Rates

For each minute of use (originating or terminating) a Customer transmits to or receives from a Company end office switch via a Company Tandem Switch, the per-minute-of-use charges stated in Sections 15.1.3.4.1 and 15.1.3.4.2 shall apply (based on the state in which the Company end office switch is located), except that the per-minute-of-use port charges as specified there shall only apply to the extent stated in Section 15.1.3.4.12.3, above.

15.1.3.4.12.6     Database Query Rates

To the extent that End Users originate toll free calls that are routed via Tandem Connect Service, the Company shall charge for database queries it conducts for a Customer at the rates set forth in Section 15.1.3.4.7.                    (M)

(M)     Material moved from Page 83.

Issued:  July 17, 2018                                    Effective:  July 18, 2018

Issued by:          General Counsel – Regulatory Policy
                    Level 3 Communications, LLC
                    1025 Eldorado Boulevard
                    Broomfield, CO 80021                  Filed Under Transmittal No. 6

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Original Page 85

---

**SECTION 15 – RATES AND CHARGES (CONT'D)**

(M)

|

(M)

The material previously on this page has been moved to the appropriate section on Pages 57-73.

---

Issued:  May 7, 2002                                            Effective:  May 8, 2002

Issued by:      Thomas C. Stortz, Group Vice President and General Counsel
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Second Revised Page 86
Replaces First Revised Page 86

---

**SECTION 15 – RATES AND CHARGES (CONT'D)**

15.2    Non-routine Installation/Maintenance Charges

As stated in 2.9, at the Customer's request, installation and/or maintenance may be performed outside the Company's regular business hours or in hazardous locations. In that case, the following rates apply:

| | |
|---|---|
| Basic Time - per quarter hour: | $21.44 |
| Overtime - per quarter hour: | $28.01 |
| Premium Time - per quarter hour: | $34.59 |

15.3    Individual Case Basis Arrangements

Arrangements will be developed on a case-by-case basis in response to a bona fide request from a Customer or prospective Customer to develop a competitive bid for a service offered under this tariff. Rates quoted in response to such competitive requests may be different than those specified for such service in this tariff. ICB rates will be offered to the Customer in writing.

15.4    Federal Universal Service Fee

The Customer will be assessed a monthly Federal Universal Service Fee on all telecommunications services to cover the cost of contributions that Company is  required to make under the Telecommunications Act of 1996 to support federal universal service.

Services provided pursuant to this tariff are subject to a monthly Universal Service Fee as permitted by the rules of the Federal Communications Commission.  The Federal Universal Service Fund Assessment will not count toward any monthly minimum payment requirements and it is not subject to any discounts that may be otherwise available.

This charge does not apply to services provided to a Customer that is a telecommunications carrier, to the extent that Customer purchases the services for resale to, or as a wholesale input to services provided to, end users, ands provide Company with such additional documentation as Company may require to certify that Customer is purchasing the services for resale and will itself remit appropriate amounts to the Universal Service Administrative Company based on Customer's charges to its own customers.

15.5    Promotional And Temporary Rates                                                          (N)

This Section 15.5 of this Tariff contains promotional and temporary rates.  Each subsection of this Section 15.5 contains a specific promotional or temporary rate for a service the regular rate for which is contained in another part of this tariff.  Each such subsection identifies (a) the service or services to which the promotional rate applies; (b) the promotional rate that applies to the affected service or services; (c) the first date on which the promotional rate is available; (d) the last date on which the promotional rate is available; and (e) any other relevant terms or conditions associated with taking advantage of the promotional rate.                                            (N)

---

Issued:  January 26, 2011                                                    Effective:  January 27, 2011

Issued by:        Vice President of Public Policy
                  Level 3 Communications, LLC
                  1025 Eldorado Boulevard
                  Broomfield, CO 80021

Level 3 Communications, LLC

Tariff F.C.C. No. 4
Original Page 87

---

**SECTION 15 – RATES AND CHARGES (CONT'D)**

15.5.1   Promotional Rate For Certain Installation and Non-Recurring Charges Associated With Tandem Connect Service                                                                      (N)

Non-Recurring Charges and Installation charges for the following Fixed Elements will be waived for Facilities installed between 02/01/11 and 08/31/11, provided that Special Construction is not needed to deliver those Facilities

      Entrance Facility - Section 15.1.3.1

      Mux - Section 15.1.3.1

      Direct Trunked Transport - Section 15.1.3.1

      Port Charge - Section 15.1.3.1

15.5.2   Promotional Rate for Certain Monthly Recurring Charges Associated with Tandem Connect Service

Monthly Recurring Charges for the following Elements will be waived for the first 3 months of service for facilities installed between 02/01/11 and 08/31/11.

      Entrance Facility - Section 15.1.3.4.9

      Mux - Section 15.1.3.4.6

      Direct Trunked Transport - Section 15.1.3.4.6

      Port Charge - Section 15.1.3.4.10                                                        (N)

---

Issued:  January 26, 2011                                    Effective:  January 27, 2011

Issued by:    Vice President of Public Policy
                Level 3 Communications, LLC
                1025 Eldorado Boulevard
                Broomfield, CO 80021                          Filed under Transmittal No. 1