IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00112-RM

AT&T CORP.,

    Plaintiff/Counter Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC,

    Defendant/Counterclaimant,

and

BROADWING COMMUNICATIONS, LLC, GLOBAL CROSSING TELECOMMUNICATIONS, INC., and WILTEL COMMUNICATIONS, LLC

    Counterclaimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.

    Counterclaim Defendant

---

### AT&T'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF LEVEL 3'S IMPROPER DAMAGES CLAIMS

---

Plaintiff/Counterclaim Defendant AT&T Corp. ("AT&T"), by and through undersigned counsel, respectively moves this Court to exclude evidence that Defendant/Counterclaimant Level 3 Communications, LLC ("Level 3") (AT&T and Level 3, collectively the "Parties") intends to submit asserting damages outside the scope of its Counterclaim.

Pursuant to D.C. Colo. LCivR 7.1(a), the undersigned certifies that he has conferred with counsel for Level 3, and Level 3 opposes the relief sought in this Motion.

1

## INTRODUCTION

In the wake of this Court's Order on cross-motions for summary judgment (ECF No. 204), the principal issue remaining for trial is how much Level 3 can collect from AT&T on Level 3's breach of contract counterclaim for amounts that Level 3 contends AT&T improperly withheld under the Parties' 2015 Release and Settlement Agreement ("2015 Agreement"). As the Court is aware, the Parties have historically disputed how much Level 3 can bill and how much AT&T owes for one specific type of switched access charge—"end-office switching"—that Level 3 improperly billed on "over-the-top" Voice over Internet Protocol ("OTT VoIP") calls.

Now that the Court has determined on summary judgment that "there is no genuine issue as to whether [Level 3's] OTT percentage exceeded 21 percent," ECF No. 204, at 8, 11, the remaining issues to be tried are narrowed to the calculation of the amount of end-office switching charges that AT&T has over-withheld and would pay as damages. Granting this motion would all but eliminate any remaining issues for trial.

And calculating damages is not difficult. As Level 3 itself has alleged, AT&T withheld payment on the billed end-office switching calls at the 65% level for OTT VoIP specified in the 2015 Agreement, paying 35%. Level 3's own data[1] contained in its analysis demonstrates that it billed AT&T approximately ▮▮▮▮▮▮ for end-office switching during the period in dispute. Based on the 21% factor, the amount that Level 3 improperly billed is ▮▮▮▮▮▮ and the amount properly billed is ▮▮▮▮▮▮. Of the total amount billed, AT&T paid ▮▮▮▮▮▮ (35%). Total

---

[1] The amounts discussed refer to billing through January 2021 as summarized by Level 3 in a disclosure made on March 9, 2021. *See* Exhibit 1 to Declaration of Justin A. Benson.

2

damages are thus ▮▮▮▮▮, which is the ▮▮▮▮▮ properly billed minus the ▮▮▮▮▮ paid. Those are the damages to which Level 3 is entitled on its remaining breach of contract claim.[2]

Not satisfied with this recovery, Level 3 seeks improperly to recover for amounts unrelated to end-office switching charges on OTT VoIP calls. Rather than start its calculation with the ▮▮▮▮▮ it billed for end-office switching, Level 3 starts its damages calculation at ▮▮▮▮▮, *all* of the amounts it billed for *all* switched access services (not just end-office switching) under its access tariff, to arrive at a ▮▮▮▮▮ damages claim. Because Level 3 has no claim for amounts unrelated to end-office switched access charges on OTT VoIP calls, Level 3's damages evidence unrelated to its breach of contract claim should be excluded.

## BACKGROUND

<u>The Parties' Dispute over End-Office Switching Charges on OTT VoIP Calls.</u> Switched access services, which local carriers provide to enable callers to place and receive long distance calls, are comprised of several components, known as rate elements. Local carriers like Level 3 charge different rates for different rate elements, depending on the precise call routing used. *See* 47 C.F.R. § 61.26(a)(3)(i) (listing some typical rate elements); *see generally Verizon v. FCC*, 535 U.S. 467, 490 (2002). The most common charges include (i) "end-office switching," which is for forwarding a call from a customer's individual line and placing it on another line (or trunk); (ii) "tandem switching," which is for switching calls between two switches; and (iii) "tandem

---

[2] Level 3 is also seeking a tandem add-back and late payment penalties. The late payment penalties are the subject of AT&T's separate Motion in Limine to Exclude Evidence of Level 3's Claimed Late Payment Charges, or, in the alternative, AT&T Motion to Strike, which is being filing contemporaneously with the present motion.

