**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-RM

AT&T CORP.,

      *Plaintiff/Counter Defendant,*

v.

LEVEL 3 COMMUNICATIONS, LLC,

      *Defendant/Counterclaimant,*

and

BROADWING COMMUNICATIONS, LLC, GLOBAL CROSSING
TELECOMMUNICATIONS, INC., and WILTEL COMMUNICATIONS, LLC

      *Counterclaimants,*

v.

TELEPORT COMMUNICATIONS GROUP, INC.

      *Counterclaim Defendant*

---

## AT&T OPPOSITION TO LEVEL 3'S MOTION IN LIMINE

---

Plaintiff/Counterclaim Defendant AT&T Corp. ("AT&T"), by and through undersigned counsel, submits this opposition to Defendant/Counterclaimant Level 3 Communications, LLC's ("Level 3") motion in limine (the "Motion").

## INTRODUCTION

Level 3's Motion improperly seeks to exclude the testimony of an AT&T employee that will rebut Level 3's inflated damages claims, which Level 3 supplemented in March and again as recently as yesterday, May 17. The testimony, from an AT&T employee that AT&T *did* disclose as a witness in 2018 and that Level 3 *did* depose in 2019, will consist of a straightforward explanation of basic facts, including the undisputed amounts that Level 3 billed AT&T for the end-

1

office switching services at issue in Level 3's counterclaim, how much AT&T withheld and paid for those services, and, under the Court's Summary Judgment Order (the "Order"), how much AT&T owes Level 3.  This fact testimony bears directly on the disputed damages and is critical evidence that will allow the Court to evaluate the fundamental flaws in Level 3's damages claims.

Level 3 argues that this testimony should be excluded because (1) it is "expert opinion[]"; (2) AT&T is "inject[ing] new multimillion-dollar disputes into this lawsuit on the eve of trial"; and (3) the testimony is "hugely prejudicial."  Motion at 2.  None of these assertions has any merit.

*First*, the testimony at issue is factual.  The undisputed amounts that Level 3 billed AT&T for end-office switching services are plainly matters of fact.  Although the parties dispute how much AT&T withheld and paid for these services, that dispute is also undoubtedly factual.  Indeed, Level 3 fails to inform the Court that it already deposed AT&T's witness in fact discovery *and* questioned her as to the facts regarding the level of AT&T's withholding.  The amounts AT&T owes are simple calculations based on these facts.  All of this is admissible fact testimony, offered to rebut Level 3's damages claims.  And, even if it were expert opinion (which it is not), the testimony would still be admissible because Level 3 has not been unfairly prejudiced or surprised by its disclosure:  any "opinion" would be in response to Level 3's own supplemental damages claims (updated as recently as yesterday) and, in light of the Order, is based on facts.

*Second*, AT&T's testimony does *not* seek to inject new issues into this case.  Rather, it will point out that Level 3's damages include amounts for services other than the end-office switching services at issue in this case.  In fact, as AT&T's Motion in Limine to Exclude Evidence of Level 3's Improper Damages explains, *see* ECF No. 209 ("AT&T's MIL"), Level 3 has it backwards— it is Level 3, not AT&T, that seeks to expand this case dramatically beyond end-office switching

services.   Rather than seek recovery for those services that are the subject of Level 3's counterclaim, Level 3 seeks to recover for other access services that are outside the scope of its counterclaim and do not relate to the Parties' dispute on over-the-top Voice over Internet Protocol ("OTT VoIP") calling.[1]

*Third*, whether deemed fact testimony or expert opinion, Level 3 would not be prejudiced at all by AT&T's testimony rebutting Level 3's damages.   In fact, because AT&T would be unfairly harmed if this critical evidence were excluded, Level 3 once again has it backwards.   As the counterclaim-plaintiff, Level 3 has the burden to prove the amounts of end-office switching that Level 3 assessed and that AT&T should have paid under the Court's summary judgment ruling that Level 3's OTT VoIP traffic was 21%.   *See* ECF No. 204 (the "Order"), at 8.   It is Level 3 that asserts that its damages should be calculated based on the over ███████ that it billed AT&T for *all* switched access services, rather than the ████████ for end-office services, and Level 3 that asserts that AT&T has withheld more than 65% of such charges.   AT&T plainly should be allowed to rebut this assertion by presenting factual testimony on the end-office switching services and payments that are actually at issue.   Level 3's own pleadings, the documents produced in this case, and deposition testimony of both Parties' witnesses show that Level 3 has long been aware of AT&T's withholding position.   Level 3's claims of unfair surprise thus ring hollow.   The testimony that AT&T will offer on how much it owes is simply a basic calculation that responds to Level 3's recent supplemental damages disclosure and the Court's Order.   Level 3 cannot claim to be

---

[1] If the Court grants AT&T's motions in limine and excludes Level 3's irrelevant damages claims about services other than end-office switching, then most if not all of Level 3's motion becomes academic, and the Court may not need to address it.  If Level 3's improper damages evidence were excluded, there would likely be no material fact dispute on damages.

prejudiced or unfairly surprised by basic matters of math, based on the amounts that Level 3 itself indisputably billed to AT&T and that AT&T paid to Level 3.

