# EXHIBIT 1

**Message**

**From:** MILLER, ALISON L [/O=sbc/OU=momail/cn=Recipients/cn=am7149]
**on behalf of** MILLER, ALISON L [/o=sbc/ou=momail/cn=recipients/cn=am7149]
**Sent:** 5/5/2017 7:53:40 PM
**To:** 'Scott.Erickson@level3.com' [Scott.Erickson@level3.com]
**CC:** 'Daniel.Umiker@level3.com' [Daniel.Umiker@level3.com]; BURGESS, ARDELL [ab3696@att.com]; MEOLA, KIMBERLY A [km1274@att.com]
**Subject:** Level 3 OTT Traffic Response

EXHIBIT
AT+T 31
2-7-19

Scott,

I am responding to Steve Ross's e-mail of April 19, 2017, regarding Level 3's position on the volume of OTT traffic subject to the true-up mechanism set forth in the June 2015 Release & Settlement between AT&T and Level 3.

First, it should be no surprise that during the pendency of AT&T's appeal of the FCC's OTT Declaratory Order, AT&T did not send Level 3 regular dispute notices regarding OTT traffic. This is because Section 1(a)(iv) of the Release and Settlement clearly established that AT&T recognized that the FCC's Declaratory had not been stayed, and as a result, the prevailing law allowed Level 3 to charge the end office switching rate for OTT traffic. As a result, during the pendency of AT&T's appeal to the D.C. Circuit, there was no reason for AT&T to re-establish its position regarding the appropriate compensation for OTT traffic.

Second, at no time during the pendency of the appeal did Level 3 provide AT&T with any indication, either through its invoices or other communication, that the percentage of OTT traffic it was exchanging with AT&T had decreased from the previously agreed historic level of sixty-five percent (65%). In fact, given the prevailing trends in the industry, and the existing status of the law, AT&T anticipated that it was likely that Level 3's OTT traffic was most likely to increase between the time the Release and Settlement was signed and any 'true-up' required by Section 1(a)(iv). Finally, since the D.C. Circuit decision last fall, AT&T has performed its own analysis of Level 3's traffic, and has concluded that rather than significantly decreasing, Level 3's OTT traffic has grown and continues to remain well in excess of the previously agreed upon historic level of sixty-five percent, and is now possibly as high as ninety-five percent (95%) of the traffic exchanged between our two companies. Notwithstanding the foregoing, applying the previously identified sixty-five percent, AT&T believes that pursuant to the terms of the June 2015 Release and Settlement, Level 3 owes AT&T ▌▌▌. This amount reflects billing through May 8, 2017, when the D.C. Circuit's Order becomes final. Further, AT&T requests that Level 3 modify its billing to reflect the appropriate amount of OTT traffic. However, until Level 3 conforms its billing to the current status of the law, AT&T will modify its payment to reflect the appropriate level of OTT traffic and ensure accurate compensation.

*Alison Miller*
*Lead Carrier Relations Manager*
*AT&T Global Connection Management*
*908-234-4015*

This message and any attachments to it contain confidential business information intended solely for recipients. If you have received this email in error please do not forward or distribute it to anyone else, but telephone (908) 234-4015 to report the error, and then delete this message from your system.

CONFIDENTIAL
Subject to Stipulated Protective Order
Case No. 1:18-cv-00112-RM-MEH, D. Colo.

ATT_PROD_0003786