**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-RM-MEH

AT&T CORPORATION,

    Plaintiff/Counterclaim Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC,

    Defendant/Counterclaimant,

and

BROADWING COMMUNICATIONS, LLC, GLOBAL CROSSING
TELECOMMUNICATIONS, INC., and WILTEL COMMUNICATIONS, LLC

    Counterclaimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.,

    Counterclaim Defendant.

---

**LEVEL 3'S RESPONSE IN OPPOSITION TO AT&T'S MOTION IN
LIMINE TO EXCLUDE EVIDENCE OF LEVEL 3'S DAMAGES CLAIMS**

---

AT&T asks the Court to preclude Level 3 from asserting damages "outside the scope of its Counterclaim." ECF No. 209 at 1. This request is based on a fundamentally flawed presumption. AT&T supposes, without any evidentiary support, that this OTT Dispute led AT&T to withhold exactly 65 percent of Level 3's end office charges, and that every other dollar AT&T withheld above and beyond this amount was due to some other unidentified dispute. This is a recent fiction of AT&T's own making. The evidence shows that AT&T's OTT withholdings

far exceed 65 percent of the end office charges, a fact AT&T has known for years. The entire amount Level 3 seeks to recover are amounts AT&T withheld for the OTT Dispute, in direct violation of contract, and are therefore falls squarely within the scope of Level 3's counterclaim for breach of contract.

There are at least three reasons why the Court should reject AT&T's Motion. First, AT&T's Motion, though characterized as an evidentiary *limine* motion, in reality raises substantive legal and factual issues and, as a result, is actually a belated summary judgment motion, brought well after such motions should have been filed and without the procedural safeguards required by Rule 56.

Second, as Level 3 own *limine* Motion shows (*see* ECF No. 205), AT&T's attempt to attribute its withholdings to other, unrelated disputes must be precluded. AT&T now moves to exclude what it claims are unrelated damages—but only after waiting until the last possible minute, long after the deadlines for discovery, expert disclosures, and amending the pleadings expired, to suggest that these damages are unrelated. To try to inject these factual assertions in the eleventh hour is improper enough; to attempt to keep Level 3 from contesting them is even worse.

Finally, AT&T's Motion would require the Court to determine whether AT&T withheld the payments at issue pursuant to the OTT dispute, or to some other dispute. This is an evidentiary question appropriate for trial—not a motion *in limine*. The evidence will ultimately refute AT&T's position. AT&T did not withhold payment pursuant to unrelated disputes it first identified years after AT&T began withholding payment. The facts at trial will show instead that AT&T withheld the disputed charges due to the OTT dispute, fully aware that AT&T was

withholding far in excess of 65 percent of Level 3's end office charges.

For these reasons, AT&T's Motion should be denied.

**I.   BACKGROUND**

AT&T hangs much of its Motion on the allegation that AT&T withheld payment on exactly 65 percent of Level 3's end office charges. *See, e.g.,* ECF No. 209 at 5. AT&T cites no evidence to support this allegation, because, as will be shown here and at trial, there is none.

The parties' 2015 Settlement Agreement placed the OTT Dispute into dormancy until the summer of 2017, when the D.C. Circuit order remanded the FCC's 2015 OTT Declaratory Ruling for further consideration. AT&T interpreted the D.C. Circuit's decision as triggering the Agreement's partial refund provision—incorrectly, as the Court later determined. *See* ECF No. 204 at 7. But AT&T nevertheless began to raise the OTT Dispute as a basis for contesting Level 3's charges, and to withhold payments pursuant to that dispute.

