**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-RM-MEH

AT&T CORPORATION,

    Plaintiff/Counterclaim Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC,

    Defendant/Counterclaimant,

and

BROADWING COMMUNICATIONS, LLC, GLOBAL CROSSING TELECOMMUNICATIONS, INC., and WILTEL COMMUNICATIONS, LLC

    Counterclaimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.,

    Counterclaim Defendant.

---

**DECLARATION OF JENNIFER TORRES IN SUPPORT
OF LEVEL 3'S RESPONSE IN OPPOSITION TO AT&T'S MOTION
IN LIMINE TO EXCLUDE EVIDENCE OF LEVEL 3'S DAMAGES CLAIMS**

---

I, Jennifer Torres, do depose on oath and state as follows in support of Level 3's Response in Opposition to AT&T's Motion in Limine to Exclude Evidence of Level 3's Damages Claims.

    1.    I am a Sr. Director for Business Operations for Level 3.

    2.    I have personal knowledge of the following facts and affirm that they are all true

and correct to the best of my knowledge and belief.

3.  I previously calculated Level 3's damages attributing AT&T's withholdings on Level 3's usage-based charges to the DEOT and OTT disputes, which are the only usage-based disputes AT&T had raised with Level 3. These calculations have been supplemented in subsequent months to bring Level 3's damages current such that the calculations included the additional charges and withholdings that occurred since I prepared my initial calculations.

4.  Level 3 provided a supplemental damages calculation to AT&T on May 17, 2021. These damages calculations, attached to the Declaration of Charles W. Steese ("Steese Dec.") as Exhibit F, show that Level 3 had assessed AT&T ▇▇▇▇▇ in end office charges between February 2019 and April 2021. After subtracting late payment charges and amounts attributable to the DEOT dispute, during this same timeframe AT&T withheld ▇▇▇▇▇ in payments from Level 3—more than Level 3's total end office charges.

5.  Because the only usage-based disputes AT&T raised with Level 3 were the DEOT Dispute and the OTT Dispute, and because I have factored in the impact of the DEOT dispute, I understand that all of these ▇▇▇▇▇ in withholdings are attributable to the OTT Dispute.

6.  I understand AT&T claims to have withheld only 65 percent of Level 3's end office charges pursuant to the OTT dispute. 65 percent of the end office charges Level 3 assessed between February 2019 and April 2021 is ▇▇▇▇▇. The difference between Level 3's calculations of what AT&T withheld for the OTT Dispute and what AT&T claims it withheld for the OTT dispute is ▇▇▇▇▇.

7.  In mid-2017, AT&T employee Alison Miller sent me and others at Level 3 emails, which stated, among other things:

A. "It is not possible to exactly match the withholding for the Level 3 entity billing to a specific dispute," which she attributed "to the fact that Level 3 is billing both tandem and end office on the same BAN [billing account number]." Steese Dec. Ex. A at 5.

B. "AT&T's mechanized payment system does not have the ability to recognize the difference between L3's billing that is associated with operating as a tandem vs. the billing associated with L3 operating as an EO [end office] when both are included on the same BAN." Steese Dec. Ex. C at 4.

C. For a dispute unrelated to the OTT dispute, Ms. Miller stated "there is withholding above the current dispute value for the EO/CPN issue due to: 1) Level 3's billing containing both EO and tandem billing on same BAN, which complicated the mechanized rate based withholding, and 2) AT&T and Level 3 (i.e. — Steve Ross) agreeing that the EO/CPN withholding would not be corrected in our payment systems until such time as the issue was fully corrected. As of April, Steve Ross had noted the EO/CPN issue was still ongoing." Steese Dec. Ex. A [CTL_0001896].

D. As a result of the over-withholding described in Paragraph 7(c), AT&T had "additional offsets due to the format of the L3 invoices that were allocated towards the ▮▮▮▮ OTT dispute." Steese Dec. Ex. B.

These are just a few of the emails I received.

8. I interpreted these emails to mean that because AT&T's mechanized process could not differentiate between end office and tandem charges, AT&T knew it was over-withholding on the OTT Dispute.

9. To verify this point, I have analyzed the data billed to AT&T during the February

2019 and April 2021 time frame. An analysis of Level 3's tandem charges during the same period as used in the parties' damages calculations—between February 2019 and April 2021—strongly supports the fact that AT&T withheld 65% of both end office charges and certain tandem charges that Level 3 invoiced to AT&T. During this period, Level 3 assessed charges for tandem switching and transport in the amount of ▮▮▮▮—▮▮▮▮ for tandem transport and ▮▮▮▮ for tandem switching. *See* Steese Dec. Ex. G. 65 percent of these charges is ▮▮▮▮.

10. As explained above, the difference between Level 3's calculations of what AT&T withheld for the OTT Dispute and what AT&T claims it withheld for the OTT dispute is ▮▮▮▮. Comparing this to the ▮▮▮▮ in tandem charges shows a 96.7 percent match.

11. Based on my experience in the telecommunications industry, including my experience dealing with other carriers to resolve company-to-company disputes, the near-exact correlation between these two figures strongly suggests that, in disputing and withholding payment on charges under the OTT Dispute, AT&T withheld payment on 65 percent of Level 3's end office *and* tandem charges.

12. A similar situation that occurred in 2017 further supports the conclusion that AT&T is including tandem charges when ostensibly disputing end office charges. On a separate dispute relating to end office charges, AT&T withheld ▮▮▮▮ when it should have withheld only ▮▮▮▮, and recognized that it had over-withheld by ▮▮▮▮. *See* Steese Dec. Ex. B. Translating that same rate of over-withholding to the OTT Dispute, AT&T's withholdings above and beyond 65 percent of end office charges would have been ▮▮▮▮. Once again, this aligns with the Level 3 view of what AT&T withheld on the OTT

dispute. Comparing this to the ▉▉▉▉▉▉ that Level 3 claims AT&T over-withheld above the 65% of end office charges shows a 97.1 percent match between the numbers.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 18, 2021 in Denver, Colorado

<em><u>Jennifer Torres</u></em><br>
Jennifer Torres