**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-RM

AT&T CORP.,

     Plaintiff/Counter Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC,

     Defendant/Counterclaimant,

and

BROADWING COMMUNICATIONS, LLC, GLOBAL CROSSING TELECOMMUNICATIONS, INC., and WILTEL COMMUNICATIONS, LLC

     Counterclaimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.

     Counterclaim Defendant.

---

**AT&T'S REPLY IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EVIDENCE OF LEVEL 3'S IMPROPER DAMAGES CLAIMS**

---

Plaintiff AT&T Corp. ("AT&T"), by and through undersigned counsel, respectively submits this Reply in support of its motion to exclude evidence that Defendant Level 3 Communications, LLC ("Level 3") (AT&T and Level 3, collectively, the "Parties") intends to submit asserting damages outside the scope of its Counterclaim (the "Motion").

1

## INTRODUCTION

This case is, was, and has always been about end-office switching charges on over-the-top Voice over Internet Protocol ("OTT VoIP") calls, and what the Parties owe each other under the 2015 Settlement Agreement ("Agreement") relating to such services. Following this Court's summary judgment Order (and anticipated stipulations by the Parties), the sole remaining issue to be tried is how much AT&T owes Level 3 for over-withholding on end-office switching charges based on the 2015 Settlement Agreement. From the moment it filed its Counterclaim and throughout fact discovery, Level 3 stated repeatedly that it seeks recovery of those *end-office switching* charges it alleges AT&T over-withheld. Level 3 concedes, as it must, that its own evidence shows that it billed AT&T approximately ▇▇▇▇ in end-office switching charges from January 1, 2019 through April 2021—the time period at issue in this case. Notwithstanding those acknowledgements, Level 3 now seeks to introduce evidence that it billed AT&T a total of ▇▇▇▇ for *all* access services—not just end-office switching—and that AT&T paid ▇▇▇▇ for all such services, purporting to leave an overall balance owed by AT&T (after credits) of ▇▇▇▇. But evidence relating to charges beyond the approximately ▇▇▇▇ in end-office charges levied by Level 3 is irrelevant to the remaining breach of contract claim pending before the Court. Accordingly, AT&T's Motion should be granted.

In an attempt to recover more damages than *all* the end-office charges levied against AT&T during the applicable time period, Level 3 speculates that AT&T must have withheld 65% of end-office *and certain other charges*. This is a new theory that Level 3—not AT&T—injected into the case after fact discovery, and it exceeds the scope of its claim and *both Parties'* discovery.

Making matters worse, Level's "evidence" is rank speculation. Specifically, in an attempt to lend credence to its newly-formed theory, Level 3 distorts beyond recognition a handful of emails between the Parties from 2017. But these emails relate to charges that have long been settled. And while AT&T responds to the contorted argument that Level 3 makes in the Response based on these emails below, at most the emails show that Level 3 has long been aware that AT&T has disputed a number of aspects of Level 3's billing over the course of their relationship, one of which related to OTT VoIP. None of these documents—even if admitted into evidence—supports the critical issue that Level 3 is accusing AT&T of now: withholding more than 65% of end-office charges during the applicable time period. Allowing Level 3 to offer speculative testimony about the basis of AT&T's non-end office withholdings and then recover such *non*-end-office charges after alleging and then affirmatively representing in fact discovery that it was *only* seeking end-office switching charges would prejudice AT&T significantly. Level 3's evidence at trial must be limited to its pleadings and the facts that have been developed in evidence in this case. The Motion should be granted.

## ARGUMENT

**I. LEVEL 3's DAMAGES "EVIDENCE" SEEKS TO RE-WRITE ITS COUNTERCLAIM AND ITS MULTIPLE DISCOVERY RESPONSES.**

Level 3's 17-page Response refers to its Counterclaim twice, but never quotes its language. Resp. at 2, 11. The reason is clear: the Counterclaim on its face expressly and repeatedly states that Level 3 is seeking only recovery of "*end-office switching* access charges" (*e.g.*, ECF No. 124, ¶¶ 64, 68–70). In its Response, however, Level 3 candidly admits for the first time that its damages "evidence" also reflects amounts it says it is owed for allegedly unpaid *tandem* switching charges (Resp. at 10).

