IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00112-RM-MEH

AT&T CORPORATION,

    Plaintiff/Counterclaim Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC,

    Defendant/Counterclaimant,

and

BROADWING COMMUNICATIONS, LLC, GLOBAL CROSSING TELECOMMUNICATIONS, INC., and WILTEL COMMUNICATIONS, LLC

    Counterclaimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.,

    Counterclaim Defendant.

## LEVEL 3'S REPLY IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE UNDISCLOSED WITNESSES AND DAMAGES OPINIONS

AT&T's Response to Level 3's Motion *in limine* (ECF No. 217) does not contest the most important point: until well after the deadlines for doing so had passed, AT&T did not identify the subject of Alison Miller's anticipated testimony, did not identify Bob Hayes[1] as a witness at all, and did not disclose Ms. Miller as an expert witness. AT&T did not timely comply with either the Rule 26(a) disclosure requirements for fact and expert witnesses or the Rule 16(b)

---

[1] AT&T did not list Mr. Hayes in its witness list, and so apparently does not intend to call him.

requirement to comply with the Court's scheduling order. Nor does AT&T attempt to show good cause for these violations. In fact, the words "good cause" or discussion of Rule 16 appear nowhere in AT&T's Response.

Instead, AT&T argues that Ms. Miller's testimony is actually fact testimony. It is not: AT&T admits that her testimony is founded on data Level 3 provided in its damages calculations, not her personal knowledge. In any event, AT&T also failed to disclose that Ms. Miller would discuss damages and the circumstances around these calculations pursuant to Rule 26(a)(1); as a result, AT&T's attempt to cast Ms. Miller as a fact witness is fatally flawed no matter how her testimony is viewed.

AT&T also argues that it previously disclosed the substance of Ms. Miller's testimony. That is also untrue. Until now, AT&T never suggested it was withholding payment on Level 3's usage charges for any reason other than the DEOT and OTT Disputes. AT&T's prior disclosures purported to identify all the "areas of disagreement" with Level 3's damages calculations, and the only factual issue AT&T raised concerned the specific figures Level 3 used—an issue AT&T agrees is now resolved. And while AT&T claims it *intended* to withhold at the rate of 65 percent of Level 3's end office charges, it has long known that it withheld more than this; indeed, it claimed its mechanized process for disputing and withholding payment could not calculate Level 3's end office charges, much less allow it to calculate 65 percent of those charges until Level 3 disclosed those numbers here. The charges Level 3 seeks to recover are the very charges that have been part of the OTT Dispute since before the 2015 Settlement Agreement was executed. The notion that AT&T withheld payment on no more than 65 percent of end office charges for the OTT Dispute is not merely a fiction—it is also a recently released fiction.

Finally, AT&T claims that Level 3 is not prejudiced by these untimely disclosures. That is both irrelevant and wrong. Because AT&T violated the Rule 16(b) requirement to comply with the Court's scheduling order, the Court may preclude the late-disclosed opinions irrespective of prejudice. Nevertheless, prejudice abounds in spades—most glaringly, Level 3 could be barred by the statute of limitations from recovering portions of these withheld payments. If AT&T genuinely believed the multimillion-dollar issues it now raises, then it should have disclosed them at the proper time. To inject them into the fray now, as the parties are making their final preparations for trial, is inherently and unavoidably prejudicial.

AT&T therefore should be precluded from presenting these new opinions and witnesses.

### I. MS. MILLER'S TESTIMONY IS EXPERT, NOT FACT TESTIMONY.

AT&T principally argues that Ms. Miller is merely a fact witness who will testify on what Level 3 billed, and AT&T withheld, for end office switching, such that it was not necessary to disclose her as an expert. ECF No. 217 at 12. AT&T itself shows otherwise: it recognizes that "Ms. Miller's expected testimony will be based on data *provided by Level 3*." ECF No. 217 at 15–16 (emphasis in original). Her testimony is *not* based on personal knowledge, but on facts and data supplied to her for purposes of providing expert testimony.

