**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 18-cv-00112-RM-MEH

AT&T CORP.,

      Plaintiff / Counter Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC,

      Defendant / Counter Claimant,

and

BROADWING COMMUNICATIONS, LLC,
GLOBAL CROSSING TELECOMMUNICATIONS, INC., and
WILTEL COMMUNICATIONS, LLC,

      Counter Claimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.,

      Counter Defendant.

---

**[PROPOSED] AMENDED FINAL PRETRIAL ORDER**

---

## 1. DATE AND APPEARANCES

The Final Pretrial Conference was held on September 8, 2020 at 10:00 a.m. in Courtroom

A501 on the fifth floor of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver,

Colorado. Appearing remotely on behalf of Plaintiff/Counter-Defendant AT&T Corp. ("AT&T")

and Counter-Defendant Teleport Communications Group, Inc. ("TCG") were Michael D.

1

Warden, Michael J. Hunseder, and Justin A. Benson of Sidley Austin, LLP, and Rebecca DeCook of Moye White LLP. Appearing on behalf of Defendant/Counterclaimant Level 3 Communications, LLC and Counterclaimants Broadwing Communications, LLC, Global Crossing Telecommunications, Inc., and WilTel Communications, LLC (collectively, "Level 3") were Charles W. Steese and Douglas N. Marsh.

## 2. JURISDICTION

This Court has original subject matter jurisdiction over AT&T's claims against Level 3 and Level 3's claims against AT&T under 28 U.S.C. § 1332 because these claims are between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.[1] This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over Level 3's claims arising under 47 U.S.C. § 207 alleging violations by AT&T and TCG of the Act, 47 U.S.C. § 151 *et seq.* The Court also has original subject matter jurisdiction over claims seeking recovery under the interstate access tariffs of AT&T, TCG, and Level 3. *Thurston Motor Lines v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 534 (1983) (per curiam). The Court has original jurisdiction over all other claims pursuant to 28 U.S.C. § 1367 because they are so related to the claims over which the Court has original jurisdiction that they form part of the same case or controversy.

The Court dismissed without prejudice Count II and a portion of Count III of AT&T's complaint on ripeness grounds. *See* ECF No. 76 at 15–19, 25. On June 29, 2020, AT&T filed a

---

[1] The joinder of TCG, which like Level 3 is a Delaware Corporation, does not defeat diversity or eliminate the Court's diversity jurisdiction over AT&T's state-law claims. *See* 28 U.S.C. § 1367(a) (supplemental jurisdiction "shall include claims that involve the joinder or intervention of additional parties"); *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998) (district court retained subject matter jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1332 notwithstanding defendant's joinder of nondiverse additional parties as counterclaim defendants).

motion pursuant to Rule 15, 16, and 54(b) of the Federal Rules of Civil Procedure to reinstate Counts II and portions of Count III. *See* AT&T Motion to Reinstate, ECF No. 147. The Court denied that motion. *See* ECF No. 204.  The Court entered summary judgment as to AT&T's Count I and Level 3's Count II. Any factual issues relating to Level 3's Counts III through VI are addressed by a stipulation included below, though some legal issues remain. As such, the only remaining issue of fact for trial is the amount of Level 3's damages under Count I of its counterclaims.

### 3. CLAIMS AND DEFENSES

**AT&T/TCG:**

After the Court's Order on cross-motions for summary judgment (ECF No. 204) and the Parties' stipulation, the remaining issue for trial is how much Level 3 can collect from AT&T on Level 3's breach of contract counterclaim for amounts that Level 3 contends AT&T improperly withheld from billed end-office switching access charges under the Parties' 2015 Release and Settlement Agreement ("2015 Agreement").  *See* ECF No. 124 ¶¶ 60-71 (Count I). Now that the Court has determined on summary judgment that "there is no genuine issue as to whether [Level 3's] OTT percentage exceeded 21 percent," ECF No. 204, at 8, 11 and Level 3 has indicated it will stand by that 21% for purposes of trial, the remaining issue to be tried is narrowed to the calculation of the amount of end-office switching charges that AT&T has over-withheld based on its historic level of 65% withholding.

Level 3 now seeks to recover not only end-office switching charges, but charges for other switched access services, such as tandem switching, which are not at issue in this case. Level 3 has no claims for other elements, and that unpled claim was not subject to discovery.

This is nothing more than an attempt by Level 3 to recast its breach of agreement counterclaim for end-office charges under the agreement as a tariff collection action for all access services, in order to recover substantial moneys related to other switched access services distinct from end-office switching (and for which the parties have different billing disputes that were never part of the pleadings nor explored in discovery). Based on its own counterclaim, ECF No. 124 ¶¶ 60-71, Level 3 can only recover damages for its breach of the 2015 Agreement, which is limited to amounts withheld by AT&T for end-office switching.

