```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-112-RM

AT&T CORPORATION,

     Plaintiff,

vs.

LEVEL 3 COMMUNICATIONS, LLC,

     Defendant.
_____

                      REPORTER'S TRANSCRIPT
                   Trial Preparation Conference
_____


        Proceedings before the HONORABLE RAYMOND MOORE, Judge,
United States District Court for the District of Colorado,
commencing at 3 p.m., on the 29th day of June, 2021, in
Courtroom A601, United States Courthouse, Denver, Colorado.




       TAMARA HOFFSCHILDT, FCRR, CRR, RMR, Official Reporter
                   901 19th Street, Room A251
                     Denver, Colorado, 80294
                         (303) 947-1905

           Proceedings Reported by Mechanical Stenography
               Transcription Produced via Computer
```

**APPEARANCES**

Angela C. Zambrano, Sidley Austin LLP-Dallas, 2021 McKinney Avenue, Suite 2000, Dallas, TX 75201, and Justin Adam Benson and Michael J. Hunseder and Michael D. Warden, Sidley Austin, LLP-DC, 1501 K Street, N.W., Washington, DC 20005 and Rebecca B. DeCook, Moye White LLP, 1400 16th Street, 6th Floor, Suite 600, for the Plaintiff.

Charles Walter Steese and Douglas Nelson Marsh, Armstrong Teasdale LLP-Denver, 4643 South Ulster Street, Suite 800, Denver, CO 80237, appearing for the Defendant.

* * * * *

**PROCEEDINGS**

(In open court at 3:02 p.m.)

*THE COURTROOM DEPUTY:* Court is in session.

*THE COURT:* Please be seated.

*THE COURT:* All right. It looks like it's going to rain somewhere, I'm not sure.

*THE COURTROOM DEPUTY:* Everywhere.

*THE COURT:* Where that is? But in any event, we're here on 18-cv-112, AT&T versus Level 3 Communications. We're here for a renewed or continued or second trial preparation conference.

Let me -- I should mention that because of the distance of counsel and where matters sat with respect to COVID and what was permitted and what wasn't permitted, this is proceeding via video teleconference, and I will take appearances from there. Starting with the plaintiff.

*MS. ZAMBRANO:* Good afternoon, Your Honor. This is Angela Zambrano. I'm here with my colleague, Michael Warden

1  and Michael Hunseder and Justin Benson, on the phone, from
2  Sidley Austin and we represent AT&T, as well as T.C.G.
3           *MS. DeCOOK:*  Your Honor, Rebecca DeCook, also
4  appearing for AT&T.
5           *THE COURT:*  All right.  And then, for the defendant.
6           *MR. STEESE:*  Your Honor, this is Charles Steese, on
7  behalf of Level 3, and the counterclaim plaintiff affiliates of
8  Level 3.  With me is my colleague Douglas Marsh.
9           *THE COURT:*  All right.  Again, welcome, and good
10 afternoon to all of you.  I appreciate it.  It's late back east
11 where you are, at least where I think some of you may be.
12          Look, this is not going to take a great deal of time.
13 To be frank about it, if it takes more than ten minutes, I
14 think I'm dragging things out more than I need to.
15          What I mean by that is this, originally we were set
16 for a trial to the Court, I think it was -- we got caught in
17 the *What's a pilot trial?  What is not a pilot trial?  What are*
18 *we going to do?  Is there a conflict*?  And all of that.  The
19 trial is now set for, bench trial July 14 through 16, as far as
20 I'm concerned it's going forward.
21          The COVID protocols have been changed in this
22 District.  Essentially, they are these, if you are fully
23 vaccinated, you need not wear a mask.  You can choose to wear
24 one, no one is going to stop you at the door or ask you.  I
25 have said that I'm not going to ask, but I do consider the

