# EXHIBIT Z



May 9, 2011

PLAINTIFF'S EXHIBIT
**62**
18-CV-0112

To: Rogier Ducloo
Mack Green
Company Name: Level 3 Communications, LLC and Affiliates
Re: Bill Dispute Notification

AT&T recently completed an in-depth review of Level 3's switched access billing to AT&T and the related Level 3 interstate and intrastate switched access service tariffs under which Level 3 purports to bill AT&T. The results of our review indicate that Level 3 Communications and its Affiliates ("Level 3") have inappropriately billed and collected from AT&T more than $19.3M over the last two years (March 2009 thru February 2011) for "end office switching" services that they did not provide. Therefore, as provided below, AT&T disputes the portion of Level 3's access billing over the last two years and future Level 3 access billing for end office switching services associated with third party VoIP Service Provider traffic.

Today, calls to and from the AT&T network are transported across facilities from incumbent LEC tandem switches to and from Level 3 CLECs. As Level 3 has openly acknowledged on multiple occasions, calls are then transited to and from third party VoIP Service Provider platforms. The VoIP Service Provider then routes the calls over broadband facilities (fiber to the premise, local hybrid fiber-coaxial cable connections, WIFI, DSL, etc.) purchased by the called or calling parties from a third-party broadband service provider. As a result, the Level 3 CLECs do not provide fundamental elements of end office switching. Nor do they operate the analogs of switching equipment closest to the called or calling parties or common lines utilized to originate calls to AT&T's 8YY customer or deliver calls to the callers who utilize the VoIP Service Provider applications. Rather, the Level 3 CLECs provide, at most, a very limited "transiting" function between an ILEC tandem and the broadband facilities that enable the VoIP Service Provider application.

In this architecture, key functions analogous to end office switching are performed by the broadband facility provider connected to their respective customers, not by the Level 3 CLECs. It is the broadband facility provider (not the Level 3 CLECs) that transmits the calls across the local broadband network from a location theoretically analogous to an "end office" (*i.e.*, a cable modem termination system in a cable head-end) that serves the called or calling parties. And it is the broadband service provider (not the Level 3 CLECs) that actually performs functions necessary to route calls directly to and from these callers, all of whom are customers of the broadband service provider (not the Level 3 CLECs).

In addition, AT&T believes that some portion of Level 3's billing of terminating switched access charges is associated with service applications that appear to be artificial traffic stimulation schemes; i.e. free teleconferencing, chat, and calling applications to international end-points. It is AT&T's position that this type of traffic stimulation is inappropriate and has resulted in additional overbilling by Level 3

As a result of AT&T's investigation, and without waiving any rights with respect to the disputed billing, AT&T has determined that Level 3 improperly bills AT&T end office switching rates. Approximately 65% of Level 3's traffic appears to be associated with VoIP Service Provider traffic. Until Level 3 can reasonably demonstrate the absolute percentage of traffic associated with third party VoIP Provider services, AT&T will only compensate Level 3 for 50% of billed end office switched traffic. (AT&T's withholding of access charges on only 50% of billed end office switched traffic is not a waiver of its claim that a higher percentage of such traffic is associated with third party VoIP Service Provider Traffic, nor is AT&T bound to continue to withhold payment on the same percentage of traffic going forward as it obtains updated data.) Note that this withholding does not address AT&T's dispute related to Level 3's billing of terminating switched access charges associated with

CONFIDENTIAL
Subject to Stipulated Protective Order
Case No. 1:18-cv-00112-RM-MEH, D. Colo.

Exhibit 62 Page 1 of 2

ATT_PROD_0013829

artificial traffic stimulation schemes. AT&T reserves the right to address damages and withholding of payment related to this claim at a later date.

AT&T believes that it is in both our firms' best interest to work cooperatively to address and resolve these over-billing issues. Although Level 3 may not impose tariff rates for end office switching functions it does not perform related to VoIP Service Provider traffic, AT&T believes that it may be appropriate to compensate Level 3 at an agreed upon level for any actual service provided to AT&T, and that the determination of the appropriate compensation for those services should also be addressed in discussions between AT&T and Level 3. Further, AT&T looks forward to discussing Level 3's billing of terminating switched access charges associated with service applications that appear to be artificial traffic stimulation schemes. However, if the parties cannot reach an agreement regarding the overcharges to AT&T, then AT&T hereby notifies Level 3, pursuant to Section 1.721(a)(8) of the rules of the Federal Communications Commission, 47 C.F.R. § 1.721(a)(8), that it intends to file a formal complaint against Level 3 to recover the overcharges discussed above.

Please contact me at your earliest convenience, and by no later than May 23, 2011, to discuss the corrective action Level 3 Communications will implement to address any future billing and the credit due AT&T for prior period overbilling.

*[signature: A. Burgess]*

Ardell Burgess
Director – AT&T Access Management
908-234-5513
ab3696@att.com

   cc: CT Corporation Systems (Level 3's agent of process for FCC matters)
       1099 Vermont Ave. NW
       Washington, DC 20014
       (via certified mail)

CONFIDENTIAL
Subject to Stipulated Protective Order
Case No. 1:18-cv-00112-RM-MEH, D. Colo.

Exhibit 62  Page 2 of 2

ATT_PROD_0013830