**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-RM

AT&T CORP.,

 Plaintiff/Counter Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC,

 Defendant/Counterclaimant, and

BROADWING COMMUNICATIONS, LLC, GLOBAL CROSSING TELECOMMUNICATIONS, INC., and WILTEL COMMUNICATIONS, LLC

 Counterclaimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.

 Counterclaim Defendant

---

## AT&T'S TRIAL BRIEF

Under both the parties' 2015 Agreement and the principal remaining count of Level 3's Amended Counterclaims ("Counterclaim"), the main issue for trial is the amount of end-office switching access charges that AT&T underpaid, in light of the Court's holding that 21% of Level 3's end-office switching charges were for over-the-top Voice Over Internet Protocol ("OTT VoIP") calls. That amount, based on AT&T's historic withholding of 65% of end-office switching and a few simple mathematical calculations, is approximately $3.94 million. Nonetheless, Level 3 ignores its own Counterclaim, its verified discovery responses, and the plain text of the parties' 2015 Agreement and asks this Court to award it more than twice its loss, or nearly $9 million in damages. As will be shown at trial, Level 3's inflated damages claim is legally and factually flawed.

1

I.   **LEVEL 3'S DAMAGES ARE LIMITED TO PROPERLY BILLED, UNPAID END-OFFICE SWITCHING CHARGES.**

Count I of Level 3's Counterclaim is a breach of contract claim for recovery of amounts owed by AT&T for end-office switching charges based on the 2015 Agreement. *See* ECF No. 124, ¶¶ 60–71. The Counterclaim is unambiguously limited to recovery of end-office switching charges. *Id.* ¶ 70 (requesting damages "for payment in full of all *end-office switching access charges* owed by AT&T") (emphasis added). Likewise, during discovery, Level 3 expressly stated that it was seeking damages only for end-office switching charges. *See* AT&T Exs. 25, 34, 35.[1] This makes sense because the parties' 2015 Agreement clearly defines the parties' "OTT Dispute" to mean a dispute where "AT&T has [] disputed and not paid certain Level 3 *end-office switching charges*" on traffic for "customers served by providers of [OTT VoIP] services . . . ." *See* ECF No. 15-1 at 1 (emphasis added).[2] The relevant part of the 2015 Agreement was limited to end-office switching charges because the "OTT dispute" that was being settled involved only that category of access charges, and no other. The damages that Level 3 can recover thus are limited to the amounts that AT&T underpaid for end-office switching, and Level 3 cannot recover for any other switched access charges at trial.

A.   **Level 3's Damages For End-Office Switching Are Straightforward.**

Level 3 agrees that, between January 1, 2019 (with an invoice date of February 2019) and May 2021, it has billed AT&T a total of $8,253,700 in end-office switching charges. The Court

---

[1] The Parties did not engage in fact discovery on charges or any disputes regarding any switched access services other than end-office switching.

[2] Level 3 is simply wrong when it claims that the 2015 Agreement's references to "the OTT Dispute" and "end-office switching," include not only end-office charges, but also tandem charges and late payment charges. *See* ECF No. 260 at 5. Rather, the 2015 Settlement Agreement clearly differentiates the OTT Dispute relating to end-office switching charges at issue here from a separate Tandem Dispute, for which AT&T "disputed and [did] not pa[y] certain charges Level 3 has assessed AT&T for tandem facilities." *See* ECF NO. 15-1 at 1.

2

has determined (and Level 3 agrees) that 21% of the billed end-office charges were for OTT VoIP calls. Level 3 thus improperly billed and overcharged AT&T on that portion of its end-office charges. Based on the 21% factor, Level 3 also agrees that, during the same period, the amount of end-office switching charges that it improperly billed AT&T on OTT VoIP calls is $1,244,055. The amount Level 3 properly billed for end-office switching charges during this period is thus $7,009,644 ($8,253,700 total billed less $1,244,055 improperly billed).[3]

