**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-RM-MEH

AT&T CORPORATION,

    Plaintiff/Counterclaim Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC,

    Defendant/Counterclaimant,

and

BROADWING COMMUNICATIONS, LLC, GLOBAL CROSSING TELECOMMUNICATIONS, INC., and WILTEL COMMUNICATIONS, LLC

    Counterclaimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.,

    Counterclaim Defendant.

---

**LEVEL 3'S MOTION TO AMEND THE PLEADINGS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(b)**

---

Defendant/Counterclaimant Level 3 Communications, LLC and Counterclaimants Broadwing Communications, LLC, Global Crossing Telecommunications, Inc., and WilTel Communications, LLC (collectively, "Level 3"), respectfully move for leave to amend the pleadings consistent with the proposed Amended Pretrial Order attached hereto as Exhibit 1 to include a claim against AT&T for breaching Level 3's Tariff.

Counsel for Level 3 has conferred with counsel for AT&T regarding this motion in

compliance with D.C. Colo. L.Civ.R. 7.1 and reports that AT&T opposes this motion.

## I. INTRODUCTION

AT&T claims that a portion of the damages Level 3 seeks are not included within the scope of Level 3's breach of contract claim. Level 3 disagrees; the evidence presented at trial show it is entitled to recover all charges in its damages calculations under its claims as pled. But in addition, by affirmatively arguing and presenting evidence that there were other bases for the withholdings, AT&T placed that point at issue even if it was not at issue already. Thus, the Court should amend the pleadings to allow Level 3 to recover any charges AT&T withheld in violation of the Tariff.

At trial, Level 3 presented evidence about the damages it suffered due to AT&T's breach of the settlement agreement. AT&T's response was to parse Level 3's damages and argue that, while it withheld payment on all of the amounts Level 3 identified, it did not withhold all of them due to the OTT Dispute. AT&T then stated that Level 3 should bring a separate lawsuit for breach of tariff to recover the other amounts AT&T had withheld. This assertion is particularly bold because the difference in the two parties' damages calculations all arise during one distinct time period: February 2019 through February 2020. This period would have been entirely in the two-year limitations period for tariff collection actions had AT&T made this argument back in May 2020, the latest possible date it would have been required to do so. Through its delaying action, AT&T hopes to place a portion of these damages beyond Level 3's ability to recover.

This should not be permitted. First, the evidence shows that all damages Level 3 seeks arise from AT&T's breach of the Settlement Agreement, and Level 3 is entitled to recover all these damages under the claims as pled. Additionally, according to AT&T's own evidence, which it voluntarily presented at trial, during this February 2019 through February 2020 timeframe, the

only "disputes" between the parties were (1) the DEOT dispute (which was accounted for in Level 3's damages), (2) the OTT Dispute, and (3) AT&T's over-withholding due to the fact that its mechanized payment process could not differentiate between end office and tandem charges. AT&T then admitted at trial that its mechanized process over-withheld from Level 3 for no legitimate reason, but simply due to the way Level 3 submitted its invoices. AT&T has affirmatively placed this third basis for its withholdings at issue. Thus, while Level 3 has proven its right to recover all damages under the claims as pled, to ensure that the disputes between the parties are resolved on their merits, the Court should also amend the pleadings pursuant to Rule 15(b) to add a breach of tariff claim so Level 3 can recover tariff charges that, very clearly, should have been paid all along.

## II.   BACKGROUND FACTS

At this point, the Court knows the evidence well. Ever since Level 3 made its original expert damages disclosures in March 2020, it made clear that there were only two usage-based disputes before February 2020: DEOT and OTT. Level 3 accounted for the DEOT dispute (and AT&T does not take issue with those calculations), and as a result attributed all of AT&T's remaining withholdings to the OTT Dispute. Level 3 thus sought these withholdings as OTT-related damages.

From March 2020 through March 2021, AT&T did not challenge Level 3 on this point. After Court granted Level 3 summary judgment on liability, AT&T's position changed, and in the words of AT&T's counsel, AT&T started to try an entirely different case. AT&T's new theory was that it had raised other disputes with Level 3, and other than 65 percent of end office charges, AT&T's withholdings were due to those other disputes. At trial, AT&T presented evidence of the

3

other purported disputes: Exhibit 95 (an inquiry first raised in March 2020), Exhibit 84 (a dispute beginning in December 2020 that Level 3 accounted for in its damages), and Exhibit 79 (dispute notices describing AT&T's concern that the mechanized process cannot differentiate between end office and tandem charges). While the dispute notices on the mechanized process all date from January 2021, AT&T witness Alison Miller also testified that AT&T sent dispute notices about the mechanized withholding process to Level 3 each month. *See* A. Miller 7/15/21 Testimony (attached hereto as Exhibit 2) at 50:10–51:5.

