**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-RM

AT&T CORP.,

      Plaintiff/Counter Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC,

      Defendant/Counterclaimant,

and

BROADWING COMMUNICATIONS, LLC, GLOBAL CROSSING
TELECOMMUNICATIONS, INC., and WILTEL COMMUNICATIONS, LLC

      Counterclaimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.

      Counterclaim Defendant

---

**AT&T OPPOSITION TO LEVEL 3'S MOTION TO AMEND THE PLEADINGS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(b)**

---

Plaintiff/Counterclaim Defendant AT&T Corp. ("AT&T"), by and through undersigned

counsel, submits this opposition to Defendant/Counterclaimant Level 3 Communications, LLC's

("Level 3") motion to amend the pleadings (the "Motion"), ECF No. 283.

## INTRODUCTION

Level 3 took the clear position, before and during trial, that its claim that AT&T breached

the Parties' 2015 Release and Settlement Agreement (the "2015 Agreement") entitled it to recover

all amounts—or "everything"—Level 3 had billed and on which AT&T had withheld payment

from February 2019 to the present.  Level 3 argued that "everything" was because of and caused

1

by that breach and the "OTT Dispute," and not other disputes between the Parties.  At trial, AT&T rebutted Level 3's allegations of the elements of causation and damages by showing that, among other things:  (1) AT&T had withheld monies from Level 3 for a variety of reasons unrelated to the Parties' OTT Dispute, (2) AT&T had withheld exactly 65% of Level 3's end-office charges, and (3) any damages owed to Level 3 should be limited to the approximately $4.1 million that AT&T over-withheld on end-office charges because of the OTT Dispute.  In short, the evidence at trial conclusively rebutted Level 3's theory that it could recover more than $9 million (which includes amounts unrelated to end-office charges and the OTT Dispute) based on its claim that AT&T breached the 2015 Agreement.

Through its Motion, Level 3 all but abandons the theories of causation and damages in its pleaded breach of contract counterclaim that it argued throughout the case and presented at trial. Faced with evidence that flatly refuted its prior theories of causation and damages, Level 3 now asserts an entitlement to damages based on an unpled and unlitigated breach of tariff claim.  For multiple reasons, Level 3's Motion is meritless.

*First*, Level 3's argument that it can amend its pleading under Fed. R. Civ. P. 15(b)(1) is obviously wrong.  The plain language of Rule 15(b)(1) allows amendment only during "trial" in response to an "objection" and authorizes the court to grant a "continuance" if an amendment is allowed.  Rule 15(b)(1) is simply inapplicable.

*Second*, Rule 15(b)(2) likewise cannot serve as a basis for the relief Level 3 seeks.  Rule 15(b)(2) applies only when the issue tried was not "raised by the pleadings."  The evidence that AT&T presented related to pleaded issues and therefore provides no support to Level 3's argument. During trial, Level 3's argued that it was entitled to breach of contract damages for monies

2

withheld by AT&T for other, non-OTT disputes.  That issue was thus indisputably "raised by the pleadings" as interpreted and tried by Level 3.  The Parties' evidence regarding other disputes simply addressed causation issues with Level 3's theory of recovery "raised by" its own pleaded counterclaim.

Moreover, a breach of tariff claim was not "tried by the parties' express or implied consent."  Although Level 3 contends AT&T impliedly consented to try "the legitimacy" of its non-OTT withholding, *see* Level 3 Motion ("Mot."), at 11, no Party ever asked the Court to rule on the merits of these other disputes, and AT&T asserted only that other disputes were outside the scope of damages recoverable on Level 3's breach of contract claim.

Indeed, AT&T sought to *exclude* evidence unrelated to damages for end-office switching. *See generally* AT&T Mot. in Limine, ECF No. 209.  In response, Level 3 argued that the "entire amount [it] seeks to recover are amounts AT&T withheld for the OTT Dispute, in direct violation of contract, and are [sic] therefore falls squarely within the scope of Level 3's counterclaim for breach of contract."  Level 3 Opp'n to AT&T Mot. in Limine, ECF No. 223, at 2.  The Court agreed with Level 3, and AT&T was therefore required to address and rebut Level 3's arguments at trial.  Allowing amendment now based on AT&T's rebuttal arguments and evidence is inconsistent with and unwarranted under Rule 15(b)(2).

*Third*, the Court presided over a *damages* trial in the wake of summary judgment. The Motion asks this Court to rule on both *liability and damages* on a different claim—for breach of tariff—for which *no* discovery was sought or conducted, no documents requested or produced, and no depositions requested or taken.  Indeed, the Court affirmatively did not allow the Parties to present evidence that might be relevant to a breach of tariff claim, much less try it by consent,

3

observing that the Parties were "too deep into the forest" in excluding certain evidence.  Liability and damages for breach of tariff was not tried.  As such, there is no basis in the trial record for either a liability or a damages determination for such a claim; and AT&T would be severely prejudiced if amendment were allowed.

