# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-RM-MEH

AT&T CORP.,

    Plaintiff,

v.

LEVEL 3 COMMUNICATIONS, LLC,

    Defendant.

**AT&T CORP.'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

    Plaintiff AT&T Corp. ("AT&T"), pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, hereby requests that Defendant Level 3 Communications LLC ("Level 3") produce, in accordance with the Definitions and Instructions set forth below, the Documents specified in this Second Request for Production of Documents (the "Request").

## **DEFINITIONS**

    For purposes of this Request, the following definitions shall apply:

    1.    The term "AT&T" means Plaintiff AT&T Corp. together with all subsidiaries, divisions, predecessors or successors-in-interest, officers, directors, employees, agents, contractors, subcontractors, consultants, team members and other Persons controlled by or acting on behalf of AT&T.

    2.    The term "Level 3" means Defendant Level 3 Communications LLC, together with all subsidiaries, divisions, predecessors or successors-in-interest, affiliates, parents, shareholders, owners, investors, officers, directors, employees, agents, contractors, subcontractors, prospective

1

subcontractors known to Level 3, consultants, team members, attorneys and other Persons controlled by or acting on behalf of Level 3. For purposes of these Requests, the term "Level 3" shall include any affiliated entities that provide local exchange service, pursuant to tariffs filed with the Federal Communications Commission and/or a state regulatory agency, and shall include any local exchange carrier ("LEC") affiliates, including the LEC affiliates of CenturyLink, Inc.

3. The term "Action" means the above-captioned litigation filed by AT&T in the United States District Court for the District of Colorado.

4. The term "Initial Disclosures" means Level 3's Initial Disclosures, dated and served on AT&T on or about April 2, 2018.

5. The term "AT&T's First Set of Interrogatories to Level 3" shall mean AT&T's First Set of Interrogatories to Level 3 served on Level 3 on or about June 11, 2018.

6. The term "Amended Counterclaims" shall mean the Counterclaims filed by Level 3 on March 15, 2018, and docketed as Doc. No. 38, and as thereafter amended.

7. The term "Communication" means the transmittal, whether oral, written, or through electronic means, of information in the form of facts, ideas, inquiries or otherwise.

8. The terms "Document" and "Documents" shall mean any written or graphic matter or other means of preserving thought or expression and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including but not limited to, data, correspondence, memoranda, notes, messages, letters, electronic mail, telegrams, teletype, telefax, bulletins, meetings or other communications, interoffice and intraoffice telephone calls, diaries, minutes, books, reports, studies, summaries, pamphlets,

bulletins, printed matter, charts, ledgers, invoices, worksheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, magazine or newspaper articles, releases (and any and all drafts, alterations, modifications, changes and amendments of any of the foregoing), graphic or aural records or representations of any kind (including without limitation photographs, microfiche, microfilm, videotape, records and motion pictures) and electronic, mechanical or electric records or representations of any kind (including without limitation tapes, cassettes, discs and records and information stored on computers such as system backups). The phrase "all Documents" shall mean every Document or group of Documents, as defined above, that are known to you or that can be located or discovered by reasonably diligent efforts.

9. The term "Identify" with respect to Persons means to give, to the extent known, the Person's full name, present or last known address and telephone number, and when referring to a natural Person, additionally, the present or last known place of employment and email address.

10. The term "Identify" with respect to Documents means to state or give, to the extent known, the (a) type of Document; (b) general subject matter; (c) date of the Document; and (d) author(s), addressee(s), and recipient(s).

11. The term "Person" is defined as any natural Person or any business, legal or governmental agency, entity, or association.

12. The terms "refer," "referring," "relating to" or "relate to" shall mean to make a statement about, discuss, disclose, confirm, support, describe, reflect, constitute, identify, deal with, consist of, establish, comprise, list, evidence, substantiate or in any way pertain, in whole or in part, to the subject.

13. The terms "you" and "your" refer to Level 3, as defined herein.

14. The phrase "Settlement Agreement" refers to the Release and Settlement Agreement entered into by AT&T and Level 3, which became effective on May 27, 2015.

