# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00112-RM-MEH

AT&T CORPORATION,

    Plaintiff/Counterclaim Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC,

    Defendant/Counterclaimant,

and

BROADWING COMMUNICATIONS, LLC, GLOBAL CROSSING TELECOMMUNICATIONS, INC., and WILTEL COMMUNICATIONS, LLC

    Counterclaimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.,

    Counterclaim Defendant.

## LEVEL 3'S REPLY IN SUPPORT OF ITS MOTION TO AMEND THE PLEADINGS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(b)

Level 3 proved that all usage charges AT&T withheld before February 2020 were due to the OTT Dispute. First, AT&T withheld payment on 65% of end office charges. Second, AT&T modified its mechanized payment process in August 2017—a direct result of its intent to withhold payment under the OTT Dispute—causing AT&T to withhold over $2.8 million more for no legitimate reason. All these damages are recoverable due to AT&T's breach of the Settlement Agreement, and the Court should award Level 3 all its requested damages for this reason alone.

AT&T claims otherwise, stating that its mechanized withholding was separate from the OTT Dispute and that Level 3 should have brought a separate breach of tariff claim to recover these additional dollars—which, as the evidence shows and as AT&T admits, were withheld for no legitimate reason. Even if that were true, the Court should amend the pleadings to conform to the evidence, add a breach of tariff claim, and once again award Level all its requested damages.

The Court can amend the Complaint under Rules 15(b)(1) and (2). Under Rule 15(b)(2), amendment is mandatory because AT&T consented to try the issue in at least two different ways. First, AT&T consented to trying its mechanized payment process by making it the centerpiece of its defense. In doing so, AT&T admitted that Level 3's billing format caused AT&T's mechanized process to withhold millions too much. Second, AT&T consented to trying its mechanized payment process by failing to correct its inaccurate damages disclosures. Level 3's expert damages disclosures made plain that Level 3 intended recover all of AT&T's withholdings other than those due to the DEOT dispute. In May 2020, AT&T took issue with aspects of Level 3's damages disclosure, but never claimed that damages should be limited to 65% of end office withholdings. By failing to disclose any other area of disagreement it had with Level 3's damages calculations, AT&T made a conscious choice to include these withheld dollars in the dispute.

Nor can AT&T claim prejudice. For years, AT&T has known that its mechanized system over-withheld millions from Level 3 any time there was an end office dispute. Information about why its process over-withheld was solely in AT&T's possession; Level 3 has no documents to explain AT&T's conduct. AT&T should have disclosed this information years ago as part of the tariff dispute resolution process, and it had an obligation to disclose his information in this lawsuit. AT&T did neither. Thus, unsurprisingly, nowhere in AT&T's Response does it identify any

2

reasons why additional discovery would have been required, or even useful, if this action included a breach of tariff claim. In other words, additional discovery would not have helped AT&T.

The only party who suffered prejudice from AT&T's concealment was Level 3. AT&T affirmatively represented in May 2020 that it took no issue with the scope of Level 3's damages, only to change course in April 2021 (after losing summary judgment on liability), when AT&T first contended that it considered part of Level 3's damages to be outside the scope of the claims. This tactic prevented Level 3 from discovering information about why AT&T withheld what it withheld prior to trial, and, unless recovery occurs in this lawsuit, may place hundreds of thousands of dollars outside of the applicable limitations period. For AT&T to claim that *it* is the victim here is patently false.

By inserting the mechanized payment process into this case, AT&T consented to these withholdings issues being tried. Amendment will allow the Court to resolve the entire dispute on its merits—including, in particular, Level 3's right to recover damages that have been part of this action long before trial commenced. The Court should grant Level 3's Motion, amend the pleadings to include a claim for breach of tariff, and find AT&T liable for all damages Level 3 seeks—whether as damages for AT&T's breach of contract, its breach of tariff, or both.[1]

**I.   AMENDMENT IS REQUIRED UNDER RULE 15(b)(2) BECAUSE AT&T CONSENTED TO TRY THE ISSUE OF WHETHER THERE WERE ANY JUSTIFIABLE BASES FOR AT&T'S**

