IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Raymond P. Moore**

Civil Action No. 18-cv-00112-RM-MEH

AT&T CORP., a New York corporation,

      Plaintiff/Counterclaim Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC, a Delaware limited liability company,

      Defendant/Counterclaimant,

and

BROADWING COMMUNICATIONS, LLC,
GLOBAL CROSSING TELECOMMUNICATIONS, INC, and
WILTEL COMMUNICATIONS, LLC,

      Counterclaimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.,

      Counterclaim Defendant.

---

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDERS

---

This intercarrier compensation case proceeded to a three-day bench trial solely to determine the amount of damages incurred by Defendant Level 3 Communications, LLC ("Level 3") flowing from the breach of the parties' settlement agreement by Plaintiff AT&T Corp. ("AT&T"). Having heard the parties' testimony and considered the evidence presented

and the entire record, the Court makes the following findings of fact and conclusions of law,[1]

addresses two pending motions, and enters the following orders.

## I.       FINDINGS OF FACT

1.       For purposes of this case, AT&T is a provider of long-distance telephone services,

and Level 3 is a local telephone carrier.

2.       For years, Level 3 has provided switched access services to AT&T on

long-distance calls.  Level 3 bills AT&T different rates for different components of its switched

access services, which include end-office switching and tandem switching.

3.       The parties had a longstanding dispute about whether end-office charges were

appropriate on over-the-top Voice over Internet Protocol ("OTT VoIP") calls.  In February 2015,

the Federal Communications Commission ("FCC") ruled that end-office charges were allowed

on such calls.  *See Connect America Fund*, WC Docket No. 10-90 et al., CC Docket No. 01-92,

Declaratory Ruling, 30 FCC Rcd 1587, 1588, ¶ 2 (2015) ("OTT Declaratory Order").

4.       In May 2015, while an appeal of the OTT Declaratory Order was still pending, the

parties entered into a settlement agreement (the "2015 Agreement").

5.       With regard to the dispute over end-office charges on OTT VoIP calls, the

2015 Agreement contemplates three separate time periods: (1) the period preceding execution of

the agreement, (2) the period between execution of the agreement and the issuance of a "Final

Appellate Order" pertaining to the pending appeal, and (3) the period after such order.  (*See* ECF

No. 15-1 at 2-3.)

---

[1] The findings of fact include any conclusions of law that are deemed findings of fact, and vice versa.

6.      For the first period, AT&T agreed to pay Level 3 about $15 million to cover unpaid switched access services and late payment charges.

7.      For the second period, AT&T agreed to pay Level 3 "its applicable switched access tariffed rate for OTT traffic, pursuant to the terms of the *OTT Declaratory Order*."  (ECF No. 15-1 at 3, ¶ (ii).)  In other words, Level 3 could continue its practice of assessing end-office charges on OTT traffic.

8.      For the third period, Level 3 agreed that "in the event the OTT Declaratory Order was overturned, either in whole or in part," it would "refund OTT charges to the extent they should not have been charged in accordance with the Final Appellate Order."  (*Id.* at 3, ¶ (iv).)

9.      By its own terms, the 2015 Agreement is a fully integrated agreement governed by New York law.  (*See id.* at 6, ¶¶ (3), (5).)

10.      Included in the 2015 Agreement is the following provision:

> Although the Parties agree that this Settlement Agreement is intended to be a full and final settlement of all disputes and balances associated with OTT traffic prior to June 1, 2015, the Parties also recognize the pendency of the OTT Appeal. Therefore, in the event the *OTT Declaratory Order* is overturned, either in whole or in part, and the applicable order on appeal becomes final and is no longer subject to further appeal or other judicial review ("Final Appellate Order"), Level 3 will refund, with 30 days, fifty percent (50%) of the disputed OTT charges beginning with June 2015 traffic through the date on which such Final Appellate Order becomes final and is no longer subject to further appeal or other judicial review; provided, however, that if the *OTT Declaratory Order* is overturned in part, and not in whole, then Level 3 will only be required to refund OTT charges to the extent they should not have been charged in accordance with the Final Appellate Order. Further, the Parties agree that any billing and payments for OTT traffic exchanged after such Final Appellate Order becomes final shall be in compliance with terms of that order.

(ECF No. 15-1 at 3, ¶ (iv).)

