# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Raymond P. Moore

Civil Action No. 18-cv-00112-RM-MEH

AT&T CORP., a New York corporation,

      Plaintiff/Counterclaim Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC, a Delaware limited liability company,

      Defendant/Counterclaimant,

and

BROADWING COMMUNICATIONS, LLC,
GLOBAL CROSSING TELECOMMUNICATIONS, INC, and
WILTEL COMMUNICATIONS, LLC,

      Counterclaimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.,

      Counterclaim Defendant.

---

## ORDER

---

This intercarrier compensation dispute is before the Court on several motions: two cross-motions for summary judgment and partial summary judgment (ECF Nos. 152, 153), two motions to exclude expert testimony (ECF Nos. 139, 142), and a motion to amend the complaint by reinstating two counts (ECF No. 147). For the reasons below, Defendant's motion for summary judgment is granted in part on the issue of liability based on the settlement agreement

between Plaintiff and Defendant; otherwise, the motions are denied.

## I.    BACKGROUND

For about a decade, the telecommunications industry has grappled with a tangled web of regulations known as intercarrier compensation.  After this litigation began, the Federal Communications Commission ("FCC") issued a decision resolving one of the central issues that precipitated this case.  *See Connect America Fund Developing a Unified Intercarrier Compensation Regime*, Order on Remand and Declaratory Ruling, WC Docket No. 10-90 et al., FCC 19-131 at ¶ 1 (rel. Dec. 17, 2019) ("2019 Declaratory Ruling").  As a result, it is now clear that a local exchange carrier ("LEC") such as Defendant or Counterclaim Defendant can assess end office switched access charges from long-distance carriers such as Plaintiff "*only if* the LEC or its [voice over internet provider] partner provides a physical connection to the last-mile facilities used to serve the end user."  *Id.* at ¶ 4 (emphasis added).  Had this pronouncement come sooner, this litigation might have ended sooner or perhaps been avoided.

Back in 2015, the FCC reached the opposite conclusion, ruling that end office switched access charges *do* apply to over-the-top ("OTT") voice over internet protocol ("VoIP") calls. *See Connect America Fund*, WC Docket No. 10-90 et al., CC Docket No. 01-92, Declaratory Ruling, 30 FCC Rcd 1587, 1588, ¶ 2 (2015) ("OTT Declaratory Order").  In light of a then pending appeal of the OTT Declaratory Order, Plaintiff and Defendant entered into a settlement agreement which allowed Defendant to continue assessing end office charges for certain OTT traffic, subject to a partial refund in the event the OTT Declaratory Order was "overturned, either in whole or in part."  (ECF No. 15-1 at 3, ¶ (iv).)  The provision at the heart of this case, in its entirety, provides as follows:

> Although the Parties agree that this Settlement Agreement is intended to be a full and final settlement of all disputes and balances associated with OTT traffic prior to June 1, 2015, the Parties also recognize the pendency of the OTT Appeal. Therefore, in the event the *OTT Declaratory Order* is overturned, either in whole or in part, and the applicable order on appeal becomes final and is no longer subject to further appeal or other judicial review ("Final Appellate Order"), Level 3 will refund, with 30 days, fifty percent (50%) of the disputed OTT charges beginning with June 2015 traffic through the date on which such Final Appellate Order becomes final and is no longer subject to further appeal or other judicial review; provided, however, that if the *OTT Declaratory Order* is overturned in part, and not in whole, then Level 3 will only be required to refund OTT charges to the extent they should not have been charged in accordance with the Final Appellate Order. Further, the Parties agree that any billing and payments for OTT traffic exchanged after such Final Appellate Order becomes final shall be in compliance with terms of that order.

(*Id.*)

In December 2016, the United States Court of Appeals for the District of Columbia Circuit vacated and remanded the OTT Declaratory Order. *AT&T Corp. v. FCC*, 841 F.3d 1047, 1058 (D.C. Cir. 2016). The mandate issued three months later, and ninety days after that the time to seek review by the United States Supreme Court expired. Plaintiff argues, therefore, that as of May 2017, it was entitled to a full refund of all end office charges for OTT traffic assessed by Defendant. Plaintiff began withholding 65 percent of Defendant's end office charges in mid-2017. (ECF No. 167 at ¶ 43.)

Defendant holds a different view, arguing that the 2019 Declaratory Ruling is the relevant order establishing the end of the partial refund period. No party appealed the 2019 Declaratory Ruling, which became final as a matter of law on February 19, 2020. Thus, Defendant argues that it owes Plaintiff only a partial refund for end office charges assessed up until then.

The parties further dispute—should Defendant's view prevail—the percentage of OTT traffic included in Defendant's charges for the applicable period, which would determine the

amount of Plaintiff's refund.  Although Defendant has argued the OTT percentage was 16 percent, for present purposes it argues there is no evidence to support a conclusion that the OTT percentage was higher than 21 percent.  Plaintiff argues that 65 percent is the appropriate measure, relying on a provision in the settlement agreement that expressly applies to traffic exchanged from April 1 through May 31, 2015.  (*See* ECF No. 15-1 at 2; ECF No. 167 at ¶ 35.) That provision states:

> No later than thirty (30) days after the receipt of Level 3's invoice for traffic exchanged from April 1 through May 31, 2015, seventy-five percent (75%) of the amount of the switched access usage charges for traffic that is the subject of the OTT Dispute billed by Level 3, which has historically been approximately sixty-five percent (65%) of overall billing for end office switching ("April-May Supplemental Settlement Amount")[,] AT-T will transmit the April-May Supplemental Settlement Amount to the Level 3 account designated to receive switched access payments using the Parties' standard process for switched access payments.

