IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-112-RM

AT&T Corporation,

    Plaintiff,

vs.

LEVEL 3 COMMUNICATIONS, LLC.,

    Defendant.

_____

REPORTER'S TRANSCRIPT
STATUS CONFERENCE

_____

        Proceedings before the HONORABLE RAYMOND MOORE,
Judge, United States District Court for the District of
Colorado, commencing at 1 p.m., on the 20th day of May, 2021,
in Courtroom A601, United States Courthouse, Denver, Colorado.

APPEARANCES

Rebecca B. DeCook, Moye White LLP, 1400 16th Street, 6th Floor,
Suite 600, Denver, CO 80202-1486.  Angela C. Zambrano and
Michael D. Warden, Sidley Austin LLP-Dallas, 2021 McKinney
Avenue, Suite 2000, Dallas, TX 75201.  Michael Hunseder, Sidley
Austin, LLP-DC, 1501 K Street, N.W., Washington, DC 20005,
appearing for AT&T Corporation.

Charles Walter Steese and Douglas Nelson Marsh, Armstrong
Teasdale LLP-Denver, 4643 South Ulster Street, Suite 800,
Denver, CO 80237, appearing for Level 3 Communications, LLC.

TAMMY HOFFSCHILDT, FCRR, CRR, RMR Official Reporter
901 19th Street, Denver, Colorado 80294
Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

1              P R O C E E D I N G S

2        (In open court at 1:03 p.m.)

3            THE COURT:  All right.  We're here on a telephone

4   conference, in response to... sounds like an ultrasound.  In

5   response to a Joint Motion For A Status Conference, and it's

6   being held telephonically, in 18-cv-112, AT&T versus Level 3

7   Communications.

8            There are a number of attorneys on the line.  Let me

9   assume that there is a lead for each side, and ask for

10  appearances, let me start with the plaintiff.

11           MS. DeCOOK:  Good afternoon, Your Honor.  This is

12  Rebecca DeCook, from Moye White, and with me on the call is

13  Angela Zambrano, Mike Warden and Michael Hunseder from Sidley

14  Austin; and Ms. Zambrano is going to be on the lead for the

15  call today, for AT&T.

16           MS. ZAMBRANO:  Good afternoon, Your Honor.

17           THE COURT:  Good afternoon.  And in terms of the

18  defendant?

19           MR. STEESE:  Yes.  This is Chuck Steese, and with me

20  is my colleague, Doug Marsh, on behalf of Level 3, and I will

21  be taking the lead on the issues in front of Your Honor, today.

22           THE COURT:  All right.  Let me start by saying good

23  afternoon to all of you, and also tell you that I really do

24  want this to be informal.  I know that it does not feel that

25  way because you know that I'm taking it in the courtroom.

1    I'm taking it in the courtroom simply because it's

2    easier, the connections are better, I can deal with the volume.

3    In chambers we have a half-duplex phone, which means the minute

4    somebody starts talking, everybody else cannot speak and it's

5    just easier for me to do it in here.

6    The fact that I'm in the courtroom, however, frankly,

7    I am not looking for anymore formality than I would if this

8    were simply a telephonic call that I was taking in chambers.

9    I don't suspect that's going to change anybody's

10   approach, here, today, but at least it's on -- on audio only,

11   there's no video, so if you are in your speed-racer PJs, that

12   won't be noticed.  All right.

13   Let me start with something --

14   *MR. STEESE:*  I didn't know others recognized speed

15   racers anymore.  I haven't heard that reference in long time.

16   *THE COURT:*  Well, if what you want to know is whether

17   I'm old?  The answer is yes.  And certainly some of you sound

18   younger than me, but that may simply be that you are much

19   healthier people.

20   Anyway, let me start by asking something, before we

21   get into the merits of what this is really about.  I know the

22   main *bout* the *title card*, if you would, is AT&T  versus Level.