3

transport," which is for hauling calls between a tandem switch and other switches. *AT&T Corp. v FCC*, 841 F.3d 1047 (D.C. Cir. 2016).[3]

The Parties have had a long-running dispute over whether Level 3 could bill end-office switched access services on OTT VoIP calls. As Level 3 states, the Parties entered into the 2015 Agreement "to resolve the historic dispute between them regarding the applicability of end-office switching charges to over-the-top VoIP calls." ECF No. 124, Level 3 Counterclaim ¶ 32. With respect to disputes regarding other access services, the 2015 Agreement specifically states that "this Settlement Agreement *shall not prohibit AT&T from disputing Level 3's billing for switched access traffic for reasons unrelated to the requirements of the OTT Declaratory Order*, including but not limited to disputes regarding volumes or applicable rates." EVF No. 15-1, 2015 Agreement at § (1)(a)(ii) (emphasis added).

Level 3's Counterclaim. Count I of the Amended Counterclaims of Defendant Level 3 ("Counterclaim") is a breach of contract claim for recovery of amounts over-withheld by AT&T for end-office switching access charges based on the Parties' 2015 Agreement. Level 3 Counterclaim ¶¶ 60–71.[4] The Counterclaim is unambiguous: it is limited only to end-office switching charges. Level 3 thus alleges that "AT&T is and remains obligated to pay Level 3 *end office switching access charges*," *id.* ¶ 64; "AT&T withholds payment on 65% of the *end office*

---

[3] In addition, on toll-free calls (and many of the calls at issue here are toll-free calls), local carriers must query a database to determine the appropriate long distance carrier that should receive the toll-free call. Local carriers also assess a separate charge (known as a database query charge) for this function.

[4] The Court entered summary judgment as to Level 3's Count II regarding the meaning of the 2015 Agreement. ECF No. 204 at 7. Counts III-VI allege that AT&T's affiliate (TCG) improperly billed end-office charges to Level 3 and to its affiliated counter-plaintiffs. ECF No. 124, Level 3 Counterclaim ¶¶ 81-112. Those counts are not related to the instant motion.

4

*switching charges*," *id.* ¶ 68; "AT&T's failure to pay these *end office switching access charges* directly and proximately caused and continues to cause Level 3 to suffer damage and loss," *id.* ¶ 69; and "Level 3 is entitled to damages in an amount to be determined at trial for payment in full of all *end office switching access charges* owed by AT&T," *id.* ¶ 70 (all emphasis added).

<u>Level 3's Damages Disclosure—End-office Switching and Other Unrelated Access Services.</u>  Following the Court's March 25, 2021 Order on summary judgment, and as described above, the calculation of damages on Level 3's Counterclaim for breach of the 2015 Agreement is simple.  As Level 3 alleges (Level 3 Counterclaim ¶ 68), AT&T withheld 65% of all end-office charges, paying 35%.  Under the Court's ruling, however, AT&T should have withheld only 21% of those charges.[5]  As a result, damages are calculated by a simple formula:

> Total End-Office Charges Billed –
> <u>Amount Level 3 overcharged for OTT VoIP (21% of Total Billed)</u>
> Amount Properly Billed
>
> Amount Properly Billed –
> <u>Amount AT&T Paid of Total End-Office Charges Billed (35% of Total Billed)</u>
> Amount AT&T Over-Withheld

Level 3's March 9, 2021 damages disclosure ("Level 3 Disclosure") is attached as Exhibit 1 to the Declaration of Justin A. Benson,[6] and the amount AT&T would owe under the Court's 21% summary judgment ruling can be easily calculated from that disclosure.  Under the section

---

[5] Under the Court's Order, Level 3 was only obligated to refund half of its improper charges up until February 19, 2020, the date the FCC's 2019 Declaratory Ruling became final.  ECF No. 204 at 3.  As a result, the amount AT&T could have withheld should be reduced by half between January 1, 2019, and February 19, 2020.

[6] Level 3's damages disclosure was produced to AT&T in the form of an Excel spreadsheet. Through the use of an automatic document conversion program, AT&T converted the spreadsheet into PDF file (such that each Excel "tab" became a separate PDF page).  The substance of the disclosure has not been modified in anyway.  *See* Declaration of Justin A. Benson at 2.