## BACKGROUND

To explain why AT&T's testimony is admissible, it is important to review the (1) the scope of Level 3's counterclaim; (2) the damages arising under the Court's Order; (3) Level 3's overbroad damages argument; and (4) the Parties' damages discovery, including the deferral of that discovery.

<u>Level 3's Counterclaim.</u>   Count I of Level 3's Amended Counterclaims is a breach of contract claim for recovery of amounts withheld by AT&T for end-office switching access charges based on Parties' 2015 Agreement.  ECF No. 124, ¶¶ 60-71.  The Counterclaim is unambiguous: it is limited only to end-office switching charges, which is one type of many access services.  Level 3 alleges that AT&T should "pay Level 3 *end office switching access charges*" (*id.* ¶ 64); "AT&T[] withholds payment on 65% of the *end office switching charges*" (*id.* ¶ 68); "AT&T's failure to pay these *end office switching access charges* . . . cause Level 3 to suffer damage" (*id.* ¶ 69); and "Level 3 is entitled to damages in an amount to be determined at trial for payment in full of all *end office switching access charges* owed by AT&T" (*id.* ¶ 70) (all emphasis added).

There is *no* claim in this case for recovery of any charges other than for end-office switching.  If Level 3 had intended to recover for such unrelated charges, it could have alleged a separate count or even filed a separate action.[2]  Because it did not, neither Level 3 nor AT&T

---

[2] Only such a collection action claim would put at issue other services that Level 3 provided pursuant to its tariffs. *See, e.g., Connect Insured Tel. v. Qwest Long Distance*, 2012 WL 2995063, *13 (N.D. Tex. July 23, 2012) ("a collection action . . . seeks damages in the *total amount* of tariffed charges [a carrier] is allegedly owed in accordance with its tariff.") (emphasis added).

sought discovery on any other charges or billing disputes. Discovery thus focused on the dispute regarding end-office switching on OTT VoIP calls.[3] Through its Motion, Level 3 is attempting to capitalize on that lack of discovery to inflate its damages claims by presenting irrelevant evidence on damages, while preventing AT&T from rebutting that evidence by factual testimony that Level 3's damages do not relate solely to end-office switching services.

 Damages Under Level 3's End-Office Switching Counterclaim and the Court's Order. Following the Summary Judgment Order, the calculation of damages on Level 3's counterclaim for breach of the 2015 Agreement is simple. As Level 3 alleges (ECF No. 124, ¶ 68), AT&T withheld 65% of all end-office charges, paying 35%. Under the Court's ruling, however, AT&T should have withheld only 21% of those charges. As a result, damages are determined by a simple calculation. *See* AT&T MIL, ECF No. 209, at 2, 5–6 (setting forth the formula).

 In fact, Level 3's actual damages arising from its counterclaim can be calculated from Level 3's own supplemental damages disclosure—which it provided to AT&T on March 9, 2021 and updated yesterday. *See* ECF No. 209-1. As explained in AT&T's MIL, Level 3's total charges for end-office switching are ███████—and this is undisputed. *See* ECF No. 209, at 6. Level 3's disclosure also shows the amount it overcharged for OTT VoIP calls, based on 21% of traffic (████████). This leaves ████████ as properly billed. Then, based on what AT&T withheld and paid—namely 65% and 35%—AT&T owes Level 3 ████████ for amounts withheld of total end-office switching charges as a result of the Court's Summary Judgment Order. These basic calculations are shown in the chart below:

---

[3] Notably, as described below, Level 3 did not introduce its expansive damages theory, involving ████████ of dollars of other types of access services, until expert discovery and after fact discovery closed. If any party has been prejudiced by the issue of an "expert" employee witness, it is AT&T.

| | | |
|---|---|---|
| Level 3 Total End-Office Charges Billed | ████████ | |
| Less Amount Level 3 overcharged for OTT VoIP (21% of Total Billed) | ████████ | |
| **Level 3 Amount Properly Billed** | ████████ | |

| | | |
|---|---|---|
| Level 3 Amount Properly Billed | ████████ | |
| Amount AT&T Paid of Total End-Office Charges Billed (35% of Total Billed) | ████████ | |
| **Amount AT&T Owes Under The SJ Order** | ████████ | |

<u>Level 3's Overbroad Damages.</u>  Level 3 does not begin with the ████████ total end-office charges as the starting point for its damages calculation.  Rather, Level 3 starts with ████████ that it billed AT&T for *all* switched access services and then subtracts ████████ that AT&T has paid for *all* switched access services.  *See* AT&T MIL, ECF No. 209, at 7.  This ████████ figure includes not merely the ████████ in end-office charges, but ████████ of dollars of charges for *other* switched access services.