In May and June 2017, Level 3 employees sent emails to AT&T trying to understand the basis for AT&T's disputes, including its calculations. *See* Declaration of Charles W. Steese ("Steese Dec.") Ex. A at 8–12. On June 2, 2017, AT&T employee Alison Miller stated that AT&T was disputing ▮▮▮▮▮▮ for the OTT Dispute. *Id.* at 7. When asked to explain how the amounts AT&T was disputing correlated with amounts it was withholding from payment, Ms. Miller acknowledged that "[i]t is not possible to exactly match the withholding for the Level 3 entity billing to a specific dispute," which she attributed "to the fact that Level 3 is billing both tandem and end office on the same BAN [billing account number]." *Id.* at 5. A later email from Ms. Miller elaborated: "AT&T's mechanized payment system does not have the ability to recognize the difference between L3's billing that is associated with operating as a tandem vs.

3

the billing associated with L3 operating as an EO [end office] when both are included on the same BAN." Steese Dec. Ex. C at 4. As a result, AT&T informed Level 3 that AT&T had "additional offsets due to the format of the L3 invoices that were allocated towards the ▮ OTT dispute." Steese Dec. Ex. B.[1] In other words, AT&T acknowledged that its "mechanized" process—the process AT&T uses to dispute and withhold payment—could not discern which of Level 3's charges were end office charges and which were tandem charges, and that AT&T knew its mechanized process was withholding payment on tandem charges because AT&T's system thought they were end office charges. Everything AT&T withheld was thus withheld under the auspices of the OTT Dispute, based on AT&T's claim that it was disputing and refusing to pay end office charges associated with OTT traffic. The result: AT&T disputed and withheld millions too much.[2]

In March 2020, Level 3 identified its employee, Jennifer Torres, as a non-retained expert who would be presented at trial to discuss Level 3's damages. Ms. Torres calculated Level 3's

---

[1] Level 3 tried to explain that Level 3's billing vendor could not separate the elements for end office and tandem on separate bills, and offered to run monthly reports that would make that distinction. Instead of using the data to dispute properly, AT&T employee Ardell Burgess contemplated that Level 3 should "Get a new vendor" instead of AT&T adapting to Level 3's data. Steese Dec. Ex. E. The result: AT&T continued to knowingly over-dispute and over-withhold from Level 3.

[2] The exact same situation occurred in mid-2017. AT&T withheld ▮ million on an end office dispute where AT&T should have only withheld ▮. *See* Steese Dec. Ex. B (applying ▮ to OTT dispute after the fact). In other words, because AT&T's "mechanized process" cannot differentiate between end office and tandem charges, AT&T withheld ▮—34.5 percent—too much. Translating those exact percentages to this OTT dispute means that AT&T withheld ▮ over and above the 65% in end office charges AT&T claims to have withheld. Level 3's damages analysis shows AT&T over-withheld by approximately ▮—which accounts for 97% of the difference between what the two parties claim AT&T over-withheld. In other words, the data match up almost perfectly and refute AT&T's recently concocted damages fairytale. *See* Torres Dec. ¶ 12.

damages by identifying all usage-based charges Level 3 assessed to AT&T, subtracting amounts associated with an unrelated "DEOT" dispute, and identifying payments AT&T made on the invoices. The DEOT and OTT disputes were the only usage-based disputes AT&T had raised with Level 3. Declaration of Jennifer Torres ("Torres Dec.") ¶ 3. Therefore, Ms. Torres understood the difference between Level 3's usage-based charges and AT&T's payments, minus amounts associated with the DEOT dispute, to be the amounts AT&T withheld "associated with the OTT dispute." ECF No. 205 at 3–4 (quoting Ms. Torres's Supplemental 26(a)(1) disclosure, ECF No. 205-5); Torres Dec. ¶¶ 3, 5. This is the same method Level 3 used to calculate its damages in every supplement it has provided since—most recently in March 2021—which merely added charges and withholdings for subsequent months.[3] *See* ECF No. 205 at 4–5 (citing Exhibits F and J to Level 3's Motion, ECF Nos. 205-7 and 205-11).[4] Thus, AT&T's assertion

---

[3] On May 17, 2021, Level 3 added its final supplement before trial to calculate its damages through April 2021, as current as the data will permit. *See* Steese Dec. Ex. F.