3

Indeed, throughout the course of fact discovery, Level 3 reaffirmed that it was seeking damages only on end-office switching access charges. First, in its April 30, 2018 initial disclosures and in response to the requirement under Fed. R. Civ. P. 26(a)(1)(A)(iii) that a party provide a "computation of each category of damages claimed," Level 3 unequivocally disclosed: "Level 3 seeks *payment of end-office switching access charges* on all minutes of OTT-VoIP traffic delivered to Level 3 by AT&T since the execution of the parties' Settlement Agreement. AT&T has been withholding payment of *these charges* since mid-2017." Ex. 1 to Declaration of Justin A. Benson ("Decl."), at 4 (Apr. 30, 2018) (emphases added). Level 3 reaffirmed that limitation in its July 18, 2018 interrogatory answers: "Level 3 hereby incorporates and refers AT&T to Level 3's Rule 26(a)(1) disclosures . . . . Level 3 further states that *its damages consist of the end-office switching access charges AT&T has wrongfully withheld* and for which AT&T improperly claims a right to a refund." Ex. 2 to Decl., at 10 (July 18, 2018) (emphasis added).

Soon after fact discovery closed,[1] Level 3 provided on January 3, 2020, a supplemental Rule 26(a)(1) disclosure, but its description of its computation of damages remained the same; it re-affirmed that "Level 3 seeks *payment of end-office switching access charges* on all minutes of OTT-VoIP traffic delivered to Level 3 by AT&T since the execution of the parties' Settlement Agreement. AT&T has been withholding payment of *these charges* since mid-2017." Ex. 3 to Decl., at 5 (Jan. 3, 2020) (emphases added). Indeed, it was not until after fact discovery closed that Level 3 disclosed that it intended to seek damages for other access services and other disputes on the grounds that it was "expert" discovery. *See* March 16, 2020 Level 3 Expert Disclosure at

---

[1] Fact discovery in this matter closed on December 20, 2019. ECF No. 131. By agreement of the Parties, Level 3 deposed Marc Cathey, Teleport Communication Group, Inc.'s corporate representative, on February 11, 2020. Exhibit A, Declaration of Justin A. Benson at 2.

4

2. Only after examination of the excel files attached to this "expert opinion" did it become clear what Level 3 was angling to do with this disclosure. At that time, however, the parties were informally attempting to resolve the damage question, not conducting discovery. *See* Final Pretrial Order, ECF No. 199 at 28 ("The Parties continue to attempt to resolve outstanding disputes regarding their respective damages calculations.").

Thus, at *no time during fact discovery* did Level 3 ever disclose that its damages would include anything other than amounts withheld for end-office switching access charges. No other access charges (including tandem switching charges) were the subject of fact discovery by either party. And there was no discovery on any other disputes other than the Parties' dispute about the proper amount of end-office switching charges on OTT VoIP calls.

Contrary to Level 3's contentions, it is Level 3 (not AT&T) that has improperly and belatedly injected these new issues into this case. If the Court were to deny AT&T's motion, it effectively would allow Level 3 to bring in a whole new swath of disputes between the Parties, none of which are pled in Level 3's Counterclaim or has been the subject of any discovery. Level 3 should be precluded from offering such "evidence" at trial.

## II. LEVEL 3 CONCEDES ITS DAMAGES ANALYSIS INCLUDES CHARGES OTHER THAN END-OFFICE SWITCHING.

Having no response to AT&T's argument regarding the scope of its Counterclaim, Level 3 instead offers the Court a new theory: it claims that the entire difference between Level 3's claimed damages and AT&T's calculation "appears" to be a result of the so-called "fact" that "AT&T also withheld 65 percent of payment on Level 3's *tandem charges*." Resp. at 10 (emphasis added). By putting forth this entirely new theory, Level 3 has conceded the heart of AT&T's

5

Motion—that Level 3 is seeking recovery of tandem switching (and other) charges, not the *end-office* charges that are the subject of its case.