Her untimely disclosure confirms this. The disclosure includes calculations AT&T originally sent to Level 3 in the form of an excel spreadsheet. *See* Steese Dec. ¶ 3. Just as AT&T states, data Level 3 provided as part of its damages disclosures form the foundation of the spreadsheet's calculations.[2] For example, Column N of the spreadsheet purports to show what

---

[2] In particular, Columns A through F of the spreadsheet are lifted wholesale from Level 3's March 9, 2021 supplemental calculations. *Compare* ECF No. 205-11 (Level 3's March 9, 2021 calculations) to ECF No. 205-17 (AT&T's calculations). Column K of AT&T's spreadsheet,

3

AT&T withheld on the end office charges. But the figures in that column are not based on AT&T's data or Ms. Miller's knowledge; instead, the spreadsheet applies a simple mathematical formula, still visible in the cells in Column N, taking the data Level 3 provided on what its end office charges were and multiplying those amounts by 65 percent. *See* Steese Dec. ¶ 4; Ex. A. Neither the end office charges Level 3 billed nor percentages of those amounts is based on Ms. Miller's personal knowledge. Rather as AT&T admits, those figures are based exclusively on data provided by Level 3.

In fact, neither Ms. Miller nor any other AT&T employee has personal knowledge of what Level 3 billed on end office charges. In 2017, when Level 3 asked AT&T to explain the amounts it was disputing and withholding for the OTT Dispute, Ms. Miller acknowledged that "[i]t is not possible to exactly match the withholding for the Level 3 entity billing to a specific dispute," which she attributed "to the fact that Level 3 is billing both tandem and end office on the same BAN [billing account number]." ECF No. 223-2 at 5. That is because "AT&T's mechanized payment system does not have the ability to recognize the difference between L3's billing that is associated with operating as a tandem vs. the billing associated with L3 operating as an EO [end office] when both are included on the same BAN." ECF No. 223-4 at 4. AT&T therefore had "additional offsets due to the format of the L3 invoices that were allocated towards the . . . OTT dispute." ECF No. 223-3. Ms. Miller thus acknowledged that she had no way of knowing exactly how much Level 3 billed in end office charges, and that she knew AT&T's mechanized system was withholding payment for the OTT Dispute not just for end office but

---

reflecting the end office charges Level 3 billed, adds the revenues Level 3's data provide for a given month using a mathematical formula in the cell. *Id.*

also for tandem charges.

AT&T's inability to utilize its mechanized process to determine the exact amount of Level 3's end office charges continues to this day. This is evident from comparing the payments AT&T withheld on unrelated disputes on end office charges from 2017 from what it is currently withholding on the OTT Dispute. In that earlier dispute, the inability of AT&T's "mechanized process" to differentiate between end office and tandem charges caused it to over-withhold by 34.5 percent. *See* ECF No. 222 at 4 n.4 (citing ECF No. 222-4). That ratio is a 97% match with the difference between what AT&T now claims it withheld and what it actually withheld for the OTT Dispute. *Id.* This confirms that AT&T's method for identifying and withholding payment for end office charges is unchanged, and that AT&T's mechanized process *still* cannot tell what end office charges Level 3 has assessed. Thus, while Ms. Miller knew AT&T was over-withholding, she does not have personal knowledge of the specific amount of Level 3's end office charges, much less what 65 percent of that amount is.

Being unaware of the total amount of Level 3's end office charges, Ms. Miller could perhaps, at most, testify to the total amounts Level 3 charged; that is as far as her personal knowledge can take her as a fact witness. Yet that is exactly what AT&T contends is not the proper beginning point for a damages calculation. *See* ECF No. 217 at 6. AT&T never bothered to determine the exact amount of Level 3's end office charges until recently, when Level 3 provided it in its damages disclosures. Though it now pretends to have withheld exactly 65 percent of Level 3's end office charges all along, it has known for years that it was not doing the very thing on which it now founds its expert disclosure

This is also why AT&T's arguments that Level 3 may recover only end office charges