Calculating Level 3's damages is not difficult. As Level 3 itself has alleged, AT&T withheld payment on the billed end-office switching calls at the 65% level for OTT VoIP specified in the 2015 Agreement, paying 35%. Level 3's own data contained in its analysis demonstrates that it billed AT&T approximately $7.5 million for end-office switching during the period in dispute. Based on the 21% factor found by the Court, the amount that Level 3 improperly billed is $1.1 million and the amount properly billed is $6.4 million. Of the total amount billed, AT&T paid $2.6 million (35%). Level 3's total damages are, therefore, $3.8 million, which is the $6.4 million properly billed minus the $2.6 million paid. Those are the damages to which Level 3 is entitled on its remaining breach of contract claim.[2]

| | |
|---|---|
| Level 3 Total End-Office Charges Billed | $7,514,047 |
| Less Amount Level 3 overcharged for OTT VoIP (21% of Total Billed) | $1,088,728 |
| **Level 3 Amount Properly Billed** | **$6,425,318** |

---

[2] Level 3 is also seeking a tandem add-back and late payment penalties. The late payment penalties are the subject of AT&T's Motion in Limine to Exclude Evidence of Level 3's Claimed Late Payment Charges, or, in the alternative, AT&T Motion to Strike. *See* ECF No. 207. In short, the 2015 Settlement Agreement does not entitle Level 3 to late payment charges pursuant to its Tariff.

| Level 3 Amount Properly Billed | $6,425,318 |
|---|---|
| Amount AT&T Paid of Total End-Office Charges Billed (35% of Total Billed) | $2,629,916 |
| **Amount AT&T Owes Under The SJ Order** | **$3,795,402** |

Despite these simple calculations, Level 3 is seeking more than $8 million in damages, including late payment charges. This is because Level 3 begins from the wrong starting point, as it does not begin with the $7.5 million it indisputably billed AT&T in end-office switching. Rather, Level 3 starts with $51.6 million that it billed under its tariff (not the Agreement) for *all* switched access services to AT&T, and then subtracts $34.2 million that AT&T has paid for *all* switched access services. This $51.6 million figure includes not merely the $7 million in end-office charges Level 3 billed, but tens of millions of dollars of charges for other switched access rate elements. Level 3's $51.6 million starting point reflects rate elements like tandem switching, tandem transport, and database query charges—none of which have been put at issue by Level 3's Counterclaim or are covered by the 2015 Agreement. After excluding late payment charges, Level 3's asserted damages are approximately $7 million—but that figure includes charges for other services, and it simply makes no sense—$7 million *exceeds* the $6.4 million amount of end-office switching charges Level 3 could have properly billed under the Court's order on summary judgment.

At bottom, Level 3 certainly cannot recover more in damages than what it could properly bill, yet that is what Level 3 is attempting to do, by including in its damages charges unrelated to the end-office switching charges. Level 3 has no counterclaim (under the Agreement or its tariff) for amounts it billed AT&T for any other access services other than

5

end-office switching.  Because Level 3 did not bring such a claim for other access services, it can only recover sums arising from its breach of agreement counterclaim regarding its end-office switching charges.  As such, Level 3's damages are simple and straightforward:  it is not over $7 million, but rather about $3.8 million.

Level 3 has recently claimed that AT&T has withheld more than the monies attributable to 65% of the end-office switching charges Level 3 billed.  Level 3 is incorrect—AT&T has consistently paid 35% and withheld 65% of the end-office switching charges that Level 3 has billed, based on AT&T's view that 65% of those calls were OTT VoIP.[3]  AT&T has withheld monies for other access services not covered by Level 3's counterclaims, on the basis of other disputes, but those disputes are not the subject of this litigation, and Level 3 is now improperly attempting to recover all amounts it billed to AT&T for switched access services, not just the amounts arising from its breach of agreement counterclaim.  And Level 3's claim that it has been surprised and prejudiced by AT&T's assertion of these non-OTT disputes rings hollow— the evidence will establish that Level 3's access charge billings regularly gave rise to multiple disputes by AT&T throughout the history of the parties relationship.  While Level 3 complains that "AT&T was withholding payment on tandem charges because AT&T's system thought they were end office charges," ECF No. 222 at 4, Level 3's argument is irrelevant because the *only* issue remaining before the Court is how much AT&T owes in end-office switching under