1  appearance of no mask on counsel, to be a representation to me,
2  that they are fully vaccinated.  Beyond that, if you are not
3  fully vaccinated, you are still required to wear a mask.  We're
4  going to proceed, with the trial that is, but for that,
5  essentially, normal.  I do not intend to have people only
6  address issues from the table.  The lectern is where it is, and
7  we will be using it, back and forth, as typically is the case.
8  I do not intend to have, essentially, cleaning crews going
9  behind everybody on the basis of everything that you touch,
10 except for -- and I do not intend to use these radio headsets.
11 The reason that I say that is that, frankly, they -- it worked,
12 for the most part, but I don't want to preempt those for a
13 trial to the bench, where I think I can, given that there's not
14 a jury, the need for, quote, sidebars is really nonexistent.  I
15 can deal with things without having everybody pile on top of
16 each other, and frankly, I will tell you, even though I'm not
17 asking anyone else their vaccination status, I'm fully
18 vaccinated, and so piling up around me should not be as risky
19 for you, but I'm not trying to make counsel adhere to anybody's
20 medical judgments or other judgments about COVID.
21       There were some things that were left unresolved the
22 last time; and that is, I had a bunch of motions in limine that
23 were pending.  I suggested what it is that I would likely do, I
24 think, and whether I did or did not, I'm now doing, at least in
25 my memory is what I suggested I would likely do.  The motions

1   in limine that were filed, were **205, 207, 209, 226**.  I want to
2   deal with **205, 207,** and **209**.  Essentially, those motions, to
3   the extent that they seek me to preclude a party from
4   presenting evidence on a particular issue, those are denied,
5   with the following exception.  I do note that somewhere, I
6   believe it was **205,** part of it was a Ms. Miller, and whether or
7   not she would be permitted to testify as an expert and/or fact
8   witness.  I agree that she should not testify as an expert, and
9   would not accept expert opinions from her.  Nonetheless, it
10  is -- she is a factual -- if I have got the gender wrong, it's
11  an oversight and mismemory, but I believe that it is
12  Ms. Miller.  But in any event, she can testify as a fact
13  witness, and if she, as a lay person, has something that is
14  permissible, fine, but I'm not going to allow expert testimony
15  from her; that being said, I understand that her involvement in
16  this case, as a factual matter, is with respect to specialized
17  knowledge.
18          So, we'll see how that goes, but, in essence, I'm not
19  going to consider expert opinions from her, but will not
20  preclude her testimony, as she is intimately involved in some
21  of these matters that will be before me.
22          With respect to number -- and other than that, the
23  motions are denied.  With respect to what I consider to be,
24  frankly, strange, there's a motion, **226,** to exclude evidence on
25  issues resolved on summary judgment, and I think the last time

1  I said something to the effect of, I'm not going to undue --
2  I'm not likely to undo or want to undo or get into reversing
3  matters that have already been ruled upon.
4         The way I now understand the position of the parties,
5  it is, essentially, that AT&T is taking the position that it,
6  essentially, wants to introduce some evidence or make a proffer
7  of some evidence that, as I understand it, is relevant to
8  issues that were decided on summary judgment.  My view of the
9  matter is, essentially, this, I'm not going to allow trial
10 testimony, with regard to matters that have already been
11 resolved.  In other words, putting that evidence in, so that a
12 fuller record for summary judgment purposes is presented.  If
13 you want to make a written proffer and file it with the Court,
14 that's fine.  I don't intend to do anything with it, because in
15 my understanding, with regard to that written proffer is that
16 there is some concern that if the matter ends up in front of
17 the Tenth Circuit that there may be some value in saying to the
18 Circuit, *Here's information that we want the Circuit to*
19 *consider that we perhaps could/should have presented to the*
20 *District Court, but did not*, and if there is some perceived
21 value in that, then go ahead and do it, but I don't intend to
22 do anything with it, and if, in fact L3 wants to go down this
23 rabbit hole, as well, saying, *Well, if in fact, they had told*
24 *the District Judge this, we would have told the District Judge*
25 *that,* then you are welcome to go down that rabbit hole, as