The evidence at trial will show that in August 2017, AT&T began to pay 35% and to withhold 65%, of end-office switching charges, based on the fact that the 2015 Agreement provided that 65% of Level 3's end-office switching charges had been for OTT VoIP calls. Indeed, Level 3 alleges as much in its Counterclaim, *see* ECF No. 124 ¶ 68 ("AT&T withholds payment on 65% of end-office switching charges even to this day."), and in its summary judgment motion. *See* ECF No. 152 at 3 ("[I]n 2017, AT&T . . . started to withhold payment on 65 percent of Level 3's end-office charges."). AT&T witnesses will testify that specific instructions were provided to its bill payment systems to pay 35% (and thus withhold 65%) of the end-office switching charged billed by Level 3. *E.g.*, Ex. 36. The evidence at trial will show that AT&T paid $2,888,795 of the $7,009,644 of properly billed end-office switching between January 1, 2019 and May 2021. AT&T thus underpaid $4,120,849 for end-office switching charges. After certain adjustments agreed to by the parties, Level 3's recovery should be just over $3.9 million.[4]

---

[3] It is also undisputed that Level 3 continued to invoice AT&T for its OTT VoIP end-office switching charges up until May 2021. In other words, even though Level 3 has long argued that a material portion (now 21%) of its traffic is OTT VoIP, Level 3 continued to bill improper end-office switching charges on that traffic—even after the FCC issued its 2019 Declaratory Ruling on remand from the D.C. Circuit. *See* Order on Remand, *In the Matter of Connect America Fund*, 34 FCC Rcd 12692 (2019)). Rather than adjust its billings, Level 3 has calculated an OTT credit to reflect these overcharges as part of its damages calculations.

[4] AT&T stipulates (for purposes of resolving damages in this case, and fully reserving its rights to contest such charges in the future or other cases) that Level 3 can collect an additional $332,941, which represents tandem switching charges

3

Level 3's nearly $9 million damage claim is flawed for multiple reasons. First, rather than calculating damages based on its end-office switching charges, as required by its Counterclaim and the 2015 Agreement, Level 3's analysis begins with another – incorrect – starting point. Level 3's damages calculation starts with $56.4 million for *all* switched access services Level 3 provided to AT&T, not just end-office switching charges. Level 3's $56.4 million includes rate elements like tandem switching, tandem transport, and database query charges. Level 3 then subtracts $37.9 million that AT&T has paid for *all* switched access services. It also subtracts the credit (discussed above) for its OTT VoIP overcharges, and then adds in late payment charges. After adjusting for a separate dispute, Level 3 alleges that AT&T owes $9.5 million in damages – more than twice the actual amount of unpaid end-office charges.

Level 3's Counterclaim based on breach of the parties' 2015 Agreement seeks only recovery for end-office switching charges, not other tariffed access service charges. ECF No. 124, ¶¶ 164-70. And there is a very simple reason for that: none of these other access services were required to be paid by AT&T under the 2015 Agreement and therefore are not recoverable through a claim for breach of the 2015 Agreement. In fact, the 2015 Agreement specifically excludes AT&T's withholdings on disputes "unrelated to the requirements of the OTT Declaratory Order." ECF 15-1 at (a)(ii). Level 3's recent filings confirm that its damages claims are inflated because it seeks to recover tandem switching charges, which are not at issue. *E.g.*, ECF No. 223, at 10 (Level 3's damages include "65 percent of payment [withheld] on Level 3's *tandem charges*") (emphasis added). In short, the only damages that could possibly flow from a breach of the 2015

---

as a replacement for the improper end-office switching charges. The parties have also stipulated that Level 3's damages should be reduced by $517,143, which is the amount that Level 3 and its affiliates over-withheld for end-office switching charges billed by TCG. Thus, the total amount that Level 3 should recover is $3,936,643.

4

Agreement are non-payment of the end-office amounts that required to be paid by *that agreement*.