The problem with AT&T's new theory is that 100 percent of the difference between Level 3's damages calculations and AT&T's damages calculations arise from February 2019 through February 2020. This is shown in the following chart, displayed to the Court during closing arguments:

## Damages amount owed comparison

|  | AT&T amount owed | Level 3 amount owed | Level 3 LPCs | Total Damages |
|---|---|---|---|---|
| Before Finality of FCC Decision | $2,412,160 | $5,525,252 | $543,899 | $6,069,152 |
| After Finality of FCC Decision | $1,708,689 | $1,671,984 | $1,634,059 | $3,306,043 |
| Total | $4,120,849 | $7,197,236 | $2,177,959 | $9,375,195 |

While AT&T changed its theories at trial, for many months AT&T took no issue with the structure of Level 3's damages methodology, raising only clerical points about the accuracy of the

4

numbers Level 3 used. *See* Tr. Exs. 10, 13;[1] A. Miller 7/16/21 Testimony (attached hereto as Exhibit 3) at 5:18–16:23. Only after the Court granted summary judgment as to liability on Level 3's claims did AT&T raise the argument that Level 3's damages included payments that Level 3 could not recover because AT&T withheld them on the basis of other, unrelated disputes. Tr. Exs. 17, 18; Ex. 3 at 19:15–22:1.

At trial, both through documentary evidence and the testimony of its witnesses—in particular, Alison Miller—AT&T voluntarily presented evidence on these purported explanations for the withholdings. Again, with only one exception, every issue AT&T identified in its effort to explain why it withheld payment from Level 3 is dated March 2020 or later—after the FCC's December 2019 OTT Order became final. *See*, *e.g.*, Tr. Ex. 95 (dispute dating March 2020); Tr. Ex. 79 (dispute dating January 2021); Tr. Ex. 84 (dispute dating February 2021). As AT&T witness Kim Meola testified, moreover, AT&T does not engage in clawback—meaning, when AT&T raises a dispute that it thinks may apply to past months, it does not withhold additional payments to account for past payments to which the dispute may apply. That means the date a dispute is raised is the very first date on which there could have been any withholdings. This, in turn, means that none of the disputes AT&T raised *after* the FCC's Order became final could possibly account for anything AT&T withheld *before* the FCC's Order became final.

That leaves only one issue AT&T identifies in its attempt to explain why its damages calculations differ from Level 3's during the first period, before the FCC's Order became final: its mechanized billing payment system. At trial, and of its own accord, AT&T offered extensive

---

[1] Exhibits presented at trial are referenced here as "Tr. Ex.", while attachments to this Motion are referenced as "Exhibit" or "Ex."

discussion through Ms. Miller of the mechanized system, how it worked, when it withheld payment, and why. *See*, *e.g.*, Ex. 2 at 5:15–19:1, 32:15–38:21; Tr. Exs. 82, 87–90, 92. Ms. Miller's testified that withholdings relating to this mechanized system occurred throughout the time between January 2019 and March 2020. Ex. 2 at 50:10–51:5, Tr. Ex. 79. Indeed, AT&T started to over-withholding on the OTT dispute in August 2017 when it first programmed its mechanized process to account for the OTT Dispute. Tr. Ex. 36.

For years, AT&T has known about the over-withholding caused by the mechanized payment process. Trial Exhibits A-7, A-8 and A-18 were all discussed extensively at trial and show AT&T knew its mechanized process was causing it to over-withhold. *See also* Tr. Exs. A-56, 82; Ex. 2 at 21:20–23:19.