## BACKGROUND

**1. Discovery.**  This case is—and always has been—about end-office switching charges on OTT VoIP traffic and the Parties' obligations to make payments related to those charges under the 2015 Agreement.  The Parties conducted fact discovery principally on two issues relating to their respective claims for breach of the 2015 Agreement:  (1) the meaning of the 2015 Agreement and (2) the percentage of Level 3's end-office charges that constituted OTT VoIP.  *No* fact discovery was conducted on (1) disputes unrelated to end-office charges on OTT VoIP or (2) whether AT&T withheld more than 65% of end-office charges.  Indeed, neither Party requested documents related to disputes other than the OTT Dispute.  Of Level 3's seventeen requests and AT&T's thirty-one document requests, none related to disputes other than the OTT Dispute or whether AT&T withheld more than 65% because of that dispute.  *See* Ex. A to Decl. of Rebecca B. DeCook ("Decl."),  Level 3's First Production Requests (Apr. 23, 2018); Ex. B to Decl., AT&T's First Production Requests (June 11, 2018); Ex. C to Decl., Level 3's Second Production Requests (Jan. 21, 2019); Ex. D to Decl., Level 3's Third Production Requests (Feb. 5, 2019); Ex. E to Decl., AT&T's Second Production Requests (Feb. 26, 2019).[1]

---

[1] Certain requests related to the TCG issue.

This was for two reasons.  First, until shortly before trial, Level 3 consistently maintained that AT&T had withheld "65% of [Level 3's] end office switching charges."  Level 3 Counterclaim, ECF No. 124, at ¶ 68 (Oct. 7, 2019); Level 3 Mot. for Summ. J., ECF No. 151-2, at 3, 8 (June 29, 2020).  AT&T therefore could not have known that Level 3 would seek much *more* than the 65% of end-office charges that both sides agreed AT&T had been withholding.  Second, the Parties' respective claims related only to the OTT Dispute, not other disputes that might have arisen in connection with Level 3's tariffed charges.  Indeed, throughout fact discovery, Level 3 affirmatively and repeatedly represented its damages were limited to the "end-office switching access charges AT&T has wrongfully withheld."  Level 3 Objections and Responses to AT&T's First Set of Interrogatories, at 10 (July 18, 2018) (Tr. Ex. 34); Level 3 Rule 26(a)(1) Disclosure, at 4 (April 30, 2018) (Tr. Ex. 25).[2]

Fact discovery closed on December 20, 2019.  ECF No. 131.  Shortly thereafter, Level 3 reiterated it was "seek[ing] payment of end-office switching access charges on all minutes of OTT-VoIP traffic."  Level 3 Suppl. Rule 26(a)(1) Disclosure, at 5 (Jan. 3, 2020) (Tr. Ex. 35).  Level 3 cryptically asserted through its damages analysis that it was seeking as damages much more than end-office charges related to the OTT Dispute.  Level 3 Suppl. Rule 26(a)(2)(C) Disclosure (May 15, 2020) (Tr. Ex. A-23).  It was only then and well after fact discovery closed that Level 3 suggested it was seeking as damages "everything," not only amounts withheld because of the OTT Dispute but also *all* amounts withheld for any reason.  Level 3 did so without amending its Rule 26 disclosures, its sworn interrogatory answers, or its counterclaims.  Contrary to Level 3's

---

[2] Exhibits presented at trial are cited as "Tr. Ex."  Exhibits to this Opposition are marked simply as "Ex." 1–4.

arguments during pretrial, Level 3 at trial and in its Motion argued that AT&T somehow injected "other disputes" belatedly into this case.  But it was Level 3 that did so, through its unpled and concealed causation and damages theories that sought "everything" through its breach of contract claim.[3]  This was confirmed because Level 3 adjusted its damages for other disputes, initially only the "DEOT" dispute and then, on the eve of trial, for a "backbilling" dispute.  *See infra* at 8–9.

    **2.  Summary Judgment.**  The Court's March 2021 summary judgment ruling addressed the two issues on which the Parties conducted almost all fact discovery.  First, the Court ruled on the meaning of the 2015 Agreement, including the term "Final Appellate Order."  Order on Summ. J., ECF No. 204, at 7.  Second, the Court concluded that Level 3's OTT traffic did not exceed 21% during the relevant time period.  *Id.* at 12.[4]  As a result, no issues of liability remained, and trial was limited to the damages caused by AT&T's breach of the Parties' 2015 Agreement.