15. The term "including" is used in its broadest sense and shall mean including without limitation. "Including" should not be read to restrict or limit the scope of a particular Document Request in any way. Rather, it provides an example of a responsive Document or category of responsive Documents.

16. The terms "all" and "each" shall be construed as both all and each.

17. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

18. The use of the singular form of any word includes the plural and vice versa.

19. The phrase "over-the-top VoIP calls" means voice telephone calls delivered using "over-the-top" Voice over Internet Protocol technology, and includes the services described as "over-the-top voice over Internet protocol" services in the Settlement Agreement.

20. "D.C. Circuit Proceeding" means the proceeding before the United States Court of Appeals for the District of Columbia Circuit, entitled *AT&T Corp. v. Federal Communications Commission*, No. 15-1059, including the decision issued on November 18, 2016 and reported at 841 F.3d 1047 (D.C. Cir. 2016).

21. The term "Refund" refers to any payment by Level 3 contemplated by Section 1(a)(iv) of the parties' Settlement Agreement.

22. The phrase "Petition for Declaratory Ruling" means the Petition of CenturyLink for a Declaratory Ruling filed on or about May 11, 2018, with the Federal Communications Commission in WC Docket No. 10-90 and CC Docket No. 01-92.

23. The phrase "Over-The-Top VoIP Calling Provider" means any entity that exchanged any over-the-top VoIP calls with Level 3.

24. The term "call detail" and/or "call detail record" means a record possessed by Level 3 that documents the details of telephone calls, including but not limited to over-the-top VoIP calls, that passes through any Level 3 facility. In case of any ambiguity, the terms "call detail" and/or call detail record" have the same meaning as in Level 3's Tariff F.C.C. No. 4, for example, Sections 3.4.1.1., 3.4.10 and 13.6.

## INSTRUCTIONS

1. Each request for Documents seeks production of all Documents described therein and all attachments to such Documents, and any file or other folders in which such Documents are stored or filed in the ordinary course of business, that are in your possession, custody or control.

2. If Documents are maintained in a manner that indicated the Person who created and/or has administrative control over particular Documents, indicate the Person who is the custodian of the Document and, if known, the originator of that Document.

3. In answering these Requests, please restate each Request in full before stating your response thereto.

4. If a Request cannot be responded to in full, respond to the extent possible, specify the reason for your inability to respond to the remainder, and produce all Documents regarding the responded-to portion.

5. In construing these Requests, (i) masculine, feminine or neuter pronouns shall not exclude other genders, (ii) the present tense includes the past and future tenses, and (iii) the past tense includes the present and future tenses, so as to bring within the scope of these Requests any Documents that might otherwise be construed to be outside their Scope.

6. If you are withholding a Document under claim of privilege (including the work product doctrine), please provide the information set forth in Fed. R. Civ. P. 26(b)(5) and any additional information required under the District of Colorado Local Rules, the Court's Scheduling Order, the applicable Civil Practice Standards, including but not limited to, the type of Document, the general subject matter of the Document, the date of the Document, and such other information as is sufficient to identify the Document, including where appropriate, the author(s), addressee(s), custodian(s), and any other recipient(s) of the Document, and, where not apparent, the relationship of the author(s), addressee(s), custodian(s) and any other recipient(s) to each other, in a manner that, without revealing the information claimed to be protected, will enable AT&T to assess the applicability of the privilege or protection claimed by you.

7. When a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a Document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a Document has been redacted or altered in any fashion, identify as to each Document the reason for the redaction or alteration, and the date of the redaction or alteration. Any redaction must be clearly visible on the redacted Document.

8. For each Document responsive to a Request that is withheld on grounds other than privilege, state in detail the basis for the failure to produce the Document.

9. You shall either (a) organize and segregate the Documents you produce according to the specific numbered Requests listed below to which the Documents are primarily responsive, or (b) produce the Documents in the order they are kept in the normal course of business in your files; but in either case, you shall identify the source of each Document.

10. You shall produce all Documents requested below that are within your custody or control, including Documents within the custody or control of your present or former accountants, attorneys, representatives, consultants, contractors, agents, employees, investigators, or anyone else acting on your behalf.

11. These Requests shall be deemed continuing, so as to require further and supplemental production if additional Documents called for by these Requests are obtained between the time of initial production and the time of trial.