---

[1] AT&T suggests that "Level 3 all but abandons the theories of causation and damages in its pleaded breach of contract counterclaim." ECF No. 284 at 2. This is absolutely baseless, as it ignores repeated statements that Level 3's claims as pled entitle it to an award of all damages sought. *See, e.g.*, ECF No. 283 at 2 ("The evidence shows that all damages Level 3 seeks arise from AT&T's breach of the Settlement Agreement, and Level 3 is entitled to recover all these damages under the claims as pled."), at 3 ("Level 3 has proven its right to recover all damages under the claims as pled"), and at 9 ("Level 3 asks that the Court find AT&T breached both the Settlement Agreement and the Tariff, and on either or both bases award Level 3 all its damages.").

### WITHHOLDINGS OTHER THAN THE OTT DISPUTE.

As noted in the Motion, a party "impliedly consents to the trial of an issue not contained within the pleadings" in either of two ways: "by introducing evidence on the new issue," or "by failing to object when the opposing party introduces such evidence." ECF No. 283 at 9–10 (quoting *Eller v. Trans Union, LLC*, 739 F.3d 467, 479 (10th Cir. 2013)). Both happened here.

Though AT&T claims it withheld the pre-February 2020 charges for reasons unrelated to the OTT Dispute—i.e., due to its mechanized payment system—AT&T's own witnesses acknowledged that this mechanized process withheld charges for no legitimate reason. AT&T extensively questioned its witness, Alison Miller, on how its mechanized payment system withheld payment from Level 3; it was truly the centerpiece of AT&T's defense. But as Ms. Miller testified, this mechanized process would withhold charges even if those charges were "totally legitimate," "without having a legitimate basis for withholding a dispute," simply because the tandem to end office ratios were not what AT&T expected from other carriers. ECF No. 283 at 7 (quoting Miller testimony). Thus, as Ms. Miller agreed, "there might be a host of dollars, thousands of dollars, hundreds of thousands of dollars[,] maybe even millions of dollars that AT&T has withheld and not paid simply because of its ratios in its system without having a legitimate reason for withholding a dispute." *Id.* Because AT&T withheld money from Level 3 for no legitimate reason, AT&T's massive over-withholdings violated both the tariff and the Settlement Agreement.[2]

Though AT&T now claims its presentation about the mechanized process "related to pleaded issues" (ECF No. 284 at 2), that is not what AT&T said before. In its trial brief, AT&T

---

[2] AT&T's mechanized process over-withheld so significantly because AT&T programmed it in August 2017 when it first started to withhold money for the OTT dispute. *See* ECF No. 283-2 at 26:4–10, 28:24–15. But for the OTT dispute, AT&T would not have withheld any of these monies.

4

claimed evidence on "AT&T's mechanized bill payment system" concerned "disputes" that "*are not in fact before the Court for resolution*." ECF No. 268 at 6 (emphasis added). AT&T considered the mechanized process to be beyond the scope of the pleadings; yet it not only raised the issue, but presented it as its core defense. Nor did AT&T raise any objection when Level 3 questioned Ms. Miller on whether its automatic mechanized withholding withheld money for legitimate reasons. *See* ECF No. 283-2 at 58–63. Both by introducing evidence on this issue and by failing to object when Level 3 introduced evidence on the issue, AT&T consented to it being tried.

AT&T tries to cast its presentation of these issues as mere "rebuttal" of Level 3's claims. ECF No. 284 at 3. In fact, AT&T now recognizes that these issues were "raised by the pleadings" after all—just as Level 3 has contended all along. ECF No. 284 at 12. It is impossible to square AT&T's recent change of course with its prior position that these issues were not before the Court in the first place. If the mechanized payment process (and Level 3's questions on whether that process withheld charges for legitimate reasons) were "raised by the pleadings," then Level 3's damages necessarily include those withholdings, as Level 3 has claimed from the beginning. But if this showing was not necessary for rebuttal, and the other disputes were "not in fact before the Court for resolution" as AT&T proclaimed in is trial brief (ECF No. 268 at 6), then AT&T should have objected to their presentation. Instead, it affirmatively raised the mechanized process as a basis for the additional $2.8 plus million in withholdings, and did not object when Level 3 asked questions on whether it withheld these monies for legitimate reasons. One way or the other, these withholdings, and whether there was a legitimate basis for them, have been placed at issue.