11.     In addition to addressing the "OTT Dispute" that is the focus of this case, the 2015 Agreement also addresses the parties' "Tandem Dispute" and "DEOT Billing Dispute." (*Id.* at 1.)  In connection with the "Tandem Dispute," AT&T agreed to pay Level 3 about $8 million, which included late payment charges.  (*Id.* at 4.)  In connection with the "DEOT Billing Dispute," Level 3 agreed to credit AT&T for certain charges, including applicable late payment charges.  (*Id.* at 4, ¶ (c).)

12.     In November 2016, the Court of Appeals for the District of Columbia vacated and remanded the OTT Declaratory Order.  *See AT&T Corp. v. FCC*, 841 F.3d 1047, 1058 (D.C. Cir. 2016).

13.     Thereafter, the parties disagreed as to whether the D.C. Circuit's decision was the "Final Appellate Order" as defined in the 2015 Agreement.  Level 3 continued billing AT&T for end-office charges on OTT traffic.  But AT&T began withholding payment on a portion of Level 3's billed end-office charges in August 2017, taking the position that it was entitled to a refund based on the provision quoted above.

14.     In December 2019, the FCC ruled that local carriers *cannot* assess end-office charges on OTT traffic.  *See Connect America Fund Developing a Unified Intercarrier Compensation Regime*, Order on Remand and Declaratory Ruling, WC Docket No. 10-90 et al., FCC 19-131 at ¶ 1 (rel. Dec. 17, 2019) ("2019 Declaratory Ruling").

15.     Also in 2019, the parties entered another settlement agreement, which resolved the parties' OTT VoIP billing disputes through 2018.  The dispute before the Court relates to end-office charges on OTT traffic from January 1, 2019 through the date of judgment in this case.

16.     In March 2021, this Court ruled that the D.C. Circuit's decision could *not* be considered the "Final Appellate Order" contemplated by the 2015 Agreement, and that the OTT Declaratory Order "became final" for purposes of the agreement on February 19, 2020, when the 2019 Declaratory Ruling became final.  (*See* ECF No. 204 at 7.)

17.     In the March 2021 Order, the Court also ruled that, *at most*, 21 percent of the end-office charges from January 1, 2019 through February 19, 2020 was for OTT traffic. (*See* ECF No. 204 at 7-8.)  Level 3 has since agreed to accept 21 percent as the basis for calculating its damages.  (*See* ECF No. 260 at 8, ¶ 28.)

18.     The parties agree that AT&T has withheld payment on end-office charges, but they disagree as to the amount withheld.  AT&T contends it withheld 65 percent of end-office charges each month, while Level 3 contends AT&T withheld more than that.

19.     The parties also disagree as to whether Level 3 can assess late payment charges.

20.     The parties have stipulated that Level 3 is entitled to **$341,207.53** as an "add-back" for tandem switching charges it should have assessed on OTT traffic.

21.     The parties have further stipulated that AT&T is entitled to a credit of **$517,147.23** because Level 3 and its affiliates, Counterclaimants, over-withheld payments owed to AT&T's affiliate, Counterclaim Defendant Teleport Communications Group, Inc. ("TCG").

22.     AT&T acknowledges that it owes Level 3 **$4,189,248.51**, based on the following damages analysis:

      a.     Level 3 billed AT&T **$8,409,152.89** in end-office charges from February 2019 through June 2021;

b.      With a 21 percent deduction for the portion of the charges attributable to

OTT traffic, the amount properly billed for that period is **$7,132,452.02**;

and

c.      AT&T has already paid **$2,943,203.51** for those charges.

23.     AT&T contends that no late payment charges should be added.  In the event the

Court disagrees, AT&T submits that late payment charges calculated at 1.5 percent per month

amount to **$1,092,236.14**.  (ECF No. 281-2 at 2.)  This calculation excludes late payment charges

on the tandem "add-back" charges.

24.     Level 3 submits that late payment charges should be calculated to include the

tandem "add-back" charges and that they amount to **$1,139,374.93** through June 2021 and

**$1,207,331.77** through July 2021.  (ECF No. 279-1 at 2.)

25.     Level 3 also submits an entirely separate damages analysis that begins with all

new charges for switched access services for which it billed AT&T from February 2019 through

June 2021 (about $57 million); makes deductions for OTT traffic, payments, and various other

disputes it considers to be legitimate (totaling about $50 million); adds late payment charges

(about $2 million); and calculates its damages to be **$9,375,195**.  Tr. Ex. A-53 at 3.