(ECF No. 15-1 at 2, ¶ (B).)  The parties have settled their dispute with respect to charges Defendant assessed through 2018, so the only charges that remain at issue pertain to the period of January 1, 2019 to February 19, 2020.  (*See* ECF No. 167 at ¶ 7.)

## II.    MOTIONS FOR SUMMARY JUDGMENT

### A.    Legal Standard

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018).  Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in its favor.  *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013).  Whether there is a genuine

dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

It is undisputed that the New York law governs the settlement agreement. (ECF No. 167 at ¶ 6.) To prevail on a breach of contract claim, a litigant must show (1) the existence of an agreement, (2) its own adequate performance, (3) breach of contract by the other party, and (4) damages. *See Harsco Corp. v. Segui*, 91 F.3d 337 348 (2d Cir. 1996). "Under New York law, a party's performance under a contract is excused where the other part has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007).

## B. Defendant's Motion

Defendant and Counterclaimants have moved for summary judgment on their counterclaims for breach of contract, declaratory relief, and violation of the Communications Act, 47 U.S.C. § 201(b), and on Plaintiff's remaining claims for breach of contract and

declaratory judgment.  Defendant argues that Plaintiff failed to perform its obligations under the settlement agreement by withholding payment on the end office charges assessed during the applicable period.  Plaintiff admits that it withheld payment but argues that it was entitled to do so once D.C. Circuit's decision vacating and remanding the OTT Declaratory Order became final.  The Court is not persuaded by Plaintiff's argument.

### 1.     Liability Under the Settlement Agreement

The Court finds initially that the OTT Declaratory Order was not "overturned . . . in whole" by the D.C. Circuit's decision as contemplated by the terms of the settlement agreement. (ECF No. 15-1 at 3, ¶ (iv).)  The effect of the D.C. Circuit's decision was to tell the FCC it failed to provide adequate reasons for adopting the rule that end office switched access charges apply to certain OTT traffic.  *See AT&T*, 841 F.3d at 1053-54.  But the decision, which vacated and remanded the OTT Declaratory Order, did not declare that end office charges could *not* be assessed on OTT traffic or preclude assessing such charges while the FCC reassessed its rationale for adopting the rule.  *Id.* at 1056.  As a result, the Court concludes the D.C. Circuit's decision "overturned in part" the OTT Declaratory Order for purposes of construing the settlement agreement.

The settlement agreement provides that in the event the OTT Declaratory Order was "overturned in part, and not in whole," Defendant was obligated "to refund OTT charges *to the extent they should not have been charged* in accordance with the Final Appellate Order."  (*Id.* (emphasis added).)  But by vacating and remanding the OTT Declaratory Order, the D.C. Circuit's decision did not determine that any of Defendant's charges "should not have been charged."  Rather, the D.C. Circuit took issue with the FCC's "muddled treatment of functional

equivalence," *AT&T Corp.*, 841 F.3d at 1054, while providing no basis or guidance for calculating a refund under the settlement agreement.  It was not until the 2019 Declaratory Ruling that the FCC prohibited the OTT charges at issue in this case.  Although the ruling applies retroactively, until it was issued, the parties were without any clear guidance as to which charges "should not have been charged."  Accordingly, the Court finds that the D.C. Circuit's decision, standing alone, cannot operate as the "Final Appellate Order" contemplated by the settlement agreement.  Instead, because the D.C. Circuit's decision remanded the OTT Declaratory Order, it did not "become final" for purposes of the settlement agreement, until the FCC issued the 2019 Declaratory Ruling and that ruling was "no longer subject to further appeal or other judicial review."  (ECF No. 15-1 at 3, ¶ (iv).)  There is no dispute that the 2019 Declaratory Ruling became "final" and "no longer subject to further appeal or other judicial review" on February 19, 2020.[1]  Thus, under the terms of the settlement agreement, Plaintiff's refund was due within 30 days of that date, and Defendant is entitled to partial summary judgment as well as declaratory relief on the issue of its liability under the settlement agreement.

### 2. Refund Amount

As mentioned above, the amount of Plaintiff's refund depends on the OTT percentage during the applicable period.  Although Defendant argues elsewhere that a lower percentage applies, for purposes of summary judgment, Defendant contends there is no evidence to support

---

[1] Plaintiff's reliance on an excerpt from the Court's September 18, 2018 Opinion and Order dismissing its statutory claims is misplaced.  There, the Court found that "[t]he refund that plaintiff may or may not be entitled, has nothing to do with resolution of the 'OTT-VoIP billing issue' by the FCC," in the context of determining that Plaintiff's breach of contract claim was ripe.  (ECF No. 67 at 10.)  Accepting Plaintiff's allegations as true, the Court merely determined that it plausibly alleged that a breach of contract had occurred.  (*Id.* at 12.)  Nothing in that Order precludes the Court from granting partial summary judgment in Defendant's favor at this stage of the case.  (*Id.* at 16 n.13.)

an OTT percentage higher than 21 percent.  Plaintiff attacks the methodology of Defendant's expert on this issue, but points to no evidence that the OTT percentage was higher than 21 percent from January 1, 2019 to February 19, 2020.  Plaintiff's own expert did not form an opinion on Defendant's OTT percentage.  (ECF No. 184 at ¶ 48.)  In the absence of a such evidence, the Court finds there is no genuine issue as to whether the OTT percentage exceeded 21 percent.[2]  Therefore, Defendant is entitled to partial summary judgment and declaratory relief on this issue as well.