23   There are also these other parties that are here, and there is

24   a portion of a counterclaim that's -- I'm not sure whether it's

25   been resolved or not.  I'm referring to Broadwing, WilTel,

1    Tellport Communications.

2           Can somebody tell me what it is that is going on with

3    respect to them, or is the case going forward simply the AT&T

4    Versus Level 3?

5           *MS. ZAMBRANO:*  Yes, Your Honor.  This is

6    Angela Zambrano, on behalf of AT&T .  We think that this has,

7    essentially, been -- you know, got it down to, after

8    Your Honor's ruling on Summary Judgment Motions and the *Daubert*

9    Motions.  We have taken guidance from that.  We have tried to

10   narrow the issues, and we think this is really a damages claim,

11   relating to Level 3's Breach of Contract, counterclaim.

12          Now, we don't have the final stipulations.  The

13   parties have been going back and forth, relating to the other

14   claims that you just mentioned, with those other parties, but

15   Your Honor had it right, it's down to an AT&T, Level 3 dispute,

16   what Count 1 of Level 3's counterclaim, Breach of Contract, and

17   we're talking about damages.

18          *THE COURT:*  And Level 3 is in rough agreement with

19   that?  I say *rough agreement*, because it seems as if you agree,

20   and then the edges start to fray a little bit.  So, go ahead.

21          *MR. STEESE:*  I think that that's accurate, Your Honor,

22   and I think all parties now recognize that Level 3 has become

23   the plaintiff, and that AT&T  has become the defendant.  The

24   issue is around an additional Communications Act counterclaim,

25   brought by Broadwing and Global Crossing and WilTel against

1    TCG, Teleport, and at the trial, we hope that we will achieve

2    stipulations that will mean that the only evidence that will

3    come in at the trial will relate to Level 3 versus AT&T.

4           However, that does not mean that level -- that --

5    excuse me, Broadwing Global Crossing, WilTel and Level 3 are

6    giving up their communications counterclaim.  It is just going

7    to be a pure legal issue for purposes of presenting it in the

8    proposed findings and conclusions and in arguments about the

9    impact of that; but the evidence will, factually, will only be

10   about AT&T and Level 3, if we get to our final stipulation.

11          *THE COURT:*  All right.  Well, I'm not going to try and

12   figure out what all that means, at the end of the day.  I mean,

13   the parties -- well, let me ask this, are the lawyers that are

14   on the call, also attorneys that represent these additional

15   parties?

16          *MS. ZAMBRANO:*  Yes, Your Honor.

17          *MR. STEESE:*  Yes Your Honor.

18          *THE COURT:*  So, there's no missing representation?

19          *MS. ZAMBRANO:*  Correct.

20          *MR. STEESE:*  True.

21          *THE COURT:*  Okay.  All right.  Then I will deal with

22   it as I need to deal with it.

23          All right.  So, really, what this is about is the fact

24   that we're set for trial on June 7, and -- but all sides wanted

25   to know, how are we proceeding?

1          Let me just kind of speak to ... well, let me just

2     kind of talk, and then afterwards you can jump in, in terms of

3     what you think or don't think or feel or don't feel, as you see

4     fit.

5          Again, I'm not viewing this with the level of

6     formality that my presence in the courtroom might otherwise

7     suggest.  Okay.

8          The question is, would I do a, what I will call a Zoom

9     trial?  Although, Zoom is kind of taken on the same problems,

10     as Xerox did, where people refer to all -- people my generation

11     will often refer to any kind of copier as a Xerox, and now, you

12     know, people will refer to a video-teleconference proceeding as

13     a Zoom proceeding, and that's not actually right.

14          The Court -- and it's important that I say that for a

15     particular reason.  I know that each of the federal districts

16     do their own thing, and it is probably the case that some of

17     them will be -- have been using proceedings on Zoom, some of

18     them may even be using proceedings on Microsoft Teams, and who

19     knows what else.

20          What I can tell you is that in this district, for

21     reasons that relate to decisions that have been made and/or

22     capabilities that exist, we use a software program that

23     originates from the AO or the Administrative Office.  I don't

24     even know.  Cathy, do you know what the name is?