"Level 3 Billing to AT&T", Column D ("Revenue") includes the total end-office charges billed by month—the sum of those monthly charges is ▬▬▬. Level 3 Disclosure at 1; *see also* Exhibit 2 to Declaration of Justin A. Benson (sum of Level 3 end-office charges). The "Level 3 Billing to AT&T" section of the Level 3 Disclosure also includes the amount overcharged for OTT VoIP based on 21% of traffic (Column F, "OTT-Credit") or ▬▬▬, leaving ▬▬▬ as properly billed. *See* Level 3 Disclosure at 1. The Level 3 Disclosure does not include either (1) the ▬▬▬ amount AT&T withheld (65% of ▬▬▬ total end-office charges billed), or (2) the ▬▬▬ amount AT&T paid (35% of the ▬▬▬ llion). Using the simple formula set forth above and applying the Court's 21% determination, AT&T would owe Level 3 ▬▬▬ for amounts over-withheld of total end-office switching charges. These basic calculations are shown in the below chart.

| | |
|---|---|
| Level 3 Total End-Office Charges Billed | ▬▬▬ |
| Amount Level 3 overcharged for OTT VoIP (21% of Total Billed) | ▬▬▬ |
| **Level 3 Amount Properly Billed** | ▬▬▬ |

↓

| | |
|---|---|
| Level 3 Amount Properly Billed | ▬▬▬ |
| Amount AT&T Paid of Total End-Office Charges Billed (35% of Total Billed) | ▬▬▬ |
| **Amount AT&T Over-Withheld** | ▬▬▬ |

In its damages analysis, however, Level 3 begins from the wrong starting point, as it does not begin with the ▬▬▬ total end-office billed.  Rather, under the section of the Level 3 Disclosure "AT&T Balances Owed to Level 3," Level 3 starts with ▬▬▬ that it billed for *all* switched access services to AT&T, and then subtracts ▬▬▬ that AT&T has paid for *all* switched access services.  *See* Level 3 Disclosure at 2.  This ▬▬▬ figure includes not merely the ▬▬▬ in end-office charges Level 3 billed, but ▬▬▬ of dollars of charges for other switched access rate elements.  Level 3's ▬▬▬ starting point apparently reflects rate elements like tandem switching, tandem transport, and database query charges—none of which have been put at issue by Level 3's Counterclaim.

As a final step in its calculation (and after certain intermediate calculations), Level 3 then credits a portion of the ▬▬▬ OTT credit to *all* switched access charges it billed AT&T during the period at issue, rather than merely counting the end-office switching charges that are in dispute in its Counterclaim and in this case.  Level 3 thus seeks to introduce evidence not merely of the end-office switching charges it is owed, but (1) the total amount of switched access charges it billed AT&T in the period (which, as noted, it says was about ▬▬▬ dollars, far more than its end-office switching charges alone) and (2) AT&T's total payments for all of these switched access services (which Level 3 says was about ▬▬▬).[7]

Overall, Level 3 is seeking more than ▬▬▬ in damages, including late payment charges.  After excluding those late payment charges, Level 3's asserted damages for its breach of

---

[7] These amounts, respectively, are shown in Column B ("New Charges") and Column E ("Total Payments") in the "AT&T Balances Owed to Level 3" section of the Level 3 Disclosure.  *See* Level 3 Disclosure at 2.

agreement Counterclaim relating strictly to end-office charges is approximately ▮▮▮▮▮▮▮—which *exceeds* the ▮▮▮▮▮▮▮ amount of end-office switching charges Level 3 could have properly billed—under the Court's Order.  Level 3 cannot recover more damages than what it could properly bill, and, as explained below, damages evidence unrelated to the end-office switching access charges in Level 3's breach of agreement counterclaim should be excluded.[8]

### LEGAL STANDARD

Motions in limine "enable the court 'to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Michael v. Rocky Mountain Festivals, Inc.*, No. 1:16-cv-02969-SKC, 2019 WL 10011881, at *1 (D. Colo. July 19, 2019) (quoting *United States v. Cline*, 188 F. Supp. 2d 1287, 1291 (D. Kan. 2002)).  Such motions benefit both the court and the parties by "narrow[ing] the evidentiary issues for trial." *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 09–cv–00970–PAB–KMT, 2014 WL 348637, at *2 (D. Colo. Jan. 31, 2014) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)).  Motions should be used "to eliminate from further consideration evidentiary submissions that clearly ought not be presented [at trial] because they clearly would be inadmissible for any purpose." *Dry Clean Super Ctr., Inc. v. Kwik Indus., Inc.*, No. 08–cv–00578–WJM–CBS, 2012 WL 503510, at *4 (D. Colo. Feb. 15, 2012) (quoting *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).  Thus, courts grant motions in limine to exclude evidence that is "[ir]relevant" because it "is of [no]

---

[8] To better understand Level 3's damages analysis, and the rationale for starting its analysis with the ▮▮▮▮▮▮▮ Level 3 billed for *all* access services and in an attempt to streamline issues for trial, AT&T sought to depose the sponsor of the analysis subsequent to the Court's summary judgment order.  Level 3 has refused to make the sponsor available for a deposition.

consequence to the determination of the action." *Godfrey v. CSAA Fire & Cas. Ins. Co.*, No. CIV-19-00329-JD, 2020 WL 1056306, at *1–5 (W.D. Okla. Mar. 4, 2020) (granting defendants' motions in limine on relevance grounds).