As a final step in the calculation (and after certain intermediate calculations), Level 3 then credits a portion of the ████████ OTT credit to *all* switched access charges it billed AT&T during the period at issue, rather than to the end-office switching charges at issue in this case. Level 3 thus seeks to introduce evidence not merely of the end-office switching charges it is owed, but (1) the total amount of switched access charges it billed AT&T in the period and (2) AT&T's total payments for all of these switched access services—which are not at issue in its counterclaim.

<u>The Parties' Damages Discovery Including Deferred Depositions.</u>  Fact discovery in this case closed in December 2019, and discovery on damages (as with liability) focused on end-office switching and the dispute over OTT VoIP calls.  That discovery included evidence as to the amounts that AT&T withheld from Level 3 for end-office switching, based on its view that 65%

of Level 3's end-office charges were for OTT VoIP calls—indeed, Level 3 questioned the very AT&T witness (Alison Miller) that AT&T intends to use at trial as to these facts.

Level 3 has known about Ms. Miller and her role in this dispute even *before* this litigation began. Ex. 1 to Decl. of Justin A. Benson ("Decl."), Email, A. Miller to S. Erickson, Level 3 (May 5, 2017) (discussing the OTT dispute); *see also* Ex. 2 to Decl., Torres Dep. Tr. 181:11–18 (discussing similar emails from 2017). Ms. Miller regularly interacts with Level 3 on billing and payment issues. Indeed, Level 3 itself produced hundreds of emails between Level 3 and Ms. Miller, dating as far back as July 15, 2016. Ex. A, Decl. of Justin A. Benson at ¶ 15. After litigation commenced, AT&T timely disclosed *in 2018* Ms. Miller's identity, her role as Lead Carrier Relations Manager, and informed Level 3 that she was in possession of discoverable information. *See* Ex. 3 to Decl., AT&T Initial Disclosure at 1.

Level 3 deposed Ms. Miller in September 2019, as a fact witness, and asked her about the charges in dispute, the amounts paid, and the amounts AT&T withheld. *See* Ex. 4 to Decl., Miller Dep. at 84:11–17. Level 3 specifically asked Ms. Miller whether AT&T was withholding 65%—the issue for which Level 3 now claims surprise—and Ms. Miller replied affirmatively. *See id.* ("Q. And AT&T at this point in time, 2017, is withholding 65 percent of the end-office charges, assuming they're associated with OTT. Correct? A. Yes. Q. And that has continued even to this date. Correct? A. Yes."). Notably, in the joint Final Pretrial Order Ms. Miller is listed as a "[f]act witness[] . . . who will be present at trial." ECF No. 199, at 12–13.

After this deposition and the close of fact discovery, Level 3 disclosed in March 2020 that it would use an employee (Jennifer Torres) to provide expert "opinion" testimony regarding Level 3's damages. Ex. 5 to Decl., Level 3 Rule 26(a)(2)(C) Disclosure, March 16, 2020. In response,

AT&T informed Level 3 that it planned to offer fact testimony on the amounts billed, paid, and withheld in connection with the end-office switching charges at issue. Ex. 6 to Decl., AT&T Rule 26(e) Disclosure, May 15, 2020 ("AT&T May 2020 Disclosure"), at 3. Specifically, AT&T told Level 3 that "the amounts billed and credited by Level 3 and paid by AT&T are factual issues." *Id*. AT&T further informed Level 3 that "[t]o the extent the parties cannot resolve their disputes on these issues prior to trial, AT&T intends to use a fact witness and business records to establish its proof on these topics." *Id*. Level 3, therefore, was fully aware that AT&T did not believe these billing issues required expert witness testimony; and, indeed, AT&T made clear that it did "not plan to submit any testimony that [it] consider[s] to be admissible based solely upon Federal Rules of Evidence 702, 703, or 705."[4] *Id*. at 1–2. Level 3 was likewise fully aware that AT&T did not agree with its damages analysis.

At around this time, AT&T and Level 3 agreed to defer further depositions on damages in an attempt to reach an agreement on the basic numbers in dispute, as AT&T's records diverged from Level 3's. These discussions—and the deferral of damages depositions—continued throughout 2020.[5] As Level 3 acknowledges, this process led to the discovery of multiple errors

---

[4] Level 3 alleges that, in these disclosures, "AT&T disclosed for the *first time*" that "AT&T withheld exactly 65% of end-office charges for the OTT dispute." Motion at 2 (emphasis added). Not so. Level 3 well knew and AT&T consistently informed Level 3 that it was withholding 65% of Level 3's end-office switching charges. *See, e.g.*, Torres Dep. Tr., 53:9–54:3, 55:14–19, 113:6–7 (Aug. 28, 2019); Miller Dep. at 84:11-17.