[4] AT&T asserts that Level 3 has refused to make Ms. Torres available for a deposition. ECF No. 208-1 at 8, n.8. AT&T had every opportunity to take her deposition, if it wished, between March 2020, when Level 3 provided the 26(a)(2) disclosure to AT&T, and June 5, 2020, when expert discovery closed. *See* ECF No. 136. But AT&T did not request to depose Ms. Torres until April 22, 2021—less than two months before trial was set to begin. *See* ECF No. 205-18. Level 3 counsel explained the rationale for refusing the requested late deposition. *See* Steese Dec. Ex. H.

Case after case in this district agree that such late disclosures inherently cause prejudice that additional depositions cannot cure. *See, e.g.*, *United States v. Heller*, No. 19-CR-00224-PAB, 2019 WL 4464071, at *1, *2 (D. Colo. Sept. 18, 2019) (excluding expert who was disclosed "a month before trial," as litigating a Rule 702 challenge "would compromise the defendant's ability to otherwise prepare for trial"); *Bush v. Fedex Freight, Inc.*, No. 12-CV-00230-WYD-KLM, 2013 WL 4496391, at *5 (D. Colo. Aug. 22, 2013) ("even if, as Plaintiffs argue, the extended discovery deadline allowed Defendant to properly react to the disclosures and to collect the evidence necessary for its defense, Defendant would be further prejudiced to the extent the delayed disclosures disrupted the case management schedule and required previously unnecessary expenditures"); *RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, No. 16-CV-01301-PAB-GPG, 2019 WL 2135816, at *4 (D. Colo. May 16, 2019) ("although a trial date is not yet set, allowing plaintiffs to add an additional expert at this time would likely cause some

that the section of these disclosures identifying "AT&T Balances Owed to Level 3" "relates to amounts for other access services (and other disputes)", ECF No. 209 at 10, is factually inaccurate, as Level 3's witnesses will explain at trial. They will explain that the entirety of this balance relates to the OTT dispute.

For many months, AT&T raised no issue on this attribution of its withholdings to the OTT dispute. In fact, AT&T initially said that it would not provide rebuttal expert disclosures in response to Ms. Torres at all; instead, it provided "a supplemental disclosure that sets forth the areas of disagreement."  ECF No. 205-8 (5/15/2020 Letter from M. Hunseder to C. Steese). That "Supplemental Disclosure"—effectively a 26(a)(2)(C) disclosure, albeit with no witness identified—in no way suggested that AT&T was withholding payment from Level 3 on any basis other than the DEOT and OTT disputes. ECF No. 205-9 at 5. The only areas of disagreement the disclosure identified were the specific figures used for total charges and payments; the inclusion of prejudgment interest or late penalty charges, the method for calculating the OTT factor (a dispute later resolved by the Court on summary judgment), and the method for calculating a tandem add-back.[5] *Id.* at 4–5. AT&T thus raised questions as to whether the figures Level 3 was

---

prejudice"); *Andalam v. Trizetto Grp.*, No. 12-CV-01679-WYD-MJW, 2014 WL 12741123, at *2 (D. Colo. May 27, 2014) ("the ability to cure at this late date is not practical noting that both the trial preparation conference and jury trial as set less than one month away"); *Fresquez v. Baldwin*, No. 08-CV-01233-CMA-CBS, 2010 WL 5934891, at *29 (D. Colo. Dec. 15, 2010) ("Both the court and Defendants are entitled to expect that by a date certain, Plaintiff's list of testifying experts will be fixed and the case will proceed on that basis.").