### III. LEVEL 3's NEW THEORY IS RANK SPECULATION UNTESTED BY ANY DISCOVERY AND NOT SUPPORTED BY THE EMAILS ATTACHED TO ITS RESPONSE.

In attempting to support its new-found assertion that it should be entitled to recover tandem switching and tandem transport charges in this case, Level 3 cites to a series of emails between Level 3 and AT&T from May and June 2017. *See* Resp. at 3 (citing ECF Nos. 223-2, 223-3). In so doing, however, Level 3 distorts and mischaracterizes those documents.

First, using excerpts from those emails, Level 3 claims that AT&T was "disputing ▮ ▮ for the OTT Dispute" and that it could not "exactly match the withholding for the Level 3 entity billing to a specific dispute, [due] to the fact that Level 3 is billing both tandem and end office traffic on the same BAN [billing account number]." (Resp. at 3). Level 3 then argues that because of the inability to match, AT&T must have withheld 65% of amounts invoiced for both end-office tandem switching. But that is not what those documents say.

To be sure, there was an ▮▮▮ "OTT Dispute" in 2017, but there is a distinction between a "dispute" over what the Parties owe one another and the amount that AT&T "withholds" or short-pays on an invoice. *See* 223-2 at 4 (later June 29, 2017 email from AT&T: "I think there is some confusion still between what is withheld and what is disputed."). The total subset of disputes identified as "Connectivity Disputes" were (1) the ▮▮▮ OTT Dispute, (2) a separate ▮▮▮ EO/CPN [End Office/Calling Party Number] Dispute, and (3) a third ▮▮▮ dispute for a total disputed amount of ▮▮▮. And the total withholding was lower than the total dispute amounts. More importantly, "there was *no* withholding action taken

6

for the OTT dispute," which makes sense given that the D.C. Circuit's ruling had just become final in May 2017. *Id.* And AT&T clarified that "there [was] withholding above the current dispute value for the [separate] EO/CPN issue due to . . . Level 3's billing containing both EO and tandem billing on [the] same BAN, . . . [and the agreement] that the EO/CPN withholding would not be corrected in our payment systems until such time as the issue was fully corrected. . . . As of April . . . the EO/CPN issue was still ongoing." *Id.* In short, these emails make it clear that the issues that led to the withholding during this period were wholly unrelated to the OTT dispute.

Second, based on the false premise that these 2017 emails establish that the combined billing issue is related to withholding on end-office switching because of OTT, Level 3 then speculates that AT&T must have withheld 65% of certain tandem switching and tandem transport charges as well. Rather than accept these emails at face value that the combined billing limited AT&T's ability to clearly align the withholding values to the multiple billing issues that led to the withholding, Level 3 proffers its expert to "interpret[] these emails" to the contrary and that AT&T knew it was "over-withholding on the OTT Dispute." Decl. of J. Torres, ECF No. 223-1 ¶ 8. Not only are these emails irrelevant for the reasons laid out above, but Level 3's citation to them is clearly an attempt to muddy the waters and distract from the core issue in this case—the amount of end-office switching charges that AT&T over-withheld.

IV. **THE "EVIDENCE" THAT LEVEL 3 CITES IN ITS RESPONSE DEMONSTRATES THAT LEVEL 3 WILL NOT BE UNFAIRLY PREJUDICED BY EXCLUSION OF ITS NEW DAMAGE THEORY**

Although the emails do not prove Level 3's new damages theory that AT&T withheld 65% of payments for tandem switching and tandem transport charges, they do demonstrate something else: that disputes and withholding involving a variety of services (including both end-office and

7

tandem charges) regularly arise in the Parties' relationship.[2]  Resp. at 3–4.  The Court need not decide any of these other billing disputes—and, indeed cannot—because there is no claim for these other disputes.  These emails demonstrate, however, that Level 3 cannot legitimately claim that it is surprised to learn that AT&T withheld amounts charged for non-end-office charges. [3]

Had Level 3 ever amended its pleadings and disclosed its theory in fact discovery that it was seeking to recover its "tandem switching charges" or other amounts that AT&T withheld based on other disputes in this case, the Parties could have explored this theory in fact discovery. Level 3 did not, and it is too late in the day for the Court to entertain damages claims based on an unpled allegation of underpayments of "tandem charges."