5

fail. From the outset, what AT&T withheld for the OTT Dispute, it withheld under the guise that it was withholding payment on end office charges for OTT-VoIP traffic. Each of the charges AT&T withheld under this guise have always been included in the scope of the breach of contract action. Indeed, the 2015 Settlement Agreement tried to resolve the OTT Dispute by requiring AT&T to pay going forward the charges it had previously disputed. AT&T breached the Settlement Agreement by failing to do so, reviving the same disputes and withholding the same payments on the same charges the Settlement Agreement instructed AT&T to pay. Everything AT&T withheld on the basis that it did not have to pay end office charges on OTT traffic is part and parcel of the OTT Dispute, the Settlement Agreement, and Level 3's claims.

Since Ms. Miller has no personal knowledge of what Level 3's end office charges were, she could have no personal knowledge of what a specific percentage of those charges were, much less that AT&T withheld that percentage and no more. The only way to lay foundation for the testimony AT&T intends for Ms. Miller to give is to supply her with additional facts or data under Fed. R. Evid. 702—which is exactly what AT&T says it has done. This is expert testimony.

## II. THE FUNDAMENTAL BASES FOR MS. MILLER'S OPINIONS WERE NOT DISCLOSED UNTIL WELL AFTER THE DISCLOSURE DEADLINES PASSED.

AT&T also contests that its testimony does not seek to inject new issues. That is simply not true. AT&T's damages calculations depend on two previously undisclosed and fundamental assumptions: (1) AT&T withheld exactly 65 percent of end office charges pursuant to the OTT Dispute; and (2) all other withholdings were for some other unrelated dispute.[3] AT&T disclosed

---

[3] That is what makes Level 3 witness Melissa Kellow different from Ms. Miller, notwithstanding AT&T's attempt to compare the two. *See* ECF No. 217 at 10. Ms. Kellow does nothing more

neither of these assumptions, or any other basis for which AT&T purportedly withheld payment on the usage-based charges at issue, until March 2021.

This is obvious on review of AT&T's May 15, 2020 Rule 26(e) disclosure and the Level 3 disclosures to which it was responding. In her damages disclosure, Level 3 employee Jennifer Torres calculated Level 3's damages by identifying all usage-based charges Level 3 assessed to AT&T, subtracting amounts associated with the unrelated DEOT dispute, and attributing all other withholdings to the only other usage-based dispute AT&T had raised—the OTT Dispute. *See* ECF No. 205-3. She then applied a 16-percent OTT factor and 50-percent refund as required under the Settlement Agreement to calculate Level 3's damages. *Id.*[4]

AT&T responded to this disclosure on May 15, 2020. In its Response AT&T argues "the substance of [Ms. Miller's] testimony was disclosed in May 2020, albeit without specifically

---

than update figures in Ms. Torres's methodology. Ms. Miller, by contrast, creates an entirely new methodology—one dependent upon previously undisclosed assumptions that (1) AT&T withheld payment exactly 65 percent of end office charges pursuant to the OTT Dispute; and (2) all other withholdings were for some other, previously undisclosed dispute.

AT&T complains that Level 3 disclosed Ms. Kellow as a witness after fact discovery closed. ECF No. 217 at 10 n.6. In reality, fact discovery was still ongoing when Level 3 disclosed Ms. Kellow on January 3, 2020, due in no small part to the parties' mutual recognition of fact issues raised by the entry of the FCC's December 2019 OTT Order. In fact, AT&T's 30(b)(6) witness, Marc Cathey, was deposed over a month after Ms. Kellow's disclosure. *See* Steese Dec. ¶¶ 5–6. In any event, AT&T has never asked to take Ms. Kellow's deposition, even to the present day. *See* Steese Dec. ¶ 7. Finally, AT&T listed Ms. Kellow as a "will-call" fact witness for trial. *See* ECF No. 231 (AT&T witness list).