---

[3] The withheld payments at issue here *are* limited to end-office switching, contrary to Level 3's claims (*see infra*). In fact, Level 3's recent filings confirm that its damages claims are inflated because it seeks to recover tandem switching charges that are not at issue.  *E.g.*, ECF No. 223, at 10 (Level 3's damages include "65 percent of payment [withheld] on Level 3's *tandem charges*) (emphasis added).  Because the parties' dispute on OTT VoIP calls was whether *end-office* charges could be billed on such calls, Level 3's claim that AT&T also withheld *tandem* switching charges due to this dispute is illogical and unsupported by any relevant evidence.

the Agreement.[4]  Level 3 simply has no claim for recovery of any tandem charges it billed, *see, e.g.*, Level 3 Counterclaim, ECF No. 124 ¶¶ 64, 68-70, regardless of whether AT&T has withheld for those charges or not.  Further, Level 3 – not AT&T – is injecting these new issues in the case.   In its counterclaim and throughout fact discovery (including interrogatory responses provided just as fact discovery was closing), Level 3 unambiguously stated that its damages were limited to end-office switching charges withheld, but then it impermissibly shifted its damages theory to recovery for damages for any tariffed access services, even though those services are not mentioned even once in its pleadings.

To the extent that Level 3 claims that it is entitled to attorney's fees, Level 3 has over-withheld $517,147.23 and owes that amount to TCG, as set forth in stipulation 15 below. Section 206 of the Communications Act authorizes the Court to award "a reasonable counsel or attorney's fee, to be fixed by the court *in every case of recovery*, which attorney's fee shall be taxed and collected as part of the costs in the case." 47 U.S.C. § 407 (emphasis added).  Level 3 has not "recovered" anything within the meaning of that statute and applicable caselaw; and, therefore, it is not entitled to attorney's fees.  In any event, it should raise those issue through a post-trial petition for costs and/or attorneys' fees.

**<u>Level 3:</u>**

The Parties' May 2015 Settlement Agreement ("Settlement Agreement") required AT&T to pay Level 3 switched access charges at full tariffed rates on OTT-VoIP traffic unless and until

---

[4] The entire dispute regarding OTT VoIP calls was whether *end-office* switching charges could be billed on those calls.  *E.g.*, *AT&T Corp. v. FCC*, 841 F.3d 1047, 1048 (D.C. Cir. 2016).  The notion that AT&T withheld payment, based on its position regarding OTT VoIP calls, for separate and distinct *tandem* charges makes no sense.  *See id.* at 1048, 1050.

a final non-appealable decision determined that end office switched access charges do not apply to such traffic. If and when such an order were issued, to the extent the order determined such charges should not have been charged, Level 3 would refund AT&T 50 percent of all such charges assessed since June 2015, and would bill on OTT-VoIP traffic in compliance with the order thereafter. The parties entered into a later agreement that has the effect of changing the June 2015 date to January 1, 2019.

The Court's Order on the Parties' Motions for Summary Judgment resolved the primary legal and factual issues underlying claims arising from the settlement agreement. Specifically, the Court ruled that, "pursuant to the settlement agreement, Plaintiff is entitled to a fifty percent refund for end office switching charges assessed during the relevant period (January 1, 2019 to February 19, 2020), during which time the OTT percentage did not exceed 21 percent." ECF No. 204 at 12. This ruling establishes that Level 3 did not breach the Agreement by assessing end office charges on all its traffic through February 2020, and that AT&T breached the Agreement by withholding payment on these charges. While the Court left open the possibility of Level 3 proving that its OTT percentage is less than 21 percent, Level 3 has elected to utilize a 21% OTT percentage. As a result, the remaining task at trial will be to determine Level 3's damages—i.e., the amounts AT&T withheld pursuant to the OTT dispute above and beyond the refund to which AT&T was entitled.

In disputing Level 3's end office charges pursuant to the OTT Dispute, AT&T dramatically overestimated the amount of Level 3's traffic that is OTT-VoIP. Though purporting to withhold payment on 65 percent of Level 3's end office charges, AT&T's withholding for the OTT dispute exceeded Level 3's end office charges on **all** of its traffic during the relevant

damages period from January 2019 to the present.

AT&T has recently attempted to argue that its withholdings beyond 65 percent of Level 3's end office charges are actually attributable to other disputes, though it never disclosed any such disputes to Level 3 until March 2021. Level 3 is moving to preclude AT&T from making these arguments due to their late disclosure in violation of various provisions of Rules 16 and 26. But the argument also fails on the merits: it is a transparent attempt to justify its excessive withholdings, which AT&T long knew went above and beyond 65 percent of Level 3's end office charges.