1  well.  But in terms of how I will proceed at trial, I'm not
2  taking evidence on things that have been resolved and ruled
3  upon, and I will let you -- and I am not going to reverse
4  decisions that have been made, but if you see some value in
5  such a proffer, go ahead and file it, and what I would say is
6  that L3 has five days to file a reply or a response to the
7  proffer, if they wish to.  No one is permitted to file a reply,
8  because, as I understand it, this is just to create some record
9  for the Circuit.  Hopefully, they will be appreciative of my
10 effort to build into their record, matters that were not
11 considered by me, that were not presented to me, but I don't
12 want to second-guess counsel with regard to such a matter.
13         So, I think that resolves everything that is
14 outstanding.  If memory serves, there's still some issue about
15 how we are correctly dealing with the other parties that are
16 designated in the caption, but I think that that can wait until
17 the morning of trial, since we'll all be here in person.
18         Let me stop and say, let me give Ms. Zambrano, since
19 you went first, I will give you the option of commenting on any
20 or all of what I have said.
21         *MS. ZAMBRANO:*  Well, thank you.
22         *THE COURT:*  Commenting, I mean make your record.  I'm
23 sorry.
24         *MS. ZAMBRANO:*  Oh, okay.  Thank you, Your Honor.  The
25 only question that I have so far, based on your rulings, is

1   with respect to the one witness that we have, who is
2   immunocompromised and has a preexisting condition.  We talked
3   about, last time, about the fact that she would like permission
4   to appear remotely.
5            *THE COURT:*  Look, I -- I will grant that, and we can
6   VTC her in.  I will ask you to get in contact with my courtroom
7   deputy, and we will do that, that way, if, in fact, there's
8   still a medical concern.  I'm not trying to force someone,
9   needlessly, to be exposed to travel, and I don't know where
10  that person hails from.  Would you tell me now?
11           *MS. ZAMBRANO:*  Yes.  She is from New Jersey.
12           *THE COURT:*  All right.  And I don't know, you know,
13  what the vaccination status is or is not in New Jersey or in
14  the applicable airports, but I will allow that.
15           *MS. ZAMBRANO:*  Thank you, Your Honor.  I don't have
16  any other remarks.  Thank you for your ruling.
17           *THE COURT:*  Mr. Steese?
18           *MR. WARDEN:*  Your Honor, if I may, this is Mike Warden
19  for AT&T.  We have not filed the entirety of our proffer yet.
20  We didn't want to put that in the record right now with our
21  opposition, so, if Your Honor could allow us five days to file
22  that, and then allow Level 3 and appropriate time to file, if
23  they wish?
24           *THE COURT:*  All right.  You have -- this is the rest
25  of your proffer, right, the written proffer that I have been

1   referring to?  All right.  You have five days, and I will give
2   AT&T ten from the receipt of the -- from the filing of the
3   whatever else comes next.  The rest of the proffer.
4           *MR. WARDEN:*  Thank you.  Thank you, Your Honor.  And
5   to the extent that I believe you just referred to AT&T, is that
6   Level 3?
7           *THE COURT:*  I'm sorry.  You are correct.  Mr. Steese,
8   anything.
9           *MR. STEESE:*  Yes, Your Honor, just a few comments.  At
10  this point, the only claims that were made are Level 3's
11  counterclaims.  The parties have discussed Level 3 acting as
12  the functional plaintiff; meaning, that we would be the first
13  to present our evidence, and we just wanted to make sure that
14  that was on the record and acceptable to Your Honor.
15          *THE COURT:*  It's acceptable to me.  I just want to
16  make sure that it's cleanly on the record that, as of this
17  juncture, for purposes of going forward, the only thing that is
18  remaining is the counterclaim Level 3 acting as plaintiff,
19  versus AT&T acting as defendant, and any other parties that may
20  or may not have been implicated, are no longer necessary for
21  resolution of the lawsuit?
22          *MR. STEESE:*  Your Honor, that's not correct.  The
23  counterclaim includes T.C.G. as a defendant, and it also
24  includes the affiliates of Level 3.
25          *THE COURT:*  All right.  I see it.  I see it.  All