Further, Level 3 attempts to fashion some sort of theory that would extend its damages claim beyond end-office charges, contending that it is entitled to recover other billed access charges because AT&T failed to identify any other billing disputes regarding those charges (other than a so-called DEOT dispute). Level 3 thus contends it can recover under Count I *any* charges AT&T withheld for *any* reason. This argument is predicated on the dispute notification provisions in Level 3's tariff and AT&T's purported noncompliance with those provisions. But whether or not AT&T provided notice of other disputes under Level 3's tariff is irrelevant. To the extent that Level 3 seeks to recover unpaid charges for other access services it provided to AT&T and outside the scope of Level 3's contract claim for end-office switching, Level 3 should have pled and pursued a tariff collection action.[5] It did not and has not done so, and no discovery was conducted on those other claims. Issues regarding AT&T's alleged non-compliance with Level 3's tariff notification provisions are thus irrelevant and provide no basis for Level 3 to expand its damages claim beyond end-office charges.

Additionally, although compliance with Level 3's tariff is legally and factually irrelevant, the evidence will establish the existence of multiple disputes between the parties unrelated to OTT VoIP or end office charges, and AT&T has provided notice of multiple disputes. The existence of disputes beyond the OTT dispute is not surprising. Reflecting the fact that the parties' relationship is characterized by numerous billing disputes, the 2015 Agreement settled (or attempted to settle) three different disputes, and the 2019 Settlement Agreement settled more than twenty, some

---

[5] *See, e.g.*, *Connect Insured Tel. v. Qwest Long Distance*, No. 3:10–CV–1897–D, 2012 WL 2995063, at *13 (N.D. Tex. July 23, 2012) ("a collection action . . . seeks damages in the total amount of tariffed charges [a carrier] is allegedly owed in accordance with its tariff.").

permanently and some on an interim basis and that were identified as "ongoing." Likewise, AT&T witnesses will testify that AT&T's mechanized bill payment system provides notice that payments are being withheld. Other notices and explanations were provided by letter or email. Although AT&T believes that these disputes are not in fact before the Court for resolution, testimony regarding them will be introduced at trial. In evaluating this evidence, the Court should note that none of them was the subject of fact discovery, which closed before Level 3 initiated its attempt to expand the case beyond the recovery of the end-office charges that were the subject of its Counterclaim.

Finally, Level 3 tries to bolster its expansion of damages to other access services by positing a belatedly-disclosed and wholly-speculative theory, under which AT&T supposedly withheld 65% not only on end-office switching charges, but that it "must have" withheld that same percentage on "certain tandem charges." Level 3 did not disclose this convoluted opinion until May 2021, almost a year after the close of expert discovery and just weeks before trial was set to start.[6]

Even if the Court were to consider that theory, it would not entitle Level 3 to the expanded damages it seeks. First, as noted, Level 3's breach of contract claim limits its damages to end-office charges, and Level 3's "65% of tandem charges also" contention seeks the recovery of tandem and other access services that are distinct from end-office charges. Second, Level 3's contentions are factually incorrect. Testimony and exhibits at trial will establish that in August 2017 AT&T instructed its payment system to pay 35% of Level 3's end-office charges and thus

---

[6] Fact discovery closed on December 20, 2019, and expert discovery closed on June 5, 2020—Level 3's new theory was not disclosed until more than 11 months later, on May 18, 2021. *See* ECF 223-1, 223-7 (Declaration of Jennifer Torres and accompanying Exhibit G).

withhold 65% of those charges beginning in August 2017.  *See e.g.,* AT&T Ex. 36.  That withholding simply did not apply to tandem charges.  AT&T's withholding of 65% of Level 3's end-office charges continued until May 2021, when Level 3 began complying with the law, and crediting, rather than billing, AT&T for end-office switched access charges on its OTT VoIP calls.

In any event, Level 3's newly-concocted theory that AT&T's mechanized payment system must have applied the 65% withholding to tandem charges is not only wrong, but is based on a misunderstanding of AT&T's payment system.  Level 3 "interprets" a series of emails from 2017 to argue that AT&T over-withheld on end-office charges because the mechanized payment system was unable to distinguish between Level 3's end-office switching charges and tandem charges.  *See id.* at 5.  And based on this faulty view, Level 3 incorrectly concludes that this over-withholding on tandem charges by AT&T's system shows a "96.7 percent match" between what (i) Level 3 claims AT&T withheld for the OTT Dispute and (ii) AT&T claims it withheld for the OTT dispute.  ECF 223-1 at 4.