As is critical for purposes of this Motion, even as AT&T raised this issue regarding the mechanized billing system and presented evidence to advance its arguments, AT&T acknowledged that it was raising and presenting evidence on an issue it did not believe was raised in Level 3's pleadings. *See*, *e.g.*, AT&T Trial Brief (ECF No. 268) at 6 ("AT&T witnesses will testify that AT&T's mechanized bill payment system provides notice that payments are being withheld. Other notices and explanations were provided by letter or email. ***Although AT&T believes that these disputes are not in fact before the Court for resolution***, testimony regarding them will be introduced at trial.") (emphasis added). This means one of two things must be true. Either Level 3's damages claim properly includes within its scope all charges AT&T withheld that were not attributable to non-OTT disputes, as Level 3 maintains; or, alternatively, AT&T has affirmatively raised an issue not in the pleadings—whether the issue of the mechanized payment system gave AT&T a justifiable basis for AT&T's withholdings—and consented to that issue being tried.

6

Though AT&T raised this issue, AT&T utterly failed to prove that its withholding was legitimate.[2] Indeed, Ms. Miller acknowledged—responding to questions from Level 3's counsel that were offered without any objection from AT&T—that AT&T's mechanized process would cause AT&T "to dispute and withhold" tandem charges even where those tandem charges were "totally legitimate," "without having a legitimate reason for withholding a dispute," simply because the ratios in AT&T's system are not what AT&T would have anticipated. Ex. 2 at 60:11–61:4. As a result, Ms. Miller agreed that "there might be a host of dollars, thousands of dollars, hundreds of thousands of dollars[,] maybe even millions of dollars that AT&T has withheld and not paid simply because of its ratios in its system without having a legitimate reason for withholding a dispute." *Id.* at 60:24–61:4.

Thus, the only explanation AT&T tried to offer for why it withheld additional payments during the period that is the focus of the dispute is no explanation at all. AT&T acknowledges that its mechanized system withholds payment even on legitimate charges, and without a legitimate reason for the withholding. AT&T offers no explanation for why AT&T failed to raise a proper dispute for these withholdings as required under the Tariff. Nor does AT&T identify any reason why the Tariff does not permit Level 3 to assess, or require AT&T to pay, these charges.

The evidence—including evidence to which AT&T did not object, as well as evidence

---

[2] In addition, Melissa Kellow testified that the mechanized billing payment system is not a "dispute" at all, as it fails to comply with the requirements of Level 3's Tariff for properly raising a dispute. *See* Tr. Ex. A-3 (Level 3 Tariff) § 4.9. The email notices the mechanized system generates are simple "billing inquiries" complaining about the difficulties of processing Level 3's data; they do not identify charges Level 3 should not have assessed, the amounts of those charges, any reason why the charges should not have been charged, or any basis to show that the charges were not proper.

7

AT&T presented itself—thus shows that there was no justifiable basis for withholdings in the period before the FCC's Order became final. The only genuine dispute AT&T had raised for the withholdings at issue during this period is the OTT Dispute. By withholding payments on Level 3's charges in the absence of a justifiable basis for those withholdings, AT&T violated Level 3's Tariff as well as the Settlement Agreement.

## III.   ARGUMENT

For the reasons discussed in Level 3's Motion *in Limine* (ECF No. 205), because of AT&T's violation of its Rule 26 disclosure obligations, the Court should exclude AT&T's evidence and damages theories from consideration pursuant to Rule 37(c). And even if the Court did consider AT&T's argument, the Court can reject that argument on its merits. The parties' damages calculations align almost perfectly other than the period before February 2020, during which the only genuine dispute AT&T ever presented to Level 3 as a basis for the withholdings was the OTT Dispute. All the withholdings in Level 3's damages calculations are therefore within the scope of Level 3's breach of contract claim.

Level 3 brings this Motion so the Court can consider yet another basis for awarding Level 3 the full damages to which it is clearly entitled. AT&T acknowledges that all charges at issue were assessed under Level 3's Tariff (Tr. Ex. A-3). AT&T's failure to pay these tariffed charges breached not only the Settlement Agreement, which required AT&T to comply with the Tariff (*see* Tr. Ex. A-1 § 1(a)(ii)), but also the Tariff itself. AT&T has itself raised the issue of whether its mechanized payment system gave it a justifiable basis for withholding payment on Level 3's Tariff charges. Level 3 moves under Rule 15(b) to amend the pleadings to include a claim that AT&T had no justifiable basis for the withholdings and breached Level 3's Tariff by failing to pay the

required Tariff charges. Because AT&T failed to prove that there was any justifiable basis for the withholdings, Level 3 asks that the Court find AT&T breached both the Settlement Agreement and the Tariff, and on either or both bases award Level 3 all its damages (Tr. Ex. A-53).