    **3.  Pretrial.**  In the original and Court-approved Final Pretrial Order that pre-dated the summary judgment ruling, Level 3 asserted that the Court should "instruct[] AT&T . . . to refund all end office charges [it has] assessed to Level 3 on OTT-VoIP traffic."  *See* Final Pretrial Order, ECF No. 199, at 8.  After the Court's summary judgment ruling, however, Level 3 changed its causation and damages theories.  Instead of just seeking damages for end-office charges withheld under the 2015 Agreement, Level 3 claimed that *all* of AT&T's underpayments on all switched

---

[3] Level 3's Motion briefly resuscitates an argument made in its Motion in Limine (ECF No. 205) that the Court should exclude *all* of "AT&T's evidence and damages theories from consideration" under Rules 26 and 37.  The Court already addressed this argument, ruling that AT&T could not offer late-disclosed expert opinion testimony, but allowing AT&T to otherwise rebut Level 3's attempts to carry its burden of proof.  *See* Trial Preparation Conference Transcript, ECF No. 264, at 5:5–21.  In any event, Tr. Ex. 76, AT&T's damages calculation, was admitted during Level 3's case-in-chief; and the Court properly allowed simple mathematical, non-expert testimony to explain that calculation.

[4] With respect to AT&T's level of withholding, the Court, relying on the Parties' undisputed material facts, noted that AT&T "began withholding 65 percent of" Level 3's end-office charges in 2017.  Order on Summ. J., at 3.

access withholdings were recoverable for breach of the 2015 Agreement because AT&T somehow withheld much more than 65% because of the OTT Dispute. *See* Proposed Am. Pretrial Order, ECF No. 262, at 11 (June 29, 2021). Even after AT&T argued that these damages were akin to damages for a breach of tariff claim, Level 3 continued to assert, throughout the motion *in limine* briefing, pretrial, and trial that its breach of contract claim—and that claim alone—entitled Level 3 to recover all of these damages.[5]

In contrast, AT&T maintained that damages are limited to end-office charges. Consistent with that view, AT&T argued after summary judgment that it owed Level 3 the difference between AT&T's 65% withholding on end-office charges and Level 3's 21% OTT percentage. AT&T Mot. in Limine, ECF No. 209, at 3. Indeed, AT&T specifically moved to *exclude* evidence of withheld "amounts unrelated to end-office switched access charges" on the basis that such evidence was "unrelated to [Level 3's] breach of contract claim." *Id.* At the same time, AT&T noted Level 3 *could have* brought—but did not bring—an action to attempt to collect non-end-office withholdings under its tariff. *Id.* at 12. Level 3 never sought to amend its counterclaim to add a breach of tariff claim, likely because it knew that such an amendment would be denied as too late or, if granted, would necessitate a reopening of fact discovery and a continuance of the trial.

Level 3 argued that its theories of causation and damages were supported by two factual assertions: (1) AT&T's mechanized system incorrectly over-withheld on the OTT dispute,

---

[5] *See* Level 3 Opp'n to AT&T Mot. in Limine, ECF No. 223, at 2 ("The entire amount Level 3 seeks to recover are amounts AT&T withheld for the OTT Dispute . . . [and thus] fall[] squarely within the scope of Level 3's counterclaim for breach of contract."); Level 3 Proposed Findings of Fact and Conclusions of Law, ECF No. 260, at 18 ("all amounts AT&T withheld are within the scope of the OTT Dispute . . . and are therefore subject to Level 3's breach of contract claim"); Level 3 Trial Br., ECF No. 269, at 6 (AT&T "breached the Agreement by failing to pay the charges [at issue], and those withholdings are therefore included in Level 3's damages.").

withholding more than 65% of end-office charges and (2) there were no other disputes between the Parties that might account for AT&T's withholding.  Level 3 Opp'n to AT&T Mot. in Limine, ECF No. 223, at 10 (attributing the "entire" difference in the Parties' damages calculation to the claim that AT&T's "mechanized system" could not differentiate end-office from tandem charges).

The Court denied AT&T's motion to exclude evidence that Level 3's damages on its breach of contract claim were limited to withholding on end-office switching, allowing Level 3 broad latitude to introduce evidence to support its theories.  As such, AT&T was forced to rebut Level 3's theories by showing two things at trial—first, that its mechanized system withheld exactly 65% of Level 3's end-office charges; and second, that there were other disputes between the Parties that accounted for amounts AT&T was withholding unrelated to the OTT Dispute.

**3.  Trial.**  This case proceeded to trial solely as a damages case, not a liability case.  *See* Proposed Am. Pretrial Order, ECF No. 262, at 8 (June 29, 2021) (Level 3 statement that "the remaining task at trial will be to determine Level 3's damages").  At trial, Level 3 continued to assert it was entitled to collect all amounts withheld based on the 2015 Agreement, irrespective of whether those amounts were withheld on end-office charges because of the OTT Dispute.[6]  The only exceptions to Level 3's theory were apparently other disputes that Level 3 unilaterally deemed to be valid.  Until the eve of trial, the only such dispute that Level 3 excluded from its damages was the DEOT dispute.  Then, two days before trial, Level 3 amended its damages calculations to

---

[6] Level 3 continued to attempt to articulate new theories for why it was entitled to recover all amounts withheld under its breach of contract claim, even during closing argument.  *See* Ex. 3, at 43:5–46:11 (arguing the difference in the Parties' damages calculations is 100 percent attributable to pre-February 2020 withholdings).  But the document Level 3 used during its closing and that it highlights in its Motion (*see, e.g.*, Mot. at 4) is not in evidence, and there was no testimony about it.  In any event, none of Level 3's theories was based on breach of its tariff.

exclude a "new" backbilling dispute.  *See* Ex. 1, at 11:11–23 (Level 3 Opening Statement); Ex. 2, at 12:3–15:6 (cross examination of J. Torres).  AT&T notified Level 3 of the dispute in January and February 2021.  Tr. Ex. 84.  And the only thing "new" about this dispute was that Level 3's witnesses apparently did not even know Level 3 had received that dispute notice.