12. If no Documents are or will be produced in response to any specific Request, please so indicate in the response.

13. You do not need to produce duplicate Documents from the same file. However, to the extent that different files (e.g., the working files of different employees, or storage files of different office locations) have duplicate versions of the same Document, you should produce duplicate versions so as to demonstrate the presence of the Document in each of those files.

14. If any Document has been destroyed and would have provided information responsive to these Requests, please identify such Document and state the circumstances of the destruction of each such Document, including the identity of the Person who actually destroyed

the Document, the identity of any Person who ordered or directed its destruction, the date and location of its destruction, and any policy or procedure which you contend relates to, allows, compels, or explains such destruction.

15. Unless otherwise indicated, these Requests cover Documents dated, created, modified, distributed, sent or received on or after January 1, 2014 and continuing through and including the date on which Level 3 responds to these Requests (the "Relevant Period").

16. You must serve a written answer or objection to each Request within thirty days after service of the Request.

## REQUESTS FOR PRODUCTION

25. Produce all documents and communications, including all call detail records, that Level 3 used or examined in creating the spreadsheets Level 3 produced in this litigation with the production number CTL_0008413 or CTL_0003829. This request includes but is not limited to the call detail records that Level 3 used or examined to measure the traffic volumes in the four months studied, July 2015, January 2016, July 2016, and January 2017.

26. Produce all documents and communications, including all call detail records, that Level 3 used or examined in reviewing or analyzing the volumes or percentage of over-the-top VoIP calls that Level 3 exchanged with AT&T, including but not limited to the "detailed analysis" described by Edwin Stocker in the email with production number CTL_0014078, the "detailed OTT analysis" described by Shaun Andrews in the email with production number ATT_PROD_0010915, the "analysis" referred to by Andrew McClure in the email with production number CTL_0008305, or the "OTT analysis" described by Jennifer Torres in the email with

8

production number ATT_PROD_0005865.  This request includes any documents, communications, or analysis on the over-the-top VoIP calls performed by Level 3 in 2018 or 2019.

27. Produce call detail records for switched access traffic exchanged between Level 3 and AT&T for the months of July, 2017; January 2018; April, 2018, July 2018, October, 2018, and January 2019.

28. Produce all documents relating to Level 3's allegations in its Amended Counterclaims that it paid AT&T end office switching access charges on over-the-top calls.

29. Produce all documents relating to Level 3's analysis, review, or investigation of the end office switching charges on over-the-top calls billed by AT&T or any AT&T affiliate.

30. Produce documents sufficient to show the volume of switched access charges, by rate element, billed by AT&T or any AT&T affiliate to Level 3.

31. Produce all documents relating to Level 3's alleged damages in its Amended Counterclaims, including but not limited to the amount of end office switching charges that Level 3 alleges it has been overcharged by AT&T or any AT&T affiliate.

Dated: February 26, 2019

Respectfully Submitted,

/s/ Michael J. Hunseder
Rebecca B. DeCook, #14590
Andrew T. Flynn, #43843
MOYE WHITE LLP
1400 16th Street, 6th Floor
Denver, Colorado 80202-1027
Telephone: (303) 292-2900
E-mail: becky.decook@moyewhite.com
E-mail: andrew.flynn@moyewhite.com

Michael D. Warden
Michael J. Hunseder
Justin A. Benson
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
E-mail: mwarden@sidley.com
E-mail: mhunseder@sidley.com
E-mail: jbenson@sidley.com

*Attorneys for Plaintiff AT&T Corp.*

10

## CERTIFICATE OF SERVICE

I, Justin A. Benson, hereby certify that on February 26, 2019, I served the foregoing document upon the following via email and U.S. mail:

Charles W. Steese, #26924
Douglas N. Marsh, #45964
Martin J. Estevao, #46260
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
Email: csteese@armstrongteasdale.com
Email: dmarsh@armstrongteasdale.com
Email: mestevao@armstrongteasdale.com

*Attorneys for Defendant Level 3 Communications, LLC*

/s/ Justin A. Benson
Justin A. Benson
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
E-mail: jbenson@sidley.com

*Attorney for Plaintiff AT&T Corp.*

11