AT&T asserts that it tried to exclude evidence "unrelated to damages for end-office switching" in its *limine* motions. ECF No. 284 at 3. But any objections AT&T raised *before* trial

5

have no bearing on its failure to raise objections *at* trial. It is typical to resolve evidence-driven admissibility questions at trial rather than by a *limine* motion. *See, e.g.*, *Gallardo ex rel. Gallardo v. United States*, No. 10-CV-00868-PAB-CBS, 2012 WL 694390, at *1 (D. Colo. Mar. 1, 2012) ("[m]otions in limine are discouraged when the motion is evidence driven and cannot be resolved until evidence is presented at trial."); *Ward v. Express Messenger Sys., Inc.*, No. 17-CV-2005-NYW, 2020 WL 6828105, at *3 (D. Colo. July 21, 2020) (the "better practice is to wait until trial to rule on objections when admissibility substantially depends upon what facts may be developed there"). The Court's decision not to preclude evidence *before* trial does not excuse AT&T's failure to raise objections *during* trial. Level 3's questions to Ms. Miller *during* trial directly addressed whether AT&T's mechanized process withheld money for legitimate reasons. AT&T raised no objections to these questions. It therefore consented to that being tried. *See Green Country Food Mkt., Inc. v. Bottling Grp., LLC*, 371 F.3d 1275, 1280 (10th Cir. 2004) ("A party impliedly consents to the trial of an issue not contained within the pleadings either by introducing evidence on the new issue or by failing to object when the opposing party introduces such evidence.").

It is indisputable that the mechanized payment process over-withheld money from Level 3 that AT&T should have been paying each month. Not only did Alison Miller admit it, but the facts from 2017 confirm it. In 2017, the parties experienced another end office dispute—the LRN/CPN dispute. Then, AT&T asserted that Level 3 could not assess end office charges on calls not associated with a Level 3 telephone number. The parties agreed that Level 3 had assessed $7.7 million in end office charges on calls not associated with a Level 3 telephone number. Ex. A-18. Yet AT&T's mechanized process had withheld $11.756 million—$4.056 million too much. *Id.* AT&T recognized that the mechanized process withheld "above the current dispute value" (*see*

Tr. Exs. A-7, A-8, A-18), and credited Level 3 all these over-withholdings. Ex. A-18. Thus, AT&T recognized that every penny of the $4.056 million it over-withheld should not have been withheld. Moreover, the ratio of what AT&T over-withheld in 2017 matches almost exactly to what AT&T over-withheld for the OTT dispute. *See* Tr. Ex. A-56. Then, as now, AT&T's mechanized system caused it to over-withhold when disputing end office charges. Then, as now, AT&T admits that the excessive mechanized withholding was unjustified. That is why AT&T credited Level 3 for the over-withholding then. That is why the Court should mandate 100% recovery now.

AT&T suggests that it was precluded from presenting evidence that would have shown the withholding was justified—specifically, its proposed Exhibits 78 and 85—"[a]s a result of Level 3's objections and the Court's rulings." ECF No. 284 at 9. That misconstrues both the objections and the rulings. When Level 3 objected to Exhibit 78 (because the evidence had been disclosed "less than two weeks ago and not disclosed in discovery," ECF No. 283-2 at 51:13–18), the Court excluded it not on grounds of relevance, but because it was cumulative. *Id.* at 52:4–5 ("You got one in the record, I don't—I don't know why you need to put the others in the record."). Even AT&T agreed Exhibit 78 would have added nothing that was not already on the record. *Id.* at 52:1–3. As for Exhibit 85, AT&T asserts that it would be somehow relevant to a breach of tariff claim (*see* ECF No. 284 at 9), but does not even try to explain how that could have been true. In any event, Level 3 did not object to this exhibit on grounds of relevance either; it objected because the exhibit "was literally disclosed Friday, last week," and was "another analysis that is done for purpose of this litigation" by a witness who had not been properly disclosed as an expert. ECF No. 283-2 at 54:25–55:3. The Court sustained that objection just as it said it would do when it granted Level 3's *limine* motion to preclude AT&T from presenting expert testimony.