26.     Fundamentally, Level 3's approach is to assume that its damages under the

2015 Agreement include all withholdings by AT&T after accounting for other specified disputes.

On the other hand, AT&T's approach is to assume that the amount it withheld that is attributable

to the OTT Dispute can be affirmatively identified.

II.     **CONCLUSIONS OF LAW**

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

6

The sole purpose of the trial was to determine the amount of Level 3's damages flowing from AT&T's breach of the settlement agreement.  As stated in the Proposed Amended Final Pretrial Order, approved by both parties, "the only remaining issue of fact for trial is the amount of Level 3's damages under Count I of its counterclaims."  (ECF No. 262 at 3.)

The measure of damages in a breach of contract action is the amount it takes to place the nonbreaching party in the position it would have occupied had the breach not occurred. *See Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003) ("Under New York law, damages for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract.").

### A.      Undisputed Amounts

The Court starts with the portions of Level 3's damages that are not disputed.  As shown in AT&T's unopposed, updated Exhibit 76 (ECF No. 280-1), AT&T does not dispute that it owes Level 3 **$4,189,248.51** for unpaid end-office charges.  Further, the parties agree that Level 3 is entitled to the tandem "add-back" of **$341,207.53** and that AT&T is entitled to a credit or reduction of **$517,147.23** for payments Level 3 over-withheld from TCG.  Based on these stipulations, it is undisputed that Level 3's damages include **$4,013,308.81**.

### B.      Late Payment Charges

The Court turns now to the issue of late payment charges, which the parties briefed in connection with AT&T's Motion in Limine to Exclude Evidence of Level 3's Claimed Late Payment Charges.  (*See* ECF Nos. 207, 219, 239.)  The Court denied the Motion, allowing evidence pertaining to late payment charges to be presented at trial.  (*See* ECF No. 263).  AT&T points out that while the 2015 Agreement refers to late payment charges in various other clauses,

the refund provision quoted above makes no mention of such charges.  Thus, AT&T argues that

the omission of late payment charges from the refund provision indicates the parties intended

they would not apply to the charges at issue here.  However, unlike the clauses that expressly

refer to late payment charges that had already accrued when the agreement was made, the refund

provision is forward-looking and depends on a condition precedent—issuance of a "Final

Appellate Order"—that had yet to occur.  Accordingly, the Court is not persuaded that the mere

absence of late payment charges in the refund provision shows that the parties intended to

exclude such charges.

Instead, the 2015 Agreement, taken as a whole, reflects that late payment charges are a

customary part of the parties' often contentious business dealings.  For instance, AT&T agreed to

pay late payment charges to settle the "Tandem Dispute," and Level 3 agreed to issue a credit for

any applicable late payment charges to settle the "DEOT Billing Dispute."  And in the context of

the "OTT Dispute," AT&T expressly agreed to pay late payment charges for the period

preceding execution of the 2015 Agreement.  Given both parties' propensity for withholding

amounts billed when charges are disputed and the inclusion of late payment charges when those

bills are settled, the Court is not persuaded that that parties intended to exclude simply by

omission late payment charges on the end-office charges at issue here.

Moreover, allowing AT&T to withhold payments without penalty makes little sense in

this context, where AT&T concedes that it owes Level 3 about $4.1 million.  The Court finds

disallowing late payment charges would undermine the goal of putting Level 3 in the position it

would have been if AT&T and not breached the 2015 Agreement.  And to the extent AT&T

acted arbitrarily by over-withholding due to its "mechanized billing system," as Level 3

contends, AT&T should not get a windfall.  Therefore, the Court finds that late payment charges are appropriate in this case.

The Court further finds that late payment charges on the tandem "add-back" are appropriate.  The refund provision expressly applies to "OTT charges to the extent they should not have been charged," and the parties agree that the tandem "add-back" is appropriate. AT&T's contention that late payment charges on the tandem charges were never billed by Level 3 misses the mark.  (*See* ECF No. 281 at 3, ¶ 7.)  Under the circumstances of this case, the tandem charges Level 3 should have assessed in lieu of the end-office charges that it did assess are inextricably linked.  Accordingly, the Court finds that the rationale above for applying late payment charges applies as well to late payment charges calculated on the tandem "add-back."