### 3.    Communications Act Claim

Defendant also asserts that it is entitled to summary judgment on its § 201(b) claim.  The basis for this claim is that Plaintiff and its affiliate, Counterclaim Defendant, improperly assessed against Defendant the same type of end office charges Plaintiff assessed.  The parties appear to agree that in the absence of a negotiated agreement, the applicable rate for OTT traffic is the tandem rate, not the end office rate under the terms of the 2019 Declaratory Order.  (*See* ECF No. 183 at 7.)  However, the Court finds that on the current record disputed issues remain regarding the charges assessed against and credits issued to Defendant.  (*See* ECF No. 167 at 35, ¶¶ 77-79.)  Accordingly, Defendant is not entitled to summary judgment or declaratory relief on its § 201(b) claim.

### C.    Plaintiff's Motion

Plaintiff seeks partial summary judgment on the grounds that (1) Defendant breached the settlement agreement by assessing end office charges that were improper under the 2019

---

[2] Although a factual dispute still exists with respect to the exact percentage, at this stage, Defendant has sought to establish only a 21 percent ceiling to "facilitate the parties' ongoing discussions and resolve a significant factual dispute that has thus far hindered these discussions."  (ECF No. 151-2 at 22 n.8.)

Declaratory Ruling, (2) Plaintiff is entitled a full refund for the improper charges during the applicable period, and (3) Defendant has no admissible evidence to support its claimed OTT percentage.[3]

As discussed above, Defendant did not breach the settlement agreement by continuing to assess end office charges before the 2019 Declaratory Ruling became final. Accordingly, Plaintiff is not entitled to summary judgment on the first two grounds asserted. Plaintiff's third argument is premised on the Court's granting of Plaintiff's motion to exclude. As discussed below, however, the Court is denying that motion. Therefore, the Court finds there is at least some admissible evidence to support Defendant's position, and Plaintiff's motion is denied.

## III.    MOTIONS TO EXCLUDE

### A.    Legal Standard

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The Court has the duty to act as a gatekeeper by ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand. *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019). The Court first determines whether the proffered expert is

---

[3] With its motion for partial summary judgment, Plaintiff also filed a motion to amend its complaint to reinstate its statutory claims, which were previously dismissed without prejudice as unripe. (ECF No. 67.) As explained below, the Court is denying the motion to amend. Accordingly, the Court addresses Plaintiff's summary judgment motion only with respect to its contractual claims.

qualified to render an opinion, then whether the expert's opinion is reliable. *Id.*

**B. Defendant's Motion**

Defendant and Counterclaimants have filed a Motion to Preclude Expert Testimony Regarding Charges on Calls Originating from or Terminating to Level 3 Telephone Numbers, seeking "to preclude expert testimony by AT&T's expert Dr. Penn Pfautz questioning the propriety of switched access charges for non-OTT-VoIP calls originating from or terminating to telephone numbers assigned to Level 3." (ECF No. 139 at 1.) Defendant requests that three paragraphs of Dr. Pfautz's original report and three paragraphs of his rebuttal report be stricken, as well as an order precluding him or any other expert for Plaintiff from testifying about the propriety of charges for non-OTT-VoIP calls. In response, Plaintiff argues that Dr. Pfautz's testimony is relevant to the issue of whether Defendant reasonably calculated the percentage of its OTT traffic.

This Court has broad discretion in assessing an expert's reliability and making its ultimate determination of reliability. *Atty' Gen. of Okla. v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009). "Furthermore, while *Daubert*'s standards must still be met, the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise when a district court is conducting a bench trial." *Id.* The Court sees no reason why, at this stage, Dr. Pfautz's testimony should be stricken or precluded. Should this case proceed to a bench trial, Defendant will have the opportunity to make objections to Dr. Pfautz's direct examination and to cross-examine him. Of course, the Court will disregard testimony that is not relevant or inadmissible for other reasons.

### C.    Plaintiff's Motion

Plaintiff and Counterclaim Defendant have filed a *Daubert* Motion to Exclude Certain

Testimony of Andrew McClure, seeking an order precluding Mr. McClure "from providing

testimony regarding Level 3's OTT-VoIP percentage."  (ECF No. 142 at 4.)  The same rationale

for denying Defendant's motion applies to Plaintiff's.  The Court declines to limit Mr. McClure's

testimony at this stage.

## IV.    MOTION TO AMEND

### A.    Legal Standard

A motion for leave to amend the complaint should be granted when justice so requires.

Fed. R. Civ. P. 15(a)(2).  But after a scheduling order deadline, a party seeking leave to amend

must demonstrate good cause.  *See* Fed. R. Civ. P. 16(b)(4).  Courts "generally refuse leave to

amend only on a showing of undue delay, undue prejudice to the opposing party, bad faith or

dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of

amendment."  *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1315

(10th Cir. 2005).  "A proposed amendment is futile if the complaint, as amended, would be

subject to dismissal."  *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999).

### B.    Plaintiff's Motion

Relying on the 2019 Declaratory Ruling, Plaintiff seeks leave to amend the complaint by

reinstating the statutory claims the Court previously dismissed without prejudice as unripe.