25          *THE COURTROOM DEPUTY:*  Cisco Meeting.

1           *THE COURT:* Cisco Meeting.  And I am not a fan.  I

2   have had, over the course of the last year, and this is not

3   unique to me, but I have had many a conference hearings,

4   sentencings, motions and one quasi-trial; what I mean by that

5   is, it was a proceeding where testimony was taken and it was

6   essentially a bench trial but there are problems.  The problems

7   are that, notwithstanding the best of intentions, it seems like

8   something always goes wrong.  It might work fine for a bit, and

9   then the person that we're speaking with, their connection goes

10  funny or it freezes or they can't reestablish the video

11  connection, then we adjust and have them come in on the audio

12  line, and then we get them on the audio line, all of a sudden

13  at some point later on, the video comes back up.  It is a

14  little bit quirky, and it's not anybody's fault.  It may have

15  to do with the equipment that they're using.  It may have to do

16  with the bandwidth that the Court has.  It may have to do with

17  the supervision of the bands, if you would, that is occurring,

18  through the AO.

19          All I can tell you is that if you want me to say,

20  *Look, we can proceed via zoom-like trial*, that's not going to

21  happen, and it's simply not just a matter of what I have just

22  said, there's an additional reason, as well.

23          My understanding, and if I'm wrong on this you have my

24  apologies, but I think I'm right, is that this Court has, and I

25  am -- you can't tell, but I'm looking at my courtroom deputy,

1  because she deals with the nuts and bolts of this more than I

2  do, but this court has four bands or lines that are available

3  to conduct video proceedings over.  Why only four?  Beats me,

4  but that's what we've got.  Essentially, one of them has to be

5  reserved for the Magistrate Judges who are on criminal duty,

6  because there are new arrests and bond proceedings and other

7  matters that are required, by law, that are occurring, and

8  we're not yet in the phase where our courtroom is open.  All of

9  these proceedings are happening over video with warts and all,

10 with connections to say various jails; that leaves three.

11         There are, right now, trials that are going forward --

12 that require a jury, are going forward on a pilot-trial basis,

13 and what that means is that there's only two a week that have

14 been approved to go forward on that basis.  It is the case that

15 if a particular witness wishes, according to the Court's

16 protocols, and I mean the district's protocols, not mine, if a

17 particular witness wishes to, and assuming it's acceptable to

18 the parties, to appear remotely, rather than have that person

19 be somewhere off in the -- you know, states away or countries

20 away, they are in a separate room, in the building, and can, in

21 essence, video into the courtroom from there.

22         Up to now, no one has really wanted to do that.

23 Essentially, their being in the building has sort of been

24 enough for them to come into the courtroom as well, but there

25 has to be a line that's reserved for that, that leaves two for

1    everything else that happens in the building.  If any District

2    Judge wants do a motions hearing, preliminary injunction

3    hearing, sentencing, a plea, again, the courthouse, itself, is

4    under restriction, due to the Chief Judge's order, in terms of

5    who can access it, and there is some in -- well, not

6    surprisingly, we are not -- we, as the bench, are not entirely

7    the same, in terms of how we do things; and what I mean by that

8    is, some Judges will allow more in-person hearings than others

9    will, but essentially you have got two lines, and if I take one

10   of them, that means one, and everybody else is like, I suppose,

11   I'm saying to them, the judicial equivalent of, *Well*, *you're*

12   *gladiators, here is the coliseum.  I will throw the one line of*

13   *bandwidth in the middle, and you guys can figure out who it is*

14   *that gets it or who it is that doesn't.*

15         So, it's a sort of a combination of the two for me not

16   wanting to, potentially, end up tying up the court's hands; the

17   court being, broadly, the entire district's hands, by taking

18   one of these precious bandwidth lines for this trial, and it's

19   also because of my experience with how stable these connections

20   have been, and they have not been stable, that I really am not

21   in favor of going forward in a zoom-type setting; that's point

22   one.