AT&T acknowledges that this Court "discourage[s]" motions in limine "when the motion is evidence-driven and cannot be resolved until evidence is presented at trial, or when trial is to the Court." J. Moore L. Rule IV(L). Given the clear irrelevance of damages unrelated to end-office switching to Level 3's breach of contract counterclaim, the inadmissibility of this evidence can be resolved now, further narrowing the disputes between the Parties. *See* Summary Judgment Order, ECF No. 204 at 8 n.2 (finding Level 3's OTT percentage is not greater than 21 percent, in part, to "facilitate the parties' ongoing discussions and resolve a significant factual dispute that has thus far hindered these discussions." (quoting Level 3 Motion for Summary Judgment, ECF No. 151-2 at 22 n.8.)).

## ARGUMENT

Level 3 should be precluded from presenting evidence of damages that are outside the scope of its Counterclaim, which is for a breach of the 2015 Agreement relating to amounts for end-office switching charges that AT&T withheld relating to OTT VoIP calls. Level 3 has no counterclaim for amounts it billed AT&T for any other access services other than end-office switching, and its only claim for end-office switching relates to amounts that AT&T withheld due to the volumes of OTT VoIP calls.

Accordingly, the damages evidence at trial should be limited to the amounts Level 3 billed to AT&T since January 2019 for end-office switching, the amounts Level 3 could have properly billed under the 2015 Agreement (as construed in the Court's Order), and the amounts AT&T

9

withheld under its view that 65% of the end-office charges were related to OTT VoIP calls. By contrast, the section of the Level 3 Disclosure, "AT&T Balances Owed to Level 3," which relates to amounts for other access services (and other disputes) that Level 3 billed and that AT&T withheld or paid, should be excluded. *See* Level 3 Disclosure at 2.

Level 3's Counterclaim is for breach of the 2015 Agreement, specifically for the amounts AT&T withheld related to OTT VoIP calls. Level 3 Counterclaim ¶¶ 61–71. There is no dispute that Level 3 overcharged AT&T and owes AT&T a credit (of approximately ▮▮▮▮▮) for end-office switching charges it billed on OTT VoIP calls. And, under the Court's holding that no more than 21% of Level 3's end-office charges related to OTT VoIP, AT&T over-withheld amounts due to Level 3—that is because AT&T withheld a higher amount, specifically 65% of end-office switching charges.

As detailed above, from these facts, Level 3's damages include the end-office switching charges Level 3 billed and that AT&T withheld under its view that 65% of the calls were OTT VoIP. AT&T has presented that calculation, but Level 3 has rejected it in favor of an improper and far more extensive damages claim. It seeks to recover all amounts it billed to AT&T for switched access services, not just the amounts arising from its breach of agreement counterclaim. Level 3's damages evidence is improper and should be excluded.

"[T]estimony and similar evidence regarding" claims "not asserted" by the plaintiff "should be excluded from trial." *Brown v. Nat'l R.R. Passenger Corp.*, No. 18-cv-03030-JLK, 2020 WL 8277569, at *3 (D. Colo. Nov. 12, 2020). Accordingly, litigants may not present evidence of "claims [that] were not contained in the Complaint, nor the Pretrial Order, and [where] discovery did not encompass such claims." *Mahone v. Eden*, No. 1:15-cv-01009-PJK-KBM, 2019

10

WL 2602550, at *1 (D.N.M. June 25, 2019), *recon. denied*, 2019 WL 2724054 (D.N.M. June 28, 2019); *see also Howard v. Bank of Am., N.A.*, No. CV 04–2196–PHX–ECV, 2006 WL 1816993, at *2 (D. Ariz. June 29, 2006) (limiting plaintiff to "present[ing] evidence and argument to support the requests for relief *contained in her complaint*") (emphasis added).  Further, a motion in limine is a proper means to exclude "reference to . . . damages" that "[t]he plaintiff has not requested." *Ewart v. Halac*, No. 15–CV–155–JED–FHM, 2016 WL 8115362, at *1 (N.D. Okla. June 29, 2016); *see also Howard*, 2006 WL 1816993, at *2 (prohibiting plaintiff from "present[ing] evidence of or argu[ing] for damages not specifically requested in the complaint."); *Saiz v. Cty. of Bernalillo*, No. 07-790 JAP/LFG, 2008 WL 11409996, at *2 (D.N.M. July 22, 2008).