[5] *See, e.g.*, Ex. 10 to Decl., June 10, 2020 Correspondence from M. Hunseder to C. Steese, at 1–2 ("As we discussed, if either party believes that it will not be fruitful to engage in a reconciliation process, then the parties will schedule depositions relating to the disputed data and calculations."); *see also* Level 3 Mot. for Summ. J., ECF No. 151-2, at 4 n.2 ("The Parties are attempting to negotiate a stipulation on the damages to which Level 3 would be entitled depending on whose legal theories prevail. While the work continues, thus far, they have been unable to do so."); *see id.* at 23 n.9; Final Pretrial Order, at 28 ("The Parties continue to attempt to resolve outstanding disputes regarding their respective damages calculations," and "[a]s part of this ongoing discussion, the Parties continue to exchange information and *may agree to some additional discovery as means of resolving those outstanding disputes*.") (emphasis added).

in Level 3's analysis that inflated its damages, such as the omission of payments made by AT&T, *see, e.g.*, Motion at 6, n.4, and the inclusion of ███████ of dollars in late payment charges that had actually been released through a settlement agreement between the parties. The Parties never reached agreement on a figure for damages related to end-office switching; and Level 3 can point to no evidence that such an agreement occurred.

Level 3 then provided an updated damages disclosure on March 9, 2021, and the Court ruled on summary judgment later that month. In response to these developments, AT&T made its own supplemental disclosures on April 23, 2021. It first provided a supplemental disclosure under Rule 26(e), adding to its prior disclosure of May 15, 2020. Ex. 7 to Decl., AT&T Rule 26(e) Disclosure, April 23, 2021. AT&T explained that "in response to the damages analysis provided by Level 3 on March 9, 2021 . . . it does not plan to submit any testimony that it considers to be admissible based solely upon Federal Rules of Evidence 702, 703, or 705," but that "[f]or the avoidance of doubt, however, AT&T does not accept all of the assumptions, calculations, and conclusions contained in the March 9 Damage Analysis. Accordingly, AT&T has prepared its own factual analysis." *Id.* at 2. AT&T's factual analysis consisted of the straightforward damages calculation described above (*supra* pp. 5–6).

Given that Level 3 had indicated it would file the instant Motion, AT&T also made a protective disclosure of Ms. Miller under Rule 26(a)(2), in which it stated that "AT&T disagrees with Level 3's contentions" that her testimony consists of expert opinion, and "maintains its position that Ms. Miller's testimony is fact testimony." Ex. 8 to Decl., AT&T Rule 26(a)(2) Disclosure, April 23, 2021, at 2. AT&T nevertheless provided the same factual analysis as part of this disclosure, "in order to moot Level 3's objections and remedy any supposed prejudice that

Level 3 might claim." *Id.* AT&T also said it would "make Ms. Miller available for deposition." *Id.*

Level 3 rejected AT&T's offer to take Ms. Miller's deposition and nevertheless filed this Motion. In seeking to strike Ms. Miller's testimony, Level 3 hopes to prevent AT&T from defending itself at the upcoming trial, and claims that AT&T's participation in months of discussions about damages, with an express agreement to defer damages discovery, precludes AT&T from presenting witness testimony that proves that Level 3's damages are inflated. This is despite the fact that Level 3 admits that its supplemental damage disclosure occurred just weeks before AT&T's disclosures (and was updated as recently as yesterday, May 17).

Notably, Level 3's current position regarding "expert" testimony is inconsistent with its prior position in this litigation. Level 3 did *not* use its "expert" witness (Ms. Torres) in seeking summary judgment. Instead, Level 3 used another employee, Ms. Kellow, to sponsor a factual affidavit that includes an earlier version of the *same spreadsheet* that Level 3 now says is expert "opinion."[6] Ms. Kellow's declaration indicated that she had "personal knowledge of the following facts," and that she (1) "studied Level 3's switched access billings to AT&T," (2) "calculated" end-office charges, (3) "assum[ed] that 21 percent of the calling is" OTT, and (4) "calculated" the amount AT&T withheld, "leaving [her] to conclude that the" total damages are ▮▮▮▮▮▮▮. ECF 151-19. That is no more and no less as to what Ms. Miller will testify, albeit with a different conclusion.

---

[6] Ms. Kellow was disclosed for the first time *after* fact discovery closed. *See* Ex. 11 to Decl., Level 3's Supplemental Rule 26(a)(1) Initial Disclosure. Level 3 plans to have Ms. Kellow testify at trial, despite the fact, that AT&T has not had the opportunity to take her deposition.

## ARGUMENT

I.  **MS. MILLER'S TESTIMONY IS ADMISSIBLE, EITHER AS FACT TESTIMONY, OR AS PROPERLY DISCLOSED EXPERT TESTIMONY**

Ms. Miller is a fact witness.  Accordingly, Level 3 has no basis to attempt to exclude her testimony based on rules regarding the disclosure of expert opinion.  Moreover, even if the Court were to determine that Ms. Miller's anticipated testimony includes expert opinion, AT&T properly disclosed the scope of Ms. Miller's planned testimony, which is very simple and straightforward in substance, and in any event was well-known to Level 3.  Any purported untimeliness in relation to that protective disclosure is justified and harmless.  Level 3 has already deposed Ms. Miller and was given the opportunity to depose her again, which it rejected.