[5] AT&T suggests it is undisputed that Level 3 owes AT&T a credit of approximately ▮▮▮▮ for end office switching charges it billed on OTT-VoIP calls. ECF No. 209 at 10. That explanation misses the mark. From the outset, Level 3's damages analysis identified its percent of OTT traffic (originally 16% and now 21%), calculated the end office charges associated with this percentage of traffic, credited this amount, and applied a tandem switching charge "in lieu" of the end office charges—i.e., the "tandem add-back"—as Level 3's tariff permits, and as

6

using for what it had charged AT&T and what AT&T had paid were accurate—but it raised no issue with Level 3's method of calculating damages based on what Level 3 had charged and what AT&T had paid. AT&T also raised no issue with the assumption that, after accounting for the DEOT dispute, all remaining withholdings were attributable to the OTT dispute. Nor did AT&T identify any separate disputes, or suggest there was any other basis besides the DEOT and OTT disputes for its withholding millions of dollars from Level 3. Nor did it challenge Ms. Torres's disclosures and calculations in its *Daubert* motions.

This continued through summary judgment, when Level 3's witnesses used the same damages methodology to show not only that what AT&T had withheld minus what was attributable to the DEOT dispute "is due to the OTT dispute," but also that AT&T's OTT withholdings exceeded 100% of Level 3's end office charges. ECF No. 205 at 6–7 (citing ECF No. 151-19 ¶¶ 6, 8). AT&T ostensibly disputed this fact, contending that it *intended* to withhold at the rate of 65 percent of Level 3's end office charges—but it provided no evidence suggesting it *actually* withheld payments at the purportedly intended 65-percent rate, or that it had withheld these millions of dollars for any reasons other than these two disputes. *See* ECF No. 181-1 ¶ 46.[6]

The first time AT&T made any suggestion that it had withheld the payments for any reason other than these two disputes came on March 12, 2021, over two years after the damages

---

AT&T itself recognizes is proper. *See* Steese Dec. Ex. I at 34:23–35:2, 175:14–23; Dec. Ex. J at 77:5–78:4. Thus, Level 3's own damages analysis adjusts its damages downward by ▇▇▇ to account for these adjustments. *See* ECF No. 205-11.

[6] AT&T suggested that "the parties have other unrelated disputes as to end office charges billed by Level 3, which has affected AT&T's total withholdings." ECF No. 181-1 ¶ 46. The only support AT&T cited for its statement on "other unrelated disputes" was the May 2020 "Supplemental Disclosure," which, as noted above, identified no dispute other than the OTT or DEOT disputes. ECF No. 181-1 ¶ 46. Here, too, there was no indication of any of unrelated disputes AT&T now tries to claim were the basis for the withholdings.

period began. On that day, in a letter sent as part of settlement communications, Ms. Miller claimed that it was "not accurate" to attribute the withholdings solely to the DEOT and OTT disputes; there were, she claimed, "multiple reasons, aside from the OTT-VoIP issue being litigated, why AT&T's payments to Level 3 have differed from amounts billed." ECF No. 205-12. This claim is farcical, for reasons Level 3's counsel outlined in a responsive letter. *See* ECF No. 205-13. Some of these new reasons are not billing disputes at all; they are merely complaints about the format of Level 3's invoices. *Id.* at 3. Other reasons AT&T suggests for the withholdings raise billing issues that apply only after March 2020, with no application to withholdings dating back to the beginning of the damages period in January 2019. ECF No. 205-13 at 3. Most importantly, AT&T had never identified the non-OTT disputes as a basis for withholding prior to March 2021; thus, they could not have been a reason for the historical withholdings separate from the OTT dispute. *Id.* at 3.

On April 23, 2021, over a month after Ms. Miller's March 12, 2021 letter and with less than two months before trial, AT&T sent Level 3 a new Rule 26(e) and Rule 26(a)(2) disclosure, presenting a new damages analysis by Ms. Miller that assumed AT&T's OTT withholdings were exactly 65 percent of Level 3's end office charges. ECF Nos. 205-16, 205-17. This is in spite of Ms. Miller's prior concession that it was "not possible to exactly match the withholding for the Level 3 entity billing," Ex. A, because "AT&T's mechanized payment system does not have the ability to recognize the difference between L3's billing that is associated with operating as a tandem vs. the billing associated with L3 operating as an EO [end office] when both are included on the same BAN." Steese Dec. Ex. C at 4. Ms. Miller's analysis also necessarily assumes that AT&T withheld millions of dollars in payments from Level 3 for reasons AT&T had never

8

disclosed to Level 3, and thus necessarily also means AT&T is just now raising disagreements with Ms. Torres' expert disclosures that it had never raised before.