Nor can Level 3 be unfairly prejudiced or surprised by AT&T's evidence that it withheld 65% of the end-office charges at issue in this case, rather than some greater amount that Level 3 now claims AT&T withheld for tandem and other access services. Indeed, Level 3 pled that AT&T withheld 65% of end-office charges in its Counterclaim.  See Counterclaim ¶ 68.  Although Level 3 now claims that AT&T does not provide "any evidentiary support" for this position that has it

---

[2] As one of the 2017 emails that Level 3 attaches to its Response makes clear, there were a host of disputes between the Parties, many of which are not mentioned in the Response but, under Level 3's view of the world, would be brought into this case through Level 3's damages claim based on all access services.  These disputes include the specific rates that Level 3 charges to double-billing on 8YY calls to "Intra Major Trading Area" ("IntraMTA") traffic. See ECF No. 223-3 (Aug. 22, 2017 email from J. Torres to A. Miller); ECF No. 223-2 (Aug. 7, 2017 email exchange between A. Miller and J. Torres).  It should go without saying that none of these disputes are alleged in the Counterclaim or were subject to discovery.

[3] Level 3 cites a plethora of cases to argue that AT&T's allegedly late expert disclosure of Alison Miller "inherently" causes Level 3 prejudice—not so. Resp. at 5 n.4. AT&T's proposed testimony of Alison Miller is not expert testimony at all, but is rather fact testimony. See AT&T Response to Level 3 Motion in Limine, ECF No. 217 at 11–13. Even if Ms. Miller were providing expert testimony, however, Tenth Circuit caselaw clearly provides that in circumstances like this, where Level 3 has long known of Ms. Miller's proposed testimony, there is no prejudice. See Id. at 13–18. Level 3's citation to these cases is nothing but a transparent attempt to convince the Court to prevent AT&T from putting on a defense to a damages theory that was neither pled nor disclosed (or even concealed) by Level 3. Indeed, were the Court to rule in favor of AT&T on the instant Motion, there would likely be no need for a damages trial at all.

backwards. Resp. at 1. It is Level 3 that is making damages assertions without evidence: it would have this Court believe that AT&T somehow withheld over ▮▮▮▮▮▮ in end-office switching charges, even though Level 3 concedes that it *only billed* a total of approximately ▮▮▮▮▮▮ for those services during the entirety of the relevant time period.

Furthermore, Level 3 wants to have it both ways in its Response—it first argues that AT&T has no evidence that it is withholding 65% end office charges (Resp. at 3), while simultaneously stating that its damages analysis concludes that AT&T has indeed withheld 65% of end office charges (Resp. at 10). Level 3's damages analysis *starts* with the premise that AT&T is withholding 65% of end office charges and then determines that the delta between that figure and what Level 3 is claiming in damages is that AT&T *also* mistakenly withheld 65% on certain tandem charges. It concludes that this 65% withholding on certain tandem charges is a "99.3% match with the entire difference between Level 3's damages calculation and AT&T's." *Id*. Level 3's own damages analysis starts and ends with the undeniable fact that AT&T is withholding 65% on end office charges.

The reality is that the remainder of the charges withheld by AT&T relate to access services such as tandem switching and tandem transport that are outside the scope of Level 3's Counterclaim and this case. AT&T is prepared to have a witness explain these facts at trial, but ironically it is Level 3 that seeks to inject its new, undisclosed theory into this case after fact discovery, declared that its theory is a matter of "expert" testimony, and then prevent AT&T from defending itself at the trial. There are no grounds to do so.

9

**V.      AT&T'S MOTION IN LIMINE IS THE PROPER VEHICLE FOR THE COURT TO EXCLUDE "EVIDENCE" FROM TRIAL THAT IS IRRELEVANT TO THE ISSUES BEFORE THE COURT**

Finally, without any explanation for its big pivot away from the language of its own Counterclaim and its consistent, numerous discovery responses through the course of this case that it was seeking recovery of end-office charges *and* after its bald, new admission that it is *assuming* the basis of AT&T's "other" withholdings, Level 3 simply seeks to recharacterize the nature of AT&T Motion—calling it one for summary judgment. But a motion that seeks to *in limine* (exclude) evidence that relates to issues not before the Court is not a motion for summary judgment.