[4] AT&T complains that Level 3 did not introduce its damages theory until after fact discovery closed, such that "[i]f any party has been prejudiced by the issue of an 'expert' employee witness, it is AT&T." ECF No. 217 at 5. Level 3 provided Ms. Torres's damages disclosure on March 16, 2020, when expert disclosures were due. Steese Dec. ¶ 8. How the timely disclosure of a damages expert while expert discovery was still open could be prejudicial is a mystery—especially since AT&T elected not to depose Ms. Torres while expert discovery was open.

7

naming Ms. Miller of the sponsor of the testimony." ECF No. 217 at 16. This assertion suffers from at least three fundamental flaws. First, the failure to identify Ms. Miller as the witness that would proffer this testimony is no minor detail; Rule 26(a)(2) requires exactly that. Second, when AT&T provided this "disclosure," it specifically stated that "AT&T is not providing rebuttal expert disclosure in response to Ms. Torres," but was instead "providing a supplemental disclosure that set forth the areas of disagreement." ECF No. 205-8. Third, the "areas of disagreement" AT&T identified did not include the two fundamental bases of Ms. Miller's April 2021 opinions. The "areas of disagreement" were instead limited to the following:

- the specific figures used for total charges and payments;
- the inclusion of prejudgment interest or late penalty charges;
- the method for calculating the OTT factor (a dispute later resolved by the Court on summary judgment); and
- the method for calculating a tandem add-back.

*Id*. at 4–5. Nothing in the May 2020 disclosures suggested AT&T took any issue with the structure of Level 3's damages methodology; that AT&T believed it withheld payment on exactly 65 percent of Level 3's end office charges; that AT&T had disputed usage-based charges on any grounds other than the DEOT and OTT Disputes; or that any amounts above and beyond 65 percent of Level 3's end office charges were withheld pursuant to any dispute other than the DEOT and OTT Disputes. The only fact questions it raised concerned the accuracy of the specific figures Level 3 used—not whether using those figures, once corrected, was appropriate.

No evidence AT&T cites, including Ms. Miller's deposition testimony, says any differently. All she or any other AT&T witness claimed is that AT&T *intended* to withhold 65

percent of end office charges; not knowing the specific amount of the charges, they did not and could not testify that AT&T *actually* withheld at the intended rate. AT&T showed its lack of factual support for the latter notion on summary judgment—a point Level 3 described in detail in its Motion and which AT&T did not even mention in its Response. As noted in the Motion, Level 3 asserted in its Statement of Facts in support of its motion for summary judgment that AT&T's withholdings exceeded not only 65 percent of its end office charges, but the total amount of all its end office charges. ECF No. 205 at 7 (citing ECF No. 181-1 ¶ 46). AT&T ostensibly disputed this fact, but could claim nothing more than that it *intended* to withhold at this 65-percent rate; it could cite no evidence suggesting that it *actually* withheld at that rate. *Id.* The only authority it cited to suggest that there were disputes as to Level 3's damages calculations was the May 15, 2020 Rule 26(e) disclosure, which, as noted above, cited no other basis for the withholdings. *Id.* The evidence simply does not say what AT&T wishes it said.

AT&T likewise contends that Level 3 cannot point to any statement or admission by AT&T to the effect that all of AT&T's withholdings relate directly to the OTT dispute. ECF No. 217 at 19. That is simply false. Level 3's damages calculations is *expressly based* on AT&T's stated reasons on why it withheld the charges, and the only reasons it identified for any usage-based withholdings until March 2021 were the DEOT and OTT Disputes. *See* ECF No. 222-2. In addition, AT&T's May 2020 disclosure closed the door behind it: AT&T listed all of the "areas of disagreement" with Ms. Torres's analysis, and never suggested that the failure to address other disputes was among these areas. If there were other areas of disagreement, Rule 26(e) required

AT&T to supplement and correct its disclosures. AT&T did not.[5]