The evidence shows that the reason AT&T withheld so much more for the OTT Dispute than what it now claims it withheld is not some unrelated dispute it had never before identified, but because it utilized a "mechanized system" to dispute and withhold payment. AT&T employees acknowledge that this mechanized system does not have the ability to recognize the difference between Level 3's end office and tandem charges, and that therefore it withheld both end office charges and tandem charges under the guise of withholding end office charges.

Emails AT&T sent to Level 3 confirm these facts. These emails state, among other things:

➢ "It is not possible to exactly match the withholding for the Level 3 entity billing to a specific dispute," which she attributed "to the fact that Level 3 is billing both tandem and end office on the same BAN [billing account number]."

➢ "AT&T's mechanized payment system does not have the ability to recognize the difference between L3's billing that is associated with operating as a tandem vs. the billing associated with L3 operating as an EO [end office] when both are included on

the same BAN."

➢ On an earlier dispute involving end office charges, AT&T stated "there is withholding above the current dispute value … due to: 1) Level 3's billing containing both EO and tandem billing on same BAN, which complicated the mechanized rate based withholding, and 2) AT&T and Level 3 … agreeing that the EO/CPN withholding would not be corrected in our payment systems until such time as the issue was fully corrected."

➢ AT&T admits that the limitations in its mechanized process still exist today.

A review of the tandem charges Level 3 billed to AT&T confirms this: the amount Level 3 assessed for tandem rate elements during the relevant period account for 97 percent of the difference between the parties' calculations on what AT&T withheld. As further confirmation, AT&T made this same withholding error on other unrelated dispute involving Level 3's end office charges, and comparing the ratios of its excessive withholding for the earlier dispute to this dispute shows that they match almost exactly. AT&T's current claim it that it withheld exactly 65% of end office charges is demonstrably false.

That is why AT&T's assertion that Level 3's recovery "is limited to amounts withheld by AT&T for end-office switching" (*see supra*) is specious. ***The entire amount*** AT&T withheld, it withheld to account for Level 3's end office charges.

Though AT&T claims confusion by Level 3's description of the "OTT Dispute" (*supra*), that verbiage comes straight from the Settlement Agreement AT&T breached. That Agreement required AT&T to pay full Tariff charges. All of the charges AT&T withheld from Level 3, it withheld claiming they were end office charges. The Agreement defines the "OTT Dispute" by

reference to the charges AT&T had withheld. The Settlement Agreement was intended to put the "OTT Dispute" to bed, requiring AT&T to stop these withholdings and pay the charges Level 3 assessed. By refusing to do this, AT&T breached the Agreement. All the charges AT&T withheld for the OTT Dispute are within the scope of the Agreement, and the scope of Level 3's breach of contract claim.

AT&T also contends that it is not required to pay late payment charges on the amounts it withheld from payment. This argument misreads the Settlement Agreement, which requires AT&T to pay Level 3 full Tariff rates. Tariff rates include late payment charges. These are the same financial obligations that apply to all customers of services under the Tariff. The Agreement could not exempt AT&T from those requirements without violating the filed-rate doctrine. In addition, New York law requires the Court to assess prejudgment interest at the rates set forth either in statute or in the parties' contract. Here, both the contract and applicable statutes (47 U.S.C. § 203(c)) point to the rates in the Tariff. AT&T therefore must pay the late payment charges, either as direct damages or as prejudgment interest, at the rate required by the Tariff (or, at a minimum, the default rate of 9 percent required under New York law).

In sum, AT&T has withheld payment on lawful charges and owes millions of dollars to Level 3. In addition, while AT&T contested Level 3's end office charges on OTT-VoIP traffic, AT&T's affiliate, TCG, assessed end office charges to Level 3 on OTT traffic for AT&T products. Level 3's claim compelled TCG to issue a small credit for OTT-VoIP traffic. But AT&T and TCG refused to perform a comprehensive OTT analysis like Level 3 performed, and as a result AT&T/TCG underestimates the percentage of its traffic that is OTT-VoIP. Level 3 was required to expend attorneys' fees and costs to obtain this relief and is entitled to

compensation for those fees and costs.[5]

The Court has already rejected AT&T's contention that Level 3 breached the Settlement Agreement, which forms the basis of both of AT&T's remaining claims. Final judgment should therefore be entered against AT&T and in Level 3's favor on AT&T's claims.

Level 3 asserts claims for AT&T's breach of the Settlement Agreement (Count I); for declaratory relief affirming Level 3's interpretation of the Settlement Agreement and rejecting AT&T's (Count II); for AT&T and TCG's violations of Section 203 of the Communications Act, arising from their own assessment of end office charges on OTT-VoIP traffic when AT&T's tariffs do not allow for such charges (Count III); for AT&T and TCG's violation of Section 201(b) of the Communications Act due to their violations of FCC rules prohibiting end office charges on OTT traffic (Count IV); for AT&T and TCG's breach of contract arising from their assessment of end office charges in violation of their tariffs (Count V); and for declaratory relief affirming that AT&T and TCG cannot assess end office charges under their tariff or under FCC rules.