1    right.  But you are going forward, and all of the counterclaim
2    defendants will then proceed as represented by the --
3              *MR. STEESE:*  Myself and Mr. Marsh.
4              *THE COURT:*  Yourself and Mr. Marsh, that's fine, and
5    we will clean up, on the record, through -- and through the
6    evidence and opening statement exactly what that means, in
7    terms of their role or involvement or responsibility, because
8    I'm not sure that it's entirely clear to me, right now, but I'm
9    not focused on it, other than a dangling participle that needs
10   to be resolved, at some point, and I think we can resolve it in
11   the courtroom.
12             *MR. STEESE:*  Thank you.  A couple of other minor
13   issues.  With bench trials, especially with us filing proposed
14   findings, et cetera, some Judges prefer no opening statements.
15             *THE COURT:*  No, no, no.  I will give you -- I'm going
16   to give you an opening statement.
17             *MR. STEESE:*  Okay.
18             *THE COURT:*  And a closing, as well.
19             *MR. STEESE:*  A closing as well.  Thank you,
20   Your Honor, that was my next question.
21             Last question that we have is, is there a set amount
22   of time that we have for openings and closings; 30 minutes?
23             *THE COURT:*  Thirty minutes is fine.  What I tend to do
24   is, I don't like to play *chess clock* with people.  What I do
25   think is that, at some point, the opportunity for opening and

1    closing is beyond the purpose of opening and closing, and
2    either getting redundant is not helpful.  Generally, around a
3    half hour is fine.
4            *MR. STEESE:*  Perfect.
5            *THE COURT:*  In terms of closings, I would say the same
6    thing, but I will tell you both, I, sometimes, can, as is
7    evident by the record, here, today, talk a bit, and so it may
8    be that I need to make some adjustments for the fact that I
9    have a tendency to interrupt and/or ask questions and/or
10   pushback.  So, we'll deal with that down the road.
11           *MR. STEESE:*  Thank you.  Last issue, Your Honor.  I
12   recalled that you had a medical issue on Wednesday morning, the
13   14th.  We were going to start in the afternoon.  So, I just
14   wanted to make sure that we have start time for Wednesday
15   afternoon and then start time for Thursday and Friday, so we
16   know exactly when we were starting each day.
17           *THE COURT:*  Hold on.  I think my medical issue --
18   Deanne, are you there?  I think my medical issue is resolved
19   and I think we can start at 9 on each day.  Let me just verify
20   that.  I have got a number of things going on which -- July 14.
21   Deanne, July 14.  I know it seems like I'm ... losing my mind
22   and talking to bodies that are not in the courtroom, but I
23   don't -- I'm open.  We can start at 9.
24           *THE DEFENSE:*  On July the 14th, as well?
25           *THE COURT:*  Yeah.  Yeah.

1   *MR. STEESE:*  Okay.

2   *MR. STEESE:*  Your Honor, that is everything that I
3   had.  Thank you, Your Honor.

4   *THE COURT:*  Hopefully you won't get wet going home.
5   Are there -- is there anything else that either side feels that
6   we need to address now?

7   *MS. ZAMBRANO:*  Just a couple of issues regarding
8   witnesses, Your Honor.

9   *THE COURT:*  Go ahead.

10  *MS. ZAMBRANO:*  First is -- according to the -- your
11  local rules, says we should be prepared to address issues with
12  respect to witnesses.  So, I did want to note that we would be
13  invoking the Rule with respect to witnesses.

14  *THE COURT:*  That's fine.  That's fine.  Obviously,
15  each side gets an advisory witness and that's excluded from
16  sequestration, but beyond that, that's fine.  Go ahead.

17  *MS. ZAMBRANO:*  Thank you, Your Honor.  We both have --
18  well, actually, we have two witnesses on our list, to give you
19  a bit of a preview, that we will call, that -- and then two
20  witnesses that -- that are on the Level 3 witness list, as well
21  as will call.  So we know we have four witnesses.  There are an
22  additional four witnesses listed on Level 3's list as may-call.
23  We conferred with them briefly, before today's hearing, and
24  asked that we be given some additional advance notification as
25  to whether they will become will-call witnesses, and I expect