AT&T's witnesses will explain why Level 3's understanding of AT&T's billing system is wrong, but Level 3's theory is disproven by the simple fact that, if AT&T's mechanized system truly withheld 65% of tandem charges—as Level 3 now posits—AT&T would have withheld millions more than Level 3 now contends, as it billed AT&T millions more in tandem charges than it did in end-office charges.  But the parties agree that AT&T did no such thing.  Rather, the evidence at trial will show that Level 3 billed more than $34 million in combined end-office, tandem, and other access charges.  If Level 3's were correct that AT&T withheld 65% across the board, AT&T would have withheld more than $20 million.  Level 3, however, agrees that AT&T's actual withholding was nowhere near this level.  The evidence will show that, in order to fabricate

7

its "65% of tandem charges" theory, Level 3 cherry picks a subset of tandem charges in order back into a number that fits within its flawed narrative.

### B. Level 3's Damages Under the Agreement Do Not Include Late Payment Charges At The Rate Found In Level 3's Tariff.

Level 3's damages analysis also inappropriately includes late payment charges of $2,095,536. These late payment charges are based on an 18% per annum rate, which Level 3 draws from Section 4 of its switched access Tariff. However, these tariffed late payment penalties are not appropriate because Level 3's recovery arises under the 2015 Agreement, not its tariff. Nothing in the 2015 Agreement provides for the payment of late payment penalties at all – let alone payments at an 18% per annum rate. Rather, the Agreement provides that AT&T should pay "rates" applicable under the tariff, and the tariff plainly distinguishes between rates for services and late payment penalties. Thus, Level 3 is not entitled to tariff-based late payment penalties under its breach of agreement claim.

### C. Level 3 Is Not Entitled to Judgment On its Communications Act Claims Because It Did Not Recover Damages For Those Claims.

Counts III and IV of the Counterclaims asserted by Level 3 and its affiliates allege violations of Section 201 and 203 of the Communications Act (the "Act").[7] These Counts should be dismissed because Level 3 did not recover any damages, which are an essential element of a claim arising under the these sections. *See Conboy v. AT&T*, 241 F.3d 242, 250–51 (2d Cir. 2001) ("[A] private party seeking relief under . . . the Communications Act must 'allege and *prove*

---

[7] Count V is a breach of contract claim, but Level 3 alleges that the contracts are the AT&T/TCG tariffs, so it is not clear how this Count differs at all from Count IV, which alleges a violation of Section 203. Under Section 203, carriers must bill according to their tariffs. In any event, Level 3 fails to explain how TCG or AT&T breached their tariffs—and even if there were a breach, the tariffs do not provide for recovery of attorneys' fees by the customer.

8

*specific damages* flowing from violations of the Act.'" (emphasis added)).[8]  Level 3 has not sustained any financial losses resulting in actual injury or damages arising from any violation of the Communications Act.  Level 3 withheld payment for amounts it considered to be for OTT VoIP end-office switching charges, and it has now stipulated that it *owes* TCG about $517,000 for over withholding for such calls (and is entitled to nothing from AT&T on these counts).  Accordingly, the Court should enter judgment against Level 3 on Counts III, IV, and V.[9]

Level 3 also seeks to recover attorneys' fees in connection with its claims against TCG.  This is not a proper issue for trial and should be submitted as part of a post-trial petition for costs and attorneys' fees as required by Local Rule 54.3 and Fed. R. Civ. P. 54(d)(2).  However, even if considered at this time, Level 3 and its affiliates are not entitled to attorneys' fees, for two reasons.