### A. Amendment is Required under Rule 15(b)(2) Because the Parties Consented to Try the Issue of Whether there were Any Justifiable Bases for AT&T's Withholdings.

"The intent of Rule 15(b) is 'to provide maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" *Matter of Prescott*, 805 F.2d 719, 725 (7th Cir. 1986) (quoting *Hardin v. Manitowoc–Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)). "Thus, amendments under the rule are to be 'liberally granted where necessary to bring about the furtherance of justice and where the adverse party will not be prejudiced.'" *Am. Fam. Mut. Ins. Co. v. Hollander*, 705 F.3d 339, 348 (8th Cir. 2013) (quoting *Am. Fed'n of State, Cnty. & Mun. Emps. v. City of Benton*, 513 F.3d 874, 883 (8th Cir. 2008)).

As the caption to the Rule shows, Rule 15(b) provides a party with the ability to amend both "During and After Trial." Rule 15(b)(2) states that "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." As the word "must" indicates, this rule is not discretionary; when an issue is tried by the parties' consent, "amendment is mandatory." *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1372 (Fed. Cir. 2008).[3]

"A party impliedly consents to the trial of an issue not contained within the pleadings either by introducing evidence on the new issue or by failing to object when the opposing party introduces

---

[3] "A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue." Fed. R. Civ. P. 15(b)(2).

such evidence." *Eller v. Trans Union, LLC*, 739 F.3d 467, 479 (10th Cir. 2013) (quoting *Green Cnty. Food Mkt., Inc. v. Bottling Grp., LLC*, 371 F.3d 1275, 1280 (10th Cir. 2004)); *see also Hardin*, 691 F.2d at 457 ("Implied consent is found where the parties recognized that the issue entered the case at trial and acquiesced in the introduction of evidence on that issue without objection."). "The test of consent is whether the opposing party had a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment." *Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d 1275, 1279 (10th Cir. 1998). Whether the issue was tried by consent is a matter within the sound discretion of the trial court whose judgment will only be reversed for an abuse of discretion. *See Hardin*, 691 F.2d at 457 (citing *Ellis v. Arkansas Louisiana Gas Co.*, 609 F.2d 436 (10th Cir. 1979)).

The decision in *IES Indus., Inc. v. U.S.*, 349 F.3d 574 (8th Cir. 2003), is instructive here. There, a taxpayer brought an action challenging the decision of the IRS to deny the taxpayer's claims for tax refunds resulting from trades of American Depository Receipts, or ADRs. The IRS initially argued, and the district court agreed, that the ADR transactions were sham transactions—a holding that was reversed on appeal. On remand, the IRS moved under Rule 15(b)(2) to amend its answer to conform to the evidence and add affirmative defenses of offset and equitable recoupment to account for taxes owed for ADR dividends. The district court granted the motion, allowing the IRS to offset millions of dollars from the taxpayer's damages. On appeal, the circuit court affirmed the lower court's decision to grant the Rule 15(b) motion. The circuit court noted that "[t]hroughout the proceedings in the District Court," the taxpayer "took the position—indeed, it insisted—that 100% of the ADR foreign dividends was income to the company." 349 F.3d at 579. Indeed, it was "somewhat disingenuous of IES to suggest that it was somehow surprised to

10

learn, as the result of a 'last-minute ambush,' that the government, in seeking to amend its answer on remand, would rely on IES's consistent contention regarding the taxability of 100% of the dividends in order to recover taxes that IES had admitted it owed on the dividends." *Id.* (citation omitted). Thus, "[i]f IES did not expressly consent to trial of the issue by repeatedly contending throughout the litigation that the foreign dividends were taxable, then it surely impliedly consented." *Id.*

Here, AT&T likewise affirmatively raised (albeit at the eleventh hour, in April and May 2021) an argument that certain damages sought by Level 3 were purportedly beyond the scope of Level 3's claims. It then presented evidence to try and explain why, thereby consenting—impliedly, if not expressly—to try the issue of the legitimacy of its additional withholdings.[4] Indeed, AT&T's entire defense at trial was to argue that the delta was attributable to tariff charges distinct from any at issue under the Settlement Agreement, and that these withholdings would be recoverable only through a tariff collection action. *See*, *e.g.*, AT&T Trial Brief (ECF No. 268) at 5 ("To the extent that Level 3 seeks to recover unpaid charges for other access services it provided to AT&T and outside the scope of Level 3's contract claim for end-office switching, Level 3 should have pled and pursued a tariff collection action."). But in advancing this argument, AT&T affirmatively argued and presented evidence that its mechanized payment system was the cause of all other withholdings before March 2020. In other words, AT&T attempted to justify the additional amounts it withheld from Level 3 *even though it believes such evidence is not within*

---

[4] To be clear, Level 3 disagrees that all damages it seeks are not included within the scope of its breach of contract claim. But by affirmatively arguing and presenting evidence that there were other bases for the withholdings, AT&T placed that point at issue even if it was not at issue already.