At trial, AT&T rebutted Level 3's overreaching causation and damages claim by conclusively showing that the 2015 Agreement limited Level 3's recovery to amounts withheld only for end-office switching, that AT&T had withheld exactly 65% of Level 3's end-office charges, and that there were in fact numerous *other* disputes between the Parties and reasons for withholding.  After seeking to exclude issues of other disputes *in limine*, AT&T sought to introduce evidence of these other disputes *only* to rebut Level 3's arguments and show there were other reasons for AT&T to withhold payments from Level 3.

Moreover, Level 3's assertion that the Parties consented to try such a breach of tariff claim flies directly in the face of its conduct at trial—Level 3 *objected* to evidence that would have shown AT&T was withholding money from Level 3 for valid and legitimate reasons.  For example, Level 3 objected when AT&T offered evidence showing there were other disputes between the Parties regarding Level 3's provision of switched access services.  Ex. 2, at 201:12–16 (objecting to Tr. Ex. 78, showing a dispute notice generated by AT&T's mechanized payment system).  And when AT&T attempted to introduce evidence that Level 3 charged AT&T for amounts in *excess* of that allowed under its Tariff, Level 3 again objected.  *Id.* at 204:24–205:1 (AT&T proposed Tr. Ex. 85). That evidence would not only constitute further rebuttal to Level 3's damages theory, but arguably would have been relevant had Level 3 alleged—and the Parties tried—a breach of tariff claim.  But, of course, there was no such claim in the case.  The Parties did not consent to try it,

9

and the Court did not allow it.  In sustaining Level 3's objection, the Court noted that "both sides are a little further into the forest than I think I need to go."  Ex. 2, at 205:15–17.  That was because, as the Court emphasized, the critical question was "what are the damages flowing from the breach" of the 2015 Agreement.  *Id.* at 205:18–19.

## ARGUMENT

### I.      LEVEL 3 CANNOT AMEND ITS COUNTERCLAIM UNDER RULE 15.

Rule 15(b) does "not permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case."  *Green Country Food Mkt., Inc. v. Bottling Grp., LLC*, 371 F.3d 1275, 1279 (10th Cir. 2004).  Yet, that is precisely what Level 3 attempts to do here by abandoning its claim that all of its damages were caused by a breach of the 2015 Agreement and attempting to supplement it with a post-trial breach of tariff claim.  Indeed, Level 3 has impermissibly waited *beyond* the last minute.  Level 3's attempt to rewrite its pleading and reframe the case after the conclusion of a trial should be denied under Rule 15.

### A.      Rule 15(b)(1) Does Not Permit Level 3 To Amend Its Pleadings.

Rule 15(b)(1) does not apply to Level 3's post-trial Motion to amend, as it applies only during trial.  The plain language of Rule 15(b)(1) provides that "[i]f, *at trial*, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. . . . when doing so *will aid in presenting the merits* . . . . The court *may grant a continuance* to enable the objecting party to meet the evidence."  Fed. R. Civ. P. 15(b)(1) (emphases added).  Rule 15(b)(1) allows amendment during, not after, trial.  *See, e.g.*, *Sinclair Wyoming Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 777 n.18 (10th Cir. 2021) ("Rule 15(b)(1)

authorizes a district court to allow a defendant to conform its pleadings to the evidence and advance new counterclaims *at trial*.") (emphasis added).

Level 3's argument that Rule 15(b)(1) allows a post-trial amendment is disingenuous at best. Level 3 points to the heading of Rule 15(b)—"During and After Trial"—and then suggests that Rule 15(b)(1) applies "after" trial, ignoring that 15(b)(1) applies only "during" trial and 15(b)(2) applies "after" trial. *See* Mot., at 14. In making its argument that 15(b)(1) applies post-trial, Level 3 cites *New Mexico v. Dep't of Interior*, 854 F.3d 1207 (10th Cir. 2017). *See* Mot., at 15. But that case makes clear that "Rule 15(b) contemplates that [the Rule 15(b)(1)] process will occur *at trial*," *New Mexico*, 854 F.3d at 1232 (emphasis added).