7

These exhibits—precluded because they were either cumulative or inadmissible—are the only ones AT&T tries to argue might have shown a justifiable basis for the pre-February 2020 withholdings. There is a reason AT&T can find no others. If AT&T had an actual basis for withholdings, Level 3's tariff required AT&T to contemporaneously disclose, identify, and explain that basis. *See* Tr. Ex. A-3, § 4.9(2). As shown at trial, AT&T failed to raise any other disputes when it withheld payment. AT&T can point to no other documents because there are none. This is another fatal arrow straight to the heart of AT&T's core defense.

That is also why AT&T's suggestion that "no Party ever asked the Court to rule on the merits of these other disputes" (ECF No. 284 at 3) is meaningless. This mechanized payment "dispute" is not like, for example, the OTT dispute, where the Court had to adjudicate a disagreement among the parties over whether specific charges could or could not have been charged. With the mechanized system issue, AT&T's own witness acknowledges that AT&T's mechanized payment process—the only factor that in any way contributes to the difference between the parties' damages calculation—would withhold legitimate charges and for no legitimate reason. Thus, by AT&T's own admission, before February 2020 the sole explanation AT&T identified for the difference between the parties' damages gave AT&T no right to withhold the charges. The Court does not need to decide whose view of this "dispute" is correct; AT&T has already shown that its withholding was not justified.

AT&T's decision to make the mechanized process the centerpiece of its defense is enough—in and of itself—to mandate the amendment under Rule 15(b)(2). The "test of consent" is easily satisfied on this basis alone: by presenting the issue itself, AT&T "had a fair opportunity to defend" and "could have presented [any] additional evidence" it might have had. ECF No. 283

8

at 10 (quoting *Suiter v. Mitchell Motor Coach Sales, Inc.*, 151 F.3d 1275, 1279 (10th Cir. 1998)).

But that is not all: AT&T consented to trying the full dollars Level 3 placed in dispute more than a year before trial. Level 3's expert disclosures—served in March 2020—made plain that Level 3 considered all charges AT&T withheld, except those attributable to one specific non-OTT dispute (e.g., DEOT), to be within the scope of its damages claim. ECF No. 284 at 4–6; *see also* Tr. Ex. A-22 at 3–4 (calculating damages associated with OTT dispute by subtracting DEOT dispute from all other withholdings). This shows AT&T's claim that "Level 3 changed its causation and damages theories" after the Court's summary judgment ruling (ECF No. 284 at 6) to be sheer fiction. AT&T has long known, and repeatedly acknowledged, that Level 3 intended to argue that it was entitled to payment on all non-DEOT withholdings. *See*, *e.g.*, ECF No. 268 at 4–5 ("Level 3 thus contends it can recover under Count I *any* charges AT&T withheld for *any* reason"); ECF No. 284 at 11 ("During both pretrial and trial, Level 3 interpreted the causation and damages elements of its breach of contract claim to allow recovery of all amounts allegedly withheld by AT&T. Indeed, Level 3 was explicit pre-trial.").[3]

Despite clear notice of what Level 3 included in its damages, AT&T took no issue with how Level construed the scope of its damages until the eve of trial. In its May 2020 "supplemental disclosure," AT&T listed all the "areas of disagreement" with Level 3's damages disclosures. AT&T never mentioned any other disputes as the basis for some of Level 3's damages calculations,

---

[3] Level 3 added an additional dispute before trial, but that dispute was first raised in February 2021, almost a year after the parties exchanged expert disclosures. *See* ECF No. 284-2 at 12:3–15:6; Tr. Ex. 84. AT&T's witness Kim Meola admitted AT&T does not "claw back" payments—meaning, the date a dispute is raised is the first date on which there could have been any withholdings. Thus, no dispute first raised in 2021 would have impacted withholdings before February 2020.

or otherwise claimed that Level 3's damages must be limited to end office charges. Tr. Exs. 10, 13; *see also* ECF No. 283-3 at 16:17–23 (agreeing that "there is nothing in this disclosure saying that AT&T believes there are additional disputes between AT&T and Level 3, that should be taken into account in this damage analysis"). Tellingly, AT&T's Response brief, though it includes a lengthy description of the discovery process, does not mention this point at all. Moreover, Ms. Miller testified that while she did not know AT&T had failed to inform Level 3 that it was attempting to limit damages to a percentage of end office switching, she was "aware, during this entire time reviewing OTT information, the percentages and applications have always been applied to end office billing." *See, e.g.*, ECF No. 283-3 at 21:17–22:3.