As noted above, Level 3 has submitted calculations for these late payment charges through June and through July.  But on the current record, which includes updated Exhibit 76, the Court can assess Level 3's damages through June 2021 only.  (*See* ECF No. 279 at 3 (rebutting AT&T's objection to applying late payment charges for the month of July).)  As a result, the Court finds Level 3's damages also include **$1,139,374.93**, as set forth in its damages analysis.

The Court is cautiously optimistic that the parties can agree on how Level 3's damages analysis applies post-June 2021 through the date of this Order, and therefore directs Level 3 to file, within fourteen days of this Order, a supplemental damages disclosure that includes a statement as to whether AT&T concurs with the analysis contained therein.

As set forth in the findings of fact, Level 3 has also submitted a separate damages analysis, which starts with the amounts Level 3 billed AT&T for all usage-based switched access

services.  According to Level 3, "[t]hese calculations account for every usage-based dispute AT&T has levied against Level 3's charges, thus showing to the penny the exact amount AT&T withheld for the OTT Dispute."  (ECF No. 269 at 3.)  To arrive at its damages amount, Level 3 makes various deductions for other disputes and issues that it has identified—e.g., "Total DEOT Usage Credits/Debit," "OTT Credit Using 21% OTT factor less Tandem Switching Debit."[2]  The analysis includes further deductions for late payment charges related to the DEOT Dispute and for a "New Affiliated Tandem Dispute."  Tr. Ex. A-53 at 3.  From there, Level 3's analysis attributes all of AT&T's "withholdings" to the OTT Dispute.[3]

However, the Court finds AT&T's approach to be more credible given that it starts with the agreed upon amounts Level 3 billed AT&T for providing end-officing services since January 1, 2019 and the parties' agreement at trial on "AT&T's numbers" as set forth in Exhibit 76.  Given the various other disputes intertwined with this case, the Court finds that Level 3's approach, which begins with amounts Level 3 billed AT&T for all usage-based switched access services, is less reliable and logical than AT&T's.  Although Level 3 now takes the position that AT&T withheld much more than 65 percent of the end-office charges Level 3 assessed (ECF No. 269 at 3), throughout this litigation Level 3 has taken the position that AT&T withheld 65 percent (ECF No. 184 at 2, ¶ 2), and it has expressly admitted that AT&T began withholding "approximately" that percentage in response to Level 3's refusal to provide a refund (*id.* at 9, ¶ 6).  This further undermines Level 3's current damages analysis.  And the Court

---

[2] At various points in this case, the parties have also referred to an "EO/CPN dispute" and an "LRN/CPN dispute." (ECF No. 259 at 13, ¶ 35; ECF No. 285 at 6.)

[3] Level 3's reliance on Exhibit A to the 2015 Agreement to define the "OTT Dispute" is unavailing because that exhibit lists "Outstanding AR Through 4/2015 Invoices," and the parties settled their disputes through 2018 in a separate agreement.

discerns no compelling reason to focus on amounts AT&T theoretically "withheld" in an abstract sense as opposed to what it actually paid.  In short, the Court finds that Level 3's damages analysis lacks clarity and credibility, fails to provide a reasonable basis to support Level 3's damages calculation of $9.375 million, and is inconsistent with the more credible, and mostly unrefuted, evidence produced at trial by AT&T.  *See* Tr. Ex. A-53 at 3.

### C.      Attorney Fees

Level 3 seeks an award of attorney fees pursuant to 47 U.S.C. § 206 based on its contention that AT&T's affiliate, TCG, improperly assessed end-office charges on OTT traffic against Level 3.  But the Court denied summary judgment on Level 3's counterclaim against TCG on which it sought summary judgment and has made no determination as to whether TCG violated any provisions of the Communications Act.  (*See* ECF No. 204 at 8.)  The parties have stipulated that Level 3 withheld $517,147.23 in payments charged by TCG in excess of the credit TCG extended.  (ECF No. 262 at 16, ¶ 15.)  But TCG has not admitted to any Communications Act violations, and the Court declines to draw such a conclusion at this juncture.  As a matter of practicality, devoting further judicial resources to a matter that is essentially resolved is inefficient and makes little sense.  And as a matter of policy, revisiting matters that are essentially resolved via settlement would have the undesirable effect of devaluing and discouraging settlement.  Accordingly, Level 3's request for attorney fees is denied.