(*See* ECF No. 76.)  However, in light of the Court's other rulings in this Order, amendment as

proposed would be futile.  The proposed amended complaint contains no allegations that

Defendant continued to assess end office charges after the 2019 Declaratory Ruling became final

on February 19, 2020. Further, in response to Plaintiff's motion, Defendant has adduced evidence that its "damages analysis in this case shows a 100 percent refund of all of the end office charges associated with OTT traffic since February 19, 2020." (ECF No. 162 at 13.) Because the proposed amendment would be futile, Plaintiff's motion is denied.

## V. CONCLUSION

Accordingly, the Court GRANTS IN PART Defendant's motion for summary judgment (ECF No. 152) and rules that, pursuant to the settlement agreement, Plaintiff is entitled to a fifty percent refund for end office switching charges assessed during the relevant period (January 1, 2019 to February 19, 2020), during which time the OTT percentage did not exceed 21 percent. The Court DENIES Defendant's motion to the extent it seeks further relief. The Court also DENIES Plaintiff's motion for partial summary judgment (ECF No. 153), the motions to exclude (ECF Nos. 139, 142), and the motion to amend (ECF No. 147).

DATED this 25th day of March, 2021.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge

12

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Raymond P. Moore

Civil Action No. 18-cv-00112-RM-MEH

AT&T CORP., a New York corporation,

      Plaintiff/Counterclaim Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC, a Delaware limited liability company,

      Defendant/Counterclaimant,

and

BROADWING COMMUNICATIONS, LLC,
GLOBAL CROSSING TELECOMMUNICATIONS, INC, and
WILTEL COMMUNICATIONS, LLC,

      Counterclaimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.,

      Counterclaim Defendant.

---

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDERS

---

This intercarrier compensation case proceeded to a three-day bench trial solely to determine the amount of damages incurred by Defendant Level 3 Communications, LLC ("Level 3") flowing from the breach of the parties' settlement agreement by Plaintiff AT&T Corp. ("AT&T"). Having heard the parties' testimony and considered the evidence presented

and the entire record, the Court makes the following findings of fact and conclusions of law,[1] addresses two pending motions, and enters the following orders.

## I.   FINDINGS OF FACT

1.      For purposes of this case, AT&T is a provider of long-distance telephone services, and Level 3 is a local telephone carrier.

2.      For years, Level 3 has provided switched access services to AT&T on long-distance calls.  Level 3 bills AT&T different rates for different components of its switched access services, which include end-office switching and tandem switching.

3.      The parties had a longstanding dispute about whether end-office charges were appropriate on over-the-top Voice over Internet Protocol ("OTT VoIP") calls.  In February 2015, the Federal Communications Commission ("FCC") ruled that end-office charges were allowed on such calls.  *See Connect America Fund*, WC Docket No. 10-90 et al., CC Docket No. 01-92, Declaratory Ruling, 30 FCC Rcd 1587, 1588, ¶ 2 (2015) ("OTT Declaratory Order").

4.      In May 2015, while an appeal of the OTT Declaratory Order was still pending, the parties entered into a settlement agreement (the "2015 Agreement").

5.      With regard to the dispute over end-office charges on OTT VoIP calls, the 2015 Agreement contemplates three separate time periods: (1) the period preceding execution of the agreement, (2) the period between execution of the agreement and the issuance of a "Final Appellate Order" pertaining to the pending appeal, and (3) the period after such order.  (*See* ECF No. 15-1 at 2-3.)

---

[1] The findings of fact include any conclusions of law that are deemed findings of fact, and vice versa.

6.      For the first period, AT&T agreed to pay Level 3 about $15 million to cover unpaid switched access services and late payment charges.

7.      For the second period, AT&T agreed to pay Level 3 "its applicable switched access tariffed rate for OTT traffic, pursuant to the terms of the *OTT Declaratory Order*." (ECF No. 15-1 at 3, ¶ (ii).)  In other words, Level 3 could continue its practice of assessing end-office charges on OTT traffic.

8.      For the third period, Level 3 agreed that "in the event the OTT Declaratory Order was overturned, either in whole or in part," it would "refund OTT charges to the extent they should not have been charged in accordance with the Final Appellate Order." (*Id.* at 3, ¶ (iv).)

9.      By its own terms, the 2015 Agreement is a fully integrated agreement governed by New York law. (*See id.* at 6, ¶¶ (3), (5).)

10.     Included in the 2015 Agreement is the following provision:

> Although the Parties agree that this Settlement Agreement is intended to be a full and final settlement of all disputes and balances associated with OTT traffic prior to June 1, 2015, the Parties also recognize the pendency of the OTT Appeal. Therefore, in the event the *OTT Declaratory Order* is overturned, either in whole or in part, and the applicable order on appeal becomes final and is no longer subject to further appeal or other judicial review ("Final Appellate Order"), Level 3 will refund, with 30 days, fifty percent (50%) of the disputed OTT charges beginning with June 2015 traffic through the date on which such Final Appellate Order becomes final and is no longer subject to further appeal or other judicial review; provided, however, that if the *OTT Declaratory Order* is overturned in part, and not in whole, then Level 3 will only be required to refund OTT charges to the extent they should not have been charged in accordance with the Final Appellate Order. Further, the Parties agree that any billing and payments for OTT traffic exchanged after such Final Appellate Order becomes final shall be in compliance with terms of that order.

(ECF No. 15-1 at 3, ¶ (iv).)