23         Let me now come behind that with some other

24   generalized comments.  If, in light of COVID, there were a

25   really particular concern that a particular witness had, would

1   I preclude it?  It being, having that witness testify remotely?

2   Well, I would listen to the parties and see whether there was

3   an objection, and what it was and what the justification or the

4   reason was.  I mean, witness convenience is certainly not

5   something that I am going to base decisions on, and I know that

6   we are still in an age of COVID where things, right now, are

7   changing more rapidly than they have over the last year.

8          We've gone, in the last, I don't know, week or so,

9   from mask mandates to, *Well, if you are fully vaccinated then*

10  *you don't need to wear a mask*, and then various state and local

11  facilities, at least those here in Colorado, are basically

12  saying, *All right.  If you are fully vaccinated, you don't need*

13  *to wear a mask*.  What does that mean?  Everybody is trying to

14  figure that out.  Whether the honor system will be -- should be

15  trusted.  Everybody is trying to figure that out.  Right now, I

16  mean my personal opinion is, not so much, but that's just my

17  personal opinion.

18         In terms of the court, the court has -- is conducting

19  meetings with its committee on jury -- on trial protocols, and

20  I am expecting something, in the near future, and I don't know

21  what that something is.  It may be that we open the building

22  up; it may be that we eliminate mask mandates; it may be that

23  we say to witnesses, if you are fully vaccinated that you can

24  or can't testify without a mask; it may be the same is true for

25  lawyers.  I don't know what that is going to be, because, right

1    now, that is in flux, and I can't give you an answer as to when

2    the resolution will be, because everybody is adjusting to the

3    new CDC guidance, as it occurs.

4         Next topic, right now, if you ask me, *Are you going to*

5    *trial right now, on June 7th*?  I would tell you no.  If you ask

6    me in a week, I don't know what I will tell you.  The reason I

7    say that is this, one of the things that COVID has done is

8    created this woodpile of cases.  Obviously, there was a period

9    of time where no proceedings were going forward, in terms of

10   trials, civil or criminal.

11        Then there came to be a period of time when we started

12   these pilot trials.  I believe the history is right.  Then we

13   stopped that, because in the late fall or mid-fall, early

14   winter, the rates in Colorado of COVID infections were going

15   up, then we reinstituted the procedures, and as all of these

16   things are occurring, trials are either not occurring at all or

17   not being fortunate enough to be selected as a pilot trial,

18   those trials have gotten pushed back and continued; the pile

19   being, criminal and civil, with criminal having precedence,

20   because of constitutional and statutory requirements.

21        Right now, there are two things set, both before me,

22   on the week of June 7th; this case and a criminal case.  If you

23   ask me now whether or not the criminal case will go forward, I

24   would say yes.  The reason that I -- and I am just being as --

25   as completely transparent with you as I can be.  The reason

1    that I say that is that yesterday I had a hearing, an in-person

2    hearing by the way, actually that's not even right, it was in

3    person for the lawyers and remote for the defendant, but I had

4    a hearing with regard to a Motion To Continue, which I denied.

5            So, to the extent that you can sometimes anticipate

6    that criminal trials may not choose to go forward because there

7    are jury protocols, which don't affect you in this case, but it

8    creates some interesting times.  What I mean by that is, we try

9    to maintain masking and social distancing, that means that the

10   jury box is off limits, because everybody is shoulder to

11   shoulder with each other in the box, and so we've got the jury

12   spaced out, sitting in the back of the courtroom, in the public

13   area.  Because the jury is there, the public can't come in.

14   The lawyers are trying their case with masks on, with the jury

15   behind them, so that they can't see them.  Witnesses are

16   required to wear masks, and a lot of times people don't want to

17   go forward, in criminal cases, in that scenario.  I'm not

18   commenting on whether they should or shouldn't, it's right or

19   wrong or anything else.  I'm just saying, historically, there

20   have been motions to continue.

21           The case that is set for the same week as yours is one

22   that has been being continued and delayed for more than a year.

23   I'm not saying that that suggests that you should be

24   sympathetic as to that, but, essentially, yesterday I was

25   confronted with give me the same -- give me some more time for,

1    essentially, the same reasons that have been used over and over

2    again, and I have declined to do it.