Because Level 3 is limited to presenting evidence of claims "contained in the Complaint, []or the Pretrial Order," it can only present evidence of damages flowing from its breach of contract claim. *Mahone*, 2019 WL 2602550, at *1.  Indeed, under New York law, which governs the 2015 Agreement, *see* ECF No. 15-1 at 5, Level 3 "must prove that [AT&T's] breach directly and proximately caused [its] damages." *Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 525 (2d Cir. 2004).  To that end, Level 3's complaint does *not* assert that AT&T's alleged breach of the 2015 Agreement also means that AT&T owes Level 3 money that AT&T withheld on the basis of other billing disputes.  In fact, the 2015 Agreement cannot serve as a basis for such a claim because, on its face, the 2015 Agreement specifically allows AT&T to withhold charges for non-OTT VoIP calls. ECF No. 15-1, 2015 Agreement at § (1)(a)(ii) ("[f]or avoidance of doubt, this Settlement Agreement *shall not prohibit AT&T from disputing Level 3's billing for switched access traffic for reasons unrelated to the requirements of the OTT Declaratory Order*, including but not limited to disputes regarding volumes or applicable rates." (emphasis added)).

Based on a plain reading of Level 3's counterclaim and the 2015 Agreement, there is *no* breach of contract claim for recovery of charges unrelated to end-office switching charges. It should come as no surprise to the Court that AT&T and Level 3 have had disputes regarding switched access services other than end-office switching on OTT VoIP. To be sure, Level 3 *could have* brought a claim—specifically, a collection action—to attempt to recover money related to the other switched access services and the parties' billing disputes for those services. *See, e.g.*, *Connect Insured Tel. v. Qwest Long Distance*, No. 3:10–CV–1897–D, 2012 WL 2995063, at *7 (N.D. Tex. July 23, 2012) ("a collection action . . . seeks damages in the total amount of tariffed charges [a carrier] is allegedly owed in accordance with its tariff."); *Iowa Network Services v. Level 3 Communications*, No. 15–cv–00698–REB–MJW, 2015 WL 9900239, at *2 (D. Colo. July 21, 2015) (Level 3 does not "dispute that an action can be brought to enforce the tariff"). That claim would have been substantially different from the one Level 3 did bring, as it would have encompassed all of the amounts billed to AT&T under Level 3's switched access tariff, not just the OTT VoIP agreement that has been extensively litigated in this case. But because Level 3 did not bring such a claim, Level 3 cannot now introduce "testimony and similar evidence" related to claims it has "not asserted." *See Brown*, 2020 WL 8277569, at *3 (granting defendant's motion in limine to prohibit plaintiff from offering evidence related to the Americans with Disabilities Act where plaintiff did not bring a claim under the ADA). Therefore, any evidence regarding sums withheld by AT&T that does not relate to Level 3's claims against AT&T should be excluded from trial.

## CONCLUSION

For the foregoing reasons, the Court should grant AT&T's motion in limine to exclude evidence of damages unrelated to the claims at issue.

Respectfully submitted this 7th day of May, 2021.

By: /s/ Justin A. Benson

Rebecca B. DeCook
Andrew T. Flynn
Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1027
becky.decook@moyewhite.com
andrew.flynn@moyewhite.com

Michael J. Hunseder
Michael D. Warden
Justin A. Benson
Joshua W. Moore
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
mhunseder@sidley.com
mwarden@sidley.com
jbenson@sidley.com
joshua.moore@sidley.com

*Attorneys for Plaintiff AT&T Corp. and Counterclaim Defendant Teleport Communications Group*

CERTIFICATE OF SERVICE

I, Justin A. Benson, hereby certify that on May 7, 2021 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Charles W. Steese, #26924
Douglas N. Marsh, #45964
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
Email: csteese@armstrongteasdale.com
Email: dmarsh@armstrongteasdale.com

*Attorneys for Defendant Level 3 Communications, LLC*

/s/ Justin A. Benson
Justin A. Benson
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
E-mail: jbenson@sidley.com

*Attorney for Plaintiff AT&T Corp. and Counterclaim Defendant Teleport Communications Group*