A.  **Ms. Miller's Testimony At Trial Will Be Fact Testimony.**

When a lawsuit arises out of a billing dispute, "an employee of" one of the parties who "[is] not specially retained or employed to give an expert opinion" and who "[is] personally involved in the billing . . . is permitted to testify, within reasonable bounds . . . based upon her personal knowledge and experience . . . *as a fact witness*."  *F.D.S. Marine, LLC v. Brix Mar. Co.*, 211 F.R.D. 396, 401 (D. Or. 2001) (emphasis added).  Indeed, numerous other courts have found that testimony regarding amounts billed, amounts paid, and amounts withheld is factual in nature. *See Fed. Deposit Ins. Corp. v. Seymour*, 779 F.2d 50 (6th Cir. 1985) (indicating that a "record of payments and computations as to the amount due and owing" was factual evidence and finding there were no "material issues of *fact* . . . as to the exact amount paid"); *cf. Davison v. Town of Sandwich*, No. 15-cv-11889-FDS, 2016 WL 1411341, at *2 (D. Mass. Apr. 8, 2016) ("amount billed [is the] stuff of fact, not opinion") (internal quotations omitted); *Chao v. Anderson*, No. 1:06cv433 (JCC), 2007 WL 1448705, at *1 (E.D. Va. May 9, 2007) (one of "the only *facts* in

dispute [is] . . . the amount withheld") (emphasis added).  Notably, Level 3 cites no caselaw to the contrary to support its arguments.

Here, Ms. Miller will testify on matters of fact, including (i) the amounts Level 3 billed AT&T for end-office switching, (ii) that the amounts reflected in Level 3's analysis for (a) end-office switching and (b) switched access are materially consistent with AT&T's business records (as one would expect given that amounts billed by Level 3 would be in both Level 3's and AT&T's records); (iii) amounts that AT&T paid and withheld on those end-office charges (the 65% that she previously testified about), and (iv) AT&T's reasons for doing so.  All of these topics are straightforward issues of fact.

With respect to the amounts that AT&T paid and withheld, Ms. Miller is prepared to testify that AT&T withheld 65% (and paid 35%) of Level 3's charges for end-office switching access— and that she herself took the steps necessary within AT&T's systems to ensure that those amounts were withheld and paid.  Under the Court's Order, AT&T should have only withheld 21% of such charges.  *See* ECF No. 204 at 8.  To calculate damages, therefore, Ms. Miller is expected to testify as to factual matters and simple calculations: she must first determine the amount Level 3 properly billed by subtracting the amount Level 3 *should have* billed (21% of its total end-office charges) from the total amount it *actually* billed for end-office switching access.  From there, Ms. Miller can calculate the amount AT&T over-withheld by subtracting the amount of money AT&T already paid (35% of the Level 3's total end-office charges) from the amount Level 3 properly billed.

Ms. Miller's personal involvement in AT&T's disputes with Level 3 form the basis for her anticipated fact-based testimony.  *See F.D.S. Marine*, 211 F.R.D. at 401 (permitting employee who was "personally involved in the billing" to testify as a fact witness).  Since 2004, when Ms. Miller

was promoted to the role of lead carrier relations manager for switched access, these have been the types of issues that Ms. Miller addresses on a daily basis.  Miller Dep. Tr. 12:1–22 (describing her role as "manag[ing] the switched access expenses, domestic, associated with originating and terminating access to and from AT&T's [long distance carrier operations].").  Not only does she address those issues generally, she has interacted with Level 3 on these specific issues for the greater part of the last five years.[7]

### B.      Even If Ms. Miller's Testimony Were Found to be Expert in Nature, Level 3 Has Suffered No Prejudice Attributable to AT&T.

Even if Ms. Miller's anticipated testimony were expert testimony—and it is not—Level 3 has suffered no prejudice that would justify preventing Ms. Miller from testifying at trial.

Under Rule 26(a)(2), "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  Fed. R. Civ. P. 26(a)(2).  When the witness is not "retained or specially employed to provide expert testimony in the case," the required disclosure must state "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify."  *Id.*

"The purpose of expert disclosures is to eliminate surprise and provide opposing counsel with enough information to prepare efficiently for deposition, any pretrial motions and trial." *Carbaugh v. Home Depot U.S.A.*, No. 13–cv–02848–REB–MEH, 2014 WL 3543714, at *2 (D. Colo. July 16, 2014) (internal punctuation and citation omitted).  When those objectives are met,

---

[7] *See, e.g.*, Miller Dep. Tr. 18:20–24, 19:20–24 ("In 2016 when I was working with Level 3, there were several disputes that I was managing with Level 3. OTT was one of those disputes that . . . we were working on and trying to close out."); Email from A. Miller to S. Erickson of Level 3 (May 5, 2017) ("I am responding to [Level 3's] e-mail of April 19, 2017, regarding Level 3's position on the volume of OTT traffic").