Remarkably, AT&T's new damages analysis uses as its foundation the same figures Level 3 uses on what Level 3 charged, Level 3's OTT percentage, and the credit due for end office charges on OTT calling. Compare ECF No. 205-11 at 3 (Level 3's damages calculation) to ECF No. 205-17 at 2 (AT&T's damages calculation). Thus, the areas of factual disagreement AT&T previously identified, *see* ECF No. 205-9 at 4–5, appear to have been resolved; the only remaining areas of disagreement of those AT&T previously identified are legal questions on whether Level 3 can include late payment charges. These now-resolved fact issues were the only thing keeping Level 3 from moving for summary judgment to resolve the entire action rather than seeking partial summary judgment, as material questions on the exact amounts Level 3 charged and AT&T paid required further resolution. If AT&T had agreed to then what it agrees to now, this case might very well be over.

The parties' agreement on these fundamental figures also makes it possible to show why AT&T's withholdings under the OTT Dispute so vastly exceed Level 3's end office charges. Back in 2017, Ms. Miller admitted that AT&T could not distinguish between end office and tandem charges due to the format of Level 3's invoices, and so made "additional offsets" to the OTT Dispute. *See* Steese Dec. Ex. B. The figures from the parties' recent damages analyses make it possible to show that, in fact, AT&T treated *all* of these charges (both end office *and* tandem) as though they were end office charges:

- The parties agree that, through January 2021, Level 3 assessed approximately ▇▇▇ in end office charges. Compare ECF No. 205-11 at 3 (Level 3's March 2021

damages analysis) with ECF No. 205-17 (AT&T's March 2021 damages analysis).

- After subtracting late payment charges and amounts attributable to the DEOT dispute, Level 3 determined that AT&T withheld ▇▇▇▇▇▇ in payment from Level 3 through January 2021, all of which was attributable to the only remaining dispute, the OTT Dispute. ECF No. 205-11 at 4. But AT&T, now claiming to have withheld only 65 percent of end office charges, states that it withheld only ▇▇▇▇▇▇—a difference of ▇▇▇▇▇▇. *See* ECF No. 205-17.

- The entire ▇▇▇▇▇▇ delta appears to be a result of the fact that AT&T also withheld 65 percent of payment on Level 3's tandem charges—the very charges AT&T said its mechanized system could not differentiate. The sum of the tandem switching and transport charges Level 3 assessed between January 2019 and January 2021 (i.e., LTT and LTTAN rate elements) is ▇▇▇▇▇▇. 65 percent of this amount is ▇▇▇▇▇▇—a 99.3% match with the entire difference between Level 3's damages calculation and AT&T's.

*See* Torres Dec. ¶¶ 9–10.[7] AT&T withheld payment under the guise of the OTT Disputes, claiming to be withholding 65 percent of end office charges on OTT traffic—and knowing all the while that AT&T was withholding substantially more than that because AT&T could not differentiate between tandem and end office charges.

---

[7] Ms. Torres's declaration utilizes the most current data through April 2021, instead of data through January 2021. Level 3 presents the data in this Opposition through January 2021 so it can compare its analysis to the figures in AT&T's late disclosure, which sets forth AT&T's claimed damages clearly for the Court to see. At trial, Level 3 will be prepared to discuss this subject with data both through January 2021 and through April 2021. The data through January 2021 show a 99.3% match, and through April 2021, a 96.7% match.