A motion for summary judgment motion asks the Court to weigh the *sufficiency* of the evidence to a particular claim. *See White v. Cont'l Gen. Ins. Co.*, 831 F. Supp. 1545, 1551 (D. Wyo. 1993). AT&T is not asking the Court to determine whether Level 3's evidence is *sufficient* to support its claims for non-end-office charges (it is not). Rather AT&T's Motion shows that Level 3's evidence of non-end-office charges is *irrelevant* to Level 3's breach of contract claim for end-office charges—such damages were simply not sought by Level 3 (nor were they the subject of any discovery between the Parties). Given the clear irrelevance of damages unrelated to end-office switching to Level 3's breach of contract counterclaim, the inadmissibility of this evidence can be resolved now instead of wasting the Court's (and Parties) time at trial. *See Godfrey v. CSAA Fire & Cas. Ins. Co.*, No. CIV- 19-00329-JD, 2020 WL 1056306, at *1–5 (W.D. Okla. Mar. 4, 2020) (granting defendants' motion in limine on relevancy grounds because it was "of [no] consequence to the determination of the action.").

Here, AT&T's Motion seeks to prevent Level 3 from introducing irrelevant evidence regarding damages that Level 3's breach of contract claim does not seek—*non*-end office charges. That is precisely the purpose of a motion in limine. *See Dry Clean Super Ctr., Inc. v. Kwik Indus., Inc.*, No. 08–cv–00578–WJM–CBS, 2012 WL 503510, at *4 (D. Colo. Feb. 15, 2012) (holding motion in limine should be used "to eliminate from further consideration evidentiary submissions that clearly ought not be presented [at trial] because they clearly would be inadmissible for any purpose." (quoting *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)); *Ewart v. Halac*, No. 15–CV–155–JED–FHM, 2016 WL 8115362, at *1 (N.D. Okla. June 29, 2016); *see also Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995); *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983)) ("A motion in limine is a request for guidance by the court regarding an evidentiary question"); *Howard v. Bank of Am., N.A.*, No. CV 04-2196-PHX-ECV, 2006 WL 1816993, at *2 (D. Ariz. June 29, 2006) (prohibiting plaintiff from "present[ing] evidence of or argu[ing] for damages not specifically requested in the complaint."); *Saiz v. Cty. of Bernalillo*, No. 07-790 JAP/LFG, 2008 WL 11409996, at *2 (D.N.M. July 22, 2008).

## CONCLUSION

For the foregoing reasons, the Court should grant AT&T's motion in limine to exclude evidence of damages unrelated to the claims at issue.

Respectfully submitted this 25th day of May, 2021.

By: /s/ Justin A. Benson

Rebecca B. DeCook
Andrew T. Flynn
Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1027

11

becky.decook@moyewhite.com
andrew.flynn@moyewhite.com

Michael J. Hunseder
Michael D. Warden
Justin A. Benson
Joshua W. Moore
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
mhunseder@sidley.com
mwarden@sidley.com
jbenson@sidley.com
joshua.moore@sidley.com

Angela C. Zambrano
SIDLEY AUSTIN LLP
2021 McKinney Avenue
Suite 2000
Dallas, TX 75201
Telephone: (214) 981-3300
angela.zambrano@sidley.com

*Attorneys for Plaintiff AT&T Corp. and Counterclaim Defendant Teleport Communications Group*

**CERTIFICATE OF SERVICE**

I, Justin A. Benson, hereby certify that on May 25, 2021 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Charles W. Steese, #26924
Douglas N. Marsh, #45964
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
Email: csteese@armstrongteasdale.com
Email: dmarsh@armstrongteasdale.com

*Attorneys for Defendant Level 3 Communications, LLC*

/s/ Justin A. Benson
Justin A. Benson
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
E-mail: jbenson@sidley.com

*Attorney for Plaintiff AT&T Corp. and Counterclaim Defendant Teleport Communications Group*