AT&T's claim that the parties agreed to defer damages discovery (ECF No. 217 at 6) further underscores the limited scope of the "areas of disagreement" AT&T identified. As discovery was closing, the only fact issues AT&T had raised with Level 3's damages disclosures were picayune details about whether the specific figures Level 3 used in its damages methodology matched what was in the companies' respective records. AT&T's Response makes that clear. *See* ECF No. 217 at 8 n.5 (quoting [Ex. 10]) (suggesting additional discovery "relating to the disputed data and calculations"). As AT&T had explained in its May 2020 disclosure, it did not believe these issues merited the time and expense of full-fledged expert discovery; the parties could hammer them out on their own time. *And that is exactly what happened*. The parties were able to work out the kinks, and now everyone agrees that the data Level 3 presents are accurate. *See*, *e.g.*, ECF No. 217 at 5 (identifying "Level 3's total charges for end-office switching" and noting that the amount "is undisputed."). AT&T never suggested that its disputes went further than this, or that it had in its pocket a wholesale challenge to Level 3's entire methodology. AT&T pretends that the parties somehow agreed to leave such fundamental, multimillion-dollar issues on the back burner, to be presented by an unidentified witness just before trial was set to commence. The reality is that AT&T is dramatically expanding the scope of its contentions with Level 3's damages disclosures, long after these issues should have been

---

[5] Notably, while AT&T claims to have raised issues with the amounts Ms. Torres attributed to the OTT Dispute, it does not even attempt to show that it had identified other bases for the withholdings. The only thing it has to say to the Court about these other disputes is to promise that these unidentified excuses do exist. ECF No. 217 at 18. It offers nothing to suggest that these other disputes were in fact the basis of the withholdings, or that these were ever identified except leading up to the March 2021 letter.

raised.

AT&T is employing a classic bait-and-switch. First, AT&T said it would provide no expert testimony at all, and limited the "areas of disagreement" it had with Level 3's damages calculations. Then, almost a year later, it provided an expert disclosure identifying brand-new areas of disagreement. The failure to include these areas of disagreement among the limited set it identified in its May 2020 disclosure rendered that disclosure materially incomplete, incorrect, and misleading. AT&T was required under Rule 26(e) to correct the disclosure. It did not do so until April 2021—well past the deadline.

### III. THE UNTIMELY DISCLOSURES ARE INHERENTLY PREJUDICIAL.

AT&T is thus left to argue that its Rule 26 violations did not cause any prejudice. There are at least two fundamental flaws with this argument.

First, as noted in the Motion, the "good cause" standard of Rule 16 "does not focus on the bad faith of the movant or the prejudice to the opposing party," but "focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." ECF No. 205 at 12 (quoting *Ingle v. Dryer*, Civ. No. 07-cv-00428-LTB-CBS, 2008 WL 1744337, at *1 (D. Colo. Apr. 11, 2008)). AT&T does not try to argue that there was good cause for its violations of the scheduling order; in fact, the Response does not even cite Rule 16. AT&T knew the "nature and scope" of Level 3's witnesses and damages theory, and therefore "was capable of making an informed decision regarding a rebuttal expert," but instead made a "tactical decision" not to address damages in a timely manner; such "an ill-advised decision 'hardly constitutes good cause' under Rule 16(b)." *Id.* at 18 (quoting *Anderson v. Seven Falls Co.*, No. 12-CV-01490-RM-CBS, 2013 WL 3771300, at *9 (D. Colo. July 18, 2013)). The Court may therefore

preclude Ms. Miller's opinions even without addressing the subject of prejudice.

Second, the untimely disclosure is inherently and unavoidably prejudicial—particularly to the extent Level 3 is unable to bring a collection action more than two years after the charges were assessed. AT&T suggests it is "Level 3's fault" that it did not raise a collection action "for any amounts owed under the tariff that were not encompassed within its breach of agreement claim in this case." ECF No. 217 at 16 n.10. AT&T is begging the question: *all* of the amounts at issue here are encompassed within Level 3's breach of agreement claim. In other words, Level 3 did bring a collection action—this action—to collect these charges. Level 3 did not bring additional claims because, until March 2021, there had never been any indication that any of the damages it seeks here were subject to any dispute other than the OTT Dispute. The only way Level 3 could have known that AT&T believed the withholdings were subject to other disputes and therefore beyond the scope of its claims here would have been for AT&T to identify those issues as it is required to do under Level 3's Tariff. *See* ECF No. 205 at 8 n.5. AT&T does not even try to argue that it complied with these requirements. Level 3 is not to blame for AT&T's violations.