The Court has already issued an order affirming Level 3's interpretation of the Settlement Agreement and rejecting AT&T's. After the Court hears evidence at trial, Level 3 respectfully requests that the Court award Level 3 damages in the amount that AT&T should have paid for Level 3's end office charges with an adjustment for tandem switching charges Level 3 may assess in lieu of the end office charges, plus late payment charges (through May 2021, this amounts to $9,517,690). In addition, Level 3 respectfully requests that AT&T pay Level 3's May

---

[5] The parties are currently negotiating, but have not yet agreed on, a stipulation that would resolve the remaining factual issues underlying Level 3's claims relating to TCG's charges.

2021 invoices in accordance with the Court's findings. In addition, Level 3 respectfully requests that the Court award Level 3 its reasonable attorneys' fees and costs, and interest, and all other relief the Court may deem just and necessary.  Level 3 intends to offer evidence at trial on its entitlement to attorneys' fees through deposition testimony.

## 4. STIPULATIONS

Pursuant to the Court's instructions, the Parties have worked together in good faith to identify facts to which they can stipulate. In light of the Parties' pending motions and ongoing efforts by both sides to narrow the issues in dispute, the Parties believe they may be able to identify additional facts to which they may be able to stipulate as the date for trial approaches. The parties therefore reserve all rights, and jointly request that they be given leave, to amend this Pretrial Order as necessary to revise these stipulations or to include additional stipulations that they may determine to be warranted.

The stipulations set forth below are for the sole purpose of narrowing the issues this case, thereby simplifying these proceedings for the benefit of the Parties and the Court. These stipulations shall not operate as a waiver, admission, or concession of any principle of law or of position taken or contention made in any other matter or dispute or in any context outside of this case *as specifically set forth herein.*

1.      Level 3 and TCG are, among other things, Competitive Local Exchange Carriers, or CLECs.

2.      Section 1.1 of Level 3's interstate access tariff, the CenturyLink Competing Operating Carriers Tariff F.C.C. No. 4 (which applies to Level 3), defines "End Office Access Service" as follows:

End Office Access Service: For the purpose of this tariff, End Office Access Service shall mean: (1) The switching of access traffic at the carrier's end office switch and the delivery of such traffic to or from the called party's premises; (2) The routing of interexchange telecommunications traffic to or from the called party's premises, either directly or via contractual or other arrangements with an affiliated or unaffiliated entity, regardless of the specific functions provided or facilities used; or (3) Any functional equivalent of the incumbent local exchange carrier access service provided by Company including local switching, the carrier common line rate elements, and intrastate access services. End Office Access Service rate elements for Company includes any functionally equivalent access service. (4) The origination and termination of interexchange telecommunications traffic to any end user, either directly or via contractual or other arrangements with an affiliated or unaffiliated provider of interconnected VoIP service, as defined in 47 U.S.C. § 153(25), or a non-interconnected VoIP service, as defined in 47 U.S.C. § 153(36), that does not itself seek to collect reciprocal compensation charges prescribed by this subpart for that traffic, regardless of the specific functions provided or facilities used.

3.      Section 1 of Level 3's interstate access tariff, the CenturyLink Competing Operating Carriers' Tariff F.C.C. No. 4 (which applies to Level 3), defines "Tandem Switching" as follows:

Tandem Switching: The term "Tandem Switching" refers to any service or arrangement provided by the Company that, in the context of the Company's network configuration, is functionally equivalent to facilities and/or services normally referred to as "tandem switching" when purchased in connection with switched access services provided by an incumbent local exchange carrier. By way of illustration and not limitation, the term typically refers to Switching performed by a Local Exchange Carrier (including, without limitation, the Company) that routes traffic between an End Office and a Customer, or between two End Offices.

4.      In a February 11, 2015 Declaratory Ruling, the FCC determined that local exchange carriers could assess end office switched access charges on OTT-VoIP traffic. *See Connect America Fund*, WC Docket No. 10-90, et al., Declaratory Ruling, FCC 15-14 (rel. Feb. 11, 2015) (the "2015 Declaratory Ruling").

5.      In May 2015, Level 3 and AT&T entered into a Release and Settlement Agreement.

6.      AT&T filed a petition for review of the 2015 Declaratory Ruling in the United States Court of Appeals for the D.C. Circuit.

7.      On November 18, 2016, the D.C. Circuit Court of Appeals issued an opinion that vacated the 2015 Declaratory Ruling, and remanded to the FCC.