1  we will be able to work that out and if we can't, for some
2  reason, we will come back to you, but I do expect that we will
3  be able to work that out.
4          *THE COURT:* All right.  I hope so.  If not, well ... I
5  don't want to be facetious ... I was going to say ... I was
6  going to say, you can work out a contract for that, but that
7  would just be my being playful.  Go ahead.
8          *MR. STEESE:* Your Honor, just so counsel and you are
9  aware, we had some stipulations that we were still ironing out
10 that, literally, were filed moments before the conference
11 began, and so we will be able to, now, look at those
12 stipulations that we've agreed to and make some decisions and
13 we will, of course, inform AT&T of those, that we will be
14 calling, which gets to another question, thank you,
15 Ms. Zambrano is, to the extent that both sides are calling a
16 witness, what Your Honor's preference for having full
17 examination of name your witness at one time or do you expect
18 them to be recalled, back, for AT&T's defense case, separately?
19         *THE COURT:* I would want it to be redone -- re... done
20 at one time, rather than just have Yo-yoing people back and
21 forth.
22         *MR. STEESE:* That's helpful.  Thank you, Your Honor.
23         *MS. ZAMBRANO:* Thank you.  And we were planning on
24 that too, when we saw their list, so that's helpful.
25         From an evidentiary standpoint, there are a couple of

1  minor issues that, just to note them, one is that we have
2  native documents that we will want to use. We, again, don't
3  expect that there will be an issue, but I wanted to note that,
4  because it might require a little bit of machinery, if you
5  will, on some of these spreadsheets and so forth. We will work
6  with your chambers, with respect to that.
7      *THE COURT:* I -- I was looking over my shoulder
8  because that's where my real-time is. You said native,
9  meaning?
10     *MS. ZAMBRANO:* Instead of like a PDF of an Excel it
11 would be one live --
12     *THE COURT:* All right. You can get -- look, I can
13 deal with that, and you can -- well, I can deal with that. How
14 it is that you keep the record clean for the Tenth Circuit, I
15 leave up to you, but, Ms. Pearson, you can contact her, in
16 terms of capabilities. I mean, we frankly plug into our system
17 and it can be shown on screen, whatever is on your computer.
18 Whether it be a PDF or a spreadsheet or, I don't know, anything
19 else. Whatever -- whatever things that are on your computer
20 can be projected to the monitors that are around the courtroom,
21 including one at my bench, and I don't know, I don't think you
22 can see anything, but there's one at each table, that's a
23 little bit -- a little bit less than satisfactory when people
24 tend to move in packs, and in this case, I expect that counsel
25 will move in packs, but, meaning, there will be more than one

1  of you, but you can share the screen or even there are two
2  separate tables on each side, if you wanted to, for whatever
3  reason, look at an additional screen or get closer to an
4  additional screen, I can accommodate that, that's ... simple.
5           *MS. ZAMBRANO:*  Okay.  Thank you, Your Honor.  I think
6  the last issue is that there have been some confidentiality
7  issues in the case.  Again, we conferred with Level 3 before
8  today, we think that the best way, maybe, would be to redact
9  these in advance, in such that the things that are actually
10 presented do not include the confidential information.  My
11 understanding it's mostly third-party information, not
12 completely third-party information, and it wouldn't relate, at
13 all, to this case.  We didn't want to do that without talking
14 to you.
15          *THE COURT:*  I'm fine.  I'm fine with that.
16          *MS. ZAMBRANO:*  Okay.  I just want to make sure,
17 Mr. Warden, did I forget anything?
18          *MR. WARDEN:*  No, I think that covers it.  Thank you.
19          *MS. ZAMBRANO:*  Thank you, Your Honor.
20          *THE COURT:*  We're good.  I will see you in Denver.
21 Hopefully it doesn't rain, or if you are looking for water, it
22 does, Mr. Steese, I don't know.  Thank you all for your
23 cooperation.
24          *MR. STEESE:*  Thank you.
25          *THE COURT:*  And I will see you -- next -- I guess it

```
 1   is next month.  All right.  Recess.
 2            THE COURTROOM DEPUTY:  Court is in recess.
 3        (Recess at 3:26 p.m.)
```

### REPORTER'S CERTIFICATE

```
 5      I certify that the foregoing is a correct transcript from
 6   the record of proceedings in the above-entitled matter.  Dated
 7   at Denver, Colorado, this 2nd day of July, 2021.
 8
 9                                     S/ Tammy Hoffschildt
                                       Tammy Hoffschildt
```