First, for the reasons set forth above, the Court should dismiss Level 3's Communications Act claims, and Level 3 cannot recover fees on an unsuccessful claim.  Second, attorneys' fees can be recovered only when a claimant recovers damages.  The plain language of Section 206 provides that when a customer shows that a carrier has violated the Communications Act, the customer can

---

[8] *See, e.g.*, *Fulfillment Servs. v. United Parcel Serv.*, 528 F.3d 614, 621 (9th Cir. 2008) (the ICA does not "allow suits for abstract violations; to state a claim, a plaintiff must still allege damages as a consequence of the violation"); *Overbrook Farmers Union Coop. v. Missouri Pac. R.R. Co*., 21 F.3d 360, 364 (10th Cir. 1994) (carrier liability under section 8 of the ICA is limited to "actual damages"); *Beattie v. CenturyTel*, 511 F.3d 554, 565–66 (8th Cir. 2007) (agreeing that "§ 201 is not a strict-liability statute" so a plaintiff "must establish some type of injury to allege a claim under §§ 201 and 206") (quotation omitted); *Alliance Communications Co-op v. Global Crossing*, 663 F.Supp.2d 807, 836 (D.S.D. 2009) (under §§ 201/206, a claim is valid only where "a claimant is injured and sustains damages," and a "refusal to pay" billed charges does not create damage).

[9] As noted above, even after the FCC's second Declaratory Ruling in 2019, Level 3 continued to bill improperly end-office switching charges on its OTT VoIP calls.  Because AT&T withheld payment of those charges (paying 35% of those charges), it did not suffer damages, either.  If Level 3 were correct on its theory that billing of improper end-office charges on OTT VoIP calls (even charges that were never paid) violates the Communications Act, then Level 3 also has engaged in the very same violations of the Act that it alleges as to TCG and, contrary to the Court's prior ruling, AT&T would have a viable claim under the Act.  Rather, consistent with the law of the case,  if AT&T cannot establish a Communications Act violation because it is not recovering any damages, then neither can Level 3.

also obtain "a reasonable attorney's fee, to be fixed by the court *in every case of recovery*." 47 U.S.C. § 206 (emphasis added).[10]  Here, Level 3 has not recovered any damages from TCG under its Communications Act claims.  Although Level 3 is recovering damages from AT&T for Count I, for the breach of contract claim, there are no attorneys' fees available for that claim.  *Central Telephone Co. v. Sprint Commc'ns Co.*, 2011 WL 1226001, *5 (E.D. Va. March 30, 2011) (no damages under § 206 for a claim even for a breach of a "federally-recognized" contract).

Respectfully submitted this 7th day of July 2021.

By: /s/ Justin A. Benson

| | |
|---|---|
| Michael J. Hunseder<br>Michael D. Warden<br>Justin A. Benson<br>Joshua W. Moore<br>SIDLEY AUSTIN LLP<br>1501 K ST NW<br>Washington, DC 20005<br>Telephone: (202) 736-8000<br>mhunseder@sidley.com<br>mwarden@sidley.com<br>jbenson@sidley.com<br>joshua.moore@sidley.com<br><br>*Attorneys for Plaintiff AT&T Corp. and Counterclaim Defendant Teleport Communications Group* | Rebecca B. DeCook<br>Andrew T. Flynn<br>Moye White LLP<br>1400 16th Street, 6th Floor<br>Denver, CO 80202-1027<br>becky.decook@moyewhite.com<br>andrew.flynn@moyewhite.com<br><br>Angela C. Zambrano<br>SIDLEY AUSTIN LLP<br>2021 McKinney Avenue<br>Suite 2000<br>Dallas, TX 75201<br>Telephone: (214) 981-3300<br>angela.zambrano@sidley.com |

---

[10] *See Am. Tel. & Tel. Co. v. United Artists Payphone Corp.*, 852 F. Supp. 221, 222 (S.D.N.Y 1994).  A "case of recovery" is only one in which "damages have been awarded." *Id.*; *see also Sprint v. Crow Creek*, 2017 WL 1194208 (D.S.D. March 30, 2017) (same); *Swain v. AT&T Corp.*, 1997 WL 573464, at *1–2 (N.D. Tex. Sept. 9, 1997) (same).

## CERTIFICATE OF SERVICE

  I, Justin A. Benson, hereby certify that on July 7, 2021 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Charles W. Steese, #26924
Douglas N. Marsh, #45964
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
Email: csteese@armstrongteasdale.com
Email: dmarsh@armstrongteasdale.com

*Attorneys for Defendant Level 3 Communications, LLC*

                /s/ Justin A. Benson

                *Attorney for Plaintiff AT&T Corp. and Counterclaim Defendant Teleport Communications Group*