*the scope of Level 3's claims as they are pleaded. Id.* at 5 ("although compliance with Level 3's tariff is legally and factually irrelevant, the evidence will establish the existence of multiple disputes between the parties unrelated to OTT VoIP or end office charges, and AT&T has provided notice of multiple disputes"); *id.* at 6 ("AT&T witnesses will testify that AT&T's mechanized bill payment system provides notice that payments are being withheld. . . . Although AT&T believes that these disputes are not in fact before the Court for resolution, testimony regarding them will be introduced at trial.").

AT&T thus knowingly went beyond what it argues is the scope of Level 3's pleaded claims. In doing so, it "took the position—indeed, it insisted" (*IES Indus.*, 349 F.3d at 579)—that it withheld these payments for reasons other than the OTT Dispute. By affirmatively raising and presenting evidence on this issue, AT&T consented to it being tried. *See Hardin*, 691 F.2d at 457 ("Consent will . . . be found when the party opposing the amendment himself produces evidence on the new issue.").

In addition, AT&T consented to this issue being tried because it "was put on notice" and "received information well in advance of trial which should have made [it] aware" that these other purported bases "w[ere] in issue." *Hardin*, 691 F.2d at 457. AT&T fully understood that Level 3 intended to argue that it was entitled to payment on all charges AT&T withheld other than for the DEOT dispute (and of course less the credit owed for end office charges on OTT traffic). AT&T made that very assertion multiple times in its trial brief. *See*, *e.g.*, ECF No. 268 at 4 ("Level 3 . . . seeks to recover tandem switching charges"), *id.* at 5 ("Level 3 thus contends it can recover under Count I *any* charges AT&T withheld for *any* reason"). As noted in the introduction to this Motion, this has been Level 3's consistent damages theory, from the time Level 3 first provided its damages

12

calculations to AT&T in March 2020 to the present. *See* ECF No. 205 at 3–4; Tr. Ex. A-22; Tr. Ex. A-53. AT&T has thus long known that Level 3 intended to argue at trial that there were no justifiable bases for these withholdings other than the OTT Dispute.

What's more, AT&T has known just as long that it would contest Level 3's damages theory on the basis that there *were* other justifiable bases for the withholdings—though it concealed that information from Level 3 until the eve of trial. Only in March 2021 did AT&T provide notice to Level 3's counsel of other purported non-OTT disputes. *See* Ex. 2 at 53:3–16. And only in April 2021 did AT&T inform Level 3 that it disagreed with the structure of Level 3's damages methodology, and that AT&T intended to attempt to limit Level 3's damages to a percentage of its end office charges. *See* Tr. Exs. 17, 18. However, as Alison Miller testified, even though this information was withheld from Level 3, Ms. Miller was "aware, during this entire time reviewing OTT information, the percentages and applications have always applied to end office billing." Ex. 3 at 21:17–22:3. AT&T thus knew all along that it intended to argue that AT&T's other withholdings were based on reasons other than the OTT Dispute.

AT&T thus "was put on notice that [Level 3] intended" to litigate the issue of whether there were other justifiable bases for the withholdings, and "received information well in advance of trial which should have made [it] aware" that these other purported bases "w[ere] in issue." *Hardin*, 691 F.2d at 457. And even if that "were not enough to put [AT&T] on notice of the issue," where AT&T explored that very issue in cross-examining Level 3's witnesses and presenting its own evidence, "the proceedings at trial suffice." *Id.* at 457–58 (issue tried by consent where "Plaintiff himself called" a witness and "pursued the issue," "also explored the issue on cross-examination," and "failed to object to any evidence at trial as being beyond the scope of the pretrial order").