### B.    Level 3 Cannot Amend Its Pleading Pursuant to Rule 15(b)(2).

Likewise, Level 3 should not be permitted to amend under Rule 15(b)(2). Rule 15(b)(2) only applies when "an issue [1] not raised by the pleadings [2] is tried by the parties' express or implied consent." Fed. R. Civ. P. 15(b)(2). Thus, when an issue is neither "raised by the pleadings" nor "tried with . . . express or implied consent of the parties," Rule 15(b)(2) does not allow amendment. *Green Country Food Mkt.*, 371 F.3d at 1280. The Motion meets neither prong.

At trial, Level 3 argued that it could recover "everything" because that theory was "raised by the pleadings." Under New York law, Level 3 needed to "prove that [AT&T's] breach directly and proximately caused [its] damages." *Nat'l Mkt. Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 525 (2d Cir. 2004). During both pretrial and trial, Level 3 interpreted the causation and damages elements of its breach of contract claim to allow recovery of all amounts allegedly withheld by AT&T. Indeed, Level 3 was explicit pre-trial: "The entire amount Level 3 seeks to recover are amounts AT&T withheld for the OTT Dispute, *in direct violation of contract*, and are [sic]

11

*therefore falls squarely within the scope of Level 3's counterclaim for breach of contract*." Level 3 Opp'n to AT&T Mot. in Limine, at 2 (emphasis added); *see also* Level 3 Proposed Findings of Fact and Conclusions of Law, at 18; Proposed Am. Pretrial Order, at 11; Level 3 Trial Br., at 6. Although AT&T argued that evidence of other disputes and withholdings fell outside Level 3's breach of contract counterclaim, *see generally* AT&T Mot. in Limine, ECF No. 209, the Court allowed such evidence at the trial on Level 3's breach of contract claim*, see* ECF No. 264, at 4–5. Thus, the issue of whether Level 3 could recover "everything" under its breach of contract claim alone was an issue "raised by the pleadings;" and, therefore, Rule 15(b)(2) does not apply. *See Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1218 (10th Cir. 2000) (affirming denial of motion to amend on basis that evidence "presented no issues not raised in the pleadings").

The Motion likewise falls short of meeting the second prong of Rule 15(b)(2)—when an issue not raised by the pleadings is "tried with the express or implied consent of the parties." *Green Country Food Mkt.*, 371 F.3d at 1280 (internal citations omitted). As an initial matter, there is no question that the Parties did not expressly consent to try a breach of tariff claim; and Level 3 does not seriously contend otherwise.

Amendment under Rule 15(b)(2) is, therefore, only available if AT&T impliedly consented to try a breach of tariff claim. AT&T plainly did not. No Party ever asked the Court to rule on the merits of the Parties' non-OTT disputes, and AT&T only argued that those withholdings were outside the scope of Level 3's breach of contract claim and therefore not recoverable as damages.

Additionally, litigants impliedly consent to try an issue when they "recognize[] that the issue entered the case at trial and acquiesce[] in the introduction of evidence on that issue without objection." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 457 (10th Cir. 1982). Critically,

implied consent does not exist where the "evidence claimed to show that an issue was tried by consent is relevant to an issue *already in the case*, and there is no indication that the party presenting the evidence intended thereby to raise a new issue." *Id.* (emphasis added).

Here, the evidence Level 3 cites to show that a tariff claim was tried by implied consent was directly relevant to an "issue already in the case," *id.*—namely, whether the damages Level 3 seeks were proximately caused by AT&T's breach of the 2015 Agreement.  For example, evidence (offered by Level 3) showed that other, non-OTT disputes existed between the Parties and that Level 3's damages were not caused by AT&T's withholdings under those other disputes.  *See* Tr. Ex. 79 (showing dispute over issue with "Local Switching to Tandem Switching MOUs" ratio); Ex. 1, at 140:17–141:17.  Similarly, AT&T offered a notice of dispute regarding Level 3's back-billing that Alison Miller sent to Level 3 in January and February 2021, again showing the existence of other disputes.  *See* Tr. Ex. 84; Ex. 2, at 202:6–14.  Those dispute notices are relevant to Level 3's damages theory.  And AT&T introduced impeachment evidence to show that contrary to Melissa Kellow's testimony that AT&T had "never once provided any one [at Level 3] any other disputes during [the] relevant time period," AT&T had done precisely that.  *See* Tr. Ex. 95; Ex. 1, at 119:6–121:12.  In short, AT&T's evidence went to the issue already in the trial of whether Level 3's damages flowed from a breach of the 2015 Agreement.  *See* Level 3 Trial Br., at 6–7 ("All Level 3 seeks in this case is an award in the amounts AT&T withheld from payment on the OTT Dispute that it should not have withheld.").  That evidence does not support Level 3's assertion that the Parties tried a tariff claim by implied consent.