If AT&T intended to raise this point in defense at trial, then its affirmative representation that it took no issue with the scope of Level 3's damages calculations was materially false. AT&T was required to "supplement or correct its disclosure" once it "learn[ed] that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). A party that violates this rule is not "allowed to use [the violative] information or witness to supply evidence on a motion, at a hearing, or at trial." *Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, No. 10-CV-02516-WJM-KLM, 2014 WL 2933189, at *2 (D. Colo. June 30, 2014) (quoting Fed. R. Civ. P. 37(c)(1)). AT&T did not correct its disclosure until April 2021, almost a year later and just before trial began, when it first announced that it considered these other withholdings to be beyond the scope of Level 3's claim. Tr. Ex. 17. By representing that there were no areas of disagreement other than those identified in its disclosure, AT&T made a conscious choice not to challenge the withholdings Level 3 included in its damages claim. AT&T knew this would be an issue at trial. It had every opportunity to prepare accordingly.

To the extent the parties did not conduct discovery on this point, it was because AT&T concealed its true intention, preventing Level 3 from conducting discovery on the reasons why AT&T withheld these charges that could have led to Level 3 bringing a separate breach of tariff claim to avoid statute of limitations challenges. It is Level 3, not AT&T, that is threatened with prejudice here. AT&T cannot be heard to complain about being forced to sleep in the bed it made for itself. It was long aware of the fact that Level 3 intended to seek all of these damages, and said nothing. If AT&T believed these issues to be beyond the scope of the pleaded claims, Rule 26 required AT&T to say so at that time when Level 3 could have responded accordingly. AT&T's failure to correct its misleading disclosures until the eve of trial not only violates the discovery rules, but also shows that AT&T had a fair opportunity to defend. This once again satisfies the "test of consent" (*Suiter*, 151 F.3d at 1279).

In sum, AT&T consented to placing the mechanized payment process at issue in two separate ways: first, by making it its primary defense (though the evidence overwhelmingly shows that its over-withholdings are not legitimate); and second, by affirmatively representing that it took no issue with the scope of Level 3's damages calculations. Where a party consents to trying an issue, amendment under Rule 15(b)(2) is mandatory. The Court therefore must allow amendment to include a breach of tariff claim.

## II. THE COURT SHOULD ALLOW AMENDMENT UNDER RULE 15(B)(1) TO ALLOW RESOLUTION ON THE MERITS.

Amendment is also appropriate under Rule 15(b)(1). AT&T claims that Rule 15(b)(1) "allows amendment only during 'trial'" and thus is "simply inapplicable" after trial. ECF No. 284 at 2. That is incorrect. As case after case in this Circuit shows, Rule 15(b)(1) allows amendment both during *and* after trial. *See*, *e.g.*, *Denbury Onshore, LLC v. Christensen*, No. 14-CV-19-ABJ,

11

2015 WL 11023559, at *4 (D. Wyo. May 11, 2015) ("Rule 15(b)(1) applies during and after trial"); *In re Pixius Commc'ns LLC*, No. 19-11749-11, 2021 WL 1045173, at *3 (Bankr. D. Kan. Feb. 1, 2021) ("Rule 15(b)(1) even permits amendment of a complaint during and after trial"); *Chavez v. Stomp*, No. CV 10-205 JCH/ACT, 2014 WL 12798375, at *23 (D.N.M. Jan. 16, 2014) (Rule 15(b)(1) allows amendment "during—or even after trial").