### III.     PENDING MOTIONS

### A.      AT&T's Unopposed Motion to Restrict

AT&T has moved to restrict portions of thirty-three exhibits attached to its Offer of

11

Proof, which were filed under seal pursuant to the Protective Order entered in this case because they contain sensitive information and confidential or proprietary business information. (ECF No. 265.) The Motion is unopposed, and it is granted.

### B.   AT&T's Unopposed Motion to Supplement the Record

AT&T has also moved to supplement its Exhibit 76 to include Level 3's June 2021 invoices. (ECF No. 280.) Both parties agree that inclusion of the June 2021 invoices is appropriate, and the Court has relied on the updated Exhibit throughout this Order. This Motion is granted.

### C.   Level 3's Motion to Amend the Pleadings

Before trial, both parties agreed that the only remaining issue of fact for trial was the amount of Level 3's damages under its breach of contract claim. (ECF No. 262 at 3.) Level 3 now contends that it should be granted to leave to amend the pleadings to include a claim for breach of tariff. (ECF No. 283.) The Court declines to allow Level 3 to move the goal posts after the game has been played.

Fed. R. Civ. P. 15(b)(2) permits a party move to amend the pleadings to conform them to the evidence "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent." The Court initially concludes AT&T did not expressly consent to trying a breach of tariff claim—Level 3 can point to no such evidence. In this Circuit, a party may impliedly consent to the trial of an issue by introducing evidence on the issue *that is not relevant to an issue already in the case* or by failing to object when such evidence is introduced. *See Eller v. Trans Union, LLC*, 739 F.3d 467, 480-81 (10th Cir. 2013). But Level 3 has identified no evidence presented at trial by either party that would be relevant to a breach of

tariff claim but was not relevant to the issue of its amount of damages flowing from AT&T's breach of the 2015 Agreement.  Accordingly, AT&T did not impliedly consent to trying a breach of tariff claim.

Further, Level 3 has repeatedly taken the position that it is seeking damages on its breach of contract claim only.  In its Response in Opposition to AT&T's Motion in Limine, Level 3 states: "The entire amount Level 3 seeks to recover are amounts AT&T withheld for the OTT Dispute, in direct violation of the contract, and therefore fall[] squarely within the scope of Level 3's counterclaim for breach of contract."  (ECF No. 223 at 2.)  In its Proposed Conclusions of Law, Level 3 asks for the Court to conclude "that all amounts AT&T withheld are within the scope of the OTT Dispute as contemplated by the parties when they negotiated the 2015 Settlement Agreement, and are therefore subject to Level 3's breach of contract claim."  (ECF No. 260 at 18.)

That is not all.  In the Final Pretrial Order approved by the Court, Level 3 took the position that "[i]ts remaining claims are premised solely on the parties' Settlement Agreement." (ECF No. 199 at 6 n.5.)  And, as mentioned above, the Proposed Amended Final Amended Final Pretrial Order, approved by both parties, states that "the only remaining issue of fact for trial is the amount of Level 3's damages under Count I of its counterclaims."  (ECF No. 262 at 3.) Therefore, to the extent that granting Level 3's Motion would require the Court to modify the Final Pretrial Order, the Court further finds that doing so is *not* necessary to prevent manifest injustice in this case, and such modification would be barred by Fed. R. Civ. P. 16(e).

Fed. R. Civ. P. 15(b)(1) permits amendment of pleadings based on an objection at trial. Because the trial in this matter has concluded, the Court finds this provision does not apply here.

Level 3 cites no authority to the contrary.

Accordingly, Level 3's Motion is denied.

## IV.    CONCLUSION

Therefore, the Court ORDERS that:

(1)    AT&T's Unopposed Motion to Restrict Public Access to Their Offer of Proof (ECF No. 265) is GRANTED;

(2)    AT&T's Unopposed Motion to Supplement the Record (ECF No. 280) is GRANTED;

(3)    Level 3's Motion to Amend the Pleadings Pursuant to Federal Rule of Civil Procedure 15(b) (ECF No. 283) is DENIED;

(4)    Level 3 is entitled to JUDGMENT in the amount of **$5,152,683.74** (**$4,013,308.81** for undisputed amounts plus **$1,139,374.93** for late payment charges, as set forth in this Order), and

(5)    Level 3 shall file, on or before September 28, 2021, a supplemental damages disclosure as set forth in this Order so that FINAL JUDGMENT may be entered in this matter.

DATED this 14th day of September, 2021.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge

14