11.     In addition to addressing the "OTT Dispute" that is the focus of this case, the 2015 Agreement also addresses the parties' "Tandem Dispute" and "DEOT Billing Dispute." (*Id.* at 1.)  In connection with the "Tandem Dispute," AT&T agreed to pay Level 3 about $8 million, which included late payment charges.  (*Id.* at 4.)  In connection with the "DEOT Billing Dispute," Level 3 agreed to credit AT&T for certain charges, including applicable late payment charges.  (*Id.* at 4, ¶ (c).)

12.     In November 2016, the Court of Appeals for the District of Columbia vacated and remanded the OTT Declaratory Order.  *See AT&T Corp. v. FCC*, 841 F.3d 1047, 1058 (D.C. Cir. 2016).

13.     Thereafter, the parties disagreed as to whether the D.C. Circuit's decision was the "Final Appellate Order" as defined in the 2015 Agreement.  Level 3 continued billing AT&T for end-office charges on OTT traffic.  But AT&T began withholding payment on a portion of Level 3's billed end-office charges in August 2017, taking the position that it was entitled to a refund based on the provision quoted above.

14.     In December 2019, the FCC ruled that local carriers *cannot* assess end-office charges on OTT traffic.  *See Connect America Fund Developing a Unified Intercarrier Compensation Regime*, Order on Remand and Declaratory Ruling, WC Docket No. 10-90 et al., FCC 19-131 at ¶ 1 (rel. Dec. 17, 2019) ("2019 Declaratory Ruling").

15.     Also in 2019, the parties entered another settlement agreement, which resolved the parties' OTT VoIP billing disputes through 2018.  The dispute before the Court relates to end-office charges on OTT traffic from January 1, 2019 through the date of judgment in this case.

16.     In March 2021, this Court ruled that the D.C. Circuit's decision could *not* be considered the "Final Appellate Order" contemplated by the 2015 Agreement, and that the OTT Declaratory Order "became final" for purposes of the agreement on February 19, 2020, when the 2019 Declaratory Ruling became final.  (*See* ECF No. 204 at 7.)

17.     In the March 2021 Order, the Court also ruled that, *at most*, 21 percent of the end-office charges from January 1, 2019 through February 19, 2020 was for OTT traffic. (*See* ECF No. 204 at 7-8.)  Level 3 has since agreed to accept 21 percent as the basis for calculating its damages.  (*See* ECF No. 260 at 8, ¶ 28.)

18.     The parties agree that AT&T has withheld payment on end-office charges, but they disagree as to the amount withheld.  AT&T contends it withheld 65 percent of end-office charges each month, while Level 3 contends AT&T withheld more than that.

19.     The parties also disagree as to whether Level 3 can assess late payment charges.

20.     The parties have stipulated that Level 3 is entitled to **$341,207.53** as an "add-back" for tandem switching charges it should have assessed on OTT traffic.

21.     The parties have further stipulated that AT&T is entitled to a credit of **$517,147.23** because Level 3 and its affiliates, Counterclaimants, over-withheld payments owed to AT&T's affiliate, Counterclaim Defendant Teleport Communications Group, Inc. ("TCG").

22.     AT&T acknowledges that it owes Level 3 **$4,189,248.51**, based on the following damages analysis:

   a.     Level 3 billed AT&T **$8,409,152.89** in end-office charges from February 2019 through June 2021;

   b.    With a 21 percent deduction for the portion of the charges attributable to OTT traffic, the amount properly billed for that period is **$7,132,452.02**; and

   c.    AT&T has already paid **$2,943,203.51** for those charges.

23.    AT&T contends that no late payment charges should be added.  In the event the Court disagrees, AT&T submits that late payment charges calculated at 1.5 percent per month amount to **$1,092,236.14**.  (ECF No. 281-2 at 2.)  This calculation excludes late payment charges on the tandem "add-back" charges.

24.    Level 3 submits that late payment charges should be calculated to include the tandem "add-back" charges and that they amount to **$1,139,374.93** through June 2021 and **$1,207,331.77** through July 2021.  (ECF No. 279-1 at 2.)

25.    Level 3 also submits an entirely separate damages analysis that begins with all new charges for switched access services for which it billed AT&T from February 2019 through June 2021 (about $57 million); makes deductions for OTT traffic, payments, and various other disputes it considers to be legitimate (totaling about $50 million); adds late payment charges (about $2 million); and calculates its damages to be **$9,375,195**.  Tr. Ex. A-53 at 3.

26.    Fundamentally, Level 3's approach is to assume that its damages under the 2015 Agreement include all withholdings by AT&T after accounting for other specified disputes. On the other hand, AT&T's approach is to assume that the amount it withheld that is attributable to the OTT Dispute can be affirmatively identified.

## II.    CONCLUSIONS OF LAW

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

The sole purpose of the trial was to determine the amount of Level 3's damages flowing from AT&T's breach of the settlement agreement.  As stated in the Proposed Amended Final Pretrial Order, approved by both parties, "the only remaining issue of fact for trial is the amount of Level 3's damages under Count I of its counterclaims."  (ECF No. 262 at 3.)

The measure of damages in a breach of contract action is the amount it takes to place the nonbreaching party in the position it would have occupied had the breach not occurred. *See Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003) ("Under New York law, damages for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract.").