3            So, to the extent that there might be some expectation

4    that the case will be moved, on the basis of an agreement by

5    the parties to continue it, or an opposed motion from one party

6    to continue it, that's not going to happen.

7            So, right now, I'm saying we're going to trial; but,

8    as with anything, I can't predict, with any degree of

9    certainty, what happens.  It could be that the defendant

10   pleads.  It could be that the government dismisses the case.

11   There are possibilities where it disappears, but right now, it

12   is going forward, and I have declined and refused to continue

13   it.

14           What does that all mean?  It means, to the extent that

15   you are having to move people around the country, right now, I

16   can't tell you that there's a reason to do that for June 7.  I

17   have not tried to reach out to you to say anything, because how

18   much in advance do I need to give you a heads up as to whether

19   we're going or not going?  My view was, we would discuss it at

20   the pretrial conference, but this matter came up, and I set

21   this for a telephone conference, and so, it's, *Okay, fine we*

22   *can talk about this all that afternoon*.

23           I'm done with my rambling.  These are all issues that

24   are kind of roped into the joint motion, although some of it,

25   clearly, was not known to you.  Those are my thoughts, feelings

1    and ramblings.  Whoever wants to jump in -- I guess you were

2    set to begin on the 8th, because it was a bench trial, but the

3    same week --

4              *MS. ZAMBRANO:*  Yeah.

5              *THE COURT:*  In any event, I guess -- well -- for no

6    other purpose other than to say plaintiff, let me hear from the

7    technical plaintiff, AT&T .

8              *MS. ZAMBRANO:*  Sure.  And since I was going to say,

9    since we were the ones that, I think, raised the issue of the

10   Zoom trial, if you will, and then I -- I would like to comment

11   on that.  First of all, thank you very much for that guidance.

12   We suspected, after 14 months of being in pandemic, that

13   Your Honor had preferences and experience that would guide us.

14   So, thank you for that, and that's incredibly helpful in

15   planning.

16        I will say that the reason that we went ahead, though,

17   and asked, if you will, in the status conference, with maybe a

18   little bit of persuasiveness behind it, it's not just that the

19   issue of the witnesses moving around the country and so forth.

20   There is also the complexion of this was case, right now, and I

21   think we're reserved for four days on your calendar, and I

22   don't want to speak for Mr. Steese, I will let him speak to

23   this himself, but from our perspective, we think it's a day or

24   two proceeding now, that is simply focused on damages, and even

25   beyond that, the main kind of questions that remains on

15

1    damages, is even the subject of competing motions, motion

2    practice, and so it's getting pretty narrow, at that point, and

3    so we thought, we don't know your preferences, it's pretty

4    narrow, why don't we get this guidance.

5              THE COURT:  And look, let me just be clear about

6    something, I don't have any quarrel with anything that you have

7    done to ask for this.  In essence, we have to have this

8    conversation at some point, might as well do it now.

9              MS. ZAMBRANO:  Perfect.  Thank you, Your Honor.  And

10   the parties have agreed, if it's okay with Your Honor, that

11   the -- that the final trial preparation conference would be by

12   virtually or by phone, with the parties; is that acceptable to

13   you?

14             THE COURT:  Yep, that's fine.

15             MS. ZAMBRANO:  Okay.

16             THE COURT:  But I do want it to be VTC, opposed to

17   just audio.

18             MS. ZAMBRANO:  Phone.

19             THE COURT:  Yeah.

20             MS. ZAMBRANO:  Okay.  Yes, Your Honor, that's great.

21   And look, our position is simply, you know, depending on how

22   you rule on some of these motions in front of you, we may not

23   even need a trial.

24             THE COURT:  Yeah.  I have heard that before from you

25   guys.

1        *MS. ZAMBRANO:*  Well, I'm new to the party, so that

2    will be the first time for me, but thank you for all of this.

3    I don't have any other remarks.  We will proceed accordingly

4    and communicate with our client with that guidance.