Rule 37(c) "permits a district court to refuse to strike expert reports and allow expert testimony even when the expert report violates Rule 26(a) if the violation is justified or harmless." Fed. R. Civ. P. 37(c)(1); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 952–53 (10th Cir. 2002). Courts in the Tenth Circuit use a four-factor test to determine if "a Rule 26(a) violation is justified or harmless." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (internal quotations omitted). Those factors are "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.*

Even assuming, *arguendo*, that Ms. Miller's testimony were expert testimony and AT&T did not timely disclose that expert testimony, each of the Tenth Circuit's factors unequivocally support allowing Ms. Miller to offer expert opinions. The Court should use its "broad discretion" to determine that any untimeliness by AT&T was "justified or harmless." *Id.* (internal quotations omitted); *see also Mishler v. Dillon Companies, Inc.*, No. 16–cv–01397–MEH, 2018 WL 2131509, at *2 (D. Colo. May 9, 2018) (finding that "reasonable" alternatives to striking testimony will "render [an] untimely disclosure harmless."). This is especially so because "the decision to exclude evidence is a drastic sanction." *US Gen., LLC v. GuideOne Mut. Ins. Co.*, No. 18-cv-01256-REB-NRN, 2020 WL 8366137, at *2 (D. Colo. Mar. 31, 2020) (internal brackets and citation omitted). Thus, even where "discovery has already closed, and . . . a Final Pretrial Order [has already issued]," courts stop short of excluding relevant testimony where "reasonable sanctions will render [a party's] untimely disclosure harmless." *Mishler*, 2018 WL 2131509, at *2. The same is true when the party offering the witnesses "provides [the other party] an

opportunity to examine" the witness prior to trial. *Lenox Maclaren Surgical Corp. v. Medtronic, Inc.*, No. 10-cv-02139-MSK-NYW, 2015 WL 6735495, at *4 (D. Colo. Nov. 4, 2015). Because (i) Ms. Miller's testimony on damages is highly relevant rebuttal evidence, (ii) AT&T consistently has maintained the billing and payment amounts are fact issues, (iii) the Parties deferred damages discovery, and (iv) Level 3 has already deposed Ms. Miller and was given the opportunity to depose her again, in the event the Court were to conclude that AT&T's protective expert disclosure were untimely under Rule 26(a), any delay was justified and harmless.[8]  Application of each of the *Woodworker's Supply* factors compels the conclusion that this testimony should be allowed.

   1.  AT&T's intent to call Ms. Miller at trial is not a surprise.[9]  Level 3 has been aware of Ms. Miller's role since at least 2016, before this case was filed. After AT&T disclosed her in this case, Level 3 deposed her during fact discovery, and she was listed as a fact witness "who will be present at trial" in the Final Pretrial Order. *See* ECF No. 199, at 12–13. Ms. Miller's expected

---

[8] AT&T's most recent disclosure is consistent with Rule 26(a)'s requirements. Indeed, AT&T's disclosure stated that Ms. Miller's anticipated trial testimony related to the amounts billed, paid, and withheld in relation to Level 3's end-office switching charges. AT&T Rule 26(a)(2) Disclosure at 1–2. The disclosure also attached an exhibit detailing Ms. Miller's damages calculations. *See id.* at 2. In other words, AT&T's disclosure included a detailed description of "the subject matter on which [Ms. Miller] is expected to present evidence" and "a summary of the facts and opinions to which [Ms. Miller] is expected to testify." Fed. R. Civ. P. Rule 26(a)(2)(C). Moreover, any technical violation of Rule 26(a)'s timeliness requirements should not lead to Ms. Miller's exclusion, especially because AT&T disclosed, in May 2020, that it would present factual testimony these issues. *See* AT&T May 2020 Disclosure at 3; *see also Ortega v. City & Cty. of Denver*, No. 11-CV-02394-WJM-CBS, 2013 WL 1751944, at *3 (D. Colo. Apr. 23, 2013) (allowing four untimely disclosed witnesses to testify).

[9] Level 3 claims it is prejudiced because it "could have amended its counterclaims to seek recovery of the amounts withheld for purportedly other reasons." Motion at 15. Level 3's failure to amend its own pleadings is its own fault. Level 3 has surely known, from its own records and bills, that the total amounts it billed for all access services █████ █████ ) far exceed the amount of end-office switching charges it billed ██████. And Level 3 surely knows the amounts AT&T withheld. From the moment it decided to advance a damages theory predicated on all access services, Level 3 knew that it was seeking damages beyond the scope of its breach of contract counterclaim. Indeed, its June 2020 summary judgment motion said as much. *See* ECF No. 151-19, ¶ 6 ("AT&T has withheld more from Level 3 than the total end-office charges Level 3 has invoiced to AT&T."). Level 3's *own* decision to not bring a collection action seeking recovery of withholdings related to other disputes is no reason to find that Level 3 was prejudiced in *this* action.