Level 3's *limine* motion outlines the various reasons AT&T's untimely disclosures should be excluded due to AT&T's multiple Rule 26 violations. In any event, the notion that AT&T has been withholding charges pursuant to disputes it had never before identified—even though AT&T was required to identify them, both under Rule 26 and under Level 3's Tariff—is not only unsupported but demonstrably untrue. AT&T's attempt to shield its untimely argument from scrutiny by way of a motion *in limine* should be rejected.

## II.   ARGUMENT

The foundation of AT&T's Motion is its unsupported claim that AT&T withheld payment on exactly 65 percent of Level 3's end office charges pursuant to the OTT dispute, and that any withholdings above that amount are associated with other disputes. This is no foundation at all; the claim fails not only because it is late, but also because it is a factual question—one the evidence at trial will conclusively refute. The withholdings, and Level 3's claim to recover them, arise under the OTT Dispute and are subject to Level 3's Counterclaim.

### A.   AT&T's *Limine* Motion Improperly Seeks Substantive Legal Relief.

"'A motion in limine is a request for guidance by the court regarding an evidentiary question,' which the court may provide at its discretion to aid the parties in formulating trial strategy." *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995) (quoting *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983)). "An *in limine* motion is not a proper vehicle for a party to ask the Court to weigh the sufficiency of the evidence to support a particular claim or defense, because that is the function of a motion for summary judgment, with its accompanying and crucial procedural safeguards." *Colorado Ctr. for Healing Touch, Inc. v. Healing Touch Int'l, Inc.*, No. 14-CV-00313-MJW, 2017 WL 11550572, at *4 (D. Colo. Jan. 3, 2017) (quoting *Dry*

11

*Clean Super Ctr., Inc. v. Kwik Indus., Inc.*, No. 08-CV-00578-WJM-CBS, 2012 WL 503510, at *4 (D. Colo. Feb. 15, 2012)).

"[A] court is almost always better situated during the actual trial to assess the value and utility of evidence. For this reason, some courts defer making *in limine* rulings unless the evidence is clearly inadmissible on all potential grounds." *Martensen v. Koch*, No. 13-CV-02411-REB-CBS, 2015 WL 514913, at *2 (D. Colo. Feb. 6, 2015).[8] Thus, "fact-bound determinations dependent upon the character of the evidence introduced at trial" are not issues that can be finally decided at a pretrial hearing. *United States v. Mejia-Alarcon*, 995 F.2d 982, 987 (10th Cir. 1993); *see also* Practice Standards (Civil), Judge Raymond P. Moore § I.L ("Motions *in limine* are discouraged when the motion is evidence-driven and cannot be resolved until evidence is presented at trial, or when trial is to the Court. Instead, the issue can be flagged in a trial brief.").

AT&T's motion, though offered "[i]n the guise of a motion *in limine*," is in substance "a new motion for summary judgment." *Dry Clean Super Ctr., Inc.*, 2012 WL 503510, at *5. Its

---

[8] That is what makes AT&T's *limine* motions different from Level 3's motion to preclude expert testimony and opinions disclosed after the discovery deadlines passed. Courts frequently grant motions *in limine* to exclude expert testimony, including for violations of the Rule 26 disclosure requirements; in those instances, it is plain that such testimony could never be admissible. *See, e.g., Henkel v. Albertsons, LLC*, No. 14-CV-02217-CMA-MJW, 2015 WL 4538651, at *4 (D. Colo. July 28, 2015) (granting motion *in limine* to preclude testimony of expert as to "opinions not disclosed in his expert report under Fed. R. Civ. Pro. 26(b)"); *A.H. ex rel. Hadjih v. Evenflo Co.*, No. 10-CV-02435-RBJ-KMT, 2012 WL 5389772, at *1 (D. Colo. Nov. 3, 2012) (granting *limine* motion to preclude expert testimony; "Any expert testimony not completely disclosed in full compliance with Rule 26(a)(2) by those deadlines will not be admitted absent agreement of the parties. The Court specifically directs counsel not to attempt to offer expert opinions that have not been completely and timely disclosed."); *see also* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party *is not allowed to use that information or witness* to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.") (emphasis added).