AT&T also claims that Ms. Miller's opinions merely respond to Level 3's supplements to its own damages analysis. *See* ECF No. 217 at 9–10. That claim fails even modest scrutiny. Level 3's supplements use the exact same methodology Ms. Torres used in her initial disclosure; the only thing that changed is the additional charges and withholdings for subsequent months. ECF No. 205 at 4–5 (citing ECF Nos. 205-7 and 205-11). But while Level 3's supplements apply that same methodology through to the current date, AT&T's new disclosures raise new challenges and presents a new methodology, including to calculate damages set forth in Level

12

3's earlier disclosures. AT&T's argument cannot be taken seriously.

AT&T next argues that allowing Ms. Miller's testimony would be less disruptive than to strike it "[b]ecause this is a bench trial." ECF No. 217 at 17. Whatever this *non sequitur* is supposed to mean, it ignores the fact that AT&T's late disclosure has caused true harm.

This is the same defect with AT&T's next suggestion, that there is no prejudice because it offered Ms. Miller for deposition with less than two months before trial. ECF No. 217 at 10. It is far too late in the game for that to cure the prejudice. Preparing for and taking Ms. Miller's deposition, and preparing a *Daubert* motion to strike her testimony on the basis of the insufficient facts and data supporting her analysis, would exhaust the time remaining before trial dealing with matters that should have been dealt with long before. As noted in the Motion, case after case recognizes that such a proposition, far from curing the resulting prejudice, would inflict prejudice in and of itself. *See* ECF No. 205 at 16–17 (citing cases). Nor would these additional depositions do anything to cure the harm resulting from claims being barred by the applicable statutes of limitation—issues that could have been avoided with timely disclosures.

Finally, AT&T claims it is critical that it be allowed to rebut Level 3's arguments and "offer[] its own view of the proper calculation of damages." ECF No. 217 at 17. That door swings both ways. If these issues were so important and so fundamental to AT&T's defense, AT&T should have timely disclosed them *before* the close of discovery so Level 3 could have properly explored them and taken any action necessary to address them, whether through additional discovery or by raising new claims. We are now more than a year past the disclosure deadlines, with trial just weeks away. AT&T did not think it important to raise these opinions during the appointed time. AT&T, not Level 3, should bear the consequences of that decision.

IV. **CONCLUSION**

For the foregoing reasons, Level 3's Motion should be granted. Ms. Miller's untimely Rule 26(a)(2) disclosure should be stricken and AT&T should be precluded from presenting her as an expert witness or its new damages theories at trial.

Respectfully submitted this 25th day of May, 2021.

By: /s/ *Charles W. Steese*
Charles W. Steese, #26924
Douglas N. Marsh, #45964
Armstrong Teasdale LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
csteese@armstrongteasdale.com
dmarsh@armstrongteasdale.com

*Attorneys for Defendant/Counterclaimants Level 3 Communications, LLC, Broadwing Communications, LLC, Global Crossing Telecommunications, Inc., and WilTel Communications, LLC*

## CERTIFICATE OF SERVICE

I, Charles W. Steese, hereby certify that on May 25, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Rebecca B. DeCook
Andrew T. Flynn
Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1027
becky.decook@moyewhite.com
andrew.flynn@moyewhite.com

Michael D. Warden
Michael J. Hunseder
Justin A. Benson
Joshua W. Moore
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
mwarden@sidley.com
mhunseder@sidley.com
jbenson@sidley.com
joshua.moore@sidley.com

*Attorneys for Plaintiff AT&T Corp.*

/s/ *Charles W. Steese*
Charles W. Steese