8.      On May 11, 2018, CenturyLink (an affiliate of Level 3) filed a petition for declaratory ruling with the FCC asking the FCC to find that end office switched access charges applied to OTT traffic.

9.      On December 17, 2019, the FCC issued an "Order on Remand and Declaratory Ruling," 2019 WL 7018968 (2019) (the "2019 Declaratory Ruling"). The FCC's 2019 Declaratory Ruling held that end office switched access charges do not apply to OTT-VoIP calls. The FCC's ruling applied retroactively.

10.     No party appealed the FCC's 2019 Declaratory Ruling, which became final by operation of law on February 19, 2020.

11.     As part of a broader settlement agreement, AT&T and Level 3 reached a partial settlement in 2019 (the "2019 Agreement"), which resolved all billing and payment issues regarding OTT VoIP billing disputes through December 31, 2018 as to Level 3's bills to AT&T. Thus, for purposes of Level 3's traffic to AT&T, only traffic from January 1, 2019 and after is at issue.

12.     As a result of the default transition pricing rules adopted in the FCC's *Connect America Fund* Order, 26 FCC Rcd. 17663, at *205 (2011), under which the default rate for terminating end office access service went to zero in or around July 2017 for CLECs that benchmark to price-cap LECs, Level 3's OTT percentage only impacts charges associated with

15

its originating traffic.

13.     Counts III, IV, V, and VI of Level 3's counterclaims allege that TCG assessed end office switching charges to Level 3 and that a portion of these charges were for OTT VoIP calls. *See* ECF No. 124. In July, 2019, Level 3 and its affiliates notified TCG that they would be withholding partial payments (about 10%) on the end-office switching charges billed by TCG, on the grounds that the withheld payments related to OTT VoIP calls.

14.     TCG acknowledges that it billed end-office switching access charges on various calling services provided by AT&T, and, until the Level 3 Counterclaims and disputes filed by Level 3 and its affiliates, TCG was not aware that any of the AT&T calling services involved OTT VoIP calls.   After conducting an investigation, TCG and AT&T identified two AT&T services that offered customers the capability of making calls either using facilities-based VoIP or OTT VoIP.   AT&T and TCG could not determine what percentage of calls consisted of OTT VoIP, but decided to assume that all of the calls for these two services were OTT VoIP, and TCG then began issuing credits for the calls associated with these two services.

15.     As set forth in its damages disclosures, Level 3 withheld $517,147.23 in payments charged by TCG in excess of the credit TCG extended.   For purposes of calculation of damages *and in order to narrow the issues to be tried*, Level 3 will not contest the reduction of $517,147.23 in any final amount of damages awarded from AT&T to Level 3 under Count I of its breach of agreement counterclaim.

16.     For purposes of calculation of damages *and in order to narrow the issues to be tried*, AT&T will not contest the inclusion of $341, 207.53 through May 2021, represented on Level 3's disclosures as "Tandem Add-Back - Debit," in any final amount of damages awarded

to Level 3.

## 5. PENDING MOTIONS

- Level 3's Motion *in Limine* to preclude AT&T from presenting previously undisclosed witnesses and opinions (ECF No. 205)

- AT&T's Motion *in Limine* to Exclude Evidence of Level 3's Claimed Late Payment Charges or, in the Alternative, AT&T Motion to Strike (ECF No. 207)

- AT&T's Motion *in Limine* to Exclude Evidence of Level 3's Improper Damages Claims (ECF No. 209)

- Level 3's Motion *in Limine* to Exclude Evidence and Testimony on Issues Resolved on Summary Judgment (ECF No. 226).

## 6.  WITNESSES

Pursuant to the Court's instructions, the Parties have made good-faith efforts to identify the witnesses they anticipate will and/or may provide testimony at trial, whether in person or by way of deposition. In light of the Parties' pending motions and ongoing efforts by both sides to narrow the issues in dispute, the Parties believe they may be able to limit the number of witnesses necessary to try the Parties' claims, and that in some instances it may be necessary to offer additional witnesses not listed below. The Parties further note that, pursuant to the presiding District Court Judge's Practice Standards, Exhibit and Witness Lists are to be submitted seven days before the Final Trial Preparation Conference, which is to be scheduled following the Final Pretrial Conference. *See* Practice Standards (Civil), Judge Raymond P. Moore, V.B.5.a. The Parties therefore reserve all rights, and jointly request that they be given leave, to amend this Pretrial Order or to include additional witnesses to or exclude witnesses

listed below from their final Witness List. The Parties jointly agree that they will not object to such amendments on the basis that any witness added to the final Witness List was not included in the Final Pretrial Order; provided, however, that the Parties reserve all other objections, including as to any witnesses that were not previously or properly disclosed pursuant to Federal Rule of Civil Procedure 26(a)(1) or (2).