13

In sum, AT&T (a) knew Level 3 intended to argue there were no bases for the withholdings other than the OTT Dispute; (b) knew AT&T intended to argue that the withholdings were justified on the basis of the mechanized payment system issue ; and (c) raised that very issue itself. AT&T "had a fair opportunity to defend and . . . could have presented additional evidence," thereby satisfying "[t]he test of consent." *Suiter*, 151 F.3d at 1279. As the issue of whether there were any justifiable bases for refusing to pay Level 3's Tariff charges was tried by consent, the Court must treat the pleadings as though amended to allow Level 3 to recover all damages at issue, whether because AT&T breached the Settlement Agreement, the Tariff, or both.

### B. The Court Should Allow Amendment under Rule 15(b)(1) To Allow Resolution on the Merits.

AT&T will likely contend that it did object to trying the issue of whether there were any other justifiable bases for the withholdings, notwithstanding the fact that it voluntarily advanced that issue on its own. But this contention, which in any event is wrong for all the reasons noted above, would not prevent the Court from allowing amendment to enable the full resolution of the parties' dispute and award damages for all charges AT&T wrongfully withheld.

The second avenue to amendment "During and After Trial" is stated in Rule 15(b)(1): "If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits."

"Rule 15(b) requires that the party opposing the amendment be seriously prejudiced in the presentation of the action or defense on the merits. Absent a showing of this character, the court should grant leave to amend and allow evidence on the newly raised issue to be introduced. The

14

district court's failure to do so may constitute an abuse of discretion and be a basis for reversal." Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1495 (3d ed.) ("a claim of surprise that is not borne out by the facts or an objection to a mere technical addition to the theory of the claim for relief or the facts on which it is based . . . typically will not entail sufficient prejudice to warrant the denial of a motion to amend"); *see also New Mexico v. Dep't of Interior*, 854 F.3d 1207, 1232 (10th Cir. 2017) ("the court should liberally grant amendment [under Rule 15(b)(1)] unless the opposing party makes a sufficient showing of prejudice").

AT&T cannot seriously claim to be prejudiced if the pleadings are amended to permit Level 3 to recover its damages on the basis that AT&T breached the Tariff as well as the Settlement Agreement. As noted above, Level 3 has argued all along, and AT&T has long understood, that Level 3 intended to recover all of AT&T's withholdings on usage charges less those attributable to specific non-OTT disputes, and that there was no basis for AT&T to withhold any of the amounts Level 3 sought as damages. AT&T has likewise long known that it intended to argue Level 3 could not recover payments AT&T withheld due to the mechanized payment process. And, of course, AT&T had access to all of its own witnesses and records, giving it complete and exclusive access to any information on why AT&T acted as it did and withheld what it withheld. As noted in closing arguments, if there was anything else AT&T had to say on the matter of why it withheld payment from Level 3, AT&T could have done so—and should have done so—but did not.

If anything, Level 3 was prejudiced by AT&T's misconduct. Though AT&T knew what arguments it intended to raise, AT&T concealed that intention, omitting any mention from its disclosures, which purportedly identified all the "areas of disagreement" with Level 3's damages disclosures (Tr. Exs. 10, 13), that AT&T believed there were additional disputes. Ex. 3 at 16:17–

15

23. Only after the Court issued its Order on Summary Judgment, leaving only the scope of Level 3's damages as an issue for trial, did AT&T reveal these additional areas of disagreement. Counsel for AT&T acknowledged how dramatically its shift in posture affected the presentation at trial, noting, in a telling admission, that "we conducted discovery on one cases, [but] we're trying another case." Ex. 2 at 55:6–7. This shift, to be clear, is purely a result of AT&T's own conduct. Had AT&T complied with its Rule 26 obligations, it would have identified these purported additional bases for the withholdings back in early 2020, when they could have been addressed in expert discovery and when the two-year limitations period for tariff collection actions would have included all damages at issue. By omitting these other issues from its disclosed areas of disagreement, AT&T hopes to place these damages temporally out of reach, evade a decision "on the merits" (Fed. R. Civ. P. 15(b)(1)), and employ "procedural niceties" (*Matter of Prescott*, 805 F.2d at 725) to avoid having to comply with the Tariff. AT&T should not be permitted to leverage its violations to shirk its obligations to Level 3.

To the extent AT&T objects that its withholdings were not based on the OTT Dispute and thus amounted to a breach of the Tariff rather than the Settlement Agreement, Level 3 should be permitted to amend its pleadings to allow it to recover all damages arising from AT&T's breach of the Tariff.