Level 3 also argues that evidence relating to AT&T's mechanized payment system shows that the Parties impliedly consented to try a breach of tariff claim.  Mot., at 11.  In attempting to

make that showing, Level 3 argues that "[b]y affirmatively raising and presenting evidence on this issue, AT&T consented to it being tried." *Id.* at 12. But what Level 3 conveniently ignores is that Level 3, not AT&T, injected the mechanized payment system into this case before trial. *See, e.g.*, Level 3 Opp'n to AT&T Mot. in Limine, at 10 (attributing the "entire" difference in the Parties' damages calculation to the claim that AT&T's "mechanized system" could not differentiate end-office from tandem charges). Indeed, Level 3 made AT&T's mechanized payment system the centerpiece of its breach of contract damages theory because—according to Level 3—that system could not, and did not, withhold exactly 65% of end-office charges. *Id.* at 16 (citing the "mechanized system" as the reason "AT&T could not possibly have withheld at exactly 65 percent of Level 3's end office charges."); Level 3 Trial Br., at 2 ("AT&T's mechanized dispute process cannot distinguish between charges Level 3 assesses for use of its tandem switches . . . and those it assesses for use of end office switches."); Ex. 1, at 15:14–19 ("[I]n an effort to withhold, on end office charges, they have a mechanized process [that] can't tell which of these are end office charges, and which of these are tandem charges, and it causes them to over withhold.") (Level 3 Opening Statement). AT&T necessarily responded to those contentions by rebutting Level 3's theory with uncontroverted evidence showing the mechanized system was programed to and in fact withheld 65% of end-office charges because of the OTT Dispute. *See, e.g.*, AT&T Trial Br., at 7 (previewing that AT&T's testimony and evidence would rebut "Level 3's newly-concocted theory that AT&T's mechanized payment system must have applied the 65% withholding to tandem charges"); Ex. 2, at 177:3–180:3 (Tr. Ex. 36); Ex. 2, at 184:1–188:20 (Tr. Ex. 82). Thus, AT&T's evidence was not used to try "the legitimacy of its additional withholdings," *see* Mot., at 11, but rather directly to rebut one of Level 3's primary theories for recovery under the 2015

14

Agreement, namely, that the mechanized system applied the 65% OTT factor in a manner that resulted in over-withholding. Because issues surrounding AT&T's mechanized payment system were "already in the case," evidence related to it cannot and does not support Level 3's argument that AT&T impliedly consented to try an unpled breach of tariff claim. *See e.g.*, *Smith v. Glob. Staffing*, 621 F. App'x 899, 904 (10th Cir. 2015) (affirming denial of motion to amend).

Moreover, at no point did AT&T or Level 3 indicate that evidence regarding non-OTT disputes was "intended . . . to raise a new issue." *See Hardin*, 691 F.2d at 457. In fact, AT&T was clear that evidence showing the "existence of multiple disputes between the parties unrelated to OTT VoIP or end office charges" would rebut "Level 3['s] attempt[] to . . . extend its damages claim beyond end-office charges" by arguing "AT&T failed to identify any other billing disputes regarding those charges." AT&T Trial Br., at 5. No Party asked the Court to decide whether AT&T's non-OTT withholdings were "legitimate," and there is no evidentiary basis to do so.

In short, Level 3 offered evidence to support its theories of causation and damages on its breach of contract claim, and AT&T offered evidence to rebut those theories. That does not constitute implied consent to try a breach of tariff claim. As the court of appeals has stated, "when evidence claimed to show trial of an issue by consent . . . is relevant to a separate issue already in the case, it would be unjust . . . to consider a new theory of recovery after trial." *Moncrief v. Williston Basin Interstate Pipeline Co.*, 174 F.3d 1150, 1162 (10th Cir. 1999) (cleaned up).

Nor was AT&T "on notice" that Level 3 intended to try a breach of tariff claim. Mot., at 12–13. Indeed, AT&T stated before trial that Level 3 *could have* brought an action to attempt to collect under its tariff, but did not. AT&T Mot. in Limine, ECF No. 209, at 12. Level 3 never amended its complaint before trial, *see* Fed. R. Civ. P. 15(a). In light of Level 3's consistent

15

affirmations that its sole claim was for breach of contract and its insistence that its breach of contract claim alone entitled it to collect *all* damages sought, there is no basis to conclude AT&T was on notice of Level 3's intent to try a breach of tariff claim.

Finally, Level 3 invokes the fact that some of its tariff claims are now time barred.  But that argument is irrelevant.  Level 3 and its counsel are sophisticated, experienced litigants in telecommunications matters.  The fact that they gambled that they could recover "everything" through a breach of contract action while letting the limitations period run on a tariff claim is a risk they willingly assumed.  That argument does not support amendment.[7]

## II.    LEVEL 3 HAS NOT ESTABLISHED A BREACH OF ITS TARIFF.

Even if the Court were to take the extraordinary step of allowing Level 3 to amend its pleadings after trial, the evidence admitted at trial does not establish *liability or damages* for a breach of tariff claim.  No liability issues were tried; instead, per the Court's summary judgment order, the *only* issue tried was the amount of damages flowing from Level 3's breach of contract claim.  Thus, trial focused narrowly on "determin[ing] Level 3's damages" for that breach.  *See* Proposed Am. Pretrial Order, at 8 (June 29, 2021) (Level 3 statement).