AT&T argues that *New Mexico v. Dep't of Interior*, 854 F.3d 1207, 1232 (10th Cir. 2017), shows that Rule 15(b)(1) applies "only 'during' trial." ECF No. 284 at 11. The case does not stand for this proposition. *New Mexico* held that Rule 15(b) "permits amendment *during or after trial* to conform to the evidence *via two mechanisms*" set forth in Rule 15(b)(1) and 15(b)(2)—explicitly stating that these "two mechanisms" can apply "during or after trial." 854 F.3d at 1231 (emphasis added). *New Mexico* even held that the "constructive amendment" process of Rule 15(b) "may also take place at the summary judgment stage"—*before* trial. *Id.* at 1232. Neither *New Mexico* nor any other authority of which Level 3 is aware limits Rule 15(b)(1)'s application to trial alone.

AT&T also ignores *New Mexico*'s instruction that "the court should liberally grant amendment [under Rule 15(b)(1)] unless the opposing party makes a sufficient showing of prejudice." *Id.* at 1232. The argument that the Rule applies only *at* trial is the only argument AT&T raises in the section of its Response addressing Rule 15(b)(1). Indeed, AT&T's Response does not even use the word "prejudice" except in a single conclusory sentence claiming, with no supporting argument, that "AT&T would be severely prejudiced if amendment were allowed." ECF No. 284.

At most, AT&T merely hints at the prejudice issue by suggesting that it "would have offered additional evidence and testimony . . . to show that it disputed Level 3's bills for all other, non-OTT switched access services in good faith and its withholdings were justified both before

and after March 2020." ECF No. 284 at 19. But as discussed above, any complaints about discovery is a problem of AT&T's own making. AT&T has known about its mechanized payment system's over-withholding since at least 2017, when the same thing happened in the context of the LRN-CPN dispute. *See* Tr. Exs. A-7, A-8, A-18. AT&T also knew it intended to raise the mechanized payment process as the primary basis its defense here. *See* ECF No. 283 at 15–16. Yet it concealed that intention, omitting any mention from its disclosures, which purportedly identified all the "areas of disagreement" with Level 3's damages disclosures (Tr. Exs. 10, 13), that AT&T believed there were additional disputes. *See also* ECF No. 283-3 at 16:17–23. Only after the Court issued its Order on Summary Judgment, leaving only the scope of Level 3's damages as an issue for trial, did AT&T reveal these additional areas of disagreement. Tr. Ex. 17. Had AT&T complied with its Rule 26 obligations, it would have identified these purported additional bases for the withholdings back in early 2020, and conducted any additional discovery it believed it needed. This also would have allowed Level 3 to bring breach of tariff claims without facing statute of limitations challenges. That is precisely what AT&T hopes to avoid.

It is also clear that additional discovery on the basis for AT&T's withholdings "both before and after March 2020" (ECF No. 284 at 19) would have changed nothing. For the period after March 2020, Level 3 accounted for AT&T's disputes, which is why the parties' damages numbers for that period align almost exactly. Yet AT&T continues to rely on disputes from this period, where the parties *agree* on the damages, to justify its withholdings from the *prior* period. *See* ECF No. 284 at 18–19 (citing to Tr. Ex. 79 (dispute dating January 2021); Tr. Ex. 84 (dispute dating February 2021); Tr. Ex. 95 (dispute dating March 2020)). Given the alignment of the parties' calculations for this later period, these later disputes add nothing of use here. What matters is the

13

period *before* March 2020, where the entirety of the difference between the parties' calculations lies with the mechanized process. For *that* period, AT&T showed the Court that the only "dispute" it raised was the mechanized process issue, which Ms. Miller admitted (and facts from 2017 verify) would withhold charges that were totally legitimate. Thus, the only "dispute" AT&T raised during this period did not justify any withholding. Nor did AT&T identify any other reasons for the withholdings, as the tariff required. No amount of discovery would allow AT&T to travel back in time and make up for that failure. For that reason, AT&T cannot make any showing of prejudice.

Rule 15(b)(1) permits the Court to resolve the parties' dispute on its merits and avoid the manifest injustice of allowing AT&T to keep millions of dollars of charges it was required by law to pay. AT&T cannot show any prejudice where the evidence conclusively established its failure to abide by the tariff's requirements. Indeed, the charges at issue have always been at issue; Level 3 has included them ever since it first calculated its damages. To include a breach of tariff claim will ensure that the Court can resolve the parties' disputes on their merits, just as the Rule intends. Amendment is therefore appropriate under Rule 15(b)(1) too.