### A.      Undisputed Amounts

The Court starts with the portions of Level 3's damages that are not disputed.  As shown in AT&T's unopposed, updated Exhibit 76 (ECF No. 280-1), AT&T does not dispute that it owes Level 3 **$4,189,248.51** for unpaid end-office charges.  Further, the parties agree that Level 3 is entitled to the tandem "add-back" of **$341,207.53** and that AT&T is entitled to a credit or reduction of **$517,147.23** for payments Level 3 over-withheld from TCG.  Based on these stipulations, it is undisputed that Level 3's damages include **$4,013,308.81**.

### B.      Late Payment Charges

The Court turns now to the issue of late payment charges, which the parties briefed in connection with AT&T's Motion in Limine to Exclude Evidence of Level 3's Claimed Late Payment Charges.  (*See* ECF Nos. 207, 219, 239.)  The Court denied the Motion, allowing evidence pertaining to late payment charges to be presented at trial.  (*See* ECF No. 263).  AT&T points out that while the 2015 Agreement refers to late payment charges in various other clauses,

the refund provision quoted above makes no mention of such charges.  Thus, AT&T argues that the omission of late payment charges from the refund provision indicates the parties intended they would not apply to the charges at issue here.  However, unlike the clauses that expressly refer to late payment charges that had already accrued when the agreement was made, the refund provision is forward-looking and depends on a condition precedent—issuance of a "Final Appellate Order"—that had yet to occur.  Accordingly, the Court is not persuaded that the mere absence of late payment charges in the refund provision shows that the parties intended to exclude such charges.

Instead, the 2015 Agreement, taken as a whole, reflects that late payment charges are a customary part of the parties' often contentious business dealings.  For instance, AT&T agreed to pay late payment charges to settle the "Tandem Dispute," and Level 3 agreed to issue a credit for any applicable late payment charges to settle the "DEOT Billing Dispute."  And in the context of the "OTT Dispute," AT&T expressly agreed to pay late payment charges for the period preceding execution of the 2015 Agreement.  Given both parties' propensity for withholding amounts billed when charges are disputed and the inclusion of late payment charges when those bills are settled, the Court is not persuaded that that parties intended to exclude simply by omission late payment charges on the end-office charges at issue here.

Moreover, allowing AT&T to withhold payments without penalty makes little sense in this context, where AT&T concedes that it owes Level 3 about $4.1 million.  The Court finds disallowing late payment charges would undermine the goal of putting Level 3 in the position it would have been if AT&T and not breached the 2015 Agreement.  And to the extent AT&T acted arbitrarily by over-withholding due to its "mechanized billing system," as Level 3

contends, AT&T should not get a windfall.  Therefore, the Court finds that late payment charges are appropriate in this case.

The Court further finds that late payment charges on the tandem "add-back" are appropriate.  The refund provision expressly applies to "OTT charges to the extent they should not have been charged," and the parties agree that the tandem "add-back" is appropriate. AT&T's contention that late payment charges on the tandem charges were never billed by Level 3 misses the mark.  (*See* ECF No. 281 at 3, ¶ 7.)  Under the circumstances of this case, the tandem charges Level 3 should have assessed in lieu of the end-office charges that it did assess are inextricably linked.  Accordingly, the Court finds that the rationale above for applying late payment charges applies as well to late payment charges calculated on the tandem "add-back."

As noted above, Level 3 has submitted calculations for these late payment charges through June and through July.  But on the current record, which includes updated Exhibit 76, the Court can assess Level 3's damages through June 2021 only.  (*See* ECF No. 279 at 3 (rebutting AT&T's objection to applying late payment charges for the month of July).)  As a result, the Court finds Level 3's damages also include **$1,139,374.93**, as set forth in its damages analysis.

The Court is cautiously optimistic that the parties can agree on how Level 3's damages analysis applies post-June 2021 through the date of this Order, and therefore directs Level 3 to file, within fourteen days of this Order, a supplemental damages disclosure that includes a statement as to whether AT&T concurs with the analysis contained therein.

As set forth in the findings of fact, Level 3 has also submitted a separate damages analysis, which starts with the amounts Level 3 billed AT&T for all usage-based switched access

9

services.  According to Level 3, "[t]hese calculations account for every usage-based dispute
AT&T has levied against Level 3's charges, thus showing to the penny the exact amount AT&T
withheld for the OTT Dispute."  (ECF No. 269 at 3.)  To arrive at its damages amount, Level 3
makes various deductions for other disputes and issues that it has identified—e.g., "Total DEOT
Usage Credits/Debit," "OTT Credit Using 21% OTT factor less Tandem Switching Debit."[2]  The
analysis includes further deductions for late payment charges related to the DEOT Dispute and
for a "New Affiliated Tandem Dispute."  Tr. Ex. A-53 at 3.  From there, Level 3's analysis
attributes all of AT&T's "withholdings" to the OTT Dispute.[3]

  However, the Court finds AT&T's approach to be more credible given that it starts with
the agreed upon amounts Level 3 billed AT&T for providing end-officing services since
January 1, 2019 and the parties' agreement at trial on "AT&T's numbers" as set forth in
Exhibit 76.  Given the various other disputes intertwined with this case, the Court finds that
Level 3's approach, which begins with amounts Level 3 billed AT&T for all usage-based
switched access services, is less reliable and logical than AT&T's.  Although Level 3 now takes
the position that AT&T withheld much more than 65 percent of the end-office charges Level 3
assessed (ECF No. 269 at 3), throughout this litigation Level 3 has taken the position that AT&T
withheld 65 percent (ECF No. 184 at 2, ¶ 2), and it has expressly admitted that AT&T began
withholding "approximately" that percentage in response to Level 3's refusal to provide a refund
(*id.* at 9, ¶ 6).  This further undermines Level 3's current damages analysis.  And the Court

---

[2] At various points in this case, the parties have also referred to an "EO/CPN dispute" and an "LRN/CPN dispute."
(ECF No. 259 at 13, ¶ 35; ECF No. 285 at 6.)