5        *THE COURT:*  All right.  Let me hear from Level 3, if

6    you wish to. I mean -- there's no question that I put before

7    you, I have just, kind of, told you where things sit from my

8    perspective.

9        *MR. STEESE:*  And, Your Honor, we appreciate it very

10   much.  We're all trying to navigate this pandemic together, and

11   I have had all kinds of trials that have been bumped around, so

12   we understand exactly what you are saying and appreciate your

13   candor, again.

14       In terms of the trial, I would agree with one point

15   with Ms. Zambrano, I think it's a two-day proceeding, which,

16   hopefully will help Your Honor to find a slot for it.

17       Secondly, though, I don't think the motion practice is

18   going to resolve the issues.  I think that we need to get the

19   case set, and the question I have for Your Honor is the

20   criminal case that you have slated for the week of June 7th, is

21   that slated for the entire week or is it possible that we could

22   slip in towards the end, and use the last two days of the week?

23       *THE COURT:*  The answer is, beats me.  And I understand

24   what you are asking, but let me tell you why I say it that way.

25   Part of the problem is that for criminal trials, you absolutely

1    have to have a jury.  It's not this case, but let me explain,

2    essentially, what the process is that's used to draw juries.

3    Because of the physical limitations of the building, we only

4    have one room, that's our jury assembly room, that can even be

5    considered as a place to bring people together, assuming this

6    case goes forward.  I'm going to have to arm wrestle with

7    whatever other Judge has a pilot trial that week, because one

8    of us can only -- has to pick his or her jury on Monday and the

9    other has to pick his or her jury on Tuesday.  The reason is,

10   we can't get enough people into the jury assembly room and

11   maintain social distancing and have a panel that's big enough

12   for two juries.  Part of the reason for that is the space

13   limitation, part of the reason for that is that COVID has

14   created complications where more jurors tend to be excused than

15   in, quote/unquote, normal times.

16          Whether it be because, you know, somebody says, *Oh, I*

17   *have got my vaccination shot scheduled for this Tuesday what am*

18   *I supposed to do with that?*  You can imagine that, you know,

19   whether it be that or again, going back in time, when schools

20   weren't open, there were people who were just stuck, because

21   they couldn't get baby-sitters because COVID, and they couldn't

22   get their kids in school, because they were shut down; bottom

23   line is, it's a heck of a lot slower picking a jury, and I

24   can't tell you, yet, whether I would be picking on Monday or I

25   would be picking on Tuesday.

1          With all of that going on, there are some other issues

2   that I will touch on that week.  I said I would be fully

3   transparent.  I will be.  There is a medical exam that I need

4   to do during that week, and I will leave the rest of it to

5   the -- in the category of that's about as specific as I'm going

6   to get with it, to where I'm going to have to take a half a day

7   and in the middle of the week.

8          So, you have got two, kind of, competing things going

9   on.  One is a trial that is going to take longer to draw the

10  jury, that may not start on the 7th; it may start on the 8th,

11  and then on top of that, on Wednesday, is only going to be

12  available to go a half a day.

13         So I can't -- I don't really think that if it goes,

14  there's going to be an end of the week that I could squeeze you

15  in, because I don't think there's going to be an end of the

16  week that's open, and, of course, I can strongarm the two of

17  you, or I can try to strongarm the two of you into stipulating

18  to any number of things.  I can't make anybody stipulate to

19  anything in a criminal case, because it's a different animal.

20  So that's my best understanding right now.

21         *MR. STEESE:*  So, Your Honor, with that, I have no

22  further questions.  I am, again, thankful, and on behalf of

23  Level 3 say thank you very much for your candor.  I will report

24  back to the client.  We look forward to speaking with you in a

25  week; maybe by the time that the final conference comes around

1    something will have moved in the criminal case and will give us

2    more clarity for that the week of the 7th.