testimony will be based on data *provided by Level 3*.  Moreover, the substance of her testimony was disclosed in May 2020, albeit without specifically naming Ms. Miller of the sponsor for such testimony.  *See* AT&T May 2020 Disclosure at 3.  Under such circumstances, Level 3 cannot claim unfair surprise.  *See Rocky Mountain Chocolate Factory v. SDMS, Inc.*, No. 06–cv–01212–WYD–BNB, 2007 WL 4268962, at *2 (D. Colo. Nov. 30, 2007) (finding lack of prejudice where party "failed to timely disclose its damages calculations" but where "previous disclosures" illustrated its theory of damages and thus the theory and calculations "should not have come as a complete surprise"); *US Gen.*, 2020 WL 8366137, at *2 (finding that party did not "identify any meaningful prejudice" where "[i]t had known about [witness]," "has deposed him," and "had access to [witness's] files and reports").[10]  Level 3 knew that AT&T would defend itself by presenting testimony to support its damages calculation.

2.     Even if Level 3 were prejudiced (and it is not), such prejudice would be "cur[able]." When AT&T submitted its disclosures in April, AT&T made it clear that Level 3 could depose Ms. Miller again at its convenience.  Ex. 9 to Decl., Email from M. Warden to C. Steese, April 22, 2021, ("AT&T will make Ms. Miller available for deposition relating to this disclosure.").  Level 3 declined AT&T's offer.  *Id.*, Email from C. Steese to M. Warden, April 27, 2021 ("Level 3 will not agree to participate in any additional depositions.").  Level 3 cannot now claim prejudice after *it* refused to depose Ms. Miller again.  *Woodworker's Supply*, 170 F.3d at 993; *Alexander v.*

---

[10] Level 3 alleges that prejudice in this case "is especially striking due to the two-year limitations period" in Section 415 of the Communications Act that "leave[s] Level 3 with no ability to recover damages more than two years old." Motion at 10, 15. Level 3 does not quantify the amounts allegedly barred by the limitations period; however, any loss due to the limitations period is Level 3's fault. It has full control and knowledge of the counterclaims it asserted in this case, and it is Level 3's responsibility, not that of AT&T, to bring a timely collection action claim for any amounts owed under the tariff that were not encompassed within its breach of agreement claim in this case.

*Archuleta Cty., Colo.*, No. 08–cv–00912–CMA–KLM, 2010 WL 363390, at *3 (D. Colo. Jan. 27, 2010); *see also Rocky Mountain Chocolate Factory*, 2007 WL 4268962, at *2 (finding any prejudice stemming from litigant's "fail[ure] to timely disclose . . . damages calculations" could be cured by "reopen[ing] discovery"). This is particularly so given that Level 3 previously deposed Ms. Miller.

3.      Allowing Ms. Miller to testify in AT&T's defense will not "disrupt the trial." *See Woodworker's Supply*, 170 F.3d at 993. Because this is a bench trial, it would be more disruptive to strike Ms. Miller's testimony than it would be to allow it. *Cf. Jacobsen*, 287 F.3d at 954 (suggesting that, where "scheduled trial date was just over a month away," it would "be less disruptive to allow testimony" than to order other sanctions). Both Ms. Torres and Ms. Miller are expected to testify regarding the Parties' respective damages calculations. If Ms. Miller is prohibited from testifying, AT&T will be prevented from both offering its own view of the proper calculation of damages, and from rebutting Ms. Torres' testimony (whom Level 3 has refused to allow AT&T to depose on damages).

4.      AT&T did not act in "bad faith." *See Woodworker's Supply*, 170 F.3d at 993. As noted above, the parties agreed long ago to defer discovery on damages in hopes of reaching an agreement. *See* Final Pretrial Order, at 28 ("the Parties . . . may agree to some additional discovery as means of resolving those outstanding disputes"). And the timing of the disclosure was driven by the developments in the case, including the Court's Order and Level 3's continually updated damages numbers—not bad faith. Nothing here rises to a level where courts have either found bad faith or suggested it could exist. *See, e.g., Asher v. Colgate-Palmolive Co.*, 278 F.R.D. 608, 612

(D. Colo. 2011) (suggesting that "willful redaction of a[n] [expert] report . . . prior to production . . . *could* indicate bad faith.") (emphasis added).[11]

In sum, Ms. Miller's testimony about Level 3's damages spreadsheet is fact testimony, not expert testimony.  It is virtually identical to fact testimony from Ms. Kellow that Level 3 itself offered on summary judgment.   Moreover, Level 3 has known—since May 2020—that AT&T intended to present a fact witness to establish its own proof on these issues.  In the event that the Court determines such testimony to be offered pursuant to Rule 26(a)(2), Level 3 admits that AT&T disclosed the substance of Ms. Miller's testimony and offered her for deposition.  At bottom, the Motion is a ruse to convince the Court to prevent AT&T from putting on a defense to a damages theory that seeks to recover for claims that are not properly before the Court based on Level 3's own pleadings.  Granting the Motion under these circumstances, particularly when the parties agreed to defer damages discovery and AT&T previously disclosed that it intended to present testimony to support its own damages defense, would be unjust.