purpose is not to preclude evidence beyond the scope of Level 3's claims, as it suggests (*see* ECF No. 209 at 11), but to limit the ability of Level 3 to recover fully on its claims. The Motion is thus procedurally improper, being brought well after the deadline for dispositive motions and without utilizing the procedural safeguards afforded by Rule 56. It can be denied for that reason alone. *See id.* (party seeking to preclude opponent from raising a particular claim or defense "should not have filed a motion *in limine* on the eve of trial, but instead should have filed a summary judgment motion pursuant to Federal Rule of Civil Procedure 56. . . . The Court will not allow Defendants to circumvent its practice standards and the Rules of Civil Procedure by raising a substantive legal issue in a motion *in limine*.") (quoting *Provident Life & Acc. Ins. Co. v. Adie*, 176 F.R.D. 246, 250 (E.D. Mich. 1997)).

The Motion fails on the merits as well.

**B. AT&T's Damages Theory Should be Precluded due to its Untimely Disclosure.**

AT&T's entire damages theory is premised on opinions and theories that AT&T first disclosed just a few weeks ago, long after the parties filed their *Daubert* and summary judgment motions. As detailed in Level 3's Motion *in Limine* (ECF No. 205), these opinions should be precluded due to AT&T's violations of its Rule 26 disclosure obligations. Level 3 has long shown that AT&T has identified only the DEOT and OTT disputes as bases for its withholdings. Until recently, AT&T never suggested that it was withholding charges pursuant to other unrelated disputes. It did nothing to correct its own disclosures until discovery had been closed for many months, as the parties begin their final preparations for trial, and after and the Court awarded Level 3 summary judgment on liability. AT&T should not be permitted to inject its eleventh-hour assertion that it has been withholding for other usage-based disputes all along.

13

This dilatory conduct makes AT&T's brazen suggestion that "Level 3 *could have* brought a claim—specifically, a collection action—to attempt to recover money related to the other switched access services and the parties' billing disputes for those services" especially galling. ECF No. 209 at 12 (emphasis in original). That is exactly what this case is: an action to recover all damages arising from the only dispute AT&T ever identified as a basis for its withholdings. If AT&T had ever identified different disputes, Level 3 could have brought a collection action to recover money withheld for those reasons as well. But AT&T did not.

AT&T's failure to identify these other disputes violated not only Rule 26, but also its obligations under Level 3's Tariff, which requires it to promptly identify the basis for the dispute in full detail for the specific purpose of allowing Level 3 to pursue such claims: "The Customer may dispute a bill in good faith only by written notice to the Company." Steese Dec. Ex. D § 4.9(1).[9] The tariff also spells out the information that a disputing customer must provide in the written notice, including, among other things:

- "*A clear explanation of the basis of the dispute*, including what the Customer believes is incorrect (e.g., nonrecurring charge; mileage; circuit identification) and the reason why the Customer believes the bill is incorrect (e.g., monthly rate billed not same as in tariff; facility not ordered; service not received)";

- "The exact dollar amount in dispute";

- "The universal service order code(s) (USOCs) and/or rate element associated with the service"; and

- "*Details sufficient to identify the specific amount(s) and item(s) in dispute*."

---

[9] This is the Tariff that Level 3 utilizes.

*Id.* § 4.9(2) (emphasis added). Had AT&T complied with these obligations and identified the supposedly distinct disputes it now claims to be the basis of the withholdings, Level 3 could have responded accordingly, including by amending its counterclaims to bring additional claims to collect on these purportedly distinct disputes. Instead, AT&T gave no indication that there was ever any dispute underlying the withholdings other than the OTT and DEOT disputes. As a result, Level 3 brought the only claims it needed to pursue all dollars at issue.