a. **Fact witnesses to be called by each party:**

**AT&T/TCG**

(1)     *Witnesses who will be present at trial:*

- Kim Meola
- Alison Miller
- Jennifer Torres
- Melissa Kellow

**Level 3**

(1)     *Witnesses who will be present at trial:*

- Jennifer Torres
- Melissa Kellow

(2)     *Witnesses who may be present at trial if the need arises:*

- Shaun Andrews
- Edwin Stocker
- Ardell Burgess (via deposition)
- Andrew McClure (both fact and expert testimony)

(3)     *witnesses where testimony is expected to be presented by means of a deposition*

*and, if not taken steno graphically, a transcript of the pertinent portions of the deposition testimony:*

- Janice Gallagher

- Marc Cathey

**b.** **Expert witnesses to be called by each party:**

**AT&T:**

*(1)* *Witnesses who will be present at trial:*

- Alison Miller.  AT&T's consistent position has been that Ms. Miller's testimony regarding AT&T's damage analysis is fact testimony.   Nevertheless, AT&T made a protective disclosure of Ms. Miller under Rule 26(a)(2) "in order to moot Level 3's objections and remedy any supposed prejudice that Level 3 might claim."  *See* ECF No. 216-10.

**Level 3:**

*(1)* *Witnesses who will be present at trial:*

- Jennifer Torres. Ms. Torres was previously disclosed and will testify in person. Consistent with her previous expert disclosures and depositions, Ms. Torres will testify regarding the damages Level 3 has suffered as a result of AT&T's unlawful withholding and unlawful OTT charges.

*(2)* *Witnesses who may be present at trial:*

- Andrew McClure. Mr. McClure was previously disclosed and may, if necessary, testify in person. Consistent with his previous expert disclosures and depositions, Mr. McClure may offer testimony regarding the analysis he performed of Level

3's traffic to determine the percentage of Level 3's traffic that is OTT-VoIP.

## 7. EXHIBITS

Pursuant to the Court's instructions, the Parties have made good-faith efforts to identify the exhibits they anticipate using at trial. In light of the Parties' pending motions and ongoing efforts by both sides to narrow the issues in dispute, the Parties believe they may be able to limit the number of exhibits necessary to try the Parties' claims, and that in some instances it may be necessary to offer additional exhibits not listed below. The Parties further note that, pursuant to the presiding District Court Judge's Practice Standards, Exhibit and Witness Lists are to be submitted seven days before the Final Trial Preparation Conference, which is to be scheduled following the Final Pretrial Conference. *See* Practice Standards (Civil), Judge Raymond P. Moore, V.B.5.a. The Parties therefore reserve all rights, and jointly request that they be given leave, to amend this Pretrial Order to include additional exhibits or to exclude exhibits listed below from their final Exhibit List. The Parties jointly agree that they will not object to such amendments on the basis that any exhibit added to the final exhibit List was not included in the Final Pretrial Order; provided, however, that the Parties reserve all other objections, including as to any exhibits that were not previously or properly disclosed pursuant to Federal Rule of Civil Procedure 26(a)(1) or (2).

The Parties further agree that they will cooperate in identifying sensitive or confidential information in their exhibits and, to the extent this has not been done already, provide redacted copies of the exhibits on or before the deadline for exchanging exhibits prior to the Final Trial Preparation Conference.

a. **Exhibits to be offered by each party (with exhibits to be stipulated into evidence identified)**

The parties' respective exhibit lists setting forth exhibits to be offered by each party and identifying exhibits to be stipulated into evidence are attached hereto.

Copies of listed exhibits must be provided to opposing counsel and any *pro se* party no later than 30 days before trial. The objections contemplated by Fed. R. Civ. P. 26(a)(3) shall be filed with the clerk and served by hand delivery or facsimile no later than 14 days after the exhibits are provided.

## 8. DISCOVERY

**AT&T:**

In March 2020, the Parties agreed to defer depositions on damages in an attempt to reach an agreement on the basis numbers in dispute. These discussions—and the deferral of damages depositions—continued throughout 2020. On March 9, 2021, Level 3 provided an updated damages disclosure, and in response, AT&T made its own supplemental disclosures on April 23, 2021. AT&T offered to make Alison Miller available for deposition and sought to take the deposition of Level 3's damages expert, Jennifer Torres. Level 3 rejected AT&T's offer to take Ms. Miller's deposition and also refused to make Ms. Torres available for deposition, despite the fact that Level 3 continued to issue damages' disclosures about which Ms. Torres will testify and as well as an affidavit from Ms. Torres containing completely new testimony.