### C. The Evidence at Trial Conclusively Demonstrates that AT&T Breached Both the Settlement Agreement and the Tariff.

Because a filed tariff has the force of law, an action to collect charges pursuant to a federal tariff has only two elements: Level 3 must prove (1) that it operated under a federally filed tariff, and (2) that it provided service to AT&T pursuant to that tariff. *See Verizon New York Inc. v. Global NAPS, Inc.*, 463 F. Supp. 2d 330, 345 (E.D.N.Y. 2006); *Advamtel, LLC v. AT&T Corp.*,

16

118 F. Supp. 2d 680, 683 (E.D. Va. 2000). Neither element is disputed. The parties stipulated both to the admissibility and language of Level 3's interstate tariff. *See* Tr. Ex. A-3; ECF No. 262 at 13–14, Stipulations Nos. 2–3. All the evidence shows, and AT&T agrees, that the charges for which Level 3 seeks payment came from this Tariff. *See*, *e.g.*, ECF No. 262 at 5 (AT&T acknowledges that Level 3's damages calculations "start with $51.6 million that it billed under its tariff). Indeed, AT&T's entire defense is that Level 3's damages claim seek to recover "damages for any tariffed access services." *Id.* at 7. Thus, both elements of a breach of tariff action are proven.

At trial, the only reason AT&T gave for withholding payments on tariff charges before March 2020—other than the DEOT and OTT disputes which were accounted for in Level 3's damage calculations—was the mechanized payment process. However, as Ms. Miller made perfectly clear, the withholdings on this basis had nothing to do with whether or not the Tariff permitted the charges; the mechanized system withheld payment even when the charges are "totally legitimate." Ex. 2 at 60:11–11. This is exactly what happened in 2017 as well with the CPN dispute. There, AT&T over-withheld $4.056 million on a $7.7 million dispute for no legitimate reason. It knew the withholdings were not justified because AT&T gave Level 3 complete credit for the over-withholding and instead applied them to an unrelated dispute, coincidentally the OTT Dispute. *See* Tr. Ex. A-18. The evidence at trial overwhelmingly established that AT&T's mechanized payment process withholds payment on tariff charges from Level 3 for no legitimate reason; indeed, only because Level 3 bills tandem and end office charges on the same BAN. *See* Tr. Exs. A-7 and A-8.

Though AT&T affirmatively argued that there were justifiable bases for its refusing to pay Level 3's Tariff charges, it utterly failed to prove that point. The evidence conclusively shows the

17

opposite: Level 3's damages calculations from February 2019 through February 2020 establish all amounts AT&T withheld for (a) the OTT dispute and (b) due to the mechanized payment process were legitimate charges AT&T was required to pay. AT&T's failure to pay all charges Level 3 seeks to recover breached not only the Settlement Agreement, but also Level 3's Tariff.

## IV. CONCLUSION

If the Court does not award Level 3 all damages it seeks on the merits of its breach of contract claim, or preclude AT&T from presenting evidence and damages theories that are inconsistent with its prior disclosures, the Court should permit Level 3 to amend the pleadings to conform them to the evidence and address AT&T's breach of Level 3's Tariff. In doing so, the Court should treat that issue in all respects as if raised in the pleadings and permit Level 3 to recover all damages it seeks whether on the basis of AT&T's violation of the Settlement Agreement, its violation of the Tariff, or both.

Respectfully submitted this 28th day of July, 2021.

By:   /s/ Charles W. Steese
Charles W. Steese, #26924
Douglas N. Marsh, #45964
Armstrong Teasdale LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
csteese@armstrongteasdale.com
dmarsh@armstrongteasdale.com

*Attorneys for Defendant/Counterclaimants Level 3 Communications, LLC, Broadwing Communications, LLC, Global Crossing Telecommunications, Inc., and WilTel Communications, LLC*

## CERTIFICATE OF SERVICE

I, Charles W. Steese, hereby certify that on July 28th, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Rebecca B. DeCook
Andrew T. Flynn
Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1027
becky.decook@moyewhite.com
andrew.flynn@moyewhite.com

Michael D. Warden
Michael J. Hunseder
Justin A. Benson
Joshua W. Moore
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
mwarden@sidley.com
mhunseder@sidley.com
jbenson@sidley.com
joshua.moore@sidley.com

*Attorneys for Plaintiff AT&T Corp.*

/s/ Charles W. Steese
Charles W. Steese