That is why the Court—in sustaining a Level 3 objection to AT&T evidence of other, non-OTT disputes—observed that "both sides are a little further into the forest than I think I need to

---

[7] In the alternative, Level 3's Motion should be denied under Rule 16.  Even though Level 3 attaches an amended pretrial order to its instant Motion, *see* ECF No. 283-1, Level 3's Motion does not mention Rule 16 at all.  Because "the final pretrial order supersedes the complaint as to the issues to be presented at trial," *see Salemi v. Colorado Pub. Employees' Ret. Ass'n*, 747 F. App'x 675, 702 (10th Cir. 2018) (internal citations omitted), Level 3's Motion is, in effect, a motion to amend the pretrial order.  Under Rule 16, a final pretrial order may be modified "only to prevent manifest injustice." *Id.*; Fed. R. Civ. P. 16(e).  That is sufficient reason to deny its Motion.  *See Salemi*, 747 F. App'x at 702 (where plaintiff "neither moved to amend the final pretrial order nor presented a manifest injustice argument [she] failed to make the proper motion . . . and has not raised the necessary arguments" for amendment).

go" for damages on a breach of contract claim.  Ex. 2, at 205:15–17.  That being so, the only way in which Level 3 "tried" a breach of tariff claim was by choosing which non-OTT disputes to include and which to exclude in its damages calculation.  *See* Ex. 1, at 11:11–23 (Level 3 Opening Statement); Ex. 2, at 12:3–15:6 (cross examination of J. Torres) (confirming that Level 3 added a dispute to its damages calculation two days before trial, despite having been on notice of the dispute in February 2021).  And in keeping with its one-sided approach, Level 3 objected when AT&T sought to introduce evidence of other disputes.  *See* Ex. 2, 201:12–16 (objecting to evidence of dispute notice).  Tellingly, Level 3 also objected when AT&T tried to introduce evidence showing that Level 3 had charged AT&T more than authorized by Level 3's tariff.  *Id.* at 204:24– 205:1 (objecting to AT&T proposed Tr. Ex. 85).[8]  As a result of Level 3's objections and the Court's rulings, the Parties simply did not try the issues of liability or damages for breach of tariff.

Even had the Parties tried such a claim, Level 3 did not meet its burden of showing liability or damages for breach of its tariff.  "The elements of a breach of tariff claim are: (1) that the [carrier] operated under a filed tariff; (2) that the [carrier] provided services to a customer under that tariff; and (3) that the [carrier] billed the customer for services provided under its tariffs at rates listed in those same tariffs."  *In re Core Commc'ns Inc.*, No. 17-00258, 2020 WL 1228667, at *2 (Bankr. D.D.C. Mar. 12, 2020); *Advamtel, LLC v. AT&T Corp.*, 118 F. Supp. 2d 680, 683 (E.D. Va. 2000).  Level 3—as the carrier providing the access services and seeking to collect for

---

[8] Level 3 points to the cross-examination testimony of Alison Miller to support its argument that the Parties have tried and that Level 3 has prevailed on a breach of tariff claim.  But Ms. Miller's testimony cannot carry the weight that Level 3 seeks to assign to it.  Neither Ms. Miller nor AT&T ever conceded that all of Level 3's charges were legitimate. Instead, Ms. Miller testified that, because of Level 3's non-standard billing practices, a full reconciliation was required. Excluded Tr. Ex. 85 is an example of exactly that kind of reconciliation.

them—bears the burden of proof to substantiate the accuracy of its billed charges. *See, e.g., Annual 1987 Access Tariff Filings*, 2 FCC Rcd. 280, 299 (1986) (under the FCC's access charge system "it is incumbent upon the [carrier] to charge properly and therefore to demonstrate to their customers that these charges are accurate"); *see also, e.g., AT&T Corp. v. Alpine*, 27 FCC Rcd. 16606, n.79 (2012) ("As the carrier attempting to enforce the terms of its tariff in the underlying litigation, [the local carrier], not AT&T, bears the burden of proving that it complied with its tariff"). Moreover, Level 3's tariff specifically states that a "[c]ustomer may dispute a bill in good faith." Tr. Ex. A-3, at § 4.9. When a customer disputes a bill, it may also "withhold[] disputed amounts" while Level 3 "investigate[s] the merits of the dispute." *Id.* In other words, Level 3's tariff essentially provides an affirmative defense to a breach of tariff claim. *Cf. MCI Worldcom Network Servs., Inc. v. Paetec Commc'ns, Inc.*, 204 F. App'x 271, 272 (4th Cir. 2006).