### III.  AT&T BREACHED BOTH THE SETTLEMENT AGREEMENT AND TARIFF.

As noted in the Motion, a breach of tariff claim has only two elements: Level 3 must prove (1) that it operated under a federally filed tariff, and (2) that it provided service to AT&T pursuant to that tariff. *See* ECF No. 283 at 16 (citing *Verizon New York Inc. v. Global NAPS, Inc.*, 463 F. Supp. 2d 330, 345 (E.D.N.Y. 2006)). AT&T cites a different case stating the elements somewhat differently, but with no material difference. Under AT&T's formulation, the elements are "(1) that the [carrier] operated under a filed tariff; (2) that the [carrier] provided services to a customer under that tariff; and (3) that the [carrier] billed the customer for services provided under its tariffs at

14

rates listed in those same tariffs." ECF No. 284 at 17 (quoting *In re Core Commc'ns Inc.*, No. 17-00258, 2020 WL 1228667, at *2 (Bankr. D.D.C. March 12, 2020)).

AT&T admits to all these facts. It acknowledges that the charges Level 3 seeks are payment for tariffed access services as required under its federally filed interstate tariff. *See* ECF No. 262 at 5 (acknowledging that Level 3's damages calculations "start with" charges Level 3 "billed under its tariff") and at 7 (noting that Level 3 seeks to recover "damages for . . . tariffed access services"). The evidence also established that AT&T failed to follow the tariff's requirements for raising a proper dispute in the period before March 2020. *See* Tr. Ex. A-3 (Level 3 Tariff) § 4.9. And Ms. Miller acknowledged that AT&T would withhold charges for no legitimate reason. The evidence thus establishes that AT&T withheld payments on Level 3's tariffed charges without a legitimate basis and without following the tariff's dispute resolution procedures.

Level 3 operated under a filed tariff. It provided services under its tariff, and billed charges under its tariff for tariffed access services. AT&T failed to pay those charges, and failed to comply with the tariff's requirements to dispute those charges. Each element of the breach of tariff claim is established. Level 3 is entitled to recover the charges AT&T wrongfully withheld.

### IV. CONCLUSION

If the Court does not award Level 3 all damages it seeks on the merits of its breach of contract claim, or preclude AT&T's evidence and damages theories that are inconsistent with its prior disclosures, the Court should permit Level 3 to amend the pleadings to conform them to the evidence and address AT&T's breach of Level 3's Tariff. In doing so, the Court should permit Level 3 to recover all damages it seeks whether on the basis of AT&T's violation of the Settlement Agreement, its violation of the Tariff, or both.

Respectfully submitted this 1st day of September, 2021.

By: <u>/s/ Charles W. Steese</u>
Charles W. Steese, #26924
Douglas N. Marsh, #45964
Armstrong Teasdale LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
csteese@armstrongteasdale.com
dmarsh@armstrongteasdale.com

*Attorneys for Defendant/Counterclaimants Level 3 Communications, LLC, Broadwing Communications, LLC, Global Crossing Telecommunications, Inc., and WilTel Communications, LLC*

## CERTIFICATE OF SERVICE

I, Charles W. Steese, hereby certify that on September 1, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

> Rebecca B. DeCook
> Andrew T. Flynn
> Moye White LLP
> 1400 16th Street, 6th Floor
> Denver, CO 80202-1027
> becky.decook@moyewhite.com
> andrew.flynn@moyewhite.com
>
> Michael D. Warden
> Michael J. Hunseder
> Justin A. Benson
> Joshua W. Moore
> SIDLEY AUSTIN LLP
> 1501 K ST NW
> Washington, DC 20005
> Telephone: (202) 736-8000
> mwarden@sidley.com
> mhunseder@sidley.com
> jbenson@sidley.com
> joshua.moore@sidley.com
>
> *Attorneys for Plaintiff AT&T Corp.*

/s/ Charles W. Steese
Charles W. Steese