[3] Level 3's reliance on Exhibit A to the 2015 Agreement to define the "OTT Dispute" is unavailing because that
exhibit lists "Outstanding AR Through 4/2015 Invoices," and the parties settled their disputes through 2018 in a
separate agreement.

10

discerns no compelling reason to focus on amounts AT&T theoretically "withheld" in an abstract sense as opposed to what it actually paid. In short, the Court finds that Level 3's damages analysis lacks clarity and credibility, fails to provide a reasonable basis to support Level 3's damages calculation of $9.375 million, and is inconsistent with the more credible, and mostly unrefuted, evidence produced at trial by AT&T. *See* Tr. Ex. A-53 at 3.

### C.    Attorney Fees

Level 3 seeks an award of attorney fees pursuant to 47 U.S.C. § 206 based on its contention that AT&T's affiliate, TCG, improperly assessed end-office charges on OTT traffic against Level 3. But the Court denied summary judgment on Level 3's counterclaim against TCG on which it sought summary judgment and has made no determination as to whether TCG violated any provisions of the Communications Act. (*See* ECF No. 204 at 8.) The parties have stipulated that Level 3 withheld $517,147.23 in payments charged by TCG in excess of the credit TCG extended. (ECF No. 262 at 16, ¶ 15.) But TCG has not admitted to any Communications Act violations, and the Court declines to draw such a conclusion at this juncture. As a matter of practicality, devoting further judicial resources to a matter that is essentially resolved is inefficient and makes little sense. And as a matter of policy, revisiting matters that are essentially resolved via settlement would have the undesirable effect of devaluing and discouraging settlement. Accordingly, Level 3's request for attorney fees is denied.

## III.    PENDING MOTIONS

### A.    AT&T's Unopposed Motion to Restrict

AT&T has moved to restrict portions of thirty-three exhibits attached to its Offer of

Proof, which were filed under seal pursuant to the Protective Order entered in this case because they contain sensitive information and confidential or proprietary business information.  (ECF No. 265.)  The Motion is unopposed, and it is granted.

### B.    AT&T's Unopposed Motion to Supplement the Record

AT&T has also moved to supplement its Exhibit 76 to include Level 3's June 2021 invoices.  (ECF No. 280.)  Both parties agree that inclusion of the June 2021 invoices is appropriate, and the Court has relied on the updated Exhibit throughout this Order.  This Motion is granted.

### C.    Level 3's Motion to Amend the Pleadings

Before trial, both parties agreed that the only remaining issue of fact for trial was the amount of Level 3's damages under its breach of contract claim.  (ECF No. 262 at 3.)  Level 3 now contends that it should be granted to leave to amend the pleadings to include a claim for breach of tariff.  (ECF No. 283.)  The Court declines to allow Level 3 to move the goal posts after the game has been played.

Fed. R. Civ. P. 15(b)(2) permits a party move to amend the pleadings to conform them to the evidence "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent."  The Court initially concludes AT&T did not expressly consent to trying a breach of tariff claim—Level 3 can point to no such evidence.  In this Circuit, a party may impliedly consent to the trial of an issue by introducing evidence on the issue *that is not relevant to an issue already in the case* or by failing to object when such evidence is introduced. *See Eller v. Trans Union, LLC*, 739 F.3d 467, 480-81 (10th Cir. 2013).  But Level 3 has identified no evidence presented at trial by either party that would be relevant to a breach of

tariff claim but was not relevant to the issue of its amount of damages flowing from AT&T's breach of the 2015 Agreement.  Accordingly, AT&T did not impliedly consent to trying a breach of tariff claim.

Further, Level 3 has repeatedly taken the position that it is seeking damages on its breach of contract claim only.  In its Response in Opposition to AT&T's Motion in Limine, Level 3 states: "The entire amount Level 3 seeks to recover are amounts AT&T withheld for the OTT Dispute, in direct violation of the contract, and therefore fall[] squarely within the scope of Level 3's counterclaim for breach of contract."  (ECF No. 223 at 2.)  In its Proposed Conclusions of Law, Level 3 asks for the Court to conclude "that all amounts AT&T withheld are within the scope of the OTT Dispute as contemplated by the parties when they negotiated the 2015 Settlement Agreement, and are therefore subject to Level 3's breach of contract claim."  (ECF No. 260 at 18.)

That is not all.  In the Final Pretrial Order approved by the Court, Level 3 took the position that "[i]ts remaining claims are premised solely on the parties' Settlement Agreement." (ECF No. 199 at 6 n.5.)  And, as mentioned above, the Proposed Amended Final Amended Final Pretrial Order, approved by both parties, states that "the only remaining issue of fact for trial is the amount of Level 3's damages under Count I of its counterclaims."  (ECF No. 262 at 3.) Therefore, to the extent that granting Level 3's Motion would require the Court to modify the Final Pretrial Order, the Court further finds that doing so is *not* necessary to prevent manifest injustice in this case, and such modification would be barred by Fed. R. Civ. P. 16(e).

Fed. R. Civ. P. 15(b)(1) permits amendment of pleadings based on an objection at trial. Because the trial in this matter has concluded, the Court finds this provision does not apply here.