3            THE COURT:  It may.  If, in fact, the criminal case is

4    still on, I'm going to pull the plug on you, because I don't

5    want -- I don't want to say to you, rationally, *Oh, you know, I*

6    *will let you know by Monday noon*, and then have you traveling

7    from, you know -- it's just insane.  There has to be some point

8    in time in which I decide which way we're going to go and which

9    way we're not going to go.

10           Let me give you some more thoughts.  Obviously, I

11   haven't ruled on the motions in limine.  The responses just

12   came in yesterday, and I think a fourth motion in limine was

13   filed either late today or -- excuse me -- late yesterday,

14   which I saw early today.  None of this has meant to constitute

15   a final ruling or even a ruling, but I can tell you what my

16   rough thoughts are right now.  My rough thoughts are that I'm

17   not going to entertain taking evidence on matters that I have

18   already decided, or somehow building into the trial evidence,

19   so that I can change my mind.

20           Ultimately, what the rulings have been is what the

21   rulings have been, and to the extent that it impacts one side

22   or the other, and after the trial there's some reason to

23   continue debating the point, that's what the Tenth Circuit is

24   there for.

25           In terms of the rest of it, I don't have any firm

1    decisions, other than to say this, I'm not going to take

2    motions in limine and use the motions in limine to resolve

3    legal matters that affect the boundaries of the trial.  What I

4    mean by that is, I'm not going to issue summary judgment

5    rulings under the guise of a motion in limine.

6            My inclination is, there's no jury, in general, I may

7    let things in, and decide, at the end of the day, when the

8    final decision or ruling or verdict, if you would, is rendered,

9    what the conclusions of law are, as well as the remaining

10   issues of fact.  So, the notion that I -- that you would have

11   me saying, for example, well, I don't want to hear this

12   evidence, I will likely -- that's not fair.  I said this is not

13   a ruling, and it's not, but my leaning, now, is towards of

14   erring on the side of letting matters come before me, and then

15   I will shake it out on the back end, as opposed to,

16   essentially, using motions in limine as a means of saying, you

17   know, this legal issue, for example, are or aren't in play.

18   Well, I don't have an opinion on that right now, but to some

19   extent it sort of seems like more of a legal issue than an

20   evidentiary issue.  I grant you, if it's not relevant, it

21   shouldn't come in, but again, I fall back to, there's no jury

22   here, and the dangers of that.  The dangers of hearing evidence

23   is not as great in a case where I can appropriately consider it

24   on the back end and don't have to worry about a fact finder

25   that's not used to disregarding things having to deal with it

21

1    or not deal with it.  I don't know what that means at the end

2    of the day.  I guess I will tell you next week, but that's

3    where my leanings are now.

4            And the final thing that I would say is, if the two of

5    you want to take it down to the end of next week, that's fine.

6    We will see where we are.  If you want to ask of for something

7    else sooner, that's fine too.  I'm not -- look, we're all

8    adjusting, and I am not going to be concerned, one way or the

9    other, with either the absence of a request for some other

10   setting or presence of the request for some other setting.

11           You guys get to talk, you talk and then we will -- I

12   have you set for the pretrial conference, and we will deal with

13   whatever remains either then or in advance of that.  Okay?

14           *MS. ZAMBRANO:*  Yes.  Thank you, Your Honor.

15           *THE COURT:*  Anything else from either one of you?

16           *MR. STEESE:*  Thank you, Your Honor.

17           *THE COURT:*  Anything else?

18           *MR. STEESE:*  No.

19           *MS. ZAMBRANO:*  No.

20           *THE COURT:*  All right.  Thank you all, recess.

21           *THE COURTROOM DEPUTY:*  Court is in recess.

22       (Recess at 1:41 p.m.)

23

24

25

1

2

3                        REPORTER'S CERTIFICATE

4

5        I certify that the foregoing is a correct transcript from
the record of proceedings in the above-entitled matter.

6

7        Dated at Denver, Colorado, this 15th day of February,

8   2022.

9                         s/Tammy Hoffschildt

10                      _____

11                      Tammy Hoffschildt, FCRR,RMR,CRR

12

13

14

15

16

17

18

19

20

21

22

23

24

25