## II.   LEVEL 3'S CONTENTIONS REGARDING AT&T'S PURPORTED FAILURE TO DISCLOSE "OTHER DISPUTES" IS UNAVAILING.

Level 3 argues that AT&T has improperly injected "other disputes" into the case in an untimely manner.  This is wrong for numerous reasons.  Although the other billing disputes exist,[12]

---

[11] Level 3's insinuation that AT&T's recent decision to designate Ms. Miller as an expert, to placate *Level 3's own objections*, is a violation of Rule 26 is nonsensical. *See* Motion at 18–19.  Indeed, AT&T's Rule 26(a)(2) Disclosure makes clear that AT&T "maintains its position that Ms. Miller's testimony is fact testimony, AT&T hereby submits this disclosure to pursuant to Federal Rule of Civil Procedure 26(a)(2)(A) regarding Ms. Miller's anticipated testimony in order to moot Level 3's objections and remedy any supposed prejudice that Level 3 might claim."  AT&T Rule 26(a)(2) Disclosure at 2.

[12] On March 12, 2021, AT&T wrote to Level 3 "to provide further and additional information as to billing disputes regarding switched access services that have been billed by Level 3, and for which AT&T has withheld payment." Ex. 12 to Decl., Letter from A. Miller to C. Davis, March 12, 2021 (referring to "[r]ecent discussions between AT&T and Level 3 indicat[ing] that Level 3 misunderstands the basis for AT&T's withholding.").  AT&T sent this letter to Level 3 on March 12, 2021, nearly two weeks before the Court issued its summary judgment order on March 25, 2021.

AT&T is not seeking to have the Court adjudicate these non-OTT disputes or otherwise get involved with them.  It is Level 3 that seeks that result, by seeking damages beyond the end-office charges that are the subject of its counterclaim.  The primary purpose of Ms. Miller's testimony is not to persuade the Court of the merits of AT&T's position on the other disputes, but to propose a competing damages calculation (based on her personal knowledge and simple arithmetic) that is limited to Level 3's counterclaim and that responds to Level 3's damages.

Although Level 3 contends that it was operating on an assumption that all of AT&T's withholding related directly to the OTT dispute, *see* ECF 151-19, at 3, it cannot point to any statement or admission by AT&T to that effect.  Moreover, although it claims discovery violations regarding AT&T's purported failure to timely disclose the existence of the non-OTT disputes, AT&T is not seeking to include any other disputes, and Level 3 does not identify any incorrect or misleading discovery response by AT&T.

Further, although Level 3 claims to be prejudiced by AT&T raising its damages contentions after the close of discovery, that proves too much:  fact discovery had closed before Level 3 had even made its initial damages disclosure, let alone its multiple supplementary disclosures, which have continued up until yesterday, May 17.  Level 3 not only disclosed this analysis after the close of fact discovery, its analysis includes billings that occurred after the close of discovery and therefore necessarily implicated facts and issues arising after the close of discovery.  For all of these reasons, the Court should reject Level 3's contentions that AT&T has sought at the last minute to inject other disputes.  Rather, AT&T is seeking to limit Level 3 from asserting damages for irrelevant services, not at issue in Level 3's end-office switching/OTT VoIP counterclaim.

## CONCLUSION

The Motion should be denied, and Ms. Miller should be allowed to testify.[13]

Respectfully submitted this 18th day of May, 2021.

By: /s/ Justin A. Benson

Rebecca B. DeCook
Andrew T. Flynn
Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1027
becky.decook@moyewhite.com
andrew.flynn@moyewhite.com

Michael J. Hunseder
Michael D. Warden
Justin A. Benson
Joshua W. Moore
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
mhunseder@sidley.com
mwarden@sidley.com
jbenson@sidley.com
joshua.moore@sidley.com

*Attorneys for Plaintiff AT&T Corp. and Counterclaim Defendant Teleport Communications Group*

---

[13] Level 3 also seeks to exclude Bob Hayes from testifying. *See, e.g.*, Motion at 19.  Assuming Ms. Miller is permitted to testify, AT&T does not intend to call Bob Hayes and thus this opposition focuses on Level 3's claims regarding Ms. Miller.

## CERTIFICATE OF SERVICE

I, Justin A. Benson, hereby certify that on May 18, 2021 I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system which will send notification of such

filing to the following:

Charles W. Steese, #26924
Douglas N. Marsh, #45964
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
Email: csteese@armstrongteasdale.com
Email: dmarsh@armstrongteasdale.com

*Attorneys for Defendant Level 3*
*Communications, LLC*

/s/ Justin A. Benson
Justin A. Benson
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
E-mail: jbenson@sidley.com

*Attorney for Plaintiff AT&T Corp. and*
*Counterclaim Defendant Teleport*
*Communications Group*