AT&T's belated claim that its withholdings actually pertain to other disputes threatens significant prejudice to Level 3's ability to recover those charges. The deadline to amend the pleadings is far past, and trial is just weeks away. Making matters worse, a large portion of Level 3's damages rise from the earlier months of 2019, a period now over two years in the past. For example, in February 2019 alone, Level 3 shows damages of ███████, while AT&T calculates Level 3's damages for that period at ███████. This means real dollars, if they are not subject to Level 3's Counterclaim here, may be beyond the reach of the two-year limitations period for the collection actions AT&T suggests Level 3 should bring. *See* 47 U.S.C. § 415(a). AT&T cannot seriously suggest that Level 3 should have brought a separate action to address these supposedly unrelated damages when AT&T withheld the very information necessary for Level 3 to do so until it was too late to act on AT&T's new claims. The Court should not reward AT&T for hiding the ball.

AT&T's Motion thus underscores the significant prejudice its belated disclosure inflicts upon Level 3—prejudice that cannot be cured except by precluding AT&T from presenting its untimely damages theories and opinions. This too is reason enough on its own to deny AT&T's Motion (and grant Level 3's).

### C. There is No Support for the Notion that AT&T Withheld the Amounts at Issue Pursuant to Any Dispute Other than the OTT Dispute.

Having disclosed these witnesses and opinions well past the deadlines, in this Motion AT&T goes one step further, attempting to shield its new damages concoction from scrutiny and preclude Level 3 from presenting its own damages analysis at trial. This, too, is indefensible. The evidence at trial will show that AT&T's position (if the Court permits AT&T to present it, notwithstanding its late disclosure), is unsupported, and is nothing more than desperate attempt to cling to its excessive and unjustified withholdings.

Indeed, AT&T could not possibly have withheld at exactly 65 percent of Level 3's end office charges: AT&T admits that its mechanized system gave it no idea how to determine what Level 3's end office charges were, much less calculate and withhold a specific percentage of those charges. *See* Steese Dec. Ex. C ("it is not possible to exactly match…."). Only when Level 3 provided its own damages analysis did AT&T, piggybacking off Level 3's figures, identify what 65 percent of Level 3's end office charges were—and what AT&T would have been withholding, had AT&T been adhering to its own theory of the case. In reality, AT&T's withholdings vastly exceeded this, because AT&T withheld 65% of tandem charges as though they were end office charges (in addition to withholding 65% of end-office charges). *See* Torres Dec. ¶ 11.

AT&T's Motion is thus something even worse than a request that the Court preliminarily decide an evidence-driven issue of fact in its favor. AT&T asks the Court to decide in its favor a contention of fact for which AT&T has no evidence at all. At the conclusion of trial the weight of the evidence will fall squarely against AT&T's claim. AT&T cannot be spared from that fate by way of a Motion *in Limine*.

### III.  CONCLUSION

For the foregoing reasons, AT&T's Motion should be denied.

Respectfully submitted this 18th day of May, 2021.

By: /s/ *Charles W. Steese*
Charles W. Steese, #26924
Douglas N. Marsh, #45964
Armstrong Teasdale LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
csteese@armstrongteasdale.com
dmarsh@armstrongteasdale.com

*Attorneys for Defendant/Counterclaimants Level 3 Communications, LLC, Broadwing Communications, LLC, Global Crossing Telecommunications, Inc., and WilTel Communications, LLC*

## CERTIFICATE OF SERVICE

I, Charles W. Steese, hereby certify that on May 18th, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Rebecca B. DeCook
Andrew T. Flynn
Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1027
becky.decook@moyewhite.com
andrew.flynn@moyewhite.com

Michael D. Warden
Michael J. Hunseder
Justin A. Benson
Joshua W. Moore
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
mwarden@sidley.com
mhunseder@sidley.com
jbenson@sidley.com
joshua.moore@sidley.com

*Attorneys for Plaintiff AT&T Corp.*

/s/ *Charles W. Steese*
Charles W. Steese