**Level 3:**

AT&T's suggestion that the parties agreed to defer damages discovery is misleading. The parties contemplated that depositions of damages experts may be necessary if the parties could

not agree on the numbers. By October 2020, the parties had agreed on numbers, which is validated by the fact that AT&T is now using Level 3's numbers.

Furthermore, AT&T first provided damages calculations in April 2021. To call AT&T's April 2021 disclosures "supplemental" is dishonest. "Supplemental" disclosures build on prior disclosures to address matters that could not have been addressed earlier; they are not vehicles to raise new matters the disclosing party could have but failed to address in the first instance. Here, not only was there never an initial disclosure to supplement, but in addition, AT&T's new disclosure proposes a new methodology in reaction to the methodology Level 3 has used since it provided its expert disclosures in March 2020. The only changes Level 3 has made since those first expert disclosures was to update them with charges and withholdings from subsequent months. AT&T's disclosure cannot be characterized as a reaction to these last updates; indeed, AT&T's disclosure sets forth for the first time calculations of damages rising from charges Level 3 addressed in its first disclosure. In addition, the affidavit to which AT&T refers (filed at ECF No. 223-1) was submitted as part of Level 3's opposition to AT&T's motion in limine, and simply addresses issues AT&T raised for the first time in its motion.

Discovery has been completed for almost a year now. AT&T's argument is without basis.

## 9. SPECIAL ISSUES

None.

## 10.  SETTLEMENT

Undersigned counsel for the Parties certify as follows:

a.  Since the outset of this case, there have been numerous settlement discussions, including both discussions between the undersigned counsel and discussions between party

representatives (e.g., Debbi Waldbaum of AT&T and Carmel Gill and Andrew McClure of Level 3).

b.  These discussions have continued to the present, including most recently a May 18, 2021 letter from counsel for AT&T, and a May 19, 2021 response from Level 3.  Thereafter, counsel for the parties discussed settlement on several occasions, and an additional letter was provided by Level 3 on June 18, 2021.

c.  The parties have been promptly informed of all offers of settlement.

d.  It appears from these discussions that settlement is unlikely.

e.  Counsel for the parties considered ADR in accordance with D.C.COLO.LCivR.16.6, and conducted a formal mediation before Magistrate Judge Hegarty, but the parties were unable to resolve their disputes through this mediation. The parties do not believe it would be beneficial to schedule additional formal mediations.

## 11.  OFFER OF JUDGMENT

Counsel acknowledge familiarity with the provision of Rule 68 (Offer of Judgment) of the Federal Rules of Civil Procedure. Counsel have discussed it with the clients against whom claims are made in this case.

No party has made an offer of judgment in this case.

## 12.  EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court to prevent manifest injustice.  The pleadings will be deemed merged herein. This Final Pretrial Order supersedes the Scheduling Order.  In the event of ambiguity in any

provision of this Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings. Notwithstanding the foregoing, and in light of the Parties' pending motions and ongoing efforts by both sides to narrow the issues in dispute, the parties reserve all rights, and jointly request that they be given leave, to amend this Pretrial Order as necessary.

## 13. TRIAL AND ESTIMATED TRIAL TIME;

## FURTHER TRIAL PREPARATION PROCEEDINGS

1. The trial is to be a bench trial before the Court.

2. Trial time is estimated to be one to two days.

3. The trial will take place in the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.

DATED June __, 2021.

BY THE COURT

_____
United States Magistrate Judge

APPROVED:

By: /s/*Michael D. Warden*
Rebecca B. DeCook
Andrew T. Flynn
Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1027
becky.decook@moyewhite.com
andrew.flynn@moyewhite.com

Michael J. Hunseder
Michael D. Warden
Justin A. Benson
Joshua W. Moore
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
mhunseder@sidley.com
mwarden@sidley.com
jbenson@sidley.com
joshua.moore@sidley.com

Angela C. Zambrano
SIDLEY AUSTIN LLP
2021 McKinney Avenue
Suite 2000
Dallas, TX 75201
Telephone: (214) 981-3300
angela.zambrano@sidley.com

*Attorneys for Plaintiff AT&T Corp. and
Counterclaim Defendant Teleport
Communications Group*

By: /s/*Charles W. Steese*
Charles W. Steese, #26924
Douglas N. Marsh, #45964
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
csteese@armstrongteasdale.com
dmarsh@armstrongteasdale.com

*Attorneys for Defendant/Counterclaimant
Level 3 Communications, LLC and
Counterclaimants Broadwing
Communications, LLC, Global Crossing
Telecommunications, Inc., and Wiltel
Communications, LLC.*