Because no fact discovery was conducted on "other disputes" nor were such disputes raised by the pleadings, trial in this case narrowly (and rightly) focused on the damages Level 3 could recover under its breach of contract claim. Thus AT&T never mounted a full defense that its withholdings for non-OTT switched access services were justified.[9] Nonetheless, the evidence AT&T presented shows it acted pursuant to Level 3's tariff by disputing bills and withholding disputed amounts in good faith. Tr. Ex. 79 (showing dispute due to "fluctuation in the ratio of Local Switching to Tandem Switching MOUs");[10] Tr. Ex. 84 (detailing back-billing dispute); Tr.

---

[9] To be clear, AT&T's withholdings are justified, and it does not concede that Level 3 met its initial burden of showing all the elements of a breach of tariff claim.

[10] AT&T was prepared to offer evidence of additional dispute notices, *see* Tr. Exs. 78, 80–81, but the Court indicated that doing so was unnecessary as the Court did not "know why you need to put the other[] [dispute notifications] in the record." *See* Ex. 2, at 201:18–202:5.

Ex. 95 (detailing dispute over "Transport Rate Mileage indicator").  Exhibit 85 (to which the Court sustained Level 3's objection) would have established that Level 3 did not bill in accordance with its tariff and, had the Parties tried a breach of tariff claim, would have been admissible.

Level 3 does not contend, nor did it present proof at trial, that these other disputes were unjustified or were otherwise illegitimate.  In fact, Level 3 effectively concedes their validity.  *See* Mot., at 3–4, 17 (not contesting the validity of AT&T Exhibits 79, 84, or 95, but rather, stressing that those exhibits do not account for disputes arising before March 2020); *see also* Ex. 3, at 47:1–18 (same) (Level 3 Closing Argument).  Instead, Level 3 argues that the "only reason AT&T gave for withholding payments on tariff charges before March 2020 . . . was the mechanized payment process."  Mot., at 17.  But that contention underscores that the Parties did not, in fact, try the issue of whether AT&T's non-end-office withholdings were "justified" or "legitimate" in the first place.  *See, e.g.*, Mot., at 7, 14.  Had the Parties *actually* tried a breach of tariff claim, AT&T would have offered additional evidence and testimony—including evidence derived from a discovery process that never happened—to show that it disputed Level 3's bills for all other, non-OTT switched access services in good faith and its withholdings were justified both before and after March 2020.

In that regard, the testimony at trial showed that the Parties have had a longstanding dispute regarding Level 3's billing practice of including third-party tandem charges on its bills for end-office charges, which makes it more difficult for AT&T's bill payment system to validate Level 3's billing.  AT&T presented this evidence to rebut Level 3's assertions that all withholdings initiated by AT&T's mechanized payment system were associated with the OTT Dispute and were properly recoverable on Level 3's breach of contract claim.  At no point, did any Party ask the

Court to determine liability with regards to any withholdings resulting from this issue, and any such liability determination would have required discovery and trial testimony that did not occur.

In short, Level 3's Motion further illustrates what was apparent at trial: Level 3 thinks it can unilaterally decide which disputes and withholdings are valid and which are not. *See* Ex. 1, at 52:17–53:4 (noting addition of new dispute two days before trial) (AT&T Opening Statement). Now, without giving AT&T an opportunity to mount a full defense, Level 3 points to a theory it hatched during its closing argument and asserts it has "overwhelmingly established" a breach of tariff claim that was impliedly tried by the Parties. Mot., at 17. For all the reasons set forth, Level 3 is wrong and its Motion should be denied.

## CONCLUSION

For the foregoing reasons, Level 3's Motion should be denied.

Respectfully submitted this 18th day of August, 2021.

By: /s/ Rebecca B. DeCook

Michael J. Hunseder
Michael D. Warden
Justin A. Benson
Joshua W. Moore
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
mhunseder@sidley.com
mwarden@sidley.com
jbenson@sidley.com
joshua.moore@sidley.com

*Attorneys for Plaintiff AT&T Corp. and
Counterclaim Defendant Teleport
Communications Group*

Rebecca B. DeCook
Andrew T. Flynn
Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1027
becky.decook@moyewhite.com
andrew.flynn@moyewhite.com

Angela C. Zambrano
SIDLEY AUSTIN LLP
2021 McKinney Avenue
Suite 2000
Dallas, TX 75201
Telephone: (214) 981-3300
angela.zambrano@sidley.com

## CERTIFICATE OF SERVICE

I, Rebecca B. DeCook, hereby certify that on August 18, 2021 I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system which will send notification of such

filing to the following:

Charles W. Steese, #26924
Douglas N. Marsh, #45964
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
Email: csteese@armstrongteasdale.com
Email: dmarsh@armstrongteasdale.com

*Attorneys for Defendant Level 3*
*Communications, LLC*

/s/ Rebecca B. DeCook
Rebecca B. DeCook
Moye White LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1027
becky.decook@moyewhite.com

*Attorney for Plaintiff AT&T Corp. and*
*Counterclaim Defendant Teleport*
*Communications Group*