13

Level 3 cites no authority to the contrary.

Accordingly, Level 3's Motion is denied.

## IV.    CONCLUSION

Therefore, the Court ORDERS that:

(1)    AT&T's Unopposed Motion to Restrict Public Access to Their Offer of Proof (ECF No. 265) is GRANTED;

(2)    AT&T's Unopposed Motion to Supplement the Record (ECF No. 280) is GRANTED;

(3)    Level 3's Motion to Amend the Pleadings Pursuant to Federal Rule of Civil Procedure 15(b) (ECF No. 283) is DENIED;

(4)    Level 3 is entitled to JUDGMENT in the amount of **$5,152,683.74** (**$4,013,308.81** for undisputed amounts plus **$1,139,374.93** for late payment charges, as set forth in this Order), and

(5)    Level 3 shall file, on or before September 28, 2021, a supplemental damages disclosure as set forth in this Order so that FINAL JUDGMENT may be entered in this matter.

DATED this 14th day of September, 2021.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00112-RM-MEH

AT&T CORP., a New York corporation,

      Plaintiff/Counterclaim Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC, a Delaware limited liability company,

      Defendant/Counterclaimant,

and

BROADWING COMMUNICATIONS, LLC,
GLOBAL CROSSING TELECOMMUNICATIONS, INC, and
WILTEL COMMUNICATIONS, LLC,

      Counterclaimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.,

      Counterclaim Defendant.

---

## FINAL JUDGMENT

---

In accordance with the orders filed during the pendency of this case, and pursuant to Fed. R. Civ. P. 58(a), the following Final Judgment is hereby entered.

Pursuant to the Findings of Fact, Conclusions of Law, and Orders (Doc. 289) by Judge Raymond P. Moore entered on September 14, 2021, it is hereby

ORDERED that judgment is entered in favor of Defendant, Level 3 Communications, and against Plaintiff, AT&T Corp., in the amount of $5,152,683.74 ($4,013,308.81 for undisputed amounts plus $1,139,374.93 for late payment charges, as set forth in the Order). It is

FURTHER ORDERED that post-judgment interest shall accrue on the total amount of $1,139,374.93 at the legal rate of 0.08% from the date of entry of judgment nunc pro tunc to September 14, 2021.

Pursuant to the Order (Doc. 293) by Judge Raymond P. Moore entered on November 24, 2021, it is hereby

ORDERED that judgment is hereby entered in favor of Defendant, Level 3 Communications, LLC, and against Plaintiff, AT&T Corp., in the total amount of $5,356,554.26.   It is

FURTHER ORDERED that post-judgment interest shall accrue on the total amount of $5,356,554.26 at the legal rate of 0.08% from the date of entry of judgment nunc pro tunc to September 14, 2021.   It is

FURTHER ORDERED that this case is closed.

Dated NUNC PRO TUNC to 14th of September, 2021.

FOR THE COURT:
JEFFREY P. COLWELL, CLERK


By:   s/   Robert R. Keech
_____
Robert R. Keech, Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-00112-RM

AT&T CORP.,

      Plaintiff/Counter Defendant,

v.

LEVEL 3 COMMUNICATIONS, LLC,

      Defendant/Counterclaimant,

and

BROADWING COMMUNICATIONS, LLC, GLOBAL CROSSING TELECOMMUNICATIONS, INC., and WILTEL COMMUNICATIONS, LLC

      Counterclaimants,

v.

TELEPORT COMMUNICATIONS GROUP, INC.

      Counterclaim Defendant

---

## AT&T CORP.'S NOTICE OF APPEAL FROM FINAL JUDGMENT

---

Notice is hereby given that Plaintiff/Counterclaim Defendant AT&T Corp. ("AT&T") appeals to the United States Court of Appeals for the Tenth Circuit from the final judgment in this action entered on November 24, 2021 (ECF No. 294), and all rulings, findings, and orders incorporated therein, including but not limited to the Order on Summary Judgment (ECF No. 204) and the Findings of Fact, Conclusions of Law, and Orders (ECF No. 289).

1

Dated:  December 23, 2021

Respectfully submitted,

/s/ *Rebecca B. DeCook*
Rebecca B. DeCook
Andrew T. Flynn
MOYE WHITE LLP
1400 16th Street, 6th Floor
Denver, CO 80202-1027
becky.decook@moyewhite.com
andrew.flynn@moyewhite.com

Michael J. Hunseder
Michael D. Warden
Justin A. Benson
Joshua W. Moore
SIDLEY AUSTIN LLP
1501 K ST NW
Washington, DC 20005
Telephone: (202) 736-8000
mhunseder@sidley.com
mwarden@sidley.com
jbenson@sidley.com
joshua.moore@sidley.com

Angela C. Zambrano
SIDLEY AUSTIN LLP
2021 McKinney Avenue
Suite 2000
Dallas, TX 75201
Telephone: (214) 981-3300
angela.zambrano@sidley.com

*Attorneys for Plaintiff AT&T Corp. and*
*Counterclaim Defendant Teleport*
*Communications Group*

2

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2021 I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of such

filing to the following:

Charles W. Steese, #26924
Douglas N. Marsh, #45964
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
Email: csteese@armstrongteasdale.com
Email: dmarsh@armstrongteasdale.com

*Attorneys for Defendant Level 3
Communications, LLC*

/s/ *Carolyn M. Lux*
Carolyn M. Lux

3